James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
William M. Sweetnam
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Eric Stoppenhagen
LAW OFFICE OF ERIC STOPPENHAGEN
285 Avenue C, Suite #MB
New York, New York 10009

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YUNIS SAMPANG, JUDY LARSON, JOE MILLIRON and TESSIE ROBB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

Plaintiffs Yunis Sampang, Judy Larson, Joe Milliron, and Tessie Robb, individually and on behalf of others similarly situated, complain against defendants AT&T Mobility LLC f/k/a Cingular Wireless LLC ("AT&T) and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel ("Sprint/Nextel") (collectively, "Defendants"), upon personal knowledge as to

-2-

themselves and own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:

## OVERVIEW OF THE ACTION

1. Plaintiffs bring this action individually and on behalf of a proposed class of persons who were injured by Defendants' business acts and practices in charging cancellation fees.

2. The proposed classes consist of persons and entities that had cell phone accounts with one of the Defendants, and were charged a cancellation fee (also called an Early Termination Fee or Early Cancellation Fee, collectively, "ETF") when they cancelled their wireless service, as defined more fully herein.

3. Through a uniform scheme and common course of conduct, Defendants charged Plaintiffs and other customers ETFs, ranging between $150.00 and $200.00, if they cancelled their wireless service at any time after a trial period but before the end of the "service plan" term, regardless of the reason(s) for cancellation.

4. As alleged herein, Defendants' conduct gives rise to Plaintiffs' claims for violation of: (1) the Federal Communications Act; (2) violation of substantially similar Consumer Protection laws of certain states, and (3) Declaratory Relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action involving more than 100 class members. A member of the class is a citizen of a state different from defendant, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391. Plaintiff Sameang resides in this District, and Defendants do business in this District, are licensed to conduct business in the State of New Jersey, and Defendants transact business, committed an illegal act in, maintain agents or representatives in, or are found in this District. Defendants regularly and continuously conduct business in interstate commerce that is carried out in part in this District.

**PARTIES**

7. Plaintiff Yunis Sampang is citizen of New Jersey residing at 38 Roosevelt Avenue, Jersey City, New Jersey who was charged an ETF by AT&T.

8. Plaintiff Judy Larson is a citizen of Washington residing at 2120 N. 17th Avenue, Pasco, Washington who was charged an ETF by Sprint/Nextel.

9. Plaintiff Joe Milliron is a citizen of California residing at 13207 Murano Avenue, Chino, California who was charged an ETF by Sprint/Nextel.

10. Plaintiff Tessie Robb is a citizen of Florida residing at 1775 Harbor Rd., Kissimmee, Florida who was charged an ETF by Sprint/Nextel.

11. Defendant AT&T Mobility LLC f/k/a Cingular Wireless LLC is a Delaware limited liability company with its principal place of business at 5565 Glenridge Connector, Atlanta, Georgia. The sole member of AT&T Mobility LLC is AT&T, Inc., a Delaware corporation with its principal place of business at 175 E. Houston, San Antonio, Texas.

12. Defendant Sprint Nextel Corporation is a Kansas corporation with its principal place of business at 2001 Edmund Halley Drive, Reston, Virginia.

13. Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business at 6160 Sprint Parkway, Overland, Kansas. Upon information and belief, the general partner of Sprint Spectrum L.P. is Sprint Spectrum Holding Company, L.P., a Delaware limited

partnership and the limited partner of Sprint Spectrum L.P. is MinorCo, L.P., a Delaware limited partnership. Upon information and belief, the owner of all of the interests in Sprint Spectrum Holding Company, L.P. and MinorCo, L.P. is Defendant Sprint Nextel Corporation.

## FACTS
### Early Termination Fees

14.     Defendants require customers to abide by standard wireless customer service agreements ("Agreements").

15.     Defendants distribute the Agreements on preprinted standardized forms that are not subject to modification or negotiation, or, if the consumer is shopping on the Internet, through read-only screens that cannot be modified by users; Defendants present these Agreements to prospective subscribers on a "take it or leave it" basis. These Agreements are contracts of adhesion.

16.     Each of Defendants' Agreements includes, as a term and condition of service, a purported liquidated damages clause that requires subscribers to pay early termination penalties if for any reason they seek to terminate service before the expiration of the contract period, which is typically one or two years.

17.     These early termination penalties are also due if Defendants terminates the agreement for, among other things, nonpayment by the customer.

18.     The specified penalty for customers terminating service before the expiration of a specified term is typically between $150.00 and $200.00 per line, depending on the Defendant charging the ETF.

