UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON and TESSIE ROBB, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL<br><br>　　　　　　　　Defendants. | Civil Action No. 07-5325(JLL) |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES**

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Jeffrey Leon
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiff and the Class

Stephen A. Weiss
Jonathan Shub
SEEGER WEISS LLP
One William Street
New York, New York 10004

**TABLE OF CONTENTS**

Table Of Authorities ...................................................................................................ii

Preliminary Statement .................................................................................................1

Legal Argument

      The Request For Counsel Fees And
      Reimbursement Of Expenses Should Be Approved ..............................................3

      A.     The Common Fund Doctrine Applies To The Settlement ........................3

      B.     Plaintiffs' Counsels' Fees Should Be Based
             On A Percentage Of The Common Fund...................................................4

      C.     The Requested 33 Percent Award Is Fair And Reasonable .....................5

             1.     Plaintiffs' Counsel Obtained A Substantial Benefit To Class Members .......6

             2.     Plaintiffs' Counsel Brought This Matter To An Efficient Conclusion .........6

             3.     A Fee Of 33% Is Standard In Common Fund Cases ....................................8

             4.     Class Counsel Undertook The Risk Of Non-Payment................................11

             5.     Plaintiffs' Counsel Devoted Significant Time To This Case........................12

             6.     The Requested Fee Is Consistent With
                   Contingent Fee Arrangements Negotiated In Non-Class Litigation..............13

             7.     The Fee Request Is Also Supported By The Lodestar Cross-Check .............14

             8.     Plaintiffs' Counsel Should Be Reimbursed
                   For Their Reasonably Incurred Litigation Expenses .....................................17

      Conclusion ...........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) .................................................... 17

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd without op.*, 899 F.2d 21 (11th Cir. 1990)............................................................ 5, 6

*Blackman v. O'Brien Envtl. Energy, Inc.*,
    1999 U.S. Dist. LEXIS 7160 (E.D. Pa. May 11, 1999) ........................................................ 9

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................... 3

*Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000)..................................................................... 3

*Cosgrove v. Sullivan*, 759 F. Supp 166 (S.D.N.Y. 1991) ............................................................ 16

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000). .......................................... 7, 9

*Education Station Day Care Center v. Yellow Book USA*,
    2007 WL 1245971 (N.J.App.Div. 2007) ........................................................................ 10

*ETSI Pipeline Project v. Burlington Northern, Inc.*,
    1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 5, 1989)................................................... 13

*Feerer v. Amoco Prod. Co.*, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998)................. 16

*Fox v. Nationwide Mutual Fire Insurance Co.*, 977 F.2d 47 (2d Cir. 1992) ............................... 10

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)............................................. 15

*Hensley v Eckerhart*, 461 U.S. 424 (1983) ................................................................................... 4

*In re AT&T Corp. Securities Litigation*, 455 F.3d 160 (3d Cir. 2006) .................................... 4, 5

*In re Boston & Maine Corp.*, 778 F.2d 890 (1st Cir. 1985)......................................................... 16

*In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) ......... 16

*In re Cendant Corp. Derivative Litigation*, 232 F.Supp.2d 327 (D.N.J. 2002) ......................... 15

*In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722 (3d Cir. 2001)............................ 4, 10, 14

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
    2003 WL 22417252 (D.Me. 2003). ................................................................................... 9

*In re Computron Software, Inc.*, 6 F.Supp.2d 313 (D.N.J. 1998) ................................................. 5

*In re Electrical Carbon Products Anti-Trust Litigation*, 447 F.Supp.2d 389 (D.N.J. 2006).......... 4

*In re EquiMed, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) ................ 9

*In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423 (E.D. Pa. 2001) ....................................... 9

*In re Greenwich Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 25, 1995)........ 9

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ................. 4, 5, 8, 13

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
    1994 WL 202394 (E.D. La. May 18, 1994) ...................................................................... 11

*In re RJR Nabisco, Inc. Sec. Litig.*, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992): .. 13

*In re Triangle Indus. S'holder's Litig.*, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991)...... 16

*In re Unisys Corp. Sec. Litig.*, 2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001) ................ 9

