NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| BARRY HALL, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL ACTION NO. 07-5325 (JLL) |
| | : | |
| AT&T MOBILITY LLC, | : | |
| | : | **OPINION** |
| Defendant. | : | |

---

**LINARES**, District Judge.

Pending before this Court is a motion to compel arbitration brought by Defendant AT&T Mobility LLC f/k/a Cingular Wireless LLC ("Defendant" or "ATTM") (Docket Entry # 75). Plaintiff Barry Hall ("Plaintiff" or "Hall"), as class representative, has filed opposition as well as a motion to strike the declaration of Richard Nagareda that was filed in support of Defendant's motion to compel arbitration.  (Docket Entry # 79)  The Court decides the dual motions on the papers pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, Hall's motion to strike is denied, and Defendant's motion to compel arbitration is denied.

**BACKGROUND**

**I.      Hall's Contract with ATTM**[1]

---

[1] The corporate history of ATTM begins in 2000 with the formation of Cingular as a joint venture owned 60% by SBC Communications, Inc. and 40% by BellSouth Corporation. (Berinhout Decl. ¶ 3.)  In November 2005, SBC Communications, Inc. completed a merger with AT&T Corporation, resulting in the formation of AT&T Inc.  (Id. ¶ 4.)  AT&T Inc. then completed its acquisition of BellSouth Corporation by December 29, 2006, thereby fully owning Cingular.  (Id.)  On January 8, 2007, Cingular Wireless was renamed AT&T Mobility LLC ("ATTM").  (Id. ¶ 5.)  Though the contracts at issue in this matter may have involved corporate predecessors to ATTM, for the sake of clarity the Court refers to those parties as ATTM throughout this Opinion.

The facts of this case are straightforward.  On August 21, 2005, Barry Hall ("Hall") activated service with ATTM by "porting" (or transferring) in an existing telephone number from another wireless service provider (T-Mobile).  (ATTM Br., Declaration of Neal S. Berinhout ("Berinhout Decl.") ¶ 15.)  On June 14, 2007, Hall canceled his service with ATTM and ported his number to another provider.  He paid an early termination fee ("ETF") of $150.  (Id. ¶ 17.) During the life of his contract with ATTM, Hall was subject to two different arbitration provisions, at two different periods in time.  The Court discusses each in turn.

**A.      2005 Arbitration Provision**

When Hall activated service in 2005, he was subject to the existing ATTM Terms of Service ("TOS").  (Berinhout Decl. ¶ 16.)  The TOS included a section entitled "Arbitration," pursuant to which the consumer and ATTM agreed to "arbitrate all disputes and claims (including ones that are already are the subject of litigation) arising out of or relating to [the Wireless Services Agreement]."  (Berinhout Decl., Exh. 1 ("Terms of Service") at 10.)  Under this mandatory arbitration clause, the consumer had the option of arbitrating or bringing the action in small claims court.

Before proceeding to proceed to arbitration, the party commencing the dispute had to send to the other (by certified mail) a written Notice of Intent to Arbitrate ("Notice").  The Notice was to describe "the nature and basis of the claim or dispute" and "the specific relief sought." (Id. at 11.)  Upon receipt of the Notice, ATTM had 30 days in which to attempt to resolve the claim.  Assuming an unsatisfactory result, the consumer could commence arbitration, under the auspices of the American Arbitration Association ("AAA"), and ATTM would pay all related filing, administration, and arbitrator fees as long as the arbitrator did not find the claim for relief

2

to be improper (as measured by Federal Rule of Civil Procedure 11(b)).  (Id.)  ATTM also agreed to reimburse the consumer for "reasonable attorneys' fees and expenses incurred for the arbitration" but only if the arbitrator granted relief equal to or greater than the value of the specific relief sought.

Finally, the 2005 Arbitration Provision included a class action waiver whereby the consumer and ATTM could bring claims against the other only in their individual capacities and "not as a plaintiff or class member in any purported class or representative proceeding."  (Id. at 12.)  The class action waiver was tied to a self-destruction provision, through which the entirety of the arbitration clause would be deemed null and void if a court deemed the waiver to be unenforceable.  (Id.)

### B.        2006 Arbitration Provision

In late 2006, ATTM inserted notices into customers' billing statements informing them of changes to the 2005 Arbitration Provision.  The new language (hereinafter, the "2006 Arbitration Provision") kept many of the old features but tweaked them so as to create a more consumer-friendly procedure.  ((Berinhout Decl., Exh. 3 ("2006 Arbitration Provision").)  Much like the prior provision, this new version also addressed a broad array of disputes, intended to cover all claims "arising out of or relating to any aspect of the relationship between" ATTM and the consumer."  (Id.)

