NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
JUDY LARSON, et al.,                    :
                                        :
            Plaintiffs,                 :
                                        :
      v.                                :      CIVIL ACTION NO. 07-5325 (JLL)
                                        :
SPRINT NEXTEL CORPORATION, et al., :
                                        :      **OPINION**
            Defendants.                 :
_____ :

**LINARES**, District Judge.

        Pending before this Court is a joint application by Plaintiff Judy Larson ("Plaintiff" or

"Larson") and Defendant Sprint[1] to approve a class action settlement in this matter.  Class

Counsel and Sprint have submitted briefs in support of the settlement, and several individuals

have offered objections – to adequacy of notice, reasonableness of the settlement, and attorneys'

fees.

## I.       Background

        This class action involves a claim by Plaintiff that the early-termination fees ("ETFs")

charged by Sprint violate, <u>inter alia</u>, the Federal Communications Act and state consumer

protection laws.[2]  (Am. Compl. ¶ 4.)  ETFs constitute a fee of between $150 and $200 charged to

customers for cancellation of their wireless service "at any time after a trial period but before the

_____

        [1]  "Sprint" is defined as Sprint Nextel Corporation, Sprint Spectrum L.P. d/b/a Sprint
Nextel Corporation, and Nextel Finance Company.

        [2]  The Court retains jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d).  This is
a class action involving more than 100 members where at least one class member resides in a
state different from the defendants and where the aggregate amount in controversy exceeds
$5,000,000.

end of the 'service plan' term, regardless of the reason(s) for cancellation."  (Id. ¶ 3.)  Plaintiff

Judy Larson is a citizen of Washington whose subscriber agreement with Sprint contained an

ETF provision and who was ultimately charged an ETF.  (Id. ¶ 7.)

      After undergoing several days of mediation with the Honorable Nicholas H. Politan (ret.),

the parties to this matter entered into a settlement agreement.  On December 8, 2008, this Court

preliminary certified a Rule 23(b)(3) class defined as follows:

> All persons in the United States who are or were parties to a personal fixed-term
> subscriber agreement for a Sprint Nextel Wireless Service Account for personal or
> mixed business/personal use, whether on the Sprint CDMA network or Nextel iDen
> network, or both, **excluding accounts** for which the responsible party for the
> Wireless Service Account is a business, corporation or a governmental entity, entered
> into between July 1, 1999 and December 31, 2008 and whose claims relate in any
> way to an Early Termination Fee or use of an Early Termination Fee in a fixed-term
> subscriber agreement, and/or use or propriety of a fixed-term subscriber agreement
> whether the term was for the initial fixed-term subscriber agreement or subsequent
> extensions or renewals to the fixed-term subscriber agreement for whatever reason
> and/or who were charged by or paid an Early Termination Fee to Sprint Nextel,
> excluding only the Ayyad Class Claims and Persons whose right to sue Sprint Nextel
> as a Settlement Class Member is otherwise barred by a prior settlement agreement
> and/or prior final adjudication on the merits.  The Settlement Class includes Persons
> who were subject to an ETF, whether or not they paid any portion of the ETF either
> to Sprint Nextel or to any outside collection agency or at all, and includes persons
> who are prosecuting excluded claims to the extent such persons have claims other
> than those expressly excluded.

(Docket Entry # 92 ("Preliminary Approval Order") at 3-4.) (emphasis in original.)  At that time,

the Court set forth a schedule addressing the final approval process – that timeline culminated in

four days of hearings, beginning on March 12, 2009 and ending on March 17, 2009, addressing

the multitude of objections received and including testimony from two expert witnesses.

      The following parties have submitted objections to the proposed settlement: (1) Lina

Galleguillos, Michael Moore, and Antranick Harrentsian ("Galleguillos Objectors"); (2) Chad Garner

and Thomas Lambert ("Garner and Lambert"); (3) Dean Short; (4) Greg LeBlanc; (5) Jessica Hall; (6)

Anita Levine and Tom Montague III[3]; and (7) John J. Pentz.[4]

The Court has heard the arguments of counsel and has considered the briefs filed both in

support of, and in opposition to, various pieces of the settlement.  The first two days of the

March Fairness Hearing covered the issue of adequate notice, and because improper notice

precludes jurisdiction over absent class members, the Court addresses it first.

## II.     Notice

### A.     Law

"Rule 23 imposes two separate mandatory notice requirements in an action maintained

under section (b)(3), sections (c)(2) and (e)."  In re Prudential Ins. Co. of America Sales Practices

Litig., 177 F.R.D. 216, 230 (D.N.J. 1997).  Fed. R. Civ. P. 23(c)(2)(B) provides as follows:

> For any class certified under Rule 23(b)(3), the court must direct to class members
> the best notice that is practicable under the circumstances, including individual notice
> to all members who can be identified through reasonable effort.  The notice must
> clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if

---

[3] This objection was also initially filed on behalf of Tara Montague, but counsel advised the Court at the Fairness Hearing that Ms. Montague had withdrawn her objection.  (March 12, 2009 Hr'g, Tr. 229:16-21.)

[4] Sprint moves to preclude the objectors who have not established standing to assert their objections.  (Docket Entry # 268.)  Based upon the representations made during the Fairness Hearing and the affidavits filed with the Court, this motion is denied.  Under Fed. R. Civ. P. 23(e)(5), "[a]ny class member may object" to the settlement if it requires court approval.  All of the objectors have established that they are members of the class, in that they were at some point subject to an ETF, regardless of whether they actually paid any portion of the ETF.  Thus, Sprint's motion is denied.

the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion;

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Thus, Rule 23(c) concerns notice related to class certification.  Rule 23(e), on the other hand, addresses settlement, noting that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  In that respect, the court must "direct notice in a reasonable manner to all class members who would  be bound by the [settlement]."  Rules 23(c) and 23(e), therefore, contain two different standards for notice – a stringent one for class certification and a more lenient one for class settlement.

