# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BARRY HALL, et al.,

              Plaintiffs,

    v.

AT&T MOBILITY LLC f/k/a CINGULAR
WIRELESS LLC, et al.,

              Defendants.

Civil Action No. 07-05325 (JLL)

---

## BRIEF IN SUPPORT OF MOTION FOR
## PRELIMINARY APPROVAL OF SETTLEMENT

---

Andrew B. Joseph
Seamus C. Duffy
William M. Connolly
**DRINKER BIDDLE & REATH LLP**
500 Campus Drive
Florham Park, New Jersey 07932
973.549.7264

*Attorneys for Defendant AT&T Mobility LLC*

Brian R. Strange
Gretchen Carpenter
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
310.207.5055

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN**
5 Becker Farm Rd.
Roseland, New Jersey 07068
973.994.1700
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Table Of Authorities ........................................................................................................ii

Introduction Of Parties And Actions ............................................................................1

Preliminary Statement....................................................................................................1

Statement Of Facts .........................................................................................................3

    A.    Factual Background and Procedural History of This Action.....................3

    B.    Reasons for the Settlement...................................................................5

    C.    The Settlement Terms ...........................................................................6

Legal Argument

Point One

The Settlement Warrants Preliminary Approval...........................................................8

    A.    The Standards for Preliminary Approval ...............................................8

    B.    The Settlement is the Result of Arm's-Length Negotiation
        Between Experienced Counsel ...............................................................11

    C.    The $18 Million Settlement Plus Substantial Equitable Relief Falls
        Well Within the Range of Possible Approval, Given the Significant Risks and
        Costs of Continuing to Litigate ..............................................................11

    D.    The Substantial Benefits of the Proposed Settlement Far
        Outweigh the Speculative Gain of Continued Litigation..........................12

    E.    The Proposed Method of Class Notice is Appropriate .............................12

Point Two

A Settlement Class Should Be Certified.......................................................................15

    a)    The settlement Class satisfies the requirements of Rule 23......................15

        i.    Numerosity ..................................................................16

        ii.    Commonality ...............................................................16

iii.    Typicality ........................................................................................17

iv.    Adequacy of Representation .........................................................18

v.    Predominance of Common Questions and Superiority
to Other Methods of Adjudication .................................................18

Conclusion ..................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 15, 19

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir, 1994) .......................................................................... 16

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) .................................................................... 19

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ................................................... 16

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................ 10

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.Supp. 825 (E.D.N.C. 1994) .......... 9

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992) .......................................... 17

*In re AremisSoft Corp. Sec Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ................................................ 12

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403 (S.D. Ind. 2001) ................................................ 10

*In re Community Bank of W. Va.*, 418 F.3d 277 (3d Cir. 2005) ............................................ 15, 16

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................................................ 8, 9, 15

*In re IPO Securities Litigation*, 243 F.R.D. 79 (S.D.N.Y. 2007) ................................................ 11

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) ....... 15, 18, 19

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ............................................................................ 18

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................................ 16, 17

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .................................................................... 9

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985) ............... 13

**Rules**

Fed.R.Civ.P. 23 .................................................................................................................. passim

**Treatises**

3B J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) 23.80[2.-1] .................................... 9

4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 ............................................... 9

ANNOTATED MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2009) ............................... 8

MANUAL FOR COMPLEX LITIGATION (SECOND), § 30.44 (1985) .................................................... 9

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 (1995) ........................................................ 8

## INTRODUCTION OF PARTIES AND ACTIONS

Barry Hall is the named Plaintiff in the above-captioned action;

Roman Sasik, David Dickey and Steven Wright are the named Plaintiffs and counter-defendants in *Sasik, et al. v. AT&T Wireless Services, Inc.*, Case No. 2:05-CV-2346-ABC (CWx) (C.D. Cal.);

Jane Waldmann, Robert Wise, Jackie Thurman, Richard Chisolm, Mary Pitsikoulis, Debra Lively (formerly Debra Lipton), Jacqueline Sims, and Kiisha Orr are the named Plaintiffs and counter-defendants in *Waldmann, et al. v. Cingular Wireless LLC*, Case No. 2:07-CV-05087-ABC (CWx) (C.D. Cal.) (plaintiffs in all three cases are collectively referred to as "Plaintiffs"); and

AT&T Mobility LLC ("ATTM") is the Defendant, and is engaged in the business of providing wireless telephone and data service.

