# EXHIBIT 1

## STIPULATION AND SETTLEMENT AGREEMENT

It is hereby stipulated and agreed by and between the undersigned Parties, subject to the approval of the Court, that the settlement of this Action shall be effectuated pursuant to the terms and conditions set forth in this Settlement Agreement.

### ARTICLE I – PREAMBLE

1.      **WHEREAS** Barry Hall is the named Plaintiff in *Hall, et al., v. AT&T Mobility LLC et al.*, Case No. 07-05325 (JLL) (D.N.J.); and

2.      **WHEREAS** Roman Sasik, David Dickey and Steven Wright are the named Plaintiffs and counter-defendants in *Sasik et al. v. AT&T Wireless Services, Inc.*, Case No. 2:05-CV-2346-ABC (CWx) (C.D. Cal.); and

3.      **WHEREAS** Jane Waldmann, Robert Wise, Jackie Thurman, Richard Chisolm, Mary Pitsikoulis, Debra Lively (formerly Debra Lipton), Jacqueline Sims, and Kiisha Orr are the named Plaintiffs and counter-defendants in *Waldmann et al. v. Cingular Wireless LLC*, Case No. 2:07-CV-05087-ABC (CWx) (C.D. Cal.); and

4.      **WHEREAS** ATTM is the Defendant in the Action and is engaged in the business of providing wireless telephone and data service; and

5.      **WHEREAS** Hall alleges that:  (a) ATTM and/or its predecessors assessed, and in some cases collected, a Flat-Rate ETF from its subscribers that Hall alleges was in violation of various state and federal laws; and (b) certain ATTM subscriber contracts contain Flat-Rate ETF provisions that Hall alleges are unlawful under various state and federal laws; and

6.      **WHEREAS** Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis, Lively, Sims and Orr allege that:  (a) ATTM and/or its predecessors assessed, and in some cases collected, a Flat-Rate ETF from its subscribers that they allege was in violation of

various state laws; and (b) certain ATTM subscriber contracts contain Flat-Rate ETF provisions that they allege are unlawful under various state laws; and

7. **WHEREAS** Hall, Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis, Lively, Sims and Orr seek to recover on behalf of themselves and classes of similarly situated persons; and

8. **WHEREAS** the Parties have engaged in discovery as well as the voluntary exchange of information; and

9. **WHEREAS** based on the course of litigation relating to Flat-Rate ETFs generally, through the information provided in this Action and the *Sasik* and *Waldmann* actions in particular, and through arm's-length negotiations and multiple mediation sessions conducted under the guidance of the Honorable Douglas K. Wolfson (ret.), the Parties have had a full and fair opportunity to evaluate the strengths and weaknesses of their respective positions; and

10. **WHEREAS** ATTM denies the allegations of the Action and the Related Actions, denies all allegations of wrongdoing and of liability, and denies any causation of damages to the Settlement Classes; and

11. **WHEREAS** ATTM nevertheless has concluded that, in light of the costs and disruption of litigation, this Settlement is appropriate on the terms and conditions set forth herein; and

12. **WHEREAS** ATTM has resolved that it is prepared to reach a fair and reasonable settlement to resolve the *Hall*, *Sasik*, and *Waldmann* actions, all of which are pending in federal court and seek certification of nationwide and/or multi-state classes, thereby serving the interests of judicial economy and efficiency by resolving the Class Released Claims and ETF-Related Claims on a nationwide basis with all Settlement Class Members; and

13.    **WHEREAS** ATTM is a party in an action styled *Palisades Collection LLC v. Shorts v. Palisades Collection LLC, et al.*, No. 06-C-127 (Cir. Ct. Brooke Cty., W.Va.), in which Charlene Shorts ("Shorts"), on behalf of herself and similarly-situated ATTM subscribers in West Virginia, asserts that ATTM's ETF is part of a "consumer credit sale" under the West Virginia Consumer Credit & Protection Act, and on that basis is an "excessive default charge" under W. Va. Code § 46A-2-115 that is "unconscionable" under W. Va. Code § 46A-2-121 and an unfair business practice under W. Va. Code § 46A-6-104 when charged to West Virginia subscribers (collectively the "Shorts West Virginia Claims"), and the Shorts West Virginia Claims, as defined above and as stated in the June 2007 Amended Counterclaim filed by Shorts, are not released herein with respect to subscribers with West Virginia billing addresses; and

14.    **WHEREAS** Hall, Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis, Lively, Sims and Orr believe that their claims are meritorious, deny all allegations of wrongdoing and of liability, and deny any causation of damages to ATTM in connection with any counterclaims or otherwise; and

15.    **WHEREAS** Hall, Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis, Lively, Sims and Orr nevertheless have concluded that, in light of the costs and delay of litigation of the matters in dispute, particularly in complex class action proceedings, and in the desire to provide relief to the Settlement Classes and to do so sooner rather than later, this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Classes;

**NOW THEREFORE**, it is hereby stipulated and agreed that, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, and subject to approval of the Court, the Action shall be fully and finally settled and dismissed with prejudice under the following terms and conditions:

## ARTICLE II – DEFINITIONS

As used in this Settlement Agreement and the related documents attached hereto as exhibits, the terms set forth below shall have the meanings set forth below.  The singular includes the plural and vice versa.

1.      "Action" means the civil action entitled *Hall, et al., v. AT&T Mobility LLC et al.*, No. 07-05325 (JLL) (D.N.J.).

2.      "Aggregate Fees, Costs, and Expenses" means the aggregate of an award of attorneys' fees and costs, the costs of settlement notice, the administrative expenses for the settlement, and the incentive awards.

3.      "ATTM" means AT&T Mobility LLC.

4.      "ATTM-Related Released Parties" means (a) ATTM; (b) ATTM's Counsel; (c) ATTM's past, present, and future direct and indirect owners, parents, subsidiaries, and other corporate affiliates; (d) ATTM's successors and predecessors and their past, present, and future direct and indirect owners, parents, subsidiaries, and other corporate affiliates; and (e) for each of the foregoing Persons, each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns.

5.      "ATTM's Counsel" means Drinker Biddle & Reath LLP.

6.      "ATTM Released Claims" means any and all actions, causes of action, claims demands, liabilities, obligations, fees, costs, sanctions, proceedings, and/or rights of any nature and description whatsoever, whether liquidated or unliquidated, in law or in equity, that have been asserted by ATTM in the Action and the Related Actions by way of cross-complaint, counterclaim or otherwise, and which is premised upon the allegation that the Class-Related Released Parties, or any of them, are liable to ATTM for actual damages caused by their early

termination of wireless service agreements in the event that ATTM's Flat-Rate ETF were determined to be invalid, illegal and/or unenforceable in any respect. Notwithstanding the foregoing, and for avoidance of doubt, the ATTM Released Claims does not include claims for unpaid ETFs or any other indebtedness or obligations of the Class-Related Released Parties and ATTM shall not be deemed to have released any such claims in any way whatsoever.

7.      "Class Counsel" means the law firms of Strange & Carpenter and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein;

8.      "Class-Related Released Parties" mean all Settlement Class Members and each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, consultants, contractors, insurers, accountants, attorneys, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns, and any other Person with which any of them is affiliated or for which any of them is responsible at law, in equity, or otherwise.

