**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Jennifer Sarnelli
Two Gateway Center – 12th Floor
Newark, NJ 07102
(973) 623-3000 (tel)
(973) 623-0858 (fax)
jdepalma@ldgrlaw.com
jsarnelli@ldgrlaw.com

*Objectors' Counsel*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL AND NEXTEL FINANCE COMPANY<br><br>                Defendants. | Civil Action No. 07-5325 (JLL)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br><u>Return Date: October 21, 2009</u> |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

FACTUAL AND PROCEDURAL BACKGROUND.............................................2

    A. Procedural History...............................................................................2

    B. The Galleguillos, et al. Objection......................................................2

    C. Improvements made to the Proposed Settlement ................................6

LEGAL ARGUMENT ......................................................................................9

    A. Objectors Counsel Has Achieved Relief Which Provides Substantial
       Benefits to the Settlement Class........................................................9

    B. Objectors' Request is Fair and Reasonable Under the Third
       Circuit's Analysis ...........................................................................12

       1. The size of the fund created, and the number of persons benefited ........13

       2. The presence or absence of substantial objections ...................................14

       3. The skill and efficiency of Objectors' Counsel .......................................14

       4. The complexity and duration of the litigation .........................................15

       5. The risk of nonpayment ...........................................................................15

       6. The amount of time devoted to the litigation............................................16

       7. Awards in similar cases............................................................................16

CONCLUSION ...............................................................................................17

# TABLE OF AUTHORITIES

Cases

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ................................................................................ 4

*Frankenstein v. McCrory Corp.,*
   425 F.Supp. 762 (S.D.N.Y. 1977) ......................................................... 11

*Gunter v. Ridgewood Energy Corp.,*
   223 F.3d 190 (3d Cir. 2000) .................................................................. 12

*In re Cendant Corp. PRIDES Litig.,*
   243 F.3d 722 (3d Cir. 2001) ............................................................ 10, 17

*In re Cendant Corp. Sec. Litig.,*
   404 F.3d 173 (3d Cir. 2005) .................................................................. 11

*In re Domestic Air Trans. Antitrust Litig.,*
   148 F.R.D. 297 (N.D. Ga. 1993) ........................................................... 11

*In re Ikon Office Solutions, Inc., Sec. Litig,*
   194 F.R.D. 166 (E.D. Pa., May 09, 2000) ............................................. 14

*In re Prudential Ins. Co. Sales Practices Litig.,*
   273 F.Supp. 2d. 563 (D.N.J. 2003) ............................................ 10, 11, 16

*In re Vista Check/Mastermoney Antitrust Litig.,*
   No. CV-96-5238, 2005 WL 2077286 (E.D.N.Y. 2005) ................... 12, 17

*In re Warfarin Sodium Antitrust Litig.,*
   212 F.R.D. 231 (D. Del. 2002) .............................................................. 14

*In re Warner Commc'n Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................ 15

*Merlo v. Atlantic Richfield Co.,*
   515 F.2d 165 (3d Cir. 1975) .................................................................... 9

*Mills v. Electric Auto-Lite Co.,*
   396 U.S. 375 (1970)................................................................................9

*Oh v. AT & T Corp.,*
   225 F.R.D. 142 (D.N.J. 2004).............................................................12

*Petruzzi's, Inc. v. Darling-Delaware Co.,*
   983 F.Supp. 595 (M.D. Pa. 1997).......................................................10

Lite DePalma Greenberg & Rivas ("LDGR"), former liaison[1] counsel for objectors Lina Galleguillos, Michael Moore, and Antranick Harrentsian (hereafter, "Galleguillos, *et al.*" or "Galleguillos objectors") respectfully submits this memorandum of law in support of its motion for attorneys' fees and costs.

