# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, *et al.* individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL<br><br>                    Defendants. | Civil Action No. 07-5325(JLL) |

---

## CLASS COUNSEL'S MEMORANDUM OF LAW
## IN OPPOSITION TO OBJECTIONS TO SETTLEMENT

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Jeffrey Leon
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Stephen A. Weiss
Jonathan Shub
SEEGER WEISS LLP
One William Street
New York, New York 10004

Class Counsel

# TABLE OF CONTENTS

Table Of Authorities ..................................................................................................ii

Preliminary Statement..............................................................................................1

Legal Argument

Point One

The Bursor Objectors Are Raising The Same Issues
Which The Court Addressed At The First Hearing ........................................................5

      a)    The Bursor Objectors are estopped from objecting to the Amended Notice Plan.....5

      b)    The Bursor Objectors previously raised their objections
          to the Notice Plan at the first Final Approval Hearing ...............................................10

      c)    The value of the Settlement is fair, reasonable and adequate ...................................13

Point Two

The Lakin/Bock Claim That The Settlement Was The
Result Of A Reverse Auction Is Meritless...................................................................16

Point Three

The Remaining Objections Should Be Overruled ..........................................................19

      a)    The Settlement does not discriminate against customers with flat-rate ETFs ..........19

      b)    The Griffin objection is baseless.................................................................................20

      c)    The Wein objection should be overruled ...................................................................21

Conclusion .................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chiang v. Veneman*, 385 F.3d 256 (3rd Cir. 2004) ...................................................... 20

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975) ............................................................. 13

*Government of the Virgin Islands v. Archibald*, 987 F.3d 180 (3d Cir. 1993) ............................. 7

*Hamilton v. Leavy*, 322 F.3d 776 (3d Cir. 2003). ....................................................... 10

*In re Community Bank of Northern Virgina*, 418 F.3d 277 (3d Cir. 2005) .................................. 16

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
   962 F.Supp. 450 (D.N.J. 1997) .................................................................... 14

*Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091 (9th Cir. 2008) ...................... 16

*Presidential Life Insurance Co. v. Milken*, 946 F.Supp. 267 (S.D.N.Y. 1996) ............................. 5

*Rutter & Wilbanks Corp. v. Shell Oil Co,.*314 F.3d 1180 (10th Cir. 2002) ................................ 16

*U.S. Energy Systems, Inc. v. Enviro Partners, L.P.*, 1999 WL 123806 (S.D.N.Y. 1999) .............. 5

**Rules**

Fed.R.Evid. 103(a)(1) .................................................................................. 7

## PRELIMINARY STATEMENT

Like the reappearance of the cicada after years of hibernation, the second Final Approval Hearing in this case has spawned a cloud of objections and false assertions from the same disgruntled lawyers who so vigorously attacked the settlement the first time around. Oblivious as always to the Court's orders, their filings recycle the same tired arguments that the Court has already rejected, and specifically barred them from making. Nothing is new, it has all been seen before and correctly considered and rejected by the Court.

Objectors Lina Galleguillos, Michael Moore and Antranick Harrentsian (together the "Bursor Objectors"), represented by Scott Bursor, remarkably attack the Court's Amended Notice Plan despite the fact that the majority of their arguments were considered and rejected by this Court on three separate occasions, and by the Third Circuit when it rejected Mr. Bursor's petition for a Writ of Mandamus. Mr. Bursor's attack on the Amended Notice Plan also cavalierly ignores the Court's unequivocal admonition *not* to recycle the same arguments already considered, and the equally unequivocal fact that he was served with the Amended Notice Plan long before the Court entered it, and he said nothing about it at a time when the Court and the parties could have done something to fix it if it was, in fact, in need of repair. All of this makes plain that his objections are frivolous, and designed solely to advance his own personal objectives and not those of the Class.

Objector Jessica Hall (the "Lakin/Bock Objector"), represented by Lakin Chapman and Bock & Hatch from Illinois, again object to the Settlement as being the product of a reverse auction. As before, there is not a shred of evidence supporting their *ipse dixit* pronouncements concerning the mysterious "reverse auction". The opposite is true – the sworn testimony categorically shows their allegations to be false. Mr. Lakin and Mr. Bock's objections are

transparently nothing more than an effort to export their personal disputes with certain lawyers in this case to New Jersey in pursuit of their own agenda in derogation of the interests of the class.

