**PINILISHALPERN, LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: (973) 401-1111
Facsimile: (973) 401-1114
wpinilis@consumerfraudlawyer.com

**LAW OFFICES OF SCOTT A. BURSOR**
Scott A. Bursor
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

*Counsel To Objectors Lina Galleguillos, Michael Moore, and Antranick Harrentsian*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL AND NEXTEL FINANCE COMPANY<br><br>Defendants, | Civ. Act. No. 07-5325 (JLL)<br><br>**GALLEGUILLOS *et al.* APPLICATION FOR ATTORNEYS FEES AND EXPENSES** |

# TABLE OF CONTENTS

Argument .................................................................................................................1
I.  THE LEGAL STANDARD FOR OBJECTORS' FEE
    APPLICATIONS ..........................................................................................1
II. THE GALLEGUILLOS *ET AL.* OBJECTIONS IMPROVED
    THE SETTLEMENT .....................................................................................2
    A.  The Galleguillos *et al.* Objections Improved The Notice
        To The Class ..........................................................................................4
    B.  The Galleguillos *et al.* Objections Prevented The
        Reversion Of $6,374,481.20 Cash To Sprint ....................................4
III. THE *PRUDENTIAL* CALCULATION .......................................................10
Conclusion ...............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                           Page(s)

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005) ........................................................................ 2, 9

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ............................................................................ 2

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................... 1

*In re Prudential Ins. Co. of Am. Sales Practices,*
   273 F.Supp.2d 563 (D.N.J. 2003) ................................................................. 1, 9

**Introduction**

The proposed settlement is not fair, reasonable and adequate and it should not be approved by this Court. *See, e.g.*, 2/6/09 Galleguillos *et al.* Objections To The Proposed Settlement (Docket Nos. 185-187); 10/7/09 Galleguillos *et al.* Objections To The Proposed Settlement (Docket Nos. 369, 370, 373, 378). However, if this settlement is approved, Galleguillos *et al.*'s counsel should be awarded compensation for fees and expenses since their successful objections have improved the terms of the settlement and increased the class's recovery thereunder.

**Argument**

**I.     THE LEGAL STANDARD FOR OBJECTORS' FEE APPLICATIONS**

"While '[a]n objector to a class action settlement is not generally entitled to an award of counsel fees,' objectors are entitled to compensation for attorneys' fees and expenses if the settlement was improved as a result of their efforts." *In re Prudential Ins. Co. of Am. Sales Practices,* 273 F.Supp.2d 563, 565 (D.N.J. 2003) (quoting *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 358 (N.D. Ga. 1993)). For example, "[i]f objectors are successful in challenging an award of attorneys' fees to lead class counsel, their objections have conferred a benefit on the class." *Id.* The Third Circuit Court of Appeals has observed that in evaluating fee requests from objectors' counsel, "the district court has 'broad

discretion' in deciding what fees to award, based on its own evaluation of whether the objector 'assisted the court and enhanced the [class's] recovery.'" *In re Cendant Corp. Sec. Litig.,* 404 F.3d 173, 201 n. 17 (3d Cir. 2005) (quoting *In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 743 (3d Cir. 2001)).

> "[A] court can usually determine whether an objector has improved the class's recovery, and can often measure the amount of that improvement. If the objection is meritorious, it will usually lead to an increase in the settlement, a reallocation of the award among different plaintiffs, or a decrease in the fees paid to lead counsel. The court will thus be able to measure the dollar value of the objector's contribution to the class's net recovery. Furthermore, because the objector makes his objection to the court, rather than merely negotiating with lead counsel, the court can easily evaluate not only the quality of the objector's work but also the impact it had on the court's ultimate decision."

*In re Cendant Corp. Sec. Litig.*, 404 F.3d at 201 n.17.

## II. THE GALLEGUILLOS *ET AL.* OBJECTIONS IMPROVED THE SETTLEMENT

On February 6, 2009, Galleguillos *et al.* submitted a 39-page brief supporting their objection, the first 30 pages of which addressed defects in the settlement notice provided to class members. (Docket Entry No. 186). Galleguillos *et al.* also retained the leading expert in the field of class action notices, Todd B. Hilsee, and submitted a 35-page affidavit by Mr. Hilsee detailing numerous defects in the notice. (Docket Entry No. 187). Galleguillos *et al.* also

2

served several discovery requests and brought motions to compel the settling parties to make discovery. (*See* Docket Entry Nos. 161, 170, 171, 210). In connection with those discovery efforts, Galleguillos *et al.*'s counsel also travelled to Kansas City to take the deposition of Sprint's Vice President, Scott Rice. *See* Docket Entry No. 370-2.

