**PINILISHALPERN, LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: (973) 401-1111
Facsimile: (973) 401-1114
wpinilis@consumerfraudlawyer.com

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (*pro hac vice*)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated, | Civ. Act. No. 07-5325 (JLL) |
| Plaintiffs, | |
| v. | **SUPPLEMENTAL DECLARATION OF ALAN R. PLUTZIK OF BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP IN SUPPORT OF JOINT MOTION FOR AWARD OF ATTORNEY'S FEES AND NONTAXABLE COSTS RELATED TO THE *AYYAD*, *ROBERTSON*, *MOLFETAS*, AND *LEE* ACTIONS** |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL AND NEXTEL FINANCE COMPANY | |
| Defendants, | |

I, Alan R. Plutzik, declare under penalty of perjury as follows:

1.     I am an attorney licensed to practice in the State of California. I have been admitted to appear in this action *pro hac vice*. I am a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP ("BPMB"). I submit this supplemental Declaration in support of the Joint Motion for an Award of Attorney's Fees and Nontaxable Costs Related to the *Ayyad*, *Robertson*, *Molfetas*, and *Lee* Actions,[1] and, more specifically, in support of BPMB's application for an award of attorneys' fees, costs and expenses. This Declaration will supplement the Declaration I filed with the Court on March 3, 2009 (hereinafter referred to as my "3/3/09 Decl."). I have personal knowledge of the statements contained in this Declaration and if called to testify, I could and would testify competently to them.

## A.     The Cellphone Industry's Withdrawal of Its Petition for Declaratory Ruling

2.     In my  3/3/09 Declaration, I described a Petition for Declaratory Ruling filed in 2005 by the cellphone carriers' trade association, CTIA, at the Federal Communications Commission, seeking a ruling that all state-law claims challenging cellphone companies' early termination fees ("ETFs") were preempted

---

[1] The counsel who seek an award of fees and nontaxable costs in the Joint Motion are:  BPMB, Law Offices of Scott A. Bursor, Franklin & Franklin, Faruqi & Faruqi, LLP, Gilman and Pastor, LLP, Law Offices of Anthony A. Ferrigno, Reich Radcliffe & Kuttler, LLP, Law Offices of Carl Hilliard, Mager & Goldstein, Law Offices of Joshua Davis and Cuneo Gilbert & LaDuca, L.L.P.

by federal law.  I also described the work performed and the expenses incurred by

BPMB and its co-counsel to try to defeat this industry initiative, and informed the

Court that the FCC, as of the date of my declaration, had not granted the industry's

Petition.  On June 16, 2009, CTIA *withdrew* its Petition for Declaratory Ruling.

CTIA *Notice of Withdrawal*, FCC WT Docket No. 05-194, filed June 16, 2009.

That is a major triumph for cellphone consumers nationwide.  Had the FCC ruled

in CTIA's favor, there would have been no settlement of ETF claims in this Court

or any other court – those claims would have been extinguished.  That it did not is

directly attributable to the determined efforts  by BPMB and other counsel in the

*Ayyad*, *Robertson*, *Molfetas* and *Lee* actions.

      **B.**     **The Effect of the California ETF Litigation Against Sprint and Nextel on My Law Firm**

      3.     The *Ayyad* and *Robertson* cases required a sustained commitment of

time, effort and financial resources by my firm.  The time and expense of the

litigation imposed a heavy burden on my firm and precluded other employment to

a significant extent.  Beginning in 2003, two of the firm's attorneys, Timothy

Fisher and myself, have devoted a very significant percentage of our time to the

litigation of the California ETF claims, including those against Sprint and Nextel.

Although Mr. Fisher and I have been the lawyers chiefly responsible for my firm's

day-to-day effort, the magnitude of the work involved has required every other

BPMB lawyer to contribute time and work to the litigation.  At times, there were

2

three or more of the six BPMB lawyers working on the case at the same time. This litigation was so demanding of our time and attention that it precluded us from becoming involved in many other potential cases – cases in which we would have had good prospects for success. Often, potential business opportunities were presented to me that I did not have time even to review and evaluate in light of the unrelenting demands of this litigation.

4.    The litigation was not only time-consuming but very expensive. Especially during the pretrial and trial period, my firm was repeatedly called on to write checks for tens or scores of thousands of dollars to defray litigation costs. Not infrequently, the firm had to borrow the money from a bank or resort to the personal assets of the firm's partners to make those payments. We undertook to do the necessary work and bear the necessary litigation expenses because in our judgment, our ethical duties left us with no alternative but to do whatever was necessary to obtain a favorable result for the classes we represent.

