# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated, ) ) ) ) ) | Civil Action No. 07-05325(JLL) |
| Plaintiffs, ) | |
| v. ) | |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL, and NEXTEL FINANCE COMPANY ) ) ) ) ) ) | |
| Defendants ) | |

## OBJECTOR JESSICA HALL'S OPPOSITION TO CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES

Bradley M. Lakin #6243318
**LAKIN CHAPMAN LLC**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095
(618) 254-1127

Phillip A. Bock
**BOCK & HATCH, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60603
Telephone: 312-658-5500

Anthony L. Coviello
**LAW OFFICE OF**
**ANTHONY L. COVIELLO LLC**
307 Montgomery Street
Bloomfield, NJ 07003
(973) 748-4600

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

# **INTRODUCTION**

*Larson* class counsel performed poorly while representing the settlement class. The unrebutted record in this case shows that Hall class counsel refused to settle this case *unless* their attorneys fees would be paid *on top of* the recovery gained for the class. However, *Larson* class counsel are asking this court to *take away* nearly $6 million from the class greatly enriching themselves while severely diminishing the paltry recovery they negotiated for the class in a reverse auction. Indeed, the massive attorney fee request made by *Larson* counsel is a direct product of the reverse auction and a palpable "race-to-the-bottom." This unfortunate concept has been clearly articulated by Professor Issacharoff, a leading class action professorial sage:

> "[T]he failure to insist on truly adversarial relations between the parties creates the perfect medium for the creation of a reverse auction -- a process in which the claims of the class will be sold to the lowest bidder. Without some threat of a trial in some forum on behalf of the individuals comprising the class, however remote the possibility may in fact be, there is nothing to impede the "settlement" of claims … This is the familiar practice in class action law of negotiating a broad release to accompany the final decree. There is a strong pressure toward a race to the bottom when lawyers are negotiating to close out claims that they did not have any control over in the first place. Any fee generated from a low-value settlement is better than the prospect of no fee in the event that there is no settlement. Since multiple actions may be-and often are-brought over the same general course of conduct, a defendant may play the rival class counsel off against each other seeking to extract the broadest release at the lowest price.

Samuel Issacharoff, Governance and Legitimacy In The Law of Class Actions, 1999 Sup. Ct. Rev. 337, 388 (1999).

Here, *Larson* class counsel posed absolutely no threat to Sprint. Even a cursory review of the docket before this case was preliminarily approved for settlement shows that very little work had been performed and no class was certified. *Larson* class counsel: (1) serve any discovery requests; (2) brief class certification; (3) take any

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

depositions; (4) retain class certification or merits experts; or (5) litigate any motion related to the merits of the claims. This Court had not even yet ruled upon Sprint's Motion to Compel Arbitration. Sprint never even answered the complaint here.

Simply put, *Larson* class counsel had everything to gain and nothing to lose. They agreed to release $3 billion in claims for *less than half a penny* on the dollar and now they ask this Court to reward them with nearly $6 million in windfall attorney's fees supported with lodestar from work in other cases. They performed little work in the *Larson* case other than settling and defending the settlement against objecting class members. Indeed, *Larson* counsel have now become "settlement magnets" for the entire cell phone industry.

Conversely, nationwide class certification was affirmed on appeal in the *Hall* case and the case had just returned from denial of Sprint's petition for certiorari to the U.S. Supreme Court. That meant Sprint faced a class-wide merits determination before a jury in Madison County, Illinois. Fearing that, Sprint convinced *Larson* class counsel to settle for next to nothing to the class and a mountain of attorneys' fees. The *Larson* lawyers, realizing that their payday hopes hinged on settling the claims in *Hall*, were happy to snatch defeat from the jaws of victory in exchange for attorneys' fees. Their minimal pre-settlement work did not force Sprint to the settlement table. Sprint was looking for the easiest settlement and they found it. *Larson* class counsel does not deserve a fee equal to 33% of the small fund they negotiated.

The Court should reject *Larson* class counsel's fee request because the fees were not earned in this case. Also, the fee petition is not supported by adequate documentation, and it appears grossly excessive based on the minimal documentation

provided. Finally, *Larson* class counsel (specifically, Freed & Weiss LLC) has based their fee petition upon hours of time purportedly billed in the *Hall* case. The Appellate Court has held that the district court acts as fiduciary for the absent class members when it scrutinizes a proposed class settlement. Here, most class members were not notified about the settlement and most will get nothing. Rather than rewarding their behavior, the Court—if it chooses to approve the settlement over Hall's objections—should greatly reduce the percentage it awards, or reject *Larson* class counsel's fee request altogether.

