**PINILISHALPERN, LLP**
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: (973) 401-1111
Facsimile: (973) 401-1114
wpinilis@consumerfraudlawyer.com

**LAW OFFICES OF SCOTT A. BURSOR**
Scott A. Bursor
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

*Counsel To Objectors Lina Galleguillos, Michael Moore, and Antranick Harrentsian*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL AND NEXTEL FINANCE COMPANY<br><br>                   Defendants, | Civ. Act. No. 07-5325 (JLL)<br><br>**OBJECTION, NOTICE OF INTENTION TO APPEAR AND MEMORANDUM OF LAW BY OBJECTORS LINA GALLEGUILLOS, MICHAEL MOORE AND ANTRANICK HARRENTSIAN TO CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES** |

59562

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL ARGUMENT | 2 |
| | A. *LARSON* COUNSEL PIGGYBACKED ON WORK DONE BY CLASS COUNSEL IN *AYYAD* AND *ROBERTSON* | 2 |
| | B. *LARSON* COUNSEL DID NOT EFFICIENTLY LITIGATE THE CLAIMS IN THIS ACTION | 7 |
| | 1. Carella, Byrne and Seeger Weiss | 8 |
| | 2. Freed & Weiss | 9 |
| | 3. Carey & Danis | 12 |
| | 4. Lieff, Cabraser, Heimann & Bernstein, Foley Bezek Behle & Curtis and Arias Ozzello & Gignac | 12 |
| | 5. Richard Burke | 12 |
| | 6. Strange & Carpenter | 13 |
| | 7. Coughlin Stoia Geller Rudman & Robbins and the Positive Legal Group | 13 |
| III. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). .................................................................................................................. 7
*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) ............... 8
*In re* C*endant Corp. Sec. Litig*., 404 F.3d 173, 181 (3d Cir. N.J. 2005) ...................... 5
*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir. 1995) ..................................................................................... 7
*In re Oracle Sec. Litig*., 131 F.R.D. 688, 691 (N. D. Cal. 1990) .................................. 7
*In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998) ...................................................... 8
*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307-08 (3d Cir. 2005) ......................... 7

Class members Lina Galleguillos, Michael Moore, and Antranick Harrentsian hereby object to the request for attorneys' fees submitted by *Larson* Class Counsel ("*Larson* counsel"), and give notice of their intention to appear and argue in support of their objection at the October 21, 2009 hearing in this matter. The grounds for the objection are set forth below.

## I.  INTRODUCTION

The Court should deny or substantially reduce the attorneys' fee request of *Larson* counsel. *Larson* counsel seek an award of attorneys' fees in the amount of $5,775,000. *Larson* Fee Pet. at 1. They claim 8,680.11 hours and a lodestar of $4,964,173.63, even though they only filed their case on November 5, 2007 and did little work on the case. *Id.* at 11. They also seek a multiplier of a 1.16. *Id.* at 12.

*Larson* counsel are not entitled to a fee of that size because they were not responsible for creating any benefit the class may receive from the settlement in this case. This settlement was produced primarily by the efforts of the lawyers that litigated *Ayyad v. Sprint Spectrum et al.*, ("*Ayyad*") and *Robertson v. Nextel Communications Inc., et al.* ("*Robertson*") in the California courts. The lawyers in the California cases have aggressively litigated the claims against Sprint Nextel for nearly six years and ultimately received a  judgment, in a case challenging the validity of Sprint's and Nextel's flat early termination fees on behalf of a class of California residents who had paid or been charged such fees, that the fees were unlawful and void. Sprint Nextel was thus faced with a nearly certain ruling to the same effect concerning the subscriber class. *Larson* counsel, in contrast, did not file or argue a single motion, serve any written discovery or take even one deposition. In fact, most of the time they expended was apparently spent reviewing the work done by the lawyers in the California cases and discounting the California claims. In light of that fact and the massive number of hours they claim,

it is difficult to see how *Larson* counsel could claim to have litigated this case efficiently or to be entitled to the fee they seek. *Larson* counsel have also made it difficult for the Court to perform the required lodestar cross-check because their time summaries are vague and offer no real explanation for the time they claim to have spent working on the case.

