**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

**200 KIMBALL DRIVE**

**PARSIPPANY, NEW JERSEY 07054**

(973) 503-5900

FACSIMILE
(973) 503-5950
www.kelleydrye.com

DIRECT LINE: (973) 503-5920
EMAIL: jboyle@kelleydrye.com

October 20, 2009

**VIA ECF**

Hon. Jose L. Linares, U.S.D.J.
United States District Court for the
 District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street, Room 2042
Newark, New Jersey 07101

    Re: *Larson, et al. v. AT&T Mobility LLC f/k/a*
       *Cingular Wireless LLC, et. al.*
       <u>Civ. No.: 07-5325 (JLL)</u>

Dear Judge Linares:

  We represent defendants Sprint Nextel Corporation, Sprint Spectrum L.P. and Nextel Finance Company (collectively, "Sprint") in the above-referenced action. Please accept this letter in lieu of a more formal application to strike the Second Supplemental Declaration of Scott A. Bursor and the Declaration of Colin B. Weir, both of which were e-filed yesterday (as Docket Entry Nos. 400 and 402, respectively.)

  Neither of the Declarations is proper. The Court's June 2, 2009 Order did not contemplate submissions attacking the settlement or compliance with Rule 23 beyond the objections filed on October 7, 2009. (Docket Entry No. 344.) Everything cited by Mr. Weir or Mr. Bursor was available to the Bursor Objectors[1] well before October 7, 2009. Moreover, both declarations omit significant information that would be necessary in order for the Court to evaluate any alleged merit of the positions set forth therein. Further, Mr. Bursor's entire Declaration constitutes legal argument and should be stricken pursuant to Local Rule 7.2(a).

  Mr. Weir's declaration opaquely notes that he searched a "database etf_report.dta." Mr. Weir fails to inform the Court that this is the database created by Christian

---

[1]  The "Bursor Objectors" refers to objectors Linda Galleguillos, Michael Moore and Antranick Harrentsian.

Dippon, Sprint's expert, in the California only *Ayyad* payor case. It was referenced in Sprint's discovery responses, which were certified by Mr. Dippon and filed with this Court on March 2, 2009. (Docket Entry. No. 234, re-filed as Docket Entry No. 263, Boyle Decl., Exh. B.) The discovery responses certified by Mr. Dippon support Sprint's argument that constructing a data file for the nationwide Settlement Class would be unreasonable. (*Id.*) The fact that this was a litigation-created database that was in no way indicative of Sprint's data environments in situ was well know to Mr. Bursor. (Bursor Decl. at ¶ 14 (Docket Entry No. 400.) Thus, Mr. Weir's Declaration should be stricken as it attempts to provide the illusion that he searched a data environment maintained in the ordinary course of Sprint's business when in fact it was a part of specially created database from *Ayyad* payor which involved California Sprint customers. (Docket Entry. No. 234, re-filed as Docket Entry No. 263, Boyle Decl., Exh. B.) The fact that this database, created by Mr. Dippon, is sortable by class member and account type (*i.e.*, individual, government, business and/or corporate) sheds absolutely no light on the amount of effort necessary to do such sorting throughout Sprint's data environments in situ.

Moreover, to the extent this sorting provided a breakdown by the type of accounts within the California only *Ayyad* Class, it in no way supports a finding the same breakdown of account types obtains for Sprint's entire customer base or the nationwide Settlement Class.

Mr. Weir also provides no help to the Court when he states "Mr. Bursor also asked that I provide an estimate of how long it would take to conduct a similar sort and tally of 100-million similar records." (Weir Decl. at ¶ 5 (Docket Entry No. 402.)). Mr. Weir fails to point out, and what Mr. Bursor knows full well, is that there are no 100 million *similar* such similar records available for sorting. Indeed, that was the entire point of the Declaration of Scott Rice submitted to this Court on May 21, 2009 (the "Rice Declaration"). (Docket Entry No. 341.) The fact that it would be an unreasonable endeavor to create such records is a fact that has never been, and cannot be, disproved by the Bursor objectors.

Mr. Bursor continues the charade by attempting to apply the breakdown of accounts from Mr. Weir to a financial report known as Sprint's "Customer Cancellation Fees Collectability Analysis," which was an exhibit at the *Ayaad* trial marked as Exhibit 866.[2] There is no statistical evidence to support Mr. Bursor's implicit conclusion that the percentage of California only *Ayyad* payors who were identified as individual liable subscribers by Mr. Weir's sorting of the specially constructed database would be the same as the percentage of Sprint's entire customer base who are individually liable. The only thing Mr. Bursor accomplished in his

---

[2] Exhibit 866 is the result of an algorithm from raw data in the general ledger process. It is not broken out or sortable by payor. (*Ayyad* Trial Testimony of Jay Franklin, at p. 1182 L. 19-23.)

supplemental declaration was to confirm to the Court that his statistical analyses, and the data it is based upon, fail to support the conclusions he asserts.[3]

The simple fact remains that the Rice Declaration stands unrebutted as a complete description of the hurdles faced by Sprint Nextel in searching its data environments. The Court properly relied upon that declaration, received no objection to its contents at the time the Amended Notice Plan was *sub judice* and properly exercised its discretion in approving the Amended Notice Plan. No amount of *post hoc* sleight-of-hand can change that proper conclusion.

Thank you for Your Honor's consideration.

Respectfully submitted,

*s/ Joseph A. Boyle*

Joseph A. Boyle

JAB:mc

cc: All Counsel (via ECF)

---

[3] Mr. Bursor's simple (and simplistic) sorting exercise confirms that the irrelevant 9.2 million "likely identifiable class members" he initially supplied to the Court should have 4.2 million. Thus, Mr. Bursor was off by a mere 5 million (or greater than half of his originally proffered figure).