Joseph A. Boyle
Geoffrey W. Castello
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Dominic Surprenant
A. Brooks Gresham
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
(213) 443-3000

*Attorneys for Defendants*
*Sprint Nextel Corporation*
*Sprint Spectrum L.P. d/b/a Sprint Nextel*
*and Nextel Finance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>   -against-<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL and NEXTEL FINANCE COMPANY,<br><br>     Defendants. | No. 2:07-cv-05325-JLL-ES |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN EMERGENT STAY OF THE PROSECUTION OF CLASS RELEASED CLAIMS IN THE CALIFORNIA SUBSCRIBER CLASS CASES, FOR CONTEMPT OF THIS COURT'S FINAL JUDGMENT, TO ENJOIN RELITIGATION OF ISSUES SUBJECT TO THE COURT'S FINAL JUDGMENT AND FOR SANCTIONS INCLUDING ATTORNEYS' FEES**

## PRELIMINARY STATEMENT

It is with regret that Spring Nextel must burden the Court with a request for emergent relief to:  (i) enjoin a March 5, 2010 Temporary Restraining Order hearing (the "TRO Hearing") filed by class representatives in the action entitled *In re Cellphone Termination Fee Cases*, JCCP 4332 (the "Subscriber Class Case") currently scheduled before Judge Winifred Smith in the Alameda County Superior Court, State of California (the "California Court"); (ii) stay the Subscriber Class Case pending before Judge Smith (and specifically the TRO Hearing); and (iii) set a schedule for a contempt hearing against certain Settlement Class Members and their counsel.  The TRO Hearing is a renewal of a TRO application that this Court previously enjoined under the All Writs Act (the "Renewed TRO Application").   That All Writs Act injunction was issued after providing the Subscriber Class and their counsel a full fair opportunity to be heard.  Thus, the underlying basis for Sprint Nextel's application has already been established. Another emergent injunction is necessary now, and expressly authorized by the All Writs Act and the Anti-Injunction Act, because the Renewed TRO Application is an attack on this Court's Final Judgment.  If the Renewed TRO Application were granted, the release in the Settlement approved by the Final Judgment will be of no effect.  Further, the permanent injunction in the Final Judgment will have been vitiated.  Thus, a stay of the California Subscriber Case is necessary under the re-

litigation exception to the Anti-Injunction Act, *see* 28 U.S.C. 2283, to protect or effectuate the Final Judgment.

Scott A. Bursor, Esq. of the Law Offices of Scott A. Bursor, as liaison counsel for plaintiffs in the Subscriber Class Case pending in the California Court, appeared before this Court on January 15, 2009 for oral argument on Sprint's request for an All Writs Act injunction. Alan Plutzik, Esq. also appeared on behalf of the Executive Committee in the Subscriber Class Case. Both attorneys noted their appearances on behalf of "*Ayyad, et al.*" Joseph DePalma, Esq. also appeared as local counsel for "*Ayyad, et al.*" (*See* Declaration of Joseph A. Boyle, Esq. dated March 2, 2010 ("Boyle Decl.") Exhibit B at p. 3.) "*Ayyad, et al*" is a reference to certain named plaintiffs who are part of the ETF-related cases pending in the California Court. The portion of the California case that was the subject of the January 15, 2009 related to Subscriber Class Case.[1] The January 15, 2009 appearance was for a hearing on Sprint's application to enjoin the Subscriber Class Case under the All Writs Act. (*See* Order enjoining Subscriber Class Counsel and Staying the Subscriber Class Case (the "All Writs Act Order" Document No. 437)).

In issuing the All Writs Act Order, this Court found:

---

[1] The named plaintiffs in the Subscriber Class Case are Ramzy Ayyad, Jeweldean Hull and Catherine Zill. *See* Boyle Decl. Exhibit E. According to Gilardi & Co., the Settlement Administrator, Catherine Zill opted out on October 7, 2009. Mr. Ayyad and Ms. Hull have not opted-out. As such, they are Settlement Class Members subject to paragraph 23 of the Final Judgment. Boyle Decl. at ¶ 6, Ex. E.

The Subscriber Class is currently proceeding with summary judgment motions regarding the issue of whether or not Sprint's imposition of a flat-rate early termination fee ("ETF") is illegal under California law. Subscriber Class Counsel seeks to obtain, from Judge Winifred Smith of the Superior Court of California, an injunction preventing Sprint from charging flat-rate ETFs to any California customers covered by the Subscriber Class.

