# EXHIBIT C

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT
_____
BRUSSELS, BELGIUM
_____
AFFILIATE OFFICES
MUMBAI, INDIA

**200 KIMBALL DRIVE**

**PARSIPPANY, NEW JERSEY 07054**
_____
(973) 503-5900

FACSIMILE
(973) 503-5950
www.kelleydrye.com

DIRECT LINE: (973) 503-5920
EMAIL: jboyle@kelleydrye.com

February 12, 2010

VIA ECF

Hon. Jose L. Linares, U.S.D.J.
United States District Court for the
    District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street, Room 2042
Newark, New Jersey 07101

Re:   *Larson, et al. v. AT&T Mobility LLC f/k/a*
      *Cingular Wireless LLC, et. al.*
      Civ. No.: 07-5325 (JLL)

Dear Judge Linares:

This firm represents the Sprint defendants in the above-referenced matter. We regret troubling the Court, however, there is continued litigation in In re: Cellphone Termination Fee Cases JCCP 4332. This continued litigation involves claims that were settled and released pursuant to the Settlement that was approved by this Court's Opinion of January 15, 2010 [Doc. No. 438] and Order of that same date [Doc. No. 437]. As Your Honor can see from the filing attached as Exhibit A, certain counsel, many of whom appeared before Your Honor at the Fairness Hearing, have recently filed an application to renew a request for a temporary restraining order and injunctive relief in the California Subscriber case. That application was previously enjoined by this Court. The attached application is plainly a collateral attack on this Court's Opinion and Order approving the Settlement in this matter.

As Your Honor will recall, an All Writs Act Injunction was initially entered on January 26, 2009, staying among other things further litigation of the California Subscriber case [Doc. No. 139]. A copy of that Opinion is annexed hereto as Exhibit B. As the Court noted therein, "to allow the Subscriber Class case to go forward with its request for injunctive relief in California would directly undermine the Larson Settlement . . ." [Doc. No. 139 at p. 3]. That injunction was extended by this Court on April 30, 2009 [Doc. No. 322] up until the date the Opinion regarding final approval of the Settlement was issued. Unfortunately, the need for additional injunctive relief is now both immediate and apparent.

**KELLEY DRYE & WARREN LLP**

Hon. Jose L. Linares, U.S.D.J.
February 12, 2010
Page Two

We respectfully request that the Court execute the proposed Final Judgment that was submitted on February 5, 2010 as soon as possible. [Doc. No. 454]. A copy of the February 5, 2010 filing is annexed hereto as Exhibit C. The Final Judgment contains the following permanent injunctive relief:

> 23.    No Settlement Class Member, either directly, representatively, or in any other capacity (other than a Settlement Class Member who validly and timely submitted a valid Request for Extension), shall commence, continue, or prosecute any action or proceeding against any or all Sprint-Nextel Released Parties in any court or tribunal asserting any of the Class Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding.

This language is virtually identical to the language in the proposed Final Judgment that was appended to the Motion for Preliminary Approval [Doc. No. 84-4]. The entry of this proposed form of Final Judgment is referenced in the Settlement Agreement as a requirement for Sprint's approval of the Settlement [Doc. No. 84-2 p. 44]. No party objected to this injunctive relief language at the Final Fairness Hearing or at any other time, nor has a single objection been registered to the request for entry of the Final Judgment that was made on February 5, 2010. Accordingly, it is respectfully requested that the Court execute the Final Judgment so that the annexed application will be enjoined.

If the Court desires, we are available for a conference or other appearance in connection with this request. Thank you for Your Honor's consideration.

Respectfully submitted,

s/ Joseph A. Boyle

Joseph A. Boyle

JAB:mc
Attachments
cc:    All Counsel (via ECF)

# EXHIBIT A

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP**
Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
E-Mails: aplutzik@bramsonplutzik.com
        ltfisher@bramsonplutzik.com

Liaison Counsel for Plaintiffs and Member of
Plaintiffs' Executive Committee

**POSITIVE LEGAL GROUP, LLP**
Jacqueline E. Mottek (State Bar No. 124448)
3030 Bridgeway, Suite 106
Sausalito, CA  94965
Phone: (415) 233-4863
Facsimile: (415) 927-2584
E-mail: jmottek@positivelegalgroup.com

**FRANKLIN & FRANKLIN**
J. David Franklin (State Bar No. 41659)
550 West C Street, Suite 950
San Diego, CA 92101-8569
Telephone: (619) 239-6300
Facsimile: (619) 239-6369
E-Mail: jdfranklaw@san.rr.com

Members of Plaintiffs' Executive Committee

**LAW OFFICES OF SCOTT A. BURSOR**
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6513
Telephone: (212) 989-9113

Trial Counsel for Plaintiffs

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| In re:<br><br>CELLPHONE TERMINATION FEE CASES<br><br>This  document relates to:<br><br>*Ayyad v. Sprint Spectrum, L.P.,  et al.*, Case No. RG03-121510 | JCCP 4332<br><br>Class Action<br><br>**PLAINTIFFS' RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date: March 5, 2010<br>Time: 9:30 a.m.<br>Dep.: 23<br>**Reservation No. R1035380** |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that Plaintiffs hereby renew their application for a temporary

3    restraining order and for an order requiring defendant Sprint Nextel ("Sprint") to show cause why a

4    preliminary injunction should not issue enjoining Sprint from charging flat early termination fees

5    to its California customers.  This renewed application will be heard on March 5, 2010 at 9:30 a.m.

6    in Dept. 23 of the above-entitled Court, at 1221 Oak Street, Fourth Floor, Oakland, California,

7    before the Hon. Winifred Smith.

8    This application is made pursuant to the provisions of Code of Civil Procedure sections 526

9    and 527 and the Court's December 4, 2008 Statement of Decision finding Sprint's flat early

10   termination fee illegal under California law and on the grounds that plaintiffs and the class

11   members will suffer irreparable injury if Sprint is not enjoined from charging flat early termination

12   fees to its California customers.

13   This application is based upon the memorandum of points and authorities in support and the

14   declaration of L. Timothy Fisher, the December 4, 2008 Statement of Decision, the pleadings and

15   papers on file in this action and such matters as may be presented to the Court at the hearing on the

16   application.

17   Dated: February 11, 2010                    Respectfully submitted,

18                                               BRAMSON, PLUTZIK, MAHLER &
                                                   BIRKHAEUSER, LLP
19                                               Alan R. Plutzik (State Bar No. 077785)
                                                 L. Timothy Fisher (State Bar No. 191626)
20                                               2125 Oak Grove Road, Suite 120
                                                 Walnut Creek, CA  94598
21

22

23

24                                               By:_____

25                                                       L. Timothy Fisher

26                                               Liaison Counsel; Member, Plaintiffs' Executive
                                                 Committee for Early Termination Fee Claims
27

28

PLAINTIFFS' RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW          1
CAUSE RE PRELIMINARY INJUNCTION
60541

FRANKLIN & FRANKLIN
J. David Franklin (State Bar No. 41659)
550 W "C" St #950
San Diego, CA 92101-8569
Telephone: (619) 239-6300

Member, Plaintiffs' Executive Committee for Early
Termination Fee Claims

POSITIVE LEGAL GROUP, LLP
Jacqueline E. Mottek (State Bar No. 124448)
3030 Bridgeway, Suite 106
Sausalito, CA 94965
Telephone: (415) 233-4863

Member, Plaintiffs' Executive Committee for Early
Termination Fee Claims

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6513
Telephone: (212) 989-9113

FARUQI & FARUQI, LLP
Adam Gonnelli (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone: (212) 983-9330

GILMAN AND PASTOR, LLP
David Pastor (*pro hac vice*)
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: (617) 742-9700

LAW OFFICES OF ANTHONY A. FERRIGNO
Anthony A. Ferrigno (State Bar No. 61104)
P.O. Box 5799
San Clemente, CA 92674
Telephone: (949) 366-9700

REICH RADCLIFFE, LLP
Marc G. Reich (State Bar No. 159936)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512

ABERNETHY & GREEN
James Abernethy (*pro hac vice*)
3838 North Central Avenue, Suite 1750
Phoenix, Arizona 85012
Telephone: (602) 266-2222

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARL HILLIARD, ESQ.
1246 Stratford Court
Del Mar, CA 92014
Telephone: (858) 509-2938

AARP FOUNDATION LITIGATION GROUP
Stacy Canan, Esq.
601 E. Street NW
Washington, DC 20049
Telephone: (202) 434-2060

LAW OFFICES OF JOSHUA DAVIS
Joshua Davis (State Bar No. 193254)
437 Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223

AMAMGBO & ASSOCIATES, PLC
Donald Amamgbo (State Bar No. 164716)
1940 Embarcadero
Oakland, CA 94606
Telephone: (510) 434-7800

