# EXHIBIT D

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 2 of 26 PageID: 14698

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 1 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 1 of 8

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB and WILLIE DAVIS, individually and on behalf of all others similarly situated, | Civil Action No. 07-5325 (JLL) |
| Plaintiffs, | |
| vs. | **FINAL JUDGMENT** |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL | |
| Defendants. | |

1.     Sprint Nextel and the Class Representatives reached a settlement (the "Settlement"). The Parties have submitted a detailed written Stipulation and Settlement Agreement (the "Agreement") together with numerous exhibits and proposed orders. To the extent not otherwise defined herein, all capitalized terms shall have the meanings attributed to them in the Agreement. The Court gave its preliminary approval of the Settlement on December 5, 2008 (the "Preliminary Approval Order"). The Court directed the parties to provide notice of the proposed Settlement by Invoice Notice, Publication Notice and via the internet for a final fairness hearing that was initially conducted on March 12, 13, 16 and 17. Pursuant to Court order, additional notice was provided through an Amended Notice Plan and the final fairness hearing was continued and concluded on October 21, 2009 (the "Fairness Hearing").

2.     This Court conducted the Fairness hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether the Settlement set forth in the Agreement executed by the Parties should be approved in final by this Court. Carella, Byrne,

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 3 of 26 PageID: 14699

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 2 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 2 of 8

Bain, Gilfillan, Cecchi, Stewart & Olstein, Freed & Weiss and Seeger Weiss appeared for the

Plaintiffs and the Settlement Class.  Kelley, Drye & Warren LLP and Quinn Emanuel Urquhart

Oliver & Hedges appeared for defendants Sprint Nextel. Fourteen objections were filed with

respect to the proposed Settlement, and six sets of Settlement Class Members appeared at the

hearing to contest the Settlement.

     3.     After reviewing the pleadings and evidence filed in support of the request for final

approval of the Settlement and hearing the attorneys for the Parties, and any objectors, the Court

finds, for the reasons set forth in the Court's Opinion dated January 15, 2010 [Docket Entry 438]

     IT IS THIS *16th* day of ~~January~~, 2010  *February*

ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

     4.     This Final Approval Order and Judgment incorporates and makes part hereof the

Agreement and all Exhibits thereto and the contents of the January 15, 2010 Order [Docket Entry

437].

     5.     The Court has personal jurisdiction over all Settlement Class Members and Sprint,

Nextel, and the Court has subject matter jurisdiction to approve the Agreement and all Exhibits

thereto.

     6.     Based upon the record before the Court, including all submissions in support of

the Class Settlement set forth in the Agreement, objections and responses there, as well as the

Agreement itself, the Court hereby certifies the following nationwide class (the "Settlement

Class") for settlement purposes only:

> All persons in the United States who are or were parties to a
> personal fixed-term subscriber agreement for a Sprint Nextel
> Wireless Service Account for personal or mixed business/personal
> use, whether on the Sprint CDMA network or Nextel iDen
> network, or both, **excluding accounts** for which the responsible
> party for the Wireless Service Account is a business, corporation

2

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 4 of 26 PageID: 14700

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 3 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 3 of 8

> or a governmental entity, entered into between July 1, 1999 and
> December 31, 2008 and whose claims relate in any way to an Early
> Termination Fee or use of an Early Termination Fee in a fixed-
> term subscriber agreement, and/or use or propriety of a fixed-term
> subscriber agreement whether the term was for the initial fixed-
> term subscriber agreement or subsequent extensions or renewals to
> the fixed-term subscriber agreement for whatever reason and/or
> who were charged by or paid an Early Termination Fee to Sprint
> Nextel, excluding only the *Ayyad* Class Claims and Persons whose
> right to sue Sprint Nextel as a Settlement Class Member is
> otherwise barred by a prior settlement agreement and/or prior final
> adjudication on the merits. The Settlement Class includes Persons
> who were subject to an ETF, whether or not they paid any portion
> of the ETF either to Sprint Nextel or to any outside collection
> agency or at all, and includes persons who are prosecuting
> excluded claims to the extent such persons have claims other than
> those expressly excluded.

