**LAW OFFICES OF SCOTT A. BURSOR**
369 Lexington Avenue, 10th Floor
New York, NY  10017-6531
(212) 989-9113 (tel)
(212) 989-9163 (fax)
scott@bursor.com


March 4, 2010



*By email*

Hon. Jose L. Linares, U.S.D.J.
U.S. District Court
M. L. King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07101
michael_innes@njd.uscourts.gov

Re:   *Judy Larson, et al. v. AT&T Mobility LLC, et al.*
      Civil Action No. 07-5325(JLL)


Dear Judge Linares:

    I write to respond to yet another emergency application in which Sprint seeks relief against me personally, though I am not a party to any case with Sprint.  I submit this letter as a special appearance on behalf of myself only, and not on behalf of any client, and only to contest the Court's jurisdiction to grant the relief Sprint seeks.  This letter does not constitute an appearance on behalf of any client.

    Sprint seeks relief against me personally to interfere with my representation of Ramzy Ayyad, Jeweldean Hull, and Katherine Zill.  In doing so, Sprint has misled the Court on several points.

    Ramzy Ayyad and Jeweldean Hull are representatives of the certified Sprint Payer Class which prevailed at trial in *Ayyad v. Sprint Spectrum L.P.*, and which was explicitly carved out from the *Larson* settlement class definition.  *See* Final Judgment at 3 (Docket Entry No. 470) ("excluding only the *Ayyad* Class Claims").  Ms. Ayyad and Mr. Hull are not members of the Subscriber Class, nor representatives of the Subscriber Class.  These facts were well known to Sprint's counsel before they filed the pending application.  *See* 3/31/09 Letter from Alan R. Plutzik to Judge Winifred Smith at Appendix A, attached hereto as **Exhibit 1** (table identifying Katherine Zill as the sole representative of the Subscriber Class, and identifying Mr. Ayyad and Ms. Hull among the representatives of the Payer Class).  *See also* 3/3/10 Jacqueline Mottek email to Mr. Surprenant *et al.*, attached hereto as **Exhibit 2** ("Also, please be advised that I have mentioned to Mr. Surprenant, I represent Jeweldean Hull and Ramzy Ayyad who are both payer class

members.  Neither client is a current subscriber ….   It appears that the Court may have been operating under the assumption that Ms. Hull and Mr. Ayyad are members of the subscriber class.  They are not.  And the motion [the renewed TRO application] was not, nor could it have been, made on their behalf.").

Katherine Zill is the sole certified representative of the Subscriber Class.  Ms. Zill has never appeared before this Court.  She did not file an objection to the Larson settlement.  Ms. Zill timely opted out of the Larson settlement class.  *See* Zill Request For Exclusion, attached hereto as **Exhibit 3**.  Thus, Ms. Zill is not bound by the injunction in the *Larson* final judgment, which expressly does not apply to opt outs.  *See* Final Judgment at 8 (Docket Entry No. 470).

Neither I, nor any client of mine, nor any representative of the Payer Class or Subscriber Class, is in contempt of any injunction issued by this Court.  There are no grounds for the issuance of an order to show cause against me, or anyone else.

As I am not a registered ECF filer in this District, I respectfully request that the Court direct its staff to cause this letter to be posted to the docket.

Lastly, at 6:04 p.m. this evening, as I was preparing this letter, I received an email from Sprint's counsel requesting that the Court set this matter for an emergent hearing for 2 p.m. tomorrow.  Due to a conflict with another matter, I am unable to attend a hearing at 2 p.m. tomorrow.  A hearing on such short notice would violate the due process rights of myself and other persons whose interests might be affected.  I respectfully request reasonable notice before any hearing is held, or any action is taken, on Sprint's application.

