UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB and WILLIE DAVID, individually and on behalf of all others similarly situated, | Civ. Action No.: 2: 07-cv-05325 (JLL – ES) |
| Plaintiffs, | HONORABLE JOSE L. LINARES |
| -against- | |
| AT&T MOBILITY LLC f/n/a/ CINGULAR WIRELESS LLC and ATTM CORPORATION and SPRINT SPECTRUM L.P. d/b/a ATTM | |

**OBJECTIONS TO PROPOSED SETTLEMENT OF CLASS ACTION**

NOW COME Joni Harter of 6 East Cottage Street, Chagrin Falls, Ohio 44022 (cell phone number 216-214-4247), David J. Mehaffie of 7185 Brodie Blvd., Dublin, Ohio 43017 (cell phone number 614-946-6890) and Clark Richard Brown of 394 Houghton Rd., Sagamore Hills, Ohio 44067, (cell phone number(216) 534-3643) (hereinafter referred to as "Objectors") by and through the undersigned counsel, and hereby file these Objections to the Proposed Settlement of this Class Action and, in support thereof, state as follows:

**PROOF OF MEMBERSHIP IN CLASS**

Objectors Mehaffie, Harter, and Brown currently have cell phones that utilize A T & T Mobility and were A T & T subscribers during the class period.

1

**NOTICE OF INTENT TO APPEAR**

Objectors hereby give notice that they intend to appear, through the undersigned counsel, at the Fairness Hearing presently scheduled for 10:00 A.M. on April 14, 2010, in the United States District Courthouse for the District of New Jersey, 50 Walnut Street, Newark, New Jersey 07101.

**SUMMARY OF SETTLEMENT**

The Settlement Agreement provides that all persons who were parties to a contract for wireless telephone service with A T & T Mobility ("ATTM") and/or its predecessors between January 1, 1998 and November 4, 2009 that contained a provision for a flat-rate Early Termination Fee ("ETF") are part of the Settlement Class. ATTM has agreed to pay $16 million dollars into a common fund, to provide up to $2 million in non-cash benefits to the claimants, and to provide a minimal amount of injunctive relief. Of the total **potential** amount of cash and non-cash benefits, Class Counsel is requesting a fee of up to 33% or $6 million plus reimbursement of expenses.

However, an analysis of the Stipulation and Settlement Agreement ("Settlement Agreement") reveals that much of this is smoke and mirrors, the injunctive relief is of little benefit, and that the actual out-of-pocket dollars paid by ATTM to the Class, their clients, will be significantly less than $18 million. This Court is urged to reduce the requested fees and to withhold a significant portion of the fees until such time as it receives a final report detailing exactly how much cash was actually distributed to the Class.

**OBJECTIONS**

The Settlement Agreement is unfair, unreasonable and inadequate for the following reasons:

1.  <u>ATTORNEYS FEES ARE EXCESSIVE</u>.  Class Counsel indicates in the Notice and in the Settlement Agreement that it will request up to $6 million in fees.  That is entirely too much compensation considering how short this case's "time-line" was and the fact that this is the same case that was litigated against Sprint/Nextel that was recently settled.  This matter and the Sprint/Nextel matter have the same case number, are in the same Court, and are the same case, just against different settling defendants.  In the Sprint/Nextel matter, this Honorable Court awarded attorneys' fees of $5,775,000 to many of the same attorneys who are requesting fees herein.  When added to the amount requested herein, the total of fees reach an exorbitant and unconscionable level.

It is important to note that the nature of the case (breach of contract and diversity) is such that the fee should be limited to no more than 200% of the lodestar under New Jersey law.  Although the Third Circuit generally follows the Percentage of the Fund approach to attorneys' fees ("POF") with a lodestar cross-check, *In re Cendant Corp. Securities Litigation,* 404 F. 3d. 173 (3rd Cir. 2005),   *In re Cendant PRIDES Litigation,* 243 F.3d 722 (3rd Cir.2001), *In re: Rite-Aid Corp Securities Litigation,* 146 F. Supp. 2d 706 (E.D. Pa. 2001), in this case the Court must look to New Jersey law for guidance.   In cases of diversity and pendant jurisdiction, federal courts apply state substantive law to determine the method of calculating attorney's fees. *Mangold v. California Public Utilities Com'n,* 67 F. 3d 1470, 1478 (9th Cir. 1995)*; Northern Heel Corp. v. Compo*

*Indus.,* 851 F. 2d 456, 475 (1st Cir. 1988); *Riordan v. Nationwide Mutl Fire Ins. Co.,* 977 F. 2d 47, 53 (2d Cir. 1992).

