**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BARRY HALL, *et al.* individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al.*,<br><br>              Defendants. | Civil Action No. 07-5325(JLL) |

---

**MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL**
**OF PROPOSED SETTLEMENT WITH AT&T MOBILITY LLC**

---

Brian R. Strange
Gretchen Carpenter
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
(310) 207-5055

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Attorneys for Plaintiffs

## TABLE OF CONTENTS

Table Of Authorities ....................................................................**Error! Bookmark not defined.**

Introduction Of Parties And Actions ......................... **ERROR! BOOKMARK NOT DEFINED.**

Preliminary Statement................................................ **ERROR! BOOKMARK NOT DEFINED.**

Statement Of Facts....................................................... **ERROR! BOOKMARK NOT DEFINED.**

    A.    Factual Background and Procedural History of This Action**Error! Bookmark not defined.**

    B.    Reasons for the Settlement.....................................**Error! Bookmark not defined.**

    C.    The Settlement Terms .............................................**Error! Bookmark not defined.**

    D.    Settlement Objections .............................................**Error! Bookmark not defined.**

LEGAL ARGUMENT................................................. **ERROR! BOOKMARK NOT DEFINED.**

Point One    A Settlement Class Should Be Certified**ERROR! BOOKMARK NOT DEFINED.**

    A.    The Settlement Class Satisfies the Requirements of Rule 23**ERROR! BOOKMARK NOT DEF**

        1.    Numerosity.................................................**Error! Bookmark not defined.**
        2.    Commonality..............................................**Error! Bookmark not defined.**
        3.    Typicality ..................................................**Error! Bookmark not defined.**
        4.    Adequacy of Representation .....................**Error! Bookmark not defined.**
        5.    Predominance of Common Questions and Superiority to Other
            Methods of Adjudication ..........................**Error! Bookmark not defined.**
        6.    The Form, Content And Placement Of Notice Met Or Exceeded
            The Requirements Of Rule 23, Due Process, and CAFA ........................ 16

Point Two    Final Approval Of The Settlement Should Be Granted ........................................ 21

    A.    Standards For Approval Of Class Action Settlement ........................................... 21

    B.    The Settlement Is Fair, Reasonable And Adequate ............................................. 23

        1.    Continued Litigation Would Be Long, Complex And Expensive ............ 23
        2.    The Reaction Of The Class Is Virtually Unanimous In Favor Of
            The Proposed Settlement ........................................................................ 24
            a.    Objections Based on Confusion About the Purposes of
                Settlement ................................................................................ 25
            b.    Objections Concerning Class Members' Damages...................... 27
            c.    Objections Based on Misunderstandings About the
                 Settlement Terms or Notice ....................................................... 27

|   |   | d. | Objections to Non-Cash Settlement as Best Possible Recovery | 30 |
|   |   | e. | Objections to Settlement Without Trial | 32 |
|   |   | f. | Objections to "Cy Pres" Distribution as Best Possible Recovery | 33 |
|   |   | g. | Objections Based on Unfounded Hostility Toward Attorneys' Fees | 34 |
|   |   | h. | Objections to Plaintiffs' Receipt of an Incentive Award | 38 |
|   | 3. | | The Parties Have Completed Extensive Pre-Complaint Investigation And Document Discovery | 40 |
|   | 4. | | Plaintiffs Face Considerable Risk In Proceeding To Trial | 41 |
|   | 5. | | The Risks Of Maintaining The Class Action Through Trial | 42 |
|   | 6. | | Defendants' Ability To Withstand Greater Judgment, And Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation | 43 |
|   | 7. | | The Verizon, T-Mobile and Sprint Settlements Confirm That This Settlement Is Fair and Reasonable | 45 |
| Conclusion | | | | 46 |

## TABLE OF AUTHORITIES

**CASES**

*Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30 (3d Cir. 1971) .................................... 21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 10, 14, 15

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir, 1994) ..................................................... 11, 12

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)................................................................. 41

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993)................................................................ 22, 24

*Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994),
  *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) .............. 41

*Bernhard v. TD Bank, N.A.*, 2009 WL 3233541 (D.N.J. 2009)........................................................ 39

*Bezio v. General Electric Company*, 655 F.Supp.2d 162 (N.D.N.Y. 2009) ................................. 39

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................................................ 35

*Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322 (E.D. Pa. 2007). .................... 17

*Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..................................... 16

*Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641 (N.D. Tex. 1978)..................................... 33

*Coppolino v. Total Call Intern.*, Inc., 588 F.Supp.2d 594 (D.N.J. 2008) ...................................... 33

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D.Pa. 2000) ................................................... 39

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 314 (W.D. Tex. 2007)...................................................... 29

*Education Station Day Care Center, Inc. v. Yellow Book USA, Inc.*,
  2007 WL 1245971  (N.J. Super. App. Div. 2007) ................................................................ 31

*Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*,
  657 F.2d 890 (7th Cir. 1981) ................................................................................................ 43

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)........................................................................ 15

*Evans v. Jeff D.*, 475 U.S. 717 (1986).............................................................................................. 38

*Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292 (S.D.Fla. 2007) ..................................... 36

*Fowler v. Birmingham News Co.*, 608 F.2d 1055 (5th Cir. 1979)................................................. 17

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ..................................................... 11

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).................................................................. 21, 40, 41

*Gratsy v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ...... 13

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)........................................... 12

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987),
  *cert. denied*, 484 U.S. 1004 (1988)...................................................................................... 17

*In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation*,
  263 F.R.D. 226, 238 (3d Cir. 2009).............................................................................. 21, 36

*In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*,
  263 F.R.D. 226 (E.D.Pa. 2009)............................................................................................. 39

*In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722 (3d Cir. 2001)......................................... 36

*In re Community Bank of W. Va.*, 418 F.3d 277 (3d Cir. 2005) ............................................. 10, 11

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993)............................. 43

*In re Electrical Carbon Products Anti-Trust Litigation*, 447 F.Supp.2d 389 (D.N.J. 2006)........ 37

*In re General Motors*, 55 F.3d 768 (3d Cir. 1995) ......................................................................... 26

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 264 (3d Cir. 2009) .................. 11, 31, 32

*In re Lease Oil Antitrust Litigation (No. II)*, 2007 WL 4377835 (S.D.Tex. 2007) ...................... 34

*In re Lloyd's Amer. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. 2002)...................... 31, 32

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C.2002)......................... 39

*In re Matzo Food Products Litigation*, 156 F.R.D. 600 (D.N.J. 1994) ......................................... 34

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) ................................... 17
*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) ........... passim
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216 (D.N.J. 1997) .............. 17
*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J 1997) ................................................................. 13, 22, 24, 26
*In re Warfarin Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ...................................................... 26
*In re: AT&T Corp. Securities Litigation*, 455 F.3d 160 (3d. Cir. 2006) ...................................... 36
*In re: Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 (D.N.J. 2005) .......... 29
*Klein v. O'Neal, Inc.*, --- F.Supp.2d ---, 2010 WL 1435161 (N.D.Tex. 2010) ............................ 39
*Lake v. First Nationwide Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) ............................................. 23
*Larson v. Sprint Nextel Corp.*, 2010 WL 234934 (D.N.J. 2010) ........................................... passim
*Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558 (3d Cir. 1989) ..................................................... 41
*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ............................................................................. 12
*Malchman v. Davis*, 761 F.2d 893 (2d Cir.1985) ....................................................................... 38
*McGee v. Continental Tire North America, Inc.*, 2009 WL 539893 (D.N.J. 2009) .................... 39
*Milliron v. T-Mobile*, 2009 WL 3345762  (D.N.J. 2009) ...................................................... passim
*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .................................................................. 35
*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D.Pa. 2003) ..................................... 31
*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615  (9th Cir. 1982) ................................ 23
*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................ 38
*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ......... 31
*Six (6) Mexican Workers v. Arizona Citrus Growers*, 641 F.Supp. 259 (D. Ariz. 1986) ............ 33
*Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309 (S.D.N.Y. 1978) ........................................... 23
*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ............................................................... 11, 12
*Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ....................................................... 24
*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003) ................... 14
*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) .................................. 17, 31
*Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956 (3rd Cir. 1983) ..................................... 31, 32
*Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999); ................................ 38
*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982). ................................................................ 41
*Weiss v. Mercedes-Benz of North America,* 899 F.Supp. 1297 (D.N.J. 1995) ................ 22, 24, 41
*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d
    1079 (2d Cir. 1971) ............................................................................................................ 41

**RULES**

Fed.R.Civ.P. 23 .................................................................................................................. passim

**STATUTES**

28 U.S.C. § 1712 ....................................................................................................................... 36
28 U.S.C. § 1715 ....................................................................................................................... 20

**TREATISES**

4 William B. Rubenstein et al., Newberg on Class Actions (4th ed. 2008) .................................. 38
MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641 (2004) ................................................... 22

## INTRODUCTION OF PARTIES AND ACTIONS

Barry Hall, Roman Sasik, David Dickey, Steven Wright, Jane Waldmann, Robert Wise, Richard Chisholm, Mary Betsellie (formerly Mary Pitsikoulis), Debra Lively, Jacqueline Sims, and Kiisha Orr (collectively, "Plaintiffs") are named plaintiffs in the above-captioned action;[1] AT&T Mobility LLC ("ATTM") is the Defendant, and is engaged in the business of providing wireless communications service.

