## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BARRY HALL, *et al*., <br><br>                Plaintiffs, <br><br>     v. <br><br> AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al*., <br><br>                Defendants. | Civil Action No. 07-05325 (JLL) |

-------------------------------------------------------------------------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEY'S FEES
AND REIMBURSEMENT OF EXPENSES AND FOR INCENTIVE AWARDS**

_____

Brian R. Strange
Gretchen Carpenter
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
(310) 207-5055

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Attorneys for Plaintiffs and the Class

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 3

THE REQUEST FOR COUNSEL FEES AND REIMBURSEMENT OF EXPENSES
SHOULD BE APPROVED ................................................................................................. 3

    A.    The Common Fund Doctrine Applies to the Settlement ................................... 3

    B.    Plaintiffs' Counsels' Fees Should be Based on a Percentage Of The
        Common Fund ................................................................................................ 4

    C.    The Requested 33⅓ Percent Award Is Fair and Reasonable ........................... 6

        1.    Plaintiffs' Counsel Obtained a Substantial Benefit to Class
              Members ........................................................................................... 6

        2.    The Quality of Plaintiffs' Counsel Work and the Absence of
              Substantial Objections ...................................................................... 7

        3.    A Fee of 33⅓% Is Standard In Common Fund Cases ...................... 9

        4.    Class Counsel Undertook the Risk of Non-Payment ..................... 10

        5.    Plaintiffs' Counsel Devoted Significant Time and Effort to
              Numerous Complex Issues in This and the Related Cases Over the
              Last Six Years ................................................................................ 11

        6.    The Requested Fee is Consistent with Contingent Fee
              Arrangements Negotiated in Non-Class Litigation ....................... 12

        7.    The Fee Request Is Also Supported By the Lodestar Cross-Check .......... 13

        8.    Plaintiffs' Counsel Should Be Reimbursed For Their Reasonably
              Incurred Litigation Expenses ......................................................... 16

        9.    The Court Should Award Incentive Awards to the Representative
              Plaintiffs ......................................................................................... 16

CONCLUSION ................................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995)................................................................................ 19

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd without op.*, 899 F.2d 21 (11th Cir. 1990) ............... 5, 7

*Bernhard v. TD Bank, N.A.*,
   2009 WL 3233541(D.N.J. 2009) ........................................................................ 19

*Bezio v. General Electric Company*,
   655 F.Supp.2d 162 (N.D.N.Y. 2009)................................................................... 20

*Blackman v. O'Brien Envtl. Energy, Inc.*,
   1999 U.S. Dist. LEXIS 7160 (E.D. Pa. May 11, 1999) .......................................... 11

*Blum v. Stenson*,
   465 U.S. 886 (1984)....................................................................................... 14

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...................................................................................... 3, 4

*Brytus v. Spang & Co.*,
   203 F.3d 238 (3d Cir. 2000)............................................................................... 4

*Cosgrove v. Sullivan*,
   759 F.Supp 166 (S.D.N.Y. 1991)...................................................................... 18

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)...................................................................... 9, 10

*ETSI Pipeline Project v. Burlington Northern, Inc.*,
   1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 5, 1989)......................................... 14

*Feerer v. Amoco Prod. Co.*,
   1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) .......................................... 18

*Figuroa v. Sharper Image Corp.*,
   517 F.Supp.2d 1292 (S.D.Fla. 2007) ................................................................... 2

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)............................................................................. 16

*Hensley v Eckerhart,*
   461 U.S. 424 (1983)..................................................................................... 5

*In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation,*
   263 F.R.D. 226 (E.D. Pa. 2009).................................................... 19, 20

*In re AT&T Corp. Securities Litigation,*
   455 F.3d 160 (3d Cir. 2006)................................................................ 4, 5

*In re Boston & Maine Corp.,*
   778 F.2d 890 (1st Cir. 1985).................................................................. 18

*In re Buspirone Antitrust Litig.,*
   2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003)..................... 17

*In re Cendant Corp. Derivative Litigation,*
   232 F.Supp.2d 327 (D.N.J. 2002) ......................................................... 17

*In re Cendant Corp. PRIDES Litigation,*
   243 F.3d 722 (3d Cir. 2001)........................................................... 4, 5, 15

*In re Computron Software, Inc.,*
   6 F.Supp.2d 313 (D.N.J. 1998) .............................................................. 6

*In re Diet Drugs,*
   582 F.3d 524 (3d Cir. 2009)................................................................. 4, 6

*In re Electrical Carbon Products Anti-Trust Litigation,*
   447 F.Supp.2d 389 (D.N.J. 2006) ........................................................ 4, 5

