UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

BARRY HALL, et al.,                                             Civil Action No. 07-05325 (JLL)

Plaintiffs,

v.

AT&T MOBILITY LLC f/k/a CINGULAR

WIRELESS LLC, et al.,

Defendants.

-------------------------------------------------------------------------------------------------------------------
DECLARATION OF JACQUELINE MOTTEK IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND COSTS

Jacqueline Mottek
POSITIVE LEGAL
201 Spear Street, Suite 1100
San Francisco,CA  94105

Tel.:415. 946.4014

I, Jacqueline Mottek, hereby declare as follows:

1. I am a member of the Bar of the State of California in good standing. I have been practicing law for approximately 25 years. I am counsel for the plaintiffs in the coordinated proceeding known as *In re Cellphone Termination Fee Cases*, JCCP 4332, pending in the Superior Court for Alameda County, California. I make this declaration in support of the Application of Coughlin Stoia Geller Rudman & Robbins and Positive Legal for Attorneys' Fees and Costs. The following facts are based upon my own knowledge and if called upon to do so, I could competently testify thereto.

2. I was the first lawyer in the country to file early termination fees ("ETF") litigation against all of the major wireless carriers. I filed a single complaint on July 23, 2003, on behalf of my clients who were subscribers to all of the then- major carriers, A T & T Wireless, Cingular Wireless, Sprint PCS, Nextel, T-Mobile and Verizon. The industry-wide complaint alleged that the defendants' similar ETFs were unlawful penalties.

3. From the inception and continuously, I have served pursuant to Court Order as one of three members of the California Executive Committee responsible for the plaintiffs' prosecution of of the coordinated cases in California. Initially, I served as a member of the Committee at the behest of the my former firm, Lerach Coughlin Stoia Geller Rudman & Robbins, a firm that has since the inception of the cases has been twice re-named. The Lerach Coughlin firm morphed into a new firm known as Coughlin Stoia Geller Rudman & Robbins, LLP ("Coughlin Stoia"). Just a few months ago and after the settlement of this action, the former Coughlin Stoia announced that it had again reorganized and had been renamed Robbins Geller Rudman & Dowd LLP.

4. I began to discuss leaving the firm Coughlin Stoia at the end of 2008 and started the process to open my own firm in late 2008 into the beginning of 2009 and formed the firm known as Positive Legal, 201 Spear Street, Suite 1100, San Francisco, California,

94105, Tel.:415.946.4014.    A few months later, Coughlin Stoia withdrew from the ETF litigation and the Alameda Superior Court specifically issued an order on April 1, 2009 appointing me and my new firm to represent the plaintiffs as lead counsel and as a member of the three-member California Executive Committee.

5. Coughlin Stoia and and I, and later, Positive Legal, contributed mightily to the effort that made these actions ripe for settlement by class counsel here.   In fact, plaintiffs represented by class counsel in this action, Brian Strange, intervened in the California ETF coordinated proceeding.   Thus, class counsel thus has first- hand knowledge of my contribution to ETF litigation, generally,  that put the case at bar in virtually perfect settlement posture.

6. There were four key hurdles to overcome in all of the ETF cases, wherever they were litigated, before they were ripe for settlement.  The first was the defendants' argument that the plaintiffs' claims were barred by class action waivers and agreements to arbitrate provisions in class members' contracts.  The second was to thwart the defendants' extensive efforts to have the FCC, dominated by a very pro-business administration, issue an order determining that ETF claims were preempted by federal law.  The third— to extricate from the defendants the evidence needed to establish to support class certification and that the ETF provisions were in fact penalties.  The fourth hurdle—class certification.   Coughlin Stoia and I, and later Positive Legal, were each  instrumental, and in fact, critical to plaintiffs' success overcoming each of these obstacles that permitted in very significant part the settlement that the Court considers today.

7. The financial risks of the litigation against the industry, generally,  and against AT&T and Cingular, in particular,  were born exclusively for many years by the members of the California Executive Committee, consisting of Coughlin Stoia, Franklin & Franklin, and Bramson Plutzik Mahler.   Neither Scott Bursor nor Nadeem Faruqi, or any of the co-

counsel the Court has in previous orders identified for ease of reference as members of the "Bursor Group" bore any financial risk in the California ETF litigation. Class counsel was not appointed until August of 2008, and this action was not filed until November of 2007. While class counsel Brian Strange was appointed to the Executive Committee as a non-voting member (a limitation on Mr. Strange's authority Ms. Mottek and Coughlin Stoia vehemently opposed), the principal three voting members of the California Executive Committee funded all of the California litigation that paved the way for this settlement. Indeed, until November 2007, the California Executive Committee exclusively carried the financial risks of the litigation.

8. When the action was first filed against the entire industry by Coughlin Stoia and Ms. Mottek , A T & T and Cingular were separate entities. Both included arbitration provisions that effectively barred class-wide litigation in their customer agreements. The propriety of those provisions under California law was hotly contested in the separate AT& T and Cingular cases in the Superior Court and before the California Court of Appeal, the California Supreme Court, and even the U.S. Supreme Court. I was the was the author of several articles on class arbitration issues and was integrally involved in the briefing submitted at the trial court level. On appeal, Coughlin Stoia's Appellate group took the lead on most of the briefing submitted to the appellate courts. Plaintiffs prevailed at the trial court and on appeal in significant measure because of the efforts of Coughlin Stoia and I.

