UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

BARRY HALL, et al.,                               Civil Action No. 07-05325 (JLL)

Plaintiffs,

v.

AT&T MOBILITY LLC f/k/a CINGULAR

WIRELESS LLC, et al.,

Defendants.

---

APPLICATION FOR ATTORNEYS' FEES

SUBMITTED ON BEHALF OF COUGHLIN STOIA GELLER RUDMAN & ROBBINS AND POSITIVE LEGAL

Jacqueline Mottek<br>
POSITIVE LEGAL<br>
201 Spear Street, Suite 1100<br>
San Francisco, CA 94105<br>
Tel.: 415.946.4014

1

## I. Factual Background

California Class action lawyer, Jacqueline Mottek, was the first lawyer to file early termination fees (ETF) litigation against all of the major wireless carriers. In a single complaint filed on July 23, 2003, Ms. Mottek's clients, who were subscribers to all of the then major carriers, alleged that the industry imposed ETFs were unlawful penalties. From the inception and continuously, Ms. Mottek has served pursuant to Court Order as one of three members of the California Executive Committee responsible for the plaintiffs' prosecution of the coordinated cases, *In re Cellphone Termination Fee Cases,* JCCP 4332, Superior Court for the County of Alameda, California. *See* Declaration of Jacqueline Mottek Submitted in Support of Attorneys' Fees and Costs Application, dated June 10, 2010 ("Mottek Decl.")¶¶1-3. There is little doubt that the California ETF litigation was ground-breaking and paved the way for the settlement the Court now considers.

Initially, Ms. Mottek served as a member of the Committee at the behest of her former firm, Lerach Coughlin Stoia Geller Rudman & Robbins, a firm that has since the inception of the cases has been twice re-named. *See id*., ¶ 3. The Lerach Coughlin firm morphed into a new firm known as Coughlin Stoia Geller Rudman & Robbins, LLP ( "Coughlin Stoia"). *See id.* Just a few months ago, the former Coughlin Stoia announced that it had again reorganized and had been renamed Robbins Geller Rudman & Dowd LLP. *See id*.

Ms. Mottek began the transition to leave Coughlin Stoia and open her own firm in the fall of 2008 known as Positive Legal, 201 Spear Street, Suite 1100, San Francisco, California, 94105. *See id*., ¶ 4. A few months later, Coughlin Stoia withdrew from the ETF litigation and the Alameda Superior Court specifically issued an order on April 1, 2009 appointing Ms. Mottek and her new firm to represent the plaintiffs as lead counsel and as a member of the three-member California Executive Committee. *See id*.

Ms. Mottek and the firms, Coughlin Stoia and Positive Legal, contributed mightily to the effort that made these actions ripe for settlement by class counsel here.  *See id.*, ¶ 5.  In fact, plaintiffs represented by class counsel in this action, Brian Strange, intervened in the California ETF coordinated proceeding and class counsel thus has first- hand knowledge of Ms. Mottek's contribution to ETF litigation, generally speaking,  that put the case at bar in virtually perfect settlement posture.  *See id.*

There were four key hurdles to overcome in all of the ETF cases, wherever they were litigated, before they could be really ripe for settlement.  *See id.*, ¶ 6.  The first was the defendants' argument that the plaintiffs' claims were barred by class action waivers and agreements to arbitrate provisions in class members' contracts.  The second was to thwart the defendants' extensive efforts to have the FCC --then dominated by a very pro-business administration- issue an order determining that ETF claims were preempted by federal law.  The third—to extricate from the defendants the evidence needed to establish to support class certification and that the ETF provisions were in fact penalties.  The fourth hurdle—class certification.  Ms. Mottek, Coughlin Stoia, and Positive Legal were instrumental, and in fact, critical to plaintiffs' success overcoming each of these obstacles that permitted in very significant part the settlement that the Court considers today.  *See id.*

The financial risks of the litigation against the industry, generally, and against AT& T and Cingular, in particular, were borne exclusively for many years by the members of the California Executive Committee, consisting of Coughlin Stoia, Franklin & Franklin, and Bramson Plutzik.  *See id.* , ¶ 7.  Neither Scott Bursor nor Nadeem Faruqui, nor any of the co-counsel the Court has in previous orders identified as members  of the "Bursor Group" bore any financial risk in the California ETF litigation.  *See id.,* ¶ 7.  While class counsel Brian Strange was appointed to the Executive Committee as a non-voting member (a limitation on Mr. Strange's authority Ms. Mottek and Coughlin Stoia vehemently opposed), the principal voting

members funded virtually all of the California litigation that paved the way for this settlement. *See id.*

