UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY HALL, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al.*,<br><br>        Defendants. | Civil Action No. 07-05325 (JLL) |

---

**CLASS COUNSEL'S OPPOSITION TO JACQUELINE MOTTEK'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

---

                              Brian R. Strange
                              Gretchen Carpenter
                              STRANGE & CARPENTER
                              12100 Wilshire Blvd., Suite 1900
                              Los Angeles, California 90025
                              (310) 207-5055

                              James E. Cecchi
                              Lindsey H. Taylor
                              CARELLA, BYRNE, CECCHI,
                              OLSTEIN, BRODY & AGNELLO
                              5 Becker Farm Rd.
                              Roseland, New Jersey 07068
                              (973) 994-1700

                              Attorneys for Plaintiffs and the Class

I.     **INTRODUCTION**

This case differs in one significant respect – a respect which Jacqueline Mottek completely ignores in her separate fee application -- from the other similar ETF settlements approved by this Court in the *Sprint* and *T-Mobile* cases. Specifically, Class Counsel here have successfully resolved the attorneys' fee claims of 16 law firms/lawyers who have worked over 18,000 hours (for a combined lodestar of $7,657,654.35 in hours alone), on numerous ETF cases throughout the country. Class Counsel attempted to globally resolve the attorneys' fee claims, individually negotiating fee agreements with the attorneys in *Kinkel v. Cingular Wireless LLC*, AAA WIA No. 11 494 02646 06 (AAA Arbitration), and all but one of the attorneys in the *In re Cellphone Termination Fee Cases*, California Superior Court, Alameda County J.C.C.P. 4332, Ms. Mottek being the only hold-out.

Unfortunately, despite Class Counsel's achievement in working out fair and reasonable fee agreements with Bramson, Plutzik, Mahler & Birkhaeuser, LLP; Franklin & Franklin; Law Offices of Anthony Ferrigno; Reich Radcliffe LLP; Cuneo Gilbert & LaDuca; Carl Hilliard; Law Offices of Joshua Davis; Law Offices of Scott A. Bursor; and Faruqi & Faruqi, LLP (all of the other attorneys involved in the Alameda County cases), Class Counsel were unable to reach an agreement with Ms. Mottek, who now files this application requesting an award of her alleged over $1.1 million lodestar, plus costs, to be paid *in addition to* the amounts Class Counsel have already agreed to pay to the other attorneys involved in the Alameda County cases.  For the reasons set forth below, Ms. Mottek is entitled to nowhere near her requested fees. Not only does this application appear to be improperly submitted on Ms. Mottek's former firm's behalf, but it was Class Counsel's work, not Ms. Mottek's, that led to this settlement.

As Ms. Mottek herself points out, and as this Court noted in the *T-Mobile* case, "'[a]t the end of the day, results matter.'" (Application, page 7 (citing *Milliron*, 2009 WL 3345762, at *21.))  Here, Class Counsel got results.  Not only did they work out agreements with virtually all other ETF counsel in cases across the nation, but, more importantly, they settled this hard-fought litigation with an excellent result for the class (an accomplishment other counsel, including Ms. Mottek, were simply unable to achieve).

## II. MS. MOTTEK APPEARS TO BE SUBMITTING THIS APPLICATION ON HER OWN BEHALF

This application should be largely denied for one simple reason.  While Ms. Mottek purports to bring her application on behalf of her former employer, Coughlin Stoia Geller Rudman & Robbins (and various other names used by that firm during the relevant time) ("Coughlin Stoia"), as well as her current firm, Positive Legal, Class Counsel do not believe Ms. Mottek has any right to request a fee "on behalf of" her former employer.  Ms. Mottek has certainly submitted no evidence of any such right or assignment, yet the vast majority of the over $1.1 million lodestar she seeks (which Class Counsel believe she intends to personally keep) is attributable to Coughlin Stoia's work.  Class Counsel believe that Ms. Mottek was a salaried attorney at Coughlin Stoia, and presumably she was paid her salary while working on the Alameda County cases.  Notably, Coughlin Stoia did not submit a fee application on its own behalf, and Class Counsel are informed that Coughlin Stoia is not requesting a fee from this settlement.[1]

In light of Ms. Mottek's lack of any evidence that she has the authority to request a fee on Coughlin Stoia's behalf, at most, her fee request should be calculated based on Positive Legal's

---

[1] On this basis, Class Counsel did not include Coughlin Stoia in their individual fee negotiations which resulted in the combined fee request of 16 law firms/lawyers.

2

lodestar in the Alameda County cases, $31,125.00.  Further, in light of the fact that the fees Class Counsel are requesting in their own fee application are actually based on a multiplier of less than one (approximately 0.78),[2] certainly Ms. Mottek should be entitled to no greater multiplier, and, at most, then, she would be entitled to an award of fees in the amount of $24,277.50.  Ms. Mottek's fee application should be considered accordingly.

### III.  MS. MOTTEK SAYS LITTLE ABOUT ANY WORK SHE HAS DONE PARTICULAR TO ATTM

A glaring omission in Ms. Mottek's fee application is her failure to discuss the contributions her work has made to the decision of *ATTM specifically* to settle this case.  Ms. Mottek's application generally discusses the "industry," and ETF litigation as a whole, saying virtually nothing about work she has performed relative to *the settling defendants here* (other than the occasional reference to defendants, "including AT&T and Cingular").  Without any reference to specific work relating to ATTM, the application fails to provide support for the million dollar plus request.  In fact, in her discussion of class certification, Ms. Mottek is forced to acknowledge that ATTM was not even a party to the class certification motions she takes credit for.  Yet, she requests over $1.1 million in fees from a settlement *with this defendant* (in addition to fees she has received in connection with other settlements).  Ms. Mottek is not entitled to a fee based on broad generalities relating to ETFs or ETF litigation when she cannot explain how her work led *this defendant* to settle this case.

