# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.

### COUNSELLORS AT LAW

| | | | | |
|---|---|---|---|---|
| CHARLES C. CARELLA | JAMES T. BYERS | **5 BECKER FARM ROAD** | RICHARD K. MATANLE, II | RAYMOND J. LILLIE |
| BRENDAN T. BYRNE | DONALD F. MICELI | **ROSELAND, N.J. 07068-1739** | FRANCIS C. HAND | WILLIAM SQUIRE |
| PETER G. STEWART | A. RICHARD ROSS | **PHONE (973) 994-1700** | AVRAM S. EULE | ALAN J. GRANT° |
| ELLIOT M. OLSTEIN | KENNETH L. WINTERS | **FAX (973) 994-1744** | RAYMOND W. FISHER | MARC D. MICELI |
| ARTHUR T. VANDERBILT, II | JEFFREY A. COOPER | www.carellabyrne.com | WALTER G. LUGER | RAYMOND E. STAUFFER° |
| JAN ALAN BRODY | CARL R. WOODWARD, III | | | STEPHEN R. DANEK |
| JOHN M. AGNELLO | MELISSA E. FLAX | | OF COUNSEL | ERIC MAGNELLI |
| CHARLES M. CARELLA | DENNIS F. GLEASON | | | DONALD ECKLUND |
| JAMES E. CECCHI | DAVID G. GILFILLAN | | | VINCENZO M. MOGAVERO |
| | G. GLENNON TROUBLEFIELD | | | °MEMBER N.Y. BAR ONLY |
| | BRIAN H. FENLON | | | |
| JAMES D. CECCHI (1933-1995) | KHOREN BANDAZIAN | | | |
| JOHN G. GILFILLAN III (1936-2008) | LINDSEY H. TAYLOR | | | |

June 30, 2010

<u>VIA ECF</u>

Honorable Jose L. Linares
United States District Court
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey  07102

      Re: *Hall, et al. v. AT&T Mobility LLC, et al.,*
        <u>Civil Action No. 07-5325</u>

Dear Judge Linares:

  As you know, we are Class Counsel for the pending AT&T Mobility settlement in the above-referenced action.  Please accept this brief letter to respond to the arguments made by objector, Christopher Langone, through his counsel, some of which were made for the first time, at the June 29, 2010 final approval hearing.

  Notably, out of over 27 million notices mailed to Class members, only two objectors appeared at the final approval hearing.  The single objector who appeared through counsel was Langone.  As we have previously brought to the Court's attention, Langone has also inappropriately filed a separate lawsuit against Class Counsel in federal court in Illinois relating to the very same attorneys' fees to which he objects here.  A copy of Langone's federal court complaint against Class Counsel, which has not yet been served, is attached hereto as Exhibit A.  Also, notably, despite his attempt to characterize himself as a guardian of the Class's interests, in 2000, the Seventh Circuit threw out a class settlement in which Langone served as class counsel, finding that the settlement provided no benefit to the class and was "substantively troubling" since "[the representative plaintiff] and [Langone] were paid handsomely to go away" and "most of the money went to [Langone]."  *Crawford v. Equifax Payment Services, Inc*., 201 F.3d 877, 881-82 (7th Cir. 2000).  Langone's arguments made at the hearing should be considered with this backdrop in mind.

  In any event, Langone's current arguments – (1) that residual settlement funds, if any, should be distributed to the Class rather than *cy pres*; and (2) that attorneys' fees should be calculated based on the amount of claims made rather than the total settlement benefits made available to the Class – are without merit, and have routinely been overruled by the courts.  These arguments should be rejected here as well.

Honorable Jose L. Linares
June 30, 2010
Page 2

As an initial matter, Langone's entire argument is completely speculative. There is no reason to believe that the entire settlement fund here will *not* be exhausted, or nearly so, by claims. In fact, we are informed that in other ETF settlements, the funds have been exhausted or almost exhausted. The claim period here does not end until 60 days after entry of the Final Approval Order and Judgment (*see* Plan of Allocation, ¶ 7), and the total number and amount of claims is therefore unknown and will not be known until after final approval. In light of the fact that there is no reason to believe there will even be residual funds or that the amount of claims will not be the same as the total settlement benefits made available to the Class, Langone's arguments are, at best, highly speculative, and at worst, completely irrelevant.[1]

Moreover, even if the settlement funds are not exhausted by claims, *cy pres* distributions of residual funds are routinely approved by courts. As set forth in Plaintiffs' motion for final approval, distribution of surplus funds by *cy pres* distribution is appropriate, especially when "[s]imply dividing the remaining funds among the located class members would provide an unacceptable windfall to located class members at the expense of compensating, at least indirectly, the unlocatable class members." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 641 F.Supp. 259, 269 (D.Ariz. 1986); see *Coppolino v. Total Call Intern., Inc.*, 588 F.Supp.2d 594, 605 (D.N.J. 2008) (noting that "cy pres distributions are permitted in situations where . . . unclaimed funds remain following distribution to the class"). *Cy pres* remedies provide an indirect benefit to both located and impossible-to-locate class members. *In re Matzo Food Products Litigation*, 156 F.R.D. 600, 605-07 (D.N.J. 1994). Thus, *cy pres* distribution is an appropriate use of residual funds.

