UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY HALL, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al.*,<br><br>    Defendants. | Civil Action No. 07-05325 (JLL) |

---

**BRIEF IN SUPPORT OF MOTION TO ENJOIN CHRISTOPHER LANGONE ILLINOIS ACTION CHALLENGING CLASS COUNSEL'S FEES**

---

Brian R. Strange
Gretchen Carpenter
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
(310) 207-5055

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Attorneys for Plaintiffs and the Class

## **PRELIMINARY STATEMENT**

This brief is submitted by Class Counsel in support of their motion for an Order under the the All-Writs Act enjoining objector Christopher Langone from proceeding with a frivolous *pro se* legal action he filed in the Northern District of Illinois against Class Counsel. The lawsuit, a copy of which is annexed hereto as Exhibit A to the Cecchi Declaration, seeks disgorgement of legal fees that may be awarded to Class Counsel – by Your Honor – in this case. It is squarely within the parameters of Your Honor's jurisdiction and a patent abuse of the legal process. Langone's counsel admitted as much in the hearing with Your Honor when he stated that he would dismiss the case depending upon how Your Honor ruled on his objection. ("We are awaiting upon your ruling" because " we believe your actions could moot out the need for a declaratory judgment"). In other words, the "lawsuit" he filed in Illinois, was filed to gain leverage over Class Counsel and, indeed, somehow the Court. This is a clear abuse of process made even more egregious by the fact that the "lawsuit" he filed raises issues that are without question solely within the jurisdiction of this Court. Mr. Langone through his counsel, Mr. Lavery has refused to dismiss the frivolous lawsuit with prejudice. Instead, Mr. Lavery suggests it be dismissed without prejudice based on certain "conditions" discussed herein which would allow it to be refiled or to "transfer" the frivolous action which should have never been filed in the first place.

For the reasons set forth below, the All-Writs Act empowers the Court to enjoin other actions which would undermine the Court's ability to decide and administer a class action settlement. Mr. Langone's Illinois lawsuit is just such an action and should be enjoined.

## THIS COURT HAS AUTHORITY UNDER
## THE ALL-WRITS ACT TO ENJOIN OTHER
## ACTIONS WHICH INTERFERE WITH ITS JURISDICTION

When a settlement reached in federal court is subject to collateral interference, the All-Writs Act empowers the district court to protect the settlement and its own jurisdiction.[1]

### A.     **The All-Writs Act**

The All-Writs Act permits district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The power conferred by the All-Writs Act extends, under appropriate circumstances, to persons who, though not parties to the original action, are in a position to frustrate the implementation of a court order or the proper administration of justice. *U.S. v. N.Y. Telephone Co.*, 434 U.S. 149, 174 (1977). In particular, the Court has the power under the All-Writs Act to enjoin parallel litigation which would undermine the implementation of a class-action settlement. *See In re Diet Drugs*, 369 F.3d 293, 306 (3d Cir. 2004); *In re Prudential Insurance Co. of America Sales Practices Litigation*, 314 F.2d 99, 103-104 (3d Cir. 2002). The power to protect the implementation of a class action settlement includes enjoining suits to relitigate the District Court's allocation of attorney's fees in a class action settlement. *In re Linerboard Antitrust Litigation*, 361 Fed.Appx. 392, 395, 399 (3d Cir. 2010).

Among the issues presently before the Court as part of final approval of the settlement with ATTM is the award and allocation of attorney's fees under the terms of the settlement. Mr.

---

[1]     A federal court has personal jurisdiction over absent class members and their attorneys. *In re Diet Drugs I,* 282 F.3d 220, 233 (3d Cir. 2002). Because the opt-out period and the notice process has begun, the Court can issue an injunction as to absent class members and their lawyers without violating due process. *See Carlough v. Amehen Prods,* 10 F.3d 201, 204 (3d Cir. 2004) (establishment and commencement of the opt-out period is sufficient). In addition, in this instance, the Court has jurisdiction over Mr. Langone because he is a member of the bar of this Court, albeit on the ineligible list. *See* Docket Entries 550, 551.

Langone objected to that fee award [Docket Entry 523], arguing, among other things, that Class Counsel improperly characterized him as "professional objector"[2], failed to provide certain information he had requested, questioned the professional ethics of the attorneys negotiating the settlement with ATTM, and contended the agreement to pay other ETF counsel out of the fee award was an improper fee split, contrary to RPC 1.5[3]. (Langone Objection at 2-8). However, not satisfied with objecting here, Mr. Langone also filed a purported class action complaint in the United States District Court for the Northern District of Illinois[4] raising essentially the same contentions, but also seeking a declaratory judgment that an award of fees to counsel would be illegal and that any fees should be disgorged by counsel to Mr. Langone and to "the class",

---

[2]  Professional objectors, including objector Weinstein in this case, are lawyers whom Judge Scheindlin recently referred to as a "serial objector." *See In Re Initial Public Offering Securities Litigation*, 2010 WL 2505677 at *2 (S.D.N.Y. June 17, 2010). Interestingly, in that decision, Judge Scheindlin talks about the serial objectors as those who have filed "at least six previous objections to a settlement." Here, Mr. Langone strenuously objects to being called a professional objector, yet he admits this action will be his fifth objection, in addition to filing a frivolous lawsuit in Illinois. We believe this is much more serious than filing six objections, which Judge Scheindlin has stated is considered a "serial objector."

