**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON and TESSIE ROBB, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL<br><br>Defendants. | Civil Action No. 07-5325(JLL) |

_____

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO ENJOIN RELITIGATION OF CERTAIN ATTORNEYS' ENTITLEMENT TO ATTORNEYS' FEES**

_____

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Paul M. Weiss
Jeffrey Leon
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Attorneys for Plaintiff and the Class

## TABLE OF CONTENTS

I. INTRODUCTION ...............................................................**Error! Bookmark not defined.**

II. FACTS ....................................................................................................4

    A. The Settlement in Larson ............................................................................4

    B. Activity in Arbitration Following the Larson Final Approval Hearing ..........8

III. ARGUMENT 10

    A. Relitigating The Ethics Of The Settlement Is A Direct Attack On This Court's Jurisdiction ........................................................................11

    B. The Court Has Continuing Jurisdiction Over Fee Disputes ...........................11

        1. The Court Has Jurisdiction Over Fee Disputes To Protect the Integrity of Its Order Approving Reasonable Fees And To Bar Relitigation of Issues It Decided ........................................................................12

        2. The Court Expressly Retained Jurisdiction Over Fee Disputes Through Its Orders ........................................................................12

        3. LakinChapman's Appeal of the Court's Order Did Not Divest the Court of Jurisdiction to Hear this Motion ..........................................................13

    C. The All Writs Act Authorizes an Injunction Against Litigation of Attorneys' Fees Issues in Arbitration ........................................................................14

        1. An Injunction is Necessary to Prevent Relitigation of an Issue That Was Decided by the Court ........................................................................15

        2. An Injunction is Necessary in the Aid of the Court's Jurisdiction ...................16

            a) Federal Class Action Settlements Are Commonly Protected by Injunctions ........................................................................17

            b) Arbitration of Attorneys' Fees Issues Threatens the Viability of the Larson Settlement ........................................................................17

            c) Litigating Disputes Over Attorneys' Fees In An Arbitration Tribunal Threatens The Integrity Of The Court's Order Approving Fair And Reasonable Fees ........................................................................19

            d) Principles of Federalism and Comity Support the Entry of an Injunction ........................................................................19

III. CONCLUSION ....................................................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ........................................................ 14, 15

*Hall v. Sprint Spectrum, L.P. d/b/a Sprint PCS Group*, No. 04 L 113 (3rd Judicial Circuit, Madison County, Illinois)) ....................................................................................................... 1

*In re Armstrong*, No. 2001MC130, 2001 U.S. Dist. LEXIS 9769 (E.D. Pa. July 10, 2001) ........ 13

*In re Diet Drugs*, 369 F.3d 293 (3d Cir. 2004) .................................................................. passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133 (3d Cir. 1998) ...................................................................................................................... 14

*In re Linerboard Antitrust Litig.*, 2008 WL 4461914 (E.D. Pa. 2008) ............................ 12, 15, 18

*In re Mooney Aircraft*, 730 F.2d 367 (5th Cir. 1984) ........................................................ 12, 17

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355 (3d Cir. 2001) .................. 12

*In re Y & A Group Securities Litigation*, 38 F.3d 380 (8th Cir. 1994) ........................................ 15

*Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074 (8th Cir. 2008) ........................................... 12

*Kerr v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1987 U.S. Dist. LEXIS 6700 (E.D. Pa. July 24, 1987) ............................................................................................................. 14

*Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746 (4th Cir. 2003) ...................................... 12, 13

*Milliron v. T-Mobile USA, Inc.*, Civ. Action No. 08-4149 (JLL), Opinion and Order, Sept. 10, 2009 ............................................................................................................................ 4, 16

*United States v. York*, 909 F. Supp. 4 (D.D.C. 1995) ................................................................ 13

### Rules

Fed. R. Civ.(h); Manual for Complex Litigation (4th ed.) § 21.71 ............................................ 19

### Statutes

28 U.S.C. § 1651 ...................................................................................................................... 14

28 U.S.C. § 2283 ....................................................................................................................... 14

**Other Authorities**

Moore's Federal Practice – Civil § 303.32(2)(b)(vi) .................................................................. 14

## PRELIMINARY STATEMENT

This motion seeks to put to an end to the effort by the LakinChapman law firm to circumvent the orders and authority of this Court with regard to the division of fees flowing from this Court's approval of the class settlement of this case. (the "Settlement").  On June 2, 2009, as part of the approval process, this Court issued an Order requiring all attorneys wishing to seek fees to apply to this Court for those fees by October 14, 2009.  Doc. 344.  The Court specifically held that "Any application not filed by October 16, [sic] 2009 is deemed waived."  (*Id*). LakinChapman, attorneys representing class members in a Related Case that was extinguished by the Settlement,[1] made no petition for fees, despite being fully appraised and informed of this Court's orders, and thereby waived its claim to fees.  This Court, considering all of the competing fee requests, including the fee requests of several groups of counsel in other Related Cases, allocated certain fee amounts to counsel in Related Cases who had petitioned the Court in compliance its' Order, and Class Counsel privately allocated the remainder.