19.     The early termination penalty does not vary during the term of the contract. The customer is required to pay the full penalty whether he or she cancels fifteen calendar days into the contract or one day before the date it is scheduled to expire.

-5-

20. The customer must pay the early termination penalty even if cancellation is the result of non-existent, poor, or otherwise inadequate service.

21. The early termination is a penalty, and, in fact, is not a reasonable measure of the anticipated or actual loss, if any, that the termination causes Defendants.

22. Apparently, the actual purpose of the early termination fee is to recoup equipment costs. This admission was recently made by the international association that represents the wireless communication industry, the Cellular Telecommunications and Internet Association (CTIA) – of which Defendants are members – in a filing to the FCC: "The longer assured commitment under these term contracts enables the carriers *to reduce handset prices* at the inception of the term and to reduce monthly service charges, based on the expectation that initial and ongoing costs can be recouped gradually over time."[1]

23. Defendants therefore disguise a fee to recover equipment costs as a liquidated damages clause, which is an illegal penalty when damages are readily calculable. The termination fee is not actually designed to compensate Defendants for any damages arising from the termination, but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services (what is known as "churn").

24. Defendants' early termination penalty discourages competition in the wireless industry because it prevents consumers cannot freely shop around for the best wireless service.

25. The early termination penalty is not a rate charged, nor is it part of Defendants' rate structure, nor is it a rate component charged for any "service." It is part of the "Terms and Conditions" and can only be categorized as an illegal penalty provision.

---

[1] "Petition of the Cellular Telecommunications and Internet Association for an Expedited Discovery Ruling," page 15, March 15, 2005, FCC, WT-05-194.

26. The termination penalty is an illegal and void liquidated damages provision. It constitutes an unjust, unconscionable, unlawful, unfair and deceptive practice under all applicable statutes and laws.

27. Furthermore, Plaintiffs are informed and believe that any request for a change in service can only be granted with a renewal of the initial contract term, thereby extending the contract an additional year (or two years) as of the date of the modification. This required extension further discourages Plaintiffs and Class members from changing their service to obtain lower prices or otherwise modify their plan because it reinstates early termination penalties.

28. Plaintiffs are informed and believe that many if not the majority of Defendants' customers are locked into customer service agreements beyond the initial one- or two-year period, at which point Defendants no longer need to purportedly "recover" alleged customer acquisition costs.

29. Plaintiffs are informed and believe that the early termination penalty provisions have permitted Defendants to collect revenues and generate enormous profits as a result of: (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiffs to service for at least the original contract period, and, in most cases, for additional years.[2]

---

[2] At the Yankee Group wireless conference in New York in June of 2006, Verizon's Chief Executive, Denny Strigl, announced that it would pro-rate its termination fees, stating "complaints on this issue [ETFs] [are] the single largest that our customers have. . . .It's a legitimate complaint: If they leave in month one or month 23, [customers] pay the same charge." Strigl further referred to ETFs as a "black eye" on the cellular industry. *Verizon to ease termination fees,* Bruce Myerson, June 28, 2006, http://www.msnbc.msn.com/id/13600607/

### No Enforceable Agreement To Arbitrate

30.     Defendants have inserted clauses into its "terms and conditions" that purport to impose mandatory arbitration and/or waive the right to class action.  However, these terms and conditions constitute contracts of adhesion insofar as they are drafted entirely by the Defendants on a take-it-or-leave-it basis in a setting in which disputes between the contracting parties predictably involve small amounts of damages.  Plaintiffs had neither the bargaining power nor the ability to change the contractual terms.  Defendants rely on its purported mandatory arbitration provisions to shield it from civil liability.  In practice, the waivers virtually immunizes the defendants from responsibility for their own wrongful conduct.  Such waivers are unconscionable under the law of this Circuit and state laws, and should not be enforced.

31.     Similar mandatory arbitration provision have been held unenforceable. *See, e.g.*, *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 912 A.2d. 88, 2006 WL 2273448 (N.J., August 9, 2006); *Ting v. AT&T Corp.*, 319 F.3d 1126 (9th Cir. 2002), *cert. denied*, 540 U.S. 811 (2003); *Discover Bank v. Superior Cour*t, 36 Cal.4th 148 (2005); *Kinkel v. Cingular*, No. 100925, 223 Ill.2d 1, 2006 WL 2828664 (October 5, 2006); compare *Zobrist v. Verizon Wireless*, 354 Ill.App.3d 1139 (Ill. 5th Dist., 2004) (granting motion to compel arbitration, but compelling class-wide arbitration).