*In re ValueVision Int'l Inc. Sec. Litig.*, 957 F. Supp. 699 (E.D. Pa. 1997)................................... 9

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ....................... 8, 11

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................. 16

*Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995); ..................... 9

*Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456 (1st Cir. 1988)............................. 10

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ................... 14

*Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139 (3d Cir. 1998) ........................................... 3

*Ratner v. Bennett*, 1996 U.S. Dist. LEXIS 6259 (E.D. Pa. May 8, 1996) ..................................... 9

*Rendine v. Pantzer*, 141 N.J. 292 (1995) ................................................................. 10

*RJR Nabisco*, 1992 U.S. Dist. LEXIS 12702............................................................. 16

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)........................................ 16

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 941 (E.D.Tex. 2000) ........... 8

*Willson v. N.Y. Life Ins. Co.*, 1995 N.Y. Misc. LEXIS 652 (Sup. Ct. Nov. 8, 1995) .................. 16

*Zinman v. Avemco Corp.*, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) ...................... 9

**OTHER AUTHORITIES**

Third Circuit Task Force, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) ............. 14

**TREATISES**

1 Alba Conte, Attorney Fee Awards, §2.06 at 39 N. 90 (2d ed. 1993)........................................ 16

*Newberg on Class Actions*, §14.06 at 550 (4th ed. 2002)............................................................ 6

## PRELIMINARY STATEMENT

Class Counsel submit this Memorandum in support of their petition, on behalf of all supporting counsel, for an award of attorneys' fees and reimbursable expenses.  As was detailed with particularity in Plaintiffs' accompanying Memorandum of Law in Support of Final Approval of Proposed Settlement, the Settlement in this action represents a manifestly favorable outcome for the Class, particularly when judged in the context of the meaningful litigation risks attendant in this action, as well as the challenging economic environment with which consumers throughout the country are now confronted.  The overall economic benefit of $17.5 million dollars provides the Class with certain immediate economic recovery on claims that have already been demonstrated to be subject to significant and viable offsets and counterclaims.

In achieving this result, Class Counsel—and the numerous nationally-respected law firms joining in this petition—worked many thousands of hours, all on a contingency basis with no guarantee of success or ever being paid.  The requested fee of 33% of the Class benefit ($5,775,000), plus reimbursement of expenses of $171,558.80, reflects the risk taken by Class Counsel, as well as the estimable result achieved.  When utilizing this Circuit's preferred method of contingency fee determination (*i.e.*, percentage of the fund with a lodestar cross-check), it is abundantly clear that the requested fee is not only reasonable, but well within the heartland of fees awarded in similar contingency cases.  The multiplier Class Counsel seeks is not only modest, but will be further reduced as this case is destined to require significant appellate in the months ahead.

Further, Class Counsel respectfully submits that they be permitted, as is customary, to allocate any requested fee award, in an appropriate manner to those law firms and counsel that have contributed to the creation of the common fund, and supported the approval of the Settlement.  By contrast, it is manifest at law and in equity that those lawyers and firms that have

opposed the Settlement and sought to dismantle it for their own gain should not be rewarded at all.  A contrary result would turn the principles of common fund jurisprudence on its head and, just as importantly, offend basic notions of fair play and equity.  For that reason, Class Counsel has not included, nor would they agree, to provide any fee to those firms that have objected to and opposed the Settlement.

## LEGAL ARGUMENT

## THE REQUEST FOR COUNSEL FEES AND
## <u>REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED</u>

The reasons why the Plaintiff Class should be certified and why the Settlement should be finally approved, as well as why the objections to the Settlement are meritless, are addressed in detail in separate memorandum filed simultaneously with this petition.   For the reasons set forth below, Plaintiffs' Counsel is entitled to a fee award equal to 33% of the value of the Settlement, or $5,775,000, plus $171,558.80 in reimbursable expenses.  They have conferred a substantial benefit upon the Class under difficult circumstances and should be appropriately compensated.