If the consumer chose arbitration over small claims court, ATTM again offered to pay the filing fee and additionally offered to pay "filing, administration, and arbitrator" fees for any arbitration so initiated.  If, however, the arbitrator found the claim to be frivolous or brought for an improper purpose, as measured by Federal Rule of Civil Procedure 11(b), then the payment of

3

any monies would be governed by AAA rules.  The 2006 Arbitration Provision also included a similar class-action waiver and accompanying self-destruction clause, the enforceability of which is at issue in the present motion.  The provision reads:

> **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**  Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.  If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

Finally, the most significant change between the 2005 and 2006 Arbitration Provisions involved "the premium" (hereinafter, the "Premium") and the "attorney premium" (hereinafter, the "Attorney Premium").  The Premium entailed ATTM's promise to pay the greater of $7,500, or the maximum claim that could be brought in small claims court in the county of the consumer's billing address, if the arbitrator issued an award "greater than the value of AT&T's last written settlement offer made before an arbitrator was selected."  (Id.)  Additionally, in that situation, ATTM also agreed to reimburse the consumer's attorney for twice the amount of attorney's fees along with full reimbursement of expenses incurred by the attorney in investigating, preparing, and pursuing the claims in arbitration (the "Attorney Premium").

Finally, the 2006 Arbitration Provision contained no language limiting the right of an arbitrator to award punitive damages nor did it limit in any way the confidentiality of the proceedings.

## STANDARD OF REVIEW

Motions to compel arbitration are reviewed under the summary judgment standard of Fed.

R. Civ. P. 56(c).  Bellevue Drug Co. v. Advance PCS, 333 F. Supp. 2d 318, 322 (3d Cir. 2004);

Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 n.9 (3d Cir. 1980).  A court shall

grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  See

Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  Applying this summary

judgment standard, the Court proceeds to an analysis of ATTM's motion to compel arbitration.[2]

---

[2] Hall's motion to strike the Declaration of Professor Richard A. Nagareda ("Nagareda Dec."), attached to ATTM's motion to compel arbitration, is denied.  The Court is capable of considering the relevant expert opinion and according it the weight that it deserves.

**ANALYSIS**

A federal court has limited jurisdiction to address a challenge to the validity of an arbitration agreement.  Under the Supreme Court's decision in Buckeye Check Cashing, Inc. v. Cardegna, if there is a challenge to the "arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it.  But [the FAA] does not permit the federal court to consider claims [challenging] the contract generally." 546 U.S. 440, 445, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006).  Importantly, "the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine ... whether there is a valid agreement to arbitrate."  Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007).  Finally, in determining whether a matter shall be arbitrated, this court is mindful of the strong presumption in favor of arbitration.  Id.

Here, Hall challenge the enforceability of the class action waiver embedded within the arbitration provision.  Thus, they challenge the specific arbitration clause rather than the entirety of the contract between Hall and ATTM, and the Court exercises its jurisdiction appropriately. The Court is limited, therefore, only to the issue of whether the class-waiver language in the 2006 Arbitration Provision is unconscionable under California law, and if so, whether that determination is preempted by the Federal Arbitration Act.

**I.    Unconscionability**

**A.    California Law**

The first question presented to the Court is whether or not the class-action waiver

embedded in the 2006 Arbitration Provision is unconscionable under California law.[3]  Several California courts have already opined on the issue.

### 1.    Discover Bank

In <u>Discover Bank v. Superior Court</u>, 113 P.3d 1100 (Cal. 2005), the California Supreme Court found a class action waiver in a consumer contract of adhesion unconscionable under California law.  Finding the class action, in the context of consumer actions, to be "inextricably linked to the vindication of substantive rights," the <u>Discover Bank</u> Court held that while not "all class action waivers are necessarily unconscionable," those involving "one-sided, exculpatory contracts in a contract of adhesion" are "generally unconscionable" under California law.  <u>Id</u>. at 1109-10.  Thus, the Court invalidated a provision in an arbitration agreement between Plaintiff and Discover Bank that precluded class-wide arbitration.

Most importantly, <u>Discover Bank</u> set forth the procedural and substantive underpinnings for a finding of unconsionability under California law.  The procedural element generally involves a contract of adhesion, "imposed and drafted by a party of superior bargaining strength," given to the consumer on a take-it-or-leave-it basis.  <u>Id</u>. at 1108.  Substantively, the question is whether the contract operates as an exculpatory clause that insulates a party from liability that

---

[3] Usually, New Jersey courts will only uphold the parties' contractual choice-of-law if the laws of the chosen state do not violate New Jersey's public policy.  <u>Homa v. American Express Co.</u>, __ F.3d ____, 2009 WL 4409912, at *2 (3d Cir. Feb. 24, 2009) (citation omitted).  Here, neither party argues that choice-of-law principles preclude application of California law.  Thus, the Court does not delve into a lengthy choice-of-law analysis and simply pauses to articulate its general finding that application of California law on the issue of unconscionability is not contrary to a fundamental policy of New Jersey.  In fact, the two standards – as articulated by <u>Discover Bank v. Superior Court</u>, 113 P.3d 1100 (Cal. 2005) and <u>Muhammad v. County Bank of Rehoboth Beach, Del.</u>, 189 N.J. 1, 912 A.2d 88 (2006) – are very similar.

otherwise would be imposed under California law.  Id. at 1109.  Putting the two elements

together, Discover Bank set forth a three-part inquiry to assess the unconscionability of a class

action waiver.