In a case such as this one, where a settlement class has been provisionally certified and a proposed settlement preliminarily approved, notice of both certification and settlement can be combined but must satisfy the heightened standard of Rule 23(c)(2)(B).  See, e.g., Grunewald v. Kasperbauer, 235 F.R.D. 599, 609 (E.D. Pa. 2006); Thomas v. NCO Financial Sys., Inc., 2002 WL 1773035, at *7 (E.D. Pa. July 31, 2002).  Thus, the portion of the notice regarding the certification of the class and the rights of absent class members must adhere to the provisions of 23(c)(2), while the piece of the notice concerning the settlement needs simply to contain a summary of the litigation sufficient to "apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  In re Prudential, 177 F.R.D. at 231.

The dictates of Rule 23(c)(2) are strict.  According to the Supreme Court, it includes an

"unambiguous requirement" that "individual notice must be provided to those class members who are identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175-76, 94 S. Ct. 2140, 2151-52, 40 L. Ed. 2d 732 (1974). "The requirements of Rule 23(c)(2) are stricter than the requirements of Rule 23(e) and arguably stricter than the due process clause." Carlough v. Amchem Products, Inc., 158 F.R.D. 314, 324-25 (E.D. Pa. 1993). This is because personal jurisdiction over absent class members only attaches upon the satisfaction of Rule 23(c)(2)'s notice requirements. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 306 (3d Cir. 1998); Georgine v. Amchem Prods., Inc., 160 F.R.D. 478, 490 (E.D. Pa. 1995) ("Because many of the advantages of a class action come at the cost of binding individual class members through the *res judicata* effects of litigation over which many lack control, Rule 23 offers eligible members of a class the right of exclusion from a class.")

While individual notice is required to all class members who can be identified through reasonable effort, the parties sparred throughout the fairness hearing over the issue of what constitutes "reasonable effort" and how that analysis fits into Rule 23(c)(2). The Supreme Court's decision in Eisen made clear that reasonableness does not factor into a decision about whether already-identified class members shall receive individual notice. In Eisen, the Court specifically directed Plaintiffs to provide mail notice to over 2 million class members, notwithstanding the fact that such notice would prove financially prohibitive and effectively end the suit. Eisen, 417 U.S. at 176, 2151 ("[I]ndividual notice to identifiable class members is not a

discretionary consideration to be waived in a particular case.")  The analysis as to reasonability, therefore, does not factor into a discussion regarding the dissemination of individual notice but rather comes into play in determining whether or not class members are individually identifiable. "In every case, reasonableness is a function of anticipated results, costs and amount involved." Nissan, 522 F.2d at 1099.  Reasonableness on the front end – in terms of identifying class members – may certainly include a cost-benefit analysis.  However, once class members are identified, reasonableness falls out of the equation; those class members simply must receive individual notice.

Finally, to the extent that Class Counsel suggests this Court's review of the proposed notice plan is only governed by "the broad reasonableness standards imposed by due process," that view is mistaken.  (Docket Entry # 231 at 14) (asserting that Galleguillos Objectors must put forth evidence "that the manner of notice was so unreasonable that due process has been denied.")  The two cases cited in support are not on point.  In Reynolds v. National Football League, 584 F.2d 280 (8th Cir. 1978), the Court had engaged in a lengthy discussion of whether to certify the class under 23(b)(1) or 23(b)(3).  Id. at 284.  Eventually, the Court concluded that 23(b)(1) certification was appropriate.  Id. at 2985.  Thus, notice needed only to comply with the "reasonableness" standards imposed by Rule 23(e), and the Court retained nearly unlimited discretion in fashioning it.  In Grunin v. International House of Pancakes, 513 F.2d 114 (8th Cir. 1975), the Court first certified two classes on October 26, 1971, and mailed notice to all prospective class members on November 19, 1971.  Id. at 119.  Subsequently, the parties settled the case, and notice issued.  However, because certification and settlement were not contained within the same notice – as in the present case – notice only needed to comply with Rule 23(e).

6

Id. at 121.  Contrary to the standards enunciated in Grunin and Reynolds, the present case

involves *both* the application of Rule 23(c)(2) and Rule 23(e).  The Court certainly retains

discretion to manage the notice program, but the Galleguillos Objectors correctly tether their

objections to the higher standards of Rule 23(c)(2) rather than Rule 23(e).

### B.    Analysis

Turning to the notice program at issue in the present case, on December 18, 2008, this

Court approved a notice program containing the following components:

(1)   **Publication notice in major national and regional publications.**  Plaintiffs defined their target audience as "all adult mobile phone subscribers."  (Docket Entry # 232, Declaration of Alan Vasquez ("Vasquez Decl.") ¶ 6.)  Having adopted a broad target audience, they published a summary notice of the proposed settlement in the following publications: Parade Magazine, USA Weekend, Vista Magazine, New York Times, Los Angeles Times, Chicago Tribune, Washington Post, Detroit Free Press, Houston Chronicle, Tampa Tribune, and the Miami Herald.

(2)   **Bill Message.**  By this mechanism, Sprint caused a notice to appear in at least one full billing cycle of Sprint's subscriber base between December 2008 and January 2009 ("Bill Insert").  The Bill Insert reached approximately 14.8 million potential class members, and it directed those customers to the Settlement Website and to the Settlement Administrator's toll-free telephone number.

(3)   **A "PR Newswire Release."**  The PR Newswire Release consisted of a "party-neutral news information news release on the internet."  (Docket Entry # 93 at 2.)  It was picked up by several online media outlets.  (Vasquez Decl., Exh F.)

(4)   **Google adwords campaign.**  This campaign was intended to enhance coverage of the press release, and it involved working in concert with Google to develop sponsored links and a site targeting campaign that would link Settlement Class Members with the notice.  (Vasquez Decl. ¶¶ 11-13.)

(5)   **A Website.**  Gilardi & Co., LLC, established and maintained a website for purposes of posting the Long Form Notice, the Claim Form, the Settlement Agreement, and any other related documents.  That website could be accessed by anyone at www.sprintetfsettlement.com.