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Brief in support of their motion for preliminary approval of a proposed class settlement (the "Settlement"), the terms of which are set forth in a Stipulation and Agreement of Settlement, dated September 15, 2009 (the "Agreement"), attached to the Declaration of Brian R. Strange as Exhibit 1. The Settlement will provide direct benefits to settlement class members worth $18 million and, if approved, would resolve all of Plaintiffs' claims against ATTM. The Settlement provides substantial benefits to all Class members, including late term Class members. The Settlement was reached after a thorough investigation by Plaintiffs' counsel and mediation under the supervision of the Hon. Douglas Wolfson (retired).

Defendant ATTM is a provider of wireless communications services. In this action, Plaintiffs allege that: (a) ATTM and/or its predecessors assessed, and in some cases collected, a Flat-Rate ETF from its subscribers that Hall alleges was in violation of various state and federal laws; and (b) certain ATTM subscriber contracts contain Flat-Rate ETF provisions that Hall alleges are unlawful under various state and federal laws. ATTM denies these allegations.

As part of the settlement, ATTM has agreed to create a common fund of $16 million to be paid to Class members who paid flat-rate ETFs in accordance with the terms of the Agreement, plus up to $2 million worth of non-cash benefits in the form of free services. The Agreement also provides for significant and extremely valuable "Proration Benefits" which permit current ATTM subscribers who are subject to a flat-rate ETF to convert to a pro-rated ETF, i.e., an ETF that declines as the contract term nears completion. ATTM has also agreed not to include flat-rate ETF provisions in new customer service agreements for a period of two years.

The Settlement resulted from good faith, arms-length negotiations among experienced counsel for the parties, and is an excellent compromise in light of the merits of Plaintiffs' claims and ATTM's defenses, and the factual and legal risks of continued litigation through trial and an almost-certain appeal. The Settlement represents a highly favorable result for the putative class, and therefore meets the test for preliminary approval.

For the reasons set forth below, Plaintiffs therefore respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying the classes for purposes of settlement (the "Settlement Classes"); (3) approving the proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Classes; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider the request for final approval of the

Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses.

## STATEMENT OF FACTS

### A.    Factual Background and Procedural History of This Action

Plaintiff Barry Hall filed the instant action on November 5, 2007.  In the Complaint, he alleged that ATTM's $150-$175 flat-rate ETF was an unenforceable penalty and, thus, an unreasonable term and condition in violation of the Federal Communications Act, a violation of substantially similar state consumer fraud statutes, and constituted unjust enrichment.  He sought damages, injunctive relief and attorneys' fees as to each claim.  ATTM moved to compel arbitration pursuant to the terms of its form customer agreement.  By way of Opinion and Order dated March 30, 2009, the Court denied ATTM's motion to compel.  ATTM timely appealed that decision, and the appeal is presently pending before the Third Circuit.

The *Sasik v. AT&T Wireless* case was filed in March 2005.  The parties litigated the arbitrability of the claims in two motions to compel arbitration, resulting in an appeal by Defendant to the Ninth Circuit Court of Appeals (the appeal was later dismissed).  The parties conducted substantial class certification discovery, including Defendant taking the representative plaintiffs' depositions.  The *Sasik* case was subsequently consolidated with the *Waldmann v. Cingular* case for pre-trial discovery and was part of the expedited discovery process described below.