9.      "Class-Related Releasing Parties" means all Settlement Class Members and each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, consultants, contractors, insurers, accountants, attorneys, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns, and any other Person with which any of them is affiliated or for which any of them is responsible at law, in equity, or otherwise.

10.      "Class Released Claims" means: (a) the ETF-Related Claims as defined below; and (b) any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees (including attorneys' fees), costs, sanctions, proceedings and/or rights of any nature and description whatsoever,

whether legal or equitable, including, without limitation, violations of any state or federal statutes and laws, rules or regulations, including but not limited to: 47 U.S.C. §§ 201 (United States); Ala. Code §§ 8,19-1 *et seq*. (Alabama); Alaska Stat. §§ 45.50.471 *et seq*. (Alaska); Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq*. (Arizona); Ark. Code Ann. §§ 4-88-101 *et seq*. (Arkansas); Cal. Civ. Code § 1671, Cal. Civ. Code §1770(d), Cal. Bus. & Prof. Code §§ 17200 *et seq*., Cal. Bus. & Prof. Code §§ 17500 *et seq*., Cal. Civ. Code §§ 1750 *et seq*., Cal. Code Civ. Pro. 1021.5 (California); Colo. Rev. Stat. §§ 6-1-105 *et seq*. (Colorado); Conn. Gen. Stat. §§ 42-110a (Connecticut); Del. Code Ann. Tit. 6, §§ 2511 *et seq*. (Delaware); D.C. Code Ann. §§ 28-3901 *et seq*. (District of Columbia); Fla. Stat. Ann. §§ 501.201 *et seq*. (Florida); Ga. Code Ann. §§ 10-1-390 *et seq*. (Georgia); Haw. Rev. Stat. §§ 481A-1 *et seq*. and Haw. Rev. Stat. §§ 480-1 *et seq*. (Hawaii); Idaho Code §§ 48-601 *et seq*. (Idaho); 815 ILCS 505/1 *et seq.* (Illinois); Burns Ind. Code Ann. §§ 24-5-0.5-1 *et seq.* (Indiana); Iowa Code §§ 714.16 *et seq.* (Iowa); Kan. Stat. Ann. §§ 50.623 *et seq*. (Kansas); Ky. Rev. Stat. §§ 367.11.0 *et seq*. (Kentucky); La. Rev. Stat. Ann. §§ 51:1401 *et seq*. (Louisiana); Me. Rev. Stat. Ann. Tit. 5, §§ 205-A *et seq*. (Maine); Md. Com. Law Code Ann. §§ 13-101 *et seq*., Md. Com. Law Code Ann. §§ 13-301 *et seq*., Md. Com. Law Code Ann. §§ 13-408 *et seq*. (Maryland); Mass Gen. L. ch. 93A (Massachusetts); Mich. Stat. Ann. §§ 445.901 *et seq*., Mich. Stat. Ann, §§ 19.418(1) *et seq*. (Michigan); Minn. Stat. §§ 325F.68 *et seq*., Minn. Stat. §§ 8.31 (Minnesota); Miss. Code Ann. §§ 75-24-3 *et seq*. (Mississippi); Mo. Rev. Stat. §§ 407.010 *et seq*. (Missouri); Mont. Code Ann. §§ 30-14-101 *et seq*. (Montana); Neb. Rev. Stat. §§ 59-1601 *et seq*. (Nebraska); Nev. Rev. Stat. §§ 41.600 and Nev. Rev. Stat. §§ 598.0903 *et seq*. (Nevada); N.H. Rev. Stat. Ann. §§ 358:1 *et seq*. (New Hampshire); N.J.S.A. §§ 56:8-1 *et seq*., N.J.S.A. §§ 56:12-1 *et seq*. (New Jersey); N.M. Stat. Ann. §§ 57-1.2-1 *et seq*. (New Mexico); N.Y. Gen. Bus. Law §§ 349 et seq. (New York); N.C.

Gen. Stat. §§ 75-1 *et seq.* (North Carolina); N.D. Cent. Code §§ 51-15-01 *et seq.* (North Dakota);

Ohio Rev. Code Ann. §§ 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, §§ 751 *et seq.* (Oklahoma);

Ore. Rev. Stat. §§ 646.605 *et seq.* (Oregon); Penn. Stat. §§ 201-1 *et seq.* (Pennsylvania); Laws of

P. R. Ann. Tit. 10, §§ 259 *et seq.* (Puerto Rico); R.I. Gen. Laws §§ 6-13.1:1 *et seq.* (Rhode

Island); S.C. Code Ann. 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. 37-24.1 *et

seq.* (South Dakota); Tenn. Code Ann. §§ 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Comm.

Code Ann. §§ 17.41 *et seq.* (Texas); Utah Code Ann. §§ 13-11-1 *et seq.* (Utah); Vt. Stat. Ann,

Tit. 9, §§ 2451 *et seq.* (Vermont); Va. Code Ann. §§ 59.1-196 *et seq.* (Virginia); Wash. Rev.

Code §§ 19.86.010 *et seq.* (Washington); W.Va. Code §§ 46A-6-101 *et seq.* (West Virginia);

Wis. Stat. §§ 421.101 *et seq.* (Wisconsin); and Wyo. Stat. §§ 40;12-101 *et seq.* (Wyoming), or

principles of common law, whether liquidated or unliquidated, known or unknown, in law,

equity, arbitration, or otherwise, whether or not concealed or hidden, that in any way relate to, in

whole or in part, or arise out of, any of the allegations, defenses, claims, motions and/or theories

raised in or that could have been raised in any action, including the Action or the Related

Actions, challenging the validity and/or legality of the Flat-Rate ETF or the propriety of its

assessment or collection.  The term "Class Released Claims" excludes the Shorts West Virginia

Claims as defined above.  Notwithstanding the foregoing, in the event that ATTM institutes a

lawsuit or arbitral proceeding to recover unpaid Flat-Rate ETFs from any Class-Related

Releasing Party, nothing in this Settlement Agreement or any Judgment entered pursuant hereto

shall be construed to preclude any such Class-Related Releasing Party from asserting, on an

individual basis only, any defenses, provided, however, that this sentence shall not affect or

apply to actions taken to collect unpaid ETFs that do not involve the institution by ATTM of a

lawsuit or arbitral proceeding.  Nothing herein shall be construed to permit any Class-Related

Releasing Party from asserting an affirmative claim arising out of or relating to the Flat-Rate ETF, including any Class Released Claim, against any ATTM-Related Released Party.

11.     "Class Representatives" means Barry Hall, Roman Sasik, David Dickey, Steven Wright, Jane Waldmann, Robert Wise, Jackie Thurman, Richard Chisolm, Mary Pitsikoulis, Debra Lively (formerly Debra Lipton), Jacqueline Sims, and Kiisha Orr.

12.     "Common Fund" means a fund in the amount of Sixteen Million Dollars ($16,000,000.00) deposited by ATTM into the Escrow Account for the benefit of the Settlement Class Members.  The Aggregate Fees, Costs, and Expenses shall be paid from the Common Fund.  The Common Fund represents the absolute, capped amount of ATTM's cash obligation for the entire Settlement.