Because LDGR is no longer counsel for these objectors it is unable to take any position on the fairness and adequacy of the proposed settlement currently before the Court for final approval.[2] In the event the Court does approve this revised settlement as fair, reasonable and adequate, LDGR requests that the Court grant attorneys' fees for its role in the objections that led to the refusal of this Court to give final approval to the initial class settlement. The Court found notice to be inadequate. As a result of this due process deficiency, the Court ruled that it did not obtain personal jurisdiction over absent class members. Because the Court did not obtain personal jurisdiction over the class, it addressed- but could not rule upon- other deficiencies with the settlement; if these deficiencies are cured it would be because of objectors' efforts.

---

[1] LDGR withdrew as counsel for the Galleguillos objectors after the Court issued its Opinion denying final approval. LDGR's fee request does not include any time expended following the filing its withdrawal from this case.

[2] Accordingly, this petition is not intended to be construed as an endorsement of the revised settlement.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural History

On December 3, 2008 Plaintiff Judy Larson filed a joint motion for preliminary approval of a settlement with Defendant Sprint. Docket Entry #84. This motion was approved on December 8, 2008. Docket Entry #92. Objectors Galleguillos, *et al.,* as members of this putative class, filed objections through counsel, including LDGR, to this settlement on February 6, 2009. Docket Entry #185. The objections focused heavily on the failure to adequately notice the putative class of their rights. After a four-day fairness hearing, held on March 12-17, 2009, the Court issued an Opinion on April 30, 2009, holding that the class notice was inadequate and thus it did not have jurisdiction to approve the proposed settlement. Docket Entry #321. Counsel for Larson and Sprint submitted an amended notice plan on May 21, 2009 that purportedly corrects the notice deficiencies raised by the Galleguillos objectors. Docket Entry #340.

## B. The Galleguillos, *et al.* Objection

The Galleguillos objectors raised a number of objections to the proposed settlement. These objections were the center of a contentious, four-day fairness hearing, and included the inadequacy of the notice to class members; the inadequacy of the class representatives; the inadequate value of the proposed settlement; the irregular reversion provision; and the inadequacy of Class

Counsels' fee application. Galleguillos Memorandum of Law in Support of Objection at 1 (hereinafter "Mem.").

Galleguillos *et. al.* argued that the notice provided in connection with the proposed settlement failed to comport with essential requirements of Rule 23 and due process. *Id.* Todd B. Hilsee, a leading class action notice expert, provided an affidavit in support of the objection, which outlined the numerous additional defects in the notice program including the method of dissemination, design, and content of the notices. *Id.* Mr. Hilsee concluded that "the Notices and Notice Plan were not designed to effectively reach class members and inform them of their rights." Hilsee Aff. ¶ 82. Furthermore, Mr. Hilsee provided testimony at the fairness hearing on his affidavit.

As the objectors argued, the notice plan violated Rule 23(c)(2)(B) and well-established Third Circuit law that requires individual notice to class members for combined (b)(3) certification and settlement notices. Mem. at 1. Though class member names and addresses could readily have been obtained from Sprint's and Nextel's billing records and related databases, the parties made no effort to provide individual notice to identifiable class members. *Id.* There was extensive testimony concerning databases containing the names and addresses of current and former consumers in the *Ayyad v. Sprint* and *Robertson v. Nextel* cases. *Id.* at 13. Based on this testimony, the objectors demonstrated that Sprint could provide additional

individual notice and that this individual notice is mandatory. *Id.* at 19-23 *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23.").

Furthermore, the objections argued that the content of the notice did not comply with Rule 23(c)(2)(B). *Id.* at 19-20. The Rule requires that:

> *For (b)(3) Classes.* For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)    the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)    that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Despite the mandated requirements of this Rule, the "Bill Message" used to provide a sub-set of the class with notice of the proposed settlement failed to include the required elements. Mem. at 19-20. The objections noted that the "Bill Message" did not include "the nature of the action." *See* Rule 23(c)(2)(B)(i). It

did not state "the definition of the class certified." *See* Rule 23(c)(2)(B)(ii). It did

not state "the class claims, issues, or defenses." *See* Rule 23(c)(2)(B)(iii). It did

not state "that a class member may enter an appearance through an attorney if the

member so desires." *See* Rule 23(c)(2)(B)(iv). It did not state "that the court will

exclude from the class any member who requests exclusion." *See* Rule

23(c)(2)(B)(v). It did not state "the time and manner for requesting exclusion."