A brief discussion of the procedural history of this case since the first Final Approval Hearing is, in Class Counsel's judgment, instructive when assessing the merits – or lack thereof – of the objections now before the Court.  The case has not been at a standstill, waiting for the renewed Final Approval Hearing.  The day after the issuance of the Court's Opinion and Order denying without prejudice final approval of the Settlement, Mr. Bursor submitted a letter to the Court seeking broad and extensive relief – despite what the Court said in its lengthy and carefully considered Opinion.  Ignoring the Court's Opinion, Mr. Bursor sought an Order vacating: (1) the December 8, 2008 Preliminary Approval Order; (2)  the December 18, 2008 Order approving Class Counsel's original notice plan; (3)  the January 16, 2009 Order enjoining the prosecution of the California Subscriber class case; and (4) the April 30, 2009 Opinion which the Court had just issued.  Class Counsel and Sprint opposed Mr. Bursor's broadside against the Court's April 30 Opinion and, in a succinct Letter Opinion dated May 14, 2009, the Court rejected each and every one of Mr. Bursor's arguments.  (Docket Entry 335)  Not content, and apparently convinced that the Court was wrong both times, Mr. Bursor filed a petition for a Writ of Mandamus with the Third Circuit.  Tellingly, by this time, Mr. Bursor's local counsel, Mr. DePalma from Lite, DePalma, Greenberg & Rivas, had apparently had his fill of Mr. Bursor's litigation rampage and had withdrawn as local counsel. (Docket Entry 345)  Equally telling, the Third Circuit rejected Mr. Bursor's Petition for a Writ of Mandamus, thereby leaving in tact each and every one of the Court's Orders.

But that is not all.  On May 6, 2009, Class Counsel and Sprint moved for reconsideration of a portion of the Court's April 30 Opinion as to the publication notice because the publication

notice which the Court found to be deficient was not actually used.  (Docket Entry 331).  Both the Bursor Objectors (Docket Entry 336) and the Lakin/Bock Objector (Docket Entry 338) opposed the motion for reconsideration, raising issues which had nothing to do with the narrow issue raised in Class Counsel's motion for reconsideration.  Indeed, Mr. Bursor's opposition to the motion for reconsideration was actually a *third* attempt to convince the Court that the entire publication notice was defective in terms of design, content and in connection with its reference to the *Robertson* Nextel class. (Bursor Objectors' opposition at 1).  He once again asserted that the entire publication notice should be repeated.  (Bursor Objectors' opposition at 1-2).  The Lakin/Bock Objectors renewed their prior arguments that the publication notice was defective because it failed to inform class members of Class Counsel's fees, of Paul Weiss' disciplinary proceedings and of their membership in the *Hall* certified class.  (Lakin/Bock opposition at 2-3).  The Court rejected both Bursor's and Lakin's arguments and granted Class Counsel's motion for reconsideration, holding that new publication notice was not required. (Docket Entry 339).  As such, for the third time the Court rejected the notion that in terms of content, readability and reach, the Publication Notice was in any way deficient.

Taking into account the Court's ruling on the motion for reconsideration, Class Counsel and Sprint filed a proposed Amended Notice Plan on May 21, 2009.  Of course, Mr. Bursor received copies of the proposed Amended Notice Plan as he is registered to receive e-notification of all filings in this case.  Suddenly, however, Mr. Bursor went silent.  He said nothing to Sprint, nothing to Class Counsel and, most importantly, he said nothing to the Court.  His "independant" expert, Mr. Hilsee, similarly sat on the sidelines and said nothing.

The Court approved the Amended Notice by way of Order dated June 2, 2009.  (Docket Entry 344).  In addition to approving the Amended Notice Plan, the Court set dates for the filing

of objections, fee applications and the Final Approval Hearing.  With respect to objections, the Court specifically held that "the Court will not allow objectors to repeat arguments which were made at the first fairness hearing."  But that is exactly what Mr. Bursor and Lakin/Bock have proceeded to do.  The objections they raise with respect to the publication portion of the Notice Plan, contents of the notice, the value of the settlement, and with respect to the class representatives (Bursor Objection at 20-38) were all raised at the prior fairness hearing or on the motion for reconsideration.  (*Compare* Docket Entry 186 at 23-38) and should not be considered for a fourth time at this second Final Approval Hearing.   The same is true for Messrs. Lakin and Bock.  The Court and the parties have heard the "reverse" auction cry before.  It has not improved with age and should once again be rejected.