The final approval hearing at which Galleguillos's initial objections were considered spanned four court days and involved extensive presentations of expert testimony, including direct- and cross-examination of Mr. Hilsee and another witness, Alan Vasquez, the expert witness presented by Larson's counsel.

On April 29, 2009, the Court issued a 29-page order sustaining many of the Galleguillos *et al.* objections and denying final approval without prejudice. *See* 4/29/09 Order at 8-10 (Docket No. 326) (sustaining the Galleguillos objection based on the failure to provide individual notice to *Robertson* class members); *id.* at 10-16 (sustaining the Galleguillos objection based on the failure to provide individual notice to other identifiable class members); *id.* at 16-20 (sustaining Galleguillos objection to the contents of the "Bill Insert" sent to 14.8 million Sprint customers). Though there were many objectors, only the Galleguillos objections were sustained. All other objections were overruled or not considered due to the Court's finding that it lacked jurisdiction given the defects in the notice. *See id.* at

28 ("In this case, having found notice to be insufficient, the Court lacks jurisdiction over the absent class members.").

### A. The Galleguillos *et al.* Objections Improved The Notice To The Class

As a result of the Galleguillos objections, the Court ordered the parties to prepare an amended notice plan to provide individual notice to the 14.8 million current subscribers who had received the defective "Bill Insert." *See id.* at 26. The Court also ordered the parties to provide individual notice to members of the *Robertson* class and to undertake additional efforts to identify class members for purposes of providing them with individual notice of the proposed settlement. *See id.* The parties submitted an Amended Notice Plan and provided additional individual notice of the proposed settlement. *See* Docket Entry Nos. 340, 341, 344. Thus, the Galleguillos objection improved the settlement and benefited the class by causing individual notice of the settlement to be provided to more than 15 million class members who otherwise would not have received it.

### B. The Galleguillos *et al.* Objections Prevented The Reversion Of $6,374,481.20 Cash To Sprint

Galleguillos *et al.* also objected to the provision of the settlement agreement that provided for a reversion of cash to Sprint. That provision reads:

> "In the event there remains cash left in the fund after all claim periods have expired, ***the remaining cash will be returned to Sprint Nextel*** and Sprint Nextel shall issue

4

> prepaid calling Personal Identification Numbers valued
> in the amount of the remaining cash, to a charitable
> organization that holds a 501(c)(3) designation or other
> organization or institution to be agreed on by the parties
> (or failing agreement ordered by Judge Linares)."

Settlement Agreement at 23 (emphasis added) (Docket Entry No. 84-2).

According to Sprint's counsel:

> "[I]f there is any money left, it comes back to us, and we
> match it dollar for dollar, dollar for dollar with
> essentially calling cards that are donated to things like to
> the USO …."

March 16, 2009 Hearing Tr. at 87:4-9 (Docket Entry No. 305).

Galleguillos *et al.* were the only objectors that objected to this reversion. Through discovery of the number of claims filed by class members, Galleguillos's counsel were able to calculate that the value of this reversion was more than $6 million:

> "You are going to have about a million dollars max go to
> the class. If these folks [Class Counsel] are successful
> with their fee application, they are going to get about 5.8
> [million dollars]. There is going to be about a million
> dollars in notice and administration expenses, and more
> than 6 million is going to revert to Sprint, so this so-
> called 14 and a half million dollars is really going to be
> about 8.5.
>
> Now what happens then?
>
> Sprint gets the money back, more than $6 million, and
> then Page 23 of the settlement agreement says they are
> going to issue something called personal identification
> numbers valued in the amount of the remaining cash to a

5

> charitable organization for something called prepaid
> calling and personal identification numbers for charity.
>
> So they get the money back, and they give these calling
> cards or whatever they are to charity as some kind of tax
> deduction.
>
> The class doesn't get the money. They [Sprint] get it
> back, and we don't know what these things are. I don't
> think the Court knows what they are.
>
> If the Court does, it is from something other than the
> record in this case, because there has been no explanation
> from the proponents of the settlement what these prepaid
> calling things are, what their value is, how they are going
> to be valued against the cash that's going back to Sprint,
> what the terms of them are, are they going to be good for
> a month or for a year, what is a charity going to do with
> $6 million worth of calling cards – I am calling them
> 'cards.' I don't know if they are even cards."