**C.    Failing to Pay Fair and Adequate Attorneys' Fees to My Firm and Its Co-Counsel Appropriately Would Be Unfair and Would Send an Unfortunate Message**

5.    Plaintiff Larson's counsel argued at the first final approval hearing in this matter that my firm is not entitled to be compensated fully for its work, its achievements or the risks we undertook because the settlement was achieved in *this* action, not in the California action in which my firm performed the lion's share

of its work. In the case of *Milliron v. T-Mobile USA, Inc.*, D.N.J. Case No. 08-4149 (JLL) (ES), this Court heeded a similar argument by the same counsel and awarded attorneys' fees to counsel in the California ETF case against T-Mobile, including my firm, that equaled only about 18 cents on the dollar of our reported lodestar, while rewarding Plaintiff Milliron's counsel with a multiplier of nearly 2.0 over their lodestar. The Court made that award even though it acknowledged in its Order that the time reported by Freed & Weiss, one of the three firms representing Milliron, was excessive and suspect. Under that Order, James Cecchi of Carella Byrne was paid at an hourly rate of nearly $1,500 per hour for his time, while I was compensated for my work at only a little more than $100 per hour. The Court should not divide the fees in this case as it did in *Milliron*.

6. First, if the Court were to enter a fee order in this case similar to its Order in *Milliron*, that order would act as a strong disincentive to my firm and other conscientious plaintiffs' class action firms to take on cases of this sort in the future. Nobody would take the risks we took or devote such an enormous amount of time and effort to the litigation, knowing that counsel who did no significant work could appropriate the lion's share of the fees, leaving us with fees equal to only 18 cents on the dollar of their lodestar. To do so would be economic suicide. Indeed, if the *Milliron* decision is adopted widely, no rational person – not even the Carella Byrne firm itself – would even *file* a not-yet-litigated class action case,

4

knowing that other counsel can settle the case out from him and appropriate the lion's share of the fees he has earned.

7.     Dividing fees in this case as the Court did in *Milliron* would have a devastating and punitive effect on my firm. Our time and work are our stock in trade. To be compensated at only 18 cents on the dollar of lodestar after five and one-half years of arduous litigation, while other counsel who did not do the work, make the investment or take the risk are paid at a premium on their time, is, to put it mildly, not a sustainable business model for my firm or other similar firms. We prosecuted the cases vigorously, even though our prospects for success were at all times uncertain and fraught with risk. The Court should reward, not punish, counsel who brought and litigated cases in good faith for the benefit of consumers.

8.     Allocating fees here in the manner in which they were divided in *Milliron* would also have the untoward effect of encouraging and rewarding the kind of poaching engaged in by Freed & Weiss, Carella Byrne and Seeger Weiss in the *Milliron* case and by those very same counsel in this case. If there had been any doubt about the incentives this Court's order in *Milliron* would create, it was dispelled five days after that Order was entered, when the very same lawyers – Freed & Weiss, Carella Byrne and Seeger Weiss – filed a motion for preliminary approval of yet another nationwide settlement of ETF claims in this action, this time against defendants AT&T Mobility aka Cingular Wireless. In a repetition of

the same pattern established by the *Larson* and *Milliron* settlements, AT&T
Wireless and Cingular have entered into a nationwide settlement in this Court
which they claim will extinguish the ETF claims pending against them in
California.  My firm and its co-counsel were appointed by the California Court to
serve as Class Counsel for a California class asserting ETF claims against Cingular
and its legacy company AT&T Wireless, and have been litigating against both
defendants for more than six years.  Nevertheless, the defendants bypassed us and
went to the Freed, Carella and Seeger firms, who had conducted no significant
litigation and knew little about the claims, to settle the litigation against them.

   8.  The bottom-line fee numbers that would result from the application of
the *Milliron* principle across the board are dramatic and disproportionate.  In this
case and *Milliron*, Freed & Weiss, Carella Byrne and Seeger Weiss have entered
into nationwide settlements that they contend will, if approved, extinguish ETF
litigation against *five of the six* defendants against whom Plaintiffs' California ETF
Counsel have been litigating in Alameda County Superior Court since 2003 –
Sprint (California Subscriber Class), Nextel, T-Mobile, AT&T Wireless and
Cingular.  Each of those settlements purports to release, and was designed by the
defendants to release, California claims.  The Court awarded the Freed, Carella and
Seeger firms and their co-counsel 84% of the fees in *Milliron*, or $3.78 million,
and granted only 16%, or $0.72 million, to Plaintiffs' California ETF Counsel