## GOVERNING LEGAL STANDARD

*Larson* class counsel request $5,775,000 in fees plus an additional $256,115.91 in alleged but undocumented expenses that are not allowed as per the Settlement Agreement drafted by *Larson* class counsel. This case proves the rule that "[t]he determination of attorneys' fees in class action settlements is fraught with the potential for a conflict of interest between the class and class counsel." *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 307 (3d Cir. 2005).

The Appellate Court has strongly cautioned against "free riding" by class action counsel, as has occurred here. "Allowing [class] counsel to receive fees based on the benefits created by [others] would undermine the equitable principles which underlie the concept of the common fund, and would create an incentive for plaintiffs attorneys to 'minimize the costs of failure ... by free riding on the … efforts of others." *In re Prudential Ins. Co. of Am.*, 148 F.3d 283, 337-38 (3d Cir. 1998). It "important to consider: … the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups…." *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Here, the *Larson* group merely pulled in the *Hall* case and

4

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

settled it here to protect Sprint from a nationwide merits determination in Illinois.

When analyzing a fee award in a common fund case, a district court considers: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *In re AT&T Corp.*, 455 F.3d at 165 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 195 n.1 (3d Cir. 2000)). Additionally, three other factors "may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups …; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement." *Id.* (citing *In re Prudential Ins. Co. of Am.*, 148 F.3d 283, 338-40 (3d Cir. 1998).

"[W]hat is important is that the district court evaluate what class counsel actually did and how it benefitted the class." *Id.* at 165-66 (citing *Prudential*, 148 F.3d at 342). The district court has a "duty to act as 'a fiduciary guarding the rights of absent class members.'" *Id.* at 169. Here, acting as a fiduciary guarding the class, the Court undoubtedly will come to the conclusion that *Larson* class counsel do not deserve the fees they request.

5

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

## ARGUMENT

**A.     *Larson* Class Counsel Should Not Reap The Benefits of the Reverse Auction.**

The unrebutted record in this case shows that Hall class counsel refused to settle this case *unless* their attorneys' fees would be paid *on top of* the recovery gained for the class. *See* Doc. 368 and 368-2. Sprint's counsel, Fred Klein, did not deny this truth. *See* Doc. 389. However, in sharp contrast, *Larson* class counsel ask this court to allow them to *take away* nearly $6 million from the class to keep for themselves. *Larson* class counsel also allowed notice costs to be deducted directly from the class benefit costing the class an additional $1.5-$2 million. This Court should not reward such parasitic behavior (by *Larson* class counsel or Sprint).

**B.     *Larson* Class Counsel Should Not Be Rewarded For "Free Riding."**

*Larson* class counsel did not: (1) serve a single discovery request, (2) brief or win a contested class certification ruling, (3) take any depositions; (4) retain merits experts; or (5) litigate a single motion related to the merits of the claims. *See e.g.* Doc. 161 ("Class Counsel stipulates that no discovery requests were served in the present litigation…."). The Court had not decided Sprint's Motion to Compel Arbitration and Sprint never answered the complaint. *Larson* class counsel admit that their settlement negotiations and decision were based upon work performed by others in this case that hadn't even gotten off the ground.

Nevertheless, *Larson* class counsel wish to be paid as if they did all the work. On several occasions, the Third Circuit has specifically rejected such efforts. In a case cited by *Larson* class counsel, the Appellate Court held "that the District Court abused its discretion in granting a 5.7% attorneys' fee award" where, as here, most of the work

6

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

enabling the settlement was performed by others. *In re Cendant Corporation Prides Litigation*, 243 F.3d 722, 741 (3d Cir. 2001). The Third Circuit has "warned [district courts] … against overemphasizing [class] counsel's role in recovery…." *Id.*; *See also In re Prudential*, 148 F.3d at 337-38.

Here, as the Appellate Court has cautioned, the Court must be careful not to ignore the efforts of others that forced Sprint to the settlement table and greatly facilitated the class action settlement here. The Court must not simply assume that because *Larson* class counsel settled the case they should be paid as if they did all the work.