The Court should disallow or heavily discount the massively bloated lodestar, and the massive fee request, submitted by *Larson* counsel. Alternatively, the Court should review those counsel's time records or appoint a special master to do so.

## II. LEGAL ARGUMENT

### A. *LARSON* COUNSEL PIGGYBACKED ON WORK DONE BY CLASS COUNSEL IN *AYYAD* AND *ROBERTSON*

*Larson* counsel's fee request is remarkable, considering that their work did not produce any benefit for the class. *Larson* counsel simply piggybacked on the work done by California counsel in *Ayyad* and *Robertson*. In fact, *Larson* counsel did not serve a single discovery request, did not depose a single witness, did not retain an expert, and did not litigate a single motion related to the merits of these claims.[1] Instead, they claim they evaluated the merits of the claims they are attempting to settle by "reviewing" the work done by *Ayyad* and *Robertson* class counsel.

On January 21, 2009, on the application of objectors Galleguillos *et al.*, this Court issued an order to show cause for expedited discovery directing *Larson* counsel to produce, among other things, a log showing the Bates numbers of all documents produced in the instant matter and the dates on which those documents

---

[1] Indeed, plaintiffs' counsel in this action did not even assert any claims on behalf of persons who had incurred flat ETFs pursuant to pre-merger Nextel contracts prior to signing the settlement agreement. Yet, they seek an award of fees for the purported settlement of those claims.

were produced. The same OSC directed Sprint to produce to Galleguillos *et al.* all documents that it has already produced to Class Counsel in the instant action. The log was produced to Galleguillos' counsel on February 4, 2009. *See* 3/3/09 Bursor Decl. Exh. 23 (Discovery Log). From the log, it appears that 99.9% of the materials Sprint provided to *Larson* counsel prior to the December 2008 agreement on the proposed settlement comprised documents, exhibits, briefs and depositions from *Ayyad* and *Robertson*, and other cases litigated by counsel in the California actions.[2]

1. The only discovery obtained by *Larson* counsel before July 2008 was approximately 6,000 pages of documents produced by Sprint in the *Hall* case in or about 2005. *See* Discovery Log, 3/3/09 Bursor Decl. Exh. 23 (item 1). It appears that these documents are comprised entirely of documents that had previously been produced in *Ayyad* and *Robertson* earlier in 2004 and 2005. *See* 3/3/09 Plutzik Decl. ¶ 7, fn. 1. Thus it appears that the *Hall* case did not result in the production of any materials relevant to the merits of the claims that had not already been produced in *Ayyad* and *Robertson*. The *Hall* case has been stayed since June 15, 2005. *See Hall v. Sprint Spectrum LP* Docket, 3/3/09 Bursor Decl. Exh. 25.

2. In July 2008, after a full trial on the merits, the *Ayyad* plaintiffs obtained a proposed statement of decision that decided every significant issue in plaintiffs' favor, held Sprint's ETFs to be unlawful, and awarded the *Ayyad* plaintiffs $73 million in cash and credits over and above Sprint's setoff claim. *See* 7/28/08 Proposed Statement of Decision, 3/3/09 Bursor Decl. Exh. 17.[3] That

---

[2] Several of the items on the discovery log were documents initially produced or depositions initially taken in other cases litigated by counsel in the California cases including *Zill v. Sprint* (asserting handset locking and related claims) and *In re Wireless Tel. Servs. Antitrust Litig.* (asserting antitrust claims). Discovery taken in these cases was deemed produced in *Ayyad* and *Robertson* by stipulation and was used in litigating those cases.