To allow the Subscriber Class Case to go forward with its request for injunctive relief in California would directly undermine the Larson Settlement by placing California consumers in a different position vis-à-vis the rest of the members of the Larson Settlement class and by giving California consumers a different set of benefits than that accorded to the entire class. Because the Court finds the Subscriber Class members to be covered in full by the Larson Settlement, any further state court litigation regarding that class – prior to this Court's final approval hearing regarding the Larson Settlement – will have the effect of obstructing this Court's "path to judgment." Diet Drugs, 282 F.3d at 234 ("the state action must not simply threaten to reach judgment first, it must interfere with the federal court's own path to judgment.") Specifically, this Court finds a substantial likelihood that any decision in the Subscriber Class Case would effectively scuttle a significant portion of the Larson Settlement and threaten its ultimate viability.

All Writs Act Order at 3; ¶¶ 3 and 4. As is apparent from the Order itself, as well as the briefing and arguments leading up to the All Writs Act Order, the injunction relating to the Subscriber Class Case was necessary to allow an unobstructed path to Final Judgment. The need for a continued injunction post Final Judgment arises due to Subscriber Class Counsel's unwillingness to heed the permanent injunction

in the Final Judgment as well as the terms of the approved Settlement. Thus, a stay is necessary to protect and effectuate the Final Judgment under the re-litigation exception to the Anti-Injunction Act.

This Court's Opinion granting Final Approval was entered on January 15, 2010, approving the Settlement and granted Class Certification of the Settlement Class. Boyle Decl. ¶ 2. On February 16, 2010, this Court entered its Final Judgment, arising out of that Opinion, which also enjoined further prosecution of any Class Released Claims. Boyle Decl. ¶ 6. As this Court found in the All Writs Act Order, the Subscriber Class Case involves Class Released Claims. Further, Mr. Bursor himself admitted at the January 15, 2009 hearing that, "if Your Honor approves the Settlement … without changing a word, any contrary order in California is going to be vacated, and it would be -- your order would be res judicata and that one would not. There is no way the California order survives Your Honor's approval of this Settlement." Boyle Decl. Exhibit B at 50:9-16. Thus, prosecution of the Subscriber Class Case by a Settlement Class Member has been permanently enjoined by the Final Judgment.

Despite this Court's clear permanent injunction preventing prosecution of the Subscriber Class Case, Subscriber Class Plaintiffs Ramzy Ayyad and Jeweldean Hull, and their counsel, Alan R. Plutzik, Esq., L. Timothy Fisher, Esq.; Bramson, Plutzik, Mahler & Birkhauser, LLP; Jacqueline E. Mottek,

Esq of the Positive Legal Group, LLP; J. David Franklin, Esq. of Franklin & Franklin; Scott A. Bursor, Esq. of the Law Office of Scott A. Bursor continue to prosecute the Subscriber Class Case. Boyle Decl. ¶ 4. This prosecution continues, despite the fact that these Subscriber Class Plaintiffs and the above-mentioned counsel were apprised of this Court's permanent injunction. Boyle Decl. ¶¶ 4 and 7. Thus, unfortunately, these attorneys and certain members of the Settlement Class will not abide this Court's Final Judgment without additional judicial intervention.

## PROCEDURAL HISTORY

On January 16, 2009, after a contested proceeding that included a lengthy hearing before this Court on January 15, 2009, this Court issued the All Writs Act Order (Document No. 139). Boyle Decl. ¶ 2. The All Writs Act Order enjoined Subscriber Class Counsel from any further prosecution of the Subscriber Class Case. Boyle Decl. Exs. A and B. That stay continued until the issuance of this Court's Order (Doc. No. 437) and Opinion (Doc. No. 438) approving the settlement in this matter on January 15, 2010. Boyle Decl. ¶2.

On February 5, 2010, Class Counsel submitted a proposed final judgment (Doc. No. 454). Boyle Decl. ¶ 3. Paragraph 23 thereof permanently enjoins Settlement Class Members who do not opt-out, either directly, representatively, or in any other capacity from commencing, continuing, or

prosecuting any action or proceeding against any or all Sprint Nextel Released Parties asserting any of the Class Released Claims.  Class Released Claims included any "injunction claims" and all Related Claims that are based on, or arise out of, ETF-related claims.  Document No. 84-2 at 7-9.  Listed as related claims in the Settlement Agreement are the "*In re Cellphone Termination Fee Cases*, JCCP 4332 (Alameda County Superior Court, State of California) (the "California State Court") (excluding the Ayyad Class Claims)."  Settlement Agreement, Document No. 84-2 at 17.  As this Court previously noted, and Mr. Bursor clearly admitted, the Subscriber Class Claims are covered by the Larson Settlement and as such continued litigation thereof is enjoined by the Final Judgment.  *See also* January 15, 2010 Opinion at 8, fn. 7 (the "California Subscriber Class Claims, part of the Cellphone Termination Fee Cases, JCCP 4332 (Calif. Superior Ct., Alameda Cty, CA), are identified as "Related Claims" in Article I of the Settlement Agreement. Thus, the Settlement Agreement will settle and release the California Subscriber Class Claims.")