LAW OFFICES OF EMELIKE KALU
Emelike Kalu (State Bar No. 154283)
3540 Wilshire Blvd., Suite 7
Los Angeles, CA 90010
Telephone: (213) 480-4121

Attorneys for Plaintiffs

1   BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
    Alan R. Plutzik (State Bar No. 077785)
2   L. Timothy Fisher (State Bar No. 191626)
    2125 Oak Grove Road, Suite 120
3   Walnut Creek, CA  94598
    Telephone:  (925) 945-0200
4   Facsimile:  (925) 945-8792
    E-Mails: aplutzik@bramsonplutzik.com
5          ltfisher@bramsonplutzik.com

6   Liaison Counsel for Plaintiffs and Member of
    Plaintiffs' Executive Committee
7
    POSITIVE LEGAL GROUP, LLP                    FRANKLIN & FRANKLIN
8   Jacqueline E. Mottek (State Bar No. 124448)   J. David Franklin (State Bar No. 41659)
    3030 Bridgeway, Suite 106                     550 West C Street, Suite 950
9   Sausalito, CA  94965                          San Diego, CA 92101-8569
    Phone: (415) 233-4863                         Telephone: (619) 239-6300
10  Facsimile: (415) 927-2584                     Facsimile: (619) 239-6369
    E-mail:  jmottek@positivelegalgroup.com       E-Mail: jdfranklaw@san.rr.com
11
    Members of Plaintiffs' Executive Committee
12
    LAW OFFICES OF SCOTT A. BURSOR
13  Scott A. Bursor (pro hac vice)
    369 Lexington Avenue, 10th Floor
14  New York, NY  10017-6513
    Telephone: (212) 989-9113
15
    Trial Counsel for Plaintiffs
16
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
17
                          FOR THE COUNTY OF ALAMEDA
18
    In re:                                    JCCP 4332
19
    CELLPHONE TERMINATION FEE CASES           Class Action
20
    This  document relates to:                PLAINTIFFS' MEMORANDUM OF
21                                             POINTS AND AUTHORITIES IN
    Ayyad v. Sprint Spectrum, L.P., et al., Case No.   SUPPORT OF THEIR RENEWED
22  RG03-121510                               APPLICATION FOR AN ORDER TO
                                              SHOW CAUSE AND TEMPORARY
23                                            RESTRAINING ORDER

24                                            Date:  March 5, 2010
                                              Time: 9:30 a.m.
25                                            Dept.: 23

26                                            Reservation No. R1035380

27

28

## **TABLE OF CONTENTS**

**PAGE**

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS .......................................................................................... 2

III.  THE COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR A TRO ....................... 3

    A.  Plaintiffs Have Previously Estabished The Merits Of Their TRO
        Application .......................................................................................................... 3

    B.  The *Larson* Settlement Is Not Res Judicata Because Plaintiffs Were
        Not Adequately Represented and Did Not Receive Adequate Notice ................ 3

        1.  Subscriber Class Members Were Not Adequately
            Represented in the *Larson* Action .......................................................... 4

        2.  The *Larson* Notice Was Inadequate ....................................................... 7

            a.  The Larson Notice Violated California Rule of
                Professional Conduct 2-100 ........................................................ 7

            b.  The Larson Notice Conflicted with Prior Notices
                Issued by This Court .................................................................. 8

            c.  There Was Not Sufficient Individual Notice ................................ 9

            d.  The Larson Notice Contained False Information ....................... 10

            e.  There Were Numerous Other Defects in the Larson
                Notice ........................................................................................ 12

IV.  CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Auto Equity Sales, Inc. v. Superior Court*
    (1962) 57 Cal.2d 450 ................................................................................ 7, 11

*Cartt v. Superior Court*
    (1975) 50 Cal.App.3d 960 ........................................................................ 4, 10

*City of San Jose v. Superior Court*
    (1974) 12 Cal.3d 447 ............................................................................. 5, 6, 7

*Daar v. Yellow Cab Co.*
    (1967) 67 Cal.2d 695 ................................................................................... 4

*Eisen v. Carlisle & Jacquelin*
    (1974) 417 U.S. 156 .................................................................................... 9

*Hansberry v. Lee*
    (1940) 311 U.S. 32 .................................................................................. 4, 6

*Hassine v. Jeffes*
    (3d. Cir. 1988) 846 F.2d 169 ....................................................................... 5

*Janik v. Rudy, Exelrod & Zieff*
    (2004) 119 Cal.App.4th 930 ......................................................................... 4

*La Sala v. American Sav. & Loan Assn.*
    (1971) 5 Cal.3d 864 .................................................................................... 5

*Oppenheimer Fund, Inc. v. Sanders*
    (1978) 437 U.S. 340 .................................................................................... 9

*Simons v. Horowitz*
    (1984) 151 Cal.App.3d 834 .......................................................................... 4

*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*
    (1975) 48 Cal.App.3d 134 .......................................................................... 10

*Wershba v. Apple Computer, Inc.*
    (2001) 91 Cal.App.4[th] 224 ....................................................................... 10

## Statutes

28 U.S.C.
    § 2283 ..................................................................................................... 1

Civil Code
    § 1671(d) ............................................................................................. 2, 11

Fed. R. Civ. P.
    23(c)(2)(B) ............................................................................................... 9

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED
APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
60558

ii

## TABLE OF AUTHORITIES

**PAGE**

**Other Authorities**

H. Newberg and A. Conte,
  *Newberg on Class Actions* (4th ed. 2002) §11.64 ............................................................. 4

H. Newberg and A. Conte,
  *Newberg On Class Actions* (4th ed. 2002) § 15:18 ........................................................... 8

*Manual for Complex Litigation, Fourth*
  § 21.33 ........................................................................................................................... 8 ,9

*Some Preliminary Observations Concerning Civil Rule 23* by Judge Marvin E. Frankel
  (1967) 43 F.R.D. 39.......................................................................................................... 4

Witkin, *California Procedure*
  (5th Ed. 2008), Pleading § 270.......................................................................................... 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Millions of these agreements remain in term or recently terminated, with the same illegal flat ETFs addressed by Judge Sabraw's recent decision.  Based on Sprint's recent statements and conduct, it appears that Sprint intends to continue to charge and to attempt to collect these illegal fees on through November 2, 2010, when they will presumably be phased out due to attrition.  These ongoing charges will likely total close to a billion dollars nationwide, with about one-fifth charged to California accounts.

### III.   THE COURT SHOULD GRANT PLAINTIFFS' REQUEST FOR A TRO

#### A.   Plaintiffs Have Previously Established The Merits Of Their TRO Application

The papers submitted with plaintiffs' initial TRO application established both requirements for the issuance of a TRO.  Plaintiffs showed a complete likelihood of success on the merits since this Court had already determined that Sprint's ETFs are illegal after a full trial on the merits.  *See* 12/26/08 Memorandum of Points and Authorities In Support Of Plaintiffs' Application For Order To Show Cause And Temporary Restraining Order at 6-12, Exh. A to the Fisher Decl.  Plaintiffs also showed irreparable injury and a balance of harms tipping completely in plaintiffs' favor.  *Id.* at 12-13.  Plaintiffs also showed that public policy weighs heavily in favor of the proposed injunction.  *Id.* at 13-14.

The only question remaining is whether Sprint can escape the consequences of this Court's rulings and can continue to impose illegal charges that have been shown to cause irreparable injury to members of a certified class.  Sprint will no doubt argue that this Court is powerless to stop Sprint's illegal conduct because the *Larson* judgment is res judicata of the claims in this action.  Sprint is wrong.  This court is not powerless.  This court has the ability, and the obligation, to *independently* determine the merits of Sprint's res judicata defense.  For the reasons explained below, Sprint's defense has no merit.

#### B.   The *Larson* Settlement Is Not Res Judicata Because Plaintiffs Were Not Adequately Represented and Did Not Receive Adequate Notice

1    Absent class members have a "clear right" to collaterally attack a class action judgment

2    which purports to bind them. *See Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 968, fn. 12

3    (quoting *Some Preliminary Observations Concerning Civil Rule 23* by Judge Marvin E. Frankel

4    (1967) 43 F.R.D. 39, 46; *see also* 4 H. Newberg and A. Conte, *Newberg on Class Actions* (4th ed.