In so holding, the Court finds that the prerequisites of Fed.R.Civ. P. 23(a) & (b)(3) have been

satisfied for certification of the nationwide Settlement Class for settlement purposes because:

Settlement Class Members, numbering in the millions, are so numerous that joinder of all

members is impracticable; there are questions of law and fact common to the Settlement Class;

the claims and defenses of the Class Representatives are typical of the claims and defenses of the

Settlement Class Members they represent; the Class Representatives have fairly and adequately

protected the interests of the Settlement Class with regard to the claims of the Settlement Class

they represent; the common questions of law and fact predominate over questions affecting only

individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to

warrant a nationwide class settlement; and the certification of the Settlement Class is superior to

individual litigation and/or settlement as a method for the fair and efficient resolution of this

matter.   In making all of the foregoing findings, the Court has exercised its discretion in

certifying the Settlement Class, based, *inter alia*, upon the Court's familiarity with the claims

and parties in this case, the interests of the various constituent groups, and the negotiation

process overseen by Mediator Nicholas H. Politan.

7.      The Court further finds with respect to entry of the Prospective Relief that the Settlement Class should be certified pursuant to Fed.R.Civ.P. 23(b)(2) because Sprint Nextel has acted or refused to act on grounds that apply generally to the Settlement Class, so that injunctive or corresponding declaratory relief is appropriate respecting the Settlement Class as a whole.

8.      The Agreement and proposed Settlement were reached after arm's-length negotiations between the Parties.   The Agreement and the proposed Settlement are fair, reasonable, and adequate; consistent with and in compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Code and United States Constitution (including the Due Process Clause), and any other applicable law; and in the best interests of each of the Parties and the Settlement Class Members.

9.      The Court finds that in negotiating, entering into, and implementing the Settlement, the Plaintiffs and the Class Counsel have fairly and adequately represented and protected the interests of all of the Settlement Class Members.

10.     The Notice and the notice methodology implemented pursuant to the Agreement and the Amended Notice Plan (i) constituted the best practicable notice; (ii) constituted notice that was concise, clear and in plain, easily understood language and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the claims, issues and defenses of the Settlement Class, the definition of the Settlement Class certified, their right to be excluded from the Settlement Class; their right to object to the proposed Settlement, their right to appear at the Final Approval Hearing, through counsel if desired, and the binding effect of a judgment on Settlement Class Members; (iii) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the United States

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 6 of 26 PageID: 14702

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 5 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 5 of 8

Code, the United States Constitution (including the Due Process Clause), and any other applicable law.

11. The terms of the Agreement and this Final Approval Order and Judgment are binding on the Plaintiffs and all other Settlement Class Members, as well as their heirs, executors and administrators, successors and assigns.

12. As set forth in the Agreement and by operation of law, and incorporated by reference hereto, the terms of the Agreement and this Final Approval Order and Judgment shall have *res judicata*, collateral estoppel and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interests, or expenses which are based on or in any way related to any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Action or any other claims under state or federal law which arise from, are based on or in any way related to Sprint Nextel's fixed ETF charges.

13. The Parties and their counsel are ordered to implement and to consummate the Agreement according to its terms and provisions.

14. All claims against Sprint Nextel in this case, are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as provided below.

15. The releases set forth in Article VI of the Agreement are incorporated by reference and provides, *inter alia*, that for and in consideration of the Cash Benefits, Non-Cash Benefits, Prospective Relief and Sprint Nextel Released Claims and the mutual promises contained in the Agreement, Plaintiffs and the Settlement Class Members, on behalf of

themselves and their respective agents, heirs, executors, administrators, successors, assigns, guardians, and representatives, fully and finally release, as of the date Final Approval Order becomes Final, Sprint Nextel from any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Action or any other claims under state or federal law which arise from, are based on or in any way related to the Action or the Class Released Claims. The Class Released Claims include, without limitation, all claims relating to Sprint Nextel's fixed ETF charges.

16.     The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications and expansions of the Agreement and all exhibits attached hereto as (i) are consistent with the Final Approval Order and Judgment, and (ii) which do not limit the rights of Settlement Class Members under the Agreement.

17.     The Court hereby grants Class Counsel's request for an award of reasonable attorneys' fees and reimbursement of costs and expenses in the amount of $5,755,000. In addition, the Court makes an Incentive Award for the Class Representatives in the amount of $3,000 for each Class Representative.