Very truly yours,

Scott A. Bursor

Copies by email to:

jboyle@kelleydrye.com
dominicsurprenant@quinnemanuel.com

**EXHIBIT 1**

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
2125 OAK GROVE ROAD, SUITE 120
WALNUT CREEK, CALIFORNIA 94598
E-MAIL: INFO@BRAMSONPLUTZIK.COM

ROBERT M. BRAMSON
ALAN R. PLUTZIK
DANIEL E. BIRKHAEUSER
JENNIFER S. ROSENBERG
L. TIMOTHY FISHER
MICHAEL S. STRIMLING

PAUL F. MAHLER
OF COUNSEL

FACSIMILE
(925) 945-8792

TELEPHONE
(925) 945-0200

March 31, 2009

**VIA E-MAIL AND FAX-FILING**

The Honorable Winifred Smith
Alameda County Superior Court
Department 23
1221 Oak Street
Oakland, CA 94612

      Re:    *In Re Cellphone Termination Fee Cases – JCCP 4332*
              Motion to Add the Law Offices of Scott A. Bursor to the Executive Committee

Dear Judge Smith:

      Liaison Counsel's Ex Parte Application to Add the Law Offices of Scott A. Bursor to the Executive Committee in Place of Coughlin Stoia Geller Rudman & Robbins, LLP (the "Application") seeks two forms of relief – (1) the removal of the Coughlin Stoia firm ("CSGRR") from the Executive Committee for early termination fee ("ETF") claims and (2) the appointment of the Law Offices of Scott A. Bursor to serve on the Committee in its place. The Court's Tentative Ruling essentially grants the request to remove CSGRR from the Committee by treating that firm's filing in response to the Application as a request to withdraw. However, the Tentative Ruling suggests that as an alternative to considering the second form of relief requested in the Application, the appointment of the Law Offices of Scott A. Bursor to replace CSGRR, the Court may order that the Executive Committee structure under which the ETF cases have been litigated for the last six years be scrapped, and that separate leadership be designated in each ETF case based on which lawyers represent which class representatives. Under the Court's proposal, as we understand it, a law firm is eligible to participate in the leadership structure of the case against a given defendant only if it individually represents one of the class representatives in the case against that defendant.

### The Class Representatives Chart

      The Tentative Ruling directs Liaison Counsel to prepare a chart showing which law firms represent which of the class representatives certified or proposed in the action. That list is attached to this letter as Appendix A. The chart shows that Mr. Bursor and my firm share 11

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

March 31, 2009
Page 2

clients in the litigation, and that Mr. Bursor has two additional clients of his own,[1] for a total of 13. Messrs. Franklin and Ferrigno share four clients; Ms. Mottek has one; Strange & Carpenter has one; and there are four clients of CSGRR who, to date, apparently have not signed up with any other firm.

### It Would Be Procedurally Improper to Adopt the New Leadership Structure Advocated in the Tentative Ruling

Although the Bursor firm and my firm have more clients than all of the other firms combined, we object to the proposal in the Tentative Ruling to adopt a new leadership structure at this stage of the case, focusing on who represents which class representatives the named plaintiffs. First, it is contrary to the procedure the Court told the parties it would adopt in its March 10, 2009 Order. In that Order, the Court said it would

> …hear the cross-motions of (1) Bramson, Plutzik, Mahler & Birkhaeuser, (2) Franklin & Franklin, and/or (3) Jacqueline Mottek concerning the composition of the Plaintiffs' Executive Committee on shortened time…. All motions concerning the composition of the Plaintiffs' Executive Committee must be served and filed by Monday, March 16, 2009…. The Court will hear the motions concerning the composition of the Executive Committee on Wednesday, April 1, 2009.

Only one such motion has been filed – Liaison Counsel's Application to replace CSGRR with the Law Offices of Scott A. Bursor. Nobody has filed a cross-motion or a competing application suggesting that anyone *other than* Mr. Bursor should be added to the Committee to take CSGRR's place. Ms. Mottek argued in her opposition brief that CSGRR was still in the case and should not be replaced – a position the Court has already rejected in light of CSGRR's representation in its papers to the contrary. Mr. Franklin submitted only a declaration in which he opposed Mr. Bursor's appointment, but did not file a "cross-motion" seeking affirmative relief. Furthermore, no party to the pending Application requested the Court to abolish the Executive Committee and replace it with a separate leadership structure for each case. Nobody has asked the Court to exclude my firm from the leadership of any of the cases.