New Jersey state law limits maximum attorneys' fees in actions brought pursuant to statutes that contain a fee-shifting provision, regardless of whether those actions result in a common fund. The New Jersey Supreme Court has said:

> "We conclude that contingency enhancements in fee-shifting cases ordinarily should range between **five and fifty-percent of the lodestar fee**, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar. **Such enhancements should never exceed one-hundred percent of the lodestar,** and the enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment … and the result achieved … is significant and of broad public interest".(Emphasis added). *Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995).

The New Jersey Supreme Court recently affirmed the continuing application of the *Rendine* holding to common fund class action settlements. See *The Education Day Care Center, Inc. v. Yellow Book USA, Inc.* 194 N.J. 271, 944 A. 2d 31 (2008). Finally, New Jersey law limits contingent fees in actions where the recovery is greater than $1.5 million to no more than Twenty (20%) percent of the recovery. New Jersey Supreme Court Rule 1:21-7 (c).

Many other states whose laws are implicated in this settlement have limitations similar to New Jersey's. For example, Oklahoma also requires fees to be calculated based upon a very modest enhancement of the reasonable lodestar, and not as a percentage. See *Spencer v. Oklahoma Gas & Elec. Co.,* 171 P. 3d 890, 895 (Okla. 2007) (*citing Burk v. Oklahoma City,* 598 P. 2d 659 (Okla. 1979).

If, notwithstanding the foregoing, this Court were to utilize a POF approach, it should award **total fees and expenses** in an amount significantly less than what is

4

requested here, and should make sure that the multiplier is no more than 1.5.  However, in this case, the amount already paid to Class Counsel in the Sprint/Nextel matter should be factored into the Court's consideration and the multiplier awarded in this case should be no more than 1.25.  A careful review of Class Counsel's lodestar report should also be undertaken to segregate time for which compensation has already been received in the Sprint/Nextel settlement.  This should be segregated so that Class Counsel is not paid twice for the same work.

In addition, a significant potion of Class Counsel's fees should be deferred until such time as the Court has received reports indicating the amount of monetary relief that has actually been delivered to the Class.

2. <u>NON CASH BENEFITS</u>.  The non cash benefits and injunctive relief are of questionable value **to the Class**.  First of all, the injunction against entering into new customer agreements with a Flat-Rate ETF is only good for two (2) years from the date that the Settlement Agreement was signed.  Not only is this a very short period of time, considering that the Class period is more than ten (10) years, but the Settlement Agreement was signed on or about September 15, 2009.  By the time that any appeals are concluded, the entire two (2) year period could have expired, so this "relief" is of no actual value.  In addition, the $2 million in "non-cash benefits" consists largely of pre-paid calling cards that have many restrictions.  The value of a 200 minute calling card is less than $20 and should be included, if at all, at that value.  If one doesn't take the prepaid card, he can opt for a prorated ETF.  But, to claim the pro-rated ETF amount appears to be an extremely complicated transaction which is not even completely spelled out in the Settlement Agreement.  The Settlement Agreement refers class members the

5

Proposed Plan of Allocation.  <u>Settlement Agreement Article III (3)</u>. However, the Proposed Plan of Allocation is silent on the claim process or procedure that must be followed to obtain this benefit.

3.      DELAY IN PAYMENT OF ATTORNEYS FEES

In the instant case, the Court cannot ascertain the true value of the benefit to the class until it knows exactly how much cash is paid out to Class Members rather than some currently unknown charities. Although "up to" $16 million may be paid out, at this point in time the Court does not know the exact amount that will be paid to the Clas Members.  Without this information, the Court has no basis for determining what the relief is worth; without knowing the value of the settlement to Class Members, the Court cannot make an independent finding about whether or not the requested fees are fair.

Based on anecdotal historical evidence, it is doubtful if more than 7-10% of those eligible will actually file a claim.  This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure itself that the attorneys' fees are reasonably related to the actual benefit received by the Class.  This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation.

"*Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id*.  Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made

6

settlements when awarding attorney's fees. They do not simply use the amount made available to the class when calculating attorneys' fees, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar). *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar):

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…"

*In re Excess Value Ins. Coverage Litig.,* 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121). The Court proceeded to wait until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons. The court awarded counsel $2.4 Million in fees. This Court should wait until it receives a report on actual redemption before awarding fees. Although this is

7

not a coupon case, the principle of waiting until the benefit to the Class is ascertained is the same.

In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained" *Id.* at *20-28. This court went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar.  See also *Managing Class Action Litigation*: *A Pocket Guide for Judges.*

There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases.  For example, in <u>In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation</u>, 55 F.3d 768 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered  $1,000 coupons for the purchase of a new truck.  In <u>Maffei v. Alert Cable TV of North Carolina</u>, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

Here, although no coupons are being issued. The concept is the same.  Because this is, in effect, a claims-made settlement, with unclaimed funds going to *cy* pres recipients chosen by Counsel and approved by the Court, the Court should await a report detailing exactly the amount of  monetary benefit received by the Class.  If the POF method is chosen, it should be based on the actual  relief received by the Class, not the

potential. Therefore, this Honorable Court is urged to wait until it receives a report on actual payments to Class Members before awarding fees.