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Brief in support of their motion for final approval of a proposed class settlement (the "Settlement"), the terms of which are set forth in a Stipulation and Agreement of Settlement, dated September 15, 2009 (the "Agreement"), which was previously filed with the Court in support of Plaintiffs' motion for preliminary approval of the Settlement. (*See* Docket Entry No. 355-5). The Settlement will provide direct benefits to settlement class members worth $18 million and, if approved, would resolve all of Plaintiffs' claims against ATTM. The Settlement provides substantial benefits to all Class members, including late term Class members. The Settlement was reached after a thorough investigation by Plaintiffs' counsel and mediation under the supervision of the Hon. Douglas Wolfson (retired).

Defendant ATTM is a provider of wireless communications services. In this action, Plaintiffs allege that: (a) ATTM and/or its predecessors assessed, and in some cases collected, a flat-rate ETF[2] from its subscribers that Plaintiffs allege was in violation of various state and

---

[1]    Jackie Thurman, also named as a representative plaintiff, has passed away and is now being represented by her daughter, Edith D. Thurman.

[2]    A flat-rate ETF is an early termination fee which is the same throughout the life of the contract, regardless of when the customer terminates. Thus, a customer who terminates his or her contract in the first month of the contract would be charged the same early termination fee as a customer who terminated in the last month of the contract.

federal laws; and (b) certain ATTM subscriber contracts contain flat-rate ETF provisions that Plaintiffs allege are unlawful under various state and federal laws.   ATTM denies these allegations.

As part of the settlement, ATTM has agreed to create a common fund of $16 million to be paid to Class members who were charged and/or paid flat-rate ETFs in accordance with the terms of the Agreement, plus up to $2 million worth of non-cash benefits in the form of AT&T calling cards.   The Agreement also provides for significant and extremely valuable "Proration Benefits" which permit current ATTM subscribers who are subject to a flat-rate ETF to convert to a "pro-rated" ETF, i.e., an ETF that declines over time so that terminating members only pay an early termination fee for that portion of the contract remaining.   This settlement, as more fully set forth below, is an excellent result for the Class and should be approved.

## STATEMENT OF FACTS

### A.     Factual Background and Procedural History of This Action

The *Waldmann v. Cingular* case was filed in May 2004 in the Circuit Court of the Fifteenth Judicial Circuit – Palm Beach County, Florida.  In the Complaint, plaintiffs Waldmann, Wise, Thurman, Chisholm, Pitsikoulis, Lively, Sims, and Orr alleged that ATTM's $150-$175 flat-rate ETF was an unenforceable penalty and, thus, an unreasonable term and condition in breach of contract, as well as a violation of substantially similar state consumer fraud statutes. Plaintiffs sought damages, injunctive relief, and attorneys' fees.  ATTM filed several motions to remove the *Waldmann* action and after several hearings and discovery in that case, including depositions of representative plaintiffs, the late Jackie Thurman, held on September 8, 2006, and Jacqueline Sims, held on September 27, 2006, the case was removed to Florida federal court and subsequently transferred to the Central District of California.

The *Sasik v. AT&T Wireless* case was filed in March 2005, also alleging flat-rate ETF violations.   The parties litigated the arbitrability of the claims in two motions to compel arbitration, resulting in an appeal by Defendant to the Ninth Circuit Court of Appeals (the appeal was later dismissed).  The parties conducted substantial class certification discovery, including Defendant taking the representative plaintiffs' depositions in California and Minneapolis.[3]  The *Sasik* case was subsequently consolidated with the *Waldmann v. Cingular* case for pre-trial discovery.

The court lifted a primary jurisdiction stay of both the *Sasik* and *Waldmann* actions, and the parties engaged in extensive briefing on the potentially dispositive threshold issue of federal

---

[3]     This included David Dickey's deposition on March 20, 2007 in Minneapolis, Minnesota; Steven Wright's deposition on March 27, 2009 in Los Angeles, California; and Roman Sasik's deposition on April 6, 2007 in San Diego, California.

preemption. The Court denied this motion without prejudice, and subsequently set a trial schedule which consolidated the two cases for pretrial discovery, and contained expedited discovery and briefing on the federal preemption issue.

As part of this expedited proceeding, Plaintiffs engaged in significant and substantial discovery. Plaintiffs served extensive written discovery on ATTM, and ATTM produced thousands of documents on an expedited basis, totaling well in excess of one million pages. Plaintiffs took multiple Rule 30(b)(6) depositions in Los Angeles, California in July 2009.[4] Although this expedited discovery was taken for the purposes of deciding the preemption issue, the extensive information produced by ATTM was also highly relevant to the core ETF claims asserted in the litigation.[5] After substantial discovery, expedited briefing and a full, factual hearing, the Court denied the preemption motion on its merits.

The instant action was filed on November 5, 2007. (*See* Complaint, Docket Entry No. 1). ATTM moved to compel arbitration pursuant to the terms of its form customer agreement. By way of Opinion and Order dated March 30, 2009, the Court denied ATTM's motion to compel. (*See* Opinion and Order Denying Motion to Compel, Docket Entries Nos. 301, 302). ATTM timely appealed that decision. That appeal was stayed pending approval of the Settlement. (*See* Order Granting Motion to Stay, Docket Entry No. 312).

Over five years after the *Waldmann* and *Sasik* cases were filed and after completion of substantial discovery, the parties engaged in substantial settlement discussions before the

---

[4]    This included Gary Corley's deposition on July 8, 2009 and Mitchell Farber's deposition on July 9, 2009.

[5]    By way of example, ATTM produced documents relating to the average costs it incurs when a wireless customer prematurely terminates his or her service, as well as documents concerning its policies, applicable to all customers in all markets, for imposing the ETF.

Honorable Douglas Wolfson (retired) in New Jersey, including two all-day mediations and subsequent phone calls. As a result of the mediation with Judge Wolfson, the parties reached a tentative agreement on certain key settlement terms, and in the weeks after, negotiated the definitive and final terms of this settlement which was preliminarily approved by this Court on November 4, 2009. (Docket Entry No. 421). This Settlement resolves virtually all of the ETF litigation pending against ATTM throughout the country, and almost all ETF Counsel are included in Class Counsel's application for attorneys' fees and costs, including *Kinkel v. Cingular Wireless LLC,* AAA WIA No. 11 494 02646 06 (AAA Arbitration) and *In Re Cellphone Termination Fee Cases,* JCCP 4332 (Cal. Super. Ct., Alameda County) ("Related Cases")—cases alleging similar violations of law arising from ATTM's flat-rate ETF.

**B.    Reasons for the Settlement**

Every settlement is necessarily the result of a risk-benefit analysis that requires the parties to balance the merits of the claims and defenses asserted, and the likelihood of successfully obtaining or defeating class certification, and then prevailing on the ultimate merits of the suit, while being mindful of the considerable burdens and risks of litigation. In summary, Plaintiffs claim that ATTM's flat-rate ETF is an unenforceable penalty. On the other hand, there are many costs associated with developing a wireless network and acquiring and servicing customers. These costs are borne by ATTM. The ETF assisted ATTM in limiting financial risk associated with bearing those up-front costs for customers who terminate their wireless service before the end of their contract terms. It also compensated ATTM for the loss of contract revenue from customers who breached their contracts by terminating prematurely.

Under general principles of contract law, if a liquidated damages clause,[6] such as ATTM's ETF, is found to be unenforceable, the aggrieved party is nonetheless allowed to prove and collect its actual damages from the breaching party. Thus, if Plaintiffs were successful in proving that the flat-rate ETF was an unenforceable penalty, ATTM would have a claim against class members for its actual damages caused by their breaches. In fact, ATTM filed such counterclaims in the *Sasik* and *Waldmann* actions. In another California action, *Ayyad v. Sprint*, the case was tried to a jury, which awarded damages to Sprint greater than those which were awarded to the class. *Ayyad, et al. v. Sprint Spectrum Limited Partnership, et al.*, Case No. No. RG03-121510 (Cal. Super. Ct., Alameda County, July 28, 2008). There was thus a risk that, if this case went to trial, ATTM would be able to prove its own entitlement to damages which would exceed the Class's recovery.

Taking these factors, as well as others, into consideration, the parties have concluded that the benefits of settlement in this case outweigh the attendant risks of litigation, including the uncertainties and difficulties associated with obtaining class certification for liability purposes, the legal and factual defenses that have been asserted by ATTM, the expense and length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, will likely be submitted for appellate review. As described herein, there are substantial benefits afforded to the Settlement Classes by the Settlement.

In light of the risks of continued litigation, Plaintiffs and their counsel believe that the Settlement – which provides benefits of $18 million, with all costs of notice, administration,

---

[6]     ATTM also disputes that its ETF is subject to liquidated damages law, claiming instead that it is an alternative means of performance.

attorneys' fees and expenses, and incentive awards to be paid from the common fund, and which also allows current ATTM customers with a flat rate $150–$175 ETF provision in their contracts to choose a pro-rated ETF that declines over the course of their contract terms – is clearly reasonable. ATTM has also committed not to return to a flat-rate ETF in its consumer service agreements for a period of two years. The Settlement represents an excellent result for the members of the Settlement Classes, and merits final approval.