*In re EquiMed, Inc. Sec. Litig.,*
   2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003)........................... 10

*In re Gen. Instrument Sec. Litig.,*
   209 F.Supp.2d 423 (E.D. Pa. 2001) ...................................................... 10

*In re General Motors Corp. Pickup Fuel Tank Products Liability Litigation,*
   55 F.3d 768 (3d Cir. 1995)..................................................................... 6

*In re Greenwich Pharm. Sec. Litig.,*
   1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 25, 1995) ......................... 11

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
   194 F.R.D. 166 (E.D. Pa. 2000)................................................ 5, 6, 9, 14

*In re Merck & Co., Inc. Vytorin ERISA Litigation*,
  2010 WL 547613 (D.N.J. 2010) ........................................................... 10

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
  1994 WL 202394 (E.D. La. May 18, 1994) ............................................ 12

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992): ..................... 14

*In re Triangle Indus. S'holder's Litig.*,
  1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) ............................. 18

*In re Unisys Corp. Sec. Litig.*,
  2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001) ......................... 10

*In re ValueVision Int'l Inc. Sec. Litig.*,
  957 F.Supp. 699 (E.D. Pa. 1997) .......................................................... 11

*In re Warner Communications Sec. Litig.*,
  618 F.Supp. 735 (S.D.N.Y. 1985) ...................................................... 9, 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  MDL No. 551 (D. Ariz. Nov. 30, 1990). ............................................... 15

*Kinkel v. Cingular Wireless, LLC*,
  223 Ill.2d 1, 857 N.E.2d 250 (Ill. 2006) ............................................... 13

*Klein v. O'Neal, Inc.*,
  --- F.Supp.2d ---, 2010 WL 1435161 (N.D. Tex. 2010) ....................... 20

*Larson v. Sprint Nextel Corp.*,
  2010 WL 234934 (D.N.J. 2010) ............................................................ 10

*Maley v. Del Global Techs. Corp.*,
  186 F.Supp.2d 358 (S.D.N.Y. 2002) ..................................................... 18

*McGee v. Continental Tire North America, Inc.*,
  2009 WL 539893 (D.N.J. 2009) ............................................................ 20

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. 2009) .......................................................... 10

*Milliron v. T-Mobile*,
  2009 WL 3345762 (D.N.J. 2009) ............................................................ 8

*Muchnick v. First Fed. Savings & Loan Ass'n*,
   1986 WL 10791 (E.D.Pa. 1986) ................................................................ 17

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ............................................................................ 15

*Perera v. Chiron Corp.*,
   Civil No. 95-20725-SW (N.D. Cal. Feb. 17, 1999 and Feb. 29, 2000) ................... 17

*Polonski v. Trump Taj Mahal Assocs.*,
   137 F.3d 139 (3d Cir. 1998) .................................................................. 3, 4

*Ratner v. Bennett*,
   1996 U.S. Dist. LEXIS 6259 (E.D. Pa. May 8, 1996) ..................................... 11

*RJR Nabisco*,
   1992 U.S. Dist. LEXIS 12702 ................................................................. 18

*Roberts v. Texaco, Inc.*,
   979 F.Supp. 185 (S.D.N.Y. 1997) ............................................................ 18

*Shaw v. Toshiba America Information Systems, Inc.*,
   91 F.Supp.2d 941 (E.D.Tex. 2000) ............................................................ 9

*Willson v. N.Y. Life Ins. Co.*,
   1995 N.Y. Misc. LEXIS 652 (Sup. Ct. Nov. 8, 1995) ...................................... 18

*Zinman v. Avemco Corp.*,
   1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) .................................. 11

**STATUTES**

28 U.S.C. § 1712 ...................................................................................... 2

**OTHER AUTHORITIES**

Third Circuit Task Force, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002) ............. 13

**TREATISES**

4 *Newberg on Class Actions*, § 14.06 (4th ed. 2002) .................................................... 6

## PRELIMINARY STATEMENT

The law firms of Strange & Carpenter and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein (jointly, "Class Counsel") submit this Memorandum in support of their petition for an award of attorneys' fees and reimbursable expenses. Significantly, this fee application resolves the attorneys' fee claims of 16 law firms/lawyers who have worked 18,617.815 hours (for a combined lodestar of $7,657,654.35 in hours alone), on numerous ETF cases throughout the country, in some cases for more than six years.[1] Every one of these supporting ETF counsel recognize that the Settlement of this action achieved by Class Counsel is fair and reasonable and in the best interest of the Class, and have therefore joined in this fee