9. As of 2004, the defendants, including AT & T and Cingular, had very effectively stalled the production of any meaningful evidence in ETF litigation. In June of 2004, I wrote and argued the motion to compel in which plaintiffs prevailed on virtually every issue and resulted in an order that was a sea change in ETF litigation, broadly defining the temporal and geographic scope of the defendants' required production of documents.

All of the defendants, including AT&T and Cingular, were ultimately required to produce the evidence that demonstrated that was required to meet the requirements for class certification and defeat their federal preemption defense, and that was in all likelihood sufficient to allow the plaintiffs to prevail on the merits.  The discovery of this evidence set the stage for this settlement.

10. The defendants drove a full-throttle effort in the trial court, but more importantly before the FCC in 2006 to obtain an order finding that ETF claims were preempted under the Federal Communications Act, 15 U.S.C. Sec. 332(c)(3)(A).   It was not coincidental that the defendants industry trade association, the Cellular Telephone Industry Association (the "CTIA") filed a petition seeking federal preemption before the FCC on the virtual eve of the hearing on the first motions for class certification filed in ETF litigation against them across the country.  Likewise it was not a coincidence that the petition sought emergency and/or expedited relief and that all of the defendants in this litigation sought a stay of all ETF litigation based upon the pending petition.   Coughlin Stoia and I launched the strategic coordinated effort that was supported by class counsel here, including Mr. Strange and Paul Weiss, to effectively oppose the industry.  I personally persuaded the national organization, the AARP Foundation Litigation to represent the plaintiff class in California.  I hired distinguished FCC counsel with wireless expertise to fight the industry's petition.  I also coordinated plaintiffs' counsel nationally prosecuting ETF cases to oppose the industry's petition, financially and otherwise, and served as the liaison for that group.   I also hired an FCC wireless expert to submit evidence to the FCC.  Perhaps most importantly, I persuaded the very powerful AARP and its counsel to submit comments to the FCC in opposition to the petition.  I personally traveled to Washington D.C. many times to meet with counsel for the AARP, FCC commissioners and their staff, as well as pivotal members of the House and Senate.  Notwithstanding

5

the emergency relief requested by a virtually unstoppable industry with extraordinary bargaining power and the fact that the FCC was dominated by a very pro-business administration, the FCC took no action on the petition for nearly three years. The CTIA finally withdrew the petition on behalf the industry after President Obama was elected.

11. I drafted the motion for class certification—one of, if not the first, motions for class certification that was granted in any ETF litigation anywhere in the country. That motion was granted on June 9, 2006 as to California subscribers that had paid ETFs to Verizon, Sprint and Nextel, and the new merged entity Sprint Nextel. AT&T and Cingular were not parties to the motion because they appealed the Court's denial of their motions to compel arbitration and an automatic stay pending appeal was issued delaying the proceedings against them. But, there is little doubt, that that motion paved the way for the California Superior Court's order granting plaintiffs' motion against AT&T Mobility that was granted in 2009, to counsel's knowledge, the first ETF order certifying an ETF class against those defendants. The value of all ETF cases increased substantially after the Court issued its order certifying the classes in 2006, including those that had yet to be filed as in this case. It should be noted that class counsel's motion for class certification filed by Mr. Strange and heard at the same time in the coordinated cases was denied.

12. Coughlin Stoia's combined lodestar in the A T & T and Cingular cases over the seven year history of this action is $1,129, 743.25. Attached hereto as Exhibits A-C are the time summaries for the AT&T action, the Cingular action, and for the fees incurred after the AT&T and Cingular merger. Costs paid by Coughlin Stoia allocated to those cases are approximately $100, 661.74. Attached hereto as Exhibits D-F are summaries of the costs incurred in the AT & T action, the Cingular action and for the costs incurred against the post merger A T & T Mobility ("AT&T/ Cingular" in Ex. F). I personally reviewed all

of the time and costs submitted by Couglin Stoia in the California ETF litigation, and allocated the time devoted to prosecution that benefitted the cases overall 1/6 each to A T & T Wireless and Cingular until the merger of A T & T Wireless and Cingular, after which the time was allocated 1/5 to each defendant. After the Sprint Nextel merger, time and costs that benefitted the cases overall was allocated ¼ to each of the four defendants, A T& T Mobility, Sprint Nextel, Verizon and T-Mobile.

13. Positive Legal's lodestar in the AT& T Mobility matter is $31, 125.00, which consists of 62.5 hours at the rate of $ 500 an hour. Positive Legal's lodestar is primarily attributable to class certification briefing and the review of documents. Positive Legal's costs in the AT & T and Cingular litigation are negligible.

I swear under penalty of perjury under federal law that the foregoing is true and correct. Executed this 10th day of June, 2010.


_____/s/Jacqueline Mottek_____

Jacqueline Mottek, Esq.