### A. Class Action Waivers and Agreements to Arbitrate

When the action was first filed against the entire industry by Coughlin Stoia and Ms. Mottek , A T & T and Cingular were separate entities. *See id.*, ¶8. Both included arbitration provisions that effectively barred class-wide litigation in their customer agreements. *See id.* The propriety of those provisions under California law was hotly contested in the separate A T & T and Cingular cases in the Superior Court and before the California Court of Appeal, the California Supreme Court, and even the U.S. Supreme Court. *See id.* Ms. Mottek was the recent author of several articles on class arbitration issues and was integrally involved in the briefing submitted at the trial court level. *See id.* On appeal, Coughlin Stoia's Appellate group took the lead on most of the briefing submitted to the appellate courts. *See id.* Plaintiffs prevailed at the trial court and on appeal in significant measure because of the efforts of applicants.

### B. Extricating the Evidence

From the outset of all ETF litigation, the defendants, including AT & T and Cingular, had very effectively stalled the production of any meaningful evidence in any ETF litigation. *See id.*, ¶ 9. In the early summer of 2004, Ms. Mottek wrote and argued a motion to compel in which plaintiffs prevailed on virtually every issue, resulting in an order that was a sea change in ETF litigation, requiring exceedingly broad temporal and geographic scope for the defendants' production of documents. *See id.* All of the defendants, including AT& T and Cingular, were ultimately required to produce the evidence that permitted the successful motions for class certification and defeat the federal preemption defense, as well as the evidence that in all likelihood would have been sufficient to allow the plaintiffs to prevail on the merits. The discovery of this evidence set the stage for this settlement. *See id.*

### C. Federal Preemption

The defendants drove a full-throttle effort in the trial court, but more importantly before the FCC in 2006 to obtain an order finding that ETF claims were preempted under the Federal Communications Act, 15 U.S.C. Sec. 332(c)(3)(A).   *See id.*, ¶ 10.   It was not coincidental that the defendants' industry trade association, the Cellular Telephone Industry Association (the "CTIA") filed a petition before the FCC seeking to stop the litigation on the virtual eve of the hearing on the first motions for class certification filed in ETF litigation across the country.  *See id.* Likewise it was not a coincidence that the petition sought "emergency" relief and that the defendants, including the merged entity A T & T Mobility, sought a stay of all ETF litigation based upon the pending petition.  *See id.* Ms. Mottek and Coughlin Stoia launched a strategic coordinated effort that was supported by class counsel here, including Mr. Strange and Paul Weiss, to effectively oppose the industry. *See id.* Ms. Mottek persuaded the national organization, the AARP Foundation Litigation to represent the plaintiff class in California.  *See id.* In Washington, D.C., Ms. Mottek hired distinguished FCC counsel with wireless expertise to fight the industry's petition.  *See id.* Ms. Mottek also coordinated plaintiffs' counsel nationally prosecuting ETF cases to oppose the industry's petition, financially and otherwise, and served as the liaison for that group.  *See id.*   Ms. Mottek also hired an FCC wireless expert to submit evidence to the FCC.  Perhaps most importantly, Ms. Mottek persuaded the very powerful AARP and its counsel to submit comments to the FCC in opposition to the petition.  *See id.*   Ms. Mottek traveled to Washington D.C. many times to meet with AARP counsel, FCC commissioners and their staff, as well as pivotal members of the House and Senate.  *Id.* Notwithstanding the emergency relief requested by a virtually unstoppable industry with extraordinary bargaining power who visited the FCC repeatedly, and the fact that the administration then in Washington was exceptionally pro-business , the FCC took no action on

the petition for nearly three years. *See id*. The CTIA finally withdrew the petition on behalf the industry after President Obama was elected. *See id*.

### D. Class Certification

Ms. Mottek drafted the motion for class certification—one of, if not the first, motions for class certification that was granted in any ETF litigation anywhere in the country. That motion was granted on June 9, 2006. The motion was granted as to California subscribers that had paid ETFs to Verizon, Sprint and Nextel, and the new merged entity Sprint Nextel. *See id.,* ¶ 11. AT& T and Cingular were not parties to the motion because they appealed the Court's denial of their motions to compel arbitration and an automatic stay pending appeal was issued delaying the proceedings against them. *See id*. But, there is little doubt, that that motion paved the way for the California Superior Court's order granting plaintiffs' motion against AT& T Mobility that was granted in 2009, to counsel's knowledge, the first ETF order certifying an ETF class against those defendants. *See id*. The value of all ETF cases increased substantially after the Court issued its order certifying the classes in 2006, including those that had yet to be filed, as in this case. It should be noted that class counsel's motion for class certification heard at the same time in the Alameda coordinated proceeding was denied. *See id*.