---

[2] Ms. Mottek is simply incorrect when she says that Class Counsel "will nonetheless obtain a substantial multiplier on their own lodestar."  (Application, page 8.)

3

### IV.     THE WORK MS. MOTTEK DISCUSSES DID NOT "PAVE THE WAY FOR THIS SETTLEMENT"

Forced to rely on generalities by the absence of any significant work with respect to ATTM specifically, Ms. Mottek takes credit for four categories of alleged "successes" which she claims "paved the way for this settlement." However, even taking Ms. Mottek's four categories as the relevant considerations, it was actually Class Counsel's successes in these four categories that led to this settlement, in addition to the most important, yet unmentioned, category -- actually settling the case.

#### A.     Federal Preemption

In the *Sasik* and *Waldmann* cases, the issue of preemption was litigated more than in any case across the country, as ATTM will acknowledge. The court denied the initial motion to dismiss on preemption grounds but allowed expedited discovery, including millions of pages of documents and numerous depositions, and then had a full blown merits hearing on preemption. It was after this extensive battle that settlement discussions began. While the work with the FCC was certainly helpful, it did not lead to this settlement, nor is Ms. Mottek correct that without her work, "the settlement would not be possible." (Application, page 8). In fact, at the time Class Counsel briefed and argued preemption in the *Sasik* and *Waldmann* cases, the preemption issue was still pending before the FCC, but the court lifted the stay and ruled on the merits of the issue. In other words, the court made an independent decision on preemption based on the facts, not the FCC proceedings. That decision, a result of Class Counsel's work, made this settlement possible.

#### B.     Arbitration

Ms. Mottek also claims that her work on the arbitration issues paved the way for this settlement. Not so. With respect to class action waivers and agreements to arbitrate, Class

4

Counsel in both this case and in the *Sasik* and *Waldmann* cases also defeated ATTM's motions to compel arbitration. Class Counsel do not believe that the Alameda County arbitration decisions were even a factor in this settlement, and, in fact, other ETF counsel who have joined in Class Counsel's fee application have not included time spent on the arbitration issue in their lodestar submissions. *See, e.g.*, Plutzik declaration submitted in connection with Class Counsel's fee application, page 13, n. 5.

Moreover, if this Court considers the generalities Ms. Mottek presents, it should also consider the fact that Class Counsel, Strange & Carpenter, were counsel for the plaintiffs in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), the leading California Supreme Court case on the question of unconscionability of class action bans. This was the very decision upon which the courts in Ms. Mottek's cases based their arbitration rulings (as did the courts in the *Sasik* and *Waldmann* cases, as well as numerous other cases around the country). Under the circumstances, for Ms. Mottek to claim that anything she did on the arbitration issue somehow "paved the way for this settlement," rings hollow.

### C. Class Certification

Ms. Mottek also claims that her work on class certification *against Verizon, Sprint, and Nextel* was a significant factor paving the way for this settlement. This argument merits little response, as Ms. Mottek admits that "AT&T and Cingular were not parties to the motion . . . ." (Application, page 6). While this may be an argument for Ms. Mottek to claim fees against Verizon or Sprint Nextel, any work done on class certification against other defendants should not even be considered by this Court (unlike Class Counsel's work here, which resulted in certification of a settlement class in connection with preliminary approval).

### D. Extricating the Evidence

Class counsel in the *Sasik* and *Waldmann* cases looked at more documents (over a million pages) and took more depositions than in any of the other pending cases, as ATTM will acknowledge. While Ms. Mottek claims that her work in "extricating the evidence" contributed to the settlement in this case, Class Counsel's work in this regard, not Ms. Mottek's, led this case toward settlement.

## V. MS. MOTTEK'S ALTERNATIVE REQUEST FOR A FEE OF 18-20% OF THE TOTAL FEE SHOULD BE REJECTED

At the end of her application, Ms. Mottek "estimates," without any evidence, that California subscribers amount to 18-20% of ATTM's total subscribers, and, accordingly, that this Court should alternatively award her the same percentage of the total fee request, or $1,080,000. This request suffers a fatal flaw. Not only does Ms. Mottek provide no evidence that California subscribers amount to such a large percentage of ATTM's total subscribers (and there is no reason to believe the numbers would be any higher than the percentage of United States residents in California overall, which is approximately 12 percent),[3] but she completely ignores the fact that she was only *one* of the numerous law firms and lawyers representing the plaintiffs in the Alameda County cases. Therefore, even if 12% (or even 18% or 20%) of the total fee is attributed to the Alameda County cases (which it should not be in light of the inability to obtain a settlement in those cases and Class Counsel's successes on a nationwide basis, including California), that 12% ($720,000) would be divided among *all* Alameda County counsel, including the 9 such law firms/lawyers with which Class Counsel have already reached agreements. Ms. Mottek would be entitled to, at most, a small portion of that amount.

6

### VI.     CONCLUSION

For all the reasons set forth above, Class Counsel respectfully request that, to the extent Ms. Mottek's application is not denied, at the most, the Court should award $24,277.50, which is the amount of Positive Legal's lodestar times the negative multiplier of class counsel.

>                              CARELLA, BYRNE, CECCHI,
>                              OLSTEIN, BRODY & AGNELLO
>                              Attorneys for Plaintiffs and the Class
>
>
>                              By:   /s/ James E. Cecchi
>                                    JAMES E. CECCHI

Dated:   June 17, 2010

---

[3]     According to the United States Census Bureau's website, www.census.gov, the 2009 population of California was 36,961,664, and the population of the United States was 309,522,131.