More relevant for purposes of Langone's current arguments, the total amount of the settlement fund, including both the amount claimed by Class members for their *direct* benefit and any amounts distributed *cy pre*s for their *indirect* benefit, should properly be included in the total amount from which attorneys' fees are calculated. After all, the entire fund of $18 million will benefit the Class, whether directly through claims or indirectly through *cy pres*.

In addition, even without emphasizing the indirect benefit of the *cy pres* distribution, attorneys' fees should be calculated based on the funds made available to Class members through this settlement, not on the amount of claims actually made. In fact, even in cases where there is a *reversion* of unclaimed funds to the defendant (which is not the situation here, where Defendants will pay the entire $18 million in settlement), the overwhelming majority of cases have held that the proper measure of attorneys' fees is a percentage of the fund made available. Indeed, the Eleventh Circuit noted in *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999), that "no case has held that a district court must consider only the actual payout in determining attorneys' fees." *See also Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam) (district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.) (footnote omitted); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 -37 (2d Cir. 2007) (holding it error for the District Court to calculate attorneys' fees "on the basis

---

[1]   Class Counsel and the Claims Administrator continue to work on these class outreach efforts.

Honorable Jose L. Linares
June 30, 2010
Page 3

of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel").

Indeed, these authorities expressly find that granting attorneys' fees based upon the fund made available does not create a windfall for plaintiffs' attorneys because "the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d at 437, *citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The District Court in *Simonet v. Glaxosmithkline*, 2009 WL 2912482 (D.P.R. 2009) also recently rejected the same argument Langone makes here:

> Second, the objectors claim that the attorney's fees in this case should not be based on the amount of the settlement fund but instead on the actual amount claimed by class members. There is ample case law which supports the idea of allowing attorney's fees based on a percentage of the total amount of the settlement fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Furthermore, ample evidence was offered in the hearing that showed that there was an adequate relationship between the amount of money they would receive under the proposed settlement and the amount that they would be entitled to under a *Lodestar* analysis. Therefore, this court finds that the award of attorney's fees based on a percentage of the settlement fund is appropriate.

*Id.* at *2. Similarly here, and particularly in light of Class Counsel's high lodestar which actually exceeds the fee requested, a percentage fee based on the settlement fund made available is appropriate.

Significantly, the U.S. Supreme Court has also endorsed basing fees upon a common fund rather than claims made. *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) is instructive. "In *Boeing,* the Supreme Court rejected petitioner's argument that the attorneys' fee award could be based only on the portion of the common fund actually claimed by class members and not from the unclaimed portion of the fund." *Waters*, 190 F.3d at 1294, *citing Boeing,* 444 U.S. at 477. "The Court found that 'to claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it,* is a benefit in the fund created by the efforts of the class representatives and their counsel.'" *Id.*, *citing Boeing*, 44 U.S. at 480 (emphasis in original).

Moreover, as set forth above, and even more strongly supporting an award of attorneys' fees calculated as a percentage of the total $18 million settlement fund than in the cases cited above, Defendants here are paying the entire $18 million in settlement of this case. Unlike in many of the cases where attorneys' fees are nevertheless calculated based on the fund available rather than the claims made, this is not a reversionary fund, thus making this case even stronger for calculation of fees as requested.

One final note bears mention, relating to Langone's tired argument concerning fee splitting and his absurd contention that, as an absent class member, he had to personally approve

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
    A PROFESSIONAL CORPORATION

Honorable Jose L. Linares
June 30, 2010
Page 4

the fees of every lawyer whose cases are being released and who will be paid a portion of any attorneys' fee award in this case. Specifically, while Langone cited at the hearing to *In re Agent Orange Product Liability Litigation*, 818 F.2d 216 (2d Cir. 1987), that case has no application here. In that case, the Second Circuit found that the fee splitting agreement at issue, which calculated fees as a multiple of the amount of expenses advanced, was contrary to the Second Circuit's approved method of calculating fees based on lodestar (unlike in this Circuit, where common fund attorneys' fees are calculated as a percentage of the fund), and, in fact, in some cases, substantially distorted the district court's allocation of fees among counsel. Significantly, the Second Circuit *upheld* counsel's ability to divide fees as long as "the distribution of fees [ ] bear[s] some relationship to the services rendered" (as they do here). *Id.* at 223. The Second Circuit simply found that, in light of that Circuit's application of the lodestar method of calculating fees, the fee splitting agreement there created a potential for conflicting interests between counsel and the class. *Id.*

Furthermore, in 2009, the Third Circuit decided *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009), which made clear that, in this Circuit, agreements between counsel relating to the apportionment of attorneys' fees are not only acceptable, but beneficial:

> [N]o authority suggests that courts should abrogate valid fee division contracts. To the contrary, we have recognized the benefits of agreements regarding the distribution of fees. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n. 15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees amongst themselves"); *Prudential*, 148 F.3d at 329 n. 96 (private allocation agreements relieve courts from "undertak[ing] the difficult task of assessing counsels' relative contributions") (citation omitted).

*Id.* at 542, n. 36. This is the law in this Circuit, which should be applied in this case. Indeed, in this spirit, Class Counsel went the extra mile in attempting to bring all counsel involved in AT&T ETF cases across the country into an agreement to share fees so as to avoid the same fight over fees as occurred in *Sprint* and *T-Mobile*, a practice which benefits everyone and should be applauded.

Thank you for your continued attention to this matter. If you have any questions, we are available at your convenience.

Respectfully Submitted,

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO

/s/ James E. Cecchi

JAMES E. CECCHI

cc:   All Counsel (via ECF)