[3]  Mr. Lavery attempted to back track on the fact the Illinois case also appears to be based on personal animus against Freidman Weiss by suggesting that Mr. Langone "only has fond memories of his past associations with Friedman Weiss Block and Lewis." However, in a letter dated June 17, 2010, Mr. Langone stated that "I did not know Paul Weiss was one of my lawyers and given my knowledge of him, his firm and prior actions he has taken in consumer class actions want nothing to do with him or his New Jersey counsel." He and Mr. Langone together appear to shift arguments when convenient to justify their actions. Class counsel has previously addressed the frivolous nature of the arguments that any fee split is governed by New Jersey Rule of Professional Conduct 1.5(e) as opposed to Rule 23 and will not repeat them here.

[4]  Since Mr. Langone's suit was filed in federal court, the Anti-Injunction Act, 28 U.S.C. § 2283, which limits the Court's power to enjoin state court proceedings, is not applicable, nor is it necessary for the Court to consider issues of federalism. *See Diet Drugs*, 369 F.3d 305-07. The All-Writs Act empowers the Court to enjoin parties from proceeding with litigation in other federal courts which seeks to relitigate issues which have already been decided and to prevent collateral attacks on its judgments or a pending settlement in the enjoining court. *Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 330 (3d Cir. 2007); *In re March*, 988 F.2d 498, 500 (4th Cir. 1993).

4

which he does not define but presumably would be ATTM Settlement Class members.  In short, he is objecting here arguing that Class Counsel should not be awarded any fees and, in Illinois, he seeks to have Class Counsel give back whatever the Court may award here.

This is precisely the type of parallel litigation that the All-Writs Act empowers the Court to enjoin.  The final approval of the settlement with ATTM, including the amount and allocation of attorney's fees, is presently pending before the Court.  Mr. Langone's Illinois lawsuit seeks to directly undermine the Court's jurisdiction by seeking to relitigate in a separate lawsuit, in another venue, his objection to Class Counsel's fee award.  Mr. Langone's Illinois lawsuit is duplicative of his objection here, there is an identity of issues, and once the Court rules on Class Counsel's fee application, there will be nothing left to determine in the Illinois lawsuit, other than to give Mr. Langone a second chance to litigate the identical issues raised in his objection if he is dissatisfied with the result here.  *See Grider*, 500 F.3d at 334, n. 6.

The Court has the power to enjoin Mr. Langone's Illinois lawsuit in order to protect its jurisdiction, and the Court should exercise that jurisdiction so that these issues are litigated once and only once, before the Court which is most familiar with the litigation.  If Mr. Langone is dissatisfied with the result, his remedy is to take an appeal to the Third Circuit, not take the dispute to another District.  Just as a defendant settling a class action should not be subject to collateral attacks on the settlement in other courts, *see Prudential*, 314 F.3d at 105-106, Class Counsel should likewise not be subject to collateral attacks by disgruntled objectors in other courts on their fee award.  Class action attorney fee awards are subject to court approval under Rule 23(h), but, once made, they are not subject to disapproval by other district courts who have nothing to do with the original case.

### B.      Class Action Settlements Are Commonly Protected By Injunctions

The filing of a frivolous lawsuit in another venue concerning an issue squarely before this Court is surely an abuse of process. *See Tedards v. Auty*, 232 N.J.Super. 541, 550 (App.Div. 1989)(malicious abuse of process claims lies where "defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff.")  Here, that abuse of process is made even more plain by Mr. Lavery's cavalier statements that he might dismiss the action depending upon how this Court ruled on his objection.  Plainly then the lawsuit exists for one improper purpose – to extort a result here.  This fact is also laid bare by Mr. Lavery's assertions that he would dismiss the lawsuit without prejudice subject to an agreement that Class Counsel will "respect RPC 1.15". That rule as to do with safekeeping of property of clients.  It is unclear what Langone and Lavery's true objective is here, but it is, in our judgment, highly improper to demand concessions from  class counsel – whatever they may be – as a condition of dismissing a frivolous action. We have so advised Mr. Lavery and Langone of our position on this point to no avail.  Mr. Lavery, in refusing to dismiss the frivolous action, also suggested he would "transfer" it. Transferring an action that should never have been filed in the first place would only multiply the legal proceedings and the Court's and counsel's involvement in a frivolous case.  A true and correct copy of Mr. Lavery's letter and class counsel's response is attached to the declaration of James E. Cecchi filed herewith.

This Court is well familiar with similar gambits made by disgruntled lawyers.  Indeed, when multiple class actions have been proceeding in parallel, injunctions are often necessary to protect the integrity of settlements in federal court that encompass claims asserted in all of those actions. *See, e.g.*, Docket Entry 139 (enjoining litigation in California state court to protect ETF

settlement) ("California Injunction"); *Milliron v. T-Mobile*, Docket Entry 118 (enjoining fee dispute in California state court to protect ETF settlement); *Diet Drugs I*, 282 F.3d at 235 ("[A] federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states . . . may appropriately enjoin state court proceedings in order to protect its jurisdiction.").