LakinChapman apparently does not feel bound by this Court's orders or the orderly process for fee resolution established by this Court.  The manifestation of LakinChapman's defiance of the Court's authority is the arbitration complaint it has filed against Class Counsel Freed & Weiss, LLC, where it seeks to relitigate not only this Court's allocation of attorneys' fees, but whether Class Counsel's negotiation of the Settlement was even ethical or proper.  (*See* Arbitration Demand attached Leon Declaration Exhibit 1)  This Court has already heard and ruled on these issues, and they should not be relitigated in a private arbitral forum where LakinChapman gets a second bite at the apple.

---

[1]     *Hall v. Sprint Spectrum, L.P. d/b/a Sprint PCS Group*, No. 04 L 113 (3rd Judicial Circuit, Madison County, Illinois)).

This Court need not rely on Class Counsel's characterization of Lakin Chapman's intent to relitigate issues this Court has already definitively resolved – Lakin Chapman's own words elegantly crystallize the issues raised in its arbitration demand:

> This arbitration presents the fundamentally straight forward question of whether Freed & Weiss LLC ("FW") breached its settlement agreement with the Lakin Law Firm ("LLF") by filing, negotiating, and settling a class-action in the United States District Court for New Jersey that overlapped, and indeed eventually subsumed, a case previously filed (and certified) in Madison County, Illinois by the two firms.

This is the *opening sentence* of Lakin's opposition to Freed & Weiss' motion to stay the arbitration pending resolution of the appeals currently pending before the Third Circuit (attached as Exhibit 4 to Leon Declaration), and it bears a marked similarity to the language it presented to this Court during the settlement approval process in its various briefs.  For example, Lakin previously argued:

> "[N]either the Lakin Law Firm P.C. nor Bock & Hatch LLC have ever authorized F&W to participate in settlement negotiations with Sprint."  (Supplemental Objection of J. Hall at 10-11 [D.E. 188)

The Arbitrator, in his opinion finding the arbitration presents a justiciable controversy, concurred in Lakin's characterization of the essence of its claim:

> Lakin, in its Demand for Arbitration, alleges that F&W, contrary to the terms of the [Settlement] Agreement [between Lakin and F&W], engaged in substantive settlement negotiations with Sprint and ultimately settled the matter in a class action that was pending in the US District Court in New Jersey . . . .

(See June 15, 2010 Opinion of Arbitrator, attached to Leon Declaration as Exhibit 5)

Lakin's own words in its arbitration brief conclusively establish that it seeks to relitigate the very issues this Court decided when denying Lakin's motion to disqualify Freed & Weiss as Class Counsel in this case.  (*See* Letter Opinion and Order of August 26, 2009  at 6 [DE 351] "Noting that Class Counsel retains an obligation to the Class for whom the settlement was

2

negotiated, the Court finds that Weiss and the remainder of Class Counsel properly negotiated this settlement on behalf of the Class.")).

Class Counsel therefore brings this motion to stop LakinChapman LLC from attempting to re-litigate in arbitration this Court's distribution of attorneys fees and the ethics of the settlement. This Court fully and finally apportioned attorneys' fees among counsel on January 15, 2010 as part of its Final Approval Order. Allowing LakinChapman to sidestep this Court's fee application process and use an arbitration proceeding to wrest fees away from Freed & Weiss, who fully participated in this Court's process, would violate this Court's orders and the Settlement Agreement, seriously undermine the Court's jurisdiction, and waste resources.

As expressly provided for in the Settlement Agreement and this Court's orders, this Court heard and decided all competing claims for attorneys' fees arising from this case, *and* all the Related Cases that were encompassed in the settlement. LakinChapman appeared in this Court, submitted to its jurisdiction, and made extensive arguments objecting to the terms and conditions of the Settlement. However, LakinChapman opted not to apply for attorneys' fees pursuant to its work on the Related Case, and did not object to the Court's order that all ETF attorneys' fee requests be brought before this Court or be forever waived.