32.     The delay incurred by these motions imposes unnecessary and burdensome costs on customers who assert meritorious claims, and ultimately discourages customers from pursuing their legal rights.  *See, e.g.*, Ting, 319 F.3d 1126.

33.     On information and belief, Defendants do not use arbitration to resolve their own claims against a customer.  Instead, they resolve scores of claims against customers by assigning

them to collection agencies who then pursue a variety of means to resolve them, including filing lawsuits, but not arbitration.

## CLASS ACTION ALLEGATIONS

### A. Definition of the Class

34. Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the classes defined below, of which Plaintiffs are member:

**Class A (FCA Class)**:

All persons and entities who Defendants charged an Early Termination Fee within one year prior to the Complaint's filing date.

**Class B (Specific States Sub-Class):**

All persons and entities in Alabama, Arkansas, Arizona, California, Florida, Illinois, Michigan, Missouri, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia and Washington who Defendants charged an Early Termination Fee, within applicable statute of limitations.[3]

35. Excluded from the class are "Sprint" members of the certified class in *Hall, et al. v. Sprint Spectrum L.P., et al.*, No. 04 L 113 (Third Judicial Circuit, Circuit Court, Madison County Illinois), *aff'd*, -- N.E.2d --, 2007 WL 1892679 (Ill.App.5 Dist., June 27, 2007), *appeal pending*, *Sprint Spectrum L.P., et al.*, Petitioners, No. 105309. Also excluded from the Class are members of the judiciary, Defendants, any entity in which they have a controlling interest, and their officers and directors and the members of their immediate families are excluded.

---

[3] *See e.g.,* Cal. Bus. & Prof. Code § 17200 et seq., and Cal. Bus. & Prof. Code § 17500 et seq (California); 815 ILCS § 505/1 et seq. (Illinois); Mo. Rev. Stat. § 407.010 *et seq.*; N.J. Rev. Stat. § 56:8-1 et seq.; and Wash. Rev. Code § 19.86.010 *et seq.*

    **B.**    **Numerosity**

36.    At this time, Plaintiffs dos not know the exact size of the ETF Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that ETF Class members are so numerous that joinder of all members is impracticable. The number of class members can be determined through appropriate discovery.

    **C.**    **Commonality**

37.    There are questions of law or fact common to the ETF Class, including at least the following:

    (a)    Whether the ETF is unjust, unreasonable and/or unlawful;

    (b)    Whether Defendants' conduct violated the Federal Communications Act;

    (c)    Whether Defendants charged Class members ETFs;

    (d)    Whether the ETF is unjust, and/or unlawful;

    (e)    Whether Defendants' conduct constitutes deceptive, unfair and/or oppressive conduct;

    (f)    Whether Defendants are/were unjustly enriched;

    (g)    Whether Defendants intended the ETF to subsidize the cost of cellular telephones purchased by Plaintiffs and the Class from Defendants;

    (h)    Whether Declaratory Relief is appropriate; and

    (i)    Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of such damages.

**D.     Typicality**

38.     Plaintiff has the same interests in this matter as all other members of the class, and his claim is typical of all members of the class.

**E.     Adequacy**

39.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of Class members and do not have interests adverse to the Class.

**F.     The Prerequisites of Rule 23(b)(2) are Satisfied**

40.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

41.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.  Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

42.     Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

43.     Defendants' systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

### G. The Prerequisites of Rule 23(b)(3) are Satisfied

44. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

### COUNT I
### (Violation of § 201 of the Federal Communications Act)

45. Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if fully set forth herein.

46. At all times relevant hereto there was in full force and effect the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

47. This Count is asserted by Plaintiffs individually and on behalf of <u>Class A</u>.

48. Defendants are common carriers engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq.*

49. Defendants' termination penalties, described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

50. Section 201(b) of the FCA provides that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable. 47 U.S.C. § 201(b).

51. Defendants' ETFs are unjust, unreasonable and/or unlawful under Section 201(b).

52. As a direct and proximate result of Defendants' violation of 47 U.S.C. §§ 201(b) described above, Plaintiffs and the Class have been damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.  Designating Plaintiffs as representatives of the Class and counsel as Class counsel;

C.  Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D.  Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.  Granting such further relief as the Court deems just.