### A.      The Common Fund Doctrine Applies to the Settlement

Under the "common fund" doctrine, attorneys' fees are appropriately paid from a common fund when the litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998) (internal citation omitted).  The Supreme Court consistently has recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine reflects the traditional practice in equity, and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id*; *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000).  The Third Circuit has noted that at the "heart of this [doctrine] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Polonski*, 137 F.3d at 145.

**B.**     <u>Plaintiffs' Counsels' Fees Should be Based on a Percentage Of The Common Fund</u>

In common fund cases such as this one, the percentage-of-benefit method is generally favored in calculating an award of fees because it allows the Court to reward success and penalize failure. *In re AT&T Corp. Securities Litigation*, 455 F.3d 160, 164 (3d Cir. 2006). *See also In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3d Cir. 2001); *In re Electrical Carbon Products Anti-Trust Litigation,* 447 F.Supp.2d 389, 405 (D.N.J. 2006). The primary factors to be considered in reviewing a proposed common fund class action settlement are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*AT&T*, 455 F.3d at 165; *Cendant*, 243 F.3d at 733; *Electrical Carbon*, 447 F.Supp.2d at 405. The Court may also consider:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*AT&T*, *id.*; *Electrical Carbon*, *id*. at 405-06. "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *AT&T*, *id.* at 165-66. *See also Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'"); *Behrens v.*

4

*Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd without op.*, 899 F.2d 21 (11th Cir. 1990) ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained").  Thus, the foregoing factors "are not to be applied in a formulaic way because each case is different and in certain cases, one factor might outweigh the rest."  *AT&T, id.* at 166.  The Third Circuit requires that the District Court cross-check the percentage-of-recovery calculation with the lodestar method to ensure that a percentage-of-recovery calculation is not too great.  *Id.* at 164.  That said, "the lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."  *Id.*

## C.      The Requested 33 Percent Award Is Fair and Reasonable

Applying the foregoing factors, the 33% fee award is fair and reasonable under all of the circumstances.  The Third Circuit has not established a benchmark for fee awards in common fund cases, but has observed that fee awards generally range from 19% to 45% of the settlement fund.  *GM Trucks*, 55 F.3d at 822; *see also Ikon*, 194 F.R.D at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"); *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 322-23 (D.N.J. 1998)("There is no set standard, however, on how to determine a reasonable percentage.  Awards utilizing the percentage-of-recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund . . .  [T]he percentage awarded, should, and generally does, increase commensurate with increased quality of representation.").  Similarly, in his leading treatise on class action law, the late Herbert Newberg wrote:

> No general rule can be articulated on what is a reasonable percentage of a common fund.  A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured.  Usually 50 percent of the fund is the upper limit of a reasonable fee award from a common

fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented.

*Newberg on Class Actions*, §14.06 at 550 (4th ed. 2002).

**1.     Plaintiffs' Counsel Obtained a Substantial Benefit to Class Members**

Plaintiffs' Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved.  *AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of the class counsels' services to the class are the results obtained.'").  *See also Behrens*, 118 F.R.D. at 547-48 ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained").

Plaintiffs' Counsel negotiated a $17.5 million Settlement for the Class, which is a certain, present return for Class members, rather than the speculative returns suggested by Objectors' counsel.  The purpose of a class action lawsuit is to provide a benefit to Class members, not to litigate for the sake of litigating.  Plaintiffs' Counsel delivered a significant benefit to the Class in the face of numerous potentially fatal obstacles.  Class Counsel should, accordingly, be appropriately rewarded for their achievement.

In addition, the fact that there were relatively few objections to the Settlement weighs in favor of Plaintiffs' Counsel's request for fees.  There were not even a handful of objections from ordinary class members.

**2.     Plaintiffs' Counsel Brought This Matter to An Efficient Conclusion**

The quality of the work which has been presented to the Court, the undersigned believe, speaks for itself.  Facing the substantial risk of an adverse finding of liability against class members similar to the one rendered by the California jury in the *Ayyad* action, Class Counsel's results here can only be viewed as admirable.  Repeatedly throughout the mediation, Class

Counsel deftly sidestepped the specter of the *Ayyad* jury's determination and achieved a fulsome recovery for the class.