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in
> which disputes between the contracting parties predictably involve small amounts
> of damages, and when it is alleged that the party with the superior bargaining
> power has carried out a scheme to deliberately cheat large numbers of consumers
> out of individually small sums of money, then, at least to the extent the obligation
> at issue is governed by California law, the waiver becomes in practice the
> exemption of the party "from responsibility for [its] own fraud, or willful injury to
> the person or property of another." (Civ. Code, § 1668).  Under these
> circumstances, such waivers are unconscionable under California law and should
> not be enforced.

Id. at 1110.  Subsequent to Discover Bank, California courts have routinely applied its three-part

test.  First, assess the adhesive nature of the contract.  Next, analyze whether or not the action

involves a claim for small amounts of damages.  Finally, determine whether the allegations

involve a deliberate scheme by the party with superior bargaining power to cheat large numbers

of consumers out of the small amounts of damages claimed.[4]  Two California cases are of

particular relevance to the pending motion – the Ninth Circuit's decision in Shroyer v. New

Cingular Wireless Services, Inc., 498 F.3d 976 (9th Cir. 2007), and Judge Saundra Brown

Armstrong's opinion in  Stiener v. Apple Computer, Inc., 556 F. Supp. 2d 1016 (N.D. Cal. 2008).

_____

[4] In a later Ninth Circuit decision, the Court summarized the Shroyer inquiry as follows.
"Whether a specific class arbitration waiver is unconscionable under California law turns on (1)
whether the agreement is a consumer contract of adhesion drafted by a party that has superior
bargaining powers; (2) whether the agreement occurs in a setting in which disputes between the
parties predictably involve small amounts of damages; and (3) whether it is alleged that the party
with the superior bargaining power has carried out a scheme to deliberately cheat large numbers
of consumers out of individually small sums of money."  Hoffman v. Citibank (South Dakota),
N.A., 546 F.3d 1078, 1084 (9th Cir. 2008) (citing Shroyer v. New Cingular Wireless Serv., Inc.,
498 F.3d 976, 983 (9th Cir. 2007).

**2.** **Shroyer**

In <u>Shroyer</u>, the Ninth Circuit applied the <u>Discover Bank</u> analysis to invalidate ATTM's 2005 Arbitration Provision, finding it unconscionable under California law.  <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 498 F.3d 976 (9th Cir. 2007).  In that case, the plaintiff had filed a state court class action against Cingular alleging, <u>inter alia</u>, violations of Section 1710 of the California Civil Code and Section 17200 of the California Business and Professions Code along with common-law causes of action such as breach of contract and breach of the covenant of good faith and fair dealing.  <u>Id</u>. at 979.  Having removed the action, Cingular filed a motion to compel arbitration that the district court granted.  The Ninth Circuit subsequently reversed.

First, the <u>Shroyer</u> court outlined the procedural and substantive standards for unconscionability under California law.  <u>Id</u>. at 981-82.  California operates under a sliding scale, whereby a strong showing on the procedural end requires a corresponding smaller showing on the substantive one, and vice-versa.  <u>Id</u>.  Next, the Court measured the class arbitration waiver before it against <u>Discover Bank's</u> three-part test inquiry.  <u>Id</u>. at 983.  Under the first prong of the analysis, the agreement for cellular phone services represented a contract of adhesion in which Cingular presented the terms to the consumer without giving the consumer a change to negotiate. <u>Id</u>. at 983-84.  Next, the agreement occurred in a setting involving small amounts of damages. <u>Id</u>.  And finally, the complaint in the matter clearly alleged the deliberate scheme by a party with superior bargaining power to cheat consumers out of small sums of money.  <u>Id</u>.  The satisfaction of all three prongs of the <u>Discover Bank</u> test rendered the class arbitration waiver procedurally and substantively unconscionable.  <u>Id</u>.

**3.**     **Stiener**

In response to Shroyer, ATTM revised its arbitration provision – one that it now refers to as "unprecedently pro-consumer" and "the most consumer-friendly in the country."  (Br. 1-2.) This revised language – the 2006 Arbitration Provision – has already been the subject of at least two motions to compel arbitration in California.  In the first case, Stiener v. Apple Computer, Inc., Judge Saundra Brown Armstrong found the new provision unconscionable under Shroyer's three-part test.  556 F. Supp. 2d 1016 (N.D. Cal. 2008)  The 2006 Arbitration Agreement involved a standardized contract of adhesion under California law, the $114.95 claim in the case qualified as a small amount of damages, and the plaintiff had adequately alleged a scheme by AT&T to cheat consumers out of small sums of money.  Id. at 1024-25.