Of these five components, the Bill Insert represented individual notice to Sprint's current

subscribers while the other four pieces comprised the notice publication plan intended to reach a large portion of class members.  The Galleguillos Objectors and the Lambert/Garner Objectors raise distinct objections – both to the individual and publication notice pieces – and the Court addresses each in turn.[5]

### 1. Failure to Properly Disseminate Individual Notice

The Galleguillos Objectors initially argue that the notice program failed to supply individual notice to those class members who could have been identified with reasonable effort. This argument is based on two assertions – first, that Sprint had at its disposal a partial list of class members in related litigation to whom it should have sent individual notice; and second, that Sprint never provided the Court with an estimate of the expense and cost associated with compiling a partial rather than an entire and complete list of individual class members.

### a. Related Litigation

As to the first assertion, the Galleguillos Objectors propose that Sprint retained a ready-to-go list of partial class members that had been compiled in separate litigation.  Specifically, as part of related litigation in California, Sprint had compiled a list of all members of a payer class in a case captioned <u>Robertson v. Nextel Communications, Inc.</u>[6]  That class consisted of roughly

---

[5] Sprint argues that Mr. Bursor should have lodged his objection to notice earlier – specifically, that upon approval of the notice program in December of 2008, Mr. Bursor should have interposed an objection.  (Docket Entry # 243 at 11.)  That notion is misplaced.  An objector is not precluded from objecting to a settlement simply because his attorney had access to the notice plan in question prior to the actual objection date.

[6] This case is part of the ongoing California Judicial Council Coordinated Proceeding ("JCCP") denominated Alameda County "Cellphone Termination Fee Cases," JCCP No. 4332. In the Settlement Agreement, the parties explicitly carved out one of those cases, captioned <u>Ayyad et al. v. Sprint Spectrum, et al.</u>, Case No. RG03-121510.  (Settlement Agreement at 5.) However, the claims in <u>Robertson</u> were specifically *included* in the settlement.  (<u>Id.</u>)

311,000 customers.  (March 13, 2009 Hr'g, Tr. 106: 5-12.)  Sprint does not dispute that it retains a list of the class members in the Robertson litigation.  (Id. at 171:12-13) ("Your Honor, we have a list of people who are in the Robertson case that I think is safe to say somewhere around 2005 or earlier.")[7]  Nor does Sprint dispute that those members are potential members of the present settlement class.

Sprint, however, argues that Rule 23 should be read with pragmatism such that individual mailing is not required until some reasonable percentage of the class is identified.  (Id. at 174.)  When pressed, counsel for Sprint put that number at 40-50%.  (Id. at 189.)  Additionally, Sprint and Class Counsel argue that the age of the Robertson class list precluded it from serving as an adequate list by which to contact class members.  Neither argument is persuasive.

Rule 23 contains a pragmatic "reasonableness" element in terms of identifying individual class members.  Upon identification, however, that argument loses its force.  At that point, individual notice becomes mandatory.  Importantly, this is not the extreme case where Sprint knew of one or two members of a multi-million person class.  Rather, the Robertson class comprises over 300,000 individuals, and though that number is relatively small number compared to the overall size of the nationwide class, it still represents a significant block of individually-identified class members.  More importantly, Rule 23(c)(2) does not contain an exception for individual notice.  Though the Court does not find that individual notice is required in the extreme case where five members of a large class have been identified, the situation here is

---

[7] Christian Dippon, an expert retained by Sprint, confirmed the existence of a Robertson class list, testifying at deposition that he was asked to establish "an accurate list of class members that can serve as a class member list" and that the list was to the damage period from July of 1998 or 1999 through September 2006.  (Docket Entry # 185 (Declaration of Scott Bursor ("Bursor Decl.")), Exh. 5 ("Dippon Dep.") Tr. 170:8-12; 186:7-11.)

clear – a significant amount of people have been identified; therefore, Rule 23(c)(2) requires individual notice.

The fact that the list is "old" is both factually wrong and legally unconvincing.  Mr. Dippon testified that he started work on the <u>Robertson</u> list in September 2006.  (Dippon Dep. Tr. 170:13-14).  Thus, at most the list would have been slightly over two years old at the inception of the present notice program, a number not sufficient to render it unusable.  More importantly, the age of an individual class list is not an excuse precluding individual notice.  <u>Parker v. Time Warner Entertainment Co., L.P.</u>, 239 F.R.D. 318, 335-36 (E.D.N.Y 2007) (finding that if a seven-year old list of 16 million consumers could be updated, even at a cost of $22,400, individual notice would have to be sent to each member of the database).  Here, unlike <u>Parker</u>, the name of each individual and that individual's address as of September 2006 is already known; thus, Sprint should have little trouble sending notices to those class members.

At the time that it approved the notice program in this matter, this Court was unaware of the existence of a list of identified <u>Robertson</u> class members.  Having now become aware of that list, the Court finds that Sprint and Class Counsel were required to provide those individuals with Rule 23-compliant individual notice.  Failure to do so rendered the notice program deficient.

<b><u>b.</u>        <u>Partial Class List</u></b>

Next, the Galleguillos Objectors take issue with the efforts undertaken by Sprint to produce an individual class member list.  Sprint has placed evidence on the record explaining the exorbitant cost and effort required in order to ascertain the identities of each and every member of the proposed class.  According to Scott Rice, Sprint's Vice-President of Customer Billing Services, and Christian Dippon, Vice-President of NERA Economic Consulting and a Sprint

10

expert, compiling a full list of class members from 1999-2008 would require 6-12 months of work at a likely expense of at least one million dollars.  (See generally Docket Entry # 263 (Decl. of Joseph Boyle ("Boyle Decl")), Exhs. A, B, and C.)[8]  Thus, aside from the 14.8 million current subscribers, Sprint argues that no individual notice is necessary because compiling a full list of class members is unreasonable.[9]  The Galleguillos Objectors concede that compiling a complete list is unreasonable (March 13, 2009 Hr'g, Tr. 125:12-16); however, they take issue with the fact that Sprint did not analyze the amount of effort required to construct a smaller or partial list of individual class members.