The *Waldmann v. Cingular* case was filed in May 2004 in the Circuit Court of the Fifteenth Judicial Circuit – Palm Beach County, Florida.  After several motions to remove and after several hearings and discovery in that case, including depositions of the Representative Plaintiffs, Jacquelyne Thurman held on September 8, 2006 in Owensboro, Kentucky and

Jacqueline Sims held on September 27, 2006 in Los Angeles California, the case was removed to Florida federal court and subsequently transferred to the Central District of California. After a primary jurisdiction stay of both the *Sasik* and *Waldmann* actions was lifted, the parties engaged in briefing on the potentially dispositive threshold issue of federal preemption. The Court denied this motion without prejudice, and subsequently set a trial schedule which consolidated the two cases for pretrial discovery, contained expedited discovery and briefing on the federal preemption issue.

As part of this expedited proceeding, significant and substantial discovery occurred. Thousands of documents were produced by AT&T on an expedited basis, totaling well in excess of one million pages, and depositions were held in Los Angeles, California in July 2009. Although this expedited discovery was taken for the purposes of deciding the preemption issue, the extensive information produced by ATTM was also highly relevant to the core ETF claims asserted in the litigation. After substantial discovery, expedited briefing and a full hearing, the Court denied the preemption motion on its merits.

Then, over five years after the California cases were filed and after completion of substantial discovery, the parties engaged in substantial settlement discussions before the Honorable Douglas Wolfson (Retired) in New Jersey, including two all-day mediations and subsequent phone calls. As a result of the mediation with Judge Wolfson, the parties reached a tentative agreement on certain key settlement terms, and in the weeks since, have been negotiating the definitive and final terms of this settlement, in which the consolidated *Sasik/Waldmann* actions, along with *Hall v. AT&T*, were eventually settled. The parties have agreed that settlement will be filed and resolved in the *Hall v. AT&T* action and, as part of the

settlement, the pleadings would be amended to add the Sasik/Waldmann plaintiffs as additional plaintiffs.

## B. Reasons for the Settlement

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, and the likelihood of successfully obtaining or defeating class certification, and then prevailing on the ultimate merits of the suit, while being mindful of the considerable burdens and risks of litigation. In summary, Plaintiffs claim that ATTM's flat-rate ETF is an unenforceable penalty. But, there are many costs associated with developing a wireless network and acquiring and servicing customers. These costs are borne by ATTM. The ETF assisted ATTM in limiting financial risk associated with bearing those up-front costs for customers who terminate their wireless service before the end of their contract terms. It also compensated ATTM for the loss of contract revenue from customers who breached their contracts by terminating prematurely.

Under general principles of contract law, if a liquidated damages clause,[1] such as ATTM's ETF, is found to be unenforceable, the aggrieved party is nonetheless allowed to prove and collect its actual damages from the breaching party. Thus, if Plaintiffs were successful in proving that the flat-rate ETF was an unenforceable penalty, ATTM would have a claim against class members for its actual damages caused by their breaches. In fact, ATTM filed such counter-claims in the California actions.

Taking these factors, as well as others, into consideration, the parties have concluded that the benefits of settlement in this case outweigh the attendant risks of litigation, including the

---

[1] ATTM also disputes that its ETF is subject to liquidated damages law, claiming instead that it is an alternative means of performance.

uncertainties and difficulties associated with obtaining class certification for liability purposes, the legal and factual defenses that have been asserted by ATTM, the expense and length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, will likely be submitted for appellate review. As described herein, there are substantial benefits afforded to the Settlement Classes by the Settlement.

In light of the risks of continued litigation, Plaintiffs and their counsel believe that the Settlement -- which provides benefits of $18 million, with all costs of notice, administration, attorneys' fees and expenses, and incentive awards to be paid from the common fund, and which also allows current ATTM customers with a flat $150-$175 ETF provision in their contracts to choose a pro-rated ETF that declines over the course of their contract terms -- is clearly reasonable. Clearly, this represents an excellent result for the members of the Settlement Classes, and merits preliminary approval.