13.     "Complaint" means the Second Amended Class Action Complaint filed in the Action on or about December 5, 2008.

14.     "Court" means the United States District Court for the District of New Jersey.

15.     "CPUC Refund Group" means all former customers of Cingular Wireless or its corporate predecessors ("Cingular") who paid a full or partial ETF to Cingular as a result of early termination of contracts entered into between January 1, 2000 and April 30, 2002, who were therefore eligible to receive a refund under the All Party Settlement approved by the California Public Utilities Commission on March 15, 2007 in the proceeding captioned *In re Cingular* (CPUC Docket No. I.02-06-003).

16.     "Effective Date" means the first date by which all of the following events shall have occurred:  (a) the Court has entered the Preliminary Approval Order; (b) the Court has entered the Final Approval Order and Judgment; and (c) the Final Approval Order and Judgment has become Final.

17.     "Escrow Account" means the escrow account established pursuant to the Escrow Agreement, with an escrow agent to be selected by the Parties.

18.     "Escrow Agreement" means the escrow agreement to be entered into among the Parties, substantially in the form of Exhibit G attached hereto.

19.     "ETF" means early termination fee.

20.     "ETF Assessed Class" means all Persons in the United States who were parties to a contract for a wireless telephone account with ATTM and/or its predecessor companies and were billed a Flat-Rate ETF by ATTM and/or its predecessor companies from January 1, 1998 until the date that the court preliminarily approves the settlement.  The ETF Assessed Class includes such Persons whether or not they paid any portion of the ETF, whether to ATTM, any outside collection agency, or other third party to whom ATTM has assigned the rights to the ETF.  The ETF Assessed Class excludes all current employees of ATTM.

21.     "ETF Payer Class Member List" means a list of ATTM account holders that ATTM's billing systems indicate are members of the ETF Assessed Class who were charged and paid in full a Flat-Rate ETF on or after September 1, 2005, and did not subsequently receive a refund of the paid ETF.  ATTM shall compile this list based data available within ATTM's online billing systems and the list shall be provided to the Settlement Administrator.  The Settlement Administrator shall take such reasonable measures to eliminate duplicative entries as may be possible at reasonable expense, with the objective of ensuring to the extent practicable that any Person who is included on the ETF Payer Class Member List receives not more than one Mail Notice even if such Person (or the account(s) for which such Person was responsible) paid in full more than one ETF.

22.    "ETF Counsel" means any counsel other than Class Counsel that is prosecuting ETF-Related Claims against ATTM and/or its predecessor companies in any jurisdiction, including but not limited to any judicial or arbitral proceeding.

23.    "ETF-Related Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees (including attorneys' fees of any kind or nature whatsoever and under any authority or theory whatsoever), costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, that in any way challenge or relate to the validity, legality, or propriety of Flat-Rate ETFs including as they relate to fixed-term subscriber agreements or extension or renewal of fixed-term subscriber agreements for ATTM wireless services and/or relate to or arise out of ATTM's policies, procedures, use or implementation relating to the utilization of and propriety of Flat-Rate ETFs in fixed-term subscriber agreements and utilization of and propriety of fixed-term subscriber agreements of any duration entered into between January 1, 1998 and the date of entry of the Preliminary Approval Order, including claims that the incorporation, policy, practices, disclosure, use, nature, structure, charging of, and/or amount of Flat-Rate ETFs in ATTM's fixed-term subscriber agreements or the use incorporation, policy, practices, renewal practices, disclosures, nature, and structure of ATTM's fixed-term subscriber agreements (1) are unlawful, unfair, deceptive, materially inaccurate, misleading, fraudulent or unreasonable; (2) directly or indirectly caused subscribers to pay money not owed, including any fee or charge no matter how titled or characterized by ATTM; (3) directly or indirectly caused subscribers to pay more than they would have paid if ATTM did not utilize Flat-Rate ETFs and/or the subscribers were not subject to Flat-Rate ETF provisions or fixed-term subscriber agreements; (4) directly or

indirectly caused subscribers to take any action or refrain from taking any action with respect to their fixed-term subscriber agreement, including extension of their fixed-term subscriber agreement, cancellation of their fixed-term subscriber agreement, continuation of their fixed-term subscriber agreement, or the payment of any fee or charge pursuant to their fixed-term subscriber agreement (no matter how titled or characterized by ATTM), the full or partial amount of which they would not otherwise have paid; (5) arising from or relating to the adequacy of ATTM's disclosure of Flat-Rate ETFs and fixed-term subscriber agreements to customers either prior to execution of or upon entering into a fixed-term agreement or subsequently; or (6) arising from or relating to any decision by ATTM to impose, collect, waive, not waive, or partially waive a Flat-Rate ETF, regardless of the basis for the customer's claim that the fee should or should not be imposed, collected, waived, not waived, or partially waived under their circumstances including but not limited to circumstances relating to service quality, coverage, error of any kind, porting of telephone number, address changes, telephone number changes, MSISDN swaps, complaint investigation, initial return period, charges by third-parties, independent dealers or affiliates, pro-rating or non-pro-rating of the Flat-Rate ETF, material or adverse change in contract terms and conditions, pricing or services from ATTM, contract extensions, assent, rejection and acceptance, inclusion of other contract terms whether enforceable or unenforceable, or any other circumstance of any kind or nature that the customer now or in the future may claim affects, did affect, or should affect ATTM's decision to impose, collect, waive, not waive, or partially waive an ETF.

24.     "Fee and Cost Application" means that written motion or application by which Class Representatives and/or Class Counsel requests that the Court award reasonable attorneys'

fees, costs or incentive awards relating to this Action or the Related Actions, or to any other action in which ETF-Related Claims have been raised.

25.    "Final" means that the Final Approval Order and Judgment has been entered on the docket in the Action, and (a) the time to appeal from such order has expired and no appeal has been timely filed, (b) if such an appeal has been filed, it has finally been resolved and has resulted in an affirmation of the Final Approval Order and Judgment, or (c) the Court, following the resolution of the appeal, enters a further order or orders approving settlement on the terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).  Neither the pendency of the Fee and Cost Application, nor any appeal pertaining solely to a decision on the Fee and Cost Application, shall in any way delay or preclude the Final Approval Order and Judgment from becoming Final.

26.    "Final Approval Hearing" means the hearing scheduled to take place at least one hundred and twenty (120) days after the date of entry of the Preliminary Approval Order at which the Court shall be asked to:  (a) determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Classes; (b) consider any timely objections to this Settlement and all responses thereto; and (c) rule on the Fee and Cost Application.

27.    "Final Approval Order and Judgment" means the order, substantially in the form of Exhibit B attached hereto, in which the Court grants final approval of this Settlement Agreement, certifies the Settlement Classes, and authorizes the entry of a final judgment and dismissal of the Action with prejudice.

28.    "Flat-Rate ETF" means an ATTM ETF based on a contract provision that is structured such that the amount of the ETF remains constant for the duration of the contract.