*See* Rule 23(c)(2)(B)(vi). And it did not state "the binding effect of a class

judgment on members under Rule 23(c)(3)." Rule 23(c)(2)(B)(vii). Hence, the

"Bill Message" did not comply with any of the seven mandatory minimums stated

in Rule 23(c)(2)(B). Mem. at 19-20.

The objections also noted that the publication notice reached less than 50%

of the class, and the supplemental tools to provide notice, such as the press release

and Web site, were ineffective. Mem. at 25-26.

Moreover, the objections raised several substantive issues including the

inadequacy of the class representatives, value of the settlement, and Class

Counsel's fee application. Mem. at 30-39. Notably, the objections drew the

Court's attention to a provision in the settlement that allowed the unused portion of

the settlement fund to revert back to Sprint. Based on the evidence introduced at

the fairness hearing, objectors showed that the majority of the settlement funds

ostensibly earmarked for the class in fact would have reverted back to Sprint,

rendering the settlement inadequate. Fairness Hearing Day 3, March 16, 2009, Transcript at 66:23-68:14.

In short, the terms of the settlement included a *cy pres* provision. *Id.* This provision, however, allowed the money that remained in the fund after the claims were paid to revert back to Sprint who would then issue calling "cards" rather than donating any unclaimed funds directly to charity. *Id.* This reversion could potentially be for upwards of $6 million. *Id.* Despite this large reversion to Sprint, the proposed settlement agreement failed to explain the wholesale cost to Sprint for the issuance of these "cards," and whether Sprint would then be able to claim the issuance of these cards to charity as a tax deduction. *Id.* It also failed to state who would get these "cards." *Id.* Objectors argued that any reversion to Sprint would be inappropriate and that no funds should revert back to Sprint, nor is any *cy pres* in this amount appropriate. *Id.*

### C. Improvements made to the Proposed Settlement

After a four-day fairness hearing, the Court issued an Opinion denying the motion for final approval of the settlement because the Class did not obtain adequate notice pursuant to Rule 23(c)(2). *Larson v. Sprint Nextel Corp.*, No. 07-5325, slip. op. at 26 (D.N.J. Apr. 30, 2009) (hereinafter "Op."). Specifically, the Court agreed with objectors that individual notice was required. The Court held that "once class members are identified, reasonableness falls out of the equation;

those class members simply must receive individual notice." Op. at 6. Because the Galleguillos objectors made the Court aware of the existence of lists of class members "the court finds that Sprint and Class Counsel were required to provide those individuals with Rule 23-compliant individual notice. Failure to do so rendered the notice program deficient." Op. at 10.

The Court was also persuaded by the Galleguillos objectors' argument that Sprint had the ability to locate subclasses of individuals and that those individuals should also receive notice. "[T]hose subclasses capable of reasonable identification require individual notice." Op. at 16. As the Galleguillos objectors argued, "[t]his especially holds true in a case such as this one, where those who paid an ETF are entitled to recover the lion's share of the settlement but are generally unlikely to be current Sprint consumers." *Id.* Thus, the court held that "Sprint shall attempt to identify subclasses of individuals and include individual notice to those persons." *Id.*

The Court also agreed with the Galleguillos objectors' argument regarding the deficient content of the notice, opining that "strict adherence with Rule 23(c)(2) is required." Op. at 18. The Court found that "the Bill Insert was deficient. It failed to notify potential class member of most of the requires 23(c)(2) pieces of information." *Id.* Consequently the Court ordered "Class Counsel and Sprint [to]

confer on a more appropriate form of notice that includes all the elements set forth in Rule 23(c)(2)(B)(i)-(vii)." Op. at 19.