**LEGAL ARGUMENT**

**POINT ONE**

**THE BURSOR OBJECTORS
ARE RAISING THE SAME ISSUES
WHICH THE COURT ADDRESSED
AT THE FIRST HEARING**

The Bursor Objectors continue to object to the readability of the notices and the "reach" of the Amended Notice Plan.  Further, notwithstanding the fact that the Amended Notice Plan was submitted to the Court on notice to all parties, including the Bursor Objectors, and was considered by the Court for two weeks without objection from anyone before approval, the Bursor Objectors object to the Amended Notice Plan as still being inadequate.  Finally, the Bursor Objectors object to the reasonableness of the Settlement, despite the fact that this settlement compares favorably with Mr. Bursor's *Verizon* settlement and the *T-Mobile* settlement which Mr. Bursor did not object to.

a)      **The Bursor Objectors are estopped from objecting to the Amended Notice Plan**

An objector may be estopped from raising an objection to a Class Action settlement where another party has relied to its detriment on the first party's failure to raise a timely objection.  *Presidential Life Insurance Co. v. Milken*, 946 F.Supp. 267, 278-79 (S.D.N.Y. 1996); *U.S. Energy Systems, Inc. v. Enviro Partners, L.P.*, 1999 WL 123806 at *9 (S.D.N.Y. 1999).  Here, the Bursor Objectors should be estopped from now raising an objection to the Amended Notice Plan because they failed to raise any objection when it was originally submitted to the Court.

In its Opinion regarding the first Final Approval Hearing, the Court set forth the corrective actions which Class Counsel and Sprint were to take.[1]  (Op. at 26-27).  In accordance with the Court's instructions, on May 21, 2009, Class Counsel and Sprint submitted an Amended Notice Plan which they believed complied with the Court's instructions.  (Docket Entries 340-341).  No one filed any objections.  On June 2, 2009, 12 days later, the Court entered an Order approving the Amended Notice Plan. (Docket Entry 344).  In reliance upon the Court's approval (and lack of objections), Sprint sent out the revised notices in accordance with the Amended Notice Plan at considerable expense to itself.

The Bursor Objectors raise no objection as to whether Class Counsel and Sprint complied with the Amended Notice Plan, which the Court found, with the benefit of all of the evidence and argument presented at the first Final Approval Hearing, complied with Rule 23.[2]  Rather, they now contend that the Amended Notice Plan failed to comply with Rule 23, contrary to the Court's prior holding.  They complain that the Declaration of Scott Rice (Docket Entry 341), which was submitted in support of the Amended Notice Plan, contains inadmissible evidence

---

[1]     On reconsideration, the Court found that the original publication notice complied with Rule 23, so no additional publication notice was necessary.  (Docket Entry 339).

[2]     The only provision in the Amended Notice Plan which the Bursor Objectors claim Class Counsel and Sprint failed to comply with the Court's direction to correct the parenthetical following the *Robertson* citation in the Settlement Agreement "to the extent [it] is incorrect". (Bursor Objection at 23-24).  That parenthetical, which is on page 5 of the signed Settlement Agreement stated that with respect to the *Robertson* case "(on which summary adjudication was granted in favor of Nextel, currently pending on motion for reconsideration.)"  That parenthetical was accurate as of the time the Settlement Agreement was executed.  However, the fact that the summary judgment was reversed on reconsideration does not make the notice (or the Settlement Agreement) misleading.  The context in which the *Robertson* case is mentioned is that it is being carved out of the definition of the *Ayaad* case, which is not being settled here.  Whether or not the *Robertson* case has or has not been dismissed on summary judgment, the members of the *Robertson* class are members of the Settlement Class here and are entitled to benefits under the terms of the Settlement.  The parenthetical does not tell *Robertson* class member that they aren't entitled to anything under the Settlement and is thus not misleading in any way.

(Bursor Objection at 8-9) and is not credible (Bursor Objection at 12-14).  They further argue that Sprint could have obtained a complete mailing list of 9.2 million class members for a cost of $140,000, so individual mailed notice should have been sent to all of those class members. (Bursor Objection at 14-20).

First, a person objecting to the admissibility of evidence must do so in a timely fashion, *i.e.*, as soon as the party knows or reasonably should know of the grounds for the objection.  If he fails to object, the objection is waived. *E.g., Government of the Virgin Islands v. Archibald*, 987 F.3d 180, 184 (3d Cir. 1993); Fed.R.Evid. 103(a)(1).  All of the grounds for the Bursor Objectors' objection to the Rice Declaration were known to them when the Declaration was filed.  The Bursor Objectors had the opportunity to object when it was submitted but did not. They cannot object to its admissibility now.

Further, the "facts" relating to the alleged inadequacy of the Amended Notice Plan were likewise known to the Bursor Objectors at the time that it was submitted to the Court and could have been raised by the Bursor Objectors at that time. The amount of time and expense in creating an additional mailing list from Sprint's computerized records was fully disclosed in the Rice Declaration and Sprint volunteered in the Amended Notice Plan to undertake whatever additional efforts the Court might require to create an additional mailing list from the databases described in the Rice Declaration.[3]  (*See* Amended Notice Plan at 8, n. 3).  The Court reviewed the Amended Notice Plan, as well as the efforts required to obtain additional mailing lists from Sprint's databases as explained in the Rice Declaration, and approved the Amended Notice Plan

---

[3]     Further, the information set forth in Appendix A to the Bursor Objection appears to have been discovery produced in the California litigation, so it was likewise available to the Bursor Objectors when the Amended Notice Plan was filed.

as proposed.  With respect to searching Sprint's databases to create an additional mailing list, the

Court specifically found:

> Additionally, the Court is satisfied – upon examining the Declaration of Scott Rice, Sprint's Vice-President of Customer Billing Services – that it would be unreasonable to require Sprint to engage in further efforts to individually identify additional class members.  The time, cost, and effort associated with poring through and analyzing the various Sprint databases are not reasonable, and the Court finds that individual notice, as outlined above, is sufficient to satisfy Rule 23.  Thus, the new individual notice plan is approved in full.