March 16, 2009 Hearing Tr. at 67:7-68:11 (Docket Entry No. 305).

Without precise figures for the costs of notice and administration, we cannot determine the exact value of the reversion.[1] However, if we assume that $1 million

---

[1] In order to perform a more precise calculation of the value of the reversion, Galleguillos *et al.* require discovery of updated claims data, which was previously requested, *see* 10/7/09 Galleguillos *et al.* Objections To Proposed Settlement at 29 n.11 (Docket Entry No. 378), as well as an accounting of the costs of notice and administration. Galleguillos *et al.* are serving today targeted discovery requests seeking these data, and the undersigned will promptly meet and confer with counsel for Sprint and Larson to try to reach agreement on these discovery requests. If agreement cannot be reached, we intend to bring the issue to the Court's attention at the appropriate time.

6

of the fund is spent on notice and administration, the value of the reversion can be calculated as follows:

### Calculation Of Reversion To Sprint

| | |
|---|---:|
| Total Settlement Fund | $14,000,000.00 |
| Notice And Administration | <u>$1,000,000.00</u> |
| | $13,000,000.00 |
| Class Counsel's Fees & Expenses | <u>$5,946,558.80</u> |
| | $7,053,441.20 |
| Claims Payments to Class Members | <u>$678,960.00</u> |
| **Cash Reversion to Sprint** | **$6,374,481.20** |

As a result of the Galleguillos objection, the Court's April 29, 2009 Order expressed concern over the reversion:

> "[I]n the context of this settlement, the Court is concerned with a provision in which the Defendant retains the remaining cash and offers prepaid calling cards as an alternative. While this Opinion does not address the reasonableness of the settlement, the Court simply highlights its concern with the provision outlined above and asks the parties to be prepared to argue for its merits should it remain in the settlement agreement."

4/29/09 Order at 28 (Docket Entry No. 321).

The parties, however, were unable to argue for the merits of the reversion. Instead, during the evening of October 6, 2009, one day before Galleguillos *et*

*al.*'s second objection was due to be filed, the parties submitted a stipulation stating:

> "The parties agree, subject to the Court's discretion and approval, that if any money remains in the Common Fund after the expiration of the Claim Period, that money would be used: (a) to purchase prepaid long distance calling cards to be donated to a charitable organization for a charitable purpose (since the Settlement Agreement was first signed, the parties have agreed that these prepaid calling cards would be donated to the U.S. Military for use by members of the armed forces and their families); or (b) in any other appropriate manner the Court directs. It is not the intent of the parties that this *cy pres* provision would work as a reverter or result in any portion of the Common Fund being returned to Sprint."

10/6/09 Joint Stipulation Regarding The Cy Pres Terms Of Settlement Agreement, ¶ 2 (Docket Entry No. 367). Despite the last sentence of the foregoing quote, concerning the parties' purported "intent," it certainly *was* their intent that the agreement would provide a cash reversion to Sprint. That is exactly what the language of the Settlement Agreement says. *See* Settlement Agreement at 23 (emphasis added) (Docket Entry No. 84-2) ("In the event there remains cash left in the fund after all claim periods have expired, ***the remaining cash will be returned to Sprint Nextel*** ...") (emphasis added). And that is exactly what Sprint's lawyer said at the final approval hearing. *See* March 16, 2009 Hearing Tr. at 87:4-9 (Docket Entry No. 305) ("***[I]f there is any money left, it comes back to us*** ….") (emphasis added). It was only after the Galleguillos objectors caught them with

8

their hands in the proverbial cookie jar that the parties filed a Stipulation with the Court claiming that they did not have any "intent" to return the money to Sprint. In any event, it now appears clear that the Galleguillos objection to this reversion will be sustained, since the parties are completely unable to defend its merits – and the value of the settlement will be increased by approximately $6,374,481.20 as a result of the Galleguillos objection.