whose lodestar significantly exceeded the lodestar of the Freed, Carella and Seeger firms and their co-counsel. If the Court were to divide fees in connection with the settlements with Sprint, Nextel, AT&T Wireless and Cingular according to the same proportions that it did in *Milliron*, they would be paid as set forth in the following chart:

| Settling Defdt. | Total Fees Requested | Fees to Counsel in this Court | California Pltffs' Fees |
|---|---|---|---|
| T-Mobile | $4.5 million | $3.78 million | $0.72 million |
| Sprint & Nextel | $5.75 million | $4.83 million | $0.92 million |
| AT&T/Cingular | $6 million | $5.04 million | $0.96 million |
| Total | $16.25 million | $13.63 million | $2.26 million |

9.     In sum, if the Court follows the *Milliron* model, the Freed, Carella and Seeger firms and their allies will receive *more than $13.6 million* for settling cases against five defendants against whom they conducted no substantial litigation, incurred no significant expenses and took no risks, on claims as to which they never acquired any knowledge of the evidence against any defendant and never had occasion to litigate the applicable legal principles – claims with respect to which, unlike California counsel, they:

- did not litigate even a single motion to dismiss brought by any of these five defendants;

- never defended a motion for summary judgment;

- did not take or defend a single deposition;

7

- did not engage any expert witnesses;

- did not propound or respond to any document requests, interrogatories or other written discovery;

- never litigated any motions to compel;

- did not file or litigate a class certification motion against any of the defendants;

- never had to litigate or pay for notice to the class;

- never located, interviewed, prepared, cross-examined or defended any witnesses;

- never marshaled the documentary evidence or addressed any questions about its admissibility;

- never drafted any jury instructions;

- never brought or responded to any motions in limine;

- never planned or conducted a trial; and

- never even asserted any claims against Nextel prior to signing the settlement agreement.

10.     If the Court adopts the *Milliron* model, counsel in the California litigation will receive less than one-sixth the amount of the Freed firm and its allies, despite having performed far greater, far more difficult and risky, and far more effective, work.  They will receive a mere tiny fraction of the lodestar that

reflects their hard work over more than five grueling years, while the members of the Freed group are rewarded with a positive multiplier over their highly suspect lodestar even though they barely conducted any litigation, took no risks and did not suffer any delay in payment. Not only were their efforts in court prior to settlement essentially non-existent, but they did not perform any work to help fight the FCC proceeding that hung like a sword of Damocles over the ETF litigation from February, 2005 onwards – a proceeding that Plaintiffs' California ETF Counsel defeated by dint of sustained, tenacious effort.

11.    In my 3/3/09 Declaration, I reported to the Court the following lodestar figures:

| Case | Professional Hours | Lodestar | Expenses |
|------|-------------------|----------|----------|
| *Robertson v. Nextel* | 1,101.35 | $532,148.75 | $33,379.66 |
| *Cal. Sprint Subscriber Class* | 872.70 | 447,758.00 | 23,197.55 |
| *Molfetas v. Sprint* | 4.75 | 2,826.25 | 48.00 |
| *Lee v. Sprint* | 33.40 | 18,415.50 | 916.36 |
| TOTALS | 2,012.20 | $1,001,148.50 | $57,541.57 |

Upon further review of the records underlying those figures, 54.50 of the professional hours reported in my 3/3/09 Declaration, corresponding to lodestar of $19,694.50, and $5,141.80 of the expenses reported in my 3/3/09 Declaration, were attributable to my firm's work in connection with the objection to the settlement by

9

class members Galleguillos *et al.*  Compensation for those hours is being sought in the objectors' fee application that is being filed today.  Accordingly, the time, lodestar and expense figures reported in my 3/3/09 Declaration should be correspondingly reduced for purposes of the fee application related to the *Ayyad, Robertson, Molfetas* and *Lee* cases.  In addition, I noticed a clerical error that resulted in 2.1 hours, reflecting lodestar of $1,039.50, being erroneously added to one of my firm's time entries.  In light of those modifications, the total time, lodestar and expenses for which my firm seeks compensation in connection with the *Ayyad, Robertson, Molfetas* and *Lee* cases is as follows:

| Professional Hours | Lodestar | Expenses |
|---|---|---|
| 1955.60 | $980,414.50 | $52,399.77 |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this Declaration was executed at Walnut Creek, California this 14th day of October, 2009.

/s/
Alan R. Plutzik

10