Indeed, *Larson* class counsel performed no substantive discovery or other work here, and obtained a settlement-only class certification as opposed to the nationwide litigation class achieved in *Hall*. Further, because *Larson* class counsel merely relied on the work product of others, it is self evident that they are the weaker free-riding counsel. In economics, collective bargaining, and class action plaintiff's work, "free riders" are those who consume more than their fair share of a resource, or shoulder less than a fair share of the costs of its production. Here, *Larson* class counsel performed literally none of the work on behalf of the class, yet purport to be its champion while claiming most of the class's "reward" here in fees. Parasitic behavior should be condemned, not rewarded with a 33% fee award.

**B.     Under the Circumstances Presented, A 33% Fee Request Is Grossly Exorbitant.**

*Larson* class counsel request a 33% fee award based on an alleged $17.5 million class benefit (14 million cash and 3.5 million other compensation), for a total award of $5.775 million. (Doc. 383, p. 5). *Larson* class counsel state that 33% fee requests are "commonly awarded" by the Third Circuit. *Id.* at 11. Nearly all the cases cited by

7

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

*Larson* class counsel are factually dissimilar in that they involved one or several more of the following factors: (1) significantly higher percentage recoveries to the class; (2) more substantive work; (3) more discovery conducted; (4) more motion practice; (5) more time spent in actual litigation as opposed to mere settlement; (6) more hours expended; (7) expert work regarding the merits; (8) numerous depositions; and (9) there was no evidence of free-riding. *See, e.g., In re Electrical Carbon Products Antitrust Litigation*, 447 F. Supp. 2d 389, 400, 409-410 D.N.J. 2006) (26% fee awarded where case was litigated extensively including extensive discovery and expert work with lodestar hours totaling 17,299 hours worked, nearly three times as much as the inflated and duplicative hours claimed in the instant case); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 148- (E.D. Pa. 2000) (litigation lasted over two years with "a multitude of discovery problems" with continuous court involvement, novel legal theories and RICO claims, significant and continuous briefing including, "motions to dismiss, class certification motions, a multitude of discovery motions, [and] many oral arguments…."); *In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 429 (E.D. Pa. 2001) ($1.8 million fee award where counsel recovered $48 million for the class and "plaintiffs' counsel … expended 38,774 hours and advanced $1.85 million in expenses over a six year period." … "[T]he proffered settlement was reached after six years of intense and thorough discovery which included, *inter alia,* production of over 100,000 pages of documents and approximately 60 depositions, as well as consultation with and cross examination of expert witnesses. Counsel had engaged in significant motion practice."); *In re Unisys Corp. Sec. Litig.*, No. 99-5333, 2001 WL 1563721, *3 (E.D. Pa. Dec. 6, 2001) (class counsel paid equivalent of $66 per hour worked with fee request of $572,677 and 8,700

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

hours of lodestar where "Plaintiffs' counsel received, reviewed and analyzed over one million pages of Unisys' documents, briefed and successfully argued against a substantial Motion to Dismiss and several discovery motions."); *Ratner v. Bennett*, No. CIV.A.92-4701, 1996 WL 243645, *6, *9 (E.D. Pa. May 8, 1996) ($152,000 fee awarded in case where "class counsel had expended more than 1,400 hours litigating this action" or $109 per hour – lodestar incurred was nearly twice the percentage fee requested). Other cases are factually undeveloped or not helpful to the court's analysis here. *In re Valuevision International Inc. Sec. Litig.*, 957 F.Supp. 699 (E.D. Pa. 1997). Still other cases involved much smaller fee awards or lodestar exceeded the percentage recovery requested. *In re Equimed, Inc. No. Sec. Litig.*, No. 98-CV-5374, 2003 WL 735099 (E.D. Pa. Mar. 3, 2003); *Blackman v. O'Brien Environmental Energy, Inc.*, No. Civ.A.94-5686, 1999 WL 397389 (E.D. Pa. May 12, 1999).

Thus, even the cases cited by *Larson* class counsel do not support a 33% fee award in this case. Instead, many of the cases they cite prove that a very small percentage award is warranted where, as here, most of the work enabling the settlement was performed by others. *In re Cendant Corporation Prides Litigation*, 243 F.3d 722, 741 (3d Cir. 2001) (Third Circuit rejected a 5.7% fee award under similar circumstances).