[3] *Larson* counsel's attempt to characterize the outcome of the California trial as a loss for the class reflects, at a minimum, a lack of understanding of what happened. ***First***, the California Court, in its Statement of Decision, held Sprint's and Nextel's flat ETFs illegal and void under

month, Sprint hurriedly produced to *Larson* counsel all of the trial exhibits from *Ayyad* (Discovery Log Items 2 and 3), eight deposition transcripts for *Ayyad* trial witnesses (Discovery Log Item 6), the 4/22/08 Declaration of William Taylor, one of Sprint's expert witnesses, which was Exhibit 915 from the *Ayyad* trial (Discovery Log Item 7), Sprint's Closing Trial Brief in *Ayyad* (Discovery Log Item 8), the verdict form from the *Ayyad* trial (Discovery Log Item 23), and "All Related ETF Complaints" (Discovery Log Item 9). This last item -- complaints from other litigations, a few of which did not arise from the *Ayyad*, *Robertson*, *Molfetas* or *Lee* cases --- appear to be the only materials produced to *Larson* counsel that were not derived entirely from the efforts of counsel in the California class action.

      3.      In August 2008, Sprint apparently provided to *Larson* counsel Sprint's and Plaintiff's objections to Judge Sabraw's Proposed Statement of Decision in *Ayyad*. (Discovery Log Item 12).

---

California law – an undeniable and important win, and one that would inevitably have led to the entry of an injunction against the collection of flat ETFs from current subscribers had this settlement not intervened. A request for a TRO against such collections was pending and had been tentatively granted in part at the time this case was stayed. **Second**, the jury's verdict of $225 million in damages on Sprint's cross-claim was far from the defeat that *Larson* counsel portrayed. That damages award was $73 million *less than* the $299 million that California class members paid or were charged. In other words, the jury found that Sprint charged more in ETFs than the actual damages it had suffered – a result that reinforces the Court's finding that the ETFs were void and illegal. *Larson* counsel point out that the $225 million in damages that the jury awarded to Sprint on its cross-claim exceeded the $73 million that the class members paid. But that is a comparison between apples and oranges. The relevant comparison is between the $225 million damages figure and the $299 million that class members paid *or were charged*, not merely between the $225 million and the $73 million of ETFs that *were paid*, because Sprint sought damages on its cross-claims against *both* those class members who had paid the ETFs *and* those who had merely been charged an ETF but had not paid one. So the jury's verdict was a victory, not a loss. Sprint argued to the jury at trial that it should award $1.3 *billion* damages on its cross-claim. The jury reduced that amount by one billion dollars. **Third**, the Court granted a new trial on Sprint's damages *not* at Sprint's request, as *Larson* counsel suggest, but at *plaintiffs'* urging and over Sprint's determined opposition. The new trial order as well was a victory for the plaintiffs. *Larson* counsel's arguments about the California Sprint results are therefore highly misleading. *Larson* counsel do not understand the case, do not know the relevant evidence or the applicable substantive law, do not know what happened in California and settled without realizing, or without caring, that the California outcome was about to produce tremendous benefits for California current Sprint subscribers and pre-merger Nextel subscribers.

4. In October 2008, Sprint apparently provided to *Larson* counsel all of Sprint's and Plaintiffs' discovery responses in *Ayyad* (Discovery Log Items 4 and 5), 36 additional deposition transcripts from *Ayyad*, *Robertson* and other cases litigated by counsel in the California cases (Discovery Log Items 10a-10jj), and approximately 25,000 pages of Sprint documents produced by Sprint in response to plaintiffs' discovery requests and motions to compel in *Ayyad* and *Robertson* (Discovery Log Items 11a-w).

5. The log also indicates that Sprint provided to *Larson* counsel "all proposed decisions and final decisions issued by court in Cal. ETF case … as filed" (Discovery Log Item 22).

6. The remainder of the items on the discovery log include materials that are irrelevant to the merits of the claims being settled, such as the "Zobrist/ Flanigan Objections" filed by Mr. Bock in connection with the *White v. Verizon* settlement in California (Discovery Log Item 13) (also a product of the litigation by the California attorneys), and materials that were not produced to *Larson* counsel until *after* they had agreed to the proposed settlement (Discovery Log Items 14-21, and 24, produced in January 2009). The bulk of the January 2009 production consisted of the summary judgment and class certification papers in *Ayyad* and *Robertson* (Item 21), produced at great expense and enormous effort by class counsel in those cases, and the updated version of *Ayyad* Trial Exhibit 866 (Item 14), which was obtained through the discovery request and related order to show cause filed by the Galleguillos objectors. About the only work that can be claimed was to review the work of other attorneys in other class actions. However, monitoring the work done by others cannot be the basis for fees unless it is shown "that this monitoring independently increased the recovery of the class." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. N.J. 2005)