On February 12, 2010, Counsel for Sprint Nextel submitted a letter, (Doc. No. 462), to the Court requesting, in light of the Renewed TRO Application, that the Court enter the Final Judgment as soon as possible.  Boyle Decl. ¶ 4; Ex. C.  The Renewed TRO application seeks to enjoin "Sprint [Nextel] from charging flat early termination fees to its California customers."  In support of this

application, Subscriber Class Counsel made the following arguments all of which were previously litigated before this Court:

- Subscriber Class Members Have Previously Established the Merits of Their TRO Application

- The Larson Settlement is Not Res Judicata Because Subscriber Class Members Were Not Adequately Represented and Did Not Receive Adequate Notice

- Subscriber Class Members Were Not Adequately Represented in The Larson Action

- The Larson Notice Was Inadequate

*See* Boyle Decl. at Ex. C at Ex. A pp. 3-7.

The alleged merits of the Renewed TRO Application was vigorously litigated as part of the approval process before this Court. The Court found that the settlement was adequate as a bargained for exchange, holding "[t]he fact that Sprint is permitted to continue to collect flat-rate ETFs is a provision which was part and parcel of heavy negotiation and compromise and was part and parcel of heavy negotiation and compromise, and was ultimately agreed upon by Class Counsel and Sprint in the context of the particular case." January 15, 2010 Opinion at 7, fn. 6.

The adequacy of notice was also a hotly contested matter, consuming days of testimony and several opinions by this Court including 14 pages of the January 15, 2010 Opinion. *Id.* at 9-23. Moreover, the Subscriber Class, being defined as current subscribers of Sprint, would have received a bill insert as part of

individual notice to them under the Amended Notice Plan.  *See* Amended Notice Plan at pp. 2-4; Document No. 340.

Finally, as to the adequacy of Class Counsel, the very issue raised in the Renewed TRO Application was squarely addressed in the January 15, 2010 Opinion.  In the Renewed TRO Application, Subscriber Class counsel contends, among other things, that the Subscriber Class was not adequately represented in this case because "the Larson plaintiffs never asserted claims on behalf of current subscribers and never sought perspective injunctive relief on behalf of subscribers subject to illegal ETFs, but yet to be charged."  *See* Boyle Decl. Ex. C at Ex. A p.14 of 41.  In the Opinion, this Court specifically addressed this contention and held:

> With respect to the Class representatives, the Court finds that Plaintiffs' interests are not antagonistic to those of other members of the Class. Lina Galleguillos, Michael Moore and Antranick Harrentsian (collectively, "Galleguillos Objectors") argue that Plaintiffs are inadequate representatives inasmuch as there are no named Plaintiffs who are current subscribers to Sprint's illegal ETFs; as a result, Plaintiffs did not negotiate or otherwise attempt to enjoin Sprint from enforcing its flat-rate ETFs in the future.  As a preliminary matter, Class members who had California Subscriber Class Claims, that is, claims asserted in California state court by Sprint customers who did not allege that they had been charged and/or paid an ETF, but instead alleged simply that they were subject to an ETF in their subscriber agreement, <u>do</u> receive a benefit under the terms of the Settlement if they are charged or are otherwise harmed by the flat-rate ETF. For instance, if they are charged an ETF, they would fall

into Category I or Category II Class members (depending on whether or not they paid the ETF), and would be entitled to the relief provided for under such categories. (Settlement Agreement, Art. II, Docket Entry No. 84-1). If they are otherwise harmed because of the existence of the flat-rate ETF, such Class members would fall into Category IV Class members and would be entitled to the relief afforded therein. (*Id.*). By contrast, the type of injunctive relief referred to by the Galleguillos Objectors – which would allow them to terminate without paying an ETF – could potentially expose such Class members to a counterclaim for damages from Sprint. *See, e.g.*, *Garrett v. Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal.3d 731, 741 (1973) ("We do not hold herein that merely because the late charge provision is void and thus cannot be used in determining the lender's damages, the borrower escapes unscathed. He remains liable for the actual damages resulting from his default.").

January 15, 2010 Opinion at 7-8. Thus, all of the issues raised in the Renewed TRO Application were expressly addressed before, and rejected by this Court. The re-litigation exception to the Anti-Injunction Act clearly applies to each and every argument made in the Renewed TRO Application.