5    2002) §11.64 at 246 (leading class action treatise noting the importance of collateral attacks on

6    class action judgments).[3]  In *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, the First

7    Appellate District declared that a "collateral attack upon a judgment entered in a class action on the

8    grounds that the interests of absent class members were not adequately represented has *long been*

9    *sanctioned.*" *Id.* at 944, fn. 3 (emphasis added and citations omitted); *see also Simons v. Horowitz*

10   (1984) 151 Cal.App.3d 834, 844 (holding that a court may refuse to hold a class action judgment

11   binding on the absent parties if it concludes that the class was not adequately represented).  In fact,

12   it would violate due process to bind an absent class member to a judgment from a proceeding in

13   which the member was not adequately represented or did not receive adequate notice. *See*

14   *Hansberry v. Lee* (1940) 311 U.S. 32, 42-45 ("Nor without more, and with the due regard for the

15   protection of the rights of absent parties which due process exacts, can some be permitted to stand

16   in judgment for all.").  Under California law, this Court must carefully scrutinize the *Larson*

17   settlement to determine whether it is res judicata and binds the members of the Subscriber Class or

18   whether this action may proceed unabated. *See Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695,

19   706; *see also* 4 Witkin, *California Procedure* (5th Ed. 2008), Pleading § 270 at 346 ("But if the

20   judgment is thereafter collaterally attacked by an absent party, a more careful scrutiny of its

21   representative character may be made in determining whether it is res judicata.").  That is an issue

22   that was not determined, and could not have been determined, by Judge Linares in the *Larson* case.

23   It is an issue for *this* court to determine.

24          1.     **Subscriber Class Members Were Not Adequately**
               **Represented in the *Larson* Action**
25

26   _____

27   [3]     The court in *Cartt* also recognized, "[a] defendant who in one way or another victimizes
     hundreds of thousands, has, after all, no constitutional right to be subjected to only one lawsuit."
     *Id.* at 968.

28

1      Plaintiffs and the members of the Subscriber Class were not adequately represented in the

2    *Larson* action because the claims of the Subscriber Class were never asserted in that case. The

3    class representatives in *Larson* included only persons who had terminated service with Sprint.

4    There were no representatives that were current subscribers still subject to Sprint's illegal ETFs.

5    *See Larson* Second Amended Complaint ¶¶ 7-11, Exh. C to the Fisher Decl. Indeed, the *Larson*

6    plaintiffs never asserted claims on behalf of current subscribers and never sought prospective

7    injunctive relief on behalf of subscribers subject to illegal ETFs, but yet to be charged. *See Larson*

8    Complaint, Exh. D to the Fisher Decl., and *Larson* First Amended Complaint, Exh. E to the Fisher

9    Decl. (asserting no claims on behalf of subscribers, and seeking no prospective relief). It was not

10   until after the proposed settlement was made that such claims were cobbled into a new complaint.

11   The *Larson* plaintiffs did not assert the subscriber class claims because they lacked standing to

12   assert them. This lack of standing renders the Larson plaintiffs inadequate to represent current

13   subscribers. *See, e.g., Hassine v. Jeffes* (3d. Cir. 1988) 846 F.2d 169, 175-75 (holding that

14   plaintiffs who lack standing are "inadequate class representatives"); *see also La Sala v. American*

15   *Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 ("The cases uniformly hold that a plaintiff seeking to

16   maintain a class action must be a member of the class he claims to represent.").

17     The *Larson* class representatives had no interest in stopping those charges because, as

18   former customers, they were no longer subject to them. Prospective injunctive relief was therefore

19   of no value to those class representatives. That is why they did not seek it in their complaint and

20   did not negotiate for it in their settlement. But prospective injunctive relief against these charges is

21   of enormous value to the Subscriber Class in this case, who Sprint continues to charge millions of

22   dollars each month in illegal ETFs. The claims of the *Larson* class representatives are therefore

23   atypical of the claims of the Subscriber Class and the Larson class representatives are inadequate

24   representatives for the members of the Subscriber Class.

25     The failure of the *Larson* class representatives to assert claims on behalf of the Subscriber

26   Class also renders them inadequate under *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447.

27   Under *City of San Jose*, the *Larson* class representatives are inadequate because they did not assert

28

1   all claims reasonably expected to be raised by members of the class. *Id.* at 464 ("The plaintiffs

2   here inadequately represent the alleged class because they fail to raise claims reasonably expected

3   to be raised by the members of the class and thus pursue a course which, even should the litigation

4   be resolved in favor of the class, would deprive class members of many elements of damage.").

5   The *Larson* class representatives should have asserted claims on behalf of not only those former

6   subscribers who paid ETFs but also those current Sprint subscribers who were still subject to an

7   ETF.  Indeed, Sprint is quite familiar with this proposition as it has repeatedly asserted it in this

8   coordinated proceeding.  For instance, in its July 13, 2006 opposition to plaintiffs' motion for

9   reconsideration, Sprint cited *City of San Jose* and stated "Class counsel and class representatives

10  who do not pursue all claims the class members reasonably would expect to assert in the litigation

11  against the defendant are not adequate." 7/13/06 Opposition of Defendants to Plaintiffs' Motion

12  for Reconsideration, Exh. F to the Fisher Decl.  Indeed, Mr. Surprenant vigorously argued this

13  point before Judge Ronald Sabraw at the class certification hearing in 2006:

14          "[W]e emphasized in our opening statement and at pages 9 through
        12 that that violates our due process rights, the defendants, because if
15      the plaintiffs do not pursue all the claims that they could reasonably
        be expected to assert -- that is a quote from City of San Jose versus
16      Superior Court cited repeatedly in our surreply, 12 Cal.3d 447 -- then
        the plaintiffs have not had adequate representation. *The reason*
17      *that's important to the defendant, that exposes us in violation of*
        *our due process rights as the Hansberry v Lee, the United States*
18      *Supreme Court which we cite, says because then we're exposed to*
        *collateral attack in later costly litigation.*
19
        So what happened in the City of San Jose, Your Honor, there was a
20      class of homeowners of the subdivision that sued the municipality
        because of aircraft noise, nuisance.  The named plaintiff only brought
21      a claim for diminution in property value.  And the California
        Supreme Court said, well, there were a variety of remedies that you
22      could have pursued.  By seeking damages – this is at 12 Cal.3rd 464.
        Quote, "By seeking damages only for diminution in market value,
23      plaintiffs would effectively be waiving on behalf of hundreds of class
        members any possible recovery of potentially substantial damages."
24      And the Court said that was inadequate representation --

25      THE COURT:  Inadequate?

26      MR. SURPRENANT:  Inadequate.  And the Court remanded with an
        instruction.  It said this could not be cured with amendment 465 note
27      14.  It could not cure the failure of a sufficient community of interest.

28

> The named plaintiffs only wanted one remedy.  Absent class
> members were entitled to seek other remedies.  So they remanded
> and told the Superior Court to strike the class component.  And it
> couldn't be cured.
>
> …
>
> City of San Jose says what could absent class members reasonably
> expect claims to be pursued.

6/1/06 Hearing Tr. at 46:27-48:12 (emphasis added), Fisher Decl. Exh. G.  Mr. Surprenant was right on this point.  The failure of the *Larson* class representatives to assert claims for injunctive relief renders them inadequate under *City of San Jose*, and the *Larson* judgment is thus "exposed to collateral attack" on that ground.  *Id.* at 47:9-10.  That is exactly the collateral attack the Subscriber Class now brings.

Even Judge Linares recognized that the *Larson* plaintiffs made no effort to protect the interests of the Subscriber Class.  In the January 15, 2010 opinion, he wrote: "Plaintiffs did not negotiate or otherwise attempt to enjoin Sprint from enforcing its flat-rate ETFs in the future." 1/15/10 Opinion at 7, Exh. H to the Fisher Decl.  Although the federal court in *Larson* was not bound by *City of San Jose*, this court is bound by that decision.  *See Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (discussing the "rule requiring a court exercising inferior jurisdiction to follow the decisions of a court exercising a higher jurisdiction").  Thus, regardless of whatever standards were applied by the federal court in New Jersey, in *this* court, *City of San Jose* is binding and controlling authority establishing the inadequacy of the *Larson* class representatives vis-à-vis the Subscriber Class.