18.     The Court further approves the establishment of the Common Fund as set forth in the Agreement and the Escrow Agreement submitted by the Parties.

19.     The Court finds that the Escrow Account is a "Qualified Settlement Fund" as defined in section 1.468B-1(a) of the Treasury Regulations in that it satisfies each of the following requirements:

(a)     The Escrow Account is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 8 of 26 PageID: 14704

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 7 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 7 of 8

(b)   The Escrow Account is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liability arising out of an alleged violation of law; and

(c)   The Assets of the Escrow Account are segregated from other assets of Sprint Nextel, the transferor of payments to the Settlement Fund, and from the assets of persons related to Sprint Nextel.

20.   Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

(a)   The Escrow Account met the requirements of Paragraph 19 of this Order prior to the date of this Order approving the establishment of the Common Fund subject to the continued jurisdiction of this Court; and

(b)   Sprint Nextel and the "administrator" under section 1.468B-2(k)(3) of the Treasury Regulations may jointly elect to treat the Escrow Account as coming into existence as a "Qualified Settlement Fund" on the later of the date the Escrow Account met the requirements of Paragraphs 13(b) and 13(c) of this Order or January 1 of the calendar year in which all of the requirements of Paragraph 13 of this Order are met.  If such relation-back election is made, the assets held by the Escrow Account on such date shall be treated as having been transferred to the Escrow Account on that date.

21.   Nothing in this Final Approval Order and Judgment, the Class Settlement, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Sprint Nextel.

Case 2:07-cv-05325-KM-ESK   Document 481-5   Filed 03/04/10   Page 9 of 26 PageID: 14705

Case 2:07-cv-05325-JLL -ES   Document 470   Filed 02/16/10   Page 8 of 8
Case 2:07-cv-05325-JLL -ES   Document 454-1   Filed 02/05/10   Page 8 of 8

22.    In the event that the Class Settlement does not become effective according to the terms of the Agreement, this Final Approval Order and Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered and released delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

23.    No Settlement Class Member, either directly, representatively, or in any other capacity (other than a Settlement Class Member who validly and timely submitted a valid Request for Extension), shall commence, continue, or prosecute any action or proceeding against any or all Sprint-Nextel Released Parties in any court or tribunal asserting any of the Class Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding.

24.    Without affecting the finality of the Final Approval Order and Judgment, the Court shall retain continuing jurisdiction over the Action, the Parties and the Settlement Class, and the administration and enforcement of the Settlement.  Any disputes or controversies arising with respect to the enforcement or implementation of the Settlement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs 12,13, 14 and 16 above.

25.    In accordance with Fed.R.Civ.P. 54(b), there being no just reason to delay, the Clerk is directed to enter this Final Approval Order and Judgment forthwith.

_____

JOSE L. LINARES, U.S.D.J.

8

# EXHIBIT E

1

2                      SUPERIOR COURT OF CALIFORNIA

3                            COUNTY OF ALAMEDA

4

5

6
In re:  CELLPHONE TERMINATION          )    J.C.C.P. 4332
7          FEE CASES                    )
                                        )    ORDER (1) REMOVING COUGHLIN
8                                       )    STOIA FROM EXECUTIVE
                                        )    COMMITTEE AND (2) APPOINTING
9                                       )    POSITIVE LEGAL GROUP TO THE ETF
                                        )    EXECUTIVE COMMITTEE.
10                                      )
                                        )    Date:     April 1, 2009
11                                      )    Time:     9:30 am
                                        )    DEPT.:   23
12                                      )
                                        )
13   _____

14

15          The motion of Bramson, Plutzik, Mahler & Birkhaeuser regarding the

16
   Composition of the ETF Executive Committee came on for hearing on April 1, 2009, in
17
   Department 23 of this Court, the Honorable Winifred Smith presiding.  After
18
   consideration of the briefing and the argument, IT IS ORDERED:
19

20

21   FACTS.

22          The Court formed and determined the composition of the Plaintiffs' ETF
23
   Executive Committee in 2004.  Orders of 1/28/04, 2/10/04.  The Court has had previous
24
   occasion to review the composition of the ETF Executive Committee.  Orders of 6/29/05,
25
   10/11/05.  The composition of the Plaintiffs' ETF Executive Committee at all times in the
26

27

                                        1

1   course of this case has been the three law firms of (1) Bramson, Plutzik, Mahler &

2   Birkhaeuser ("BPMB"), (2) Frankin & Franklin, and (3) the firm that evolved into

3   Coughlin Stoia Geller Rudman & Robbins ("CSGRR").

4       When the counsel structure was devised in 2003 any plaintiff could assert claims

5   against any carrier under the UCL, Business and Professions Code §§ 17200 et seq.