Given that the Court has concluded, correctly, that CSGRR has withdrawn from the action and must therefore be removed from the Committee, the only question before the Court is whether Mr. Bursor should be appointed to replace CSGRR on the Committee. The Court should hear and rule on that aspect of the Application. If, thereafter, the Court wishes to propose, on its own motion, a change in the fundamental leadership structure of the case, it should give adequate notice of its intention to consider such a proposal so it can be duly briefed

---

[1] Mr. Bursor's additional clients, Harold Schroer and Patricia Brown, were out-of-state plaintiffs who became class representatives in connection with the nationwide settlement of the Verizon ETF claims that Judge Bonnie Sabraw approved in October, 2008.

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

March 31, 2009
Page 3

and argued. The Court should not make or even consider such a radical change without adequate notice and briefing.[2]

### Replacing the Executive Committee with Separate Leadership Determined by Client Is, On Its Merits, A Bad Idea

The abolition of the Executive Committee and its replacement by separate lead counsel in each case, selected according to which law firm represents which class representatives individually, is not only procedurally improper but also, respectfully, a bad idea.

At the beginning of the case, counsel proposed, and Judge Ronald Sabraw ordered, that a single Executive Committee should take charge of all the ETF cases, because the cases shared many common legal and factual issues. Although there was initially a dispute about who should be on the Committee – CSGRR urged the Court to appoint it co-lead counsel with my firm, while the Franklin firm and my firm advocated the three-headed structure that was eventually adopted – nobody advocated that the different cases should be parceled out to different counsel, because that would inefficient. The same factors that led the Court to create a single Executive Committee presiding over all the cases still exist. There are still many common issues that require a unified approach by plaintiffs' counsel. All defendants assert the defenses of preemption and alternative performance. All defendants have asserted cross-claims or a setoff for their "actual damages." The Court has adopted the "aggregate approach" in all of the cases. The strategic and tactical problems of how to present the cases at trial are similar in every case. Issues regarding class certification, class notice and the negotiation and structuring of settlements are likely to recur. Even the challenges presented by out-of-state counsel who seek to enter into sweetheart nationwide settlements that extinguish the California ETF cases cut across the different cases, with several cases thus far affected. The same efficiencies that led the Court to establish a single Committee at the outset of the litigation are still compelling.

Determining the leadership of the litigation by focusing on the named plaintiffs would be arbitrary and bad for the class. The touchstone of any decision regarding leadership should be the interests of the class members, to whom both the Court and counsel owe fiduciary duties. In 2004, Judge Ronald Sabraw selected one law firm from each "group" of clients or cases to serve on the Committee. But the rationale of selecting lead counsel according to "groups" is no longer valid. First, the "groups" of clients have largely dissipated. Most of the clients on whose behalf

---

[2] While the Court has continuing jurisdiction over the Executive Committee which it created through its own Orders, the Court's authority to adopt an entirely new leadership structure in cases that are on appeal (the Verizon ETF and Sprint Payer Class cases), or in which the Court is subject to stays (the T-Mobile Payer and Subscriber Class cases, as well as the Sprint Subscriber Class and Nextel cases) is questionable. The parties, their counsel, and class members were not given notice that any relief would be sought in any individual cases that are stayed or enjoined. If they had been given such notice, different and additional motions might have been filed. Arguably, the only cases in which the Court would even have jurisdiction to adopt such an approach are the ETF cases against Cingular and AT&T.

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

March 31, 2009
Page 4

CSGRR filed cases in 2003 have withdrawn (see attached chart), and of those that remain, Ms. Mottek only claims to represent one of them, Jeweldean Hull. The clients on whose behalf Messrs. Franklin and Ferrigno originally filed suit were uninjured plaintiffs whose claims were abrogated by Proposition 64. Some of them have been replaced, others have not. Furthermore, classes *have now been certified* against five of the six defendants. To complicate matters, four of the cases were split at the certification stage into payer classes and subscriber classes – subdivisions of the overall classes that were not defined in the original complaints. The "groups" of clients that existed in 2004 are irrelevant to the decision the Court must make now regarding who should replace CSGRR in the leadership of the case. The leadership question should be decided based on the interests of the classes as a whole, not on an individual's choice of counsel.