4.     <u>CY PRES DISTRIBUTION</u>

The Settlement Agreement provides that if there is any cash remaining in the fund after all the claim periods have expired, it will go to a charity chosen by the parties and approved by the Court. Unclaimed "non-cash benefits" will also be given to a 501(e)(3) organization. There is no requirement that the *cy pres* be limited to organizations whose purpose will benefit the class in some way. The amount that is received by these presently unknown organizations whose purpose may not benefit the Class members at all should not be considered when determining the appropriate amount of fees to be awarded.

5.     <u>VIOLATION OF FED. R. CIV. P. 23(h)</u>

In addition, Class Counsel has also violated Fed. R. Civ. P. 23 (h) (2) by not giving the class members adequate notice of their fee petition which is, in fact, a motion. The deadline for filing this Objection is March 24, 2010. However, as of such date no fee petition, or Motion for Award of Counsel Fees, has been filed. This puts Objectors in the awkward and impossible position of objecting to a Motion for Fees prior to the time that the motion is filed. Under Fed. R. Civ. P 23(h)(2), the Motion for Fees should be filed prior to the time of the objection deadline.

Rule 23(h), Fed.R.Civ.P. provides:

(h) Attorney's Fees and Nontaxable Costs.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

9

  (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
  (2) A class member, or a party from whom payment is sought, may object to the motion.
  (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
  (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

  Since Objectors do not have an opportunity to review the Fee Petition prior to the objection deadline, they reserve the right to file additional and supplemental objections after the Fee Petition is filed.

  Rule 23 (h) (2) above expressly provides that the class member "may object to the **motion**." In order to object to the "motion," the class member must first read the motion and thereby understand the asserted factual and legal basis for the legal fees being sought in the motion. Only then can the class member make a well informed, sensible and usable objection to the actual fees being sought. In fact, until a class member actually sees the motion for fees, he does not even know the **exact amount** of the fees being sought. Therefore, it is disingenuous, unfair, unreasonable and unlawful under Rule 23 (h) (2) to require the class members to file their written objections to the attorney fees at a time when the attorney fee motion has not even been filed.

  Furthermore, Class Counsel has breached the Settlement Agreement because the Fee and Cost Application was to be filed twenty-eight (28) days prior to the Final Approval Hearing. Settlement Agreement VI (3). Under this language, the Fee motion was due on March 17, but was not filed.

  6. CLEAR SAILING

Defendant agreed that it would not "oppose or undermine an application [for fees] at or below [$6 million] or solicit others to do so." Settlement Agreement VI (3). However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

11

7. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections. Objectors also reserve the right to supplement these Objections with other and fuller objections after the Fee Request is filed.

8. The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

9. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

\_\_/s/ Vincent S. Verdiramo_____
VINCENT S. VERDIRAMO
VERDIRAMO & VERDIRAMO ESQS, PA
3163 Kennedy Blvd.
Jersey City NJ 07306
(201) 798-7082
(201) 798-4627
mmf036@aol.com

        Edward F. Siegel
(Ohio Bar No. 0012912)
27600 Chagrin Blvd. #340
(216) 831-3424
(216) 831- 6584 fax
E-mail  efsiegel@efs-law.com
(pro hac vice applied for)

Edward W. Cochran (Ohio 0032942)
20030 Marchmont Rd.
Cleveland Ohio 44122
Tel: (216) 751-5546
Fax: (216) 751-6630 (fax)
edwardcochran@adelphia.net


Sam P. Cannata
9555 Vista Way Ste. 200
Garfield Hts., Ohio 44125
Voice:     (216)   587-0900
E-mail:scannata@snider-cannata.com

Co-counsel for Objectors


**CERTIFICATE OF SERVICE**

I certify that on March 24, 2009, I mailed the foregoing objection by ordinary US Mail, postage prepaid to the following addresses and also filed the foregoing objections electronically:

Clerk of Court
US District Court for the
District of New Jersey
50 Walnut Street
Newark, NJ  07101

James E. Cecchi, Esq.
Carella Byrne Bain Gilfillan Cecchi Stewart
5 Becker Farm Rd.
Roseland, NJ  07068

Brian R. Strange, Esq.
Strange & Carpenter
12100 Wilkshire Blvd., Ste. 1900
Los Angeles, CA  90025

Andrew B. Joseph, Esq.
Drinker Biddie & Reath LLP
500 Campus Drive
Florham Park, NJ  07932

                                                     /s/ Vincent S. Verdiramo
                                                     Vincent S. Verdiramo