## C.    The Settlement Terms

The Settlement resolves all claims asserted against ATTM by the members of the Settlement Class upon the following general terms, to which ATTM agrees:

•    Create Common Fund of $16 million cash. The costs of notice, administration, attorney's fees, and incentive awards of up to $2,000 to each Plaintiff will be paid from the Fund. The remainder of the Common Fund will be used to pay claims made by Class members who elect to seek monetary relief, in accordance with a Plan of Allocation of which Plaintiffs seek separate approval by the Court. The Plan of Allocation provides for payment of up to $140 to Class members who paid a flat-rate ETF and can document such payment, depending when in their contracts they terminated. The late-term Class members receive the highest benefit. Class members who either paid an ETF but cannot document such payment, and certify under penalty of perjury that they paid a flat-rate ETF, and Class members who where charged, but did not pay, a flat-rate ETF and suffered identifiable concrete economic harm, will be paid $25. If the value of allowed claims exceeds the money in the Common Fund, Class members will be paid on a pro rata basis.

•    Provide up to $2 million in non-cash relief. Qualified Class members may submit a claim for an AT&T Prepaid Long Distance Card with up to 200 minutes. If the value of

allowed claims exceeds $2 million, Class members will receive their pro rata share of non-cash relief.

•   In the alternative, allow eligible Class members to elect to modify their contracts containing flat-rate ETFs into contracts with pro-rated ETFs.  This is the Proration Benefit. There is no limit on this benefit, i.e., every eligible claimant who selects this benefit will receive it, and it will not be subject to reduction regardless of how many Class members select it.

•   To the extent that the Common Fund is not exhausted by claimants, the remainder will be donated to a charity or charities as agreed by Plaintiffs and ATTM and approved by the Court.  To the extent that the non-cash benefits to class members submitting claims does not reach a value of $2 million, AT&T Prepaid Long Distance Cards will be conveyed to the same charity or charities, such that the total face, retail value of the non-cash benefits distributed to claimants and charitable organizations is $2 million.

The substantial notice program approved by this Court was fully implemented and executed as set forth in the Declarations of Joel E. Botzet and John T. Throckmorton regarding Notice compliance.  (Docket Entries Nos. 513, 514).

**D.    Settlement Objections**

Of the millions of Class members, only 23[7] have objected to the Settlement.  Eight of these objections were drafted by "professional objectors" who raise the same tired, boilerplate objections rejected by this Court in the *Sprint* and *T-Mobile* ETF settlements.  The other 15 objections are from Class members (1) who generally protest (without justification) any award of attorneys' fees; (2) who are confused about the purposes of settlement; or (3) who misunderstand

---

[7]    Two additional objectors, Gerald Phillips and Andrew Phillips, formally withdrew their objections on April 12, 2010.  (*See* Declaration of Brian R. Strange ("Strange Decl.") ¶ 10; Ex. I).  Plaintiffs do not respond to these withdrawn objections in this Brief.

the Settlement terms and notice.  In addition to demonstrating the fairness, reasonableness and adequacy of the Settlement, this Brief will address each of these objections and demonstrate why each is without merit and should be overruled.

## LEGAL ARGUMENT

### POINT ONE

## A SETTLEMENT CLASS SHOULD BE CERTIFIED

It is well-settled that the Court may certify a class for settlement purposes, provided that it engages in a Rule 23(a) and (b) inquiry.  *In re Community Bank of W. Va.*, 418 F.3d 277, 299 (3d Cir. 2005); *GM Trucks*, 55 F.3d at 786.  While a class must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997).  Indeed, the Supreme Court "has expressly approved the use of the settlement class device."  *Id.* at 618 ("the 'settlement only' class has become a stock device").  The settlement is relevant in that "a district court need not inquire whether the case, if tried, would present intractable management problems." *Community Bank*, 418 F.3d at 300, quoting *Amchem Prods.*, 521 U.S. at 620 (internal citation omitted); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314 (3d Cir. 1998).

While ATTM may argue that class issues, if the case were to be fully litigated on its merits, would present serious management problems, the Court need not be concerned with trial management issues in the settlement context.  Instead, it need only consider "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.  That dominant concern persists when settlement, rather than trial, is proposed." *Community Bank*, 418 F.3d at 299, quoting *Amchem Prods.*, 521 U.S. at 621.  The facts here demonstrate the suitability of this action for class certification for settlement purposes, as this Court already found in preliminarily certifying a class in connection with preliminary approval of the settlement.

A.     **The Settlement Class Satisfies the Requirements of Rule 23**

To be certified, a settlement class in which the class members receive money damages must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and the so-called "predominance of common issues" and "superiority of the class action device" requirements of Rule 23(b)(3). *Community Bank*, 418 F.3d at 302. In this case, each of the above requirements is fully satisfied.

1.     **Numerosity**

The class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 227–28 (3d Cir. 2001). "Class size only need be large enough that it makes joinder impracticable." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D.Pa. 2000). Although the precise number of Settlement Class members cannot be determined, by its very nature, the Settlement Class includes literally millions of members. Thus, numerosity is readily established.

2.     **Commonality**

The commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the class. *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 264 (3d Cir. 2009); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir, 1994). "Because the requirement may be satisfied by a single common issue; it is easily met." *Fry*, 198 F.R.D. at 467. Clearly, there are questions of law and fact common to the Settlement Classes, the resolution of which would advance the litigation. *See id.* at 467 (existence of single common issue sufficient for certification). A simple reading of the Third Amended Complaint demonstrates that there are

numerous questions of law or fact common to the Settlement Class.  (*See* Third Amended Complaint, Docket Entry No. 356, ¶ 51).

### 3.      Typicality

The typicality requirement "centers on whether the interests of the named plaintiffs align with the interests of the absent members."  *Stewart*, 275 F.3d at 227.  It is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).  Cases challenging the same unlawful conduct that affects both the named plaintiffs and the class usually satisfy the typicality requirement, even if varying fact patterns underlie individual claims.  *Baby Neal*, 43 F.3d at 58.  A claim will not be deemed atypical if it "arises from the same event or practices or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).  The typicality requirement is satisfied here, as Plaintiffs' claims, evidenced by the factual allegations in the Complaint, mirror those of the Settlement Class.

### 4.      Adequacy of Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors:  the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation, and they must not have interests antagonistic to those of the class.  *See, e.g.*, *Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).  Class counsel are considered qualified if they have demonstrated an assurance of vigorous prosecution in the case, which is equated with competence and experience.  *Gratsy v.*

*Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 129 (3d Cir. 1987); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J 1997).

Here, Plaintiffs' counsel is qualified, experienced and able to conduct this litigation. Strange & Carpenter and Carella, Byrne, Cecchi, Olstein, Brody & Agnello ("Class Counsel") specialize in class action and other complex litigation in courts throughout the country, including consumer, securities, corporate governance, healthcare and antitrust litigation.  Class Counsel's experience and competence is demonstrated in the results of this Settlement in addition to the credentials submitted to the Court in support of the motion for preliminary approval of the Settlement.

Plaintiffs also fairly and adequately represent the interests of the Settlement Class. Plaintiffs, like the other members of the Settlement Class, were parties to a wireless service contract with ATTM that contained a flat-rate ETF provision and allege that they were harmed as a result, for the reasons set forth in the Complaint.  In short, Plaintiffs' interests are coextensive with, and not antagonistic to, those of the unnamed, absent members of the Settlement Class.

Only two objectors, Turner and Walsh ("Turner Objectors"), oppose this Settlement on adequacy grounds.  (Docket Entry No. 494).  Their joint objection argues that Plaintiffs are not adequate because they all paid or were charged a flat-rate ETF and are members of the "ETF Assessed Class" so that they cannot fairly represent members of the "Subscriber Class" who were *not* assessed an ETF fee.  (Docket Entry No. 494 at 2–3).  This exact objection was rejected by this Court in the *Sprint* settlement.  *See Larson v. Sprint Nextel Corp.*, 2010 WL 234934 at *3 (D.N.J. 2010).  This objection fails to explain how Plaintiffs are in *fundamental conflict* with those who did not pay such fee, or how any prejudice will result.

To bar certification, a conflict must be "fundamental" and arise from the specific issues in controversy. *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A fundamental conflict exists where some named party class members have been harmed by the same conduct that has benefited other members of the class. *Id.* This is not the case here. Rather, if the ETF provisions were found to be unlawful, then all class members would be equally harmed in that each was a party to a service contract that contained this unlawful provision. Here, all Class members would benefit from a determination that ATTM's ETF is unenforceable.

The fact that substantial benefits were obtained in this Settlement demonstrates Plaintiffs' suitability. *See Amchem*, 521 U.S. at 620 (consideration of the settlement terms when examining the propriety of class certification is "altogether proper"). It cannot be disputed that Plaintiffs, who paid or were charged flat-rate ETFs, achieved a settlement of significant value for those who entered into contracts containing the ETF but were never charged. According to the terms of the Settlement, members in the latter group ("Subscriber Class") are entitled to their choice of (1) an AT&T Prepaid Long Distance Card with up to 200 minutes or (2) the option to convert their flat-rate ETF to a pro-rated ETF. (Settlement Agreement, Docket Entry No. 355-4 at p. 17). These benefits are specifically tailored to address the claims of the Subscriber Class and confer significant benefits on those who suffered no calculable out-of-pocket loss from the flat-rate ETF.

The Turner Objectors also argue that the non-cash calling card benefit reveals "inadequate representation of the Subscriber Class" since (1) the benefit is capped at $2 million, posing a risk that benefits will be reduced pro rata; and (2) unused calling cards will be distributed to charity instead of to Subscriber Class members. (Docket Entry No. 494). These

objections are disingenuous.  The calling card benefit is only one of two Subscriber Class benefits.  The second and arguably more valuable benefit—conversion of current flat-rate ETFs to pro-rated ETFs—is unlimited and available to every member of the Subscriber Class who elects this option.  Distribution of unclaimed calling cards to charity is not unfair to the Subscriber Class—unclaimed funds from the ETF Assessed Class common fund are subject to the same charitable fate, as were the cash and non-cash benefits in the *Sprint* and *T-Mobile* settlements.  *See* Settlement Agreement, Docket Entry No. 355-4 at p. 18; *Milliron*, 2009 WL 3345762; *Larson*, 2010 WL 234934.  The cash and non-cash benefits are treated the same. There is no unfairness here, and this objection should be overruled.