---

[1]     Specifically, and unlike the other similar ETF settlements approved by this Court in the *Sprint* and *T-Mobile* cases, Class Counsel have worked out attorney fee agreements with virtually all of the ETF counsel involved in various cases throughout the country. *See In re Diet Drugs*, 582 F.3d 524, 542, n. 36 (3d Cir. 2009) (recognizing the "benefits of agreements regarding the distribution of attorney fees" to involved counsel who might otherwise have objected to a fee application). In addition to resolving the fee applications of Class Counsel for their work in this case, *Sasik, et al. v. AT&T Wireless Services, Inc.*, Case No. 2:05-CV-2346-ABC (CWx) (C.D. Cal.) ("*Sasik* case"), and *Waldmann, et al. v. Cingular Wireless LLC*, Case No. 2:07-CV-05087-ABC (CWx) (C.D. Cal.) ("*Waldmann* case") (as this Court will recall, the *Sasik* and *Waldmann* cases have been combined with this case for purposes of settlement), this fee application resolves the fee requests of ETF Counsel in *Kinkel v. Cingular Wireless LLC*, AAA WIA No. 11 494 02646 06 (AAA Arbitration), and all but one of the attorneys involved in the *In re Cellphone Termination Fee Cases*, California Superior Court, Alameda County J.C.C.P. 4332. Attached to the declaration of Brian R. Strange filed concurrently herewith, Class Counsel are filing declarations by these other attorneys whose fee requests are included and who support this application, namely, Philip A. Bock of Bock & Hatch, LLC; Scott A. Bursor of the Law Offices of Scott A. Bursor; Joshua P. Davis of Law Offices of Joshua P. Davis; Robert J. Evola of LakinChapman LLC; Nadeem Faruqi of Faruqi & Faruqi, LLP; Anthony A. Ferrigno of Law Offices of Anthony A. Ferrigno; J. David Franklin of Franklin & Franklin; Pamela Gilbert of Cuneo Gilbert & Laduca, LLP; Carl Hilliard; Barry L. Kramer of the Law Offices of Barry L. Kramer; Alan R. Plutzik of Bramson, Plutzik, Mahler & Birkhaeuser, LLP; Marc G. Reich of Reich Radcliffe & Kuttler LLP; Paul Weiss of Freed & Weiss LLC; and Stephen A. Weiss of Seeger Weiss LP. The ETF Counsel who are not included in this fee application are Jacqueline Mottek and the counsel in the Related Action *Dias et al. v. AT&T Wireless Services, Inc. et al.* (Calif. Super. Ct., Los Angeles County).

petition.   Class Counsel submit that this alone speaks volumes about Class Counsel's achievement in reaching the Settlement in this case.

As detailed in Plaintiffs' accompanying Memorandum of Law in Support of Final Approval of Proposed Settlement, the Settlement in this action represents a manifestly favorable outcome for the Class, particularly when judged in the context of the meaningful litigation risks attendant in this action, as well as the challenging economic environment with which consumers throughout the country are now confronted.   The overall economic benefit of $18 million[2] provides the Class with certain immediate recovery on claims that have already been demonstrated to be subject to significant offsets.   Significantly, Class Counsel's fee request actually constitutes *less than* the hourly lodestar of the attorneys who will share in the fee award and is certainly a reasonable fee under the circumstances given the excellent settlement achieved.

In achieving the results obtained in this settlement, Class Counsel—and the numerous highly experienced and nationally-respected law firms joining in this petition—worked thousands of hours, all on a contingency basis with no guarantee of success or ever being paid. The requested fee of 33⅓% of the $18 million Class benefit (not even including the valuable ETF proration benefit), or $6 million, plus reimbursement of expenses of $506,943.75, reflects the risk taken by Class Counsel, as well as the estimable results achieved.   When utilizing this

---

[2]        The attorney fee award is properly calculated upon the entire $18 million benefit, which includes $16 million in cash refunds plus $2 million in non-cash benefits in the form of AT&T long distance calling cards.   The non-cash portion of the Settlement is not a "coupon settlement" within the definition of 28 U.S.C. § 1712.   The non-cash settlement benefits are an option available only to the Subscriber Class, *i.e.*, AT&T Mobility LLC ("ATTM") customers who had a flat-rate ETF in their contract but were never charged an ETF (Settlement Agreement, p. 16). The Subscriber Class consists primarily of current ATTM customers, so in order to receive the non-cash benefit, a class member would not be compelled to do any business with ATTM other than what he or she has chosen to do in the ordinary course.   *Compare Figuroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292, 1301-02 (S.D. Fla. 2007).   Accordingly, the "non-cash" benefit

Circuit's preferred method of contingency fee determination (*i.e.*, percentage of the fund with a lodestar cross-check), it is abundantly clear that the requested fee is not only reasonable, but well within the range of fees awarded in similar contingency cases, including both the *Sprint* and *T-Mobile* settlements previously approved by this Court.