### II. Discussion

While Class Counsel is generally tasked with the responsibility of allocating the aggregate fee award to the various non-lead counsel who played a role in producing the settlement, "the court's involvement in the fee decision will be at its height when the fee request is for work performed before the appointment of the lead plaintiff." *In re Cendant Corp. Sec. Litig*., 404 F.3d at 195. The Advisory Committee Notes to the 2003 Amendments to Rule 23(h) support the Third Circuits' conclusions, stating as follows:

> [Rule 23(h)] provides a format for all awards of attorney fees and
> nontaxable costs in connection with a class action, not only the award
> to class counsel. In some situations, there may be a basis for making

> an award to other counsel whose work produced a beneficial result
> for the class, such as attorneys who acted for the class before
> certification but were not appointed class counsel, or attorneys who
> represented objectors to a proposed settlement under Rule 23(e) or to
> the fee motion of class counsel. Other situations in which fee awards
> are authorized by law or by agreement of the parties may exist.

Fed. R. Civ. P. 23(h), Advisory Committee Notes to the 2003 Amendments.

Here, most of the work for which applicants seek compensation is for work performed prior to the appointment of Class Counsel on August 6, 2008 and before the case was filed in November 2007.  *See Cendant* at 197.  Moreover, applicants conferred an independent benefit upon the class and thereby merit compensation.  As recently explained by this Court, the effectiveness of counsel is measured by results.  *See Milliron*, 2009 WL 3345762, at * 21.  And here, counsel have specifically submitted credible evidence of their contribution to the settlement as demonstrated by the results obtained in each instance as explained above, making this action ripe for settlement.  As this Court aptly noted, "[a]t the end of the day, results matter." *See id.*   In perhaps the clearest example,  Coughlin Stoia and Ms. Mottek's efforts to turn the tide at the  FCC were by any measure successful.  Had the FCC issued the requested order, the settlement the Court now considers could not have occurred.  See Mottek Decl., ¶ 10.

Coughlin Stoia's combined lodestar in the A T & T and Cingular cases over the seven year history of this action is $1,129, 743.25 and Positive Legal's lodestar in the AT& T Mobility matter is  $32, 512.00.  *See* Mottek Decl., ¶¶12-13 ; Exs. A-C, G.  Costs paid by Coughlin Stoia allocated to those cases are approximately $100,661.74, while the costs paid by Positive Legal in these cases were  negligible.  *See id.*, ¶ 12; Ex. D-F.  Given applicants contributions to overcoming the major obstacles to resolving these cases, applicants request that the Court award them their lodestar and costs.

The Court adopted an allocation methodology in *Milliron* that allocated fees based upon the percentage of California class members compared to total subscribers and the number of hours devoted to the litigation by California Counsel.   It is estimated that California subscribers

amount to 18% to 20% of ATT/Cingular total subscribers. This would translate to a $1,080,000 fee allocation to California Counsel.

Much of the work undertaken by applicants was national in scope. Certainly, overcoming federal preemption, almost by definition, benefitted the national class. The applicants efforts to obtain the support of the AARP and in coordinating a national group of counsel to stave off the order of preemption sought by the defendants at the FCC, was in and of itself, extraordinary. That work was critical to all of the ETF litigation everywhere and without which the settlement would not be possible. On that basis alone, applicants request at a minimum 60 percent of their combined lodestar and the costs in their entirety, *i.e.*, $696,520.00.

Under either method, or simply awarding applicants their lodestar, Class Counsel will nonetheless obtain a substantial multiplier on their own lodestar rewarding them for having obtained the settlement.

### III.  Conclusion

For all of the foregoing reasons, applicants Coughlin Stoia and Positive Legal respectfully request that they be awarded their respective lodestar and costs for their contribution to the settlement of this litigation.

Dated: June 11, 2010

By: *Jacqueline Mottek*

Jacqueline Mottek
POSTIVE LEGAL
201 Spear Street, Suite 1100
San Francisco, California 94105
Tel. 415.946.4104
jmottek@positivelegal.net