It is particularly critical that an injunction issue when activity in state court – or elsewhere - threatens to subvert "a central pillar of the settlement agreement." *Diet Drugs II*, 369 F.3d at 306. In *Diet Drugs II*, for example, the Third Circuit reviewed an injunction issued in connection with a class action settlement of claims relating to weight-loss drugs. *Id.* at 296, 298. The injunction was intended to enforce a provision of the settlement agreement precluding class members who opted out at an "intermediate" stage from pursuing claims for punitive damages in state court actions. *Id.* at 296, 299. The Third Circuit held that "the District Court had the unquestioned right to effectuate the restraints of the settlement through an order limiting opt-out plaintiffs' conduct in ancillary state proceedings," *id.* at 317, because without that right, parties to the settlement could flout its terms and "'unsettle' what had been thought to be settled." *Id.* at 306.

The provisions of the Settlement Agreement (1) requiring that all disputes relating to the settlement, including those relating to attorneys' fees, be heard by this Court, (2) providing a waiver of any claims for fees that were not raised prior to the final approval hearing, and (3) requiring the release of all claims relating to ETF litigation, including claims for attorneys fees, are all central pillars of the Settlement Agreement. ATTM and Class Counsel reached this settlement, in part, to avoid the trouble, expense and risk of inconsistent decisions that could result from litigating in multiple forums. The agreed upon requirement to litigate all claims for

7

fees before this Court at one time insured that all the evidence relating to the relative—and relevant—contributions of the attorneys litigating each of the half-dozen suits that were resolved by the *Hall* settlement would be before one judicial officer for decision. The ability to conduct all attorneys' fee litigation here—and to ensure that the outcome here was final—is, therefore, a "central pillar" of the Settlement Agreement that may be protected with an injunction. *See Linerboard*, 2008 WL 4461914 at *8 (actions showing that a dispute over fees awarded by federal court in connection with class action settlement would be heard in state court "demonstrate[d] an urgent need" for an injunction).

To permit attorneys who have raised objections to the attorney fee award in this jurisdiction to run to another court and file a lawsuit against Class Counsel concerning that very attorney fee award would "render the agreement (and the Court's jurisdiction) nugatory." *Diet Drugs II*, 369 F.3d at 305. Such additional fee litigation could very well "unsettle what had been thought to be settled." *Id.* at 306 (internal quotation omitted). As this Court noted in its *Milliron* Order staying Mr. Bursor's fee application in California State Court:

> California Counsel's attempt to enlarge the size of the pot by seeking additional fees directly from the Defendant in California state court would interfere with this Court's September 10, 2009 Order directing both the total amount of the award, as well as the specific allocation of fees. An injunction pursuant to the All Writs Act, and, in particular, the relitigation exception of the Anti-Injunction Act, is not only appropriate but also necessary under the circumstances.

*Milliron* Order at 8.

Because the "District Court's ability to give effect" to the Settlement Agreement's important "provision[s] is necessary in aid of its jurisdiction," it may issue an injunction. <u>Diet Drugs II</u>, 369 F.3d  at 305.

The Court had an obligation to ensure any award of attorneys' fees that it approved was fair and reasonable. *See* Fed. R. Civ. P. 23(h); Manual for Complex Litigation (4th ed.) § 21.71

("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorneys fees."). The Court's ability to ensure the "continued integrity of its order approving fair and reasonable fees in the first instance," *In re Linerboard Antitrust Litigation*, 2008 WL 4461914 at *6 (E.D.Pa. 2008), is therefore also necessary in aid of its jurisdiction and supports the requested injunctive relief. *See id*. at *8 ("The All Writs Act Injunction is necessary to prevent disturbing the overall allocation of the . . . Class counsel fee, a result which any litigation of the counsel fee dispute in state court could require.").

In sum, there is no question that the vindictive and improper action filed in Illinois concerns issues within this Court's jurisdiction and which implicate critical aspects of the settlement. Mr. Langone should, therefore, be enjoined from further prosecution of that action and directed to dismiss it with prejudice. While Mr. Langone filed the action in *pro se*, Mr. Lavery is his counsel in this court and clearly directing both what happens to the case as evidenced by his letters attached hereto and his statement to this Court about waiting to see how this court rules to decide what to do with the frivolous case.

## **CONCLUSION**

For the reasons set forth above, Class Counsel's application to enjoin Mr. Langone from proceeding with his Illinois action should be granted.

                                                  CARELLA, BYRNE, CECCHI,
                                                  OLSTEIN, BRODY & AGNELLO
                                                  Attorneys for Plaintiffs


                                                  By:   /s/ James E. Cecchi
                                                           JAMES E. CECCHI

                                                  STRANGE & CARPENTER
                                                 Attorneys for Plaintiffs


                                                By:   /s/ Brian R. Strange
                                                           BRIAN R. STRANGE

Dated: July 9, 2010