This failure to participate in this Court's clearly established procedure for seeking attorneys' fees is in marked contrast with the other attorneys representing Class members in this Settlement. In finally approving the Settlement, this Court carefully evaluated hundreds of pages of evidence and arguments submitted regarding the relative value of services provided by the various lawyers involved in ETF cases against Sprint nationwide. This Court's final approval order of January 15, 2010 thoroughly analyzed and balanced this evidence, and awarded attorneys' fees to all counsel who litigated Related Cases as defined in the Settlement Agreement,

3

or objected to the original settlement.  LakinChapman could have participated in this process, but it did not.  Instead, in October 2010 LakinChapman filed an arbitration demand with JAMS in Chicago, Illinois requesting that Class Counsel Freed & Weiss distribute *one-third* of the Court-ordered attorneys' fees *to them alone*.  This is simply impermissible.

By seeking attorneys' fees in an arbitration forum, LakinChapman seeks to circumvent the jurisdiction of this Court, impermissibly meddle in an approved Settlement Agreement, and re-litigate issues that were fully and finally decided by this Court.  This action offends and interferes with this Court's jurisdiction, and creates a dangerous precedent for parties' ability to settle class action cases.  Indeed, as this Court noted in issuing its final approval of settlement of a similar case against T-Mobile, overreaching with respect to fee claims can "yield consequences that would wreak havoc on the practice of class action litigation."  Milliron v. T-Mobile USA, Inc., Civ. Action No. 08-4149 (JLL), Opinion and Order, Sept. 10, 2009, Doc. 86 at 32.

One law firm cannot be permitted to upend, for its own benefit, a process established by this Court and accepted by over twenty law firms.  To avoid those consequences, and to prevent LakinChapman from "unsettl[ing] what had been thought to be settled," In re Diet Drugs, 369 F.3d 293, 306 (3d Cir. 2004), Freed & Weiss respectfully requests that the Court enjoin LakinChapman from making an application for attorneys fees in front of JAMS, or anywhere else.

## I.   FACTS

### A.   The Settlement in *Larson*

In December 2008, Class Counsel and Sprint reached a settlement in this nationwide class action that expressly included a release of the claims asserted in *Larson, et al v. Sprint*, which had been litigated by both Freed & Weiss and LakinChapman in the Fifth District of

4

Illinois.  (*See* Stipulation and Agreement of Settlement, filed December 3, 2008 ("Settlement Agreement"), Art. I. "Related Claims", Doc. No. 84-2 at 6).

As with virtually all settlements of consumer class actions, the Settlement Agreement expressly limits Sprint's total monetary liability arising from the settlement of ETF claims: "'Total Class Benefit' means $17,500,000 consisting of the total of payments into the common fund of $14,000,000 plus up to $3,500,000 in Non-Cash Benefits provided for by this agreement."  Settlement Agreement, Article I. [Docket Entry 84-2 at 22.]  "The Class Representatives and/or Class Counsel shall make a Fee and Cost Application to be heard at the Final Approval Hearing seeking an award of attorneys' fees and expenses in an amount not to exceed 33% of the Total Class Benefit."  (*Id.* at 47)  The maximum fee amount is therefore $5.775 million (one-third of $17.5 million).

Moreover, the Settlement Agreement explicitly states that claims for fees are encompassed by the releases that the parties are to exchange.  (*Id.* at 7)  Absent class members who did not opt out of the settlement, including all of LakinChapman's clients in the Related Case, are bound by all of the terms of the Settlement Agreement as if they had personally executed that agreement.  (Settlement Agreement, Art. IX.13 58) ("The Notice will advise all Settlement Class Members and/or their representatives of . . . this Agreement, and in the absence of a valid and timely Request for Exclusion, such Notice shall have the same force and effect as if each Settlement Class Member executed this Agreement.")).  LakinChapman was aware of the Settlement procedures, and elected not to opt out of the Settlement, but instead to oppose it.

**B.     The Court's Award of Attorney's Fees in *Larson***

This Court scheduled a Final Approval Hearing for March 5, 2009, at which time it would decide whether to grant Class Counsel's application for attorneys' fees.  Preliminary

Approval Order, ¶ 19, [Docket Entry 92].  Class members who object to the settlement in any form, including attorneys' fees, were to file their oppositions and documents in support by February 6, 2009.  *Id.*  ¶  21.  "Settlement Class Members who fail to object in the manner and by the dates provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections".  *Id.* ¶ 21.  LakinChapman did so, submitting to this Court's jurisdiction and participating in the initial Final Approval Hearing.  (*See, e.g.*, Docket Entries 150-153, 155.)  While LakinChapman objected to the notice plan, and the fact that the attorney fees were paid out of the Common Fund, LakinChapman did not (1) object to the Court-ordered fee application process expressly waiving fee claims not presented to the Court, (2) object to the amount of the attorneys' fees, or (3) reserve a right to pursue attorneys fees through an arbitration proceeding.