## COUNT II
### (Violation of Consumer Protection Acts)

53. Plaintiffs repeat and re-allege the allegations of the prior paragraphs as if fully set forth herein.

54. This Count is asserted by Plaintiffs individually and on behalf of Class B, as defined herein.

55. Plaintiffs brings their statutory fraud claims pursuant to the substantially similar Consumer Fraud Acts of Class B,[4] all of which were enacted and designed to protect consumers against unfair, deceptive and/or fraudulent business practices. *See, e.g.,* N.J. Rev. Stat. § 56:8-1 *et seq*. These Consumer Protection Acts are modeled after the FTC's consumer protection provisions and are collectively referred to herein as "Consumer Acts."

56. For example, New Jersey's Consumer Act (N.J.S.A. 56:8-2) provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice

57. At all relevant times, Plaintiffs, Class members and Defendants were "persons" within the meaning of the Consumer Acts, *see e.g.*, N.J.S.A. 56:8-1.

58. The imposition of an ETF is an act or practice in the conduct of trade or commerce.

59. The imposition of an ETF impacts the public interest.

60. The imposition of an ETF is deceptive because Defendants describe it as a liquidated damages clause and state that its damages are difficult or impracticable to calculate, when, in fact, it is a charge to recover the cost of equipment, and Defendants' damages, if any, are in fact quite simple to calculate and/or recover.

61. The imposition of an ETF is unfair because it is imposed even when Defendants fail to properly provide class members with the wireless cellular services for which they

---

[4] See e.g., Cal. Bus. & Prof. Code § 17200 et seq.; Fla. Stat. Ann. § 501.201 *et seq.*; 815 ILCS § 505/1 et seq.; MICH. COMP. LAWS § 445.901, et seq.; Mo. Rev. Stat. § 407.010 *et seq.*; N.J. Rev. Stat. § 56:8-1 et seq.; Wash. Rev. Code § 19.86.010 *et seq.*

contracted (as reflected in Defendants' own records); while class members are always at risk of breach, Defendant is never at risk of breach.

62.     The imposition of an ETF is further unfair because it is imposed even when Defendants do not suffer any damages (as reflected in their own records) from a class member's early cancellation.

63.     The ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, defendants turn "delinquent" accounts over to collections and negatively impact consumers credit history); and causes consumers substantial injury.

64.     Plaintiffs and the ETF Class suffered economic injury as a direct and proximate result of Defendants' conduct, including but not limited to the amount of the ETFs improperly charged.

65.     Defendants committed deceptive acts or practices within the meaning of the Consumer Acts by engaging in the acts and practices alleged herein.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and or Classes defined herein;

   B.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   C.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   D.   Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

   E.   Granting such further relief as the Court deems just.

## COUNT III
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201)

66. Plaintiffs incorporate the prior or paragraphs as if fully set forth herein.

67. There is an actual controversy between Defendants and the Class concerning the enforceability of the early termination fee provisions contained in the customer service agreements to which they are all parties.

68. Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

69. Plaintiffs are interested parties who seek a declaration of their rights and legal relations vis-à-vis Defendants with regard to early termination fee provisions contained in the customer service agreements to which they are all parties. Specifically, Plaintiffs seek a declaration that such provisions are unlawful and unenforceable.

WHEREFORE, Plaintiff, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2), and certifying the Injunction Class defined herein;

B.   Designating Plaintiffs as representatives of the Class and counsel as Class counsel;

C.   Entering judgment in favor of Plaintiffs and Class and against Defendants;

D.   Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.   Granting such further relief as the Court deems just.

-16-

        CARELLA, BYRNE, BAIN, GILFILLAN,
        CECCHI, STEWART & OLSTEIN
        Attorneys for Plaintiffs

        By:   /s/ James E. Cecchi
              JAMES E. CECCHI

Dated: November 5, 2007

Of counsel:

Paul M. Weiss
William M. Sweetnam
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Eric Stoppenhagen
LAW OFFICE OF ERIC STOPPENHAGEN
285 Avenue C, Suite #MB
New York, New York 10009

-17-

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all claims so triable.

                              CARELLA, BYRNE, BAIN, GILFILLAN,
                              CECCHI, STEWART & OLSTEIN
                              Attorneys for Plaintiffs

                         By:   /s/ James E. Cecchi
                                 JAMES E. CECCHI

Dated: November 5, 2007

Of counsel:

Paul M. Weiss
William M. Sweetnam
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Eric Stoppenhagen
LAW OFFICE OF ERIC STOPPENHAGEN
285 Avenue C, Suite #MB
New York, New York 10009