Although this matter is, relatively speaking, in an early stage purely from an individual litigation standpoint, Class Counsel did not come to this case with a blank slate.  They have participated in numerous other ETF litigations and, more importantly, were armed with more information about the case than any other lawyers throughout the United States.  Class Counsel's efforts were spent behind the scenes working with a leading mediator to reach a Settlement that brings tremendous immediate benefits to the Class.  Class Counsel's efforts speak for themselves particularly when the Court considers the failure of other litigated ETF cases.

Galleguillos complains that the 33% fee sought by Plaintiffs' Counsel is unreasonable because they did not litigate the case enough.  (Galleguillos Objection at 30-31).  This argument holds no merit factually or legally.  The fact that a case settles as opposed to proceeding to trial "'in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases."  *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).  Further, in achieving the Settlement before the Court, Class Counsel invested thousands of hours of time and worked for many months to achieve a resolution that other lawyers were simply unable to achieve even after years of litigation.  It would be a perverse result indeed if Class Counsel were to be punished for this efficiency which is what Galleguillos' lawyer apparently seeks to do.

The substantive merit of this challenge to Class Counsel's fees is, moreover, best tested by the fact that the very lawyers who are seeking to undermine and destroy the Settlement, have submitted their own fee petition to the Court to be paid for the work on the Nextel *Robertson* case and the California Subscriber case.  In other words, the common fund created by Class

Counsel here is sufficient for the Class and sufficient to fund attorneys' fee payments, but only when those payments go to Galleguilos' counsel and the other objectors counsel. Although Objectors' counsel get high marks for chutzpa, their attacks fall transparently flat. These lawyers did nothing to create this common fund and their efforts in California did much to undermine the value of the national claims—claims they never prosecuted anywhere else. Most strikingly, their efforts since this settlement was achieved have been directed to dismembering the common fund and, as such, they should receive no benefit from it.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel. *See*, *e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 941, 970 (E.D.Tex. 2000). Plaintiffs Counsel are experienced class action and federal court practitioners. *See Waudby*, 148 F.R.D. at 175-77. Defense counsel in this case were attorneys from two highly-respected national law firms, Kelly Drye & Warren and Quinn Emmanuel. Judge Politan's Declaration speaks clearly to this factor, as well as the long and difficult negotiations that were necessary to reach this Settlement. (*See generally*, Politan Dec).

Class Counsel's ability to obtain such a favorable settlement for the Class in the face of such legal opposition further confirms the superior quality of Class Counsel's representation. Accordingly, Class Counsel respectfully submit that this factor strongly supports their application.

### 3. A fee of 33% Is Standard In Common Fund Cases

Here, Plaintiffs' counsel request a fee of 33% of the common fund, a percentage commonly rewarded by the Third Circuit in common fund cases. *See*, *e.g.*, *In re EquiMed, Inc.*

*Sec. Litig.*, 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) (awarding 33⅓%); *Cullen,* 197 F.R.D. 136 (awarding 33⅓%); *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423 (E.D. Pa. 2001) (awarding 33⅓%); *In re Safety Components, Inc. Securities Litigation*, 166 F.Supp.2d 72 (D.N.J. 2001) (awarding 33⅓%); *AremisSoft*, 210 F.R.D. 109 (awarding 33⅓%); *In re Unisys Corp. Sec. Litig.*, 2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001) (awarding 33⅓%); *Blackman v. O'Brien Envtl. Energy, Inc.*, 1999 U.S. Dist. LEXIS 7160 (E.D. Pa. May 11, 1999) (awarding 35%); *In re ValueVision Int'l Inc. Sec. Litig.*, 957 F. Supp. 699 (E.D. Pa. 1997) (awarding 34.27%); *Ratner v. Bennett*, 1996 U.S. Dist. LEXIS 6259 (E.D. Pa. May 8, 1996) (awarding 35%); *In re Greenwich Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 25, 1995) (awarding 33⅓%); *see also Zinman v. Avemco Corp.*, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) (Higginbotham, J.) (awarding 50%).