The Stiener Court also addressed two important ATTM counter-arguments.  First, ATTM argued that it had not immunized itself from liability because the opportunities for individual gain built into the 2006 Arbitration Provision are substantial inducements for consumers to pursue their claims in arbitration.  Id. at 1029.  Judge Armstrong found this insufficient to survive Shroyer's concern that "when the potential for individual gain is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers." Id. (quoting Shroyer, 498 F.3d at 976.)  Specifically, the Stiener court held that the Premium and Attorney Premium, as a practical matter, were illusory inducements to arbitrate.  Id. at 1030.

Finally, the Court found that ATTM could not demonstrate that the 2006 Arbitration Provision functioned as efficiently for resolving disputing as the class action mechanism.  Id. at 1033.  ATTM argued that their new arbitration provision reduced the costs for bringing an

10

individual claim such that a "market for fair settlement is created." Id. at 1032.  But on the evidence before the Court, Judge Armstrong concluded that she had an insufficient basis upon which to find ATTM's arguments meritorious.  Id. at 1033.

### 4.      Laster

Finally, following Stiener, one other California district court took on the unconscionability argument as applied to ATTM 2006 Arbitration Provision.  In Laster v. T-Mobile USA, Inc., Judge Dana M. Sabraw balanced the procedural and substantive unconscionability of the revised provision and held that it did not provide an adequate substitute for the class action mechanism and was therefore unconscionable under California law.  No. 05-1167 (DMS), 2008 WL 5216255, at *14 (S.D. Cal. Aug. 11, 2008).  In the Laster action, the plaintiffs took issue with ATTM charging sales tax on phones that it offered at a free or substantially-reduced price.  Id. at *1.  Because ATTM charged sales tax on the full retail value of the phone, rather than the discounted price, the plaintiffs alleged causes of action under various California laws, including the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA").[5]  Id.

Applying California law on unconscionability, Judge Sabraw first found the 2006 Arbitration Provision to be on the low end of procedural unconscionability.  Id. at *9. With respect to the second Discover Bank prong, the Court held that though the damages were small ($30), the revised arbitration provision "exponentially chang[ed] the amount of potential recovery in arbitration."  Id. at *10.  With the potential to recover nearly 250 times actual

---

[5] The UCL can be found at Cal. Bus. & Prof. Code § 17200, et seq., the FAL at Cal. Bus. & Prof. Code § 17500, et seq., and the CLRA at Cal. Civ. Code § 1770, et seq.

damages, individual claimants were much more likely to pursue arbitration if unsatisfied with ATTM's initial settlement offer during the informal claims process.  Id.

　　　In opposition to Stiener, the Laster court rejected Plaintiffs' argument as to the illusory nature of the Premium.  Rather, Judge Sabraw found that either (1) ATTM would make Plaintiffs whole by paying more than the full value of their small damages claims during the informal claims process, so as to avoid having to eventually pay the Premium; or (2) if the informal claims process fails, the Premium acts as sufficient inducement for Plaintiffs to pursue arbitration.  Id. at *11.  Moreover, she also agreed with ATTM that the arbitration procedure at issue provided greater compensation to consumers who elected to pursue it as compared to members of a class action who generally "pennies on the dollar for their claims."  Id.  Thus, under the second prong of Discover Bank, ATTM's 2006 Arbitration Provision was an adequate substitute for the class action mechanism.

　　　Finally, however, the Court concluded that ATTM's provision failed under the third prong of Discover Bank – specifically, the concern that "eliminating class action 'would permit the defendant to retain the benefits of its wrongful conduct and to continue that conduct with impunity.'" Id. at *12 (quoting Discover Bank, 36 Cal. 4th at 156).  Similar to Stiener, Judge Sabraw was unable to find evidence to support ATTM's claim that a market for fair settlement had been created.  Id. at *13.  Rather, she found that the provision did not adequately substitute for the deterrent effect of the class action mechanism, because it allowed ATTM to avoid the potential liability accruing from the thousands of customers who are unaware of any alleged wrongdoing.  Id.  With no incentive to stop its wrongdoing, the 2006 Arbitration Provision did not satisfy this last prong.  Thus, in balancing substantive and procedural unconscionability, the

12

Court concluded that while the 2006 Arbitration Provision gave sufficient incentive to individual consumers to bring claims in arbitration, it did not do enough to address California's policy concern of deterring corporate wrongdoing through a class action mechanism.  Id. at *14.

Before turning to the present motion to compel arbitration, the Court addresses Hall's initial argument – that of collateral estoppel.

### B.        Collateral Estoppel

At the outset, therefore, Hall argues that ATTM is collaterally estopped from litigating the issue of whether or not its class action waiver is unconscionable under California law.[6]  As ATTM correctly notes, Hall seeks to invoke non-mutual offensive collateral estoppel.  (Reply Br. 11.)  Non-mutual offensive collateral estoppel occurs when a plaintiff attempts to estop a defendant from relitigating an issue which the defendant had previously litigated and lost against a different plaintiff.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).  In Parklane, the Supreme Court allowed the use of non-mutual offensive collateral estoppel, thereby eliminating the historical requirement of privity between the parties in the prior action and the ones in the current action.  Recognizing the potential for unfairness stemming from non-mutual offensive collateral estoppel, however, the Supreme Court granted district courts broad discretion in allowing its use.  Id. at 331 ("[w]e have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it

---

[6]Hall also argues that ATTM is collaterally estopped from arguing FAA preemption. (Opp. Br. 27 n. 16.)  That argument fails.  This Court is bound by decisions of the Third Circuit on issues of federal law and therefore can evaluate ATTM's arguments under the prevailing standards in this Circuit.

should be applied.")