Sprint notes that three separate data systems house the relevant contact information for settlement class members dating back to 1999.  (Boyle Decl. at 2.)[10]  The first, called "TRIS," contains all of the billing records from 1999-2002 for Nextel customers prior to the merger with Sprint.  That database is generally inaccessible as tools necessary to test and pull the data are no longer available.  Moreover, subscriber information can only be accessed from this database if the particular customer account number and telephone number are already known.  The Court agrees that retrieving any sort of data from this old system is unreasonable, whether it is partial or full data.  Thus, individual notice to these class members is simply not possible; publication

---

[8] The Boyle Declaration contains verified interrogatory answers by Scott Rice (Exh. A), and Christian Dippon (Exh. B).  It also contains an affidavit by Christian Dippon (Exh. C).  Sprint filed this entire declaration under seal, but the estimates as to the amount of time and money necessary to compile a full class list along with the specific computer systems hosting Sprint's various databases were referenced during the Fairness Hearing.  Thus the Court finds them appropriate to disclose in this public filing.

[9] The Court, as discussed above, has already found that individual notice to the list compiled of the Robertson class is necessary.

[10] The following discussion of Sprint's databases is taken from the Scott Rice verified answers to interrogatories (Boyle Decl., Exh. A).

11

notice would suffice.

The information regarding the remainder of the class members resides in two separate databases – P2K and Ensemble.  The P2K system is completely archived, and though some parts of the system have been restored to "live" status, the remainder of the system remains difficult to access.  The Ensemble database comes with its own set of logistical difficulties, including the time required to access the database, the fact that it would involve an outside vendor, the fact that it runs in parallel with other divisions at Sprint, and the fact that it is not set up to query by ETF paid.  The Court understands, however, that Ensemble retains both recent and historical data for many Sprint and Nextel customers.  Thus, Sprint could conduct an inquiry as to whether, instead of attempting to pull the relevant customer data for every potential class member from 2002 to 2008, it can identify specific subsets of customers – whether by year, geographic region, ETF paid, or type of contract – that are members of the class.  In that vein, rather than running a search that includes every possible variable, Sprint can run targeted searches that pull relevant information for sub-classes of individuals.

To the extent, therefore, that the Galleguillos Objectors assert that partial class lists are as noticeable as complete ones, that objection has merit.  Class Counsel and Sprint cite to several cases in opposition, but none are persuasive, for several reasons.  First, many of the cited cases either address a notice plan approved under Rule 23(e) or pursuant to a class certified under Rule 23(b)(1) or 23(b)(2), rather than a plan authorized under the more stringent requirements of Rule 23(c)(2).  For instance, Sprint cites to Kaplan v. Chertoff, Civ. A. No. 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008) for the proposition that "identification of class members [is] not reasonable where it would take three months to search databases to do so."  (Docket Entry No.

243 at 21.) <u>Kaplan</u>, however, involved a 23(b)(2) class rather than one certified under 23(b)(3). <u>Id.</u> at *10.  The Court in that case specifically noted that the stringent requirements of Rule 23(c)(2) did not apply.  <u>Id.</u> at *12.  Thus, <u>Kaplan</u> is of little persuasive value in analyzing the sufficiency of the notice plan in the present matter.  Additionally, Sprint cites to <u>DeHoyos v. Allstate Corp.</u>, 240 F.R.D. 269, 296 (W.D. Tex. 2007) for the idea that individual notice is not required when there is no reasonable way to sufficiently identify class members.  (Docket Entry No. 243 at 19.)  While that proposition is correct, the <u>DeHoyos</u> action, like <u>Kaplan</u>, was certified as a class seeking injunctive relief under Rule 23(b)(2).  <u>Id.</u> at 284.  Though class members could claim monetary damages, those damages were "incidental" to the injunctive relief sought and thus did not preclude certification under 23(b)(2).  <u>Id.</u>  As the <u>DeHoyos</u> court correctly noted, "[w]hen a class falls within the classic rule 23(b)(2) paradigm as it does here, no opt-out procedure is necessary to protect the interests of the class."  <u>Id.</u> at 285.  Thus, though the Court delved into a discussion of the feasibility of individual notice, it only imposed the less rigorous notice requirements of Rule 23(e).

Next, Sprint and Class Counsel largely rest their arguments on <u>In re Domestic Air. Transp. Antitrust Litig.</u>, 141 F.R.D. 534, 539 (N.D. Ga. 1992).  The <u>Domestic Air</u> case involved a class action on behalf of "domestic airline passenger tickets" from one of the defendant airlines to and/or from a defendant's hub.  <u>Id.</u> at 535.  The Court certified the class pursuant to Rule 23(b)(2) but then proceeded to analyze the notice plan (for a combined settlement and class certification notice) pursuant to Rule 23(c)(2)'s stringent individual notice standard.  <u>Id.</u> at 537-38.  The dispute centered around whether or not individual notice was necessary to complement the substantial publication plan in place.  Defendants, throughout discovery, took the position

that the construction of an individual list of class members was impossible.  Id. at *540.

However, they eventually did an about-face on the eve of class certification and proclaimed that

they were able to construct a list of approximately 9.3 million names of possible class members.

Id.

       Significantly, the Domestic Air Court concluded that the 9.3 million-name list was "not a

list of class members."  Id. at 541.  The Court continued, "defendants have compiled a list of

more than 9.3 million names and addresses of persons associated with credit card numbers – but

not a list of class members."  Id.  Defendants then argued that of the 9.3 million names, they

could compile a definite list of 2.9 million indisputable class members.  Id. at 552.  The Court

remained unconvinced, finding again that the "defendants' first and clearly stated position a year

ago is the correct one – that a list of purchasers cannot be compiled through reasonable efforts."

Id. at 553.  Finally, however, the Court concluded: "If defendants succeed in compiling an

accurate list of class members, the Court will direct individual notice to the partial list."  Id.

Thus, Domestic Air does not stand for the proposition that partial class lists do not require

individual notice; rather, it adopted quite the opposite formulation.  Partial lists – to the extent

that they are accurate – would require 23(c)(2)-compliant notice.