C.     **The Settlement Terms**

The Settlement resolves all claims asserted against ATTM by the members of the Settlement Class upon the following general terms, by which ATTM agrees to:

• Create Common Fund of $16 million cash. The costs of notice, administration, attorney's fees, and incentive awards of up to $2,000 to each Plaintiff will be paid from the Fund. The remainder of the Common Fund will be used to pay claims made by class members who elect to seek monetary relief, in accordance with a Plan of Allocation to be separately approved by the Court. The Plan of Allocation provides for payment of up to $140 to Class members who paid a flat-rate ETF and can document such payment, depending when in their contracts they terminated. The late term Class members receive the highest benefit. Class members who either

paid an ETF but cannot document such payment, and certify under penalty of perjury that they paid a flat-rate ETF, and Class Members who where charged, but did not pay, a flat-rate ETF and suffered identifiable concrete economic harm, will be paid $25. If the value of allowed claims exceeds the money in the Common Fund, Class members will be paid on a pro rata basis.

> • Provide up to $2 million in non-cash relief. Qualified Class members may submit a claim for an AT&T Prepaid Long Distance Card with up to 200 minutes. If the value of allowed claims exceeds $2 million, Class members will receive their pro rata share of non-cash relief.

> • In the alternative, allow eligible Class members to elect to modify their contracts containing flat-rate ETFs into contracts with pro-rated ETFs. This is the Proration Benefit. There is no limit on this benefit, i.e., every eligible claimant who selects this benefit will receive it and it will not be subject to reduction regardless of how many Class members select it.

> • To the extent that the Common Fund is not exhausted by claimants, the remainder will be donated to a charity or charities as agreed by Plaintiffs and ATTM and approved by the Court. To the extent that the non-cash benefits to class members submitting claims does not reach a value of $2 million, the difference between the value of the services provided and $2 million will be donated to the same charity or charities.

The Agreement also provides for the form and manner of class notice, the method through which the proceeds of the Settlement will be provided to Settlement Class Members (the "Notice Plan") and the procedure by which class counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this action as well as incentive awards. Thus, the Agreement contemplates that Plaintiffs will seek and obtain certification of the Settlement Class to effectuate both the Settlement and the Notice Plan.

## LEGAL ARGUMENT

### POINT ONE

### THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. There are three steps to be taken by the Court: (1) the Court must preliminarily approve the proposed settlement; (2) members of the Settlement Class must be given notice of the proposed settlement; and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable and adequate. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)("*GM Trucks*").

> First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

ANNOTATED MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2009).

### A. The Standards for Preliminary Approval

Before sending notice of the Settlement to the Settlement Classes, the Court should approve the Settlement preliminarily. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41 at 237 (1995). This preliminary determination establishes an initial presumption of fairness when the court finds that (1) the negotiations occurred at arms' length; (2) there was sufficient discovery; and (3) the proponents of the

settlement are experienced in similar litigation.  *See* 4 A. Conte & H. Newberg, Newberg On Class Actions § 11.41, at 11-9 at 92-93; *GM Trucks*, 55 F.3d at 785.  *See also* Manual For Complex Litigation (Third) *id.* at 236.

Preliminary approval does not require the District Court to answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate.  That decision is made only at the final approval stage, after notice of the settlement has been provided to the class members and they have had an opportunity to voice their views of the settlement.  *See* 3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) 23.80[2.-1] at 23-479.  Preliminary approval is merely the prerequisite to providing such notice, so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response."  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

As noted by the Third Circuit Court of Appeals, "[the] preliminary determination establishes an initial presumption of fairness."  *GM Trucks*, 55 F.3d at 785.  "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing."  Manual For Complex Litigation (Second), § 30.44 (1985).

Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval.  *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.Supp. 825, 827 (E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine*

*Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Id.* Here, experienced counsel for the parties, after a long course of adversarial negotiations, supervised mediation and settlement discussions, have concluded that the proposed Settlement is in the best interests of their respective clients and, in the case of Plaintiffs' counsel, of the Settlement Class. The parties had ample opportunity to fully inform themselves regarding the merits of their and their adversary's claims and defenses. Further, the Settlement does not inappropriately favor one group of putative class members over others, or provide richer settlement benefits for the named Plaintiff class representatives.