29.    "Invoice Notice" means notice of the fact of the settlement, substantially in the form of Exhibit F attached hereto, that will be sent with monthly customer statements to certain current ATTM subscribers who receive paper bills or by electronic mail to certain current ATTM subscribers who receive paperless bills and have provided electronic mail addresses to ATTM.

30.    "Mail Notice" means notice by postcard, substantially in the form of Exhibit C attached hereto, to be mailed to those Persons identified on the ETF Payer Class Member List.

31.    "Non-Cash Compensation" means not more than Two Million Dollars ($2,000,000.00) (face, retail value) in non-cash compensation provided by ATTM for the benefit of the Subscriber Class in the form of AT&T long distance calling cards.

32.    "Notice" means Mail Notice, Invoice Notice, and Publication Notice.

33.    "Parties" means Hall, Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis, Lively , Sims, Orr and ATTM.

34.    "Person" means any natural person, firm, corporation, unincorporated association, partnership, or other form of legal entity or government body, including its agents and representatives.

35.    "Plan of Allocation of Settlement Proceeds" means the plan proposed by Class Counsel for the distribution of the Common Fund and Non-Cash Compensation, in the form attached hereto as Exhibit J.

36.    "Preliminary Approval Order" means the order, substantially in the form of Exhibit A attached hereto, in which the Court, among other things, grants its preliminary approval to this Settlement Agreement and preliminarily certifies the Settlement Classes, authorizes dissemination of Notice to the Settlement Classes, and appoints the Settlement Administrator.

37.     "Proration Benefit" means the election by members of the Subscriber Class to convert from a Flat-Rate ETF to a Prorated ETF.

38.     "Prorated ETF" means the ETF that ATTM instituted for new subscriber contracts beginning on May 25, 2008 and which currently provides as follows:  "Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions or rates as set forth below, you agree to pay us with respect to each device identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee of $175.  For service activated on or after May 25, 2008, the Early Termination Fee will be reduced by $5.00 for each full month toward your minimum term that you complete. The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment on which your rate plan is based."

39.     "Publication Notice" means the long-form and short-form notices, substantially in the form of Exhibits D and E attached hereto.  The long-form Publication Notice will be published on the settlement website and the short-form Publication Notice will be published in national newspapers, periodicals and/or other related print media as set forth in the Preliminary Approval Order.

40.     "Related Actions" means the following lawsuits, actions, arbitrations, and/or formal or informal claims for relief and/or proceedings:  *Sasik et al. v. AT&T Wireless Services, Inc.*, Case No. 2:05-CV-2346-ABC (CWx) (U.S.D.C. C.D. Cal.); *Waldmann et al. v. Cingular*

*Wireless LLC*, Case No. 2:07-CV-05087-ABC (CWx) (U.S.D.C. C.D. Cal.); *Dias et al. v. AT&T Wireless Services, Inc. et al.*, (Calif. Super. Ct., Los Angeles County) (proposed California class); *Kinkel v. Cingular Wireless LLC*, AAA WIA No. 11 494 02646 06 (AAA Arbitration) (proposed nationwide class); *Cherrigan et al. v. AT&T Wireless Services, et al.*, JCCP 4332 (Calif. Super. Ct., Alameda County) (certified California class); *Ayyad et al. v. Cingular Wireless LLC et al.*, JCCP 4332 (Calif. Super. Ct., Alameda County) (certified California classes); and *Graber v. AT&T Wireless PCS, LLC et al.*, Case No. 50 2004CA004650MB(AI) (Florida Circuit Ct., Palm Beach County) (proposed Florida class).

41.    "Request for Exclusion" means a valid request for exclusion from a member of the Settlement Classes.  To be valid, a request for exclusion must (a) be personally submitted and signed by the individual member of the Settlement Classes; (b) be submitted to the Settlement Administrator and postmarked by a date not later than twenty-one (21) days before the Final Approval Hearing; (c) contain the submitter's name, address, ATTM wireless number, and current telephone number; and (d) otherwise comply with the instructions set forth in the Notice. So-called "mass" or "class" opt-outs shall not be allowed.

42.    "Third Amended Complaint" means the Third Amended Complaint to be filed in this Action by Class Counsel in connection with the Court's entry of the Preliminary Approval Order.

43.    "Settlement Administrator" means Rust Consulting, Inc.

44.    "Settlement Agreement" or "Settlement" means this Stipulation and Agreement of Settlement, including the attached exhibits.

45.    "Settlement Classes" means the ETF Assessed Class and the Subscriber Class, collectively.

46.     "Settlement Class Member" means any Person within the Settlement Classes that does not submit a timely and valid Request for Exclusion.

47.     "Subscriber Class" means all Persons in the United States who were or are parties to a contract for a wireless telephone account with ATTM and/or its predecessor companies that included or includes a provision for a Flat-Rate ETF from January 1, 1998 until the date that the court preliminarily approves the settlement, and who have not paid or been billed a Flat-Rate ETF.  The Subscriber Class excludes all current employees of ATTM.

### ARTICLE III – SETTLEMENT CLASS RELIEF

In consideration of a full, complete, and final settlement of the Action, dismissal of the Action with prejudice and the Releases in Article VII below, and subject to the Court's approval, the Parties agree to the following relief:

1.     **Common Fund.**

Within ten (10) business days of the date of entry of the Preliminary Approval Order, ATTM shall deposit Three Million Five Hundred Thousand Dollars ($3,500,000) into the Escrow Account for the benefit of the Settlement Classes and Class Counsel, thereby establishing the Common Fund.  Within ninety (90) days of the date of entry of the Preliminary Approval Order, ATTM shall deposit an additional Six Million Two-Hundred Fifty Thousand Dollars ($6,250,000) into the Escrow Account.  Within ten (10) business days of the date of entry of the Final Approval Order and Judgment, ATTM shall deposit an additional Six Million Two-Hundred Fifty Thousand Dollars ($6,250,000) into the Escrow Account, thereby fully funding the Common Fund.  Any interest generated from the Common Fund shall remain in the Common Fund to be distributed consistent with the terms of this Settlement Agreement.  In no event shall ATTM's monetary liability under this Settlement Agreement exceed the amount of the Common Fund, except as expressly provided in Article IV.1.

2.      **Distribution of the Common Fund.**

The Aggregate Fees, Costs, and Expenses shall be paid from the Common Fund consistent with the provisions of Article VI of this Settlement Agreement. The remainder of the Common Fund shall be distributed pursuant to a Plan of Allocation to be adopted by the Court separately from the approval of the Settlement. Any distribution to the Settlement Classes shall commence only after the Effective Date.

3.      **Non-Cash Compensation.**

ATTM shall provide no more than Two Million Dollars ($2,000,000.00) (face, retail value) in non-cash compensation for the benefit of qualified members of the Subscriber Class. Such compensation shall take the form of an AT&T Prepaid Long Distance Card with up to two hundred (200) minutes. The actual amount of each benefit will be determined by the total claims received as described in the Proposed Plan of Allocation. Distribution to the Subscriber Class of the Non-Cash Compensation shall commence only after the Effective Date and shall also be made pursuant to the Proposed Plan of Allocation. In no event shall ATTM be liable to provide Non-Cash Compensation whose face, retail value exceeds Two Million Dollars ($2,000,000.00) under this Settlement Agreement.