As a result of these various deficiencies, the Court held "that Sprint and Class counsel must re-notice the class." Op. at 26. Also, "having found the notice to be insufficient, the court lacks jurisdiction over absent class members." Op. at 28. Therefore, "the Court cannot evaluate the reasonableness of the settlement." *Id.* Nevertheless, again based on the Galleguillos objections, the Court provided guidance to Class Counsel and Sprint that it should revisit the reversionary nature of the settlement funds. Specifically, the Court noted:

> in the context of this settlement, the Court is concerned with a provision in which Defendant retains the remaining cash and offers prepaid calling cards as an alternative. While this Opinion does not address the reasonableness of the settlement, the Court simply highlights its concern with the provision outlined above and asks the parties to be prepared to argue for its merits should it remain in the settlement agreement.

Op. at 28. Despite this guidance, Class Counsel have recently submitted a stipulation explaining that they will be not be removing this *cy pres* provision from the settlement agreement and that any funds remaining in the fund will be used to provide calling cards to the U.S. Military. Stipulation Regarding the *Cy Pres*, Docket Entry #367. This stipulation failed to provide further explanation of the cost and tax consequences to Sprint of providing these calling cards to the U.S. Military.

# LEGAL ARGUMENT

Former Counsel for the Galleguillos objectors respectfully request that the Court award attorneys' fees in the amount of $253,136.25 and expenses in the amount of $8,608.98. This amount reflects counsel's lodestar of $168,757.50 with a modest 1.5 multiplier and actual incurred expenses. Courts assessing payment of attorneys' fees in cases where the relief is primarily therapeutic (or not exclusively in the form of cash) may apply the "substantial benefit doctrine," to determine whether the proposed settlement provides a "substantial benefit" sufficient to support the requested award of attorneys' fees. Depending on the specific facts of the relief granted, the Court may then apply a lodestar analysis. Counsel respectfully submits that the attorneys' fee and reimbursement of expenses requested is reasonable and consistent with the Third Circuit's guidelines governing awards of attorneys' fees.

## A. Objectors Counsel Has Achieved Relief Which Provides Substantial Benefit to the Settlement Class

Courts unanimously recognize that attorneys' fees should be awarded where a settlement reflects therapeutic or other non-monetary relief, so long as that relief is "substantial." *See, e.g., Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 397-98 (1970); *Merlo* v. *Atlantic Richfield Co., 515* F.2d 165, 169-70 (3d Cir. 1975).

The relief provided as a result of the Galleguillos objections

substantially benefited the class. Absent the objections, the class would not have received adequate notice in compliance with Rule 23, would not have been educated about their legal rights and accordingly, would not have received due process. Nothing much, if anything, can be deemed more substantial than to assure that constitutional rights are afforded the class.

This premise holds equally true for objectors' counsel. The Third Circuit has recognized that objectors' counsel is entitled to a fee if they improve the settlement. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 743 (3d Cir. 2001) (finding that the objector was entitled to a fee based on objections to class counsel's fee request.); *see also In re Prudential Ins. Co. Sales Practices Litig.*, 273 F.Supp. 2d. 563, 565 (D.N.J. 2003). ("objectors are entitled to compensation for attorneys' fees and expenses if the settlement was improved as a result of their efforts"); *Petruzzi's, Inc. v. Darling-Delaware Co.*, 983 F.Supp. 595, 621-22 (M.D. Pa. 1997) (granting attorneys' fees to objector who "conferred a benefit on the class"). The Third Circuit explained:

> [A] court can usually determine whether an objector has improved the class's recovery, and can often measure the amount of that improvement. If the objection is meritorious, it will usually lead to an increase in the settlement, a reallocation of the award among different plaintiffs, or a decrease in the fees paid to lead counsel. ... Furthermore, because the objector makes his objection to the court, rather than merely negotiating with lead counsel, the court can easily evaluate not only the quality of the objector's work but also the impact it had on the court's ultimate decision.

*In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 201 n. 17 (3d Cir. 2005)

When, as here the "contributions made by...the objectors benefited the class and assisted the Court in its review of the settlement...[t]he Court will reward...these efforts." *In re Domestic Air Trans. Antitrust Litig.,* 148 F.R.D. 297, 358 (N.D. Ga. 1993).