(Order approving Amended Notice Plan at 2).

Rather than raising these objections at a time when, if they had any merit, corrective

action could have been taken, the Bursor Objectors held back and let what they now claim are

defective notices go out and apparently want Sprint to perform still another do-over on individual

notice.  The parties, and the Court, relied upon there being no objection to the Amended Notice

Plan in proceeding with additional notice to the Class.

As has been amply demonstrated to the Court, the Bursor Objectors are fully capable of

raising objections with the Court in a timely manner when doing so serves their purpose.  They

had the opportunity to raise these issues with the Court at the end of May.[4]  Their failure to

object to the Amended Notice Plan when it was submitted is gamesmanship; their present

objection is likewise gamesmanship, not a legitimate effort to protect the interests of the Class.

If they were genuinely interested in protecting the interests of the Class, the Bursor Objectors

---

[4]      Unlike when the preliminary approval papers were submitted, at the time when the Amended Notice Plan was presented to the Court, Mr. Bursor had entered an appearance, was fully familiar with all of the issues of the case and had argued extensively with respect to the adequacy of notice at the first Final Approval Hearing.  (*Compare* Op. at 8, n. 5).  The circumstances of the submission of the Amended Notice Plan are, therefore, dramatically different than the first notice plan such that Mr. Bursor – and his "clients" – had an affirmative duty to speak when the Plan was filed.

8

would have raised their issues before notice was sent out the second time. Since they were silent then, they should not be allowed to raise these issues now.

More importantly, we use the word "facts" very loosely in this context. The "factual" underpinning of Mr. Bursor's claim that the mailing notice was inadequate is a fabrication. There is nothing in the record from which anyone could *reasonably* infer that it would take four months and cost Sprint only $140,000 to produce a mailing list of 9.2 million. Those numbers are invented based upon incorrect assumptions and dissembling with Sprint's data.

The Bursor Objectors repeatedly assert that Sprint could produce a 9.2 million person mailing list in four months at minimal cost as if it were true and use those figures to attack the Amended Notice Plan. (*See also* Supplemental Affidavit of Todd Hilsee, ¶ 10). One problem with Mr. Bursor's theory is that Appendix A to the Bursor Objection, which they use as the basis for producing a 9.2 million person mailing list, contains numbers based upon *all* customers who were charged ETFs throughout the country. Those numbers include governmental and business entities which were charged ETFs, and which are not members of the Class, as well as California residents who were charged ETFs and are members of the *Ayaad* class, which has similarly been excluded from the Class. Performing the data mining described in Mr. Rice's Declaration would produce a list of class members nowhere near the 9.2 million suggested by the Bursor Objectors, but there is no way to tell the names of how many Class members the data mining might yield until the work is actually done. The 9.2 million number is invented.

Moreover, when the Court approved the Amended Notice Plan as submitted, it concluded that the difficult efforts required to produce a more extensive mailing list, were simply not reasonable. It did not perform a cost-benefit analysis but rather the reasonableness analysis required by the law. The Bursor Objectors' (false) claim that two of the databases could be

searched to produce a 9.2 million mailing list misses the point entirely.  The time, cost and effort necessary to search those databases, regardless of the results, was already presented to the Court and the Court found that those efforts were unreasonable, and unnecessary for Sprint to undertake.  Put simply, the issue has already been decided and is clearly law of the case.  *See Hamilton v. Leavy*, 322 F.3d 776, 786-787 (3d Cir. 2003).

Further, in *T-Mobile*, where Mr. Bursor did not object either to the notice plan or the settlement itself, the mailed notice was sent only to customers and former customers whose names and addresses were in pre-existing mailing lists.[5]  These lists were far less extensive than the gargantuan lists Mr. Bursor claims should be created and utilized in this case.  The same holds true for the *Verizon* settlement, where Verizon did not undertake the efforts Mr. Bursor seeks to foist on Sprint.  Put simply, if individually mailed notice to only known customers was sufficient in *T-Mobile*, it is frivolous for Mr. Bursor to contend that Sprint is obligated to spend months and thousands of dollars to create a mailing list to an unknown number of persons, in addition to utilizing the existing *Robertson* list as ordered by the Court.