This increase in the value of the settlement is not mere speculation. Based on the Sprint ETF Settlement Categorical Breakdown Of Claims Received as of March 6, 2009, attached as Appendix C to the 10/7/09 Galleguillos *et al.* Objections to the Proposed Settlement, we know that only $678,960 worth of claims had been submitted by class members at that point. Thus, the value of the reversion could be calculated by subtracting the amount of those claims, as well as the costs of notice and administration and attorneys' fees from the $14 million fund. If the settlement had been approved as initially submitted, more than $6.3 million in cash would have reverted to Sprint. The success of the Galleguillos *et al.* objection is the only reason that did not happen. We acknowledge that the claims period would have remained open through January 1, 2011 under the terms of the settlement, thus there may have theoretically been additional claims filed. However, the notice to the class was completed in January 2009 and, but for the success of the Galleguillos *et al.* objections, no further notice would have been

9

provided. Without any further notice, there is no reason to believe that additional claims would have been filed beyond those that were already filed as of March 6, 2009. To the extent that the additional notices issued as a result of the Galleguillos objection generated additional claims and thereby reduced the value of the reversion, the Galleguillos objection is also responsible for that increased value. In any event, with a proper accounting of the disbursements from the settlement fund and the anticipated costs of notice and administration, the value added to the settlement as a result of the Galleguillos objection to the reversion is readily calculable. *See supra* footnote 1.

## III. THE *PRUDENTIAL* CALCULATION

*In re Cendant Corp. Sec. Litig.* states that an objectors' fee request should be evaluated based on a measurement of the amount by which the objector improved the class's recovery. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d at 201 n.17. In *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 103 Fed. Appx. 695 (3d Cir. 2004), the district court performed that calculation by comparing the amount by which the settlement was improved to the total settlement fund, and awarded the objectors' counsel a proportionate percentage of the total attorneys fees:

> "The District Court granted Objectors fees in the amount of $1,260,000.00. This number was derived as follows. The District Court accepted Objectors' contention that they contributed approximately $56 million to the settlement. The District Court explained that this number

10

> constituted approximately 1.4% of the overall value of the approximately $4 billion settlement fund. Accordingly, the District Court awarded to Objectors' counsel 1.4% of the Class Counsel's $90 million fee award or $1.26 million."

*Id.* at 697. The Third Circuit affirmed that calculation. *See id.* at 698.

Insofar at the Galleguillos objectors eliminated the cash reversion to Sprint, the *Prudential* calculation should be applied here as follows:

### *Prudential* Calculation Of Objectors Attorneys' Fees (Based On Reversion Only)

| | | |
|---|---|---|
| Objection Benefit | | $6,374,481.20 |
| Total Fund | | $14,000,000.00 |
| | | |
| *Prudential* Ratio | | 0.455 |
| Total Attorneys Fees | x | $5,700,000.00 |
| **Objectors' Attorneys Fees** | | **$2,595,324.49** |

This calculation, however, is based solely on the benefit to the class from eliminating the cash reversion. As explained above, the Galleguillos objectors also maintained a successful objection to the notice which resulted in more than 15 million class members receiving individual notice of the settlement, when they otherwise would have received none. That is also an improvement to the settlement for which Galleguillos counsel should be compensated. However, it is difficult to calculate the cash value of that improvement. Arguably, without a proper notice, none of the settlement benefits could be realized, since the settlement could not be approved without first providing adequate notice to the

11

class. On this theory, Galleguillos counsel would be entitled to a fee based on the entire value of the settlement. Alternatively, there may be other methods for the Court to estimate the value of this benefit to the class and to calculate fair compensation for Galleguillos *et al.*'s counsel. One alternate approach would be to apply a lodestar-and-multiplier analysis based on the hours worked as reported by counsel in the declarations submitted herewith. Galleguillos *et al.* reserve the right to present a lodestar-and-multiplier calculation, or alternate valuations based on additional discovery or other developments in the case.

## Conclusion

The proposed settlement is not fair, reasonable and adequate and it should not be approved. However, if it is approved, Galleguillos *et al.*'s counsel should be awarded fees and expenses consistent with the *Prudential* calculation.

Dated: October 14, 2009.

**PINILISHALPERN, LLP**

By: */s/ William J. Pinilis*

William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: (973) 401-1111
Facsimile: (973) 401-1114
wpinilis@consumerfraudlawyer.com

**LAW OFFICES OF SCOTT A. BURSOR**
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Anthony Vozzolo
369 Lexington Ave., 10th Floor
New York, NY 10017-6531
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
nfaruqi@faruqilaw.com
avozzolo@faruqilaw.com

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (*pro hac vice*)
L. Timothy Fisher
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
ltfisher@bramsonplutzik.com

*Counsel To Objectors Lina Galleguillos, Michael Moore, and Antranick Harrentsian*