Further, most of the relevant factors show the attorney fee percentage in this case, if awarded at all, should be quite small. First, the size of the fund created is very small in relation to the $3 billion in potential damages being released. The settlement amounts to substantially less than a penny on the dollar. (If Sprint offered *Larson* counsel pennies for attorneys' fees, surely they would have rejected it.) Further, the number of persons benefitted is also quite small because most of the class was notified only by publication,

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

rather than direct mail as the rules require. It is unknown how many class members will actually submit a claim form, but Hall believes the claims rate will be extremely low.

Second, although the presence or absence of substantial objections by members of the class to the settlement terms (and/or fees requested by counsel) are small, that is likely due to the fact that most of the 20 million class members received no notice. The short form of notice—presumably the publication notice—does not notify the class about the fact that attorneys fees will come out of the class's recovery, or inform the class that class counsel would seek more than 1/3 of the class recovery for themselves. This is another reason why the notice is inadequate. It is not surprising that more class members did not object to the fees when the class notice apparently did not tell them about the fees.

Third, the skill and efficiency of the attorneys involved appears quite weak. Other than settling the case, as discussed above, *Larson* class counsel has performed very little work. Fourth, this litigation has not been complex or long. Fifth, the risk of nonpayment here was quite low. Because *Larson* class counsel did almost no work, their risk was low too.

In the *In re AT&T Corp.* case, the Appellate Court affirmed the award of a 21.25% fee in a case where the settlement amount "represent[ed] approximately 25% recovery" to the class. *Id.*, 455 F.3d at 170. Here, the class gets less than a 1% recovery (and then only to the few class members who received the notice and submit a claim). *In re AT&T Corp.* found support for the settlement in "the number of pre-trial motions class counsel litigated, the extent of discovery, and the two weeks of trial" and the Appellate Court quoted the district court's observation that the case had been "vigorously litigated for over four years," so class counsel had "a thorough and exhaustive appreciation for the

10

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

merits of the case prior to settlement." *Id.* at 167, 171.  Here, *Larson* class counsel expect a bigger percentage for far less work and for a defeatist settlement.

**C.     The Fee Request Is Unsupported By Adequate Documentation and the Minimal Documentation Provided Strongly Suggests That the Fee Request Is Inflated or Unsupported.**

Red flags abound here.  This Court has recently tossed out lodestar claimed by Freed & Weiss, calling the request "mind boggling" while further stating that "[t]he Declaration of Paul M. Weiss in support of this figure is chalk full of question marks. [citation omitted]  He claims to have taken primary responsibility for the uploading and reviewing of over 140,000 documents produced by T-Mobile *after* preliminary approval of the settlement. … given the timeline of this case and the fact that the other cases mentioned by Weiss appear to have had no major activity, his claim of $700,000 in lodestar is facially untenable. … Having found the Weiss Declaration facially untenable, the Court strikes his associated $40,572.48 request for expenses.  The questions arising from his Declaration call into question the veracity of the entire request and therefore the Court cannot grant his request for over $40,000 in expenses."  *See Milliron v. T-Mobile USA, INC.*, Civil Action No. 08-4149 (JLL), Opinion and Order, pp. 21-22, 38-39 (attached hereto as Exhibit A).

Hall has previously disclosed similar questionable statements by Paul M. Weiss, in a similar cell phone early termination case that he believed was about to settle:

> "Hey, look at your e-mail this morning [unintelligible] ah, and it's in about an hour [unintelligible mumble] Verizon looks like it is settling.  O.K.? The ECF case. There's a mediation in San Francisco that we are going to Monday.  There's a [pause] there's a mediation statement that's been floating around.  I'm sending back my comments this morning. You're not on the e-mail chain I just realized.  So will you try to take a quick look at this? Get some comments?  **We've got to start [expletive] putting in a [expletive ] load of time in the case dude!  O.K.?** So I wanted to talk to you.  Will you call me this morning on Verizon? O.K.  I want to try to

11

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

> position us. Ummmmm and if you want to come to San Francisco get your [expletive] a [expletive] ticket and come to San Francisco too. We're flying out Sunday, all day mediation Monday, Lerach's firm, everybody's involved and I'm trying to push our way in and I think I've got a good rapport with the Lerach lawyer who I've done some cases with ummm ………."