The materials on the *Larson* discovery log were created and/or obtained through great effort and great expense. Counsel in the California litigation made those efforts and bore those expenses, as detailed in the declarations submitted on March 3, 2009 by Mr. Bursor, Mr. Plutzik and other counsel. *Larson* counsel then piggybacked on those efforts. To give just a few examples:

 a. All of the depositions listed on the discovery log were taken by counsel in the California action. *See* 3/3/09 Bursor Decl. ¶ 46 (Mr. Bursor personally took or defended 21 of them.); 3/3/09 Plutzik Decl., p. 16, ¶ 15, subheading (e) (attorneys from Bramson Plutzik were involved in 20 of those depositions).

 b. The *Ayyad* and *Robertson* plaintiffs served 182 document requests and litigated several motions to compel related to those requests. *See* 3/3/09 Bursor Decl. ¶ 46; 3/3/09 Plutzik Decl. ¶ 7. Those document requests and motions to compel resulted in the production of essentially all of the documents reviewed by *Larson* counsel in connection with the proposed settlement. *See* 3/3/09 Bursor Decl. ¶ 46; 3/3/09 Plutzik Decl. ¶ 7.

 c. *Ayyad* counsel spent several weeks culling through depositions and documents to identify 651 intended trial exhibits for the *Ayyad* trial. *See* 3/3/09 Bursor Decl. ¶ 46; 3/3/09 Plutzik Decl. ¶ 7.

 d. *Robertson* counsel spent months litigating motions for class certification and summary judgment – both of which included extensive expert discovery. *See* 3/3/09 Bursor Decl. ¶¶ 12-14.

These are just a few examples of the work that Sprint and *Larson* counsel contend they used to make the proposed settlement in this case. None of that work, however, was done by *Larson* counsel. It was all done by California counsel in *Ayyad* and *Robertson* and it was that work which led to the settlement here. *See* 3/3/09 Memorandum of Law in Support of Joint Motion for Award of Attorney's

Fees and Nontaxable Costs Related to the *Ayyad*, *Robertson*, *Molfetas*, and *Lee* Cases at 7-9. The Court should not award *Larson* counsel $5.775 million in fees for work done by lawyers in the California cases.

**B.** ***LARSON* COUNSEL DID NOT EFFICIENTLY LITIGATE THE CLAIMS IN THIS ACTION**

*Larson* counsel claims to have expended a massive 8,680.11 hours for a total lodestar of $4,964,173.63. *See Larson* Fee Brief at 11. This action was filed on November 5, 2007 and, as discussed above, there has been little or no motion practice or discovery. The *Larson* docket shows that prior to the settlement there had been a motion to dismiss filed by Sprint, but it was "administratively terminated without prejudice," and without a substantive ruling, on September 12, 2008. At the time the case settled, Sprint had not yet even answered the complaint. To have billed so much and accomplished so little, whatever work was actually done could not have been done efficiently.

The "common fund doctrine" only permits compensation to "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund," not to attorneys who discount those claims. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir. 1995) (GMC); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). The common fund doctrine is essentially a matter of equity, *Boeing,* 444 U.S. at 478, and gives courts significant flexibility in setting attorneys' fees. For the doctrine to function, it is essential that the court supervise class counsel's performance and carefully scrutinize its fee applications. *See GMC*, 55 F.3d at 819. In "common fund" cases, the court acts as a fiduciary for the class. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307-08 (3d Cir. 2005) (Rite Aid); *GMC*, 55 F.3d at 784; *In re Oracle Sec. Litig.*, 131 F.R.D. 688, 691 (N. D. Cal. 1990) (Walker, J.) (Oracle) ("The court bears fiduciary responsibilities to the

class."). In contrast, the California cases commenced six years ago. Significant substantive work was done in those cases and counsel in those actions had a comparable lodestar to that of *Larson* counsel even though the claims in the California cases were far older and were vigorously litigated with extensive discovery, motion practice and appellate proceedings.