On February 16, 2010, this Court entered the Final Judgment (Document No. 470) with the permanent injunction set forth above. Boyle Decl. ¶ 5; Ex. D. Paragraphs 23 and 24 of the Final Judgment provide:

23.   No Settlement Class Member, either directly, representatively, or in any other capacity (other than a Settlement Class Member who validly and timely submitted a valid Request for Extension), shall commence, continue, or prosecute any action or proceeding against any and all Sprint-Nextel Released Parties in any court or tribunal asserting any of the Class

Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding.

24.   Without affecting the finality of the Final Approval Order and Judgment, the Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Class, and the administration and enforcement of the Settlement.   Any disputes or controversies arising with respect to the enforcement or implementation of the Settlement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their right under Paragraphs 12, 13, 14 and 16 above.

Final Judgment ¶¶ 23 and 24.

On February 17, 2010, counsel for Sprint Nextel sent an e-mail to Messrs. Bursor, Plutzik, Franklin, Fisher and Ms. Mottek, the attorneys whose names appeared on the Renewed TRO Application.  That email requested that they "please confirm at [their] earliest convenience that you, and each of you [Messrs. Bursor, Plutzik, Franklin, Fisher and Ms. Mottek], will promptly withdraw plaintiffs' Renewed Application for An Order To Show Cause And Temporary Restraining Order filed in Cellphone Termination Fee Cases on February 11, 2010, which is set for hearing before Judge Smith on March 5, 2010."  Boyle Decl. ¶ 7; Ex. F.  To date, no response to that e-mail has been received.  A second e-mail was sent on March 1, 2010, the due date for the reply brief in further support of the Renewed TRO Application, to Messrs. Bursor, Plutzik, Franklin, Fisher and Ms.

Mottek.  Boyle Decl. ¶ 8; Ex. G.  Only Ms. Mottek responded.  Boyle Decl. ¶ 9, Ex. H.  She stated:

> Dominic,
>
> You should know that I was never consulted about and never agreed to the renewed motion for a preliminary injunction, and can find no reasonable basis for opposing your client's motion to dismiss.  As you may recall, I represent Jeweldean Hull and Ramzy Ayyad, both of whom are class representatives in the Sprint payer class action.  I trust that you will proceed accordingly.
>
> Please call if you have questions or comments.  Thanks very much.
>
> Jacqui Mottek
> Positive Legal Group

(*Id.*).  Despite this response, the Renewed TRO Application is still set for a hearing on March 5, 2010.  Boyle Decl. ¶ 10.

The Final Judgment should, and must, constitute an end to the many ETF cases (and all of the claims related to those cases) filed around the country. Allowing the Subscriber Class Counsel an opportunity to continue to litigate these issues in California (or anywhere else) *ad infinitum* not only constitutes contempt of the Final Judgment, but is also an impermissible collateral attack on the Final Judgment and a re-litigation of issues that were fully and finally decided by this Court.  An All Writs Act Injunction staying prosecution of Class Released Claims in the Subscriber Class Case is necessary to protect and enforce the Final Judgment.

Sprint Nextel respectfully requests that the Court immediately enjoin the March 5, 2010 hearing before Judge Winifred Smith in Alameda County and any further prosecution of Class Released Claims in the Subscriber Class Case, enjoin Subscriber Class Counsel from continuing to litigate Class Released Claims in Alameda County, or anywhere else, and set a hearing for a contempt proceeding against the Subscriber Class Named Plaintiffs and a finding of aiding and abetting contempt by the attorneys who filed the Renewed TRO Application and who refuse to abide by this Court's Final Approval Order.  Sprint Nextel also seeks its counsel fees as an appropriate sanction against the Settlement Class Members and/or their counsel for violation of this Court's Final Judgment.

## ARGUMENT

**I.   THE MARCH 5, 2010 RENEWED TEMPORARY RESTRAINING ORDER APPLICATION AND ANY FURTHER PROSECUTION OF CLASS RELEASED CLAIMS BY THE CALIFORNIA SUBSCRIBER CLASS CASE SHOULD BE ENJOINED UNDER THE ALL WRITS ACT PENDING A HEARING ON SPRINT NEXTEL'S APPLICATION**

As set forth in Exhibit C and F, Subscriber Class Counsel is seeking a renewed TRO Hearing on March 5, 2010.  This renewed application is the same application that this Court enjoined under the All Writs Act.  Specifically, this Court previously:

> **ORDERED** that Sprint's motion to temporarily enjoin Subscriber Class Counsel from any further prosecution of

> this claims in California state court is **GRANTED**; and it is further
>
> **ORDERED** that the Subscriber Class Case is hereby stayed until the earlier of 45 days after this court's final approval hearing regarding the Larson Settlement OR the date of issuance of this Court's opinion approving or denying the Larson Settlement; and it is further