### 2. The *Larson* Notice Was Inadequate

#### a. *The Larson Notice Violated California Rule of Professional Conduct 2-100*

Before Judge Linares even considered preliminary approval and notice to the settlement class in *Larson*, both the Payer Class and Subscriber Class in *Ayyad* had been certified and had received court-approved notices from this court.  This Court had also appointed plaintiffs' counsel as class counsel representing both the Payer Class and the Subscriber Class.  The notice that was later issued in connection with the *Larson* settlement ran roughshod over the attorney-client

1   relationship that had established between plaintiffs' counsel in this case and the certified classes in

2   *Ayyad.*

3        Rule 2-100(A) of the Rules of Professional Conduct of the State Bar of California states:

4            While representing a client, a member shall not communicate directly or
             indirectly about the subject of the representation with a party the member
5            knows to be represented by another lawyer in the matter, unless the member
             has the consent of the other lawyer.
6
7   Thus, communications with members of a certified class must be made through class counsel.  The

    Federal Judicial Center's *Manual for Complex Litigation, Fourth* explains:
8
9            Once a class has been certified, the rules governing communications apply
             as though each class member is a client of class counsel. … Defendants'
10           attorneys, and defendants acting in collaboration with their attorneys, may
             only communicate through class counsel with class members on matters
             regarding the litigation.
11
12  *Id.* § 21.33 at 300.  Similarly, the Newberg class action treatise makes clear:

13           After a court has certified a case as a class action and the time for exclusions
             has expired, the attorney for the named plaintiff represents all class members
14           who are otherwise unrepresented by counsel.  Defense counsel must observe
             the rules of ethical conduct in these circumstances and communicate with
15           the opposing parties through their attorney, who is counsel for the class.

16  5 H. Newberg and A. Conte, *Newberg On Class Actions* (4th ed. 2002) § 15:18 at 66.

17       The Subscriber Class's court-appointed class counsel were not aware of the content of the

18  *Larson* notice or of its imminent dissemination – barely a month after this Court's issuance of

    notice to the Subscriber Class.  This communication did not go through the Subscriber Class's
19
    court-appointed counsel, and Subscriber Class counsel did not consent to it.  The *Larson* notice
20
    thus violated Rule 2-100.
21
              b.     *The Larson Notice Conflicted with Prior Notices*
22                   *Issued by This Court*

23       This Court published notice to Payer Class members by order dated March 18, 2007 and to

24  Subscriber Class members by order dated November 19, 2008.  Judge Linares ordered the

25  publication of the *Larson* notice a mere two weeks after the Subscriber Class notice, potentially

26  causing tremendous interference with this Court's notice program and confusion among class

27  members receiving conflicting notices from two different courts within less than a month.  The

28
    PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED          8
    APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
    60558

1   duelling notices conflict on a number of points.  The identity of class counsel.  The description of

2   the claims.  The scope of the classes.  The location of the court.  And numerous other basic matters.

3        The *Larson* settlement notice also omitted essential information.  Most notably, the notice

4   failed to mention that Judge Bonnie Sabraw had ruled that Sprint's ETFs were illegal and enjoined

5   their enforcement.  That omission was made even worse by the statement that "This notice does not

6   imply that there have been or would be any findings of violation of the law by Sprint Nextel."

7   Long Form Notice at 1, Exh. I to the Fisher Decl.  In fact there *was* a "finding[] of violation of the

8   law by Sprint Nextel" two weeks before the *Larson* notice was issued.

9        On this point and several others, the *Larson* notice provided class members with

10   fundamentally misleading information.  And it did so as part of an end-run around their court-

11   appointed attorneys, and an end- run around this Court, which should have had "ultimate control

12   over communications among the parties, third parties, or their agents and class members on the

13   subject matter of the litigation to ensure the integrity of the proceedings and the protection of the

14   class."  *Manual for Complex Litigation, Fourth* § 21.33 at 300.

15           *c.*    <u>*There Was Not Sufficient Individual Notice*</u>

16        In California class action cases, individual notice is strongly preferred unless personal

17   notification is "unreasonably expensive or the stake of individual class members is insubstantial."

18   C.R.C. 3.766(f).  Fed. R. Civ. P. 23(c)(2)(B) requires "individual notice to all [class] members who

19   can be identified through reasonable effort."  *See also Eisen v. Carlisle & Jacquelin* (1974) 417

20   U.S. 156, 175 ("[T]he names and addresses of 2,250,000 class members are easily ascertainable,

21   and there is nothing to show that individual notice cannot be mailed to each."); *Oppenheimer Fund,*

22   *Inc. v. Sanders* (1978) 437 U.S. 340, 345 (requiring individual notice even though the parties had

23   to "sort manually through a considerable volume of paper records, keypunch between 150,000 and

24   300,000 computer cards, and create eight new computer programs for use with records kept on

25   computer tapes that either are in existence or would have to be created from the paper records. ...

26   The cost of these operations was estimated in 1973 to exceed $16,000").

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED
APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
60558

9

1    In *Larson*, the objectors demonstrated that 4.1 million class members, many of whom were

2    Subscriber Class members, could have been identified at a relatively modest cost of approximately

3    2.4 cents per class member. *See* 10/19/09 Second Supplemental Declaration of Scott A. Bursor ¶ 6,

4    Exh. J to the Fisher Decl.; 10/19/09 Declaration of Colin Weir, Exh. K to the Fisher Decl.  Where

5    class members can be identified so cheaply and so easily, they should get individual notice –

6    especially when they are members of an already certified class and their rights are being

7    prejudiced.  Remarkably, Judge Linares refused to consider this evidence on the theory that certain

8    objectors had waived their rights to challenge the notice. *See* 1/15/10 Opinion at 20 and n. 18, Exh.

9    H to the Fisher Decl.[4]  But neither the Subscriber Class representative nor millions of Subscriber

10   Class members were objectors in the *Larson* case.  Plaintiff Zill, the class representative here, and

11   millions of other Subscriber Class members, made the decision not to challenge the *Larson*

12   settlement in New Jersey to preserve their ability to collaterally attack the *Larson* judgment in this

13   Court.  Thus, even if certain *Larson* objectors did waive their objections to the notice, Zill and

14   other members of the Subscriber Class did not.  They are entitled to press those arguments before

15   this Court as part of their collateral attack on the *Larson* judgment.  This Court must independently

16   evaluate their arguments and must examine the evidence Judge Linares refused to consider.

17               d.    The *Larson* *Notice Contained False Information*

18   California law requires that the information contained in a class notice be truthful and

19   accurate and not misleading. *See, e.g., Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4[th]

20   224, 251 (The notice "must *fairly apprise* the class members of the terms of the proposed

21   compromise and of the options open to dissenting class members.") (emphasis added).  "The

22   principal purpose of notice to the class is the *protection of the integrity of the class action process*."

23   *Cartt*, 50 Cal.App.3d at 970 (emphasis added).  In *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.*

24   (1975) 48 Cal.App.3d 134, the Court of Appeal reversed an order granting final approval to a

25   settlement because the class notice failed to disclose the existence of another case against the same

26

27   ―――――――――――――
     [4]    The objectors are appealing Judge Linares' ruling that they waived their right to challenge
     the notice.

28

1   defendant which would be barred by the settlement. *Id.* at 146. The court held that the failure to

2   give notice to the class concerning the existence of the other case and the effect of the settlement

3   "prevented a full and fair consideration of the adequacy of the settlement." *Id.* The court noted

4   that "the existence of another purported class action . . . would have been highly significant to the

5   members of the . . . class in deciding whether they should object to the *Trotsky* settlement or

6   request exclusion from the class." *Id.* at 152. Although the federal court in *Larson* was not bound

7   by *Trotsky*, this court is bound by that decision. *See Auto Equity Sales, Inc. v. Superior Court*

8   (1962) 57 Cal.2d 450, 455 (discussing the "rule requiring a court exercising inferior jurisdiction to

9   follow the decisions of a court exercising a higher jurisdiction"). Thus, regardless of whatever

10   standards were applied by the federal court in New Jersey, in *this* court, *Trotsky* is binding and

11   controlling authority establishing the inadequacy of the *Larson* notice.

12        As in *Trotsky*, the long form notice in *Larson* did not disclose information that Subscriber

13   Class members would have found significant in deciding whether to object or request exclusion

14   from the settlement. The Long Form Notice in *Larson* stated:

15              This notice does not imply that there have been or would be any findings of
16              violation of the law by Sprint Nextel ....

17   Long Form Notice at 2, Exh. I to the Fisher Decl. That statement is false, or at best misleading.

18   *See* 2/6/09 Affidavit of Todd B. Hilsee on Settlement Notices and Notice Plan ¶ 64, Exh. L to the

19   Fisher Decl. ("In fact, the information in the Long Form Notice about the legality of the ETF is

    essentially a lie."). The truth is that there *has* been a finding of violation of the law by Sprint

20   Nextel. *See, e.g.*, 12/4/08 Statement of Decision at 22:12-15 ("Plaintiffs have demonstrated that

21   the ETF is a violation of Civil Code § 1671(d) and any monies paid to Sprint for ETFs must be

22   returned to Plaintiffs."); *id.* at 1:19-23, ("Because the liquidated damage provision is invalid, the

23   Court enjoins Sprint from attempting to collect the unpaid flat ETFs and requires Sprint to provide

24   this decision to third parties owners of Sprint's accounts receivable that might include ETFs.").