6   Given the law at the time it is unclear what weight the Court gave to the identity of the

7   named plaintiffs and their choice of counsel.  After the UCL was amended by Proposition

8

9   64 in 2004 claims could be asserted only by persons with injury in fact from the allegedly

10  unlawful business practice.  Order of 2/17/05.  The resulting amended complaints

11  necessarily focused on the claims of the named plaintiffs.

12      Much has changed in this case since the start of the coordinated proceeding: (1)

13

14  the ETF claims against Verizon have settled and are on appeal; (2) the ETF claims against

15  Sprint have gone to trial and are on appeal; (3) the ETF claims against Nextel were not

16  resolved on summary judgment and are on appeal; (4) the ETF claims against T-Mobile

17  are the subject of a motion for preliminary approval of class settlement in New Jersey;

18

19  and (5) the ETF claims against Cingular and AWS have been certified for class treatment.

20      The representations of counsel indicate the following relationships among the

21  cases, the named plaintiffs, and the counsel retained by the named plaintiffs in this

22  coordinated proceeding.  This chart is for the purpose of the Court's analysis and does not

23  create or alter any attorney-client relationships.

24  ///

25  ///

26

27

2

| Defendant/claims | Named Plaintiffs | Counsel retained by Named Plaintiffs |
|---|---|---|
| Verizon ETF settlement | Christina Nguyen | BPMB; Bursor; Reich Radcliffe |
| Verizon ETF settlement | Molly White | Positive Legal Group |
| Sprint ETF Payer Class | Ramzay Ayyad | Positive Legal Group |
| Sprint ETF Payer Class | Jeweldean Hull | Positive Legal Group |
| Sprint ETF Payer Class | Richard Samko | Ferrigno; Franklin |
| Sprint ETF Payer Class | Amanda Selby | Ferrigno; Franklin |
| Sprint Current Subscriber Class | Ramzay Ayyad | Positive Legal Group |
| Sprint Current Subscriber Class | Jeweldean Hull | Positive Legal Group |
| Sprint Current Subscriber Class | Katherine Zill | BPMB; Bursor; Farqui & Farqui |
| Nextel Payer Class | Christine Morton | Unclear |
| Nextel Payer Class | Luis Ramirez | Strange & Carpenter |
| Cingular ETF Payer Class | Angela Rel | Ferrigno; Franklin |
| Cingular Current Subscriber | Astrid Mendoza | BPMB; Bursor |
| Cingular Current Subscriber | Leslie Armstrong-Bernardi | BPMB; Bursor |
| AWS ETF Payer Class | Sridhar Krishnan | BPMB; Bursor; Farqui & Farqui |
| AWS ETF Payer Class | Alan Cherrigan | BPMB; Bursor |
| AWS ETF Payer Class | Porsha Meoli | BPMB; Bursor; Farqui & Farqui |
| T-Mobile ETF Payer class | Bruce Gatton | Ferrigno; Franklin |
| T-Mobile ETF Payer class | Jeweldean Hull | Positive Legal Group |
| T-Mobile ETF Payer class | Christina Nguyen | BPMB; Bursor; Reich Radcliffe |
| T-Mobile ETF current subscriber class | Daniel Pham | BPMB; Bursor; Reich Radcliffe |

Defendants in the cases still being prosecuted at the trial court level may obtain

greater clarity by serving interrogatories asking the named plaintiffs to identify the

lawyers that they and their fellow named plaintiffs have retained.

///

///

///

3

LAW.

The Court as coordination trial judge has the ability to appoint liaison and lead counsel if appropriate for the management of the coordinated proceeding. CRC 3.504(c), 3.506, and 3.541; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 805, 812. There is, however, no California law on the criteria the Court should consider in making its decision.