If the leadership of the cases were separately reassigned, the classes would lose the benefit of the knowledge and experience laboriously garnered by counsel during the course of the litigation. The firm that represents a given class representative is not necessarily the firm that has done most of the work against the defendant being sued by that plaintiff. For example, my firm, at the direction of the Executive Committee, took the lead in reviewing and cataloguing documents produced by Sprint. We took Sprint-related depositions, invested hundreds of thousands of dollars in the case against Sprint and staffed the Sprint trial with two full-time lawyers. Similarly, Mr. Bursor devised plaintiffs' trial strategy in the Sprint Payer Class trial, tried the case, wrote the briefing and delivered the oral argument that led to the favorable Statement of Decision and wrote, argued and won the motion for a new trial. He is the single person most knowledgeable about the evidentiary and legal issues that will arise on appeal of the grant of the motion for new trial and the conditional appeals on the merits. But Mr. Bursor and I have only Sprint Subscriber Class clients, not Sprint Payer Class clients. Messrs. Franklin and Ferrigno do have Sprint Payer Class clients. But Mr. Franklin did not participate substantially in the discovery against Sprint, and he decided not to attend the Sprint trial. The defendant whose documents he and Mr. Ferrigno reviewed (with assistance from my firm) was Nextel – but he has no Nextel client. Dividing responsibility by client is not rational.[3]

---

[3] The Court's Tentative Ruling does not say whether, if it assigns new leadership to each pending case, it would appoint different leadership for "Payer Classes" than for corresponding "Subscriber Classes" against the same defendant. Whatever else the Court orders, we urge the Court *not* to split the leadership of Payer Classes and Subscriber Classes in that way. The evidence and many of the legal issues will be the same for both Payer and Subscriber Classes against the same defendant. To assign a different leader to the Payer Class than to the Subscriber Class against the same defendant could therefore lead to inconsistent results on the many issues that will be common to both classes, and to the inefficient prosecution of the claims. Furthermore, Payer and Subscriber Class cases against the same defendant are almost certain to be tried together. The only reason that was not done for Sprint is that the Court made an erroneous legal ruling denying class certification of the Subscriber Class claims, which was reversed on appeal. Finally, the distinction between Payer and Subscriber Classes did not exist in the initial pleadings, and was only added at the class certification stage. Payer Class and Subscriber Class claims against the same defendant are part of the same case. Thus, if the Court is determined to abolish the Executive Committee and appoint new case-specific leadership, it

Bramson, Plutzik, Mahler & Birkhaeuser, LLP

March 31, 2009
Page 5

Adopting a separate leadership structure for each case would also be highly unfair to counsel, who have who have been performing work and investing money in the litigation in reliance on the prior leadership structure for six years, without reference to which lawyers represent which clients. My six-lawyer firm, for example, has well over $5 million in lodestar and has invested hundreds of thousands of dollars in all of the ETF cases combined – by far the largest investment of time and money in any of the class action cases in which we are counsel of record – all of it incurred in reliance on the current leadership structure. Other firms in the case have similarly invested time and money in the case in reliance on the existing structure.

The Court should not reorganize the leadership of the case out of a desire to avoid disagreements among counsel. We are strong-willed and opinionated lawyers. We have always had disagreements among ourselves, virtually all of which we have been able to resolve. Fragmenting the cases, we submit, would cause less, not more, harmony. But the Application was not filed due to disagreements among counsel. It was filed because it appeared that one of the Committee members was withdrawing, although it had not disclosed its intention to do so to the Court or its co-counsel. The composition of the Executive Committee needs to be changed to account for that development. But that does not justify destroying the Executive Committee structure after six years and embarking on a new and uncertain future with a completely new leadership structure.