### 5.   Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  The existence of individual questions of fact does not per se preclude class certification.  *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985).  Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.

Class certification is generally appropriate where a defendant has engaged in a pattern of uniform activity that is challenged by the complaint.  *See id.* at 624 (predominance requirement readily established in cases alleging consumer fraud); *Prudential*, 148 F.3d at 314-15 (predominance requirement satisfied where class members' claims arise from common scheme by defendant).  In addition, the common question of law in this action, i.e., whether ATTM's

flat-rate ETF is an unenforceable penalty, predominates over any individual legal or factual issues that may exist.  Certification of the Settlement Class is therefore warranted under Rule 23(b)(3) because questions of law and fact predominate over questions affecting only individual class members.

In addition, a class action is superior to other methods of adjudication by the Settlement Class members of the claims identified in the Complaint.  Each of those claims, taken individually, is of such a relatively low individual dollar value that, as a practical matter, absent the use of the class action device, it would be too uneconomical and inefficient for any individual plaintiff to finance litigation asserting such claims through trial and appeal.  *See Larson*, 2010 WL 234934 at *4; *Milliron v. T-Mobile*, 2009 WL 3345762 at *3 (D.N.J. 2009).  *See also Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.")

In sum, because each of the elements of Rule 23(a) and 23(b)(3) is satisfied, this action should be finally certified as a class action for purposes of effectuating the Settlement.

### 6.    The Form, Content And Placement Of Notice Met Or Exceeded The Requirements Of Rule 23, Due Process, and CAFA

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."  *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 at *3 (D.N.J. 2009)(*quoting In re Prudential*, 148 F.3d 283, 306 (3d Cir. 1998).  Before certifying a class or approving a class

settlement, a court must direct that notice of the proposed settlement be disseminated to class members.  See Fed.R.Civ.P. 23(c)(2) & 23(e).  As the Settlement Class is maintained under Rule 23(b)(3), Class Notice must meet the requirements of both Rules 23(c)(2) and 23(e).  *See Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 225 (D.N.J. 2005); *see also Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007).

Rule 23(c)(2) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c)(2); *Varacallo*, 226 F.R.D. at 225.  Rule 23(e) requires that, when the named parties to a class action reach a proposed settlement, "class members be notified of the terms of the proposed settlement."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 230 (D.N.J. 1997); Fed.R.Civ.P. 23(e) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

This Court has broad discretion to administer the class proceedings before it, including the form and manner of dissemination of notice provided to absent class members.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1096 (5th Cir. 1977); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 168 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988) ("Rule 23, of course, accords considerable discretion to a district court in fashioning notice to a class").  As such, the form and content of the class notice are committed to the sound discretion of the court.  *In re Prudential Ins. Co.*, 148 F.3d at 299; *see also Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1059 (5th Cir. 1979) (the court has great discretion in determining the kind of notice to employ in alerting class members to proposed settlement and settlement hearing subject to "broad reasonableness standards imposed by due process").

This Court previously found that the method of notice and the form and content of the notice constitutes the best notice practicable under the circumstances, and that the Notice Program complies with the requirements of Rule 23 and with applicable standards of due process. *See* Preliminary Approval Order ¶ 11 [Docket Entry 421]. The Court also found that the Notice Program would "adequately inform members of the Settlement Class of their right to exclude themselves from the Settlement Classes." *Id.* In doing so, this Court acted well within its discretion, and therefore, should affirm these conclusions.

In its Preliminary Approval Order, this Court approved the following forms of notice as consistent with the requirements of the Federal Rules of Civil Procedure and due process: Mail Notice, Long Form Notice, Short Form Notice, and Invoice Notice. *See* Preliminary Approval Order ¶¶ 10-12. The notices contained all the information required by Rule 23(c)(2) and 23(e) and was clear and concise. *See id.* The notice program was robust, and properly apprised absent class members of their rights. Indeed, the notice program utilized here is appropriate and comparable to (if not better than) the notice programs used in *Milliron v. T-Mobile USA, Inc.,* No. 08-04149 (D.N.J.) (the "T-Mobile ETF settlement"), and *Larson v. Sprint Nextel Corp.*, No. 07-5325 (D.N.J.) (the "Sprint ETF settlement"), both of which received final approval from this Court. *See* Declaration of Tiffaney A. Allen dated June 9, 2010, ¶¶ 8-9 ("Allen Declaration").

The parties have completed the dissemination of the Class Notice in the manner approved by the Court, as detailed more fully below, thereby providing individual notice to tens of millions of absent class members as well as extensive publication notice. Individual notice via the Invoice Notice was provided to 25,978,586 ATTM customers in all ATTM markets throughout the United States, including Puerto Rico, via paper bill insert to customers who receive paper bills from ATTM and by email to customers who receive electronic bills from

ATTM.  *See* Declaration of John T. Throckmorton, dated May 28, 2010 ¶ 3, 8, 9,11 (Docket

Entry 514) ("Throckmorton Declaration").   The Settlement Administrator and ATTM also

provided individual postcard notice: (a) by Mail Notice to 1,177,231 customer accounts on the

ETF Payer Class Member List;[8] and (b) by Spanish language postcard notice to 729,211

accounts who have elected to receive their bills in Spanish. *See* Declaration of Joel K. Botzet

Regarding Settlement Administration Services and Compliance and CAFA Mailing dated May

28, 2010 ¶ 6, 9 (Docket Entry 513) ("Botzet Declaration); Allen Declaration ¶ 7; Throckmorton

Declaration ¶ 10.   In total, individual notice was provided to 27,885,028 accounts, many of

which contain multiple subscribers.[9] *Id*. ¶ 8.

    As approved by this Court, publication notice was also utilized to apprise potential

settlement class members of the settlement.   Specifically, the Short Form Notice was published

once a week for two consecutive weeks in *Los Angeles Times*, *San Francisco Chronicle*, *New

York Times*, *Washington Post*, *Chicago Tribune*, *Dallas Morning News*, and *Philadelphia

Inquirer*, and for one week in *USA Weekend* and *Parade Magazine*.   Botzet Decl. ¶ 10.   In

---

[8]     To accomplish this portion of the Notice Program, ATTM personnel worked with an
outside data consultant to create the ETF Payer Class Member List using data sourced from
ATTM's active billing system, three inactive, or legacy, billing systems which were in use on
and after September 1, 2005, and supplemented with additional account holder information in
ATTM's possession.   *See* Declaration of Robert Wentland dated June 10, 2010 ¶¶ 4-7
("Wentland Declaration");   Declaration of Christopher Huffstutler dated June 10 ¶ 3
("Huffstutler Declaration").   Once the ETF Payer Class Member List was compiled, it was
provided to Rust Consulting , and Rust verified and updated the ETF Payer Class Member List
address information through the National Change of Address database ("NCOA"), and
eliminated duplicate records.   *See* Declaration of Joel K. Botzet Regarding Settlement
Administration Services and Compliance and CAFA Mailing dated May 28, 2010 ¶ 7 (Docket
Entry 513) ("Botzet Declaration).

[9]     It should be noted that many accounts have multiple subscribers.  By way of example, at
the end of December 2009, AT&T Mobility had approximately 65.1 million postpaid
subscribers.  Throckmorton Decl. ¶ 8.

addition, the Long Form Notice was posted on the settlement website, www.attmetfsettlement.com. *Id.* ¶ 11.

Pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), Rust Consulting, on behalf of ATTM, served notice of the settlement of this matter and electronic PDF copies of the pleadings and other relevant documents, via Certified Mail on September 24, 2009, upon the appropriate federal and state officials defined by CAFA (hereafter referred to as the "CAFA Notice"). Recipients of the CAFA Notice included the Attorneys General of the United States, all 50 states, the District of Columbia, Puerto Rico, and the Virgin Islands. *Id.* at Ex. B.

## POINT TWO

### FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  Under Rule 23, a proposed settlement must be "fair, reasonable and adequate."  *In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation*, 263 F.R.D. 226, 238 (3d Cir. 2009); *In re Prudential,* 148 F.3d at 316. "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims."  *Id.*  For the reasons set forth below, the Settlement is fair, reasonable and adequate, and should be approved.

**A.** **Standards For Approval Of Class Action Settlement**

Approval of a proposed class action settlement is a matter within the sound discretion of the court.  *Lazy Oil*, 166 F.3d at 587; *see also Walsh,* 726 F.2d at 965; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 34 (3d Cir. 1971).  In exercising that discretion, the Third Circuit has outlined a set of nine factors, generally referred to as the *Girsh* factors, to determine whether a settlement is fair, reasonable and adequate.

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action [through trial]; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In Re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation GM Trucks*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GM Trucks*"); *Girsh*, 521 F.2d at 157.

- 21 -

There is a strong judicial policy in favor of resolution of litigation before trial. *GM Trucks*, 55 F.3d at 805 ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). When a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993). This Court has articulated the rationale for that policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation.

*Weiss v. Mercedes-Benz of North America*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995).