## LEGAL ARGUMENT

### THE REQUEST FOR COUNSEL FEES AND
### REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED

The reasons why the Plaintiff Class should be certified and why the Settlement should be finally approved, as well as why the objections to the Settlement are meritless, are addressed in detail in a separate memorandum filed simultaneously with this petition. For the reasons set forth below, Class Counsel is entitled to a fee award equal to 33 1/3% of the value of the Settlement, or $6 million, plus $506,943.75 in reimbursable expenses. After thousands of hours of work over a period of many years and hard-fought litigation, Class Counsel have conferred a substantial benefit upon the Class under difficult circumstances and should be appropriately compensated.

A.    **The Common Fund Doctrine Applies to the Settlement**

Under the "common fund" doctrine, attorneys' fees are appropriately paid from a common fund when the litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998) (internal citation omitted). The Supreme Court consistently has recognized "that a litigant or a lawyer who recovers a common

---

provides a dollar-for-dollar benefit to a part of the Class and represents significant additional consideration provided by the Settlement.

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine reflects the traditional practice in equity, and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.*; *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). The Third Circuit has noted that at the "heart of this [doctrine] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Polonski*, 137 F.3d at 145.

**B.**      **Plaintiffs' Counsels' Fees Should be Based on a Percentage Of The Common Fund**

While notably, Plaintiffs' counsel's uncompensated lodestar here is actually *more* than their fee request (such that application of the lodestar method of calculating fees could actually result in an even higher fee than requested), in common fund cases such as this one, the percentage-of-benefit method is generally favored in calculating an award of fees because it allows the Court to reward success and penalize failure. *In re AT&T Corp. Securities Litigation*, 455 F.3d 160, 164 (3d Cir. 2006). *See also In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3d Cir. 2001); *In re Electrical Carbon Products Anti-Trust Litigation,* 447 F.Supp.2d 389, 405 (D.N.J. 2006). *See also In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (it was appropriate for district court to calculate fees from a common fund based on "the general convention . . . the percentage-of-recovery method.")

The primary factors to be considered in reviewing a proposed common fund class action settlement are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the

risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*AT&T*, 455 F.3d at 165; *Cendant*, 243 F.3d at 733; *Electrical Carbon*, 447 F.Supp.2d at 405.

The Court may also consider:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement.

*AT&T*, *id.*; *Electrical Carbon*, *id.* at 405-06.  "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class."  *AT&T*, *id.* at 165-66.  *See also Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[t]he most significant factor in this case is the quality of representation, as measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience, and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd without op.*, 899 F.2d 21 (11th Cir. 1990) ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained").  Thus, the foregoing factors "are not to be applied in a formulaic way because each case is different and in certain cases, one factor might outweigh the rest."  *AT&T*, *id.* at 166.  *See also In re Diet Drugs*, 582 F.3d at 545 (same).[3]

---

[3]     While not applicable under the circumstances here, where Plaintiffs' counsel's hourly lodestar actually exceeds the fee request, the Third Circuit requires that the District Court cross-check the percentage-of-recovery calculation with the lodestar method to ensure that a percentage-of-recovery calculation is not too great. *Id.* at 164.

**C.**   **The Requested 33⅓ Percent Award Is Fair and Reasonable**

Applying the foregoing factors, the 33⅓% fee award is fair and reasonable under all of the circumstances.  The Third Circuit has not established a benchmark for fee awards in common fund cases, but has observed that fee awards generally range from 19% to 45% of the settlement fund.  *In re General Motors Corp. Pickup Fuel Tank Products Liability Litigation*, 55 F.3d 768, 822 (3d Cir. 1995); *see also Ikon*, 194 F.R.D at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"); *In re Computron Software, Inc.*, 6 F.Supp.2d 313, 322-23 (D.N.J. 1998) ("There is no set standard, however, on how to determine a reasonable percentage.  Awards utilizing the percentage-of-recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund . . .  [T]he percentage awarded, should, and generally does, increase commensurate with increased quality of representation.")  Similarly, in his leading treatise on class action law, the late Herbert Newberg wrote:

> No general rule can be articulated on what is a reasonable percentage of a common fund.  A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund, where the fund itself represents the benchmark from which reasonableness is measured.  Usually 50 percent of the fund is the upper limit of a reasonable fee award from a common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented.

4 *Newberg on Class Actions*, § 14.06 at 550 (4th ed. 2002).