At the March 5, 2009 Final Approval Hearing, the Court rejected Final Approval and ordered a new notice plan be developed.  On June 2, 2009, this Court issued an Order approving a new notice plan and establishing a briefing schedule leading up to the fairness hearing for Final Approval of the Settlement, to be held on October 21, 2009.  [Docket Entry 344].   In this Order, the court set October 14, 2009 as the deadline for all counsel seeking fees to file a motion in support of those fees.  (*Id*. at 3).  The Court specifically directed that "Any application not filed by October 16, 2009 is deemed waived."  (*Id*.)  LakinChapman, despite being fully appraised of this Court's procedure regarding attorneys' fees, made no filing, thereby waiving its claim to fees.

This is in marked contrast to class counsel in other Related Cases.  Four separate groups of attorneys, composing over 20 different law firms, complied with the June 2 order and applied for attorneys' fees.  Those attorneys were:

- Class Counsel, including (1) Freed & Weiss, LLC, (2) Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, P.C.; (3) Seeger Weiss LLP; (4) Carey & Danis, LLC; (5) Lief,

6

Cabraser, Heiman & Bernstein, LLP; (6) Foley Bezek Behle & Curtis, LLP; (7) Richard J. Burke, LLC; (8) Aria Ozzello & Gignac LLP; (9) Strange & Carpenter, and (10) Jacqueline Mottek;

- The "Bursor Group", consisting of (1) the Law Offices of Scott Bursor; (2) Bramson, Plutzik, Mahler & Birkhaeuser, LLP; and (3) Faruqi & Faruqi, LLP;

- Lite DePalma, Greenberg & Rivas;

- The "Plutzik Group," including the law firms (1) Bramson, Plutzik, Mahler & Birkhaeuser, LLP, (2) Law Offices of Scott Bursor, (3) Franklin & Franklin, (4) Faruqi & Faruqi, LLP, (5) Gilman and Pastor, LLP, (6) Law Offices of Anthony A. Ferrigno, (7) Reich Radcliffe & Kuttler, LLP, (8) Law Offices of Carl Hilliard, (9) Mager & Goldstein, (10) Law Offices of Joshua P. Davis, and (11) Cuneo Gilbert & LaDuca, LLP.

*See, e.g.*, Docket Entry 438 at 37.

These attorneys applied for fees for the work they had done in objecting to and improving the terms of the Settlement, as well as for work in other Sprint ETF lawsuits which they alleged contributed to this Settlement. LakinChapman, by pursuing its fee dispute in a JAMS arbitration, is attempting to usurp the fees claimed and currently owing to all these firms.

On January 15, 2010, the Court issued its Order granting final approval of the settlement. In recognition of the vast number of attorneys involved in the settlement of this case, this Court dedicated half of the Final Approval Order to analyzing and distributing attorneys' fees. (*See* Final Approval Opinion 37-73 [Docket Entry 438]). Notably absent from this Court's determination of fees is a discussion of allocation to LakinChapman, for while it could have applied for fees, it did not.

This Court retains jurisdiction over any subsequent fee disputes: "The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any

7

dispute with respect thereto."  Settlement Agreement, Art. IX.12 at 60.  Indeed, this Court's Final Order and Judgment precludes resolution of claims for attorneys' fees in any other forum:

> The terms of the Agreement and this Final Approval Order and Judgment shall have *res judicata*, collateral estoppel and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any **allegations of** liability, damages, debts, contracts, agreements, obligations, promises, **attorneys' fees**, costs, interests, or expenses which are based on or in any way related to any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, **attorneys' fees,** costs, interest, or expenses which were asserted in the Action or any other claims under state or federal law which arise from, are based on or in any way related to Sprint Nextel**'s** fixed ETF charges.

Final Order and Judgment, ¶ 12, Doc. 470 at 5 (emphases added).

## C.    Lakin's Arbitration Suit Against Freed & Weiss Claiming 1/3 of the Total Fees Awarded in *Larson*

On October 20, 2009—one day before the *Larson* final approval hearing was held—LakinChapman filed an arbitration demand with JAMS -- solely against Freed & Weiss and against no other counsel receiving fees in the case --  seeking 1/3 of the total attorneys' fees that were ultimately awarded in the Sprint ETF case.  At no time did LakinChapman notify this Court of such a filing.[2]

The arbitration demand asserts that Lakin's right to recover part of the *Larson* fee is predicated on the claim that "F&W has breached the [Settlement] Agreement [between F&W