Objectors John Pentz, Anita Levine and Tara and Tom Montague, and Greg LeBlanc (together the "Pentz Objectors")[1] all object to Plaintiffs' Counsel's receiving a fee of 33% of the Settlement fund, arguing that since a New Jersey Consumer Fraud Act claim was among the claims Plaintiffs asserted, counsel's attorneys fees are limited by New Jersey laws relating to statutory attorney's fee awards.  That is not so.

The cases relied upon by the Pentz Objectors involved instances where the successful party was seeking an award of attorney's fees pursuant to a state fee-shifting statute, *Mangold v. California Public Utilities Commission*, 67 F.3d 1470 (9th Cir. 1995); *Fox v. Nationwide Mutual*

---

[1]  As recognized by at least one Federal court, Mr. Pentz is a "repeat objector in class action cases."  *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252 at *2 n. 3 (D.Me. 2003).  Edward Siegel, counsel for Ms. Levine and the Montagues, was counsel for four objectors to the attorney fee award in *AT&T*. Considering that Pentz, Levine, the Montagues and LeBlanc all rely upon the same cases to make the same argument, it is highly unlikely that those objections were not coordinated.

9

*Fire Insurance Co.*, 977 F.2d 47 (2d Cir. 1992), or a contractual provision which allowed for the prevailing party in litigation to be awarded their reasonable attorney's fees. *Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456 (1st Cir. 1988). Likewise, *Rendine v. Pantzer*, 141 N.J. 292, 316-346 (1995) expounded the considerations for computing attorney fee awards under state fee-shifting statutes.

Although Plaintiffs asserted claims under the Federal Communications Act and the New Jersey Consumer Fraud Act, both of which allow for successful claimants to be awarded their attorney's fees, Plaintiffs are not seeking an award of statutory attorney's fees in addition to the Settlement Fund being established under the terms of the Settlement. Rather, they are seeking payment of their fees from that common fund. Therefore, the considerations explained in *Redline* are simply not applicable.

The lodestar method of calculating attorney's fees is generally used in statutory fee shifting cases, while the percentage-of-recovery method is generally used in common fund cases. *Cendant PRIDES*, 243 F.3d at 733. This is a common fund case in which Plaintiffs' attorney's fees are being paid out of, rather than on top of, the Settlement fund. Thus, the percentage of recovery method is the preferred method of calculation. Indeed, in *Education Station Day Care Center v. Yellow Book USA*, 2007 WL 1245971 (N.J.App.Div. 2007),[2] in which Mr. Pentz was the party unsuccessfully objecting to the attorney fee award, the Appellate Division recognized that statutory attorney fee awards are calculated differently than common fund awards. "Plaintiff's counsel also deserves an enhancement for resolving the matter expeditiously through

---

[2]       The citation in Mr. Pentz' Objection, 194 N.J. 271 (2008) is to the order denying certification of the Appellate Division decision.

mediation rather than increasing the lodestar through protracted litigation, and for not seeking a fee against the class, which could have been based on a percentage of recovery." *Id.* at * 8.

Further, there is no merit to the argument that the $3,500,000 in additional benefits negotiated for the Class are somehow akin to the oft-criticized "coupon" settlements of the past. Such an assertion is plainly untenable. The Settlement agreement is crystal clear that the value of these benefits to the Class is exactly $3,500,000. Thus, this facet of the Settlement bares no similarity at all to settlements where courts struggled to assign value to a benefit negotiated by Class Counsel. Here, Sprint is obligated to provide a definite, fixed, non-negotiable value to the Class. The benefit, as part of the Settlement, must equal $3,500,000. Thus, this is not a case where there is any question as to the proper value of the overall Settlement. It has a fixed, definite value of $17,500,000, and Class Counsel's fee should be determined utilizing that value.

### 4.    Class Counsel Undertook the Risk of Non-Payment

Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their substantial out-of-pocket expenses. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Communications*, 618 F. Supp. at 747-49 (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

11

The Court is well familiar with the numerous substantive and procedural risks this case faced. Despite these risks, Class Counsel here were able both through their efforts and Judge Politan's efforts to forge a resolution that provides significant relief to the Class, including relief that could not have been achieved through trial alone. That relief includes not only monetary recovery, but the institution of a pro-rated ETF policy that will benefit consumers on an ongoing basis for years. Tested by the many infirmities of the case itself, there is little doubt that Class Counsel undertook a signficant risk here and the fee award should, respectfully, reflect that risk.