Before invoking offensive collateral estoppel, Hall must establish four prerequisites for the application of collateral estoppel generally: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party precluded from litigating the issue was fully represented in the prior action. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006). The Third Circuit also considers "whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action and whether the issue was determined by a final and valid judgment." Id. Finally, the use of offensive collateral estoppel is "subject to an overriding fairness determination by the trial judge." Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1232 (3d Cir. 1995).

In this case, Plaintiff's attempt to collaterally estop ATTM from litigating the issue of unconscionability fails with the very first prerequisite – identity of issues between the prior and later actions. While ATTM has lost several attempts to enforce its 2005 and 2006 Arbitration Provisions in California, none are on all fours with this case. In no prior California decision did a court address the validity of ATTM's 2006 Arbitration Provision as applied to a claim that the charged ETF constitutes an illegal penalty. The finding that a class waiver provision is unconscionable is fact-specific – thus, the simple fact that multiple California courts have found this provision and others like it to be unconscionable as against an allegedly illegal tax charge (Laster) or a $114.95 battery replacement charge (Stiener) does not automatically render it

14

invalid in the present ETF-related scenario.[7]  Because there is no "identity of issues" for collateral estoppel purposes, the Court denies Hall's request to dismiss ATTM's motion on the basis of collateral estoppel.

### C.    Application of California Unconscionability Law

#### 1.    Shroyer Analysis

Though the California decisions on unconscionability do not collaterally estop ATTM from bringing the present motion, they do present a roadmap to guide this Court in its application of California law to the class action waiver provision at issue.  Stated another way, ATTM is allowed to bring the present motion but this Court is equally allowed to look to each of those decisions as persuasive authority.  Having thoroughly examined Shroyer, Discover Card, Stiener, and Laster, along with the rest of the rather large scope of California law on this issue, this Court does not hesitate in finding that ATTM's 2006 Arbitration Provision is unconscionable under California law.  The application of Discover Bank's three-part test is straightforward and simple.

First, the 2006 Arbitration Provision is adhesive.  ATTM did not give Plaintiff the opportunity to negotiate the provision.  Rather, much like Shroyer, the party with greater bargaining power presented a take-it-or-leave-it contract to the customer.  ATTM itself recognizes that California cases have held non-negotiable form contracts to entail a "minimal degree of procedural unconscionability."  (ATTM Br. 11.)  This Court agrees.  Though the 2006

---

[7] Hall also argues that Kaltwasser v. Cingular Wireless LLC, 543 F. Supp. 2d 1124 (N.D. Cal. 2008) is applicable to the collateral estoppel analysis.  However, Kaltwasser did not address the 2006 Arbitration Provision.  Thus, that decision would not provide any sort of collateral estoppel effect.

Arbitration Provision is adhesive, it falls on the low end of procedural unconscionability.[8]

Moving to the next prong of the <u>Shroyer</u> test, the setting involves a small amount of damages.  In <u>Steiner</u>, the Court found that a claim for $114.95 constituted a small amount of damages for purposes of the <u>Discover Bank</u> test.  556 F. Supp. 2d at 1025.  Here, the allegedly illegal ETF is $175, an amount that easily falls within the range identified by various California cases as constituting a "small amount of damages."  <u>See, e.g.</u>, <u>Cohen v. DirecTV</u>, 1452 Cal. Rptr. 3d 813, 820 (Cal. Ct. App. 2006) (finding $1000 in damages to fall within the scope of <u>Discover Bank</u>); <u>Gatton v. T-Mobile USA, Inc.</u>, 61 Cal. Rptr. 344, 357 (Cal. Ct. App. 2007) (holding in accordance with <u>Cohen</u> that a $200 ETF is sufficient to invoke a predictably small amount of damages).

Finally, Hall alleges a deliberate scheme by ATTM to cheat consumers out of their 175-dollar termination fees.  Specifically, he alleges a "uniform scheme and common course of conduct" through which ATTM "charged Plaintiffs and other customers ETFs, ranging between $150.00 and $200.00, if they cancelled their wireless service at any time after a trial period but before the end of the 'service plan' term, regardless of the reason(s) for cancellation.  (Second Amended Compl. ("SAC") ¶ 3.)  Moreover, Hall also alleges that ATTM is disguising a "fee to recoup equipment costs as a liquidated damages clause."  (SAC ¶ 23.)  This termination fee does not compensate ATTM for damages arising from termination, "but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services."  (SAC ¶ 23.)  Finally, Hall "believe[s] that the early termination penalty provisions have permitted

_____

[8] As ATTM notes, Hall fails to address the procedural unconscionability argument and thus concedes that the provision at issue falls on the low end of the scale.  (Reply Br. 2 n.1.)