       Finally, and perhaps most importantly, the Court notes that in Eisen, the Supreme Court

addressed a situation in which the prospective class consisted of nearly 6 million individuals.

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 166, 94 S. Ct. 2140, 2147, 40 L. Ed. 2d 732 (1974).

With reasonable effort, 2.25 million of those individuals could be identified.  Id.  The District

Court held that the substantial cost associated with providing notice to that subset of individuals

was prohibitive and ordered limited individual notice and a publication plan.  The Second

14

Circuit, however, reversed, and the Supreme Court agreed, holding that "[i]n the present case, the names and addresses of 2,250,000 class members are easily ascertainable, and there is nothing to show that individual notice cannot be mailed to each." Id. at 175, 2151. Thus, Eisen itself required notice to a partial class. Even more – the Eisen Court specifically disclaimed the reliability of constructive notice, finding it to be "a poor substitute for individual notice" and to be used only when it is impracticable to gain the names and addresses of individual class members. Id. at 175, 2150 (quoting Schroeder v. City of New York, 371 U.S. 208, 213, 83 S. Ct. 279, 293, 9 L. Ed. 2d 255 (1962). Given that Eisen required notice to a partial class and that it pronounced constructive notice to be especially unreliable, this Court is hard-pressed to find Sprint's argument persuasive.

In sum, Rule 23(c)(2) cannot be so easily circumvented by undertaking only an analysis of identifying each and every class member, rather than some or most class members. Nor does the fact that a large effort is required to identify a subset of class members automatically render individual notice inapplicable. In In re Nissan Motor Corp. Antitrust Litig., the Fifth Circuit required counsel to undertake an examination of 1,700,000 "RDR cards" to identify individual class members, a task that the district court had described as "herculean." 552 F.2d 1088, 1100 (5th Cir. 1977). Referencing Eisen, the Fifth Circuit noted:

> That the absentee class members' opportunity to receive their subdivision (c)(2) notice be reduced to mere chance need not arise here. When the chore of examining defendants' RDR cards is juxtaposed to the efforts required to identify the individual Eisen class members, it pales by comparison. The district court's characterization of the undertaking here as "herculean" is accurate only in relation to the class's size. The key, though, is reasonable effort, and a large class requires a large effort. Subdivision (c)(2) mandates that each class member be given the 'best notice practicable under the circumstances.' While the mechanical process of examining the cards may prove to be expensive and time-consuming, the individual right of absentee class members to due process makes the cost and effort reasonable.

Id.  Given that the cases cited by Class Counsel and Sprint reference the 23(e) standard, the

Domestic Air case is in favor of sending partial notice, and the Supreme Court's decision in

Eisen specifically mandated notice to a partial class of over 2 million individuals, the Court finds

that Sprint must do more than it has done thus far.  The fact that not every member of the class

can receive the best notice does not mean that everyone gets the least notice.  Rather, those

subclasses capable of reasonable identification require individual notice.  This especially holds

true in a case such as this one, where those who paid an ETF are entitled to recover the lion's

share of the settlement but are generally unlikely to be current Sprint customers.  Sprint shall

attempt to identify subclasses of individuals and include individual notice to those persons.

### 2.    Content of Bill Insert

Next, the Galleguillos Objectors suggest that the Bill Insert – sent to 14.8 million Sprint

customers – did not abide by the notice requirements of Rule 23(c)(2).  The Bill Insert contained

the following message:

> Legal Notice: Early Termination Fee Settlement.  Customers who are
> or have ever been party to a Sprint service agreement with a flat-rate
> Early Termination Fee (ETF) clause may be a class member in a class
> action settlement.  To understand your rights, call 800-916-6940, or
> visit SprintETFSettlement.com.  This does not apply to Corporate or
> Government accounts.

The Bill Insert appeared on the inside of page 2 of the bill, under a heading entitled "Sprint News

and Notices."[11]  Rule 23(c)(2)(B)(i)-(vii) states clearly the pieces of information that must be

contained within notice sent to individual class members "who can be identified through

---

[11] A copy of the Bill Insert, as it appeared on an actual customer bill, was provided by the
Galleguillos Objectors and entered into evidence at the Fairness Hearing as Exhibit G-1.

reasonable effort."  "Rule 23 imposes strict requirements both as to the substance of the requisite notice, and as to the method by which the notice must be disseminated to individual class members."  Karvaly v. eBay, Inc., 245 F.R.D. 71, 90 (E.D.N.Y. 2007).

Here, no party disputes that the 14.8 million current Sprint subscribers are Class Members who may recover under the Settlement Agreement.  Moreover, neither Sprint nor Class Counsel argue that those subscribers are not reasonably ascertainable – clearly, as they are current Sprint customers and receive monthly Sprint bills, they are capable of being individually noticed.  Thus, the only question is whether the Bill Insert itself complied with the dictates of Rule 23(c)(2).  It did not.

Rule 23(c)(2)(B) requires that the notice state "in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  The Bill Insert failed to convey all of this basic Rule 23(c)(2) information.  While it arguably described the nature of the action, it neglected to identify any of the other pertinent 23(c)(2) requirements.  Class Counsel, in fact, implicitly concedes this point by noting that the Bill Insert "was never intended to be a stand-alone notice, and cannot be viewed in isolation."  (Docket Entry # 231 at 18.)  Thus, Class Counsel argues that the purpose of the Bill Insert was to bring the settlement to the attention of class members and to direct to them to additional information concerning the settlement.  Rule 23(e) allows a summary notice of the type propounded here, designed to generally apprise the class of the settlement while referencing

all remaining settlement documents.  See, e.g., In re PaineWebber Ltd. Partnerships Litig., 171

F.R.D 104, 124 (S.D.N.Y. 1997) (settlement notice adequate where it provided a summary notice

of the settlement while incorporating by reference all remaining documents on file with the

Court).  However, Rule 23(c)(2) requires more.[12]

Once individual class members have been ascertained, they must receive individual

notice in compliance with Rule 23(c)(2).  "Absentee class members will generally have had no

knowledge of the suit until they receive the initial class notice.  This will be their primary, if not

exclusive, source of information for deciding how to exercise their rights under Rule 23."  In re

Nissan Motor Corporation Antitrust Litig., 552 F.2d 1088, 1104 (5th Cir. 1977).  Thus, strict

adherence with Rule 23(c)(2) is required.  In this case, the notice provided on the Bill Insert was

deficient.  It failed to notify potential class members of most of the required 23(c)(2) pieces of

information.  Most importantly, however, it failed to apprise class members of their right to opt

out of the action.  Telling an individual that he may be part of a certified class that has a claim for

damages in a class action settlement is markedly different from informing that individual not

only that he might be a member of a certified settlement class but that his failure to opt-out of the

action eliminates his future right to ever bring that claim.