In addition, the Settlement Agreement satisfies a preponderance of the nine factors enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), and is thus fair, reasonable and adequate. Specifically, the proposed class settlement offers Plaintiffs and Class members several advantages, including compensation for their alleged injuries with no obligation to pay attorneys' fees and a relatively speedy resolution of their claims. Considering the likely duration and complexity of the litigation, which has already gone on for years, and the risks that the damages claimed by ATTM against customers who breached their contracts by terminating service before the contract terms had ended could be greater than the amounts ATTM has collected in ETF charges, the proposed settlement is significant when compared to the best possible recovery. Certainly, the Settlement falls within the "range of possible approval." It should, therefore, be submitted to the Settlement Class members for their consideration, and this Court should schedule a hearing to determine whether the Settlement is "fair, reasonable, and adequate" to the Settlement Class and should be approved by the Court.

**B.     The Settlement is the Result of Arm's-Length Negotiation Between Experienced Counsel**

As is set forth above, the Settlement was negotiated by experienced class-action counsel representing the Plaintiffs and experienced counsel for ATTM, Drinker Biddle & Reath, LLP, under the auspices of a former judge as mediator.[2]  Throughout the course of litigation, and in connection with the mediation, ATTM provided to Plaintiffs' counsel substantial discovery materials.  The Settlement is clearly "the product of serious, informed, non-collusive negotiations."  *See In re IPO Securities Litigation*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

**C.     The $18 Million Settlement Plus Substantial Equitable Relief Falls Well Within the Range of Possible Approval, Given the Significant Risks and Costs of Continuing to Litigate**

As is summarized in the Statement of Facts, given the risks, costs and time involved in continuing to litigate the Class' claims against ATTM, the $18-plus million settlement falls within the range of reasonableness.  First, as is mentioned in the Settlement Agreement, there are a number of other pending ETF suits against ATTM, some of which have been pending for years and are not near resolution.[3]  The Settlement provides a present, certain recovery for Class members.  Further, while the gross amount of flat-rate ETFs which ATTM has charged goes into the hundreds of millions of dollars, under general contract principles, ATTM would have an offset against those charges for the actual damages it incurred, which could easily equal or exceed the amount of the ETFs it actually collected.

---

[2]     Plaintiffs' counsel's credentials are filed herewith as part of their application to be appointed as Class counsel as part of the preliminary approval.

[3]     Some of these cases have been stayed and some of these cases have been litigated.

**D.    The Substantial Benefits of the Proposed Settlement Far Outweigh the Speculative Gain of Continued Litigation**

While it is entirely possible that, if the case were litigated to a conclusion, Plaintiffs would be able to obtain a greater recovery, that recovery would be years in the future, at significantly greater expense to the Class.  There is also a significant risk that the Class would receive less or nothing at the end of that time.  By way of example, in *Aayad v. Sprint Spectrum*, a suit in California challenging Sprint's flat-rate ETF, a jury found that Sprint's actual damages caused by class members' breaches of contract exceeded the ETFs Sprint had collected by over $170 million.  That case is on appeal, but it demonstrates a potential risk in continuing to litigate this case.

Further, while the enforceability of the class-action waiver in ATTM's customer agreement is debatable (ATTM filed an appeal after this Court denied its motion to compel arbitration), the settlement provides relief to current and former ATTM customers on a nationwide, class-wide basis.  If ATTM were to prevail on appeal and the class-action waiver were found to be enforceable, such relief would be impossible if the case were litigated.  The Settlement also provides relief to Class members which would not have been possible through litigation.  Class members who are current ATTM subscribers with flat-rate ETF provisions in their contracts have the option to convert their flat-rate ETFs to pro-rated ETFs.  If the case were litigated to conclusion, general contract principles would have prohibited the Court from so rewriting ATTM customer agreements.