4.      **Proration Benefit.**

In lieu of claims they would otherwise have for Non-Cash Compensation, qualified members of the Subscriber Class may elect to submit a claim to convert their Flat-Rate ETF to the Prorated ETF. Modification of the contracts of Settlement Class Members who select the Proration Benefit shall commence only after the Effective Date and shall be done pursuant to the Proposed Plan of Allocation.

5.      **Prospective Relief**.

As part of the Settlement Agreement, ATTM agrees to refrain from entering into new customer service agreements with consumers that contain a Flat-Rate ETF.  This provision shall become effective on the date the Settlement Agreement is signed, and shall expire two (2) years later or, at the election of ATTM, following the date of entry of any order rejecting the Settlement Agreement.

6.      **Disposition of Unclaimed Benefits**.

Any amounts remaining in the Common Fund after distribution has been made to Authorized Claimants and all expenses have been paid shall be conveyed to one or more charitable organizations jointly proposed by the Class Representatives and ATTM and approved by the Court.  Class Counsel and ATTM shall each propose one or more organizations for distribution of half each of any such amounts, and consent by the non-proposing party shall not be unreasonably withheld.  If the face, retail value of the total of the aggregate Allowed Claims of all Authorized Claimants for non-cash benefits is less than Two Million Dollars ($2,000,000.00), AT&T prepaid long distance cards will be conveyed to the same charitable organization(s), such that the total face, retail value of the non-cash benefits distributed to Authorized Claimants and the charitable organization(s) is Two Million Dollars ($2,000,000.00).

## ARTICLE IV – NOTICE AND REQUESTS FOR EXCLUSION

1.      **Mail Notice**.

Within one hundred and twenty (120) days of the date of entry of the Preliminary Approval Order, the Settlement Administrator shall mail the Mail Notice to the last known address of those Persons identified on the ETF Payer Class Member List.  The Mail Notice shall be substantially in the same form as Exhibit C.  The cost of preparing and disseminating the Mail Notice shall be paid for from the Common Fund.  In the event that the number of postcards to be

sent to the ETF Payer Class Member List exceeds three million (3,000,000), the Parties shall meet and confer in good faith to discuss an appropriate adjustment to the Mail Notice. Absent agreement of the Parties and approval of the Court, the costs of Mail Notice in excess of costs associated with mailing three million (3,000,000) postcards shall be borne by ATTM and shall not be deducted from the Common Fund

2.    **Last Known Addresses.**

Before mailing the Mail Notice as provided above, the Settlement Administrator will use the National Change of Address Databank maintained by the United States Postal Service to update the addresses reflected in ATTM's records of those Persons who appear on the ETF Payer Class Member List. There shall be no obligation on the part of the Parties or the Settlement Administrator to attempt to provide further notice to those Persons on the ETF Payer Class Member List.

3.    **Invoice Notice.**

ATTM shall inform customers who are currently party to a contract with ATTM that permits the assessment of a Flat-Rate ETF of the fact of the settlement: (a) for customers who receive paper bills from ATTM, with a bill insert mailed with their monthly customer statements substantially similar to Exhibit F attached hereto; and (b) for customers who receive paperless bills from ATTM and have provided their electronic mail addresses to ATTM, an email containing or providing access to a form of notice substantially similar to Exhibit F attached hereto. With respect to the bill insert for customers who receive paper bills from ATTM, this notice shall be issued in a monthly bill cycle beginning within one hundred and twenty (120) days of the date of entry of the Preliminary Approval Order.

4.     **Publication Notice.**

The short form of the Publication Notice to the Settlement Classes shall be provided in those newspapers, periodicals, and/or other related print media as is set forth in the Preliminary Approval Order.  The short-form Publication Notice shall be substantially in the form of Exhibit E attached hereto.  The short-form Publication Notice shall be published promptly after entry of the Preliminary Approval Order on dates to be agreed upon by the Parties so as to provide the best practicable notice to the Settlement Classes.  The Parties and the Settlement Administrator shall use best efforts to cause the short-form Publication Notice to commence within ninety (90) days, and to conclude within one-hundred and four (104) days, after the date of entry of the Preliminary Approval Order.  The publication of the short-form Publication Notice shall be administered by the Settlement Administrator.  The cost of publishing the short-form Publication Notice shall be paid for from the Common Fund.

5.     **Notice by Internet Posting.**

The long form of the Publication Notice shall be posted on a website established by the Settlement Administrator.  The long-form Publication Notice shall be substantially in the form of Exhibit D attached hereto.  The long-form Publication Notice shall be posted on the website on or before the first date on which the short form of the Publication Notice is published under this Settlement Agreement.  The costs of establishing and maintaining the website on which the long-form Publication Notice is posted shall be paid for from the Common Fund.

6.     **Declarations of Compliance.**

The Settlement Administrator shall prepare a declaration attesting to compliance with the mailing, address updating, and publication requirements set forth above.  Such declaration shall be provided to Class Counsel and ATTM's Counsel and filed with the Court no later than ten

(10) days prior to the Final Approval Hearing.  ATTM shall prepare a declaration attesting to compliance with the invoice notice requirements set forth above.  Such declaration shall be provided to Class Counsel and filed with the Court no later than ten (10) days prior to the Final Approval Hearing.

       7.      **Best Notice Practicable.**

The Parties agree, and the Preliminary Approval Order shall state, that compliance with the procedures described in this Article is the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

       8.      **Report on Requests for Exclusion.**

Not later than fourteen (14) days before the Final Approval Hearing, the Settlement Administrator shall prepare and deliver to Class Counsel, who shall file it with the Court, and ATTM's Counsel, a report stating the total number of Persons who have submitted timely and valid Requests for Exclusion from the Settlement Classes, and the names of any such Persons. Such Persons will not be entitled to receive any relief under this Settlement Agreement or to object to the Settlement.

       9.      **Inquiries from Settlement Class Members.**

It shall be the responsibility of Class Counsel to establish procedures for receiving and responding to all inquiries from Settlement Class Members with respect to this Settlement. ATTM and ATTM's Counsel may respond, but are not required to respond, to such inquiries.

10.     **Format of Class Notices.**

The Parties agree that the size, format and/or layout of the Notices may be modified by mutual agreement of the Parties without the need for Court approval, provided that any such modifications are consistent with the general intent of this Settlement Agreement.

## ARTICLE V – COURT APPROVAL OF SETTLEMENT

1.     **Preliminary Approval.**

As soon as practicable after the execution of this Settlement Agreement, Class Counsel and ATTM's Counsel shall jointly apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto.  The Preliminary Approval Order shall include provisions:  (a) preliminarily certifying the Settlement Classes for settlement purposes only; (b) preliminarily approving this Settlement and finding this Settlement sufficiently fair, reasonable and adequate to allow Notice to be disseminated to the Settlement Classes; (c) approving the form, content, and manner of the Notice; (d) setting a schedule for proceedings with respect to final approval of this Settlement; (e) providing that, pending entry of a Final Approval Order and Judgment, no Settlement Class Member (either directly, in a representative capacity, or in any other capacity) or their counsel shall commence or prosecute any litigation, arbitration or other proceeding against ATTM or other ATTM-Related Released Parties asserting any of the Class Released Claims; and (f) staying the Action, other than such proceedings as are related to this Settlement.