In the instant action, the Court was unaware of the numerous pre-established lists of class members and data sources to obtain lists of class members prior to the Galleguillos objection. The objections educated the Court regarding the content of the notice and its failure to comply with Rule 23. These objections "cause[d] the Court 'to spend even more hours analyzing and assessing the complex agreement, and cast in sharp focus the question of the fairness and adequacy of the settlement to all members of the class.'" *Id. quoting Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977). Ultimately, the information provided to the Court by the Galleguillos objectors led this Court to issue an Order and Opinion requiring that the class be given adequate notice in compliance with Rule 23 and due process. The objectors' role in this action "sharpen[ed] the issues and [the] debate on the fairness of the settlement" so that fee award is warranted. *Id.*

Even absent a monetary benefit to the class a fee award to objectors may be appropriate. *In re Prudential,* 273 F.Supp. 2d. at 565 (noting "[i]f

objectors are successful in challenging an award of attorney's fees to lead class counsel, their objections have conferred a benefit on the class."); *In re Vista Check/Mastermoney Antitrust Litig.*, No. CV-96-5238, 2005 WL 2077286, *14-16 (E.D.N.Y. 2005) (holding that objectors were entitled to a fee for their efforts to ensure that the notice and claims application was available in Spanish). While the Galleguillos objections to the notice deficiencies did not necessarily confer a measurable monetary benefit to the class, the objections still conferred a *substantial* benefit by ensuring that the class obtained adequate notice.

Accordingly, LDGR is entitled to a fair fee for its efforts in achieving such a result.

### B. Objectors' Request is Fair and Reasonable Under the Third Circuit's Analysis.

Third Circuit legal precedent is clear that the trial court has discretion in the determination of an appropriate award of attorneys' fees in the context of representative litigation such as class or derivative actions. The Third Circuit set forth the factors that a court should consider in evaluating requested attorneys' fees in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000). The *Gunter* factors "need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *Oh v. AT & T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004) (citing *Gunter*, 223 F.3d at 195). The *Gunter* factors include (1) size of the fund created and number of persons benefiting from the settlement; (2)

presence/absence of substantial objections to the fee; (3) skill of plaintiffs' counsel; (4) complexity and duration of the litigation; (5) risk of nonpayment; (6) amount of time devoted to the litigation; and (7) awards in similar cases. As described below, an analysis of the *Gunter* factors, regardless of the weight each individual factor is accorded, supports the requested fee.

### 1. The size of the fund created, and the number of persons benefited.

Here the benefit conferred by the Galleguillos objectors was not in an enhancement to the settlement fund, but rather to the notice.[3] This enhancement to the proposed settlement benefited the entire class. Specifically, as a result of the Galleguillos objections, approximately 286,000 additional class members received mailed notice. Amended Notice Plan, Docket Entry #340. Moreover, if the Court now rules that the revised notice is Rule 23 compliant, then good notice was mailed to 14.8 million potential class members as a result of the objections. This benefit is substantial. The first *Gunter* factor weighs in favor of granting objectors attorneys' fees.

---

[3] It should be noted, however, that the Galleguillos objectors also objected to the reversionary nature of the *cy pres* provision in the Settlement Agreement, an argument that resonated with this Court. Opinion at 28. As such, if the Court rejects the *cy pres* provision in the Settlement Agreement, the settlement fund would be enhanced by approximately $6 million. This, too, would be a substantial benefit to the class.

## 2. The presence or absence of substantial objections

This factor appears inapplicable to an objector's counsel's motion for a fee, as there must by necessity be an objection present for the motion to be made. As such, this factor should not be considered by the Court.