**b)**     **The Bursor Objectors previously raised their objections
to the Notice Plan at the first Final Approval Hearing**

The remaining issues the Bursor Objectors raise were previously raised and either explicitly or implicitly addressed in the Court's prior Opinion.  They should not be permitted to

---

[5]     Mr. Bursor claims that he "was personally involved in negotiating and designing the notice plan" in *Milliron v. T-Mobile*.  (Supp. Dec. of Scott Bursor, ¶ 3).  Perhaps this claim is why he did not object in *T-Mobile* and is objecting here, but no such thing ever happened.  The *T-Mobile* notice plan was negotiated and designed by Class Counsel and T-Mobile's counsel, and was presented to the Court in the preliminary approval motion as a "done deal".  Notwithstanding recitation in the Bursor Side Deal that Mr. Bursor had assisted in the review of the notice plan, there was no change in the *T-Mobile* notice plan after it was initially approved by the Court, and the Court found that "no showing has been made that the Bursor Group performed any such work."  (*Milliron v. T-Mobile*, Civil Action No. 08-4149 (JLL), Docket Entry 86, at 38, n. 16.)

recycle these arguments again.  They complain about the adequacy of the publication notice (Bursor Objection at 20-21), the design and content of the notices (Bursor Objection at 21), and the readability of the notices.  (Bursor Objection at 21-23, 25-26).   The Court explicitly found that the publication notice was adequate.  (Op. at 20-22)  Further, other than the Bill insert notice, which was corrected in the supplemental mailing notice, and the *USA Today* notice, which the Court observed on reconsideration complied with Rule 23, the Court found no fault with the content of the notices, notwithstanding the Bursor Objectors reiterating the objections they previously raised on those issues.  In providing criteria for the Amended Notice Plan, the Court did not require the notices to be revised for readability.  (*See* Op. at 26-27).  Implicitly, the Court rejected the Bursor Objectors complaints about the readability of the notices.

The Bursor Objectors also complain that half of a sentence in the long form notice is false and misleading.  (Bursor Objection at 24).  The entire sentence reads:  "*This notice does not imply that there have been or would be any findings of violation of the law by Sprint Nextel* or that recovery could be had in any amount if the Action were not settled."  (Long Form Notice at 2.  The Bursor Objectors object to the italicized part).  This sentence follows the explanation as to why the Settlement was agreed to:

> Class Counsel (listed below) believe that the claims asserted in the Action have merit, but that the settlement, described below, is in the best interests of the Settlement Class. Class Counsel have evaluated information made available in the course of the Action and settlement negotiations and have taken into account the risks and uncertainties of proceeding with this litigation. Those risks include the uncertainty of prevailing on the merits, proving substantial damages at trial, and prevailing on post-trial motions and likely appeals. Based upon their consideration of these factors, and on the substantial time and expense that will be incurred, Class Counsel believe it is in the best interests of the Settlement Class to settle the Action and the Class-Released Claims on the terms described below.
>
> Sprint Nextel denies any wrongdoing and does not believe that it has any liability to the Class Representatives or the Settlement Class. However, Sprint Nextel believes that it is in its best interest to settle the Action, under the terms of the

11

> Settlement Agreement and obtain closure on these matters for the purpose of avoiding the uncertainties, expense of, and diversion of business resources resulting from further litigation.

(Long Form Notice at 1). In the context of the Notice, it is clear that the statement relating to there having been no findings or there might be no findings that the ETF was unlawful was referring to findings by this Court in this Action. That is a correct statement. Moreover, in the context of the Notice, the sentence is accurate because the fact that the Notice itself was being circulated did not, in and of itself, imply that the Court had found Sprint had engaged in any wrongdoing. The Notice was presenting information as to why the Settlement was agreed to, not as findings that the Court had found that Sprint had acted unlawfully or that that the Class might recover something if the case were not settled. The objectionable half-sentence in the Long Form Notice does not make the Notice false or misleading.

The Bursor Objectors' contention that the Notice is false with respect to the supposed "reverter" to Sprint is likewise baseless. (Bursor Objection at 24-25). There never was any "reverter" to Sprint, but, to the extent it was unclear before, Class Counsel and Sprint clarified what was to happen to any remaining money in the Settlement Fund: it will be used to buy calling cards for the Military, not go back to Sprint. (*See* Docket Entry 367). In the alternative, the Court will choose the appropriate *cy pres* remedy. Likewise, the Bursor Objectors' contention that the Settlement is inadequate because of the alleged existence of this "reverter" (Bursor Objection at 31-34) is similarly baseless, since the "reverter" doesn't exist.