Doc. 256, p. 12, n. 2 (Voice-mail from attorney Paul M. Weiss left for attorney Phillip A. Bock at 9 a.m. on December 14, 2006) (emphasis added).

With all these red flags arising, this case cries out for sunshine and a special master to thoroughly vet the claimed *Larson* attorney's lodestar. However, Objectors have not had access to information about the *Larson* attorneys' hours claimed. As Judge Posner has explained, concealing fees information "paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002).[1]

First, the only documentation supporting the various firms fee requests are contained in declarations as exhibits. (*e.g.* Doc. 383-6, Declaration of Paul M. Weiss). It is well-established that "documentation offered in support of the hours must be of sufficient detail and probative value to enable the court to determine with a high degree

---

[1] The fee request actually encompasses eight different law firms. Aside from a reference to the various actions litigated by the non-Larson counsel, class counsel's only explanation as to why these other firms are entitled to fees in this case is that they did not object to the settlement. Nor does *Larson* class counsel explain how any award would be distributed among the various firms. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 226 (2d Cir. 1987) (holding that, in class actions, "counsel must inform the court of the existence of a fees sharing agreement at the time it is formulate," to "diminish many of the dangers posed to the rights of the class"). "A sunshine rule is essential to protect the interests of the public, the class and the honor of the legal profession." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1452, 1454 (E.D.N.Y. 1985)(Weinstein, J.) ("fee arrangements among attorneys in class actions … must be revealed to the court and members of the class as soon as possible").

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

of certainty that such hours were actually expended in the prosecution of the litigation." *United Slate, Tile & Composition v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984); *Hensley v. Echkerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the fee award accordingly."). The spreadsheets in all class counsels' affidavits fall far short of that standard. *See In re Painewebber Ltd. P'ships Litig.*, 2003 WL 21787410, at *4 (S.D.N.Y. 2003) (refusing to grant class counsel's fee request where counsel "failed to submit any contemporaneous time records. Instead, in support of its fee application, [counsel] merely provides the Court with a single-paged spreadsheet summarizing the amount of time spent by various attorneys and staff members on each of eight, broadly-defined matters pertaining to this action.").

Here, however, *Larson* class counsel have submitted no time records, no descriptions of tasks performed, no dates as to when the alleged work was performed, or any other detail that would allow this Court to properly scrutinize the work performed. (Doc. 383-6, p. 11). For example, in the Declaration of Paul M. Weiss, contains a chart thereto listing ten (10) different attorneys that Freed & Weiss LLC claims have spent compensable time in this matter. The spreadsheet chart, however, provides nothing more than the name of the employee, a very brief description of the type of work allegedly performed (e.g. "discovery"), the number of hours claimed, the rate claimed, and the lodestar derived from multiplying the two numbers.

Second, the minimal documentation provided in support of the fee request suggests that the request in this case is inflated or otherwise improper. For example, the Freed & Weiss LLC firm alleges $906,540.17 in lodestar.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

This Court properly took Paul M. Weiss and Freed Weiss, LLC to task for billing large amounts of time to matters occurring "*after* preliminary approval." *See* T-Mobile Order, *supra*. However, Paul Weiss's Declaration (along with other *Larson* counsel as well) in this matter clearly states that much of his time here *also* relates to time billed *after* preliminary approval which this Court has previously questioned as improper, especially in excessive amounts. *See* Doc. 383-6, p. 5 ("My fee petition includes work done in negotiating the settlement and work done after the settlement, but prior to the final approval hearing in March on 2009 [sic].").[2]

**D.      Red Flags of Potential Collusion Demand Special Heightened Scrutiny.**

The Stipulation and Settlement Agreement contains two additional provisions suggestive of collusion between Sprint and *Larson* class counsel: (1) a "clear sailing clause" whereby Sprint expressly agreed not to oppose *Larson* class counsel's 33% fee request; and (2) a "quick pay" clause enabling *Larson* class counsel to be paid *immediately* after final judgment is entered by the district court whereas the class itself must wait to be paid until after *all* appellate review is complete. What is good for the goose is apparently not good for the gander. Finally, the parties, including *Larson* class counsel, have not provided any sworn statements that the attorneys fees, clear sailing clause or quick pay provisions were separately negotiated *after* the class "benefits" were negotiated. Thus, additional red flags of collusion are palpable. Hall reincorporates all the detailed briefing regarding these arguments by reference. *See* Doc. 256, pp. 13-16.