*Larson* counsel's lodestar also cannot withstand the lodestar cross-check that this Court must perform. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) ("In mainstream cases, such as this one, we have also suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method, which is normally employed in statutory fee-award cases."); *see also In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998) ("it is sensible for a court to use a second method of fee approval to cross check its initial fee calculation"). The summaries of the *Larson* counsel are extremely vague and fail to specify what work was actually performed. In the following discussion, we examine the fee submissions of each firm that claims a significant lodestar as part of Class Counsels' fee application. As we show, the information they have provided to the Court is insufficient to warrant the Court in crediting their time and lodestar claims or awarding fees based on those claims.

### 1. Carella, Byrne and Seeger Weiss

In its September 10, 2009 Order in the *Milliron* case, the Court held that the lodestar of approximately $711,000 reported by the law firm of Freed & Weiss was "facially untenable" in light of the work performed. The Carella, Byrne firm in this case reports a lodestar of $997,989.50 – *more than 40% higher* than the "facially untenable" lodestar reported by its co-counsel in *Milliron*, in a case in which no more litigation was conducted than in *Milliron*. Carella's co-counsel, Seeger Weiss, reports a robust lodestar of $513,744.50. Both of these firms allocate their time into categories such as "investigations, factual research"

"document discovery" "meetings/communications" and "litigation strategy and analysis." *See* Exh. 1 to the Declaration of James E. Cecchi in Support of Class Counsels' and Supporting Counsels' Petition for an Award of Attorney's Fees and Reimbursement of Expenses; Exhibit 1 to the Declaration of Jonathan Shub. Despite massive lodestars, neither of these firms make any real effort to explain to the Court how their time was spent in this case which is just over a year old and in which no substantive litigation was ever performed. The history of the case reveals that there was no "document discovery," there was no "investigation" and there could not have been any signicant "litigation strategy and analysis" because there was no litigation to strategize about.

Virtually the only function performed by these firms was to be willing to discount the claims of the class more cheaply than California counsel who were ready to try those claims. Awarding fees to them will only validate the practice of defendant corporations who, faced with liability in a consumer case, search to locate a plaintiff's firm that will agree to discount the claims of the consumer class, in exchange for non-opposition to the payment of fees.

Significantly, the lodestar reported by both firms significantly exceeds what they reported in March of this year. They may be trying to charge the class for the time they spent defending, and then trying to fix, the inadequate notice they gave to the class the first time around. It would be unfair for them to be compensated for that work. The lodestar of these firms, like that of Freed & Weiss in *Milliron*, is "facially untenable."

### 2. Freed & Weiss

If Freed & Weiss's *Milliron* lodestar of approximately $711,000 was excessive – and the Court found that it was – the lodestar of $906,540.17 that Freed & Weiss is reporting in *this* case goes beyond excessive. Like Carella, Byrne and Seeger Weiss law firms, Freed & Weiss divides its time similarly into

such categories as "investigation, fact research" "case administration" and "litigation strategy & analysis." *See* Exh. A to the Declaration of Paul M. Weiss. But again, no "investigation" occurred, there was no "document discovery" and there was no "litigation strategy" because the case settled right away. Just as in *Milliron*, Freed & Weiss's claimed lodestar is bogus.

There is serious evidence that Freed & Weiss's time is not genuine. Philip Bock submitted a declaration in this matter attesting to the following voicemail message left for him by Paul Weiss in another case:

> Hey, look at your e-mail this morning … Verizon looks like it is settling. O.K.? The ECF [*i.e.*, ETF] case. There's a mediation in San Francisco that we are going to on Monday…. **We've got to start [expletive] putting in a [expletive] load of time in the case dude**! O.K.? So I wanted to talk to you. Will you call me this morning on Verizon? O.K. *I want to try to position us*….[4]

He "positioned" his firm in this case the same way he tried to do in Verizon – by claiming a right to be paid millions for performing no significant work.