All Writs Act Order at 6 (emphasis in original). This Order had an end date of January 15, 2010. Additional Orders after this end date should not have been necessary. However, they have been necessitated by the actions of Subscriber Class Counsel and the Subscriber Class Named Plaintiffs. While this Court's Final Judgment specifically enjoins Settlement Class Members, including Subscriber Class Members (and by implication their counsel), it does not enjoin any particular proceeding. Had the Subscriber Class Named Plaintiffs or their counsel heeded this Court's permanent injunction, this application would not be necessary. However, they have not done so and thus, a request is being made under the All Writs Act for this Court to enjoin not only Subscriber Class Members and their counsel, but also to stay the Subscriber Class Case and the impending March 5, 2010 hearing in that case. *See* 28 U.S.C. § 2283 (a stay of state court proceeding is appropriate to protect or effectuate a federal court judgment).

This further judicial intervention should not have been necessary. Indeed, once the Final Judgment was entered, all attempts to address any grievances with that Final Judgment should have been undertaken by way of

appeal to the Third Circuit.  Indeed, Mr. Bursor's statements to this Court on January 15, 2009 acknowledged just that:

> MR. BURSOR:  I don't agree with that, your Honor, and I'll tell you why.
>
> THE COURT:  Why?
>
> MR. BURSOR:  Because if your Honor approves the settlement --
>
> THE COURT:  As it is now, right --
>
> MR. BURSOR:  -- without changing a word, any contrary order in California is going to be vacated, and it would be -- your order would be res judicata, and that one would not.  There is no way that California order survives your Honor's approval of this settlement.
>
> There is no race or no interference with what your Honor is doing.  There is no way that Judge Smith's injunction could require as a legal matter a change in the class definition or a different settlement than here.
>
> What could happen -- the way I see it playing out, I actually don't want to argue the settlement, but I don't believe your Honor is going to approve the settlement.
>
> But assuming that the settlement is current form got approval from your Honor, if Judge Smith's restraining order had entered, I think your Honor's order would automatically vacate it, or it would lay a predicate for vacating that order, because the claims would then be resuscitated, so to speak, in the event the Third Circuit took another action, so Mr. Boyle's answer was just wrong.
>
> Your Honor, there is no way – there's no way that the California court can take any action on any matter that is pending in our case.

Boyle Decl. Ex. B at 50:6-24 – 51:1-9.  Mr. Bursor went even further and provided

the following:

> MR. BURSOR:  It would only be affected -- Sprint's
> conduct would only be affected between the time of the
> injunction in California and the time, your Honor, if you
> approve it, grants final approval of the settlement.  Once
> you grant final approval of the settlement, there is no
> more –
>
> THE COURT:  Are you willing to stipulate that if I were
> to approve the settlement as of that date, any injunctive
> relief you have ceases to exist?
>
> MR. BURSOR:  Yes.

Boyle Decl. Ex. B at 66:23-25 – 67:1-7.  Unfortunately, despite Mr. Bursor's

assurances and the entry of the Final Judgment, an emergent injunction preventing

the March 5, 2010 hearing is as necessary now as it was in January of 2009, if not

more so.  Importantly here, no Subscriber Class Named Plaintiffs even objected to

settlement.   This, despite the fact that their counsel appeared in this Court in

opposition to the All Writs Act Order in January of 2009, and filed several

additional oppositions to the All Writs Act Injunction.  *See* Document Nos. 318,

319 and 326.

### A.      The Court Has Continuing Jurisdiction Over This Matter

As described above, the Court, after careful consideration, determined

that the Settlement was the proper disposition of all ETF-related claims that were

brought, or could have been brought, against Sprint Nextel.  That determination is

reflected in the Final Approval Order, the Opinion on Final Approval and the Final Judgment.  In the Final Judgment, this Court also retained jurisdiction over the "Action," the Parties and the Settlement Class, and the administration and enforcement of the Settlement.  Further, any disputes or controversies with respect to the enforcement of the Settlement should be presented by motion to this Court. Final Judgment ¶¶ 24 and 25.  Under these circumstances, this Court has jurisdiction to hear the instant motion. *See Milliron v. T-Mobile USA, Inc.*, Civil Action No. 08-4149 (JLL), 12/08/09 Letter Opinion at 5. *See also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367 (3d Cir. 2001).