25   The *Larson* notice was false when it was published on December 31, 2008, and it remained

26   uncorrected throughout the pendency of that action.

27

28

1    This false information was not a minor or peripheral issue.  It goes to the heart of the

2    Subscriber Class's claims.  The fact that Sprint's ETF had been found illegal meant that it could

3    not be enforced against Subscriber Class members – unless their claims challenging the ETFs were

4    released by the *Larson* settlement.  Thus, in deciding whether to opt out, a Subscriber Class

5    member surely would want to know that by opting out he or she would have full advantage of the

6    ruling of illegality – meaning the $200 ETF could not be enforced against them.  It is difficult to

7    conceive of any circumstance in which a rational and fully-informed member of the Subscriber

8    Class would agree to bear a $200 ETF on pain of an adverse credit report in exchange for the

9    purported $25 maximum benefit permitted under the *Larson* settlement.

         e.    *There Were Numerous Other Defects in the* Larson

10              *Notice*

11    The class members who objected to the *Larson* settlement also identified a number of

12    defects in the notice.  Class notice expert Todd B. Hilsee submitted two detailed affidavits

13    identifying numerous problems with both notice plans in the *Larson* action.[5]  *See* 2/6/09 Hilsee

14    Affidavit, Exh. L to the Fisher Decl.; 10/7/09 Hilsee Supplemental Affidavit, Exh. N to the Fisher

15    Decl.[6]  Mr. Hilsee also identified significant defects in the design and content of the notice.  *See*

16    2/6/09 Hilsee Affidavit at ¶¶ 47-81.  Mr. Hilsee noted that the class definition was an

17    "indecipherable run-on sentence of 176 words . . . certain to be misunderstood."  *Id.* at ¶¶ 58-61.

18    Mr. Hilsee also explained that the *Larson* notices were not written clearly in plain language that

19    could be easily understood by class members.  *See id.* at ¶¶ 71-74; *see also* 10/7/09 Hilsee

20    Supplemental Affidavit at ¶¶ 18-19, 22-26.  Even though Sprint and the *Larson* plaintiffs had two

21    opportunities to get it right, there were significant problems with the notices and they failed to

22    ensure that the class received the notice to which it was entitled.

23

24

25

   ────────────────────
[5]      As the Court may recall, Judge Linares rejected the original notice plan in an opinion dated
26    April 29, 2009.  Exh. M to the Fisher Decl.  A second notice plan followed and was subsequently
     approved by Judge Linares.
27    [6]      Plaintiffs incorporate Mr. Hilsee's affidavits by reference as though set forth fully herein.

28

1      Plaintiffs respectfully submit this memorandum of points and authorities in support of their

2  renewed application for an order to show cause and temporary restraining order.[1]

3                          I.      INTRODUCTION

4      Plaintiffs renew their application for a temporary restraining order ("TRO") to stop

5  defendant Sprint Nextel from charging and collecting illegal early termination fees ("ETFs").

6  Plaintiffs filed their initial application for a TRO on December 26, 2008 after Judge Bonnie Sabraw

7  ruled that Sprint's[2] flat ETFs were illegal. *See* 12/4/08 Statement of Decision at 1:19-23 ("Because

8  the liquidated damage provision is invalid, the Court enjoins Sprint from attempting to collect the

9  unpaid flat ETFs and requires Sprint to provide this decision to third parties owners of Sprint's

10  accounts receivable that might include ETFs.").

11      On January 2, 2009, this Court issued a tentative ruling finding that plaintiffs had

12  demonstrated "a probability of success on the merits" and would "suffer irreparable harm if an

13  injunction [was] denied." 1/2/09 Tentative Ruling, Exh. A to the Declaration of L. Timothy Fisher

14  (the "Fisher Decl."). Nevertheless, the Court refused to grant plaintiffs' application in its entirety

15  due to the pendency of the settlement in *Larson v. Sprint*, United States District Court for the

16  District of New Jersey Case No. 07-5325. Before the Court finalized its tentative ruling granting

17  the TRO, the federal court in the *Larson* case enjoined further proceedings here under the All Writs

18  Act, 28 U.S.C. § 2283. The *Larson* settlement has now been concluded and the All Writs Act

19  injunction has been lifted. As such, there is no longer any impediment to this Court's full and

20  independent consideration of plaintiffs' application for a TRO.

21      The Court should grant plaintiffs' application for the TRO in full because the merits have

22  been established by Judge Sabraw's 12/4/08 Statement of Decision. Sprint's only defense is res

23

24

_____

25  [1]      Plaintiffs hereby incorporate by reference the Memorandum of Points and Authorities in
   Support of Plaintiffs' Application for Order to Show Cause and Temporary Restraining Order filed
26  on December 26, 2008 in this action. A copy of that memorandum is attached as Exhibit B to the
   Fisher Decl.

27  [2]      Plaintiffs use the name "Sprint" to refer collectively to the pre-merger Sprint and Nextel
   companies and to post-merger Sprint Nextel. The ETFs of each of these entities were at issue in
28  the *Ayyad* trial, and each was found illegal.

1   judicata based on the *Larson* judgment, which is faulty due to the numerous defects in the *Larson*

2   settlement described below.

3               **II.   STATEMENT OF FACTS**

4        On December 4, 2008, Judge Bonnie Sabraw issued a statement of decision in *Ayyad*.

5   Judge Sabraw ruled that Sprint Nextel's flat ETFs were illegal and enjoined Sprint Nextel from

6   enforcing them. *See* 12/4/08 Statement of Decision at 1:19-23. Judge Sabraw declared:

7               Because the liquidated damage provision is invalid, the Court enjoins Sprint
                from attempting to collect the unpaid flat ETFs and requires Sprint to
8               provide this decision to third parties owners of Sprint's accounts receivable
                that might include ETFs.
9
    *Id.* The Court found that Sprint's, Nextel's, and post-merger Sprint Nextel's ETFs violate Civil
10
    Code § 1671(d), the CLRA, the UCL unlawful and unfair prongs, and also found in favor of the
11
    *Ayyad* plaintiffs on their common law claims for unjust enrichment and money had and received.
12
    The Court also ruled that Sprint's defenses based on federal preemption and alternate means of
13
    performance were meritless. In other words, the Court ruled in favor of plaintiffs on each and
14
    every one of plaintiffs' affirmative claims and ruled against Sprint on each and every one of
15
    Sprint's defenses to those claims. After a full trial on the merits, the central issue in these lawsuits
16
    had been resolved. Sprint's ETFs are illegal penalties. They cannot be enforced.
17
         Four days after Judge Sabraw's decision, this Court granted preliminary approval of the
18
    proposed settlement in *Larson*. This preliminary approval was obtained without notice to the
19
    *Ayyad* plaintiffs or their court-appointed, *certified* class counsel.
20
         The settlement of the *Larson* case was a last-ditch effort by Sprint to avoid the
21
    consequences of having lost the *Ayyad* trial. Even in the wake of Judge Sabraw's decision and the
22
    injunction it imposed, Sprint Nextel continues to enforce the very same illegal ETFs. For new
23
    customer agreements made after November 2, 2008, Sprint has switched to a pro-rated ETF. But
24
    that switch does not affect millions of existing Sprint contracts made before November 2, 2008,
25
    such as those under which many existing customers have been charged and are being dunned.
26

27

28

1

## IV.   CONCLUSION

2      This Court already determined that plaintiffs have satisfied the criteria for a TRO under

3   Code of Civil Procedure section 526(a).  Now that the *Larson* settlement is complete and the

4   injunction which prevented the Court from acting in 2009 has been dissolved, the Court should

5   grant plaintiffs' renewed application for a TRO.  Class members' due process rights would be

6   violated by giving res judicata effect to the *Larson* judgment because class members were not

7   adequately represented and were not given adequate notice.