This is a coordinated proceeding of related class actions. The demands on the leadership in a coordinated proceeding of class actions are more complicated than those in a coordinated proceeding of individual cases or in a single consolidated class action. In a coordinated proceeding of individual cases the Court is appointing liaison counsel under CRC 3.506 to coordinate lawyers each of whom represent individual clients. In a single consolidated class action, all of the different plaintiffs are, through their different counsel, asserting the same claims against the same defendants so the Court is focused on the leadership of a single case. In a coordinated proceeding of related class actions, the Court is appointing both liaison counsel under CRC 3.506 and also setting up a leadership structure among counsel who represent putative class representatives, who in turn represent the interests of classes of absent class members.

The analysis of lead, as opposed to liaison, counsel must logically start with the named plaintiffs rather than with the lawyers. Although class actions are somewhat different from single plaintiff litigation regarding the role of a named plaintiff and his or her attorney, a class action is ultimately filed, prosecuted, and controlled by the plaintiffs and not by the attorneys. A named plaintiff is a fiduciary who should participate actively

1  in the prosecution of the case and not leave the case to be controlled entirely by the

2  attorneys. *Apple Computer, Inc. v. Superior Court* (2005) 126 Cal. App. 4th 1253, 1272;

3  *Earley v. Superior Court* (2000) 79 Cal. App. 4th 1420, 1434; *Howard Gunty Profit*

4  *Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 579-580.  The selection and

5  retention of qualified counsel is one of a named plaintiff's most significant decisions.  A

6  plaintiff who fails to select counsel qualified to conduct the proposed litigation is not an

7  adequate class representative. *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442,

8

9  450.

10      Where there are multiple plaintiffs represented by multiple law firms interested in

11  prosecuting the same class claims, then the Court can devise a leadership structure.  It is

12  unclear whether the Court should review all of the counsel and then select the most

13  qualified counsel to represent the class or classes or should start by selecting a lead

14

15  plaintiff and then review that plaintiff's selected counsel.  There is no California law on

16  this subject.

17      The *Deskbook on Complex Litigation* suggests the former course, stating that

18  when evaluating counsel for leadership positions the Court should consider the "relative

19

20  competence, experience, dedication, reliability, and resources" of the attorneys.

21  *Deskbook on Complex Litigation* (2008) § 3.73[1].  The Deskbook states that the Court

22  has wide discretion and that "Selection is not limited to those who are appearing as class

23  counsel; if necessary to ensure adequacy of representation, the court may appoint

24  different attorneys as class counsel or may condition class certification on the

25

26  employment of other or additional counsel."  The Federal Rules of Civil Procedure

27  suggest a similar approach.  Federal Rule 23(g)(1) states that in appointing class counsel,

1  courts must consider: (1) the work counsel has done in identifying or investigating

2  potential claims in the action; (2) counsel's experience in handling class actions, other

3  complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge

4  of the applicable law; and (4) the resources counsel will commit to representing the class.

5  *In re Rubber Chemicals Antitrust Litigation* (N.D. Cal., 2005) 232 F.R.D. 346; *Strougo v.*

6  *Brantley Capital Corp.* (S.D.N.Y., 2007) 243 F.R.D. 100, 105-106.

7

8  The Private Securities Litigation Reform Act (PSLRA) suggests the second

9  approach.  The PSLRA states that in consolidated securities class actions the lead plaintiff

10  is presumptively the plaintiff with the largest financial interest in the relief sought by the

11  class.  Other plaintiffs can rebut the presumption by showing that the presumptive lead

12  plaintiff is not adequate under Federal Rule 23.  15 U.S.C. 78u-4(a)(3)(B); *Strougo v.*

13  *Brantley Capital Corp.* (S.D.N.Y., 2007) 243 F.R.D. 100, 105.  Where appropriate, the

14  Court may "designate a triumvirate of unrelated persons as a lead plaintiff group."  *In re*

15  *Lernout & Hauspie Securities Litigation* (D. Mass., 2001) 138 F.Supp.2d 39, 44.  Under

16  the PSLRA, the lead plaintiff selects the lead counsel, subject to Court approval. 15