### There is No Legal Justification for Adapting the PSLRA's Procedures to This Case

The Tentative Ruling justifies its proposal to assign leadership of each case to the lawyers who represent the class representative in that case with reference to the lead counsel selection procedures in the Private Securities Litigation Reform Act, Pub. L. 104-67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C. (the "PSLRA"). But the PSLRA's procedures for the selection of lead counsel apply only to securities fraud cases brought in the federal courts. They do not apply to California cases. The key considerations under California law are the "relative competence, experience, dedication, reliability and resources" of attorneys seeking a leadership position. Judicial Council of California, *Deskbook on the Management of Complex Litigation* (2008) § 3.73[1] at p. 3-60. Moreover, the PSLRA's procedures do not even apply to federal cases that do not allege claims for securities fraud.[4] Moreover, the rationale of

---

should appoint leaders separately for each *defendant*, not each *class*. Thus, the Sprint Payer Class should be represented by the same lawyers who represent the Sprint Subscriber Class.

[4] *See In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.* (S.D.N.Y. Dec. 29, 2008) 2008 U.S. Dist. LEXIS 106327, 36-37 (Since ERISA actions are not governed by the PSLRA, the Court must not adopt the PSLRA's approach, but rather, must appoint the lawyer best able to represent the interests of the class, based on (1) work already performed in the case, (2) experience in handling the types of class action claims asserted in the case, (3) knowledge of the applicable law, (4) the resources that counsel will commit to representing the class, and (5) "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."); *Kolar v. Rite Aid Corp.* (E.D. Pa. Mar. 11, 2003), 2003 U.S. Dist. LEXIS 3646, 2003 WL 1257272 (PSLRA lead counsel selection standards inapplicable to non-securities-fraud

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

March 31, 2009
Page 6

the PSLRA's leadership selection procedures is limited to securities cases and is completely inapplicable to this case.

The PSLRA was enacted to increase the likelihood that large institutional investors such as public pension funds and mutual funds would serve as lead plaintiffs in securities fraud actions, because Congress felt that institutional investors and other class members with large amounts at stake would represent the interests of the plaintiff class more effectively than class members with small amounts at stake. *In re Cendant Corp. Litig.* (3d Cir. 2001) 264 F.3d 201, 264 (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff); *In re Versata, Inc. Sec. Litig.* (N.D. Cal. Aug. 17, 2001) No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *17 ("One of the primary purposes of the lead plaintiff provisions of the PSLRA was to encourage a meaningful investor with a substantial stake in the litigation, preferably a large institutional investor, to initiate and control the litigation (and the lawyers who are behind it).") To ensure that outcome, Congress, in a departure from thirty years of Rule 23 practice, directed in the PSLRA that the federal district courts, instead of selecting lead counsel in securities fraud cases directly, must first select a "lead plaintiff," who would then hire counsel. The lead plaintiff, the statute directs, should ordinarily be that person who has the *largest losses* of any of the class members who apply for that position. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201 at 262 (3d Cir. 2001) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)). *See, generally, The Lead Plaintiff Provisions of the PSLRA After a Decade, or "Look What's Happened to My Baby"* (2008) 61 Vand. L. Rev. 543.

These concepts are simply not applicable to a consumer case in state court. There are no "large institutional investors" here – every class member was harmed by between $150 and $200. Class representatives are therefore not in a position to "control" the litigation to the same extent that a large pension fund like CalPERS or a financial behemoth like Fidelity Investments, with experienced in-house counsel and decades of institutional knowledge about securities markets and complex litigation, could do in a securities fraud case. Class representatives in consumer cases do their best to remain informed and involved. But it would not be accurate to ascribe to them an omniscience about class actions or class action law firms that they do not possess. A class representative like Alan Cherrigan, a lawyer and certified fraud examiner, is a rarity. More common are non-lawyers without litigation experience, such as Jeweldean Hull, Astrid Mendoza and innumerable others. Class actions exist precisely to permit ordinary people like Ms. Hull or Ms. Mendoza to amalgamate their claims and seek relief on behalf of themselves and others. But the Court is better able to determine who should lead the case than

---

cases); *Hall v. Midland Group and Midfirst Bank* (E.D. Pa. Nov. 20, 2000) 2000 U.S. Dist. LEXIS 16751, 2000 WL 1725238, aff'd, 275 F.3d 35 (3d Cir. 2001) (PSLRA lead counsel selection procedures inapplicable to consumer case); *In re Plastic Tableware Antitrust Litig.* (E.D. Pa. Dec. 4, 1995) 1995 U.S. Dist. LEXIS 18166 (PSLRA procedures inapplicable in antitrust case).