Settlements enjoy a presumption that that they are fair and reasonable when they are the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length . . . (3) the proponents of the settlement are experienced in similar litigation. . . ."); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641 (2004). Thus, although a court must evaluate a proposed settlement, the court may rely on the judgment of experienced counsel in doing so.

A fair, reasonable and adequate settlement is not necessarily an "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential,* 962 F. Supp. at 534 (citations omitted). As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . .

> The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.
>
> * * *
>
> Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties.  We may not delete, modify, or substitute certain provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted.  Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982).  *See also Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D.Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'") (citation omitted).

The *Girsh* factors and related settlement principles strongly favor approval of this settlement as fair, reasonable and adequate.

**B.      The Settlement Is Fair, Reasonable And Adequate**

Each of the *Girsh* factors demonstrates that the Settlement is fair, reasonable and adequate, and should be approved because it achieves a substantial benefit for the Class without the further delay, risks and expense of continued litigation.

**1.      Continued Litigation Would Be Long, Complex And Expensive**

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation.  Courts have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement.  *Lake*, 900 F.Supp. at 732 ("due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high"); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978).  *See also GM Trucks*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the

defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense).

Here, due to the factual and legal complexities involved in this case, continued litigation necessarily would be extremely expensive and time-consuming.  The likely length of continuing litigation in this case has an empirical basis, as proven by the age of the *Sasik* and *Waldmann* cases, as well as the California state court ETF litigation and the *Kinkel* arbitration, all of which have been ongoing for years.  Such continued litigation would require numerous additional depositions and further inquiry into ATTM's cost accounting methods and assumptions that would require the use of additional expensive accounting and economics expert witnesses.  Further, it is likely that the case would take some time to bring to trial (after all, an appeal on the threshold arbitration issue is currently pending), and if Plaintiffs were successful, ATTM could appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated.  Under all of the circumstances, a certain result now rather than an uncertain result years in the future, weighs in favor of approval of the Settlement.

### 2.    The Reaction Of The Class Is Virtually Unanimous In Favor Of The Proposed Settlement

Here, there are millions of Class members.  Weighted against this vast number, the 23 objections to the Settlement from Class members is infinitesimal.  Such a small number of objections is a *Girsh* factor which favors approval of a class action settlement agreement.  *See Bell Atl.*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement); *Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential*, 962 F.Supp. at 537 (small amount of negative responses to settlement favors approval); *Weiss,* 899 F.Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement).

Further, as explained above, a number of these objections are drafted by "professional objector" attorneys who rely on the same tired, boilerplate settlement objections that were unsuccessfully raised in the Verizon, Sprint and T-Mobile ETF settlements.[10]

Finally, as outlined herein, nearly all of the objections are based on either (1) unfounded hostility towards attorneys' fees (discussed below); (2) confusion about the purposes of settlement; or (3) misunderstandings about the Settlement terms and notice.[11]  These objections are meritless and should be overruled.

### a.    Objections Based on Confusion About the Purposes of Settlement

Objectors Taylor, Moon, and Boyd generally object to this Settlement on the grounds that class settlements are "wrong" and that Class members voluntarily entered into flat-rate ETF contracts so that ATTM should not be liable to the Class.  (Docket Entry No. 480; Strange Decl. ¶¶ 2, 7, Exs. A, F).  Not only is this really an objection to the litigation, not an objection to the *settlement* (in fact, if the case is as weak as Objectors contend, the settlement is even a better result for the Class), but "[t]he law favors settlement, particularly in class actions and other

---

[10]    Every attorney filing objections on behalf of Class members has already (and unsuccessfully) opposed ETF settlements like this one.  Attorneys Robert Margulies and Jeffrey L. Weinstein (who represent the Turner Objectors) both filed similar objections on behalf of members in the Sprint and T-Mobile settlements that were overruled by this Court.  Vincent S. Verdiramo and John J. Pentz (who represent the Olson Objectors) also filed near-identical objections in the Sprint settlement, Mr. Pentz' objection being filed on behalf of himself, that were rejected by this Court.  Mr. Verdiramo also represents the Harter Objectors, along with Edward F. Siegel, Edward W. Cochran and Sam P. Cannata.  With the exception of Mr. Cochran, all of these attorneys filed objections on behalf of members in the Sprint settlement that were rejected by this Court.  Finally, Mr. Langone files objections on behalf of himself in this case; he also filed near-identical objections on behalf of himself in the Sprint settlement which were rejected by this Court.

[11]    Two objections do not appear to be objections at all – Thatcher merely attempts to opt-out of the class.  (Strange Decl. ¶ 4, Ex. C).  Fonyodi's objection merely points out what he believes is a typographical error in the Settlement Agreement.  (Docket Entry No. 443).  There is no typographical error, and this objection should be overruled.

complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (explaining the "overriding public interest in settling class action litigation").   Settlement is a valuable tool that encourages voluntary resolution of disputes.   It eases the burden on courts and on the public at large.   General objections to the settlement mechanism should be overruled.

Additionally, as discovery and litigation in this and the *Sprint* and *T-Mobile* cases have shown, the legality of the flat-rate ETFs *is* in question.   As this Court noted in approving the *Sprint* settlement, substantially similar claims were tried against Sprint in the *Ayyad* case, and the jury found Sprint liable for damages arising from the flat-rate ETF.   While the results of a jury verdict are never a sure thing, the enormous costs of litigation are.   This is a settlement, and at best, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential,* 962 F.Supp. at 534 (citations omitted).   Here, the parties agree that settlement will produce the best combined result for the Class and for ATTM.   Objectors fail to appreciate the enormous benefits (and savings) each party gains by way of settlement.   Objections related to the legality of the flat-rate ETF must be overruled.

### b. Objections Concerning Class Members' Damages

Lenox, Schroer, Lambert[12] and Hicks[13] argue that certain questions of fact and law "were overlooked" in the Settlement, specifically, whether ATTM is liable for credit damages arising from those who failed to pay the ETF fee (Schroer, Lambert and Hicks), and whether ATTM is liable for "lost opportunity" damages suffered by those who remained in a 2-year contract to avoid being charged an ETF fee (Lenox).  (Docket Entries Nos. 442, 478, 501; Strange Decl. ¶ 9, Ex. H).  Contrary to objectors' assertions, the settlement *does* provide an option for persons alleging such damages: opt out of the Settlement and file an action individually.  Here, the settlement is *not* designed to resolve individual claims such as these.  As this Court pointed out in its approval of the T-Mobile settlement, the claims here relate to ATTM's inclusion of the *same* flat-rate ETFs in the *same* form contracts and "nothing . . . exists to indicate that individual issues would predominate at trial."  *Milliron v. T-Mobile*, 2009 WL 3345762, at *3.  Peripheral injuries to credit are not relevant to the Class claims or the purposes of this Settlement, and these objections should be overruled.

### c. Objections Based on Misunderstandings About the Settlement Terms or Notice

The other predominant objections arise from basic misunderstandings about the Settlement terms and Notice.  Objectors Walters, Maltin and Colburn argue that the Settlement is inadequate because it does not change ATTM's policy regarding flat-rate ETFs.  (Docket Entries

---

[12]    Lambert's objection was never filed with this Court.  It is attached as Exhibit H to the Strange Declaration.

[13]    Hicks also filed a request for exclusion from the Class, and thus cannot validly object to the settlement.  His objection additionally alleges "breaches of contract, billing fraud . . . the collection of monies for no service indications, & continual charges/paperwork" arising from unrelated disputes with ATTM.  (Docket Entry No. 501 at p. 1.)  These allegations are not relevant to Settlement issues.

Nos. 474, 495; Strange Decl. ¶ 8, Ex. G).   These Objectors apparently fail to notice the Settlement provisions expressly prohibiting ATTM from including flat-rate ETF provisions in new customer service agreements until September 15, 2011.   (Settlement Agreement, Docket Entry No. 355-4, p. 18).   These objectors also appear to overlook provisions allowing current ATTM customers to convert their flat-rate ETF contracts to pro-rated ETFs.  *Id.* at p. 17.   These Settlement terms directly refute these objections.[14]

Objectors' arguments that this two-year prospective relief is too short[15] or that ATTM should be required to pro-rate all ETFs in the future[16] miss the point of settlement – it is a compromise to which ATTM agreed.  If this action is not settled, ATTM is under no obligation to voluntarily change its ETF policies.  *See Larson*, 2010 WL 234934 at * 15 (rejecting identical objection that Sprint flat-rate ETF injunction should extend longer than two years since "Sprint [is] under no obligation to cease its practices of charging flat-rate ETFs").   The Settlement grants the Class exactly what it sought:  full relief from any present flat-rate ETFs.  (*See* Third Amended Complaint, Docket Entry No. 356, ¶¶ 74, 100, 118, 132, 138).

Another objector misreads the Settlement release language and objects to the fact that the release clauses are not "limited to the claims asserted," but broadly release ATTM from *any* liability relating to consumer fraud.  (Langone Objection, Docket Entry No. 500).  This objector is wrong – the Settlement release *expressly* limits the release to (1) "ETF-Related Claims"

---

[14]     The Harter Objectors' argument that requesting proration is "extremely complicated" is unfounded.  (*See* Docket Entry No. 499).  To select the proration benefit, a Class member need only check a box on the claim form.  This is not complicated.

[15]     *See* Harter Objectors, Docket Entry No. 499.