**1.**   **Plaintiffs' Counsel Obtained a Substantial Benefit to Class Members**

Plaintiffs' Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved.  *AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of the class counsels' services

to the class are the results obtained.'").  *See also Behrens*, 118 F.R.D. at 547-48 ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained").

Plaintiffs' Counsel negotiated an $18 million Settlement for the Class, which is a certain, present return for Class members.  Plaintiffs' Counsel delivered a significant benefit to the Class in the face of numerous potentially fatal obstacles.  Class Counsel should, accordingly, be appropriately rewarded for their achievement.

## 2. The Quality of Plaintiffs' Counsel Work and the Absence of Substantial Objections

The quality of the work which has been presented to both this Court and the Central District of California in the *Sasik* and *Waldmann* cases, the undersigned believe, speaks for itself.  Facing the substantial risk of an adverse finding of liability against class members similar to the one rendered by the California jury in the *Ayyad* action, Class Counsel's results here can only be viewed as admirable.

Although the instant case is, relatively speaking, in an early stage purely from an individual litigation standpoint, as this Court is well aware, Class Counsel did not come to this case with a blank slate, and in fact, Class Counsel, Strange & Carpenter, and their co-counsel have been litigating the related *Sasik* and *Waldmann* cases against ATTM, which have now been combined into this case for purposes of settlement, for over six years, including prevailing on a motion to remand to state court, defeating motions to compel individual arbitration, taking and defending numerous depositions, conducting substantial written discovery on both arbitration-related issues and ATTM's factually intensive preemption defense (including reviewing thousands and thousands of pages of documents), opposing a motion to stay the cases pending an FCC proceeding concerning ETFs, prevailing on an expedited evidentiary, summary-judgment-

like motion based on ATTM's preemption defense, and, ultimately, negotiating this very favorable settlement for the Class.[4]

While virtually all ETF counsel are included in this fee request in any event, it is unquestionable that Class Counsel were armed with more information about the case than any other lawyers throughout the United States and that they were successful in working with a leading mediator to reach a Settlement that brings tremendous immediate benefits to the Class. Class Counsel's efforts speak for themselves, particularly when the Court considers the failure of other litigated ETF cases, such as the *Ayyad* case in California.  The fact that a case settles as opposed to proceeding to trial "'in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).  Further, in achieving the Settlement before the Court, Class Counsel invested thousands of hours of time and worked for many years to ultimately achieve a resolution that other lawyers were simply unable to achieve.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing

---

[4]     Moreover, other ETF counsel who join this application (and whose fee requests are resolved by this motion), have also spent substantial time and effort litigating ETF cases against ATTM over the past several years, as detailed in their declarations attached as Exhibits to the declaration of Brian R. Strange.  As this Court previously ruled in connection with the T-Mobile settlement, attorneys in secondary cases that are included in a class action settlement encompassing those cases can recover for that work when it advances claims on behalf of the Class, as the work of supporting ETF counsel has done here. *See Milliron v. T-Mobile*, 2009 WL 3345762 at *22-23 (D.N.J. 2009) (work done by California counsel in litigation against T-Mobile in California was compensable because it "advanced the claims on behalf of the California class").

counsel is also important in evaluating the quality of plaintiffs' counsels' work"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 941, 970 (E.D. Tex. 2000).  Plaintiffs' Counsel are experienced class action and federal court practitioners.  *See Waudby*, 148 F.R.D. at 175-77.  Defense counsel in this case are attorneys from a highly-respected national law firm, Drinker Biddle & Reath, LLP.

Class Counsel's ability to obtain such a favorable settlement for the Class in the face of such legal opposition further confirms the superior quality of Class Counsel's representation. Accordingly, Class Counsel respectfully submit that this factor strongly supports their application.[5]

### 3.    A Fee of 33⅓% Is Standard In Common Fund Cases

Here, Plaintiffs' counsel request a fee of 33⅓% of the common fund, a percentage commonly awarded by courts in the Third Circuit in common fund cases.  *See, e.g.*, *In re Merck & Co., Inc. Vytorin ERISA Litigation*, 2010 WL 547613 at *9-14 (D.N.J. 2010) (awarding 33⅓%); *Larson v. Sprint Nextel Corp.* 2010 WL 234934 at *24-25 (D.N.J. 2010) (awarding 33%); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 at *14 (D.N.J. 2009) (awarding 33⅓%); *In re EquiMed, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 2998 (E.D. Pa. Mar. 3, 2003) (awarding 33⅓%); *Cullen*, 197 F.R.D. 136 (awarding 33⅓%); *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423 (E.D. Pa. 2001) (awarding 33⅓%); *In re Safety Components, Inc. Securities Litigation*, 166 F.Supp.2d 72 (D.N.J. 2001) (awarding 33⅓%); *AremisSoft*, 210 F.R.D. 109