---

[2]    Freed & Weiss has vainly tried to avoid taking up this Court's time with this matter and did not bring the instant motion until (1) Lakin decided to push its arbitration claim despite the pendency of its Third Circuit appeal which could moot the arbitration claim (the claim sat dormant for months after it was filed, see Leon Declaration attached hereto); and (2) Freed & Weiss gave the arbitrator the opportunity to stay or dismiss the appeal. However, the arbitrator, with an obvious financial incentive to keep the claim going, has decided to allow Lakin to proceed despite full knowledge of both the pendency of the Third Circuit appeal and the continuing jurisdiction of this Court.  The full chronology is set forth in the declaration of Jeffrey A. Leon attached hereto.

and LLF] by, among other things, engaging in settlement negotiations with Sprint regarding the Sprint ETF class without permission from LLF and filing a similar case against Sprint when it amended its Nextel complaint on or about December 5, 2008 without permission from LLF." (Lakin Arb. Demand ¶22, attached as Exhibit 1 to Leon Declaration)

In that filing, LakinChapman claims that it is owed one-third of the total settlement fund of $5.775 million ($1,925,000) awarded by this Court in *Larson*, *plus* "at least $82,056.65" in expenses – presumably the time and expense it expended in objecting to the settlement this Court nonetheless approved.  (See *Id.* at ¶¶ 23-25).[3]  LLF sought this amount before it even knew how the Court would allocate the fees awarded, which did not occur until the Court's Final Settlement Opinion was issued on January 15, 2010.  [Docket Entry 438].  LLF also seeks this amount even though it now knows, based on the Court's allocation, that the one-third amount it seeks dwarfs the fees this Court actually awarded to the attorneys who filed a fee petition in accordance with this court's orders: for example, Freed & Weiss received only $906,540 in attorneys' fees and

---

[3]  The Arbitration Demand states:

> 23.    LLF, FW and Bock & Hatch LLC were counsel in the Sprint ETF case [in Illinois].  LLF, FW and Bock & Hatch LLC had agreed to divide net fees collected in the Sprint ETF class action equally (i.e. one-third of the net fees each).

> 24.    The New Jersey Sprint settlement allows attorneys' fees of $5,775,000 plus expenses.

> 25.    As a result of the aforesaid breaches of the Agreement, LLF has sustained damages of no less than $1,925,000 in fees ($5,775,000 ÷ 3) plus at least $82,056.64 in expenses.

LLF nonetheless claimed in its arbitration response to the motion to stay that "[a]lthough the total amount of attorneys fees awarded in the *Larson* case provides one method of calculating damages, LLF has not asked for 'fees awarded to counsel in the *Larson* case.'"  (Lakin Stay Resp. at 2, attached as Ex. 4 to Leon Declaration)   We expect that Lakin will make a similar argument here, which is contrary to the allegations in its arbitration demand, *i.e.,* which is to recover from Fried & Weiss ⅓ of the fees awarded to all counsel in *Larson*.

claimed only $40,014.17 in expenses.  *See* Final Approval Order, Doc. 438 at 45.  The majority

of firms consisting of Class Counsel requested and received substantially less.  Id.

**LEGAL ARGUMENT**

**THE COURT SHOULD ENFORCE ITS INJUNCTION
AGAINST RELITIGATING THE FEE ISSUES DECIDED HERE**

The only court capable of reviewing the Court's award of fees is the United States Court of Appeals for the Third Circuit.  LakinChapman's attempt to mount a collateral attack in an arbitration forum can and should be blocked by an injunction from this Court pursuant to the All Writs Act.

**A.**      **Relitigating The Ethics Of The Settlement Is A Direct Attack On This Court's Jurisdiction**

If LakinChapman's arbitration hearing against Freed & Weiss is permitted to proceed, it will implicate all the law firms who participated in this Settlement, and force the relitigation of major issues that this Court has already resolved.  LakinChapman is asking an arbitrator redecide the issues this Court has already decided in its motion to disqualify Freed & Weiss, as well as asking the arbitrator to redecide the allocation of attorney's fees among counsel, which was hotly contested before the Court, including LakinChapman's own objection to the attorney fee award. To top it off, LakinChapman is seeking an award of attorney's fees from Freed & Weiss that it never received.  LakinChapman seeks to recover from Freed & Weiss more than Freed & Weiss ever received itself.  This Court has already ruled on the distribution of attorney's fees, over LakinChapman's objection and it is not allowed another chance to relitigate the issue in arbitration.

**B.**      **The Court Has Continuing Jurisdiction Over Fee Disputes**

As described above, the Court, after careful consideration, determined the appropriate amount of attorneys' fees for work litigating ETF claims against Sprint, as well as the proper allocation among various groups of attorneys who prosecuted those claims.  That determination

11

is reflected in the Final Approval Order, in which the Court retained jurisdiction over disputes relating to the Settlement.  Under these circumstances, the Court has jurisdiction to hear the instant motion.