### 5.    Plaintiffs' Counsel Devoted Significant Time to This Case

Since its inception, Class Counsel have expended over 6,397 hours[3] and incurred more than $171,558.80 in out-of-pocket expenses on this case. *See* Fee Affidavit Compendium submitted concurrently herewith. This includes, *inter alia*, the time spent in the initial investigation of the case, researching complex issues of law, preparing and filing the Complaint, engaging in months-long, researching and briefing oppositions to Sprint's motions to dismiss, reviewing documents produced by Sprint, hard-fought settlement negotiations (including many, many hours spent in and out of the mediation), documenting the complex features of the Settlement, researching and briefing issues relating to the preliminary and final approval of the Settlement, and further time to be spent in arguing final approval. Indeed, Class Counsel's submission today does not include time to be spent going forward—both in preparing and presenting arguments on final approval, or defending the settlement from any other appellate or other attacks that Objectors' counsel have already signaled will come.

---

[3]    Galleguillos appears to question the 4,558 hours expended as of the beginning of February 2009, arguing that this would have required a lawyer to work on the case for 10 hours a day, every day since the case was filed. (Galleguillos Objection at 37). That presumes, however, that only a single attorney from all of the firms collectively was doing the work for

6.      **The Requested Fee is Consistent with Contingent
        Fee Arrangements Negotiated in Non-Class Litigation**

Granting a 33% fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.  As explained in *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases  . . . .

If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See*, *e.g.*, *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, Lead Counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *accord Blum v. Stenson*, 465 U.S. 886, 904, n.* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion).

In *ETSI Pipeline Project v. Burlington Northern, Inc.*, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 5, 1989), for example, the prominent Houston law firm of Vinson & Elkins prosecuted the case on a one-third contingent fee basis.  After obtaining a $1 billion verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million.  In a publicly-filed declaration, an attorney from Vinson & Elkins explained with respect to the fee paid in *ETSI Pipeline*: "Absent a willingness to pay on a current basis, it is my belief that a client with a claim such as the one we prosecuted would be required

---

Plaintiffs.  That is, of course, not the case, since Plaintiffs' counsel are multi-attorney firms and more than one attorney at each firm was performing different tasks as needed in the litigation.

to offer a significant percentage of the recovery to his counsel in order to obtain representation."
Declaration of Harry Reasoner, submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
MDL No. 551 (D. Ariz. Nov. 30, 1990).

Thus, Class Counsel's application is supported by this factor.

### 7. The Fee Request Is Also Supported By the Lodestar Cross-Check

The Court of Appeals for the Third Circuit has expressly stated that counsel's lodestar is
to be used as a "cross-check" on any requested percentage fee award. *Cendant PRIDES*, 264
F.3d at 256. This cross-check is not designed to be a "full-blown lodestar inquiry," but rather an
estimation of the value of counsel's investment in the case. Third Circuit Task Force, *Selection
of Class Counsel*, 208 F.R.D. 340, 422-23 (2002). To calculate the lodestar amount, counsel's
reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See
Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). Here, the
lodestar method confirms the reasonableness of the percentage fee being sought.

Plaintiffs' Counsel and their staffs have spent a total of 6,397.53 hours on this case. *See*
Declaration of James E. Cecchi, dated March 2, 2009 ("Cecchi Dec."), Exhibit A. As reflected
in Plaintiffs' Counsel's accompanying Declarations, the hours recorded were incurred on, among
other tasks, initial investigation of the case, the time spent investigating the claims against the
Defendants, preparing and filing the Complaint, briefing Sprint's motions to dismiss, reviewing
documents in preparation for and as part of the mediation, mediating the case with Judge Politan
in person and by phone, documenting the Settlement, litigating the various motions precipitated
by the Settlement and litigating the approval of the Settlement. Given the effort expended and
the complexity of the legal and factual issues involved, the hours incurred are entirely
reasonable.