16

[ATTM] to collect revenues and generate enormous profits" from payment of ETFs and from tethering class members to their original contract period.  Thus, he adequately alleges an intentional, deliberate scheme through which ATTM charges class members ETFs that are in no way related to any actual customer costs.  These allegations clearly suffice to meet the third prong of <u>Discover</u> <u>Bank</u>.

### 2.      ATTM Counter-arguments

ATTM argues that its 2006 Arbitration Provision is extremely consumer-friendly and that the Premium and Attorney Premium associated with bringing an individual case in arbitration preclude a finding of substantive unconscionability.  Specifically, ATTM claims that the 2006 Arbitration Provision was revised to address the Ninth Circuit's decision in <u>Shroyer</u>.  Thus, ATTM claims that the opportunity for individual gain built into the revised notice overcomes any substantive unconscionability arguments.

ATTM initially argued to the Ninth Circuit that its 2005 Arbitration Provision was not substantively unconscionable because ATTM paid the costs of arbitration and because the petitioner recovered attorney's fees if the arbitrator awarded them an amount equal to or greater than their initial demand.  <u>Shroyer</u>, 498 F.3d at 986.  The California Supreme Court, in <u>Discover</u> <u>Bank</u>, had already once rejected the "rationale...that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers."  113 P.3d at 1109-1110.  The Ninth Circuit, citing to <u>Discover</u> <u>Bank</u>, found ATTM's 2005 Arbitration Provision untenable, specifically noting that a waiver is not unconscionable "only when or because a plaintiff in arbitration may experience a net loss (including attorneys' fees and costs)."  <u>Shroyer</u>, 498 F.3d at 976.  Thus, that ATTM's "attempt to distinguish <u>Discover</u>

Bank based on the availability of attorneys' fees and arbitration costs is without merit."  Id.

Now ATTM argues that its new and improved class action waiver does not render it immune from liability because the premiums that are available under it "serve as affirmative inducements for customers to pursue their claims in arbitration and for lawyers to represent such customers." (ATTM Br. 18.)  As indicated earlier, two California courts have thus far addressed the arguments of substantive unconscionability with respect to ATTM new arbitration provision, each reaching different conclusions.  In Stiener, Judge Armstrong found ATTM's proffered incentives to be illusory with respect to customers seeking recovery of $114.95 in damages.  556 F. Supp. 2d at 1030.  Specifically, she noted that:

> AT&T need not settle in full with all or most plaintiffs, but need only do so with a *certain percentage* of plaintiffs, denying them the Premium.  At some percentage point, other AT&T customers, who have not yet sought arbitration, would believe the only likely *potential* recovery available through arbitration would be the $114.95, but not the Premium.  *Without the premium as an inducement to arbitrate, these consumers would only make the allegedly minimal effort to arbitrate, if they had the time, resources, or inclination to seek the $114.95, by itself*...as a practical matter, the Premium is illusory.

Id. (emphasis in original.)  Thus, under the Stiener analysis, ATTM's 2006 Arbitration Provision did not act as an adequate substitute for the class action mechanism.  Id.  Meanwhile, faced with the same arguments, Judge Dana M. Sabraw of the Southern District of California held that:

> Because the arbitration provision provides sufficient incentive for individual consumers with disputes involving small damages to pursue (a) the informal claims process to redress their grievances, and (b) arbitration in the event of an unresolved claim, the subject provision is an adequate substitute for class arbitration as to this [second] prong of Discover Bank.

Laster, 2008 WL 5216255, at *11.  Judge Sabraw agreed with ATTM that its arbitration

procedure was an adequate substitute for the class mechanism because it allowed customers a quick settlement offer that often amounted to full recovery or the potential to gain $7,500 – an amount significantly exceeding their actual claim.  Id.  Finally, ATTM submits the affidavit of Professor Richard Nagareda, who attests to the fact that ATTM's arbitration provision "reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlement of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle this dispute."  (Nagareda Dec. ¶ 11.)[9]

The Court rejects ATTM's arguments for two reasons.  First, the California Supreme Court has made it clear that the potential availability of attorney fees to the prevailing party in arbitration or litigation does not fix the problem posed by class action waivers.  Discover Bank, 113 P.3d at 1109-1110.  Thus, the Attorney Premium is not sufficient to induce consumers to bring individual arbitration actions in lieu of the class action mechanism.  Second, with regard to the Premium, the Steiner court has it right.  It is wholly illusory.  As an initial matter, the Court does not quarrel with ATTM's assertion that the present arbitration provision is among the more consumer-friendly provisions in the country.  Indeed, Professor Nagareda says he has "never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims" on an individual basis.  (Nagareda Dec. ¶ 11.)  That may or may not be true, but in any event it does not matter.  Under California law, it simply is not enough.