Finally, though not dispositive, the Court notes that the Bill Insert caused – at most – only

60,000 unique visitors to the settlement website and another 568 claims by phone.  (March 12,

---

[12] Class Counsel also suggested at the fairness hearing that directing class members "to
another place to get all of the information" is acceptable.  (Mar. 13, 2009 Hr'g, Tr. 194:23-
195:4.)  However, Counsel cited to Rule 23(e), which – as previously noted – does not impose
the same type of restrictions on notice as 23(c)(2).  (Id.)  Because this is a 23(c)(2) notice, it is
inappropriate to circumvent the substantive requirements of notice by directing class members to
a website link.

2009 Tr: 70-71; Vasquez Decl. at 16, 19; Fairness Hearing, Exh. G-4.)  While response rate is not by itself a factor to determining the strength or weakness of a notice campaign, the fact that only .4% of current Sprint subscribers actually logged onto the website is suggestive evidence that the Bill Insert did not provide "notice" to those 14.8 million customers.[13]

Class Counsel and Sprint shall confer on a more appropriate form of notice that includes all of the elements set forth in Rule 23(c)(2)(B)(i)-(vii).  This does not mean that the 14.8 million class members require a separate mailing or a separate postcard – the idea of contacting these members through their monthly bill (or through an accompanying bill stuffer) is a reasonable one that suffices for individual notice and that is more cost-effective than a separate mailing.  However, if the parties are going to use the bill message as their mechanism to comply with "individual notice" requirements, they must do so in a way that satisfies all the mandatory informational elements contemplated by Rule 23(c)(2) while also providing general settlement information as required by Rule 23(e).[14]  Here, they complied with Rule 23(e) but neglected to

---

[13] Sprint's motion to preclude evidence of the response rate is denied.  (Docket Entry # 266.)  While response rate is not determinative of whether or not a notice program met Rule 23 standards, this Court is free to view it as suggestive evidence of whether or not the Bill Insert effectively conveyed the proper information.

[14] Thus, to the extent that the citations in Class Counsel's brief allude to the lower standard of 23(e), those cases would be on point with regard to whether the settlement portion of the present notice met 23(e) standards.  Those cases do not, however, refer to the standard for Rule 23(c)(2) notice and thus are of little help in evaluating the propriety of the Bill Insert.  Thus, for example, Maher v. Zapata Corp., 714 F.2d 436, 452 (5th Cir. 1983), was referenced within the string-cite at page 22 of Class Counsel's "Brief in Response to Objections to the Final Approval of Settlement."  (Docket Entry # 231 at 22.)  In that case, though the class was certified under 23(b)(3), the relevant notice was for settlement purposes only and thus simply had to satisfy the lowered threshold of 23(e).  The same holds true for Petrovic v Amoco Oil Co., 200 F.3d 1140, (8th Cir. 1999) (addressing Rule 23(e) instead of 23(c)); Grunin v. International House of Pancakes, 513 F.2d 114 (8th Cir. 1975) (same); and Boggess v. Hogan, 410 F. Supp. 433 (same).

surmount the more onerous burden imposed by Rule 23(c).

Taking into account the above guidance, Sprint and Class Counsel shall design a robust individual notice program in compliance with Rule 23(c)(2).

### 3.    Publication Notice

Finally, the Galleguillos Objectors tackle the issue of publication notice, asserting that the notice plan used in this particular case failed to reach a substantial part of the class.  The implementation and design of the publication notice plan fell upon Gilardi & Co., LLC ("Gilardi"), a nationally-renowned specialist in the construction and dissemination of media-based notice programs in class action cases.  According to Plaintiff's expert Alan Vasquez, Gilardi began by defining the target audience as "all U.S. Adult Mobile Phones Subscribers." (Vasquez Decl. ¶ 6.)  That left a total audience size of 168, 557,000 individuals.  (Id.)  In order to reach as many of those individuals as possible, Gilardi designed a three-prong publication notice plan that included: (1) publication notice in various magazines and newspapers; (2) a PR Newswire Release; and (3) a Google AdWords campaign.[15]  The real dispute over publication notice concerns two elements: first, the effective overall reach of the campaign; and second, the content of the notice.  The Court addresses each in turn.

### a.    Reach

First, the parties spar over the concept of "reach" and whether the present plan met or exceeded acceptable reach statistics.  According to Todd Hilsee, the expert witness put forth by

---

[15] Gilardi also set up a website containing all relevant information for prospective class members.  The website, while important, cannot be considered part of the notice publication plan given that it does not actively place itself in view of class members.  Rather, class members had to know the website address or be provided the website link to access it.  Because of its static nature, it is not considered a piece of the publication notice campaign.

the Galleguillos Objectors, "[r]each is a calculation, a percentage of a target audience that is exposed to a message." (March 12, 2009 Hr'g, Tr. 148: 6-7)  Class Counsel expert Alan Vasquez defines reach as "the number of unique individuals given the opportunity to be exposed to a media schedule over a period of time." (Id. at 24:4-8.)  The Court views the two definitions as conveying generally the same idea – Hilsee's concept conveys net reach or measurable reach and is defined as a percentage whereas Vasquez's concept is reach and is defined in terms of number of people.  The important statistic for analysis purposes is net reach and both Hilsee and Vasquez agree that the publication plan had a net reach of anywhere from 49-53 percent.  (Id. at 16-20; 153-154.)  Certainly, the parties differ about where along that spectrum this plan falls, but for purposes of analyzing the effectiveness of a notice plan, it is enough for this Court to peg the program at 49 to 53 percent.