**E.    The Proposed Method of Class Notice is Appropriate**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c)(2)(B); *see also In re AremisSoft*

*Corp. Sec Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002). The notice must concisely and clearly state in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified, (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the Court will exclude from the class any member who requests exclusion, stating when and how members may be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).

In this case, where the parties seek to simultaneously certify a settlement class and settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement). *See, e.g.*, *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90-91 (3d Cir. 1985).

The proposed method of providing notice to the Settlement Class meets the requirements of Rule 23(c)(2) by providing for a comprehensive Notice Plan. As shown by the Agreement and enumerated in its exhibited proposed Preliminary Approval Order, the Settlement requires multiple forms of notice, including:

●      Sending postcards to the last known addresses (as updated by the United States Postal Service's National Change of Address Databank) of ATTM's former customers who were charged and paid in full a Flat-Rate ETF on or after September 1, 2005, and did not subsequently receive a refund of the paid ETF.

●      Sending notices with monthly invoices to current ATTM customers who have flat-rate ETF provisions in their contracts.

●      Publishing a short-form notice of the settlement in the following newspapers once a week for two consecutive weeks: USA Today, Los Angeles Times, San Francisco Chronicle,

New York Times, Washington Post, Chicago Tribune, Dallas Morning News, and Philadelphia Inquirer, and publishing a short-form notice of the settlement in Parade Magazine for one week.

● Posting a long-form notice of the settlement on a dedicated internet website.

The proposed Notices themselves also meet the requirements of Rule 23(c)(2). The Notices are accurate and informative. They describe the terms and benefits of the settlement, the date, time and place of the hearing on final settlement approval, the procedures and deadlines for submitting comments, objections, and requests for exclusion, the general terms of class counsel's application for attorneys' fees, expenses, and incentive awards, and a description of the proposed plan for providing benefits to Class members.

## POINT TWO

## A SETTLEMENT CLASS SHOULD BE CERTIFIED

It is well-settled that the Court may certify a class for settlement purposes, provided that it engages in a Rule 23(a) and (b) inquiry. *In re Community Bank of W. Va.*, 418 F.3d 277, 299 (3d Cir. 2005); *GM Trucks*, 55 F.3d at 786. While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997). Indeed, the Supreme Court "has expressly approved the use of the settlement class device." *Id.* at 618 ("the 'settlement only' class has become a stock device"). The settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems." *Community Bank*, 418 F.3d at 300, quoting *Amchem Prods.*, 521 U.S. at 620 (internal citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314 (3d Cir. 1998).

While ATTM may argue that class issues, if the case were to be fully litigated on its merits, would present serious management problems, the Court need not be concerned with trial management issues in the settlement context. Instead, it need only consider "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank*, 418 F.3d at 299, quoting *Amchem Prods.*, 521 U.S. at 621. The facts here demonstrate the suitability of this action for class certification for settlement purposes.

a)       **The settlement Class satisfies the requirements of Rule 23**

To be certified, a settlement class in which the class members receive money damages must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality;

and (4) adequacy of representation, and the so-called "predominance of common issues" and "superiority of the class action device" requirements of Rule 23(b)(3). *Community Bank*, 418 F.3d at 302. In this case, each of the above requirements is fully satisfied.

### i. Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001). "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Although the precise number of Settlement Class members cannot be determined, by its very nature, the Settlement Class includes literally millions of members. Thus, numerosity is readily established.

### ii. Commonality

The commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the class. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir, 1994). "Because the requirement may be satisfied by a single common issue; it is easily met." *Fry*, 198 F.R.D. at 467. Clearly, there are questions of law and fact common to the Settlement Classes, the resolution of which would advance the litigation. *See id.*, at 467 (existence of single common issue sufficient for certification). A simple reading of the complaint[4] demonstrates that there are numerous questions of law or fact common to the Settlement Class. Those common issues include:

---

[4]     The Agreement provides for Plaintiffs to file an amended complaint to modify the class definitions contained in the complaint, but not the substantive allegations.