2.     **Objections to Settlement.**

Any Settlement Class Member wishing to object to or to oppose the approval of this Settlement and/or the Fee and Cost Application shall file a written objection (with a statement of reasons) with the Court and serve it on the Parties at least twenty-one (21) days before the date of the Final Approval Hearing.  Any Settlement Class Member that fails to do so shall be foreclosed

from making such objection or opposition.  Class Representatives will file with the Court their brief in support of final settlement approval, in support of final certification of the Settlement Classes, and in response to any objections at least seven (7) days before the date of the Final Approval Hearing.  Any Settlement Class Member that fails to file a timely written objection and to appear at the final approval hearing shall have no right to file an appeal relating to the approval of this Settlement.

      3.     **Final Approval Hearing.**

The Parties shall request that the Court, on the date set forth in the Preliminary Approval Order or on such other date that the Court may set, conduct a Final Approval Hearing in order to: (a) determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Classes; (b) consider any timely objections to this Settlement and the Parties' responses to such objections; (c) rule on the Fee and Cost Application; (d) rule on applications for incentive awards; and (e) determine whether to adopt the Plan of Allocation.  At the Final Approval Hearing, the Parties shall ask the Court to give final approval to this Settlement.  If the Court grants final approval to this Settlement, then the Parties shall ask the Court to enter a Final Approval Order and Judgment, substantially to the form of Exhibit B attached hereto, which approves this Settlement, certifies the Settlement Classes, authorizes entry of a final judgment, and dismisses the Action with prejudice.

      4.     **Disapproval, Cancellation, Termination, or Nullification of Settlement.**

        **a.**      Each Party shall have the right to terminate this Settlement Agreement if either (i) the Court denies preliminary approval or final approval to this Settlement Agreement (or grants approval through a form of order that is not substantially similar (except as to any provision relating to Aggregate Fees, Costs and Expenses) to the forms of Exhibits A and B

attached hereto) or (ii) the Final Approval Order and Judgment does not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declining to enter a further order or orders approving settlement on the terms set forth herein.  If a Party elects to terminate this Settlement Agreement under this paragraph, that Party must provide written notice to the other Parties' counsel, by hand delivery or mail, within thirty (30) days of the occurrence of the condition permitting termination.

   **b.**  ATTM shall have the right to terminate this Settlement Agreement if, prior to the date of the Final Approval Order and Judgment, the total number of Persons who have submitted timely and valid Requests for Exclusion from either of the Settlement Classes constitutes greater than five percent (5%) of one or both of those Settlement Classes.  If ATTM elects to terminate this Settlement Agreement under this paragraph, ATTM must provide written notice to the other Parties' counsel on or before the date of the Final Approval Order and Judgment.  Such written notice shall be provided by hand delivery or mail to the Parties' counsel.

   **c.**  If this Settlement Agreement is terminated pursuant to its terms, then:  (i) this Settlement Agreement shall be rendered null and void; (ii) this Settlement Agreement and all negotiations and proceedings relating hereto shall be of no force or effect, and without prejudice to the rights of the Parties; and (iii) all Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately preceding the execution of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any costs incurred in connection with this Settlement.

## ARTICLE VI – ADMINISTRATIVE EXPENSES, ATTORNEYS' FEES, AND COSTS

1.     **Costs of Notice.**

All costs of providing the Notice as provided herein, including the costs of identifying members of the Settlement Classes and the costs of printing, mailing and/or publishing the Notice, shall be paid for out of the Common Fund, subject to the terms hereof.  Notwithstanding the foregoing, ATTM shall bear its own costs incurred in identifying and compiling the ETF Payer Class Member List and providing the Invoice Notice.  In the event that this Settlement Agreement is terminated pursuant to its terms, ATTM shall bear any costs of providing notice already incurred.

2.     **Costs of Administering Settlement.**

All costs of administering this Settlement, including all fees of the Settlement Administrator and the costs of generating and mailing any checks to be issued as part of this Settlement, shall be paid for out of the Common Fund.  In the event that this Settlement Agreement is terminated pursuant to its terms, ATTM shall bear any costs of administering this Settlement already incurred.

3.     **Attorneys' Fees and Costs.**

Class Counsel may make a Fee and Cost Application to be heard at the Final Approval Hearing seeking an award of reasonable attorneys' fees in an amount not to exceed thirty three and one third percent (33 1/3%) of Eighteen Million Dollars ($18,000,000.00) or  Six Million Dollars ($6,000,000.00) and reimbursement of expenses.  The Fee and Cost Application shall be filed with the Court twenty-eight (28) days prior to the Final Approval Hearing.   ATTM will not oppose or undermine an application at or below that amount or solicit others to do so.  Attorneys' fees and costs consistent with this paragraph that are approved by the Court shall be paid by the Settlement Administrator out of the Common Fund to Class Counsel within fifteen (15) days

after the date that the Court has entered the Final Approval Order and Judgment. Class Counsel shall be solely responsible for further distributing, to ETF Counsel and otherwise, any payments made under this provision. Not later than thirty-five (35) days prior to the Final Approval Hearing, ETF Counsel shall submit to Class Counsel a summary of the attorneys' fees they wish to seek as part of the Settlement. All other claims for attorneys' fees, of any kind or nature whatsoever and under any authority or theory whatsoever, by Class Counsel and/or ETF Counsel shall be deemed waived. In no event will any attorneys' fees be required to be paid other than from the Common Fund, including but not limited to relating to any attorneys fees arising from or related to the Action or the Related Actions, and in no event will the aggregate attorneys' fees awarded to Class Counsel, ETF Counsel or anyone else exceed thirty-three-and-one-third percent (33 1/3 %) of Eighteen Million Dollars ($18,000,000.00) or Six Million Dollars ($6,000,000.00)

Notwithstanding the foregoing, if for any reason the Court fails to grant final approval to this Settlement Agreement; the Final Approval Order is reversed or rendered void as a result of an appeal; or this Settlement Agreement is voided, rescinded, or terminated for any other reason, then Class Counsel shall return to ATTM all fees, costs and other payments received by Class Counsel under this Settlement Agreement plus interest accruing at a rate equal to 3.25% per annum. In such event, the following Persons shall be severally liable for such payments to the extent received by them plus interest: (a) Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; (b) Strange & Carpenter; (c) Law Offices of Barry L. Kramer; (d) Seeger & Weiss LLP; (e) Freed & Weiss LLC; (f) ETF Counsel; and (g) any attorneys of such firms in their individual capacity who receive a share of payments directly from the Common Fund made pursuant to this Settlement. To effectuate this provision, each individual attorney or firm who receives a share of

payments under this provision shall execute a guarantee of repayment substantially in the form of Exhibit H attached hereto.