## 3. The skill and efficiency of Objectors' Counsel

Galleguillos objectors' counsel, LDGR, has decades of experience in prosecuting and trying complex class actions.[4] LDGR's experience and skill is demonstrated by the substantial benefit achieved on the part of the Class. The result achieved is the clearest reflection of counsel's skill and expertise and evidence the effectiveness of Objectors' Counsel's hard work and effort. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"), *aff'd* 391 F.3d 516 (3d Cir. 2004); *see also In re Ikon Office Solutions, Inc., Sec. Litig*, 194 F.R.D. 166, 194 (E.D. Pa., May 09, 2000) (stating "the most significant factor in this case is the quality of representation, as measured by the 'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the

---

[4] The firm resume of LDGR is attached to the Declaration of Joseph J. DePalma in Support of Motion for Fee as Exhibit B.

performance and quality of opposing counsel'"). Objectors' counsel's ability to succeed in obtaining adequate notice for the entire class weighs in favor of the approval of the requested fee.

### 4. The complexity and duration of the litigation

This case presented numerous complicated legal and factual issues which LDGR devoted extensive time and resources to evaluating to determine whether the proposed settlement was fair, reasonable and adequate. LDGR and other counsel for Galleguillos engaged the services of one of the leading class action notice experts in the country to properly evaluate the adequacy of the notice. Objectors' counsel worked extensively with this expert, Todd B. Hilsee, to understand each of the alleged deficiencies to the notice program. Objectors' counsel also sought and obtained discovery which it evaluated to assess the proposed settlement. This factor weighs in favor of approving the fee request.

### 5. The risk of nonpayment

LDGR undertook this matter on an entirely contingent fee basis, assuming a substantial risk that they would have to devote a significant amount of time and incur substantial expenses in prosecuting this objection without any assurance of being compensated for their efforts. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g., In re Warner Commc'n Sec.*

*Litig.*, 618 F. Supp. 735, 747-49 (S.D.N.Y. 1985) (citing cases). This is particularly true when counsel undertakes representation of objectors to a class action. *In re Prudential*, 273 F.Supp. 2d at 571. Accordingly, the risks of non-payment in this case weigh in favor of approving the fee petition.

### 6. The amount of time devoted to the litigation

LDGR has devoted a substantial amount of time and energy to this litigation. Counsel spent 359 hours in researching and arguing this objection for an aggregate lodestar of $168,757.50 and has incurred $8,608.98 in expenses.[5] The complexity of this objection required a significant amount of work by LDGR. *See* Declaration of Joseph J. DePalma ("DePalma Decl."). Work was allocated so as to avoid duplication. In addition, where appropriate, work was assigned to associates and para-professionals with lower billing rates. These decisions evidence a suitable and appropriate allocation of resources. The time invested by LDGR easily supports the reasonable fee requested in this case.

### 7. Awards in similar cases

As the *In re Prudential* Court noted "[t]his case is not the typical case, for the Court is assessing a fee award for objectors, not for class counsel." 273 F.Supp. 2d at 571. The Court therefore looked to "other cases where courts have awarded

---

[5] Exhibit B to the Declaration of Joseph J. DePalma is a chart summarizing the lodestar and expenses for Objectors' Counsel.

fees to objectors." *Id.* In perhaps the most analogous action, *In re Vista Check/Mastermoney Antitrust Litig.,* the Court determined that because the objection focused on the notice and claims application process and did not result in a financial benefit to the class, using the lodestar method to determine their fee was appropriate. 2005 WL 2077286 at *16. Here, LDGR is requesting a fee equal to their lodestar with a modest multiplier of 1.5. *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d at 742 (holding that a multiplier of three is an appropriate multiplier). In light of the substantial benefit conferred upon the class in the form of adequate notice, this fee is reasonable.

### Conclusion

For the foregoing reasons, former counsel for Galleguillos *et al.* respectfully submit that the Court approve the application for attorneys' fees and expenses.

Dated: October 14, 2009.

**LITE DEPALMA GREENBERG & RIVAS, LLC**

By: */s/ Joseph J. DePalma*
Joseph J. DePalma
Jennifer Sarnelli
Two Gateway Center – 12th Floor
Newark, NJ 07102
jdepalma@ldgrlaw.com
jsarnelli@ldgrlaw.com
Tel: (973) 623-3000
Fax: (973) 623-0858