The Bursor Objectors' contention that the low claims rate is an indicator that the Notice Program is inadequate is based upon old data, from before the first Final Approval Hearing. In the meantime, the Bursor Objectors made no effort to obtain discovery with respect to updated information. Since the first Final Approval Hearing, the number of claims has increased. Prior

to the Amended Notice Plan being implemented, there had been 12,501 individual claims representing 19,105 lines of service.[6] Since the Amended Notice Plan was implemented, there have been an additional 44,137 claims representing 66,024 lines of service.  This demonstrates that the Amended Notice Plan was quite effective, not defective, as the Bursor Objectors claim.

**c)**      **The value of the Settlement is fair, reasonable and adequate**

The Bursor Objectors argue that the consideration for the Settlement is inadequate because of what is characterized as Mr. Bursor's demonstrated success in the *Ayaad* litigation in California.  That "success" is more of Mr. Bursor's repetition of a big lie because the California court has not dismissed Sprint's counterclaim for damages against the *Ayaad* class.  Rather, the trial court granted Sprint a new trial with respect to its damages, which, in the first trial, exceeded the amount of the class' damages.

The Settlement here is fair, reasonable, and adequate in light of the risks of proceeding to trial with this litigation, notwithstanding the Bursor Objectors' contention that the potential recovery here is $1.2 billion.  (Bursor Objection at 31-32).  The Settlement here is proportional to the settlement in *T-Mobile* and the risks here are exactly the same as in *T-Mobile*, a settlement to which Mr. Bursor had no objection.  In *T-Mobile*, the Court made the following findings with respect to the risks of litigation in evaluating the *Girsh*[7] factors with respect to the reasonableness of the settlement there.

> **4.**    **Risk of Establishing Liability**:  The risks of proceeding to trial in any case are considerable.  In re Prudential, 962 F.Supp. 450, 539 (D.N.J. 1997).  This case is no different.  Class Counsel has outlined several risks to establishing liability and damages, including (i) even if a court held T-Mobile's liquidated

---

[6]      This would result, for example, if one customer had two phones with two numbers and had been charged an ETF, and submitted a claim for both numbers.

[7]      *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975)

damages clause to be unenforceable, T-Mobile would be allowed to counter-claim for the actual damages that it could prove at trial; and (ii) T-Mobile's actual damages could very well exceed the amounts recoverable by the Class.  In that scenario, the Class recovery would be zero.  Additionally, as indicated earlier, T-Mobile retains several potent legal defenses, including arbitration and preemption. Given the above risks, and noting the inherent difficulty associated with litigating and proving the case at trial, the Court agrees that this <u>Girsh</u> factor weighs in favor of approval.

     **5.**    **Risks of Establishing Damages:**  This factor is intertwined with the previous one and weighs in favor of approval.

     **6.**    **Risks of Maintaining the Class Action Through Trial:**  Though several cases have been filed and litigated against T-Mobile, in both state and federal courts, no class has ever been certified in any T-Mobile ETF case. Certainly, this is strong evidence that real risks exist in obtaining and maintaining class certification through trial.

     Additionally, a substantial risk exists with respect to class actions asserting state-law claims from multiple jurisdictions because under New Jersey's choice of law scheme predomination can be defeated by the finding that each state has the greatest interest in its own law being applied.  <u>Ford Motor Co. Ignition Switch Prods. Liability Litig.</u>, 174 F.R.D. 332, 351 (D.N.J. Aug. 28, 1997)("Viewing these variations in the context of a case involving five state-law causes of action, the laws of fifty states, and over twenty-three million plaintiffs, the court must conclude that this suit cannot be practically and efficiently tried as a class action because plaintiffs have not established a predominance of common legal issues required by Rule 23(b)(3).")  Taken in concert, the fact that no class has yet to be certified in a T-Mobile ETF case coupled with the real risks to certification cause this factor to come down in favor of approval.

(*T-Mobile* Op. at 11-12).

     These are exactly the same risks which exist in this litigation.[8]  Mr. Bursor's pie-in-the sky view of the merits[9] of the *Ayaad* claims do not change these risks, which, notably, Mr.

---

[8]    While in *Ayaad* a class was certified, that was a California-only class, not a nationwide class as Plaintiffs were seeking here.

[9]    Ordinarily, the Court is entitled to rely upon the judgment of experienced counsel in evaluating a proposed settlement.  *See In re Prudential Insurance Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 543 (D.N.J. 1997).  Here, however, Mr. Bursor's judgment as to the reasonableness of the Settlement here is contrary to that of Class Counsel and Sprint's counsel, and to his own judgment of the reasonableness of the *T-Mobile* settlement. He argues essentially

Bursor agreed with in *T-Mobile*.  Further, the fact that Sprint is allowed to continue to collect flat-rate ETFs (Bursor Objection at 34-35) does not make the Settlement inadequate.  This is, after all, a *settlement*, which necessarily involves compromise on both sides and an agreement of the parties.  The fact that the Bursor Objectors disagree with one term of the in the Settlement does not make it inadequate.