---

[2]  Objector Hall incorporates all prior written and oral arguments related to attorney fees objections as if stated herein. *See* Doc. 256.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

E.  **Under the Settlement Agreement, "Fees and Expenses" May Not "Exceed 33% of the Total Class Benefit" and the Documentation of Expenses Is Also Inadequate.**

Remarkably, in further evidence of a reverse auction, *Larson* class counsel inexplicably misunderstand and apparently failed to read their own settlement agreement which allows for "**an award of attorneys' fees and expenses in an amount not to exceed 33% of the Total Class Benefit**." Doc. 84-2, p. 46 (emphasis added). Nevertheless, *Larson* class counsel request to be paid "33% of the Class benefit ($5,775,000), plus reimbursement of expenses of $256,115.91…" Doc. 383, p.5. Thus, the expenses requested may not be paid. Further, *Larson* class counsel have not provided adequate documentation to justify the alleged expenses.[3]

## **CONCLUSION**

For all these reasons, if the Court (acting as a fiduciary for the class) decides that the settlement is in the class's best interests, the Court should deny any fee award tp *Larson* class counsel.

---

[3] Objector Hall acknowledges that this Court has ruled that Freed Weiss LLC does not have a conflict of interest here. However, Objector Hall continues to object to the reimbursement of expert expenses, and the payment of attorneys' fees, to Freed Weiss LLC in this matter. Indeed, those expenses were all incurred, and fees "earned" after Freed Weiss LLC engaged in the reverse auction here. Thus, Objector Hall does not waive her prior arguments related to the conflict precluding an attorney fee recovery for Freed Weiss LLC on appeal, but does reincorporate them by reference here. Doc. 256, pp. 18-19.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Dated: October 19, 2009                                   Respectfully submitted,

                                                          **JESSICA HALL,**

                                                          By: /s Anthony L. Coviello
                                                          One of Her Attorneys

Anthony L. Coviello                                       Bradley M. Lakin #6243318
**LAW OFFICE OF**                                         **LAKINCHAPMAN, LLC**
**ANTHONY L. COVIELLO LLC**                               300 Evans Avenue, P.O. Box 229
307 Montgomery Street                                     Wood River, Illinois 62095
Bloomfield, NJ 07003                                      (618) 254-1127
(973) 748-4600

Phillip A. Bock
**BOCK & HATCH, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60603                                         **Attorneys for Objector Jessica Hall and the**
(312) 658-5500                                            **Certified *Hall* Class**

Phillip A. Bock
Robert M. Hatch
**BOCK & HATCH, LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60603
Telephone: 312-658-5500

Anthony L. Coviello
**LAW OFFICE OF
ANTHONY L. COVIELLO LLC**
307 Montgomery Street
Bloomfield, NJ 07003
(973) 748-4600

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated, ) ) ) ) ) | Civil Action No. 07-05325(JLL) |
| Plaintiffs, ) | |
| v. ) | |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL, and NEXTEL FINANCE COMPANY ) ) ) ) ) ) | |
| Defendants ) | |

### Certificate of Service

I hereby certify that on October 19, 2009, I electronically filed Objector Jessica Hall's Opposition to Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Expenses with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Joseph A. Boyle
jboyle@kelleydrye.com

James E. Cecchi
jcecchi@carellabyrne.com

17

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Joseph J. Depalma
jdepalma@ldgrlaw.com

Matthew J. Fedor
Matthew.fedor@dbr.com

Scott A. George
sgeorge@seegerweiss.com

Andrew B. Joseph
andrew.joseph@dbr.com

Lauri A. Mazzuchetti
lmazzuchetti@kelleydrye.com

Jennifer Sarnelli
jsarnelli@ldgrlaw.com

Brian Russell Strange
lacounsel@earthlink.net

Lindsey H. Taylor
ltaylor@carellabyrne.com

                                                    s:/ Anthony L. Coviello_____
                                                    Anthony L. Coviello
                                                    **LAW OFFICE OF**
                                                    **ANTHONY L. COVIELLO LLC**
                                                    307 Montgomery Street
                                                    Bloomfield, NJ 07003
                                                    (973) 748-4600

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com