In the related *Milliron* case, this Court found that Freed & Weiss's lodestar was "facially untenable." 9/10/09 Opinion and Order in *Milliron v. T-Mobile USA, Inc.* Among other things, the Court based its finding on the fact that Freed & Weiss claimed time for reviewing documents produced by T-Mobile *after* preliminary approval of the settlement "to confirm[] the adequacy of the settlement." *Id.* at 22. In this case, Freed & Weiss once again claims significant time for work it did was after preliminary approval of the settlement. Declaration of Paul Weiss at 4 ("My fee petition includes work done in negotiating the settlement and work done after the settlement, but prior to the final approval hearing in March [of] 2009."). Freed & Weiss reports 211 hours for "discovery," even though virtually no discovery was actually done in this action prior to the

---

[4] Quoted at Objector Jessica Hall's Opposition to Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Expenses in the *Larson* Action, Docket No. 256 at 12 n.2; authenticated in the Declaration of Philip Bock, Docket No. 291 at ¶14.

settlement. Moreover, Freed & Weiss claims 218.90 hours of time devoted to "settlement." Presumably, much of both the "discovery" time and the "settlement" time reflects the review of the documents Sprint produced after preliminary approval. Most or all of these documents were previously produced or filed in the California action during the heat of battle in the California litigation, so Freed & Weiss provided no real value to the class from reviewing them again. Mr. Weiss claims this work was done so that class counsel could "perform an independent analysis of the Settlement." *Id.* at 5. The Court rejected time claimed by Freed & Weiss for such work in *Milliron* and should do so here as well.

Freed & Weiss also claims that some of the hours it expended were incurred in the *Hall* case in Illinois, which has been stayed since June 15, 2005. *See* Declaration of Paul M. Weiss at 3-4 ("The work my firm put in prosecuting the Hall case, which was filed in 2004, helped to obtain the beneficial results for consumers here in the Larson case."). Sprint, however, states that "[n]othing has happened in *Hall* except class certification and appeals therefrom. ***One*** deposition has been taken . . . [and the lawyers in *Hall*] have made scant progress in the Illinois litigation." Sprint's Memorandum of Law in Response to Jessica Hall's Objections to Proposed Class Action Settlement at 3 (emphasis in the original). Sprint further stated:

> There has been no determination on the merits in *Hall*, and no substantive motion practice other than resolution of Hall's motion for class certification. The only deposition that has been taken is of Jessica Hall, and plaintiffs have served only one set of written interrogatories and one set of requests for production of documents, to which Sprint responded. Sprint has not served any written discovery on Hall or the class.

*Id.* at 5. Based on these statements, it is difficult to imagine that any time spent on the *Hall* case could have contributed to the settlement of the claims in this action. Even if it were true that the work done in the *Hall* case somehow contributed to the settlement here, that work could not have been more significant than the work done

by the lawyers in the California cases. The Court should disallow Freed & Weiss's time or heavily discount it. Alternatively, the Court review the firm's time records

### 3. Carey & Danis

Carey & Danis claims a lodestar of $341,005 based on 1011.25 hours. Carey & Danis was not involved either in this case or in the California litigation. It is unclear what that firm did, and even more unclear what it accomplished. *See* Exh. A to the Declaration of Michael J. Flannery. In his declaration, Mr. Flannery states that all of the services performed by his firm were "reasonably necessary in the prosecution of this Action," but provides no factual basis on which the Court could reach the same conclusion.

### 4. Lieff, Cabraser, Heimann & Bernstein, Foley Bezek Behle & Curtis and Arias Ozzello & Gignac

Lieff Cabraser, Foley Bezek and Arias Ozzello claim respective lodestars of $146,309, $80,676.50 and $88,663 for work done in *Greene v. Sprint Spectrum, L.P.*, United States District Court for the Central District of California Case No. CV07-7129-SVW. The *Greene* case was filed in October, 2007 and little work was done other than the filing of a motion to dismiss by Sprint. The case was stayed based on the settlement in this action. None of the *Greene* firms divide their time into categories or provide any descriptions for the work they performed. *See* Exh. B to the Declaration of Michael W. Sobol; Affidavit of Robert A. Curtis; Exh. B to the Declaration of J. Paul Gignac. Nor do they make any effort to explain how the work they performed in *Greene* provided any benefit to the class in this case.