> **1.     The Court's Jurisdiction Over ETF-Related Claims Arises From The Need To Protect the Integrity of Its Final Order and to Prevent Re-Litigation of Issues It Already Decided**

The Court "retains ancillary jurisdiction to manage its proceedings, vindicate its authority, and effectuate its decrees." *In re Linerboard Antitrust Litig.*, 2008 U.S. Dist. LEXIS 80594, at *19 (E.D. Pa. 2008) (quoting *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) and *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003)).  Moreover, "no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin re-litigation in state court.  The jurisdiction that the federal court had when it entered its original judgment is enough to support" ancillary jurisdiction over such an application. *Linerboard*, 2008 U.S. Dist. LEXIS 80594,

at *20.   Hence, the Court has the inherent jurisdiction to prevent evasion of its Final Judgment and to enforce the permanent injunction contained therein.

### 2. The Court Expressly Retained Jurisdiction Over ETF-Related and All Released Claims Through Its Final Approval Order

In addition to its inherent authority, this Court properly retained jurisdiction over this dispute in the Final Judgment.   The Third Circuit has explained that a court may, through its orders, properly retain jurisdiction over post-approval disputes relating to class action settlements.   *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367 (3d Cir. 2001) ("district court expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment.   The court acted quite properly in retaining jurisdiction in that fashion.") (internal citation omitted).   The Court has done so here under paragraph 24 of the Final Judgment.

### 3. Certain Attorneys' Appeal of the Final Judgment Did Not Divest the Court of Jurisdiction to Hear this Motion[2]

In any event "the district court retains jurisdiction over any issues relating to the enforcement of the judgment" even though "the filing of [a] notice of appeal divests the district court of jurisdiction over any matters dealing with the merits of the appeal."   *United States v. York*, 909 F. Supp. 4, 9-10 (D.D.C. 1995);

---

[2]   The Law Offices of Scott A. Bursor and the Lite DePalma firm represented objectors Lina Galleguillos, Michael Moore and Antranick Harrentsian and filed notices of appeal on their behalf (Document No. 439).

*see also In re Armstrong*, No. 2001MC130, 2001 U.S. Dist. LEXIS 9769, at 6 (E.D. Pa. July 10, 2001) ("[D]istrict courts retain jurisdiction to enforce and implement judgments and orders that are the subject of pending appeals, as long as this enforcement, implementation, or treatment does not disturb the issues that are on appeal") (quotation omitted).    The effect of the Final Judgment, the Final Approval Order, and/or the Settlement Agreement (which the Court expressly directed the parties to implement) on the Subscriber Class Case "relat[es] to" only for the scope and enforceability of the Court's judgment, and not to the merits of these Orders and the Final Judgment.  Accordingly, the pendency of any appeals of the Final Judgment does not affect the Court's jurisdiction to hear this application. *Kerr v. Merrill Lynch. Pierce, Fenner & Smith Inc.*, No. 97-3223, 1987 U.S. Dist. LEX1S 6700, at * 1-2 & n. 1 (E.D. Pa. July 24, 1987) (finding that court had jurisdiction to enjoin litigation of claims in state court after ordering suit to arbitration despite pending appeal of that order); *see* generally 20 James Wm. Moore, et al., Moore's Federal Practice — Civil § 303.32 (3d ed. 2009) ("[u]ntil the district court's judgment is superseded or stayed, the judgment is fully in effect and the district court retains the authority to enforce the judgment" notwithstanding the pendency of an appeal).

**B.**   **The Court Should Exercise its Jurisdiction and**
**Stay the Subscriber Class Case and Specifically Enjoin**
**The March 5, 2010 Renewed TRO Application Hearing**
**Under the Re-Litigation Exception**

Pursuant to the All Writs Act, the Court may "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This authority is constrained by the Anti-Injunction Act, which prohibits federal courts from issuing injunctions to "stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. In order to "to ensure the effectiveness and supremacy of federal law," *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988), when "an injunction falls within one of [the Anti-Injunction Act's'] three exceptions, the All-Writs Act provides the positive authority for the federal courts to issue injunctions to state court proceedings," *In re Diet Drugs*, 369 F.3d 293, 305 (3d Cir. 2004) ("*Diet Drugs II*" (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133,143 (3d Cir. 1998)).

Here, the injunction is necessary to protect the Court's judgment contained in the Final Judgment and Final Approval Order. This is also known as the relitigation exception to the Anti-Injunction Act. *In re Prudential Insurance of Am. Sales Practices Litig.*, 261 F.3d 355 (3d Cir. 2001; *see also Milliron v. T-Mobile USA, Inc.*, Civil Action No. 08-4149 (JLL), Letter Opinion 12/8/09 at 6

("[t]he re-litigation exception was designed to permit a federal court to prevent state litigation of an issue that was previously present to be decided by a federal court.  It is founded in well recognized concepts of res judicata and collateral estoppel") (quoting *Chick Kam Choo*, 466 U.S. at 147).