8

9   Dated:  February 11, 2010                    Respectfully submitted,

10                                               BRAMSON, PLUTZIK, MAHLER &
                                                   BIRKHAEUSER, LLP
11                                               Alan R. Plutzik (State Bar No. 077785)
                                                 L. Timothy Fisher (State Bar No. 191626)
12                                               2125 Oak Grove Road, Suite 120
                                                 Walnut Creek, CA  94598
13

14

15

16                                               By:_____
                                                          L. Timothy Fisher
17

18                                               Liaison Counsel; Member, Plaintiffs' Executive
                                                 Committee for Early Termination Fee Claims
19                                               FRANKLIN & FRANKLIN
                                                 J. David Franklin (State Bar No. 41659)
20                                               550 W "C" St #950
                                                 San Diego, CA 92101-8569
21                                               Telephone:  (619) 239-6300

22                                               Member, Plaintiffs' Executive Committee for Early
                                                 Termination Fee Claims
23

24                                               POSITIVE LEGAL GROUP, LLP
                                                 Jacqueline E. Mottek (State Bar No. 124448)
25                                               3030 Bridgeway, Suite 106
                                                 Sausalito, CA  94965
26                                               Telephone: (415) 233-4863

27                                               Member, Plaintiffs' Executive Committee for Early
                                                 Termination Fee Claims
28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED         13
APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
60558

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY  10017-6513
Telephone:  (212) 989-9113

FARUQI & FARUQI, LLP
Adam Gonnelli (*pro hac vice*)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone:  (212) 983-9330

GILMAN AND PASTOR, LLP
David Pastor (*pro hac vice*)
63 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Telephone:  (617) 742-9700

LAW OFFICES OF ANTHONY A. FERRIGNO
Anthony A. Ferrigno (State Bar No. 61104)
P.O. Box 5799
San Clemente, CA  92674
Telephone:  (949) 366-9700

REICH RADCLIFFE, LLP
Marc G. Reich (State Bar No. 159936)
4675 MacArthur Court, Suite 550
Newport Beach, CA  92660
Telephone:  (949) 975-0512

ABERNETHY & GREEN
James Abernethy (*pro hac vice*)
3838 North Central Avenue, Suite 1750
Phoenix, Arizona 85012
Telephone: (602) 266-2222

CARL HILLIARD, ESQ.
1246 Stratford Court
Del Mar, CA 92014
Telephone: (858) 509-2938

AARP FOUNDATION LITIGATION GROUP
Stacy Canan, Esq.
601 E. Street NW
Washington, DC  20049
Telephone:  (202) 434-2060

LAW OFFICES OF JOSHUA DAVIS
Joshua Davis (State Bar No. 193254)
437 Valley Street
San Francisco, CA  94131
Telephone:  (415) 422-6223

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED
APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
60558

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMAMGBO & ASSOCIATES, PLC
Donald Amamgbo (State Bar No. 164716)
1940 Embarcadero
Oakland, CA 94606
Telephone: (510) 434-7800

LAW OFFICES OF EMELIKE KALU
Emelike Kalu (State Bar No. 154283)
3540 Wilshire Blvd., Suite 7
Los Angeles, CA 90010
Telephone: (213) 480-4121

Attorneys for Plaintiffs

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR RENEWED
APPLICATION FOR AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER
60558

15

# EXHIBIT B

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| LARSON, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :     CIVIL ACTION NO. 07-5325 (JLL) |
| | : |
| AT&T MOBILITY LLC, et al., | : |
| | :     ORDER |
| Defendants. | : |

---

**LINARES, District Judge.**

This matter comes before the Court on two separate Orders to Show Cause, which were issued on December 31, 2008, and January 7, 2009, respectively. The Orders pertained to: (1) Sprint's motion – pursuant to the All Writs Act, 28 U.S.C. § 1651(a) – to stay the *Ayyad* subscriber class litigation currently underway as part of the In re Cellphone Termination Fee Cases, JCCP 4332 (Alameda County Superior Court, State of California) ("Subscriber Class Case"); (2) Sprint's motion to also stay the ongoing California arbitration captioned Smith v. Sprint Spectrum, L.P., et al., No. 1220034325 (JAMS arbitration) ("Smith Arbitration");[1] and (3) Smith Arbitration counsel's ("Smith Counsel") motion to effect a mass opt-out of his class from the Larson settlement or alternatively to compel Sprint to provides the names, addresses, and contact information of his respective class members.

The Court having considered the briefs and other submissions of counsel, and having heard extensive oral argument on January 15, 2009, as to all issues; and for good cause shown, the Court finds as follows:

---

[1] Plaintiffs' counsel in the Larson matter ("Larson Counsel") join Sprint's motions.

(1)    This Court possesses jurisdiction over absent Larson class members as part of the

settlement in the instant case ("Larson Settlement").  Notice has gone out and the opt-out period

is currently running, Carlough v. Amchem Prods., 10 F.3d 189, 201 (3d Cir. 1993)

(commencement of opt-out period and dissemination of notice is sufficient for the court's

exercise of personal jurisdiction over absent class members).  In addition, in its conditional

approval of the Larson Settlement, this Court preliminarily found that the absent class members

were adequately represented by Larson Counsel.

(2)    The All Writs Act is limited in scope and application by the Anti-Injunction Act, 28

U.S.C. § 2283.  Under the Anti-Injunction Act, a Court cannot enjoin a state action unless the

enjoining court acts "where necessary in aid of jurisdiction."[2]  The Third Circuit has set forth a

three-part test to determine whether a court should invoke this exception to the Anti-Injunction

Act:

> First, we look to the nature of the federal action to determine what kinds of state
> court interference would sufficiently impair the federal proceeding.  Second, we
> assess the state court's actions, in order to determine whether they present a sufficient
> threat to the federal action.  And finally, we consider principles of federalism and
> comity, for a primary aim of the Anti-Injunction Act is to prevent needless friction
> between the state and federal courts.

In re Diet Drugs, 282 F.3d 220, 234 (3d Cir. 2002).  Moreover, the Third Circuit has identified

complex nationwide class actions with conditional settlements in place (as is the case here) as

being particularly vulnerable to competing state actions.  Id. at 236 ("In complex cases where

---

[2] The Anti-Injunction Act precludes a court from "grant[ing] an injunction to stay
proceedings in a State court except as expressly authorized by Act of Congress, or where
necessary in aid of jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  No
Act of Congress and no court judgment is at issue here; therefore, only the "in aid of jurisdiction"
exception applies.

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 31 of 44 PageID: 14683

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 28 of 41
Case 2:07-cv-05325-JLL-ES   Document 139   Filed 01/16/2009   Page 3 of 6

certification or settlement has received conditional approval, or perhaps even where settlement is

pending, the challenges facing the overseeing court are such that it is likely that almost any

parallel litigation in other fora represents a genuine threat to the jurisdiction of the federal

court.")

     (3)    The Subscriber Class is currently proceeding with summary judgment motions

regarding the issue of whether or not Sprint's imposition of a flat-rate early termination fee

("ETF") is illegal under California law.  Subscriber Class Counsel seeks to obtain, from Judge

Winifred Smith of the Superior Court of California, an injunction preventing Sprint from

charging flat-rate ETFs to any California customers covered by the Subscriber Class.

     (4)    To allow the Subscriber Class Case to go forward with its request for injunctive

relief in California would directly undermine the Larson Settlement by placing California

consumers in a different position vis-à-vis the rest of the members of the Larson Settlement class

and by giving California consumers a different set of benefits than that accorded to the entire

class.  Because the Court finds the Subscriber Class members to be covered in full by the Larson

Settlement, any further state court litigation regarding that class – prior to this Court's final

approval hearing regarding the Larson Settlement – will have the effect of obstructing this

Court's "path to judgment." Diet Drugs, 282 F.3d at 234 ("the state action must not simply

threaten to reach judgment first, it must interfere with the federal court's own path to judgment.")

Specifically, this Court finds a substantial likelihood that any decision in the Subscriber Class

Case would effectively scuttle a significant portion of the Larson Settlement and threaten its

ultimate viability.

     (5)    Smith Counsel's class – defined generally as those consumers across all states

except for California who paid or were charged an ETF in excess of their remaining monthly

recurring charges – is completely subsumed by the Larson Settlement. Thus, each Smith class

member has a remedy under the Larson Settlement. Therefore, the Court finds that further

prosecution of the Smith Class claims would directly undermine and preempt this Court's path to

judgment regarding the Larson Settlement.

(6)    The fact that notice has been issued and the opt-out period has ended in the Smith

Arbitration distinguishes it factually from any other case that has thus far addressed the propriety

of enjoining parallel state court actions that threaten to undermine a federal class action

settlement.[3] Seizing upon this difference, Smith Counsel contends that upon notice, and in any

event upon the conclusion of the opt-out period in the Smith Arbitration, the Smith Class had an

attorney-client relationship with Smith Counsel. This relationship, the argument goes, precluded

Sprint and Larson Counsel from negotiating a settlement that encompassed the Smith Class

without first consulting with Smith Counsel. This Court disagrees. Rather, in an apparent issue

of first impression, this Court finds that allowing the running of a state court opt-out period to

play a role in undermining a federal court settlement would effectively cause a race to the

courthouse whereby attorneys in state class actions would seek to disseminate notice and close

the opt-out period as quickly as possible. Instead of sanctioning or encouraging such practice,

this Court chooses to follow the principles enunciated by the Third Circuit, whereby a federal

---

[3] Neither party could cite to a case where the settling court sought to enjoin an action that had already completed its notice and opt-out period. This Court, having searched for such a case, also came up empty. Thus, the Court treats this issue as a novel one.