17  U.S.C. 78u-4(a)(3)(B)(v).

18  The Court will follow the *Deskbook* approach and consider the competence of all

19  counsel in determining the leadership structure for the coordinated proceeding.  The

20  Court is persuaded that a multi-factor evaluation of all counsel is more likely to lead to

21

22

23

24  the best representation for the class.  The Court will consider the named plaintiffs'

25  preferences for lead counsel, but that factor will be one of many factors.  Therefore, the

26  Court's analysis and the factors considered are similar to those used by this Court in the

27  Order of 10/11/05.

CSGRR IS REMOVED FROM THE EXECUTIVE COMMITTEE.

CSGRR filed a brief stating that it "has been discussing Coughlin Stoia's withdrawal from participation in these [ETF] cases and expects to file a motion to that effect in the near future." CSGRR brief at 1:25-26. CSGRR later filed a formal request to withdraw as counsel. The members of the various putative and certified classes need for all members of the ETF Executive Committee to be committed to the prosecution of the cases. The application of CSGRR to withdraw from the ETF Executive Committee is GRANTED. CSGRR is removed from the ETF Executive Committee effective the date of this order.

POSITIVE LEGAL GROUP IS ADDED TO THE EXECUTIVE COMMITTEE.

The purpose of the ETF Executive Committee is to coordinate the several ETF cases in this proceeding in a manner that both advances the interests of the named and absent members in all of the ETF cases and effectively utilizes the resources of the parties and the Court. The Court is persuaded that there is a continuing need for an ETF Executive Committee to coordinate the appellate proceedings involving Verizon, Sprint, and Nextel with each other and with the trial court proceedings involving T-Mobile and Cingular/AWS.

The Court considers the factors identified in the Order of 10/11/05, the *Deskbook on Complex Litigation*, and Federal Rule 23(g): (1) each individual plaintiff's choice of counsel, (2) competent representation of all the putative and certified classes, (3) conflicts

7

1    of interest between counsel and members of the class, and (4) the ability of counsel to

2    speak with one voice when communicating with defendants and the Court.

3           BPMB represents clients in the ETF cases against Verizon, Sprint/Nextel,

4    Cingular/AWS, and T-Mobile.  BPMB has associated with Scott Bursor in the

5    representation of their joint clients.  As a non-California lawyer, Ms. Bursor cannot

6
7    represent clients without associating with a California lawyer.  CRC 9.40(a) and (d)(6).

8           Frankin & Franklin represents clients in each of the ETF cases against

9    Sprint/Nextel and T-Mobile.

10          Positive Legal Group (Ms. Mottek) represents clients in the ETF cases against

11   Verizon, Sprint/Nextel, and T-Mobile.

12
13          All of the above lawyers are competent and have effectively represented their

14   clients in the ETF cases.  All of the above lawyers have represented that they can and will

15   support the prosecution of the litigation with their time and resources.

16          There are no patent conflicts of interest between any of the above counsel and the

17   members of the several putative and certified classes.  On 10/29/08, BPMB and Scott

18
19   Bursor filed a separate federal ETF class action lawsuit against Sprint Nextel.  *Lee v.*

20   *Sprint Nextel*, N. D. Cal., Case # C08-04959.  BPMB represented that the putative class

21   in *Lee* does not overlap with the certified Sprint ETF class in this coordinated proceeding

22   and suggested that the legal theories advanced in the Lee case are not contrary to the legal

23   theories advanced in the coordinated cases.  The Court is satisfied that BPMB's and Mr.

24
25   Bursor's representation of the putative class in that case does not present a conflict with

26   their representation of the Sprint ETF class or the various ETF classes in this coordinated

27   proceeding.

1    The Court ORDERS that Positive Law Group is assigned to the ETF Executive

2    Committee.  Positive Law Group's Jacqueline Mottek is competent and capable of

3    representing the interests of the members of the various classes.  Scott Bursor is equally

4    competent, but he is associated with BPMB and therefore would not be an independent

5    member of the committee.  Appointing Mr. Bursor to the committee would be equivalent

6    to disbanding the committee and appointing BPMB as lead counsel in all the coordinated

7    cases.  The ETF Executive Committee is composed of the three law firms of (1) BPMB,

8    (2) Frankin & Franklin, and (3) Positive Legal Group.  Lawyers currently with these three

9    firms have, despite changes in law firms, successfully managed the coordinated ETF

10   cases for the past six years.  The Court is confident that they can continue to do so

11   through the conclusion of the proceeding.