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP

March 31, 2009
Page 7

individual class members, especially after six years of hard-fought litigation. Mr. Bursor has demonstrated his leadership, knowledge and ability, and he has the resources to invest in the case that have been lacking since CSGRR decided not to fund the litigation. Mr. Bursor is the only candidate to assume CSGRR's seat – and he is the best candidate who could be proposed.

### Dividing the Leadership of the Actions Based on Clients Would Be Impractical and Would Lead to Pointless Procedural Complications

Finally, assigning leadership of the cases separately based on which lawyers represent which clients would be impractical. It would simply encourage the filing of additional motions to intervene in each of the pending cases. And it would encourage counsel to enter into deals to associate each other in on each other's complaints, so as to be able to claim that they represented clients in each case. The decision about who should lead the case should not depend on such tactics. The ensuing litigation about intervention and client-counting would be pointless and would distract counsel and the Court from the important work that still needs to be done to fight the inadequate settlements in New Jersey, win the Sprint Payer Class appeal and ready the remaining cases for trial.

### Conclusion

The only application before the Court seeks to appoint Mr. Bursor to take CSGRR's place on the existing Executive Committee. Any other proposals to change the structure of the Executive Committee or to appoint new or different lead counsel on a case-by-case basis should have been filed by the March 16, 2009 deadline set by the Court's March 10 order. No such motions were filed. The parties and their counsel, therefore, have not been given notice that such relief would be sought or considered, and have not been afforded a fair opportunity to brief those issues. The Court should not, at this time, reach out to address matters that have not been briefed, or to grant relief that has not been requested by any party. Instead, the Court should grant the only Application before it, and appoint Mr. Bursor to the Committee seat that CSGRR has vacated.

Very truly yours,

BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER, LLP

Alan R. Plutzik

Cc: All Counsel via email
57856

**APPENDIX A**

| Defendant/claims | Named Plaintiffs* | Counsel retained by Named Plaintiffs |
|---|---|---|
| Verizon ETF settlement | Christina Nguyen | BPMB; Scott Bursor; Reich Radcliffe |
| Verizon ETF settlement | Molly White | CSGRR |
| Verizon ETF settlement | Harold Schroer | Scott Bursor |
| Verizon ETF settlement | Patricia Brown | Scott Bursor; Mager & Goldstein |
| Sprint ETF Payer Class | Ramzy Ayyad | CSGRR |
| Sprint ETF Payer Class | Jeweldean Hull | Positive Legal Group |
| Sprint ETF Payer Class | Richard Samko | Anthony Ferrigno; Franklin |
| Sprint ETF Payer Class | Amanda Selby | Anthony Ferrigno; Franklin |
| Sprint Subscriber Class | Katherine Zill | Scott Bursor; BPMB; Faruqi & Faruqi |
| Sprint Subscriber Class | Michael Moore** | Scott Bursor; BPMB |
| Sprint Subscriber Class | Lina Galleguillos** | Scott Bursor; BPMB |
| Nextel Payer Class | Christine Morton | CSGRR |
| Nextel Payer Class | Luis Ramirez | Strange & Carpenter |
| Nextel Payer Class | Gerry Robertson | CSGRR |
| Cingular ETF Payer Class | Angela Rel | Franklin; Anthony Ferrigno |
| Cingular Subscriber Class | Astrid Mendoza | BPMB; Scott Bursor |
| Cingular Subscriber Class | Leslie Armstrong-Bernardi | BPMB; Scott Bursor |
| AWS ETF Payer Class | Sridhar Krishnan | BPMB; Scott Bursor; Faruqi & Faruqi |
| AWS ETF Payer Class | Alan Cherrigan | Scott Bursor; BPMB |
| AWS ETF Payer Class | Porsha Meoli | Scott Bursor; BPMB; Faruqi & Faruqi |
| T-Mobile ETF Payer class | Bruce Gatton | Anthony Ferrigno; Franklin |
| T-Mobile ETF Payer class | Jeweldean Hull | Positive Legal Group |
| T-Mobile ETF Subscriber class | Christina Nguyen | BPMB; Scott Bursor; Reich Radcliffe |
| T-Mobile ETF Subscriber class | Daniel Pham | BPMB; Scott Bursor; Reich Radcliffe |