[16]     The Olson Objectors mistakenly state that where the *Sprint* ETF settlement required Sprint "to prorate their ETFs in the future," this Settlement does not.  (Docket Entry No. 498).  This Settlement is *identical* to the Sprint Settlement in this respect.

(appropriately defined in the Settlement Agreement) and (2) any matters "that relate to" or "arise out of" "any of the allegations, defenses, claims, motions and/or theories raised in or that could have been raised in any action . . . challenging the validity and/or legality of the Flat-Rate ETF or the propriety of its assessment or collection."  (Settlement Agreement, Docket Entry No. 355-4, pp. 6–7).  This Court rejected the argument that near-identical settlement releases in the *Sprint* settlement were overly broad.  *See Larson*, 2010 WL 234934 at *14.  This objection is without merit and should be overruled here as well.

Four additional objectors claim that the Settlement is unfair because Class members must "prove" their membership by filing proofs of claims.  (*See* Maltin, Langone, Wilkinson and Dixon Objections, Docket Entries Nos. 495, 500; Strange Decl. ¶¶ 5, 6, Exs. D, E).  These objectors argue that ATTM should be responsible for proving class membership and automatically distributing class benefits.  (*See id*.)  However, contrary to objectors' wishes, courts hold that member filing requirements are acceptable – even *preferable* – where some claimants might not be easily reached.  *See In re: Remeron End-Payor Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27011 at *54 (D.N.J. 2005) (automatically distributing money to certain class members favors one group of class members over another and invites practical problems, "including those associated with blindly sending checks to addresses that may be outdated."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 314 (W.D.Tex. 2007) (approving claim forms that required detailed information from potential claimants).  Here, the claim procedure is designed to reach *all* ATTM customers charged an ETF during the class period, including those former customers whose records are outdated or not in ATTM's files, as well as all current customers. This Court approved identical claims procedures in the *Sprint* and *T-Mobile* settlements, and

these objections should be overruled. *See Larson*, 2010 WL 234934; *Milliron*, 2009 WL 3345762.

Separately, the Harter Objectors, Olson Objectors, and Langone Objector[17] oppose the Settlement on the grounds that members were provided inadequate time and information to object to the Application for Fees and Costs. (Docket Entries Nos. 498, 499, 500). These objectors appear to be under the mistaken assumption that objections to fees and costs were due on April 12, 2010. In fact, the Application for Fees and Costs is being filed concurrently with this Brief, as ordered by the Court, and objectors have until June 17, 2010 to respond. (*See* Order Amending Certain Settlement Related Deadlines, Docket Entry No. 511, ¶¶ 1–2). These objections are meritless and should be overruled.

    **d.**    **Objections to Non-Cash Settlement as Best Possible Recovery**

The Turner Objectors, objector Lenox and objectors Harter, Mehaffie and Brown ("Harter Objectors") argue that the non-cash calling cards are somehow "illusory" or less valuable than cash benefits. (Docket Entries Nos. 492, 494, 499). This objection is unfounded, and was rejected by this Court in the *Sprint* settlement. *See Larson*, 2010 WL 234934 at *15 (rejecting argument that "non-cash" bonus minutes and calling cards were illusory benefits). The calling cards are the same cards sold on ATTM's parent company's website and have a market actual retail value.[18] Additionally, the law is clear – settlement consideration may include both

---

[17]    Langone additionally objects to the fact that the "stuffer notice" "does not advise class members how to object, or the need to send the objection to all the entities listed in the notice." (Docket Entry No. 500). This is directly contradicted by the fact that Langone successfully filed an objection himself.

[18]    The Turner Objectors' argument that the value of the 200-minute calling card is ambiguous is incorrect. The value of the card is easily calculable. While AT&T does not offer a 200-minute calling card for retail sale, it does offer 100-minute cards for $7. *See* http://www.consumer.att.com/prepaidcard/fy/pr.html. A 200-minute card would, thus, be worth

cash and non-cash benefits.  *In re Lloyd's Amer. Trust Fund Litig.*, 2002 WL 31663577 at \*16 (S.D.N.Y. 2002) (and cases cited therein).  Non-cash benefits are routinely given cash value and included in the result of the settlement, and a "class settlement can offer different benefits to differently situated class members, so long as it offers fair and adequate compensation to the class as a whole."  *Education Station Day Care Center, Inc. v. Yellow Book USA, Inc.* 2007 WL 1245971 at \*5 (N.J. Super. App. Div. 2007); a*ccord Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942, 960 (E.D.Tex. 2000) ("A settlement should not be disapproved simply because it contains an in-kind benefit component if the benefits are of real, economic value to the class members. . . . [Non-cash benefits] constitute real and quantifiable value to the class members and should be included in determining the total economic value provided to the class.").

The real basis for this objection is dissatisfaction with the way the funds are allocated, but fundamental class antagonisms are not created by disputes over the division of settlement funds. *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d at 270, n. 28 (disparate fund allocation not evidence of unfairness in settlement); *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3rd Cir. 1983).  "Class action settlement benefits may be allocated by counsel in any reasonable or rational manner because 'allocation formulas . . . reflect the comparative strengths and values of different categories of the claim.'"  *In re Lloyd's Amer. Trust Fund Litig.*, 2002 WL 31663577

---

twice as much, or \$14.  Further, the calling cards are not "coupons".  Unlike coupons, the calling cards do not require any additional expenditure by class members to obtain their benefit.  *See, e.g.*, *Varacallo v. Ma. Mut. Life Insur. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) (Linares, J.) (explaining that provision of additional insurance coverage to plaintiffs-insureds constitutes "real relief," unlike a coupon, which "necessitates a future purchase"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 303-04 (E.D.Pa. 2003) (approving voucher in settlement agreement because required minimal additional expenditure by plaintiffs to obtain benefit).  Indeed, the Harter Objectors rightly concede that the calling cards are not coupons.  Harter Obj. (D.E. 499) at 8.

at *18.   To hold otherwise "would place substantial burdens on the settlement process.   The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund."   *Walsh*, 726 F.2d at 964.   In every settlement, some class members get more benefit than others, and the class members who get less benefit of course want more.   Objectors' theory of antagonism would crater every class action settlement.   A tiered cash/non-cash recovery is perfectly appropriate and normal.   *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d at 270; *In re Prudential Sales Practice Litigation*, 148 F.3d at 295.   These objections should be overruled.

### e.   Objections to Settlement Without Trial

Objector Langone argues that settlement is inappropriate since "[t]he *Shorts* West Virginia claims are being excluded from the release, which suggests that claim is going well and has merit" so that "continued prosecution of the claims can result in a significantly better recovery."   (Docket Entry No. 500 at 2).   To the contrary, the excluded West Virginia claims arise from a unique theory and differ from the other EFT claims.   Of the three ETF cases that have gone to judgment, three resulted in summary judgment in favor of defendant wireless and one resulted in the jury's determination that defendants were entitled to greater damages than the Plaintiff class.   *See Consumer Justice Foundation v. Pacific Bell Telephone Co.*, No. BC214554, Slip.Op. at 4 (Cal.Super.Ct. July 29, 2002); *Carver Ranches Washington Park, Inc. v. Nextel South Corp.*, No. 2004 CA 5062 AH (West Palm Beach County, Fla.); *Robertson v. Nextel Commc'ns, Inc.*, JCCP 4332 (Cal. Super. Ct., Alameda County); *Ayyad, et al. v. Sprint Spectrum Limited Partnership, et. al*, No. RG03-121510 (Cal. Super. Ct. July 28, 2008).[19]   According to

---

[19]     The fifth case, the Related Action *Dias v. AT&T Wireless Services, Inc.*, No. BC316195, slip op. at 5, the ETF claims were dismissed on a threshold pleadings motion.

this precedent, continued prosecution will likely *not*, as Langone proposes, "result in a significantly better recovery." (Docket Entry No. 500, at 2). Indeed, as this Court noted in the *T-Mobile* and *Sprint* settlements, the Class faces considerable risk if these cases go to trial and must counter "several potent legal defenses" raised by Defendant. *Milliron*, 2009 WL 3345762 at *7; *see Larson*, 2010 WL 234934 at *17. "[N]o contested lawsuit is ever a 'sure thing,'" and continued litigation of these issues will only push the possibility of Class relief off for many years. *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D.Tex. 1978). The Settlement here presents the Class with real and substantive relief now. This objection should be overruled.

### f.      Objections to "Cy Pres" Distribution as Best Possible Recovery

The Turner Objectors and Langone object to the fact that under the Settlement, any sum remaining in the $16 million Common Fund and any calling cards remaining as part of the $2 million non-cash compensation will be donated to charitable organizations. (*See* Docket Entries Nos. 494, 500). Objectors wrongfully assert that cy pres distribution is "appropriate only for class members that cannot be reached or who do not cash checks" and that it "[fails to] make [members] whole." (*Id.*) This is incorrect. Federal courts have held that distribution of surplus funds by cy pres distribution is appropriate, especially when "[s]imply dividing the remaining funds among the located class members would provide an unacceptable windfall to located class members at the expense of compensating, at least indirectly, the unlocatable class members." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 641 F.Supp. 259, 269 (D.Ariz. 1986); *see Coppolino v. Total Call Intern.*, Inc., 588 F.Supp.2d 594, 605 (D.N.J. 2008) (noting that "cy pres distributions are permitted in situations where . . . unclaimed funds remain following distribution to the class"). Cy pres remedies provide an indirect benefit to both located and impossible-to-

locate class members. *In re Matzo Food Products Litigation*, 156 F.R.D. 600, 605-07 (D.N.J. 1994). This Court also found cy pres distribution of excess funds appropriate in the *Sprint* settlement. *See Larson*, 2010 WL 234934, at *14.