---

[5]    The lack of substantial objections by members of the Class to the settlement terms, as set forth in Plaintiffs' motion for final approval, also supports this fee request.  *AT&T*, 455 F.3d at 165.  Class members' deadline to object to Class Counsel's fee request is June 17, 2010.  While Class Counsel have addressed the few objections to Class Counsel's fee request which have been filed to date in their separately filed memorandum requesting final approval of the settlement, Class Counsel will address any new objections in a supplemental filing prior to the final fairness hearing.

(awarding 33⅓%); *In re Unisys Corp. Sec. Litig.*, 2001 U.S. Dist. LEXIS 20160 (E.D. Pa. Dec. 6, 2001) (awarding 33⅓%); *Blackman v. O'Brien Envtl. Energy, Inc.*, 1999 U.S. Dist. LEXIS 7160 (E.D. Pa. May 11, 1999) (awarding 35%); *In re ValueVision Int'l Inc. Sec. Litig.*, 957 F.Supp. 699 (E.D. Pa. 1997) (awarding 34.27%); *Ratner v. Bennett*, 1996 U.S. Dist. LEXIS 6259 (E.D. Pa. May 8, 1996) (awarding 35%); *In re Greenwich Pharm. Sec. Litig.*, 1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 25, 1995) (awarding 33⅓%); *see also Zinman v. Avemco Corp.*, 1978 U.S. Dist. LEXIS 20079 (E.D. Pa. Jan. 18, 1978) (Higginbotham, J.) (awarding 50%).

### 4.    Class Counsel Undertook the Risk of Non-Payment

Class Counsel undertook these actions on an entirely contingent basis, assuming a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their substantial out-of-pocket expenses (of over $500,000). Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Communications*, 618 F.Supp. at 747-49 (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

The Court is well familiar with the numerous substantive and procedural risks this case faced. Despite these risks, Class Counsel here were able through their efforts to forge a resolution that provides significant present relief to the Class, including relief that could not have been achieved through trial alone. That relief includes not only monetary recovery, but the institution of a pro-rated ETF policy that will benefit consumers moving forward. Tested by the

infirmities of the case itself, there is little doubt that Class Counsel undertook a significant risk here, and the fee award should, respectfully, reflect that risk.

### 5. Plaintiffs' Counsel Devoted Significant Time and Effort to Numerous Complex Issues in This and the Related Cases Over the Last Six Years

Since the inception of these and related ETF actions, Class Counsel and Supporting Counsel identified above have expended 18,617.815 hours over the last six years, and incurred $506,943.75 in out-of-pocket expenses on these cases.   *See* Fee Declarations submitted concurrently herewith.   In addition to the substantial work outlined in Supporting Counsel's declarations submitted herewith,[6] this includes, *inter alia*, the time spent in the initial investigation of the cases, researching complex issues of law, preparing and filing complaints, engaging in briefing motions to remand to state court, engaging in briefing oppositions to ATTM's motions to compel arbitration, engaging in briefing oppositions to ATTM's motions to stay cases pending FCC proceedings, closely following the events in the FCC proceedings, reviewing thousands and thousands of pages of documents produced by ATTM, on both arbitration-related issues and preemption issues, engaging in substantial discovery and briefing on an expedited basis in connection with an evidentiary, summary judgment-like motion on ATTM's preemption defense, hard-fought settlement negotiations (including many, many hours

---

[6]    For example, in the coordinated ETF proceeding in Alameda County, California, among other things, Plaintiffs' counsel briefed and argued demurrers on both the affirmative defenses of preemption and alternate performance, appeared for numerous court hearings, opposed a motion to compel arbitration, defended an appeal of the arbitration issue, participated heavily in the FCC proceeding concerning ETFs (including hiring special FCC counsel, experts and consultants), briefed and argued class certification (including retaining an expert economist), paid for dissemination of notice to the certified class, and conducted substantial expert witness work.

In the *Kinkel* case, in addition to substantial other work (including taking two depositions of class certification experts), Plaintiffs' counsel defeated a motion to compel individual arbitration, which survived an appeal to the Illinois Supreme Court and resulted in an often-cited opinion holding that Cingular's class action ban was unconscionable and unenforceable.  *See Kinkel v. Cingular Wireless, LLC*, 223 Ill.2d 1, 857 N.E.2d 250 (Ill. 2006).

spent in and out of the mediation), documenting the complex features of the Settlement, conceiving, negotiating, implementing and monitoring a national class notice plan, researching and briefing issues relating to the preliminary and final approval of the Settlement, and further time to be spent in arguing final approval.  Indeed, Class Counsel's submission today does not include time to be spent going forward—both in preparing and presenting arguments on final approval, or defending the settlement from any other appellate or other attacks that may result.