1.      **The Court Has Jurisdiction Over Fee Disputes To Protect the Integrity of Its Order Approving Reasonable Fees And To Bar Relitigation of Issues It Decided**

As a consequence of the general rule that the Court "retains ancillary jurisdiction to manage its proceedings, vindicate its authority, and effectuate its decrees," the Court has "continuing jurisdiction to resolve [a] dispute [about fees] in order to protect the continued integrity of its order approving fair and reasonable fees in the first instance." *In re Linerboard Antitrust Litig.*, 2008 WL 4461914 at * 6 (E.D. Pa. 2008) (quoting *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) and *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003)).  Moreover, "no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court.  The jurisdiction that the federal court had when it entered its original judgment is enough to support" ancillary jurisdiction over such an application.  *Linerboard*, *id.* at *7. (quoting *In re Mooney Aircraft*, 730 F.2d 367, 374 (5th Cir. 1984)).

2.      **The Court Expressly Retained Jurisdiction Over Fee Disputes Through Its Orders**

The Third Circuit has explained that a court may, through its orders, properly retain jurisdiction over post-approval disputes relating to class action settlements.  *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367 (3d Cir. 2001) ("[T]he district court expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment.  The court acted quite properly in retaining jurisdiction in that fashion.") (internal citation omitted).  The Court has done so here because "the parties' obligation to comply with

12

the terms of the settlement agreement has been made part of the order" closing this case.  *Marino*, 349 F.3d at 752; see Final Order and Judgment, ¶ 13 [Docket Entry 470 at 5] (ordering parties to "implement and to consummate the Agreement according to its terms and provisions."); *see also* Settlement Agreement, Art. IX. ¶ 18, [Docket Entry 84-2 at 59] (providing the Court with jurisdiction "with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any dispute with respect thereto.").  The Court also retained jurisdiction over fee disputes through the Preliminary Approval Order in which it held that the Escrow Account, out of which attorneys' fees are to be paid, "is established pursuant to an Order of this Court and is *subject to the continuing jurisdiction of this Court*."  (Preliminary Approval Order ¶ 7(a), [Docket Entry 92 (emphasis added)].)

> **3.   LakinChapman's Appeal of the Court's Order Did Not Divest the Court of Jurisdiction to Hear this Motion**

On February 4, 2010, the Hall Attorneys notified this Court via ECF letter that they intended to appeal this Court's final order approving class settlement.  [Docket Entry 452].  This appeal does not divest this Court's jurisdictions over the instant fee dispute.

"[T]he district court retains jurisdiction over any issues relating to the enforcement of the judgment" even though "the filing of [a] notice of appeal divests the district court of jurisdiction over any matters dealing with the merits of the appeal."  *United States v. York*, 909 F. Supp. 4, 10 (D.D.C. 1995); *see also In re Armstrong*, No. 2001MC130, 2001 U.S. Dist. LEXIS 9769, at *9 n.9 (E.D. Pa. July 10, 2001) ("[D]istrict courts retain jurisdiction to enforce and implement judgments and orders that are the subject of pending appeals, as long as this enforcement, implementation, or treatment does not disturb the issues that are on appeal.") (quotation omitted).  The issue of whether this Court's orders permit it to enjoin subsequent litigation of attorneys'

fees in an arbitration forum "relat[es] to" the scope and enforceability of the Court's judgment, not its merits.

Therefore, the pendency of LakinChapman's appeal regarding the contours of this Court's Final Approval Order does not affect this Court's jurisdiction to hear this fee dispute. *See Kerr v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1987 U.S. Dist. LEXIS 6700, at *1-2 & n.1 (E.D. Pa. July 24, 1987) (finding that court had jurisdiction to enjoin litigation of plaintiffs' claims in state court after ordering suit to arbitration despite plaintiffs' pending appeal of that order); *see generally* Moore's Federal Practice – Civil § 303.32(2)(b)(vi) ("Until the district court's judgment is superseded or stayed, the judgment is fully in effect and the district court retains the authority to enforce the judgment" notwithstanding the pendency of an appeal).

**C.     The All Writs Act Authorizes an Injunction Against Litigation of Attorneys' Fees Issues in Arbitration**

Pursuant to the All Writs Act, the Court may "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651. This authority is constrained by the Anti-Injunction Act, which prohibits federal courts from issuing injunctions to "stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  In order to "to ensure the effectiveness and supremacy of federal law," *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988), when "an injunction falls within one of [the Anti-Injunction Act's] three exceptions, the All-Writs Act provides the positive authority for the federal courts to issue injunctions to state court proceedings," *In re Diet Drugs*, 369 F.3d 293, 305 (3d Cir. 2004) ("*Diet Drugs II*") (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133,143 (3d Cir. 1998)).