14

Moreover, Plaintiffs' counsel's rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of the particular attorney. The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations. As appropriate in the Third Circuit, the lodestar rates are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the lawyer. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000).

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Plaintiffs' counsel's rates are reasonable in this case. As set forth in Plaintiffs' counsel's accompanying declarations, this calculation yields a lodestar, before application of an appropriate multiplier, of $3,250,871.40. *See* Cecchi Dec., Exhibit A.

In the Third Circuit, multipliers are used to account for the risks of non-recovery, as an incentive for counsel to undertake socially beneficial litigation, or as an award for an extraordinary result. "By nature they are discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340. In *In re Cendant Corp. Derivative Litigation*, 232 F.Supp.2d 327, 341-42 (D.N.J. 2002), the court found that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."

*AremisSoft*, 210 F.R.D. at 135, is also instructive. There, the court noted that a multiplier of 4.3 was proper, noting that it was close to the range found acceptable by the Court of Appeals. The Court also noted the "high risk of non-payment" and the "innovative settlement" that provided compensation to the Class while enabling the defendant to continue to pursue profitable business activities. *Id.*

15

Here, the outcome for the Class is substantial.  As discussed in greater detail above, Plaintiffs' counsel faced a significant risk of nonpayment, not only for their time, but of unreimbursed out-of-pocket costs.  Thus, a multiplier of approximately 1.7 in this matter, is well within the parameters used throughout this Circuit.

Other courts, too, have found multipliers higher than the multiplier suggested here to be reasonable for cross-check purposes in other class actions.  *See, e.g., Weiss*, 899 F. Supp at 1304 (awarding fee that resulted in a multiplier of 9.3 times hourly rate); *Muchnick v. First Fed. Savings & Loan Ass'n*, No. 86-1104, 1986 WL 10791 (E.D. Pa. Sept. 29, 1986) (awarding fee equal to multiplier of 8.4); *Perera v. Chiron Corp.*, Civil No. 95-20725-SW (N.D. Cal. Feb. 17, 1999 and Feb. 29, 2000) (multiplier of 9.14); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier of 8.46); *Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) (awarding fee equal to a multiplier of 8.84); *In re Triangle Indus. S'holder's Litig.*, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) (awarding fee equal to 6.6 multiple on $70 million dollar recovery); *RJR Nabisco*, 1992 U.S. Dist. LEXIS 12702 (multiplier of 6.0); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (multiplier of 5.5); *Feerer v. Amoco Prod. Co.*, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) (multiplier of 4-5); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (multiplier of 4.65); *Willson v. N.Y. Life Ins. Co.*, 1995 N.Y. Misc. LEXIS 652 (Sup. Ct. Nov. 8, 1995) (multiplier of 4.6); *In re Boston & Maine Corp.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiple); *see also* 1 Alba Conte, Attorney Fee Awards, §2.06 at 39 N. 90 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of five or ten times the [lodestar]."), citing, *inter alia*, *Wilson v. Bank of America National Trust & Savings Ass'n*, No. 643872 (Cal. Super. Ct. Aug. 16, 1992) (awarding fee multiples of up to ten times hourly rates).

Accordingly, the lodestar cross-check supports Class Counsel's request.

**8.     Plaintiffs' Counsel Should Be Reimbursed
            For Their Reasonably Incurred Litigation Expenses**

Litigation expenses are properly recovered by plaintiffs' counsel. *See Safety Components*, 166 F. Supp. 2d at 108 ("[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action"), citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Here, Plaintiffs' Counsel incurred expenses in the amount of $171,558.80. Those should also be awarded from the Settlement Fund in addition to Class Counsels' requested fee award of $5,775,000.00.

17

## CONCLUSION

For all the reasons set forth above and in the accompanying declaration and affidavits, Plaintiffs respectfully request that the Class be finally certified for settlement purposes and the Settlement and Plan of Allocation be approved, and Class Counsel respectfully request that the application for attorneys' fees and reimbursement of expenses be granted.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiffs and the Class


By:    /s/ James E. Cecchi
        JAMES E. CECCHI

Dated:   March 2, 2009