---

[9] This refers to the Declaration of Richard A. Nagareda, filed alongside ATTM's motion to compel arbitration.  The Court previously denied Hall's motion to strike this declaration.  See supra note 2.

Much like the $114.95 claim in <u>Steiner</u>, the $ 175 ETF claim at issue in this case is the most likely recovery for ATTM consumers who choose to bring an action in arbitration. However, those consumers only collect the $7,500 Premium if the arbitrator renders a judgment greater than the value of ATTM's last written settlement offer.  Once consumers begin to believe that the only compensation available is the $175, rather than the Premium, ATTM's argument against invalidating the class-action waiver disappears.  In the end, the waiver allows ATTM to escape liability for any alleged fraud involving small sums of money, because while it may settle with several individuals for $175, the truth of the matter is that a large percentage of consumers will not file suit.  Moreover, that percentage increases as the possibility of recovering a Premium decreases.  At the end of the day, as conceivably consumer-friendly as the provisions may be, it does not induce individuals to bring suit and it still operates to immunize ATTM from claims that would be suitable for class action resolution.  In California, that meets the <u>Shroyer</u> test for unconscionability.

More importantly, as Judge Sabraw and Judge Armstrong both recognized, there is no evidence that ATTM's 2006 Arbitration Provision actually provides a "fair market for settlement."  <u>Stiener</u>, 556. F.Supp.2d at 1033 ("the Court is not convinced the Arbitration Agreement creates a fair market for settlement, which would operate as efficient as a class action would."); <u>Laster</u>, 2008 WL 5216255 at *13 ("It is unclear how this 'market' would be created, whether such a market presently exists, and how such a market would apprise consumers of alleged wrongdoing.")  Here, in spite of Professor Nagareda's claim that such a market would be created, no evidence exists that it in fact exists.  Rather, the Court concludes in accordance with <u>Steiner</u> and <u>Laster</u> – the 2006 Arbitration Provision as applied to Plaintiff's claims alleging the

invalidity and illegality of the ETF is unconscionable.

## II.   <u>Preemption</u>

Having found the ATTM's 2006 Arbitration Provision to be unconscionable under California law, the inquiry is not complete.  Rather, the Court must now determine whether the FAA preempts application of California law on the issue.  ATTM argues that express preemption and conflict preemption apply.  The Court addresses each in turn.

### A.   <u>Express Preemption</u>

Under Section 2 of the FAA, "an agreement in writing to submit to arbitration an existing controversy...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2.  The United States Supreme Court has interpreted this provision to allow application of state law "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  <u>Perry v. Thomas</u>, 482 U.S. 482, 492 n. 9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).  Thus, "generally applicable contract defenses, such as fraud duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2" of the FAA.  <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).  The question for this Court, therefore, boils down to whether the contract defense asserted is a general one – applicable to all waivers of class-wide actions – or whether it is specific, applying only to a provision that compels individual arbitration.

The Third Circuit has recently issued two opinions clarifying its take on preemption and simplifying the analysis for this Court.  First, in <u>Gay v. CreditInform</u>, 511 F.3d 369 (3d Cir.

2007), the Court engaged in a lengthy choice-of-law analysis before ultimately applying Virginia law to hold that the class-arbitration waiver at issue was valid.  Id. at 391.  Under Virginia law, the inequality in bargaining power must be "so gross as to shock the conscience."  Id. (quoting Mgmt. Enters., Inc. v. Thorncroft Co., 243 Va. 469, 416 S.E.2d 229, 231 (1992).  Plaintiff Gay had not met that burden.  Id. at 391-92.  Having found the waiver to be valid, however, the Court nevertheless proceeded to discuss alternative Pennsylvania law, ultimately concluding that the result would be no different were Pennsylvania law to be applied.

It is this second piece of the Gay opinion upon which ATTM relies for its preemption argument.  In so holding, the Third Circuit proceeded to analyze unconscionability with regard to two Pennsylvania Superior Court cases – Lytle v. CitiFinancial Services, Inc., 810 A. 2d 643 (Pa. Super. Ct. 2002), and Thibodeau v. Comcast Corp., 912 A.2d 874 (Pa. Super. Ct. 2006) – which had stressed the favorability of class actions under Pennsylvania law.  Much like the California Supreme Court's Discover Bank decision, in both cases the Superior Court had addressed a class action waiver, finding it unconscionable "if there are facts showing that 'the costs associate[d] with individual versus class-based litigation of their claim against [the defendant] would ... result in continuing impunity for [the defendant] for its wrongful acts."  Gay, 511 F.3d at 393 (quoting Lytle, 810 A.2d at 666.)  Having acknowledged Pennsylvania law on the subject, the Court, however, found that both Lytle and Thibodeau "hold that an agreement to arbitrate may be unconscionable simply because it is an agreement to arbitrate."  Id. at 395.  Thus, under the Supreme Court's decision in Perry, those cases were preempted by the FAA.  Id.  Finally, the Third Circuit concluded that plaintiff Gay relied upon the uniqueness of her arbitration provision in framing her unconscionability argument and therefore – even if Virginia law had not already

22

decided the issue of unconscionability – the provision would still survive under preemption analysis. Id.