Class Counsel and Sprint contend that once the 14.8 million Bill Inserts are added to the reach figures, the net reach number jumps to at last 70%.  Indeed, if the Bill Inserts constitute an effective form of individual notice, that may well hold true.  However, this Court has already found the Bill Inserts to have been deficient.  Thus, in practice the reach of this notice plan fell far short of 70%, while in theory – had the Bill Inserts been Rule 23-compliant – it may well have exceeded 70 percent.

Having thoroughly evaluated the publication plan and the objections of the Galleguillos Objectors, the Court is satisfied that it was calculated to reach a significant amount of the class. The regional newspapers were chosen to represent areas with large concentrations of Sprint subscribers.  (Vasquez Decl. 8.)  And the plan incorporated multiple notices in issues of large national publications, including the USA Today, Parade Magazine, Vista Magazine, and the New

York Times.  No case stands for the proposition that a publication notice reach of 49-53 percent is disallowed, especially when coupled with a strong individual notice program.  Given the large size of this class and the discretion afforded this Court, the Court finds the dissemination plan to have been sufficient.

### b.     Content

Finally, the Galleguillos Objectors raise issue with the content of various publication notices.  At the outset, the Court finds that not all of the publication notices properly conveyed the information required by Rule 23(c)(2).  Specifically, Alan Vasquez attaches at "Exhibit A" a sample of the notice submitted to regional newspapers and at Exhibit G the notice submitted to the USA Today, among others.  (Vazquez Decl., Exhs. A and G.)  Exhibit A contains all of the information required by Rule 23(c)(2) – it provides a description of the case and settlement class, along with the steps necessary to submit a claim, opt-out and/or object.  Finally, it informs the potential class member that future claims are barred unless the individual excludes him/her self from the settlement.  In contrast, the USA Today notice – while drafted to be a quick-and-easy read – is nearly as deficient as the notice sent on via the Bill Inserts.  For the same reasons that the Bill Insert was deficient, this publication notice also fails.  Given that the USA Today piece of the publication plan constituted a significant piece of the overall notice plan, the Court must force the parties to re-notice the class – both individually and by publication.

To be clear, the Court is not holding that settlement notices under Rule 23(e) need to delve into extravagant detail about the intricacies of the settlement and the legal claims of the parties.  The caselaw is generally in accord that Rule 23(e) settlement notices "need not be highly specific" and can supply information by incorporation of settlement documents and by linking to

22

a website.  In re Painewebber, 171 F.R.D. at 124.  However, in a combined 23(c) and 23(e)

notice, Class Counsel must comply with the substantive and procedural elements of 23(c) while

at the same time providing the limited settlement notice required by 23(e).  In this case, Class

Counsel and Sprint conflated the two – they properly incorporated by reference many settlement

details but inappropriately attempted to also incorporate by reference the mandatory

informational elements required by 23(c).  For good reason, this is not allowed.

Finally, the Court is aware that notices can never be perfectly drafted and that there is a

fine line between writing them in "plain" language and incorporating all of the relevant

information.  However, there are only a few mandatory pieces of 23(c) information and given the

consequences associated with failing to opt out of a 23(b)(3) class, the Court finds that the 23(c)

requirements must be strictly enforced.  As with the Bill Insert, it is insufficient to inform a class

member that he may have a recovery without also informing him that he will lose his right to

bring certain claims if he does not take action.[16]

### 4.    Parallel State Actions and Alleged Intra-Class Conflict

Garner and Lambert raise three objections to the content of the publication notice – first,

that it failed to alert class members to the pendency of the Smith Arbitration action in California;

second, that it failed to disclose an alleged intra-class conflict between "net receivers" and "net

payers"; and third, that it failed to inform class members of the approximate value of the relief

---

[16] The Galleguillos Objectors also take issue with whether or not the class definition
includes pre-merger Nextel customers and whether it effectively conveys the fact that Robertson
class members are included.  Because the Court is forcing the settling parties to re-notice the
class, the new notice and class definition should take into account these objections to properly
include Nextel and Robertson customers.  Additionally, to the extent that the parenthetical
following the Robertson citation in the Settlement Agreement is incorrect (Settlement Agreement
at 5), the parties should correct it.

they would obtain under the settlement.  Each of these objections goes to the quality of the Rule 23(e) settlement portion of the notice, and none holds merit.

First, Garner and Lambert argue that the publication notice should have included information regarding the status of the Smith Arbitration.  Specifically, they note that the Smith Arbitration had been certified, notice had been dissemination, and the opt-out period had run.  No case or rule stands for the proposition that a nationwide class notice must identify any or every pending parallel state action.  To be sure, that type of notice would more easily confuse than explain.

The notice here plainly advised potential class members that the "settlement will release all claims that customers may have against Sprint Nextel relating in any to its flat-rate ETFs and term contracts, and will bar future claims, unless the individual excludes him/herself from the settlement."  (Vasquez Decl., Exh. A.)  This clear explanation is sufficient to advise any interested class members in any parallel state litigation that his or her claim regarding a flat-rate ETF is included within the settlement.  The Third Circuit held this type of notice sufficient in Bell Atl. Corp. v. Bolger, 2. F.3d 1304, 1318 (3d Cir. 1993) and accordingly it passes muster in this case.[17]  To the extent that the USA Today notice failed to advise class members about the above information, that shall be corrected in the re-noticing plan.