(a)     Whether the ETF is an unlawful penalty;

(b)     Whether Defendant's conduct violated the Federal Communications Act;

(c)     Whether Defendant charged Class members ETFs;

(d)     Whether the ETF is unjust;

(e)     Whether Defendant's conduct constitutes deceptive, unfair and/or oppressive conduct;

(f)     Whether Defendant is/was unjustly enriched;

(g)     Whether Defendant intended the ETF to: (a) tether clients to it; and/or (b) subsidize the cost of cellular telephones purchased by Plaintiffs and the Class from Defendant;

(h)     Whether Declaratory Relief is appropriate; and

(i)     Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of such damages.

### iii.     Typicality

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227.  It is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).  Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns may underlie individual claims. *Baby Neal*, 43 F.3d at 58.  A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).  The typicality requirement is satisfied here, as

Plaintiffs' claims, evidenced by the factual allegations in the Complaints, mirror those of the Settlement Class.

### iv.  Adequacy of Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves two factors: the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and they must not have interests antagonistic to those of the class. *See, e.g.*, *Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982). Plaintiffs' counsel are qualified, experienced and able to conduct this litigation. Strange & Carpenter and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein specialize in class action and other complex litigation in courts throughout the country, including consumer, securities, corporate governance, healthcare and antitrust litigation. *See* Strange and Cecchi Declarations. In addition, Plaintiffs will fairly and adequately represent the interests of the Settlement Classes. Plaintiffs, like many members of the Settlement Class, were charged flat-rate ETFs by ATTM and allege that they were harmed as a result, for the reasons set forth in the Complaints. In short, Plaintiffs' interests are coextensive with, not antagonistic to, those of the unnamed, absent members of the Settlement Class.

### v.  Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The existence of individual questions

of fact does not per se preclude class certification. *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985). Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

Class certification is generally appropriate where a defendant has engaged in a pattern of uniform activity that is challenged by the complaint. *See id.* at 624 (predominance requirement readily established in cases alleging consumer fraud); *Prudential*, 148 F.3d at 314-15 (predominance requirement satisfied where class members' claims arise from common scheme by defendant). In addition, the common question of law in this action, i.e., whether ATTM's flat-rate ETF is an unenforceable penalty, predominates over any individual legal issues that may exist. Certification of the Settlement Class is therefore warranted under Rule 23(b)(3) because questions of law and fact predominate over questions affecting only individual class members.

In addition, a class action is superior to other methods of litigation by the Settlement Class Members of the claims identified in the Complaint. Each of those claims, taken individually, is of such a relatively low dollar value that, as a practical matter, absent the use of the class action device, it would be too uneconomical and inefficient for any individual plaintiff to finance a litigation asserting such claims through trial and appeal.

In sum, because each of the elements of Rule 23(a) and 23(b)(3) is satisfied, this action should be certified as a class action for purposes of effectuating the Settlement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Classes; (3) approving the proposed form and method of providing notice of the pendency of this action and the Settlement to the Settlement Class; (4) directing that notice be provided to the Settlement Class members; and (5) scheduling a hearing at which the Court can consider the request for final approval of the Settlement and entry of a proposed order and final judgment, and class counsel's application for an award of attorneys' fees and reimbursement of expenses and application for incentive awards for the Class Representatives.

CARELLA, BYRNE, BAIN, GILFILLAN, CECCHI, STEWART & OLSTEIN,
Attorneys for Plaintiffs


By:＿＿＿/s/ James E. Cecchi＿＿＿＿＿＿＿＿
　　　JAMES E. CECCHI

STRANGE & CARPENTER
Attorneys for Plaintiffs


By:＿＿＿/s/ Brian R. Strange＿＿＿＿＿＿＿＿
　　　BRIAN R. STRANGE

Dated: September 15, 2009