4.    **Incentive Awards.**

Class Representatives, or Class Counsel on their behalf, may make an application to be heard at the Final Approval Hearing for a reasonable incentive award to be paid out of the Common Fund in an amount not to exceed Two Thousand Dollars ($2,000) for each Class Representative.  ATTM will not oppose or undermine an application at or below that amount or solicit others to do so.  Not later than fifteen (15) days after the Effective Date, and only in the event that the Effective Date occurs, the Settlement Administrator shall pay out of the Common Fund the incentive award as approved by the Court.  This payment shall be compensation and consideration for their efforts as the representatives of the Settlement Classes in the Action.

5.    **Effect on Settlement.**

The Parties agree that the rulings of the Court regarding the amount of attorneys' fees or costs and any incentive awards, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Final Approval Hearing as provided for in this Settlement Agreement and any determinations in that regard will be embodied in a separate order.  Any order or proceedings relating to the amount of attorneys' fees or expenses, including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement Agreement, or affect whether the Final Approval Order and Judgment becomes Final as defined herein.  Similarly, the rulings of the Court regarding the Plan of Allocation, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Final

Approval Hearing as provided for in this Settlement Agreement and any determinations in that regard will be embodied in a separate order.  Any order or proceedings relating to the Plan of Allocation, including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement Agreement, or affect whether the Final Approval Order and Judgment becomes Final as defined herein.

## ARTICLE VII – RELEASES UPON EFFECTIVE DATE

1.   **Binding and Exclusive Nature of Settlement Agreement.**

On the Effective Date, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder.  No other action, demand, suit, arbitration or other claim may be pursued against the ATTM-Related Released Parties or the Class-Related Released Parties with respect to the Class Released Claims, including the ETF-Related Claims.

2.   **Releases.**

On the Effective Date, the Class-Related Releasing Parties shall be deemed to have, and by operation of this Settlement Agreement shall have, fully, finally and forever released, relinquished and discharged the ATTM-Related Released Parties from any and all of the Class Released Claims, including the ETF-Related Claims; and ATTM shall be deemed to have, and by operation of this Settlement Agreement shall have, fully, finally and forever released, relinquished and discharged the Class-Related Released Parties from any and all of the ATTM Released Claims

3.   **Stay and Dismissal of the Action.**

The Parties agree to request that the Court, in connection with Preliminary Approval, issue an immediate stay of the Action.  The Parties further agree to cooperate in seeking the stay

and dismissal of all other actions that challenge the legal validity of Flat-Rate ETFs, including without limitation the Related Actions.

4. **Waiver of Unknown Claims.**

On the Effective Date, ATTM and the Class-Related Releasing Parties shall be deemed to have, and by operation of this Settlement Agreement shall have, with respect to the subject matter of the Class Released Claims and ATTM Released Claims, expressly waived the benefits of any statutory provisions or common law rules that provide, in sum or substance, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any other party. In particular, but without limitation, ATTM and the Class-Related Releasing Parties waive the provisions of California Civil Code § 1542 (or any like or similar statute or common law doctrine), and do so understanding the significance of that waiver. Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Neither this paragraph nor any other provision of this Settlement Agreement shall be construed to effectuate a general release of claims. The releases provided for in this Settlement Agreement are limited to the Class Released Claims and ATTM Released Claims, as defined above.

5. **Assumption of Risk.**

In entering into this Settlement Agreement, each of the Parties assumes the risk of any mistake of fact or law. If either Party should later discover that any fact upon which the Party relied in entering this Settlement Agreement is not true, or that the Party's understanding of the

facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

## ARTICLE VIII – EFFECT OF FCC RULINGS ON FEDERAL PREEMPTION

In the event that the Federal Communications Commission (the "FCC") issues a ruling or order preempting state regulation of ETFs or any of the Class Released Claims, in whole or in part, ATTM will not seek to vacate this Settlement Agreement on the basis of such a ruling or order.  This Article in no way limits ATTM's rights to otherwise seek to vacate this Settlement Agreement consistent with its terms.

## ARTICLE IX – LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

1.     **No Admission.**

Neither the acceptance by ATTM of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in the Action or in the Related Actions; the validity or certifiability for litigation of any claims that are or could have been asserted by any of the Settlement Class Members in the Action or in the Related Actions, including but not limited to the Class-Related Released Claims and/or the ETF-Related Claims; the liability of ATTM in the Action or in the Related Actions; or as to the validity, legality, or fairness of the Flat-Rate ETF or the Prorated ETF.  ATTM specifically denies any liability or wrongdoing of any kind associated with the claims alleged in the Action and the Related Actions.  Neither the acceptance by the Class Representatives of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in the Action or in the Related Actions.

2.      **Limitations on Use.**

This Settlement Agreement shall not be used, offered, or received into evidence in the Action for any purpose other than to enforce, to construe, or to finalize the terms of the Settlement Agreement and/or to obtain the preliminary and final approval by the Court of the terms of the Settlement Agreement.  Neither this Settlement Agreement nor any of its terms shall be offered or received into evidence in any other action or proceeding, but this Settlement shall be binding and shall have maximum preclusive effect on any claims barred by the release provisions and waiver of unknown claim provisions set forth above.

## ARTICLE X – MISCELLANEOUS PROVISIONS

1.      **Amendment of Complaint; Class Certification.**

In connection with the Court's entry of the Preliminary Approval Order, Class Representative Hall shall amend the Complaint to be consistent with the Settlement Agreement including, *inter alia*, by adding Sasik, Dickey, Wright, Waldmann, Wise, Thurman, Chisolm, Pitsikoulis,  Lively, Sims and Orr as additional class representatives and by modifying the definition of the proposed classes to be certified to state:

"ETF Assessed Class:  all Persons in the United States who were parties to a contract for a wireless telephone account with ATTM and/or its predecessor companies and were billed a Flat-Rate ETF by ATTM and/or its predecessor companies from January 1, 1998 until the date that the court preliminarily approves the settlement.  The ETF Assessed Class includes such Persons whether or not they paid any portion of the ETF, whether to ATTM, any outside collection agency, or other third party to whom ATTM has assigned the rights to the ETF.  The ETF Assessed Class excludes all current employees of ATTM."

"Subscriber Class:  all Persons in the United States who were or are parties to a contract for a wireless telephone account with ATTM and/or its predecessor companies that included or

includes a provision for a Flat-Rate ETF from January 1, 1998 until the date that the court preliminarily approves the settlement, and who have not paid or been billed a Flat-Rate ETF. The Subscriber Class excludes all current employees of ATTM."

ATTM shall stipulate to these amendments, solely for purpose of this Settlement and without prejudice to its rights absent this Settlement, including, without limitation, rights to move to compel arbitration of any claims asserted in this Action and the Related Actions or any ETF-Related Claims raised in any proceeding and to contest class certification in either this Action or the Related Actions or any action raising ETF-Related Claims.  The Complaint shall not be amended in any other respect, without prior consent of all parties to the Action.  Should this Settlement not be finalized for any reason, the Parties shall stipulate to an order striking the Third Amended Complaint, and the Second Amended Complaint shall be the operative pleading in this Action.

2. **CAFA Public Official Notification.**

Not later than ten (10) days after this Settlement Agreement is filed with the Court, ATTM shall send or cause to be sent to the Attorney General of the United States and the attorneys general of each State notice of the Settlement pursuant to 28 U.S.C. § 1715(b).  This notice may indicate that an estimate of the number of customers currently residing in each State is confidential and can only be disclosed pursuant to an appropriate and mutually agreeable confidentiality agreement.