---

that the Court should rely solely upon the opinion he has expressed here as to the reasonableness of the Settlement and the opinions of Class Counsel and   Sprint's counsel should be disregarded. Notably, his own co-counsel in California place no value on his judgment.  In a recent hearing regarding who should serve as lead counsel in California, his co-counsel characterized Mr. Bursor as "a disruptive force" (Taylor Declaration, Ex. A, at p. 7, l. 15-18; *see also* p. 15, l. 26 to p. 16, l. 3), "a bully and basically an extortionist"  (p. 8, l. 8-9) and that he has "no integrity" and "is a liar"  (p. 11, l. 23-15).  Further, his co-counsel believe that he is not competent to serve as lead counsel in California, since he has tried only two jury trials to verdict.  (p. 8, l. 10-17). Indeed, they characterize the Sprint trial in California as a loss and hold Mr. Bursor responsible because he alienated the jury.  (p. 17, l. 17-22).  Thus, Mr. Bursor's opinion as to the possibilities of success here, based upon his "success" in *Ayaad*, should be seriously discounted.

POINT TWO

**THE LAKIN/BOCK CLAIM**
**THAT THE SETTLEMENT WAS THE**
**RESULT OF A REVERSE AUCTION IS MERITLESS**

The Lakin/Bock Objector object to the Settlement because she contends that the Settlement was the result of a "reverse auction". This objection is unsupported, and, indeed, contradicted by the record, and, in fact, the Lakin/Bock Objector does not take issue with the reasonableness of the Settlement itself.[10] For the reasons set forth below, the Lakin/Bock Objection should be overruled.

A "reverse auction" is the "practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement within the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *In re Community Bank of Northern Virgina*, 418 F.3d 277, 309 (3d Cir. 2005). Whether a reverse auction has occurred goes to the issue of whether the settlement should not be approved because it was collusive. *Id.*

Other than the fact that there appears to be some overlap between the time that the Lakin/Bock attorneys and Class Counsel were negotiating with Sprint, there is no evidence to support the Lakin/Bock Objector's contention that the Settlement was collusive. The Lakin/Bock Objector has thus "floated out the specter of a reverse auction, but brought forth no facts to give that eidolon more substance." *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099 (9th Cir. 2008). *See also Rutter & Wilbanks Corp. v. Shell Oil Co,*.314 F.3d 1180, 1189 (10th Cir. 2002) ("Absent some more concrete evidence of collusion than Objector's

---

[10] The Lakin/Bock Objector also objects to notice (Lakin/Bock Objection at 9-11), however that objection is not directed toward the form or content of the notice, but to who is paying for the notice. That is an objection to the Settlement itself, not notice. Again, the Lakin/Bock Objector takes no issue as to why the Settlement overall is not fair, reasonable and adequate.

conclusory allegations and inferences, we decline to disturb the district court's conclusion that the settlement was not a collusive reverse auction."). The finding of a reverse auction on this record "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions-none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Rutter & Wilbanks,* 314 F.3d at 1189.

First, there is simply no evidence for the underlying premise that Class Counsel were the most ineffectual class counsel. To the contrary, the only objective evidence is that class counsel was very effective as supported by the unrebutted Declaration of Judge Politan and the Declaration of Sprint counsel Dominic Suprenant that class counsel convinced Sprint to settle by pointing to the ability of a federal court to enjoin parallel state court actions through the All Writs Act. The Lakin/Bock Objector does not and could not allege personal knowledge of Class Counsel's settlement process, and her assertion of collusion is refuted by those with personal knowledge of the settlement negotiations between Sprint and Class Counsel. As was set forth in Judge Politan's Declaration (Docket Entry 231-2), the settlement discussions between Class Counsel and Sprint involved five months of intensive and contentious negotiations. Judge Politan specifically dismissed the idea that the Settlement was the result of a "reverse auction". (Politan Dec., ¶¶ 15-18). In summary, Judge Politan stated: "Finally, it is frivolous to suggest that any of the participants in this mediation would participate in a reverse auction. They are all highly experienced class action litigators and at no time did anyone behave in a manner that would cause me to doubt their full commitment to their clients. To the contrary, I can unequivocally state that this mediation was hard fought, arms length and, at many times, close to failure. It was, frankly, one of the more difficult mediations I have conducted since 2002." (*Id.*

17

at ¶ 19).  The Lakin/Bock Objector's contention that the Settlement was the result of a "reverse auction" is, as Judge Politan stated, "frivolous".