### 5. Richard Burke

Richard Burke claims a lodestar of $165,290 based on 423.60 hours spent in this action. In his declaration, Mr. Burke states that a detailed summary of the time spent by the people in his firm is attached, but no such document was attached to

the declaration submitted to the Court. Mr. Burke also provides only general, boilerplate descriptions of the work he performed in the case, claiming that he "was extensively involved in every aspect of this case form investigating the facts, drafting the complaints, conducting discovery, responding to discovery, drafting pleadings and briefs, attending court appearances, conducting settlement negotiations and finalizing all papers in support of the settlement." Declaration of Richard Burke at 1. How can Mr. Burke have been involved in "conducting discovery" if there was no discovery? How can he have been involved in drafting briefs if no briefs were written? Mr. Burke's description is remarkable considering that *Larson* counsel did not file or argue a single motion, serve any written discovery or take even one deposition.

### 6. Strange & Carpenter

The Strange & Carpenter law firm previously objected to the settlement in this case. It now apparently supports the settlement and claims a staggering lodestar of $1,142,817.25 based on 2,391.56 hours for work performed in *Smith v. Sprint PCS* in Florida state court. As former objectors, Strange & Carpenter cannot claim that its work in the *Smith* action in Florida in any way led to the settlement in this case or benefited the class. Like the Carella, Byrne, Seeger Weiss and Freed & Weiss law firms, Strange & Carpenter divides its time into categories like "investigation, factual research" and "litigation strategy and analysis." *See* Exh. A to the Declaration of Brian Strange.

### 7. Coughlin Stoia Geller Rudman & Robbins and the Positive Legal Group

Coughlin Stoia and the Positive Legal Group claim a lodestar $567,416.46 for work performed in the *Ayyad* and *Robertson* cases in California. Most of that time shows that the settlement in this case was really based on the work done in the California cases. The Positive Legal Group, however, seeks $48,150 for 107 hours

of new work done since March.  Ms. Mottek offers no explanation of what new work was performed since March and how it benefited the class in any way.  The *Ayyad* and *Robertson* cases have been stayed during that time, and the Positive Legal Group was not involved in either objecting to or supporting the settlement last time.  Ms. Mottek did not attend the final approval hearing and had no involvement in re-noticing the class after the settlement was disapproved in April.  The $48,150 of new time submitted by the Positive Legal Group is unsupported and should be disallowed.

### III.  CONCLUSION

Objectors Galleguillos *et al.* urge the Court to disapprove the proposed settlement.  If the Court approves the settlement, it should not approve *Larson* counsel's requested fee of $5.775 million because *Larson* counsel have not earned a fee of that magnitude.  They have done no real work in this case and instead have stood on the shoulders of counsel in the *Ayyad* and *Robertson* cases.  They also have not efficiently litigated the case as the number of hours they expended in this case is entirely out of proportion to the work that was done.  The Court should deny *Larson* counsel's fee request or significantly reduce the fee they receive.  At a minimum, the Court should scrutinize their time records or appoint a special master to do so, to ensure a fair and equitable division of fees between and among counsel.

Dated:  October 19, 2009

**PINLISHALPERN, LLP**

By: */s/ William J. Pinilis*
William J. Pinilis
160 Morris Street
Morristown, NJ  07960
Telephone: (973) 401-1111
Facsimile:  (973) 401-1114
wpinilis@consumerfraudlawyer.com

**LAW OFFICES OF SCOTT A. BURSOR**
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
scott@bursor.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
Anthony Vozzolo
369 Lexington Ave., 10th Floor
New York, NY 10017-6531
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
nfaruqi@faruqilaw.com
avozzolo@faruqilaw.com

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (*pro hac vice*)
L. Timothy Fisher
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
ltfisher@bramsonplutzik.com

*Counsel To Objectors Lina Galleguillos, Michael Moore, and Antranick Harrentsian*