The Renewed TRO Application seeks to litigate the adequacy of the *Larson* class representatives, which was specifically addressed in the Opinion. Similarly, the notice issue was substantially litigated at the fairness hearing and the subject of 14 pages of the Opinion.

Further, the Renewed TRO Application itself clearly involves prosecution of Class Released claims.  Mr. Bursor conceded this at the January 15, 2009 All Writs Act hearing.  The Court also concluded that, indeed, in issuing the All Writs Act Order, the California Subscriber Case is listed as a related case. Further, the California Subscriber Case involves an ETF-related claim.

The re-litigation exception to the Anti-Injunction Act applies.  The All Writs Act is necessary to protect and effectuate the Final Judgment.  It is respectfully requested that the injunction issue.

## II.   A FINDING OF CONTEMPT IS APPROPRIATE

### 1.   The Subscriber Class Named Plaintiffs in the California Action and Their Attorneys Should be Found In Contempt for Violating the Order

The Subscriber Class Named Plaintiffs' and their attorneys' California state court attack on this Court's Final Judgment and the Settlement Agreement agreed to thereunder ("State Court Attack") is in complete disregard for this Court's authority and is a brazen attempt to outflank an unambiguous order of this Court.  In the Third Circuit, such disobedience constitutes contempt.  Contempt will be found when: "(1) . . . a valid order of the court existed; (2) . . . the defendants had knowledge of the order; and (3) . . . the defendants disobeyed the order."  *Marchak v. Treadwell*, 2009 U.S. App. LEXIS 14605, *13 (3rd Cir. 2009). Each of the elements for a finding of contempt is clearly present here.

### A.   The Final Judgment is a Valid Order

This Court issued the Final Judgment enjoining the Subscriber Class Named Plaintiffs and their attorneys from litigating their ETF-related claims in any other court.  This Final Judgment was properly issued after thoughtful deliberation by the Court.  It was arrived at after an exhaustive fairness hearing process that included five days of hearing, including testimony and was the subject of 14 pages of the Opinion (Document No. 438).  Counsel for the Subscriber Class and other members of the Executive Committee either:  (i) appeared on the merits for other objectors, Mr. Bursor; (ii) were present at the fairness hearings, Mr. Bursor and

Mr. Plutzik; (iii) and/or submitted fee applications (Bramson, Plutzik, Mahler & Birkhaeuser, LLP (Document No. 458), Faruqi & Faruqi LLP (Document No. 445), Franklin & Franklin (Document No. 459), Gilman and Pastor, LLP (Document No. 447), Law Offices of Anthony A. Ferrigno (Document No. 451), Law Offices of Scott A. Bursor (Document No. 444), Mager & Goldstein, Reich Radcliff, LLP (Document No. 449), Carl Hilliard, Esq. (Document No. 467), Joshua P. Davis (Document No. 448), Jacquline Mottek (Positive Legal Group) (Document No. 446-1).   The proposed Final Judgment's permanent injunction language was an exhibit to the Preliminary Approval Order (Document No. 84-4). No one, Subscriber Class Named Plaintiffs including their counsel, Executive Committee Members or otherwise, objected to that language.  Finally, the request for entry of the Final Judgment was on the ECF for 11 days with not one objection being filed.   The Final Judgment appeared on the ECF on February 16, 2010 as Document No. 470.

Moreover, even if the Final Judgment was not properly issued, the Subscriber Class Named Plaintiffs and their attorneys must address such alleged impropriety by challenging the Final Judgment with the Third Circuit – not by disobeying it and objecting when a contempt action is brought.  *Marchak* at *13 (citing *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3rd Cir. 1990) ("As we have frequently stated, a party who is alleged to be in contempt of a court order may not

challenge the substantive merits of that order within contempt proceedings"). "[T]he validity of the order may not be collaterally challenged in a contempt proceeding for violating the order." *Marchak* at *13 (citing *Halderman v. Penhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3rd Cir. 1982). Such limitations apply equally to post-final judgment disobedience such as that demonstrated here. "There are strong public policy reasons for limiting review, even in post-final judgment proceedings, to matters which do not invalidate the underlying order." *Halderman* at 637 (3rd Cir. 1982). The Final Judgment was validly issued.

### B.   Subscriber Class Plaintiffs, Through Their Counsel, Are Aware of the Final Judgment

The California Subscriber Class Plaintiffs, through their counsel, who have sought the Renewed TRO Application, are aware of the injunction ordered by this Court in the Final Judgment. Boyle Decl. Ex. F. Thus, the California Subscriber Class Plaintiffs and their counsel are aware of this Court's permanent injunction and, continue to flout that injunction through the Renewed TRO Application.