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 33 of 44 PageID: 14685

Case 2:07-cv-05325-JLL-ES   Document 462-1   Filed 02/12/10   Page 30 of 41
Case 2:07-cv-05325-JLL-ES   Document 139   Filed 01/16/2009   Page 5 of 6

court can enjoin parallel state court proceedings in order to protect its jurisdiction.[4] Here, the

Smith Arbitration is a certified class with no settlement in place, and its further prosecution will

clearly obstruct this court's consideration of final approval of the Larson Settlement.[5]

      (7)    It is well-settled that the right to opt-out of a class action is an individual one. <u>See,</u>

<u>e.g., Hanlon v. Chrysler Corp.,</u> 150 F.3d 1011, 1024 (9th Cir. 1998) ("[t]he right to participate, or

to opt out, is an individual one and should not be made by the class representative or class

counsel.") The Third Circuit has repeatedly upheld efforts by district courts enjoin state court

plaintiff from effecting mass opt-outs from federal actions. <u>See, e.g., Carlough v. Amchem</u>

<u>Prods.,</u> 10 F.3d 189, 198 (3d Cir. 1993). Given the overwhelming amount of law denying mass

opt-outs, Smith Counsel fails to convince this Court that a mass opt-out of any sort is applicable

here. Thus, Smith Counsel cannot opt out his class *en masse* from the Larson Settlement. The

Court also finds that Sprint is not obligated to provide to Smith Counsel the names and contact

information of each of his class members, such that he might effect an opt-out on behalf of each

---

[4] An arbitration is a "state proceeding" for purposes of the Anti-Injunction Act "if it has
been ordered or its award enforced by court in judicial (as opposed to merely ministerial)
proceedings." <u>Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,</u> 204 F.3d 867, 879 (9th
Cir. 2000). The Smith Arbitration resulted from a Florida state court order. Thus, the Anti-
Injunction act applies.

[5] Notably, Smith Counsel does not argue that the Smith Arbitration will not obstruct this
Court's path to judgment. Rather, Smith Counsel hangs his hat on the attorney-client argument
and the notion that the running of an opt-out period suffices to remove his case from All Writs
Act jurisdiction. Smith Counsel also makes the additional argument that the Smith Arbitration –
because it was first-filed – cannot be enjoined. The Third Circuit has clearly rejected the earlier-
filed argument. <u>Diet Drugs,</u> 282 F.3d at 238 n.14 ("it is conceivable that an earlier filed state
court action might present just as great an interference with the federal proceeding as a later filed
state action"); <u>see also In re Community Bank of Northern Virginia and Guaranty Bank Second</u>
<u>Mortgage Litigation,</u> No. 03-425, 2008 WL 821662, *6 (W.D.Pa. March 27, 2008) (enjoining
earlier-filed state case). Moreover, this Court rejects Smith Counsel's attorney-client argument.

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 34 of 44 PageID: 14686

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 31 of 41
Case 2:07-cv-05325-JLL-ES   Document 139   Filed 01/16/2009   Page 6 of 6

named individual.  Such a holding would effectively result in a prohibited mass opt-out and

violate the right of an individual to make the opt-out decision.  Furthermore, the ruling would

potentially scuttle the Larson Settlement because of Sprint's ability to void the Larson Settlement

if it results in a certain percentage of opt-outs.

   **ACCORDINGLY, IT IS THEREFORE** on this 15th day of January, 2009,

   **ORDERED** that Sprint's motion to temporarily enjoin Subscriber Class Counsel from

any further prosecution of its claims in California state court is **GRANTED;** and it is further

   **ORDERED** that the Subscriber Class Case is hereby stayed until the earlier of 45 days

after this Court's final approval hearing regarding the Larson Settlement OR the date of issuance

of this Court's opinion approving or denying the Larson Settlement; and it is further

   **ORDERED** that Sprint's motion to temporarily enjoin Smith Counsel from further

prosecution of his claims is **GRANTED;** and it is further

   **ORDERED** that the Smith Arbitration matter is hereby stayed until the earlier of 45 days

after this Court's final approval hearing regarding the Larson Settlement OR the date of issuance

of this Court's opinion approving or denying the Larson Settlement; and it is further

   **ORDERED** that Smith Counsel's request to effect a general mass opt-out of his class or

to compel Sprint to provide names and addresses of the member of his class is **DENIED;** and it

is further

   **ORDERED** that Sprint shall forward a copy of this Order to Judge Winifred Smith and

Judge Stephen E. Haberfeld (ret.).

   **SO ORDERED.**

                  _____
                 Jose L. Linares
                 United States District Judge

# EXHIBIT C

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 36 of 44 PageID: 14688

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 33 of 41
Case 2:07-cv-05325-JLL -ES   Document 454   Filed 02/05/10   Page 1 of 1

## CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

| | | | | |
|---|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | **5 BECKER FARM ROAD** | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | **ROSELAND, N.J. 07068-1739** | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | **PHONE (973) 994-1700** | AVRAM S. EULE | ALAN J. GRANT* |
| ELLIOT M. OLSTEIN | KENNETH L. WINTERS | **FAX (973) 994-1744** | RAYMOND W. FISHER | MARC D. MICELI |
| ARTHUR T. VANDERBILT, II | JEFFREY A. COOPER | **www.carellabyrne.com** | WALTER O. LUGER | RAYMOND E. STAUFFER* |
| JAN ALAN BRODY | CARL R. WOODWARD, III | | | JACOB A. KUBERT |
| JOHN M. AGNELLO | MELISSA E. FLAX | | OF COUNSEL | STEPHEN R. DANEK |
| CHARLES M. CARELLA | DENNIS F. GLEASON | | | ERIC MAGNELLI |
| JAMES E. CECCHI | DAVID G. GILFILLAN | | | DONALD ECKLUND |
| | G. GLENNON TROUBLEFIELD | | | VINCENZO M. MOGAVERO |
| | BRIAN H. FENLON | | | *MEMBER N.Y. BAR ONLY |
| JAMES D. CECCHI (1933-1995) | KHOREN BANDAZIAN | | | |
| JOHN G. GILFILLAN III (1936-2008) | LINDSEY H. TAYLOR | | | |

February 5, 2010

**VIA ECF**

Honorable Jose L. Linares, U.S.D.J.
United States District Court
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re: ***Larson, et al. v. AT&T Mobility, et al.***
       <u>**Civil Action No. 07-5325 (JLL)**</u>

Dear Judge Linares:

    We are co-counsel for the Class in the above matter. In accordance with the terms of the Settlement Agreement and Fed.R.Civ.P. 54(b), enclosed is a proposed form of Final Judgment, which is substantially in the form which was attached as Exhibit B to the Settlement Agreement. The form of Final Judgment has been modified to reflect events which have occurred subsequent to the filing of the Settlement Agreement, and has been agreed upon by the parties.  If it is acceptable to the Court, kindly sign the Judgment and have a "filed" copy returned to us via the Court's ECF system.

    Thank you for your continued attention to this matter.  If the Court has any questions, we are available at your convenience.

        Respectfully submitted,

       CARELLA, BYRNE, CECCHI,
      OLSTEIN, BRODY & AGNELLO, P.C.

        /s/ James E. Cecchi

        JAMES E. CECCHI

Enclosures

cc: All Counsel (via ECF)

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 37 of 44 PageID: 14689

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 34 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 1 of 8

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

JUDY LARSON, BARRY HALL, JOE
MILLIRON, TESSIE ROBB and WILLIE
DAVIS, individually and on behalf of all
others similarly situated,

          Plaintiffs,

vs.

AT&T MOBILITY LLC f/k/a CINGULAR
WIRELESS LLC and SPRINT NEXTEL
CORPORATION and SPRINT SPECTRUM
L.P. d/b/a SPRINT NEXTEL

          Defendants.

</td><td>

Civil Action No. 07-5325 (JLL)


**FINAL JUDGMENT**

</td></tr>
</table>

1.    Sprint Nextel and the Class Representatives reached a settlement (the "Settlement"). The Parties have submitted a detailed written Stipulation and Settlement Agreement (the "Agreement") together with numerous exhibits and proposed orders. To the extent not otherwise defined herein, all capitalized terms shall have the meanings attributed to them in the Agreement. The Court gave its preliminary approval of the Settlement on December 5, 2008 (the "Preliminary Approval Order"). The Court directed the parties to provide notice of the proposed Settlement by Invoice Notice, Publication Notice and via the internet for a final fairness hearing that was initially conducted on March 12, 13, 16 and 17. Pursuant to Court order, additional notice was provided through an Amended Notice Plan and the final fairness hearing was continued and concluded on October 21, 2009 (the "Fairness Hearing").