12        The ETF Executive Committee's duties, powers, and decision making processes

13   are as set forth in the Order of 2/10/04 at 2:13-3:14.  Members of the ETF Executive

14   Committee have decision making authority in cases where they do not represent any

15   clients asserting ETF claims.  That anomaly is permitted by the *Deskbook*, which states,

16   "Selection is not limited to those who are appearing as class counsel."  All the members

17   of the ETF Executive Committee have fiduciary duties to all the members of the various

18   putative and certified ETF classes.

19        The Court orders that BPMB must immediately notify the Executive Committee

20   if, while the coordinated proceeding is pending, it is aware of any discussions or events in

21   the *Lee v. Sprint* case that might create an appearance of impropriety regarding its role on

22   the ETF Executive Committee, including, but not limited to, discussions about expanding

23   the class definition in *Lee* to include persons in the coordinated Sprint ETF case or the

9

1   assertion of legal theories in *Lee* that might undermine the theories asserted in the

2   coordinated cases.

3       The Court affirms that BPMB is to continue to act as Liaison Counsel.  Order of

4   2/10/04 at 3:15-4:3.

5

6

7   Dated: April 2, 2009        _____
                                        Judge Winifred Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# EXHIBIT F

## Castellanos, Marisol

| | |
|---|---|
| **From:** | Dominic Surprenant [dominicsurprenant@quinnemanuel.com] |
| **Sent:** | Wednesday, February 17, 2010 4:53 PM |
| **To:** | scott@bursor.com; aplutzik@bramsonplutzik.com; jdfranklaw@san.rr.com; jmottek@positivelegalgroup.com; ltfisher@bramsonplutzik.com |
| **Cc:** | Boyle, Joseph; A Brooks Gresham; Michael Fazio; Kristen Savelle |
| **Subject:** | Larson v. AT&T Mobility; Robertson v. Nextel; Ayyad v. Sprint (Subscriber) |

Scott, Alan, Tim, David, Jacqui,

Judge Linares signed the Final Judgment today  in Larson v. AT&T Mobility, Sprint Nextel Corp. and Sprint Spectrum L.P.

Paragraph 23 of the Final Judgment recites (emphasis added):

"No Settlement Class Member, either directly, representatively, or in any other capacity (other than a Settlement Class Member who validly and timely submitted a valid Request for Extension), shall commence, continue, or prosecute any action or proceeding against any or all Sprint-Nextel Released Parties in any court or tribunal asserting any of the Class Released Claims defined in the Agreement, and are hereby permanently enjoined from so proceeding."

Please confirm at your earliest possible convenience that you, and each of you, will promptly withdraw plaintiffs' Renewed Application for An Order To Show Cause And Temporary Restraining Order filed in Cellphone Termination Fee Cases on February 11, 2010, which is set for hearing before Judge Smith on March 5, 2010.

If it is your intent not to withdraw the Renewed Application, please inform me as promptly as possible of that that is your intent and of any justification you believe you would have to ignore Paragraph 23 of the Final Judgment in Larson.

Dominic Surprenant
Counsel for Sprint

2/24/2010

# EXHIBIT G

## Boyle, Joseph

| | |
|---|---|
| **From:** | Dominic Surprenant [dominicsurprenant@quinnemanuel.com] |
| **Sent:** | Monday, March 01, 2010 9:36 PM |
| **To:** | 'aplutzik@bramsonplutzik.com'; 'scott@bursor.com'; 'jdfranklaw@san.rr.com'; 'ltfisher@bramsonplutzik.com'; 'jmottek@positivelegalgroup.com' |
| **Cc:** | Boyle, Joseph; A Brooks Gresham; Michael Fazio; Kristen Savelle; Joseph Sarles |
| **Subject:** | Ayyad (Subscriber) Renewed Application and Opposition to Sprint Nextel Motion to Dismiss |

All,

As you know from our papers, it is Sprint Nextel's position that each of you are in contempt of the Final Judgment in *Larsen v. AT&T et al.*

As you also know, after it was issued, I emailed each of you and requested that you withdraw your renewed application and not file an opposition to Sprint Nextel's motion, so as not to act contemptuously vis-à-vis the *Larsen* Final Judgment, and none of you responded.