* The following former clients of CSGRR have formally withdrawn from the litigation or elected not to seek appointment as class representatives: Jerilyn Marlowe, Alisa Freeman, James Bethea, Wendy Lowinger and Conor Vaughn.

** Lina Galleguillos and Michael Moore are Proposed Intervenors who were precluded by Judge Linares's All Writs Act Injunction from filing motions to intervene. *See* Declarations of Lina Galleguillos (at ¶ 10) and Michael Moore (at ¶ 5) in Support of Application for Temporary Restraining Order, filed December 26, 2008 (expressing the desire to intervene in the action).

1

**EXHIBIT 2**

# Scott A. Bursor

| | |
|---|---|
| **From:** | "Jacqueline Mottek" <jmottek@positivelegalgroup.com> |
| **To:** | "Dominic Surprenant" <dominicsurprenant@quinnemanuel.com>; "'Obbard, Philip, Superior Court'" <pobbard@alameda.courts.ca.gov>; "Joseph Sarles" <josephsarles@quinnemanuel.com>; <scott@bursor.com>; "'Alan Plutzik'" <aplutzik@bramsonplutzik.com>; <jdfranklaw@san.rr.com> |
| **Cc:** | "A Brooks Gresham" <abrooksgresham@quinnemanuel.com>; "Michael Fazio" <michaelfazio@quinnemanuel.com>; "Kristen Savelle" <kristensavelle@quinnemanuel.com>; "'Boyle, Joseph'" <JBoyle@KelleyDrye.com>; "Jacqui Mottek" <jmottek@mac.com> |
| **Sent:** | Wednesday, March 03, 2010 4:56 PM |
| **Subject:** | Re: In re Cellphone Termination Fee Cases -- JCCP 4332 |

Mr. Obbard:

Also please be advised that I have mentioned to Mr. Suprenant, I represent Jeweldean Hull and Ramzy Ayyad who are both payer class members.   Neither client is a current subscriber and neither is represented by any one other than I.  As I will tell the Court on Friday, I was not consulted about and did not authorize anyone to file the motion for a preliminary injunction on behalf of my clients, who are payer class members only.   It appears that the Court may have been operating under the assumption that Ms. Hull and Mr. Ayyad are members of the subscriber class.   They are not.    And the motion was not, nor could it have been, made on their behalf.

Thanks very much.

Jacqueline Mottek

---

**From:** Dominic Surprenant
**To:** 'Obbard, Philip, Superior Court' ; Joseph Sarles ; 'scott@bursor.com' ; 'Alan Plutzik' ; 'jmottek@positivelegalgroup.com' ; 'jdfranklaw@san.rr.com'
**Cc:** A Brooks Gresham ; Michael Fazio ; Kristen Savelle ; 'Boyle, Joseph'
**Sent:** Wednesday, March 03, 2010 1:13 PM
**Subject:** RE: In re Cellphone Termination Fee Cases -- JCCP 4332

Mr. Obbard:

Here is the issue.

As explained in our papers, we believe the class representatives and plaintiffs' counsel are in contempt of the Final Judgment in *Larson*.  We wanted to provide class representatives and their counsel an opportunity to avoid continuing and aggravating their contempt by withdrawing their motion.  I have emailed plaintiffs' counsel on two or three occasions inviting them to do so, and they have not responded.  Hope springs eternal, and I was hoping that a discussion with you and, perhaps, the Court, would provide plaintiffs' counsel the incentive to at least engage in the minimal professional courtesy of communicating their position to us.