Here, objectors have stated no claim, legal or otherwise, to any remaining balance in the fund. Every class member who presents his claim will receive the full payment due to him under the terms of the Settlement. It would be inappropriate to give excess funds to claimants who have already been compensated or who have suffered no out-of-pocket loss because that would give them a windfall. *See In re Lease Oil Antitrust Litigation (No. II)*, 2007 WL 4377835 at *18 (S.D. Tex. 2007). Additionally, distributing excess funds to the Class would be unfair to members who choose to opt-out of the Class or fail to file a claim since these members might have decided to file a claim had they known that excess funds would increase their recovery.

The cy pres distribution was a negotiated part of the Settlement. The objectors make no showing of how they have standing to assert this objection nor how they are harmed or otherwise prejudiced by the cy pres provision of the Settlement. There is simply no reason to disturb this provision, and these objections should be overruled.

### g. Objections Based on Unfounded Hostility Toward Attorneys' Fees

Thirteen objectors oppose the Settlement on the basis of the attorneys' fees sought under the Settlement. (*See* Turner Objectors; Olson Objectors; Harter Objectors; Maltin; Powell; Langone; Colburn; and Dixon objections, Docket Entries Nos. 494, 498, 499, 495, 500; Strange Decl. ¶¶ 2–3, 6, 8, Exs. A, B, E, and G).[20] Five of these objectors—Moon, Powell, Maltin, Colburn and Dixon—state no actual grounds for their objection to Class Counsel's fees, apart

---

[20]     Moon, Powell, Colburn and Dixon's objections were never filed with the Court. They are attached as Exhibits A, B, E and G to the Strange Declaration.

from a general view that attorneys should not collect fees at *all*.  (*See* Docket Entry No. 495; Strange Decl. ¶¶ 2–3, 6, 8, Exs. A, B, E, and G).  These are not valid objections.  When a common fund is created through an attorney's efforts, that attorney is entitled to an award of reasonable fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole ... . The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."); *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 392-394 (1970) (person who receives benefit as result of attorney's efforts should pay reasonable attorney's fee incurred in connection with creation of that benefit).

Here, Class Counsel achieved an enormous $18 million benefit for the Class, and in doing so, worked thousands of hours and over six years on cases throughout the country, advancing hundreds of thousands of dollars in out of pocket expenses, all on a contingency basis with no pay and no guarantee of success or ever being paid.  As set forth further in the Application for Fees and Costs, this sum is fair, reasonable, and in-line with other settlements of equal size and complexity.  The general objections based on hostility towards attorneys' fees should be overruled.

The remaining attorneys' fee objections arise from "professional" objectors whose sole purpose is to delay approval of settlement and get a cut of fees for themselves.[21]  (*See* Turner Objectors; Olson Objectors; Harter Objectors; and Langone Objector, Docket Entries Nos. 494, 498, 499, 500).  These objectors merely copy-and-paste the tired attorneys' fee objections raised in the *T-Mobile* and *Sprint* actions that have already been overruled by this Court.  Objectors

---

[21]        *See* fn. 13.

wrongly state that any award of attorneys' fees must be based solely on the size of the cash fund, or alternatively, upon the cash fund plus any "actually redeemed" non-cash benefits.  (Turner Objectors, Docket Entry No. 494; Olson Objectors, Docket Entry No. 498; Harter Objectors Docket Entry No. 499).  The fee award is properly calculated upon the entire $18 million benefit, which includes $16 million in cash refunds plus $2 million in non-cash benefits in the form of prepaid calling cards.  Contrary to objectors' assertions, the non-cash portion of the Settlement is not a "coupon settlement" within the definition of 28 U.S.C. § 1712.  The non-cash calling cards are an option available only to the Subscriber Class, *i.e.*, ATTM customers who had a flat-rate ETF in their contract but were never charged an ETF (Settlement Agreement, Docket Entry No. 355-4, pp. 16–17).  Further the calling cards do not need to be "redeemed" by members to have value: they are the same prepaid cards sold on ATTM's website and have a calculable retail value.[22]  The Subscriber Class consists primarily of current ATTM customers, so in order to receive the non-cash benefit, a class member would not be compelled to do any business with ATTM other than what he or she has chosen to do in the ordinary course.  *Compare Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292, 1301-02 (S.D.Fla. 2007).  Accordingly, the non-cash benefit provides a dollar-for-dollar benefit to Class members and represents significant additional consideration provided by the Settlement.

Objectors also wrongly state that fees should be determined on a fee shifting basis instead of the percentage-of-benefit method that is strongly favored by this Circuit in common fund cases such as this one.  *In re American Investors Life Ins. Co*., 263 F.R.D. at 243; *In re: AT&T Corp. Securities Litigation*, 455 F.3d 160, 164 (3d. Cir. 2006); *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3d Cir. 2001); *see also In re Electrical Carbon Products Anti-*

---

[22]     *See*  Point Two, B.2.d, *supra*, ("Objections to Adequacy").

*Trust Litigation*, 447 F.Supp.2d 389, 405 (D.N.J. 2006).   Not only would a lodestar analysis actually result in a higher fee for Plaintiffs' counsel here, even without the application of an appropriate multiplier, but, in any event, fees should be determined by the percentage-of-benefit method which the Court applied in both the *T-Mobile* and *Sprint* settlements.   *See Milliron*, 2009 WL 3345762 at *8; *Larson*, 2010 WL 234934 at *18.

Additionally, professional objectors wrongly speculate – without any support or reference to the actual fees claimed – that Class Counsel may be "double billing" for work done on related ETF litigation or including claimed time of non-lead counsel that has not benefited the class. (*See* Olson Objectors; Harter Objectors; Langone objector Docket Entries Nos. 498, 499, 500). This is simply not true.  As set forth in the declarations of ETF counsel filed in connection with Class Counsel's application for an award of attorneys' fees and expenses, ETF counsel in other cases have completed substantial work which has in fact benefited the Class.  The ATTM ETF litigation has been ongoing for six years now – in state and federal courts across the country, as well as in arbitration, and Class Counsel and supporting ETF Counsel whose fee requests are included have expended enormous time and energy to prepare the cases and bring the parties to this settlement stage.   As further set forth in the Application for Fees and Costs, the requested fees are fair, reasonable, and reflect actual hours devoted to the ATTM matter.

Finally, the Harter Objectors wrongly state that the Settlement provision that provides ATTM will not "oppose or undermine" Class Counsel's application for fees suggests improper collusion between Class Counsel and ATTM.  (Docket Entry No. 499 at 11).  Citing a Tulane Law Review article, objectors claim this "clear sailing provision" is *prima facie* evidence that Class Counsel's application for attorneys' fees is unfair.  *Id.*   But the Supreme Court has explained there is no legal requirement that counsel separately negotiate fees and merits. *See*

*Evans v. Jeff D*., 475 U.S. 717, 737-38 (1986) (rejecting the argument that fees and merits must be separately negotiated in fee-shifting context).  While the Third Circuit has not ruled directly on this issue, other circuits have found clear sailing provisions proper.  *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 961, fn. 5 (9th Cir. 2009); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293, fn. 4 (11th Cir. 1999); *Malchman v. Davis,* 761 F.2d 893 (2d Cir. 1985), *abrogated on other grounds, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Even treatises on Class Action settlement acknowledge that clear sailing provisions are helpful and that "to the extent that [they] facilitate[] completion of settlements, [they] should not be discouraged."  5 Newberg on Class Actions § 15:34, p. 112, fn. omitted (4th ed. 2010).

Here, ATTM does not guarantee Class Counsel any fees, nor agree to a fixed amount of fees, but only promises that it will not "oppose or undermine" Class Counsel's application for compensation.  This does not suggest bad faith or collusion.  This Settlement is the result of serious, arms-length negotiation between the parties under the guidance of the Hon. Douglas Wolfson (retired).  Objectors cannot point to any factor in the Settlement Agreement, or otherwise, that suggests collusion between Class Counsel and ATTM.  This objection is completely unfounded and should be overruled.

### h. Objections to Plaintiffs' Receipt of Incentive Awards

Objectors Maltin and Dixon object to Plaintiffs' receipt of a $2,000 class representative incentive award each since they are unclear "[w]hat if anything [Plaintiffs] did . . . to get paid off" or how the award is "justifi[ed]."  (Docket Entry No. 495 at 1; Declaration of Brian R.

Strange ("Strange Decl.") ¶ 6, Ex E).[23]  These objections misunderstand the purpose of incentive

awards and their regular role in the settlement process.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services

they provided and the risks they incurred during the course of the class action litigation."

*Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) (quoting *Cullen v. Whitman*

*Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000)); *McGee v. Continental Tire North America,*

*Inc.*, 2009 WL 539893 at *18 (D.N.J. 2009) (quoting *In re Lorazepam & Clorazepate Antitrust*

*Litig.*, 205 F.R.D. 369, 400 (D.D.C.2002)) ("Incentive awards are 'not uncommon in class action

litigation and particularly where ... a common fund has been created for the benefit of the entire

class.' "); *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices*

*Litigation*, 263 F.R.D. 226, 245 (E.D.Pa. 2009) (awarding representative plaintiffs incentive

payments in the amounts of $10,500 and $5,000, for a total of $115,000, finding those amounts

to be "reasonable compensation considering the extent of the named plaintiffs' involvement and

the sacrifice of their anonymity."); *Bezio v. General Electric Company*, 655 F.Supp.2d 162, 168

(N.D.N.Y. 2009) (incentive awards in the amount of $5,000 each are "within the range of awards

found acceptable for class representatives."); *Klein v. O'Neal, Inc.*, --- F.Supp.2d ---, 2010 WL

1435161 at *42 (N.D.Tex. 2010) (approving representative plaintiff incentive payments in the

amount of $75,000 each).  Here, Plaintiffs agreed to pursue these important claims for the benefit

of the class, consulted with their counsel, responded to ATTM's discovery, and in some cases

were deposed, such that a small $2,000 incentive award each is well-justified.[24]  Maltin and

---

[23]     Dixon's objection was never filed with this Court.  It is attached as Exhibit E to the
Strange Declaration.

[24]     Additionally, this award is *less* than the incentive awards granted in the Sprint and
Verizon ETF approved settlements.  The Sprint settlement provided for an incentive award "not

Dixon's objections to the award show naïveté for the settlement process and the involvement of Plaintiffs in this litigation, including the "sacrifice of their anonymity." The Plaintiffs here are entitled to incentive awards.

### 3. The Parties Completed Extensive Pre-Complaint Investigation And Document Discovery

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks,* 55 F.3d at 785; *Girsh*, 521 F.2d at 157. This factor "captures the degree of case development that class counsel has accomplished prior to settlement." *GM Trucks*, 55 F.3d at 813. "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Id. See also Lazy Oil,* 166 F.3d at 588 ("Post-discovery settlements are more likely to reflect the true value of the claim and be fair.") (internal citation omitted).

This action is being settled after six years of aggressive pretrial work and formal discovery. As set forth in the application for attorneys' fees and costs and declarations of counsel filed concurrently herewith, this Settlement resolves years of litigation in Related Cases all across the country, after substantial discovery (including review of over a million pages of documents and numerous depositions), complex motion practice (including an evidentiary summary-judgment-like motion on ATTM's preemption defense), substantial participation in proceedings before the FCC, and substantial work with experts and consultants.

---

to exceed $3,000" for each representative Plaintiff, and the Verizon settlement provided for an incentive award "not to exceed $10,000" for each representative plaintiff.

### 4.     Plaintiffs Face Considerable Risk In Proceeding To Trial

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court must balance the risks of establishing liability and damages against the benefits afforded to the members of the Class, and the immediacy and *certainty* of a substantial recovery against the risks of continuing litigation.  *Girsh*, 521 F.2d at 157.  In *Weiss*, this Court noted in its discussion of this factor that: "the risks surrounding a trial on the merits are always considerable."  *Weiss*, 899 F.Supp. at 1301.  "No matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).[25]  The risks that Plaintiffs face in ultimately obtaining a recovery on behalf of a nationwide class clearly demonstrate that the Settlement provides the Class with a substantial benefit that is not only fair, reasonable and adequate, but an excellent result.

Here, Class Counsel were able to assess the probability of ultimate success on the merits vis-à-vis the risks of establishing liability and damages and certifying and maintaining a class action through trial.  Class Counsel analyzed and reviewed the information available to them, and concluded that the Settlement is fair and reasonable in light of the best possible recovery and the attendant risks of litigation.  Thus, Class Counsel were able to evaluate the relative merits of each side's case and enter into the Settlement with a full view of the case's strengths and weaknesses.  *See, e.g., Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

---

[25]     Other decisions that demonstrate the enormous risks of litigation include:  *Bentley v. Legent Corp.*, 849 F.Supp. 429 (E.D. Va. 1994), *aff'd without op. sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment n.o.v. for defendants and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned).

Here, the risks of establishing liability and damages, the fourth and fifth *Girsh* factors, are intertwined with respect to an evaluation of the Settlement. Plaintiffs believe that there is a strong possibility of establishing that ATTM's flat-rate ETF was an unenforceable penalty. Such a finding, however, would only be a starting point for establishing the recovery of the Class, if any. As was noted above, as a matter of general contract law, if a liquidated damages clause is found to be an unenforceable penalty, the aggrieved party is allowed to recover the actual damages which it can prove. *See e.g.*, *River Road Associates,* 104 F.Supp.2d at 425. But in assessing this factor the Court need only to look West to fully comprehend the scope of risk the Class faced in this particular case. As the Court noted in approving the settlement with Sprint, substantially similar claims were tried against Sprint and the jury awarded damages to Sprint in excess of the damages recovered by the Class. While ATTM's numbers will certainly be different than Sprint's, both companies are in the same business in generally the same economic conditions. Given the economics of the business, there is a risk that if the claims against ATTM were tried, the fact finder could find that ATTM's damages exceed the Class' damages by a similar margin as in Sprint.

**5.      The Risks Of Maintaining The Class Action Through Trial**

As explained above, Class Counsel believe that this case is wholly appropriate for class certification in the settlement context. However, there is always a risk that a Court would not find this action suitable for certification as a litigated class, or not find that it was suitable for litigation on a nationwide basis. Further, even if class certification was granted in the litigation context, class certification can always be reviewed or modified before trial, and a class may be decertified at any time. As one court has observed in approving a class action settlement:

> Indeed, the Court recognized that its class certification order was subject to alteration or amendment before the decision on the merits. "To paraphrase

Benjamin Franklin, plaintiffs now have their class action, the question is can they keep it."

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317 (N.D.Ga. 1993)  (citations

omitted).  *See also Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*, 657 F.2d

890, 896 (7th Cir. 1981) ("a favorable class determination by the court is not cast in stone.").

**6.     Defendant's Ability To Withstand Greater Judgment, And Reasonableness Of The Settlement In Light Of The Best Possible Recovery And All Attendant Risks Of Litigation**

The last three *Girsh* factors are the reasonableness of the settlement in light of (i)

Defendant's ability to withstand a greater judgment, (ii) the best possible recovery, and (iii) all

the attendant risks of litigation.  These factors, too, support approval of this Settlement and its

significant financial and structural benefits.

Countless settlements have been approved where a settling defendant has had the ability

to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh

against settlement approval.  *See, e.g., Warfarin*, 391 F.3d at 538.  More importantly, the court

must "measure[] the value of the settlement itself to determine whether the decision to settle

represents a good value for a relatively weak case or a sell-out of an otherwise strong case."  *GM*

*Trucks*, 55 F.3d at 806.  The Third Circuit further stated in *GM Trucks*:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citations omitted).

There is no doubt but that ATTM could at this moment withstand a judgment far greater

than the amount of the Settlement.  It is a multi-billion dollar company.  However, the fact that

ATTM has the wherewithal to pay a greater settlement does not mean that the Settlement which was agreed to is not fair, reasonable and adequate.

Determining the best possible recovery on behalf of the Class is more problematic.  There is a strong case for liability on behalf of the Class that ATTM's ETF is an unenforceable penalty and, thus, ATTM should refund the ETFs which were paid by Class members.  By the same token, there is also a potential case for liability for breach of contract by ATTM against Class members.  A considerable problem with evaluating the best possible recovery on behalf of the Class is that while the amount of the ETFs paid by Class members is a liquidated amount, ATTM's potential breach of contract damages are not.  There are multiple ways of calculating ATTM 's potential damages, and which expenses are or are not properly includable as damages is a matter of expert debate. The damages which a jury might ultimately award to ATTM could depend upon how it views a classic "battle of the experts."  Plaintiffs believe that there is a good possibility of a net recovery in favor of the Class, which would be the best possible result if the jury were to accept certain evaluations of ATTM's financial information, but, as is set forth above, the initial jury verdict in *Ayyad* underscores the risk of a net recovery in favor of ATTM, *which would leave Class members with nothing*. As the Court noted in approving the settlement with Sprint:

> As indicated earlier, a jury could very well find a net recovery in favor of the Class, but it also could find that Sprint's damages exceed those of the Class, thereby leaving the Class with no recovery at all. Ultimately, it is difficult to predict the best possible recovery for this Class.  That being said, it is clear that $17.5 million is a reasonable recovery in light of the risks already highlighted.

*Larson*, 2010 WL 34935 at *18.

7.     **The Verizon, T-Mobile and Sprint Settlements
       Confirm That This Settlement Is Fair and Reasonable**

A further indication that the Settlement here is reasonable is that it is in line with the settlements of substantially identical claims against other wireless phone companies relating to their ETFs which have previously been found to be reasonable. Verizon, the largest wireless carrier, settled the claims against it for $22 million. Sprint, the third largest wireless carrier, settled all claims, except for California claims, which comprise approximately 20% of its business, for $17.5 million. T-Mobile, the fourth largest wireless carrier, settled its claims for $13.5 million. ATTM is the second largest wireless phone company and has agreed to settle the claims against it for $18 million. In addition, ATTM's ETFs were generally lower than those of the other carriers[26] and ATTM was the only one of the four carriers which had a pro-rated ETF in many of its markets during the Class Period. Accordingly, the ATTM Settlement is well within the range of reasonableness in the "market" for settlement of these ETF cases.

---

[26]     ATTM and its predecessors' ETF were typically $150 or $175 during the Class Period, while T-Mobile's were $200, Sprint's were between $150 and $200 and Verizon's was $175.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court finally certify the

Settlement Class and grant final approval to the Settlement.


CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

STRANGE & CARPENTER
Attorneys for Plaintiffs


By:____/s/ Brian R. Strange_____
        BRIAN R. STRANGE

Dated: June 10, 2010