> **6.     The Requested Fee is Consistent with Contingent Fee Arrangements Negotiated in Non-Class Litigation**

Granting a 33⅓% fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.  As explained in *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases  . . . .

If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See*, *e.g.*, *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, Lead Counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *accord Blum v. Stenson*, 465 U.S. 886, 904, n.* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion).

In *ETSI Pipeline Project v. Burlington Northern, Inc.*, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 5, 1989), for example, the prominent Houston law firm of Vinson & Elkins prosecuted the case on a one-third contingent fee basis.  After obtaining a $1 billion verdict at

trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million.   In a publicly-filed declaration, an attorney from Vinson & Elkins explained with respect to the fee paid in *ETSI Pipeline*: "Absent a willingness to pay on a current basis, it is my belief that a client with a claim such as the one we prosecuted would be required to offer a significant percentage of the recovery to his counsel in order to obtain representation." Declaration of Harry Reasoner, submitted in *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz. Nov. 30, 1990).

Thus, Class Counsel's application is supported by this factor as well.

**7.**      **The Fee Request Is Also Supported By the Lodestar Cross-Check**

The Court of Appeals for the Third Circuit has expressly stated that counsel's lodestar is to be used as a "cross-check" on any requested percentage fee award.   *Cendant PRIDES*, 264 F.3d  at 256.   This cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of counsel's investment in the case.   Third Circuit Task Force, *Selection of Class Counsel*, 208 F.R.D. 340, 422-23 (2002).   To calculate the lodestar amount, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.   *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).   Here, the lodestar method, which would actually result in a *higher* fee based on hours alone, certainly confirms the reasonableness of the percentage fee being sought.

Plaintiffs' Counsel and their staffs have spent a total of 18,617.815 hours on this case. *See* declarations of counsel filed concurrently herewith.   As reflected in Plaintiffs' Counsel's accompanying Declarations, the hours recorded were incurred on, among other tasks, those identified above, in Section 5, *supra*.   Given the effort expended and the complexity of the legal and factual issues involved, the hours incurred are entirely reasonable.

13

Moreover, Plaintiffs' counsel's rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of the particular attorney. The rates for each individual attorney and paralegal are set forth in the Declarations and in the charts and exhibits to the Declarations. As appropriate in the Third Circuit, the lodestar rates are based on a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided and the experience of the lawyer. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000).

Taking into account the several factors discussed above, including the economic benefits of the Settlement, the complexity and risk of the litigation, and the skill and experience of counsel, Plaintiffs' counsel's rates are reasonable in this case. As set forth in Plaintiffs' counsel's accompanying declarations, this calculation yields a lodestar, *without even applying a multiplier* (to which Plaintiffs' counsel would be appropriately awarded here), of $7,657,654.35.

While this Court should consider the time of all ETF Counsel included in this fee application, even if only the time of Class Counsel's groups is considered, this calculation would still yield a lodestar, before application of an appropriate multiplier, of $3,417,546, which alone justifies the fee request as well. In the Third Circuit, multipliers are used to account for the risks of non-recovery, as an incentive for counsel to undertake socially beneficial litigation, or as an award for an extraordinary result. "By nature they are discretionary and not susceptible to objective calculation." *In re Prudential*, 148 F.3d at 340. In *In re Cendant Corp. Derivative Litigation*, 232 F.Supp.2d 327, 341-42 (D.N.J. 2002), the court found that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."

*AremisSoft*, 210 F.R.D. at 135, is also instructive. There, the court found that a multiplier of 4.3 was proper, noting that it was close to the range found acceptable by the Court of Appeals.

14

The Court also noted the "high risk of non-payment" and the "innovative settlement" that provided compensation to the Class while enabling the defendant to continue to pursue profitable business activities.  *Id.*

Here, the outcome for the Class is substantial.  As discussed in greater detail above, Plaintiffs' counsel faced a significant risk of nonpayment, not only for their time, but for unreimbursed out-of-pocket costs.  Thus, a multiplier of only approximately 1.76, even including only the time of Class Counsel's groups, is well within the parameters used throughout this Circuit, and is in fact, on the low end of that range.