The analysis as it relates to state proceedings below is equally applicable to arbitration tribunals.  "No matter what, courts have the power to defend their judgments as *res judicata,* including the power to enjoin or stay subsequent arbitrations."  *In re Y & A Group Securities Litigation*, 38 F.3d 380, 382 (8th Cir. 1994) (citations omitted).

Here, an injunction is necessary both to protect the Court's judgment contained in the Final Approval Order and in aid of its continuing jurisdiction.

### 1.    An Injunction is Necessary to Prevent Relitigation of an Issue That Was Decided by the Court

"The relitigation exception [to the Anti-Injunction Act] was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court."  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

This exception is properly invoked to prevent relitigation of attorneys' fee issues.  For example, in *Linerboard*, an attorney, Peoples, claimed to be entitled to a larger portion of the fees awarded in a federal class action settlement in the Eastern District of Pennsylvania than he had received.  *Linerboard*, 2008 WL 4461914 at *2.   Peoples sought to litigate this alleged entitlement not in the Eastern District of Pennsylvania but rather in Delaware state court.  *Id.* The defendant in People's suit requested that the district court—which had approved the settlement four years earlier—enjoin the Delaware litigation.  *Id.* at *2-3.  The district court easily determined that Peoples's suit necessarily would require relitigation of its decision allocating attorneys' fees.  *See id.* at *7-8.  Notwithstanding that the defendant had a colorable *legal* defense in Delaware to People's claim (namely, res judicata), the district court granted *injunctive* relief pursuant to the relitigation exception of the Anti-Injunction Act, finding that an "All Writs Act Injunction is necessary to prevent disturbing the overall allocation of the

Linerboard Box Class counsel fee, a result which any litigation of the counsel fee dispute in state court could require." *Id.* at *8.

Here, LakinChapman had ample opportunity to present to this Court evidence and argument supporting its entitlement to fees.  It did not do so.  As demonstrated by *Linerboard*, any further litigation about entitlement to attorneys' fees in an arbitration forum would constitute relitigation of issues already presented to this Court, and it should so enjoin LakinChapman.

### 2.      An Injunction is Necessary in the Aid of the Court's Jurisdiction

The Court's need to protect its ongoing jurisdiction over the award and allocation of attorneys' fees independently supports the injunction sought by Freed & Weiss.

Earlier in this case, this Court noted that whether a court should invoke the "necessary in the aid of its jurisdiction" exception to the Anti-Injunction Act is determined by a three-part test:

> First, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding.  Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action.  And finally, we consider principles of federalism and comity, for a primary aim of the Anti-Injunction Act is to prevent needless friction between the state and federal courts.

January 16, 2009 Order at 2 [Docket Entry 139] (quoting *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 239 (3d Cir. 2002) ("*Diet Drugs I*")).

This Court applied that three part test here to enjoin both the *Ayyad* subscriber class litigation and the *Smith v. Sprint Spectrum L.P.* JAMS arbitration.  *Id.*  This Court also invoked the All-Writs Act when it enjoined a competing California case in the *T-Mobile* Settlement. *Milliron v. T-Mobile*, Civil Action No. 08-4149 (JLL), December 8, 2009, Docket Entry 117. The reasoning to apply the All-Writs Act in T-Mobile is equally compelling here:

> California Counsel's efforts in this regard are not only inappropriate but threaten to completely dismantle national class action settlements by allowing plaintiffs' attorneys dissatisfied with the fee allocation to simply continue to look for ways

16

to break down the lawsuit into different pieces and to seek separate compensation for those pieces in state court actions.

*Milliron* at 7.

### a) Federal Class Action Settlements Are Commonly Protected by Injunctions

When multiple class actions have been proceeding in parallel, injunctions are often necessary to protect the integrity of settlements in federal court that encompass claims asserted in all of those actions. *See, e.g.*, Docket Entry 139 (enjoining litigation in California state court to protect ETF settlement) ("California Injunction"); *Milliron*, (enjoining fee dispute in California state court to protect ETF settlement); *Diet Drugs I*, 282 F.3d at 235 ("[A] federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states . . . may appropriately enjoin state court proceedings in order to protect its jurisdiction.").