On February 24, 2009, however, the Third Circuit issued a second opinion regarding FAA preemption and sought, at least in part, to clarify its holding in Gay. Homa v. American Express Co., __ F.3d ____, 2009 WL 4409912 (3d Cir. Feb. 24, 2009). First, the Court noted that its discussion of whether the FAA preempted the Pennsylvania Superior Court decisions in Lytle and Thibodeau was dicta. Id. at *4. The Court then reiterated that Gay does not stand for a blanket prohibition "on unconscionability challenges to class-arbitration provisions." Id. at *5. In Homa, the Third Circuit was primarily concerned with the New Jersey Supreme Court's decision in Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1, 912 A.2d 88 (2006), which held unconscionable a class arbitration waiver in a consumer contract between a customer and a bank that gave out "pay day" loans. Id. at *2. Because Muhammad applied to invalidate a class-action waiver in both arbitration and court litigation, it constituted "a general contract defense that applied to all waivers of class-wide actions, not simply those that also compel arbitration." Id. at *4.[10]

In the post-Homa world, the preemption analysis is a relatively simple one. The defense of unconscionability asserted by Plaintiff is a generally-applicable contract defense that takes issue with the ban on class actions generally. California courts, such as Discover Bank and Shroyer, have consistently applied California unconscionability law to invalidate class-action waivers such as the one contained ATTM's 2006 Arbitration Provision. In so holding, those

---

[10] Notably, the Third Circuit cited with approval the Ninth Circuit's decision in Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1221 (9th Cir. 2008).

courts have routinely considered the unconscionability analysis to implicate a general contract defense that does not run afoul of the guidance contained in <u>Perry</u> or 9 U.S.C. § 2.  In fact, the Supreme Court has previously held that "[b]ecause unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA."  <u>Doctor's Assocs.</u>, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).  Thus, the 2006 Arbitration Provision is not invalidated on the account that it is a specific arbitration clause preventing class-wide arbitration; rather, it is unconscionable, like <u>Muhammad</u>, because it deprives Hall of the class action mechanism, whether in arbitration or in court litigation.[11]

### B.    Conflict Preemption

Finally, ATTM argues that application of California law in this matter is preempted by the doctrine of conflict preemption.  Conflict preemption exists where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress."  <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n</u>, 505 U.S. 88, 98, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992).  The Ninth Circuit, in <u>Shroyer</u>, addressed this precise argument with respect to ATTM's 2005 Arbitration Provision and rejected it.  <u>Shroyer</u>, 498 F.3d at 988-93.  This Court has thoroughly examined the <u>Shroyer</u> decision and finds that nothing in the 2006 Arbitration

---

[11] ATTM cites two pre-<u>Homa</u> cases as supplemental authority – <u>Shubert v. Wells Fargo Auto Finance, Inc.</u>, 2008 WL 5451021 (D.N.J. Dec.31, 2008) and <u>Litman v. Cellco Partnership</u>, No. 07-4886 (FLW), 2008 WL 4507573 (D.N.J. Sept. 29, 2008).  The <u>Litman</u> court found <u>Muhammad</u> to be preempted by the FAA because it ostensibly relied upon the language of the arbitration clause itself rather than application of a general contract principle.  <u>Litman</u>, 2008 WL 4507573 at *6.  Similarly, in <u>Shubert</u>, the court held that "the state law principle in <u>Muhammad</u> is unique to arbitration agreements as opposed to contracts generally."  <u>Shubert</u>, 2008 WL 5451021, at *7.  In light of <u>Homa</u>, neither of these conclusions are valid, and therefore the Court rejects ATTM's reliance upon either decision.

Provision changes the outcome with respect to conflict preemption.

First, as the <u>Shroyer</u> court noted, the fact that "§ 2 [of the FAA] expressly permits a court to decline enforcement of an arbitration agreement on grounds that exist at law or in equity for revoking a contract, such as unconscionability, strongly suggests that Congress did not contemplate that implied preemption would be applied to mandate the opposite result." <u>Shroyer</u>, 498 F.3d at 989-990.  More importantly, however, application of state-law unconscionability principles does not hinder the FAA's purpose of placing arbitration agreements on the same footing as ordinary contracts.  <u>Id</u> at 990.  Unconscionability is a general contract defense – it therefore applies equally to ordinary contracts and to provisions compelling arbitration.  In sum, this Court agrees with <u>Shroyer</u> – application of general California contract law on unconscionability does not stand in the way of accomplishing the purposes or objectives of the FAA.  Conflict preemption, therefore, does not apply.

## CONCLUSION

For the reasons set forth above, Hall's motion to strike the Nagareda Declaration is denied, and ATTM's motion to compel arbitration is also denied.  An appropriate Order accompanies this Opinion.


Dated: March 30, 2009                                      /s/ Jose L. Linares
                                                          United States District Judge