Next, Garner and Lambert ask this Court to find the notice deficient for failure to apprise

---

[17] To the extent that Garner and Lambert argue that the Bell Atlantic decision acknowledged that the notice referenced a proxy statement describing the related suits, that argument lacks merit.  The same sort of "incorporation by reference" occurred within this notice, where class members were apprised of the settlement website.  The website contained all relevant settlement documents, including the agreement itself clearly explaining the impact of the present settlement on the Smith Arbitration class.

class members of an alleged intra-class conflict.  Specifically, they outline a difference between "net payers" and "net receivers" – net payers constituting individuals who terminated cell phone service with more charges remaining on their contract than the amount of the ETF and net receivers constituting the opposite.  Garner and Lambert believe that the interests of the "net receivers" are diluted by those of the "net payers" and thus the former class members receive less under the settlement than they otherwise would.  This type of conflict was briefed and argued as an objection to the reasonableness of the settlement, and the Court will address it in the confines of that discussion.  The Court, however, rejects the argument that the notice itself needed to advise the parties of every potential conflict between members of the class.  The fact that an objector believes there to be an intra-class conflict does not render publication notice deficient for failure to disclose that conflict.

Finally, Garner and Lambert assert an objection based on the alleged failure of the notice to adequately describe the range of possible recovery for potential class members.  Indeed, in at least one case, a district court held notice insufficient where it failed to apprise class members of their likely recovery after *pro rata* allocation.  In re Public Offering Securities Litig., 243 F.R.D. 79, 94 (S.D.N.Y. 2007).  Class Counsel fails to address this argument in their papers.  Sprint, however, cites to several cases holding that a notice need not delve into specific recovery values where the ultimate recovery is uncertain.  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1374 (9th Cir. 1991); see also In re Painewebber, 171 F.R.D. at 124 ("Nor does the adequacy of notice turn on the ability of an individual Class Member to calculate the amount of his or her actual recovery under the settlement.")  Here, the publication notice at Exhibit A of the Vasquez Declaration adequately advised class members of the pendency of the action, the types of claims

covered, and the total amount of money in the common fund.  Given the complicated payout scheme and the multiple classes for recovery, any additional information would have resulted in more clutter and confusion with respect to the notice itself.  To the extent that the <u>Public Offering</u> court suggests that estimated *pro rata* recoveries must be detailed on the class notice, this Court disagrees.

The Garner and Lambert objections on this point attempt to ascribe more onerous requirements to Rule 23(e) than are otherwise necessary.  "Normally, settlement notices need only describe the terms of the settlement generally."  <u>In re Michael Milken and Associates Securities Litig.</u>, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (citations omitted).  Each objection implicates the lenient standard of Rule 23(e), and accordingly each is rejected.

### C.    Conclusion Regarding Notice

Having evaluated all of the objections presented, the Court finds that Sprint and Class Counsel must re-notice the class.  The Court is undoubtedly aware of the time and expense associated with such a task, but given the clear dictates of Rule 23(c)(2) and corresponding caselaw, proper notice is required.

Class Counsel and Sprint shall construct a new notice plan in accordance with the guidance given above.  Within 21 days, they shall present that notice plan to the Court.  It should include at least the following: (1) a new form of individual notice that contains the 23(c)(2) elements; (2) a plan to supply that individual notice to members of the <u>Robertson</u> class; (3) a plan to supply that notice to all current Sprint subscribers; (4) an indication from Sprint as to what subclasses of subscribers are reasonably identifiable and a corresponding plan to provide individual notice to those subscribers; (5) a new form of notice publication that is fully compliant

with 23(c)(2) and 23(e); and (6) a full publication plan that, in conjunction with individual

notice, will provide the "best notice practicable."

Finally, Sprint and Class Counsel may – to the extent appropriate – utilize alternative

means of contacting individual class members, such as by email or text message. "The Court is

limited in determining alternative measures only by due process considerations, the limits of

Rule 23(c)(2) in the case of a combination notice, and its own ingenuity." William B.

Rubinstein, Alba Conte and Herbert B. Newberg, 3 Newberg on Class Actions § 8:24 (4th Ed.

2002). This case presents the interplay between a large class, stringent individual notice

requirements, and different forms of available technology. Sprint and Class Counsel are free to

devise a notice plan that meets Rule 23(c)(2) standards while at the same time utilizing the cost

and efficiency savings that come from features such as electronic mail or text messaging.

## II.    **Reasonableness**

Under Rule 23, a court may only approve a class settlement after it has held a hearing and

found that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third

Circuit has set forth nine factors to be used in this determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). The Third Circuit has also recognized the

utility of examining other factors as they are relevant to individual cases. In re Prudential Ins.

Co. Sales Practice Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998) (developing other

factors relevant to mass tort context).

In this case, having found notice to be insufficient, the Court lacks jurisdiction over the absent class members.  Until notice is properly administered, the Court cannot evaluate the reasonableness of the settlement.  After all, the second factor in the <u>Girsh</u> analysis involves the reaction of the class to the settlement, a factor that would be hard to gauge in the absence of adequate notice.

Before tabling for another day the issue of reasonableness, however, the Court takes a moment to provide some guidance to the parties.  Included within the settlement is a provision governing the return of any monies left in the $14 million settlement fund after all claim periods have expired.  The Settlement Agreement reads:

> In the event there remains cash left in the fund after all claim periods have expired, the remaining cash will be returned to Sprint Nextel and Sprint Nextel shall issue prepaid calling Personal Identification Numbers valued in the amount of the remaining cash, to a charitable organization that holds a 501(c)(3) designation or other organization or institution to be agreed on by the parties.

(Docket Entry #84 ("Settlement Agreement") at 23.)  This provision involves a *cy pres* distribution – a feature common to many class action settlements.  However, in the context of this settlement, the Court is concerned with a provision in which Defendant retains the remaining cash and offers prepaid calling cards as an alternative.  While this Opinion does not address the reasonableness of the settlement, the Court simply highlights its concern with the provision outlined above and asks the parties to be prepared to argue for its merits should it remain in the settlement agreement.

**III.**    **Conclusion**

For the reasons set forth above, Plaintiff's and Sprint's joint motion for final approval of

the settlement is denied without prejudice.  Within 21 days, the settling parties shall submit a

new notice plan, in accordance with this Opinion, at which time the Court will set down a new

date for a future fairness hearing.

      An appropriate Order accompanies this Opinion.


Dated: April 29, 2009                           /s/ Jose L. Linares_____
                                        United States District Judge