3. **Confidentiality Agreement.**

The Parties agree that, prior to the provision of information to the Settlement Administrator, Class Counsel, ATTM's Counsel, and the Settlement Administrator will execute the "Confidentiality Agreement Relating to Settlement Agreement," substantially in the form of

Exhibit I attached hereto, pertaining to information and documents provided to the Settlement Administrator by ATTM.

      4.      **Publicity Prohibited**.

Class Counsel agree that they will not make any press release or other form of public announcement, including but not limited to an announcement on their respective law firm websites or any other websites controlled by them, regarding the settlement of the Action. Notwithstanding the foregoing, Class Counsel may, until sixty (60) days after the Court has entered the Final Approval Order and Judgment, include a notice on their respective law firm websites that a settlement regarding ATTM's Flat-Rate ETF provisions was reached along with (a) a hyperlink to the settlement website, and (b) contact information for Class Counsel so that class members can inquire about the settlement.

      5.      **No Assignment**.

Each Party represents, covenants, and warrants that he or it has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that he or it herein releases.

      6.      **Binding on Assigns**.

This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, successors, and assigns.

      7.      **Captions**.

Titles or captions contained herein are inserted as a matter of convenience and reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof.  Each term of this Settlement Agreement is contractual and not merely a recital.

8.      **Class Member Signatures.**

It is agreed that, because the Settlement Class Members are so numerous, it is impractical to have each Settlement Class Member execute this Settlement Agreement.  The Notice will advise all Settlement Class Members and/or their representatives of the binding nature of the Releases and of the remainder of this Settlement Agreement, and in the absence of a valid and timely Request for Exclusion, such Notice shall have the same force and effect as if each Settlement Class Member executed this Settlement Agreement.

9.      **Construction.**

The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party, or his or its counsel, participated in the drafting of this Settlement Agreement, or any part thereof.

10.     **Counterparts.**

This Settlement Agreement and any amendments hereto may be executed in one or more counterparts, and either Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and both of which counterparts taken together shall constitute but one and the same instrument.  A facsimile or PDF signature shall be deemed an original for all purposes.

11.     **Governing Law.**

Construction and interpretation of the Settlement Agreement shall be determined in accordance with the laws of New Jersey, without regard to the choice-of-law principles thereof.

12.    **Integration Clause**.

This Settlement Agreement, including the Exhibits referred to herein, which form an integral part hereof, contains the entire understanding of the Parties with respect to the subject matter contained herein.  There are no promises, representations, warranties, covenants, or undertakings governing the subject matter of this Settlement Agreement other than those expressly set forth in this Settlement Agreement.  This Settlement Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Action.  This Settlement Agreement may not be changed, altered or modified, except in a writing signed by the Parties and approved by the Court, and may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

13.    **Jurisdiction**.

The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any dispute with respect thereto, including with respect to disputes about allocation of fees between Class Counsel and ETF Counsel.

14.    **Presiding Judicial Officer**.

The Parties agree to jointly request that The Honorable Jose L. Linares preside, by designation if necessary, over the settlement approval process, including without limitation any application for an award of attorneys' fees, costs, and expenses or for approval of a Plan of Allocation.  In the event that Judge Linares is unable to preside, the Parties agree to jointly request that the settlement approval process be presided over by a different judge of the United States District Court for the District of New Jersey.

15.   **No Collateral Attack.**

This Settlement Agreement shall not be subject to collateral attack by any Settlement Class Members or their representatives any time on or after the Effective Date.  Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Settlement Class Member's claim was improperly denied, that the payment to a Settlement Class Member was improperly calculated, and/or that a Settlement Class Member failed to receive timely notice of the Settlement.

16.   **Parties' Authority.**

The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to the terms and conditions hereof.

17.   **Receipt of Advice of Counsel.**

The Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

18.   **Waiver of Compliance.**

Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

19.   **Terms and Conditions Not Superseded.**

Nothing in this Settlement Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course to the relationship between ATTM and its customers, or to the services provided by ATTM and purchased by its customers, except as expressly set forth herein.

20.   **Settlement Conditioned on Certain Matters.**

This entire Settlement Agreement is contingent upon the Parties reaching agreement on the contents of the exhibits and ancillary agreements hereto.

DATED: _9-15_, 2009        AT&T MOBILITY LLC

                          By: _____
                                Peter A. Ritcher

                          Its:   S.V.P. – Mobility Finance


DATED: _____, 2009     STRANGE & CARPENTER
                             Attorneys for *Sasik/Waldman* Plaintiffs

                          By: _____
                                BRIAN STRANGE

DATED: _____, 2009     CARELLA, BYRNE, BAIN, GILFILLAN,
                             CECCHI, STEWART & OLSTEIN
                             Attorneys for *Hall* Plaintiffs

                          By: _____
                                JAMES E. CECCHI

19.     **Terms and Conditions Not Superseded.**

Nothing in this Settlement Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course to the relationship between ATTM and its customers, or to the services provided by ATTM and purchased by its customers, except as expressly set forth herein.

20.     **Settlement Conditioned on Certain Matters.**

This entire Settlement Agreement is contingent upon the Parties reaching agreement on the contents of the exhibits and ancillary agreements hereto.

DATED: _____, 2009          AT&T MOBILITY LLC

                                      By:    _____
                                             Peter A. Ritcher

                                      Its:   S.V.P. – Mobility Finance

DATED: _Sept 15_ __, 2009            STRANGE & CARPENTER
                                      Attorneys for *Sasik/Waldman* Plaintiffs

                                      By:    _____
                                             BRIAN STRANGE

DATED: _____, 2009          CARELLA, BYRNE, BAIN, GILFILLAN,
                                      CECCHI, STEWART & OLSTEIN
                                      Attorneys for *Hall* Plaintiffs

                                      By:    _____
                                             JAMES E. CECCHI

19.    **Terms and Conditions Not Superseded**.

Nothing in this Settlement Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course to the relationship between ATTM and its customers, or to the services provided by ATTM and purchased by its customers, except as expressly set forth herein.

20.    **Settlement Conditioned on Certain Matters**.

This entire Settlement Agreement is contingent upon the Parties reaching agreement on the contents of the exhibits and ancillary agreements hereto.


DATED: _____, 2009          AT&T MOBILITY LLC


                                    By:    _____
                                           Peter A. Ritcher

                                    Its:   S.V.P. – Mobility Finance



DATED: _____, 2009          STRANGE & CARPENTER
                                    Attorneys for *Sasik/Waldman* Plaintiffs

                                    By:    _____
                                           BRIAN STRANGE


DATED: __9/15__, 2009               CARELLA, BYRNE, BAIN, GILFILLAN,
                                    CECCHI, STEWART & OLSTEIN
                                    Attorneys for *Hall* Plaintiffs

                                    By:    _____
                                           JAMES E. CECCHI

DATED: _September 15, 2009_

DRINKER BIDDLE & REATH LLP
Attorneys for Defendant
AT&T MOBILITY LLC

By: _____
WILLIAM M. CONNOLLY