Also frivolous are the other elements of the Lakin/Bock reverse auction assertion.  For example, a reverse auction only exists if class counsel knows of the existence of parallel settlement negotiations.  It is only then that a defendant can play one set of counsel against the other.  There is not one shred of evidence that class counsel knew of the Lakin/Bock settlement negotiations, let alone the terms of those negotiations.  Indeed, in connection with the motion to disqualify, this Court found that "the evidence this Court has received indicates that the Bock Group was non-responsive to Weiss' attempts to communicated with them . . . . all signs indicate that he was effectively frozen out of any further interaction . . . with the Bock group litigating the Hall case."  (8/27/09 Order at 6)

18

**POINT THREE**

**THE REMAINING OBJECTIONS**
**SHOULD BE OVERRULED**

A number of other Class members have filed objections to the Settlement which are addressed below and should likewise be overruled.  First, there were several *pro se* objections filed which generally objected to the Settlement, without providing any specific basis for the objection.  Those general objections should be overruled.[11]

a)      <u>The Settlement does not discriminate against customers with flat-rate ETFs</u>

Pamela Orbison (Docket Entry 349) and Joel Rothman (Docket Entry 372) both object to the Settlement because it does not provide a pro-rated ETF in their existing Sprint contracts.

Unfortunately, by its own nature, is a compromise and cannot cover all situations.  However, the Settlement does provide Ms. Orbison and Mr. Rothman with some relief.  If they were to terminate their contracts now, the Settlement allows Sprint to charge them the $200 termination fee, but, they would be able to recover $90 of that if they submits claim.[12]  They would be worse off than a similarly situated customer who had a pro-rated ETF, who are, not Class members, but they are in the same position as all other customers with a flat-rate ETF.  The Settlement treats all similarly situated *Class members* the same.

---

[11]      In addition, Dean Short (Docket Entry 371) and Anita Levine and Tom Montague (Docket Entry 374) renewed their prior objections.  Class Counsel incorporates by reference the responses to those objections raised by Class Counsel and Sprint in connection with the first Final Approval Hearing.

[12]      The Settlement provides an additional benefit.  If Ms. Orbison and Mr. Rothman keep their Sprint contracts to their termination date, but can prove that he attempted to terminate his service but did not because of the ETF (which is entirely possible, given their objections), they would be entitled to either a $35 cash payment or 30 free bonus minutes per month for a year, if they decide to renew his Sprint service.  (Settlement Agreement at 33)

b)      **The Griffin objection is baseless**

Kenneth and Sandra Griffin raise several objections to the Settlement.  First, they contend that the class definition is "an incomprehensible run-on and on and on sentence."  (Griffin Objection at 2).  This is an issue which Mr. Hilsee raised at the first Final Approval Hearing and was rejected by the Court.  They also argue that the phrase "and whose claims relate in any way to an Early Termination Fee" make the class definition inadequate because it makes whether a person is included in the Class turn on the class member's state of mind.  (Griffin Objection at 2-3, *citing Chiang v. Veneman*, 385 F.3d 256, 272 (3rd Cir. 2004)).

In *Chaing*, the class definition included all persons who "claim they were discriminated against", which the Third Circuit found to be problematic.  "'Claim' seems to be a mere substitute for 'believe' and a 'class defined with reference to the state of mind of its members will not be allowed to proceed under Rule 23."  *Chaing*, *id.*  A class definition which contains the word "claim" is not *ipso facto* deficient.  Here, unlike in *Chaing*, "claim" is used as a noun, not as a verb.  Whether someone is in the Class here does not depend upon their subjective state of mind, but upon the objective content or subject matter of the "claim" they have already asserted.

The Griffins also object to the *cy pres* component of the Settlement.  (Griffin Objection at 3-4).  They suggest, that rather than making a charitable donation of any unused Settlement Fund money, the leftover should be distributed to claimants. As the Court noted in its first opinion, *cy pres* provisions are "a feature common to many class action settlements".  (Op. at 28).  The fact that the Settlement has a *cy pres* feature does not make the Settlement unreasonable.

c)      **The Wein objection should be overruled**

Michael Wein filed an objection complaining that the Settlement does not address $19.50 in taxes and other charges on his final bill, in addition to the $150 ETF. (Docket Entry 360) While Mr. Wein may be understandably upset about the additional taxes, there has never been a claim that the taxes were an unlawful charge.  Further, as has been highlighted above, a settlement is necessarily a compromise.  The fact that a settlement cannot provide all the relief that all class members request does not make the settlement inadequate.

## <u>CONCLUSION</u>

For the reasons set forth above, the various objections which have been filed should be overruled.  As is set forth in Class Counsel's Brief in support of final approval of the Settlement, the settlement is fair, reasonable and adequate and should be approved.

CARELLA,  BYRNE,  BAIN,  GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiffs and the Class


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:   October 14, 2009