### C.   Subscriber Class Named Plaintiffs and Their Counsel Have Disobeyed the Final Judgment

The Subscriber Class Named Plaintiffs Ramzy Ayyad and Jeweldean Hull, and their counsel, Alan R. Plutzik, Esq., L. Timothy Fisher, Esq., Bramson, Plutzik, Mahler & Birkhauser, LLP, Jacqueline E. Mottek, Esq of the Positive

Legal Group, LLP, J. David Franklin, Esq. of Franklin & Franklin and Scott A. Bursor, Esq. of the Law Office of Scott A. Bursor, willfully disobeyed this Court's Final Judgment by continuing to prosecute Related Claims settled in this action. Specifically, the Subscriber Class Named Plaintiffs and California Counsel requested that the California State Court enter an injunction on the very claims that were first enjoined in January of 2009, and finally enjoined in the Final Judgment. Such actions are in clear contravention to this Court's Final Judgment.

A finding of contempt is clearly appropriate here as the Subscriber Class Named Plaintiffs and their attorneys are fully aware of this Court's valid Final Judgment, and, thereafter, willfully disobeyed the Final Judgment. *See In re Packer Ave. Associates*, 884 F.2d 745 (3d Cir. 1989); *See also In Re Linerboard Antitrust Litig.*, 2008 U.S. Dist. Lexis 54359, *40-*47 (E.D. Pa. 2008) (Aff'd in part and Vac'd in part on other grounds by *In Re Linerboard Antitrust Litig.*, 2008 U.S. Dist. LEXIS 80594 (E.D. Pa. 2008). Indeed, a court's authority to issue an order is logically and necessarily tied to its inherent authority to enforce such order.

Nor does the fact that any of the Subscriber Class Counsel were not direct parties to the action or directly subject to the Final Judgment insulate them from liability for aiding and abetting the contempt. "[P]ersons 'in active concert or participation' with an enjoined party are also bound by the injunction, and may not

aid or abet the violation." *Marchak* at *30 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 674 (3rd Cir 1999); *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945); *Ex Parte Lennon*, 166 U.S. 548 (1897); *Operation Rescue* at 871; *Savarese v. Agriss*, 883 F.2d 1194, 1209 (3rd Cir. 1989).

In addition to clear liability for aiding and abetting contempt, "there is ample authority holding that a district court may issue a finding of contempt against a non-party." *Marchak* at *30; *Quinter v. Volkwagen of Am.*, 767 F.2d 969, 974 (3rd Cir. 1982). In fact, all that is required in order to proceed against a non-party is notice and an opportunity to be heard. *Marchak* at *31-32; *Quinter* at 972; *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3rd Cir. 1990). Here, Sprint Nextel is providing such notice and requesting, through an order to show cause, such opportunity for Subscriber Class Named Plaintiffs and their counsel to be heard. If this Court orders them to appear to show cause as to why their disobedience with the Final Approval Order is not contempt, they will have the requisite notice and opportunity to be heard.

## 2.     Relief Requested for Civil Contempt

"Sanctions for civil contempt serve two purposes: 'to coerce . . . into compliance with the court's order and to compensate for losses sustained by the disobedience." *Marchak* at *38 (*quoting Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3rd cir. 1994) (*quoting McDonald's Corp. v. Victory Inv.*, 727 F.2d 82,

87 (3rd Cir. 1984))).  "compensatory awards seek to ensure that the innocent party gets the benefit of the injunction . . . ." *Id.*

Sprint Nextel has expended significant costs and legal fees in its attempts to have the Subscriber Class Named Plaintiffs and their attorneys comply with this Court's Final Judgment.  Sprint Nextel has been forced to oppose the Renewed TRO Application and to move this Court to stop the Subscriber Class Named Plaintiffs' and their counsel's disobedience of the Final Judgment.  No such legal fees or expenses would have been required had the Subscriber Class Named Plaintiffs or their attorneys obeyed this Court's Final Judgment.  As such, Sprint Nextel is entitled to all legal fees and expenses stemming from these actions.

## III.  CONCLUSION

For the foregoing reasons, Sprint Nextel respectfully requests that its Order to Show Cause be granted.

DATED:      March 3, 2010            KELLEY DRYE & WARREN LLP

By:  *s/ Joseph A. Boyle*
      Joseph A. Boyle
      Geoffrey W. Castello
      Lauri A. Mazzuchetti
      200 Kimball Drive
      Parsippany, New Jersey 07054
      (973) 503-5900

QUINN EMANUEL URQUHART
 OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Attorneys for Defendants
Sprint Nextel Corporation and
Sprint Spectrum L.P.