2.    This Court conducted the Fairness hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether the Settlement set forth in the Agreement executed by the Parties should be approved in final by this Court. Carella, Byrne,

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 38 of 44 PageID: 14690

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 35 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 2 of 8

Bain, Gilfillan, Cecchi, Stewart & Olstein, Freed & Weiss and Seeger Weiss appeared for the Plaintiffs and the Settlement Class.  Kelley, Drye & Warren LLP and Quinn Emanuel Urquhart Oliver & Hedges appeared for defendants Sprint Nextel. Fourteen objections were filed with respect to the proposed Settlement, and six sets of Settlement Class Members appeared at the hearing to contest the Settlement.

3.      After reviewing the pleadings and evidence filed in support of the request for final approval of the Settlement and hearing the attorneys for the Parties, and any objectors, the Court finds, for the reasons set forth in the Court's Opinion dated January 15, 2010 [Docket Entry 438]

        IT IS THIS        day of January, 2010

ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

4.      This Final Approval Order and Judgment incorporates and makes part hereof the Agreement and all Exhibits thereto and the contents of the January 15, 2010 Order [Docket Entry 437].

5.      The Court has personal jurisdiction over all Settlement Class Members and Sprint, Nextel, and the Court has subject matter jurisdiction to approve the Agreement and all Exhibits thereto.

6.      Based upon the record before the Court, including all submissions in support of the Class Settlement set forth in the Agreement, objections and responses there, as well as the Agreement itself, the Court hereby certifies the following nationwide class (the "Settlement Class") for settlement purposes only:

> All persons in the United States who are or were parties to a personal fixed-term subscriber agreement for a Sprint Nextel Wireless Service Account for personal or mixed business/personal use, whether on the Sprint CDMA network or Nextel iDen network, or both, **excluding accounts** for which the responsible party for the Wireless Service Account is a business, corporation

2

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 39 of 44 PageID: 14691

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 36 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 3 of 8

or a governmental entity, entered into between July 1, 1999 and December 31, 2008 and whose claims relate in any way to an Early Termination Fee or use of an Early Termination Fee in a fixed-term subscriber agreement, and/or use or propriety of a fixed-term subscriber agreement whether the term was for the initial fixed-term subscriber agreement or subsequent extensions or renewals to the fixed-term subscriber agreement for whatever reason and/or who were charged by or paid an Early Termination Fee to Sprint Nextel, excluding only the *Ayyad* Class Claims and Persons whose right to sue Sprint Nextel as a Settlement Class Member is otherwise barred by a prior settlement agreement and/or prior final adjudication on the merits. The Settlement Class includes Persons who were subject to an ETF, whether or not they paid any portion of the ETF either to Sprint Nextel or to any outside collection agency or at all, and includes persons who are prosecuting excluded claims to the extent such persons have claims other than those expressly excluded.

In so holding, the Court finds that the prerequisites of Fed.R.Civ. P. 23(a) & (b)(3) have been satisfied for certification of the nationwide Settlement Class for settlement purposes because: Settlement Class Members, numbering in the millions, are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class Members they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; the common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a nationwide class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter. In making all of the foregoing findings, the Court has exercised its discretion in certifying the Settlement Class, based, *inter alia*, upon the Court's familiarity with the claims and parties in this case, the interests of the various constituent groups, and the negotiation process overseen by Mediator Nicholas H. Politan.

3

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 40 of 44 PageID: 14692

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 37 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 4 of 8

7.      The Court further finds with respect to entry of the Prospective Relief that the Settlement Class should be certified pursuant to Fed.R.Civ.P. 23(b)(2) because Sprint Nextel has acted or refused to act on grounds that apply generally to the Settlement Class, so that injunctive or corresponding declaratory relief is appropriate respecting the Settlement Class as a whole.

8.      The Agreement and proposed Settlement were reached after arm's-length negotiations between the Parties.   The Agreement and the proposed Settlement are fair, reasonable, and adequate; consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Code and United States Constitution (including the Due Process Clause), and any other applicable law; and in the best interests of each of the Parties and the Settlement Class Members.

9.      The Court finds that in negotiating, entering into, and implementing the Settlement, the Plaintiffs and the Class Counsel have fairly and adequately represented and protected the interests of all of the Settlement Class Members.

10.     The Notice and the notice methodology implemented pursuant to the Agreement and the Amended Notice Plan (i) constituted the best practicable notice; (ii) constituted notice that was concise, clear and in plain, easily understood language and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the claims, issues and defenses of the Settlement Class, the definition of the Settlement Class certified, their right to be excluded from the Settlement Class; their right to object to the proposed Settlement, their right to appear at the Final Approval Hearing, through counsel if desired, and the binding effect of a judgment on Settlement Class Members; (iii) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States

4

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 41 of 44 PageID: 14693

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 38 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 5 of 8

Code, the United States Constitution (including the Due Process Clause), and any other applicable law.

11.     The terms of the Agreement and this Final Approval Order and Judgment are binding on the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors and assigns.

12.     As set forth in the Agreement and by operation of law, and incorporated by reference hereto, the terms of the Agreement and this Final Approval Order and Judgment shall have *res judicata*, collateral estoppel and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interests, or expenses which are based on or in any way related to any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Action or any other claims under state or federal law which arise from, are based on or in any way related to Sprint Nextel's fixed ETF charges.

13.     The Parties and their counsel are ordered to implement and to consummate the Agreement according to its terms and provisions.

14.     All claims against Sprint Nextel in this case, are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as provided below.

15.     The releases set forth in Article VI of the Agreement are incorporated by reference and provides, *inter alia*, that for and in consideration of the Cash Benefits, Non-Cash Benefits, Prospective Relief and Sprint Nextel Released Claims and the mutual promises contained in the Agreement, Plaintiffs and the Settlement Class Members, on behalf of

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 42 of 44 PageID: 14694

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 39 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 6 of 8

themselves and their respective agents, heirs, executors, administrators, successors, assigns, guardians, and representatives, fully and finally release, as of the date Final Approval Order becomes Final, Sprint Nextel from any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Action or any other claims under state or federal law which arise from, are based on or in any way related to the Action or the Class Released Claims.  The Class Released Claims include, without limitation, all claims relating to Sprint Nextel's fixed ETF charges.

16.    The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications and expansions of the Agreement and all exhibits attached hereto as (i) are consistent with the Final Approval Order and Judgment, and (ii) which do not limit the rights of Settlement Class Members under the Agreement.

17.    The Court hereby grants Class Counsel's request for an award of reasonable attorneys' fees and reimbursement of costs and expenses in the amount of $5,755,000.  In addition, the Court makes an Incentive Award for the Class Representatives in the amount of $3,000 for each Class Representative.

18.    The Court further approves the establishment of the Common Fund as set forth in the Agreement and the Escrow Agreement submitted by the Parties.

19.    The Court finds that the Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)    The Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 43 of 44 PageID: 14695

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 40 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 7 of 8

(b)    The Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

(c)    The Assets of the Escrow Account are segregated from other assets of Sprint Nextel, the transferor of payments to the Settlement Fund, and from the assets of persons related to Sprint Nextel.

20.    Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)    The Escrow Account met the requirements of Paragraph 19 of this Order prior to the date of this Order approving the establishment of the Common Fund subject to the continued jurisdiction of this Court; and

(b)    Sprint Nextel and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of Paragraphs 13(b) and 13(c) of this Order or January 1 of the calendar year in which all of the requirements of Paragraph 13 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

21.    Nothing in this Final Approval Order and Judgment, the Class Settlement, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Sprint Nextel.

7

Case 2:07-cv-05325-KM-ESK   Document 481-4   Filed 03/04/10   Page 44 of 44 PageID: 14696

Case 2:07-cv-05325-JLL -ES   Document 462-1   Filed 02/12/10   Page 41 of 41
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 8 of 8

22.     In the event that the Class Settlement does not become effective according to the terms of the Agreement, this Final Approval Order and Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered and released delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

23.     No Settlement Class Member, either directly, representatively, or in any other capacity (other than a Settlement Class Member who validly and timely submitted a valid Request for Extension), shall commence, continue, or prosecute any action or proceeding against any or all Sprint-Nextel Released Parties in any court or tribunal asserting any of the Class Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding.

24.     Without affecting the finality of the Final Approval Order and Judgment, the Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Class, and the administration and enforcement of the Settlement.  Any disputes or controversies arising with respect to the enforcement or implementation of the Settlement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs 12,13, 14 and 16 above.

25.     In accordance with Fed.R.Civ.P. 54(b), there being no just reason to delay, the Clerk is directed to enter this Final Approval Order and Judgment forthwith.

_____
JOSE L. LINARES, U.S.D.J.

8