This evening was the deadline to file and serve your reply in support of the renewed application. You have not served the reply. I emailed some of you about 45 minutes ago, asking when plaintiffs were going to serve it, and, once again, no one responded.

We are inferring from plaintiffs' not filing a reply in support of their application that, belatedly, you have decided to no longer act in open defiance of the Final Judgment in *Larsen*. To make that decision effective, if such is your decision, you need to notify me promptly that plaintiffs are withdrawing the renewed application, and are withdrawing their opposition to Sprint Nextel's motion to dismiss on res judicata grounds.

If I do not receive such confirmation by 9:30 a.m. tomorrow, it is Sprint Nextel's present intention that it will ask Judge Linares to hold the class representatives and each of you in contempt of court as promptly as the Court will hear us.

If you have any questions, let me know.

Dominic Surprenant
Counsel for Sprint Nextel

3/2/2010

# EXHIBIT H

## Boyle, Joseph

| | |
|---|---|
| **From:** | Jacqueline Mottek [jmottek@positivelegalgroup.com] |
| **Sent:** | Monday, March 01, 2010 9:52 PM |
| **To:** | Dominic Surprenant; aplutzik@bramsonplutzik.com; scott@bursor.com; jdfranklaw@san.rr.com; ltfisher@bramsonplutzik.com |
| **Cc:** | Boyle, Joseph; A Brooks Gresham; Michael Fazio; Kristen Savelle; Joseph Sarles |
| **Subject:** | Re: Ayyad (Subscriber) Renewed Application and Opposition to Sprint Nextel Motion to Dismiss |

Dominic,

You should know that I was never consulted about and never agreed to the renewed motion for a preliminary injunction, and can find no reasonable basis for opposing your client's motion to dismiss. As you may recall, I represent Jeweldean Hull and Ramzy Ayaad, both of whom are class representatives in the Sprint payer class action. I trust that you will proceed accordingly.

Please call if you have questions or comments. Thanks very much.

Jacqui Mottek
Positive Legal Group

----- Original Message -----
**From:** Dominic Surprenant
**To:** 'aplutzik@bramsonplutzik.com' ; 'scott@bursor.com' ; 'jdfranklaw@san.rr.com' ; 'ltfisher@bramsonplutzik.com' ; 'jmottek@positivelegalgroup.com'
**Cc:** 'Boyle, Joseph' ; A Brooks Gresham ; Michael Fazio ; Kristen Savelle ; Joseph Sarles
**Sent:** Monday, March 01, 2010 6:36 PM
**Subject:** Ayyad (Subscriber) Renewed Application and Opposition to Sprint Nextel Motion to Dismiss

All,

As you know from our papers, it is Sprint Nextel's position that each of you are in contempt of the Final Judgment in *Larsen v. AT&T et al.*

As you also know, after it was issued, I emailed each of you and requested that you withdraw your renewed application and not file an opposition to Sprint Nextel's motion, so as not to act contemptuously vis-à-vis the *Larsen* Final Judgment, and none of you responded.

This evening was the deadline to file and serve your reply in support of the renewed application. You have not served the reply. I emailed some of you about 45 minutes ago, asking when plaintiffs were going to serve it, and, once again, no one responded.

We are inferring from plaintiffs' not filing a reply in support of their application that, belatedly, you have decided to no longer act in open defiance of the Final Judgment in *Larsen*. To make that decision effective, if such is your decision, you need to notify me promptly that plaintiffs are withdrawing the renewed application, and are withdrawing their opposition to Sprint Nextel's motion to dismiss on res judicata grounds.

If I do not receive such confirmation by 9:30 a.m. tomorrow, it is Sprint Nextel's present intention that it will ask Judge Linares to hold the class representatives and each of you in contempt of court as promptly as the Court will hear us.

If you have any questions, let me know.


Dominic Surprenant
Counsel for Sprint Nextel

3/2/2010