Dominic Surprenant
Counsel for Sprint Nextel

---

**From:** Obbard, Philip, Superior Court [mailto:pobbard@alameda.courts.ca.gov]
**Sent:** Wednesday, March 03, 2010 1:01 PM
**To:** Obbard, Philip, Superior Court; Joseph Sarles; scott@bursor.com; Alan Plutzik; jmottek@positivelegalgroup.com; jdfranklaw@san.rr.com
**Cc:** Dominic Surprenant; A Brooks Gresham; Michael Fazio; Kristen Savelle; Boyle, Joseph
**Subject:** RE: In re Cellphone Termination Fee Cases -- JCCP 4332

Follow up.  I have no idea what the issues are, whether you are having productive meet and confer, etc.

If the issues concern matters that can be resolved without written briefs and evidence, then a call tomorrow is OK.  If the issues concern matters that will require the Court to look at case law and evidence, then it would be better to have a call very soon re briefing schedule so that Sprint can get something to the Court ASAP, Plaintiffs have a chance to respond in writing, and the Court will be ready to issue orders on Friday 3/5/10.

Phil Obbard
Res Atty

---

**From:** Obbard, Philip, Superior Court
**Sent:** Wednesday, March 03, 2010 11:07 AM
**To:** 'Joseph Sarles'; 'scott@bursor.com'; 'Alan Plutzik'; jmottek@positivelegalgroup.com; 'jdfranklaw@san.rr.com'
**Cc:** Dominic Surprenant; A Brooks Gresham; Michael Fazio; Kristen Savelle; 'Boyle, Joseph'
**Subject:** RE: In re Cellphone Termination Fee Cases -- JCCP 4332

I (the research atty) can have a call at any time and then convey concerns to the Court and then bring back informal advice.  If necessary the Court might be able to make time today or tomorrow.

Given that there is a hearing on Friday 3/5/10, the Court is likely to state that on any issue where a party wants briefing the issue should be briefed on extremely shortened time so that the issues are framed and can be addressed by the Court in orders on Friday morning.  Unless the issue is very urgent.

If you want, find a time when cnsl for Plaintiffs are available and set up a conf call with me today.

Phil Obbard
Research Atty

---

**From:** Joseph Sarles [mailto:josephsarles@quinnemanuel.com]
**Sent:** Wednesday, March 03, 2010 11:03 AM
**To:** Obbard, Philip, Superior Court; 'scott@bursor.com'; 'Alan Plutzik'; jmottek@positivelegalgroup.com; 'jdfranklaw@san.rr.com'
**Cc:** Dominic Surprenant; A Brooks Gresham; Michael Fazio; Kristen Savelle; 'Boyle, Joseph'
**Subject:** In re Cellphone Termination Fee Cases -- JCCP 4332

Mr. Obbard and counsel,

Sprint requests a conference call as soon as practicable to discuss Friday's hearing in this matter.  Sprint requests this call in an effort to avoid further actions by Sprint before Judge Linares in the District Court in New Jersey.

Do counsel and the Court have availability today or tomorrow?  Counsel for Sprint will make itself available at the Court's convenience.

Thank you,

Joseph Sarles
Counsel for Sprint

**EXHIBIT 3**

October 7, 2009

ETF Settlement Administrator
Gilardi & Co. LLC
P.O. Box 6002
Larkspur, CA 94977-6002

    Re:  **REQUEST FOR EXCLUSION** - *Larson, et al. v. Sprint Nextel Corporation, et al.*, Civ. Action No. 2:07-cv-05325 (JLL-ES)

To Whom It May Concern:

    I, Katherine Zill, request to be excluded from the settlement in *Larson, et al. v. Sprint Nextel Corporation, et al.*, Civ. Action No. 2:07-cv-05325 (JLL-ES). My address is 921 10th Street, NE, Washington, DC 20002, and my telephone number is 202-215-0943.

Very truly yours,

*/s/ Kath F. Zill*

Katherine Zill