Other courts, too, have found multipliers substantially higher than the 1.76 multiplier suggested here to be reasonable for cross-check purposes in other class actions.  *See*, *e.g.*, *Weiss*, 899 F.Supp. at 1304 (awarding fee that resulted in a multiplier of 9.3 times hourly rate); *Muchnick v. First Fed. Savings & Loan Ass'n*, 1986 WL 10791 (E.D.Pa. 1986) (awarding fee equal to multiplier of 8.4); *Perera v. Chiron Corp.*, Civil No. 95-20725-SW (N.D. Cal. Feb. 17, 1999 and Feb. 29, 2000) (multiplier of 9.14); *In re Buspirone Antitrust Litig.*, 2003 U.S. Dist. LEXIS 26538 (S.D.N.Y. Apr. 11, 2003) (multiplier of 8.46); *Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) (awarding fee equal to a multiplier of 8.84); *In re Triangle Indus. S'holder's Litig.*, 1991 Del. Ch. LEXIS 203 (Del. Ch. Dec. 19, 1991) (awarding fee equal to 6.6 multiple on $70 million recovery); *RJR Nabisco*, 1992 U.S. Dist. LEXIS 12702 (multiplier of 6.0); *Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y. 1997) (multiplier of 5.5); *Feerer v. Amoco Prod. Co.*, 1998 U.S. Dist. LEXIS 22248 (D.N.M. May 28, 1998) (multiplier of 4-5); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002) (multiplier of 4.65); *Willson v. N.Y. Life Ins. Co.*, 1995 N.Y. Misc. LEXIS 652 (Sup. Ct. Nov. 8, 1995) (multiplier of 4.6); *In re Boston & Maine Corp.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiple).

Accordingly, the lodestar cross-check supports Class Counsel's request.

15

8.    **Plaintiffs' Counsel Should Be Reimbursed For Their Reasonably Incurred Litigation Expenses**

Litigation expenses are properly recovered by plaintiffs' counsel. *See Safety Components*, 166 F.Supp.2d at 108 ("[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action"), citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Here, Plaintiffs' Counsel incurred substantial expenses in the amount of $506,943.75, including retaining numerous experts and consultants and conducting substantial discovery, including depositions and document productions. Those should also be awarded from the Settlement Fund in addition to Class Counsels' requested fee award of $6 million. *See In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (awarding reimbursement of out of pocket expenses of over $550,000).

9.    **The Court Should Award Incentive Awards to the Representative Plaintiffs**

Barry Hall, Roman Sasik, David Dickey, Steven Wright, Jane Waldmann, Robert Wise, Edith D. Thurman (daughter of the late plaintiff Jackie Thurman), Richard Chisholm, Mary Betsellie (formerly Mary Pitsikoulis), Debra Lively, Jacqueline Sims, and Kiisha Orr also request that they be awarded incentive awards in the amount of $2,000 each for their efforts as the class representatives.

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000)); *McGee v. Continental Tire North America, Inc.*, 2009 WL 539893, 18 (D.N.J. 2009) (quoting *In re Lorazepam & Clorazepate Antitrust*

16

*Litig.*, 205 F.R.D. 369, 400 (D.D.C.2002)) ("Incentive awards are 'not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.' "); *American Investors*, 263 F.R.D. at 245 (awarding representative plaintiffs incentive payments in the amounts of $10,500 and $5,000, for a total of $115,000, finding those amounts to be "reasonable compensation considering the extent of the named plaintiffs' involvement and the sacrifice of their anonymity."); *Bezio v. General Electric Company*, 655 F.Supp.2d 162, 168 (N.D.N.Y. 2009) (incentive awards in the amount of $5,000 each are "within the range of awards found acceptable for class representatives."); *Klein v. O'Neal, Inc.*, --- F.Supp.2d ---, 2010 WL 1435161 at *42 (N.D. Tex. 2010) (approving representative plaintiff incentive payments in the amount of $75,000 each).  Here, Plaintiffs agreed to pursue these important claims for the benefit of the class, consulted with their counsel, responded to ATTM's discovery, and in some cases were deposed, such that a small $2,000 incentive award each is well-justified.[7]

---

[7]     Additionally, this award is *less* than the incentive awards granted in the Sprint and Verizon ETF approved settlements.  The Sprint settlement provided for an incentive award "not to exceed $3,000" for each representative Plaintiff, and the Verizon settlement provided for an incentive award "not to exceed $10,000" for each representative plaintiff.

## <u>CONCLUSION</u>

For all the reasons set forth above and in the accompanying declarations, Class Counsel respectfully request that their application for attorneys' fees and costs be granted in its entirety.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiffs and the Class


By:____/s/ James E. Cecchi_____
       JAMES E. CECCHI

Dated:   June 10, 2010