### b) Arbitration of Attorneys' Fees Issues Threatens the Viability of the *Larson* Settlement

It is particularly critical that an injunction issue when activity in state court threatens to subvert "a central pillar of the settlement agreement." *Diet Drugs II*, 369 F.3d at 306. In Diet Drugs II, for example, the Third Circuit reviewed an injunction issued in connection with a class action settlement of claims relating to weight-loss drugs. *Id.* at 296, 298. The injunction was intended to enforce a provision of the settlement agreement precluding class members who opted out at an "intermediate" stage from pursuing claims for punitive damages in state court actions. *Id.* at 296, 299. The Third Circuit held that "the District Court had the unquestioned right to effectuate the restraints of the settlement through an order limiting opt-out plaintiffs' conduct in ancillary state proceedings," *id.* at 317, because without that right, parties to the settlement could flout its terms and "'unsettle' what had been thought to be settled." *Id.* at 306.

17

The provisions of the Settlement Agreement (1) requiring that all disputes relating to the settlement, including those relating to attorneys' fees, be heard by this Court, (2) providing a waiver of any claims for fees that were not raised prior to the final approval hearing, and (3) requiring the release of all claims relating to ETF litigation, including claims for attorneys fees, are all central pillars of the Settlement Agreement.   Sprint and Class Counsel reached this settlement, in part, to avoid the trouble, expense and risk of inconsistent decisions that could result from litigating in multiple forums.   The agreed upon requirement to litigate all claims for fees before this Court at one time insured that all the evidence relating to the relative—and relevant—contributions of the attorneys litigating each of the half-dozen suits that were resolved by the *Larson* settlement would be before one judicial officer for decision.   The ability to conduct all attorneys' fee litigation here—and to ensure that the outcome here was final—is, therefore, a "central pillar" of the Settlement Agreement that may be protected with an injunction. *See Linerboard*, 2008 WL 4461914 at *8 (actions showing that a dispute over fees awarded by federal court in connection with class action settlement would be heard in state court "demonstrate[d] an urgent need" for an injunction).

To permit attorneys who have neglected to seek a justifiable portion of the attorneys fees provided for here to undermine these provisions by making a fee application in another venue would "render the agreement (and the Court's jurisdiction) nugatory."  *Diet Drugs II*, 369 F.3d at 305. Such additional fee litigation could very well "unsettle what had been thought to be settled." *Id.* at 306 (internal quotation omitted).   As this Court noted in its Milliron Order staying Mr. Bursor's fee application in California State Court:

> California Counsel's attempt to enlarge the size of the pot by seeking additional
> fees directly from the Defendant in California state court would interfere with this
> Court's September 10, 2009 Order directing both the total amount of the award,
> as well as the specific allocation of fees. An injunction pursuant to the All Writs

18

Act, and, in particular, the relitigation exception of the Anti-Injunction Act, is not only appropriate but also necessary under the circumstances.

*Milliron* at 8.

Because the "District Court's ability to give effect" to the Settlement Agreement's important "provision[s] is necessary in aid of its jurisdiction," it may issue an injunction.  <u>Diet Drugs II</u>, 369 F.3d  at 305.

### c)  Litigating Disputes Over Attorneys' Fees In An Arbitration Tribunal Threatens The Integrity Of The Court's Order Approving Fair And Reasonable Fees

The Court had an obligation to ensure any award of attorneys' fees that it approved was fair and reasonable.  *See* Fed. R. Civ. P. 23(h); Manual for Complex Litigation (4th ed.) § 21.71 ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorneys fees.").  The Court's ability to ensure the "continued integrity of its order approving fair and reasonable fees in the first instance," *Linerboard*, 2008 WL 4461914 at *6, is therefore also necessary in aid of its jurisdiction and supports the requested injunctive relief.  *See id*. at *8 ("The All Writs Act Injunction is necessary to prevent disturbing the overall allocation of the . . . Class counsel fee, a result which any litigation of the counsel fee dispute in state court could require.").

### d)  Principles of Federalism and Comity Support the Entry of an Injunction

"While the Anti-Injunction Act is designed to avoid disharmony between federal and state systems, the exception in § 2283 reflects congressional recognition that injunctions may sometimes be necessary in order to avoid that disharmony."  *Diet Drugs I*, 282 F.3d at 239.  Here, an injunction is necessary to prevent the Hall Attorneys from needlessly inviting a conflict

between this Court and the JAMS Arbitration Forum about an issue that has already been litigated and resolved here. *See generally*, California Injunction, Doc 139.

## CONCLUSION

For the foregoing reasons, Freed & Weiss respectfully requests that this Court enjoin the JAMS action in Chicago, Illinois.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs and the Class

By:     /s/ James E. Cecchi
         JAMES E. CECCHI

Dated: July 15, 2010

Paul M. Weiss
Jeffrey Leon
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

.

20