Exhibit 4

IN THE MATTER PENDING BEFORE JAMS
ALAN J. GREIMAN, ARBITRATOR

THE LAKIN LAW FIRM, P.C.,

v.

FREED & WEISS, LLC.

Arbitration No. 1340007668

## CLAIMANT THE LAKIN LAW FIRM, P.C.'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS FOR LACK OF JUSTICIABLE CONTROVERSY AND CLAIMED NON-COMPLIANCE WITH THE ILLINOIS DECLARATORY JUDGMENT ACT

This arbitration presents the fundamentally straight-forward question of whether Freed & Weiss, LLC ("FW") breached its settlement agreement with The Lakin Law Firm ("LLF") by filing, negotiating, and settling a class-action in the United States District Court for New Jersey that overlapped, and indeed eventually subsumed, a case previously filed (and certified) in Madison County, Illinois by the two firms. There is no dispute that LLF has been damaged by FW's breaches of the settlement agreement. In addition to the loss of fees, LLF expended attorney time and incurred expenses as a consequence of FW's breach. Respondent's sole argument against proceeding with the arbitration, whether couched as a concern over justiciability or a prerequisite for declaratory judgment, is that its New Jersey case is on appeal. In other words, FW does not yet know whether the 3d Circuit will let it keep the attorney's fees awarded in New Jersey. The outcome of the appeal is irrelevant to whether LLF has sustained damages.

Respondent's argument is based on the flawed premise that its breaches of the settlement agreement must be forgiven (Respondent uses the term "mooted") if Respondent doesn't get to

1

keep its New Jersey fees post-appeal. Nothing could be further from the truth. While LLF was in negotiation with Sprint to resolve its nationally certified class action against Sprint, FW—after having contracted to refrain from doing so—proceeded to file, negotiate and settle the same case against the same defendant. As a consequence, LLF was damaged. Rather than speculative or contingent, these events are fixed in the past. Even if final approval of FW's New Jersey settlement is reversed on appeal, the breaches of contract covered by the arbitration demand remain.

I.   **The Breach Of Contract At Issue Is Based On Past Conduct And Is Not Contingent On The Outcome Of The New Jersey Appeal.**

Although FW suggests that "[i]n its demand for arbitration, LLF claims that it is entitled to one-third of the net fees awarded to counsel in the *Larson* Sprint ETF case in the District of New Jersey" (FW's Motion to Dismiss Arbitration, p. 6), FW is incorrect and fundamentally misconstrues or misstates LLF's claim. The arbitration claim states that as a result of FW's breaches of the settlement agreement, "LLF has sustained damages of no less than $1,925,000 in fees ($5,775,000 ÷ 3) plus at least $82,056.65 in expenses." Although the total amount of attorneys fees awarded in the *Larson* case provides one method of calculating damages, LLF has not asked for "fees awarded to counsel in the *Larson* Sprint ETF case." The claim pleaded is not contingent on future events or what FW ultimately collects from the *Larson* case. Instead, the arbitration is premised on FW's past conduct which was at odds with its obligations under the settlement agreement and which caused damages to LLF.

## CHRONOLOGY

**February 2, 2004** – Plaintiff Jessica Hall filed a class action complaint against Sprint challenging early termination fees ("ETFs") in a case known as *Hall v. Sprint*, Case No. 04 L 113 (Circuit Court, Madison County, Illinois). At this time, Ms. Hall was represented by both LLF and FW, along with a third firm, Diab & Bock. Ex. A.

2

**July 12, 2004** – Written discovery was served on defendants in the *Hall* case (by LLF).

**January 25, 2005** – Plaintiff Jessica Hall's deposition is taken, Phil Bock and attorneys from LLF appear on her behalf.

**January 28, 2005** – Motion to Compel incomplete discovery responses from defendant is filed on behalf of Jessica Hall (by LLF).

**May 20, 2005** – The trial court in Illinois certified a nationwide class.  The certification order was affirmed and upheld by the Illinois appellate court, the Supreme Court of Illinois, and a petition for writ of certiorari to the United States Supreme Court was successfully defended.  *Hall v. Sprint*, 376 Ill.App.3d 822 (5th Dist. 2007), *pet. denied* 226 Ill.2d 614 (Jan. 30, 2008), rehearing denied --- Ill.2d --- (Feb. 25, 2008, *cert. denied* 129 S. Ct. 50 (Oct. 6, 2008).

**November 5, 2007** – FW, along with co-counsel, filed class action complaint against Sprint, *Sampang[1] v Sprint*, Case No. 07-cv-05325 (United Stated District Court, District of New Jersey), which also challenged ETFs.  This original New Jersey complaint expressly recognized the *Hall* case and excluded the class certified in *Hall* from the class alleged in New Jersey.  Freed & Weiss did not withdraw as class-counsel in the *Hall* case or request permission to do so.

**December 2007** – LLF as lead counsel, along with Phil Bock, commenced settlement discussions with Sprint on behalf of the *Hall* class.

**January 7, 2008** – Freed & Weiss, LLC and The Lakin Law Firm entered into a settlement agreement to resolve litigation between the firms, to resolve all claims regarding fees on cases identified in the agreement, and to establish continuing obligations and case management on certain designated cases going forward.  In particular, the case management provisions prohibited Freed & Weiss, LLC from negotiating settlement and filing or assisting in litigation concerning the allegations raised in the *Hall* class action absent prior approval from The Lakin Law Firm.

**January 17, 2008** – Initial meeting in Chicago was held between Hall Class Counsel (Brad Lakin, Phil Bock and Robert Hatch) and Sprint Counsel (Dominic Suprenant, Patsy McSweeney, Fred Klein and Steve Levy).  The parties mutually selected retired judge Thomas Rakowski as a mediator.  Settlement negotiations and mediation with Judge Rakowski continued through the summer and, at least, through the end of July 2008.  Indeed, Judge Rakowski attempted to schedule additional mediation in November of 2008.

---

[1] In a December 21, 2007 amendment to the New Jersey Complaint, plaintiff Sampang no longer appears as a plaintiff leaving Judy Larson as the lead plaintiff.  As a consequence, the case has been predominantly referred to among the parties as the *Larson* case.

**July 2008** – Unbeknownst to LLF, Sprint began mediation sessions with *Larson* Counsel in the instant case.

**October 6, 2008** – United States Supreme Court denies Sprint's cert. petition in the *Hall v. Sprint* Illinois case thereby leaving the trial court's class certification intact 129 S. Ct. 50 (Oct. 6, 2008).

**November 2008** – In the wake of the *Hall* opinion, *Larson* counsel again mediated with Sprint in November 2008 and an agreement in principle was reached. Apparently, this agreement included, in breach of the FW/LLF settlement agreement, negotiation regarding the issues raised in the *Hall* case.

**December 3, 2008** – Although no formal discovery at all was completed in the *Larson* case, a Stipulation and Settlement Agreement was filed in the United States District Court, District of New Jersey. Ex. B. In addition, *Larson* counsel sought leave to file a Second Amended Complaint.

**December 5, 2008** – Pursuant to leave, a Second Amended Complaint with FW as attorneys for the class was filed in *Larson,* and that complaint included an alleged class that overlapped and subsumed the certified class in *Hall*. Ex. C.

**December 5, 2008** – Judge Linares signs an order granting preliminary approval of the *Larson* settlement with Sprint.

**January 15, 2010** – The District Court in New Jersey grants final approval to the *Larson* settlement and awards $5,775,000 in attorneys fees to FW and their co-counsel. Ex. D.

**January 16, 2010** – The terms of the *Larson* settlement called for attorneys fees to be paid to class counsel one day after final approval was entered by the District Court. Ex. B, pp. 46-47.

In the settlement agreement between LLF and FW, FW agreed to Case Management obligations going forward. For the *Hall* case, which is designated as a "Group B" case, these obligations included naming one firm as lead counsel and an agreement to abide by the terms of a proposed case management order incorporated into the settlement as Exhibit 1. LLF was expressly designated lead counsel of *Hall* by the settlement agreement. Apart from a general prohibition against filing papers and performance of tasks absent prior approval of lead counsel, the agreement provides that other counsel, specifically FW, shall not negotiate and "shall not

4

initiate, foment, file, or otherwise assist with similar or related litigation (any action or

arbitration that may arise out of or concern the allegations raised in this matter) against the same

defendant(s) without first receiving approval from Lead Counsel." FW received no approval

from LLF. Therefore, its actions in the *Larson* case were a breach of the settlement agreement

entitling LLF to damages.

**II.    The Parties Have Agreed To Arbitration As The Exclusive Means To Resolve All Disputes .**

 The settlement agreement between LLF and FW contains extraordinarily broad language

requiring that all disputes between the parties related to the agreement be arbitrated before

JAMS:

> **Dispute Resolution.** The Firms agree that all disputes, claims, actions,
> litigation, or other proceedings arising out of or related to this Agreement
> shall be commenced, pursued, tried, litigated, and resolved exclusively by
> arbitration before JAMS in Chicago ("the Forum"). The Forum is
> mandatory and not permissive in nature thereby precluding the possibility
> of litigation between the Firms in any jurisdiction other than the Forum.
> The Firms agree that the Forum has jurisdiction over such litigation, is
> proper, and is convenient for all the Firms and all the witnesses. . . .

Ex.1 to Demand for Arbitration, p. 4. Under the terms of the agreement, it is clear that this

arbitration, an alleged breach of the settlement agreement, is a dispute arising out of and related

to the Agreement itself. The allegations of the Demand for Arbitration are that the agreement

has been breached and that LLF has been damaged as a result of the breach. As a consequence,

there can be no legitimate argument that JAMS is not only a proper jurisdiction, but the

exclusive legitimate forum to hear the dispute.

**III.    Attacks On The Claim As An Inadequately Pleaded Declaratory Judgment Are Both Inappropriate And Incorrect.**

 FW's brief wrongly assumes that the claim is a declaratory judgment then attacks it as

such. In that the matter is a breach of contract claim, evaluation of whether it meets the

5

prerequisites for declaratory judgment is something of a non sequitur.  FW has cited only cases

construing the Illinois Declaratory Judgment Act and those addressing whether certain

declaratory judgments, founded upon future contingencies, presented a justiciable controversy.

FW has presented no authority, and LLF contends that none exists, to suggest that a breach of

contract action predicated on past events is not ripe for determination.  No doubt, FW would

respond that it doesn't know if it gets to keep its fees in *Larson* yet, but that argument misses the

point.  The settlement was breached and LLF damaged when FW negotiated a settlement that

prohibited resolution of *Hall*, amended the *Larson* case to include the certified *Hall* class, and

proceeded to settle the *Larson* case.  The remainder is merely calculation of damages.  FW has

utterly failed to show that LLF's *breach of contract* claim should be dismissed.

Apart from the fact that FW's motion attacking the Demand for Arbitration as a

declaratory judgment completely fails to show that the breach of contract claim actually pleaded

was defective in any way, its contention that the claim would fail—if styled as a request for

declaratory relief—is patently incorrect.  FW's initial argument against declaratory judgment is

that no justiciable controversy exists, but even under the language of the cases cited by FW, the

opposite is true.  LLF does not dispute that "courts are not to render advisory opinions or merely

provide legal advice about *possible future events*."  *P&S Grain, LLC v. County of Williamson*,

2010 WL 1374925, *5 (Ill.App. 2010).  But this arbitration is not about future events.  The

claimed breaches of contract and damages occurred in the past.  *P&S Grain* goes on to explain

that "[t]he requirement of an actual controversy is meant only to distinguish justiciable issues

from abstract or hypothetical disputes and is not intended to prevent the resolution of concrete

disputes in which a definitive and immediate determination of the rights of the parties is

possible." *Id.* The claim asserted in this arbitration is neither abstract nor hypothetical -- in 2008, FW breached its contract with LLF and LLF was damaged as a result.

Other cases cited by FW are in accord that so long as resolution of "some part" of an existing controversy is advanced by litigation, the requirements of an actual controversy are met:

> In order to have an "actual controversy," a party must demonstrate "that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." *Underground Contractors*, 66 Ill.2d at 375, 5 Ill.Dec. 827, 362 N.E.2d at 300. The case must present a concrete dispute requiring the immediate and definitive determination of the parties' rights, the resolution of which will ***advance the conclusion of the controversy or some part thereof.*** *Underground Contractors*, 66 Ill.2d at 375, 5 Ill.Dec. 827, 362 N.E.2d at 300.

*AEH Construction, Inc. v. State Dept. of Labor*, 318 Ill.App.3d 1158, 1161 (3d Dist. 2001)(emphasis added). Instead of supporting FW's claim, *AEH* indicates that proceeding to a determination of liability is appropriate even if calculation of damages must be reserved until later.

FW actually cites *AEH* in arguing that LLF has not pleaded a proper declaratory judgment action. *AEH* states that a complaint for declaratory judgment is adequate if it recites "actual controversy between the parties in sufficient factual detail and requests a declaration of rights is sufficient to state a cause of action." *Id.* Though the Claimant's demand is styled as a breach of contract and Claimant maintains it should be construed as such, apart from using the term "declaratory judgment," there is no doubt it meets the requirements set forth in *AEH* for pleading such a claim. If the claim must be construed as one for declaratory judgment, the declarations sought must necessarily be those legal determinations sought in the breach of contract claim, namely that FW breached its agreement with LLF and, thereby, caused damages to be determined by the Arbitrator. FW seems to suggest that LLF cannot be certain of the

amount of damages in its brief. But, again, that is a dispute over the method of calculating damages rather than an indication that the action is premature in any way.

As stated above, the only conceivable obstacle to a declaratory judgment action regarding this dispute is the fact that a breach of contract action is available. In fact, FW's misguided invocation of the "doctrine of non-liability for past conduct" explains that a breach of contract action is appropriate rather than declaratory judgment. According to FW's precedent, declaratory relief is inappropriate when a party refuses to pay because "at that point, the refusal to pay *either is or is not a breach of contract* and there is no future action to guide." *Adkins Energy LLC v. Delta-T Corp.*, 347 Ill.App.3d 373, 378 (2d Dist. 2004)(emphasis added). In its discussion of this proposition, FW *admits* that the breach of contract claim is ripe: "Here, F&W has refused to pay, a fact which indisputably makes a declaratory action improper." FW's Motion to Dismiss Arbitration, p. 10. Under *Adkins*, declaratory relief was improper only in favor of a breach of contract action, not as a barrier to litigation of any kind. Although LLF does not necessarily agree with FW's characterization of the breach of contract claim as one for failure to pay (though FW has not paid any damages to date), it is undeniable that where a breach of contract has occurred in the past, a breach of contract claim is an appropriate remedy.

IV.   **Although Comprehensive Discovery Requirements Are No Defense To Breach Of Contract, FW Far Overstates The Discovery Required To Determine That FW Breached The Settlement Agreement And Ignores The Arbitrator's Power To Regulate Discovery.**

Initially it must be recognized that the necessity of discovery is no justification for dismissal of arbitration under JAMS or any other rules. Even so, FW has substantially overestimated the number of depositions required to determine the merits of this case based on LLF's current understanding of the facts. LLF does not anticipate a serious dispute as to whether the claimed breaches occurred or that FW participated in them. Of the nine witnesses FW has

8

proposed, the subject matter of the testimony FW believes to be required is only suggested as to Fred Klein. This Tribunal, and claimant, are left to guess what information FW believes the remaining witnesses can offer. Though testimony from some of these individuals might be required, it is unclear why so very many of FW's co-counsel in *Larson* would be required to testify. Absent a further explanation of what each person adds to the case, four depositions of FW's co-counsel in *Larsen*, appears unnecessarily duplicative.

More importantly, FW ignores the power of the arbitrator under JAMS rules to tailor discovery to the issues before the tribunal. Under JAMS rules, the parties are only allowed one deposition prior to seeking leave from the arbitrator. Beyond the initial deposition:

> [t]he necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness.

JAMS Comprehensive Arbitration Rules & Procedures, Rule 17(b). Under the JAMS rules the Arbitrator is empowered to balance the necessity of additional depositions against, among other things, the burden imposed by the requested depositions. As this matter continues and the issues before the tribunal become more clear (for example, after FW has responded to the merits of the demand), this tribunal is empowered to determine the appropriate scope of discovery.

## CONCLUSION

This claim was pleaded as a breach of contract, FW's Motion to Dismiss completely fails to provide any reason why it cannot proceed as such. Its arguments ignore the fact that the settlement agreement was breached by actions that occurred in the past, regardless of whether FW is allowed to keep the fees awarded in *Larson*. Claimant does not seek "one-third of the net fees awarded to counsel in *Larson*." Claimant seeks a finding of liability for FW's breach of contract, for which the *Larson* award may provide part of the calculation of damages.

9

Dated: May 17, 2010

Respectfully submitted,

THE LAKIN LAW FIRM, P.C.,

Claimant,

By: _____
    One of Their Attorneys

Charles W. Chapman
Robert J. Evola
LakinChapman, LLC
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095-0229
Phone: (618) 254-1127



FEB 02 2004

CLERK OF CIRCUIT COURT #8
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

JESSICA HALL, individually
and on behalf of others similarly situated,

                Plaintiff,

      v.

SPRINT SPECTRUM L.P. d/b/a SPRINT PCS
GROUP and SPRINTCOM, INC. d/b/a SPRINT
PCS GROUP,

            Defendants.

Case No. 04-L-

## CLASS ACTION COMPLAINT

Plaintiff, Jessica Hall ("Plaintiff"), individually and as the representative of a class of

similarly-situated persons, brings this action against Sprint Spectrum L.P. d/b/a Sprint PCS

Group and SprintCom, Inc. d/b/a Sprint PCS Group (collectively, "Sprint"), and alleges the

following upon information and belief, except for the allegations pertaining to Plaintiff or her

attorneys, which are based upon personal knowledge.

## INTRODUCTION

1.    Plaintiff and a nationwide class of Sprint customers bring this action against

Sprint for wrongfully imposing Early Cancellation Fees upon them.  This case does not

challenge the services Sprint provides, or the rates it charges for those services, but rather

challenges one of Sprint's other terms and conditions of service; namely, the $150.00 Early

Cancellation Fee Sprint imposes upon customers who cancel their agreement with Sprint early.

2.    Sprint offers Term Service Plans requiring customers to subscribe to Sprint's

cellular service for a fixed time period (the "Term").

3.    Whenever a Sprint customer cancels her agreement before the end of the Term,

                                                  Exhibit A

Sprint charges a $150.00 Early Cancellation Fee. Rather than determining its actual damage (if any) resulting from the cancellation, Sprint imposes this $150.00 charge to penalize the customer for canceling the contract.

4.      Sprint's $150.00 Early Cancellation Fee is not a reasonable estimate of any harm Sprint might suffer if a customer cancels her agreement before the end of its Term.

5.      Sprint's $150.00 Early Cancellation Fee is an unenforceable and uncollectible contract penalty, because (a) Sprint could easily ascertain the actual damage it would suffer if a customer cancelled her agreement with Sprint before the end of its Term; (b) the Early Cancellation Fee is not a reasonable estimate of any harm Sprint might suffer if a customer cancels her agreement before the end of its Term; and (c) Sprint threatens and imposes the Early Cancellation Fee as a means of forcing customers not to cancel their agreements, to rescind their cancellations, or to penalize them for canceling.

6.      Under the laws of Illinois and every other State where Sprint does business, Sprint's Early Cancellation Fee is an illegal and unenforceable penalty, which customers do not owe.

7.      Each time Sprint imposes such an unenforceable penalty, it breaches the terms of its agreements with the customers, because Sprint is obligated to charge customers only the amounts they actually owe.

8.      Sprint knows the Early Cancellation Fee is an unenforceable penalty, and that customers therefore do not owe it, but falsely claims that every customer who cancels her agreement with Sprint before the end of the Term owes the $150.00 charge.

9.      Sprint uses deceptive and unfair practices to collect Early Cancellation Fees.

10.     Sprint's Early Cancellation Fee unjustly enriches Sprint because Sprint collects

Exhibit A

2

and receives illegal monies—*i.e.*, unlawful Early Cancellation Fees—from canceling customers.

## PARTIES

11.     Plaintiff is a Madison County resident living at 2520 Parkview Drive, Apt. 11, Granite City, IL 62040.  At all relevant times, her Sprint customer number was 0136211652.

12.     SprintCom, Inc. is a Kansas corporation with its principal place of business in Kansas.  SprintCom, Inc. does business throughout Illinois, including in Madison County, as Sprint PCS Group.

13.     Sprint Spectrum L.P. is a limited partnership with its principal place of business in Missouri.  Sprint Spectrum L.P. does business throughout Illinois, including Madison County, as Sprint PCS Group.

## JURISDICTION AND VENUE

14.     Sprint is subject to jurisdiction in Illinois because it maintains stores and conducts business throughout the State.  Sprint has transacted business and made or performed contracts substantially connected with this State.

15.     Venue is proper in Madison County because Plaintiff resides in Madison County and because Sprint does business in Madison County.  Sprint is not a resident of Illinois.

16.     Sprint cannot remove this case to federal court because there is no basis for federal jurisdiction.  Plaintiff asserts no federal question and her individual claim is worth less than $75,000, inclusive of all damages and fees.  Plaintiff does not challenge Sprint's rates, its service qualities, or its market entry.  Plaintiff expressly disclaims any individual recovery in excess of $75,000.

## FACTS

17.     Sprint customers can choose a Term contract or a month-to-month contract.  Most Sprint customers choose a Term contract.

Exhibit A

3

18.     In the Terms and Conditions of Service, as posted on its website, Sprint provides:

**Termination. Term Service Plan.** EXCEPT AS PERMITTED BY THE AGREEMENT, IF YOU TERMINATE YOUR SERVICE PLAN BEFORE THE END OF THE TERM, OR IF WE TERMINATE SERVICES FOR CAUSE BEFORE THE END OF THE TERM, YOU WILL BE REQUIRED TO PAY THE EARLY TERMINATION FEE ASSOCIATED WITH YOUR TERM SERVICE PLAN. No early termination fee is charged if you terminate a Term Service Plan in accordance with the return policy associated with your Term Service Plan. After the expiration of the term, the Terms relating to Non-Term Service Plans apply.

*See* Exhibit A.

19.     Sprint imposes a $150.00 Early Cancellation Fee if a customer cancels her agreement with Sprint before the end of the Term.

20.     Sprint authored all of the written terms for its cellular service, including those contained in its Terms and Conditions of Service. Sprint customers are not allowed to individually negotiate the terms of their cellular service.

21.     In June 2003, Plaintiff entered into a cellular telephone service contract with Sprint.

22.     A true and correct copy of Plaintiff's one-page "Sprint PCS One Year Advantage Agreement" is attached as Exhibit B.

23.     Plaintiff's account included two cellular telephone numbers.

24.     The Advantage Agreement incorporates Sprint's Terms and Conditions (Exhibit A) by reference.

25.     Pursuant to the parties' contract, Sprint agreed to provide, and Plaintiff agreed to purchase, cellular service for a one-year Term.

26.     The parties' contract provided that Sprint would charge Plaintiff a $150.00 Early

Exhibit A

4

Cancellation Fee if she canceled early.

27.    Thereafter, Sprint sent Plaintiff monthly bills on which it itemized the charges she owed for Sprint's cellular service.

28.    Plaintiff paid the charges Sprint itemized on its monthly bills.

29.    In September or October 2003, Plaintiff decided to cancel her Sprint contract.

30.    In October or November, Plaintiff called Sprint to cancel her contract, but Sprint refused to cancel Plaintiff's service unless and until she paid the remaining balance on her account, and paid the Early Cancellation Fee.

31.    In early December 2003, at the Sprint PCS store in Fairview Heights, Illinois, Plaintiff paid Sprint the entire amount ($415.61) it claimed she owed on one of her two telephone numbers, including the Early Cancellation Fee.  Plaintiff paid this amount under protest.

32.    Plaintiff repeatedly protested her obligation to pay the Early Cancellation Fee. Sprint refused to cancel her account, however, and refused to stop assessing further charges against her unless and until Plaintiff paid the Early Cancellation Fee.  Plaintiff believed that Sprint would damage her credit rating if she refused to pay.  Paying the Early Cancellation Fee prevented Plaintiff from suffering further damage.  Plaintiff paid the amount under protest.

33.    Plaintiff also wishes to cancel her second telephone number, but cannot currently afford to pay the Early Cancellation Fee.  Even though the Early Cancellation Fee is an unlawful penalty, Sprint refuses to cancel the account and stop the accrual of charges unless and until Plaintiff pays the Early Cancellation Fee to end the second telephone number.

34.    At the time it imposed the $150.00 Early Cancellation Fee, Sprint could have easily ascertained the actual damages, if any, it incurred because Plaintiff cancelled her contract.

Exhibit A

5

35.    At the time it imposed the $150.00 Early Cancellation Fee, Sprint knew $150.00 was not a reasonable estimate of its harm, if any, caused by Plaintiff canceling the agreement.

36.    Sprint's actual damage, if any, because Plaintiff cancelled her agreement was less than $150.00.

37.    Sprint's purpose for imposing the $150.00 Early Cancellation Fee was to force Plaintiff's performance of the cellular service contract. Sprint intended to prevent Plaintiff from canceling, to force Plaintiff into rescinding her cancellation, or to penalize her for canceling the agreement.

38.    Sprint's Early Cancellation Fee penalty violates Illinois public policy and the public policy of the other States and, therefore, it is void and unenforceable.

39.    Because Sprint knows its Early Cancellation Fee is unlawful and violates public policy, Sprint cannot rely on its ability to use the Early Cancellation Fees it forces customers to pay without risking a subsequent demand for return of the payments.

40.    Sprint's Early Cancellation Fee is not prorated or adjusted, based on when the customer cancels. Rather, Sprint charges every customer who cancels early a $150.00 Early Cancellation Fee. A customer who terminates on the 23rd month of a 24-month contract is treated the same as the one who walks away after a month of service.

41.    Sprint breached its contractual obligations to Plaintiff by charging and forcing her to pay an unenforceable and illegal contract penalty. Sprint committed statutory fraud by claiming she was required to pay an Early Cancellation Fee for canceling the agreement and by failing to tell her she did not owe that unenforceable penalty.

42.    This case is not limited to Sprint's breach of its contract with Plaintiff, however, because Sprint routinely and systematically breached the same contractual obligations to other

Exhibit A

6

customers who cancelled their agreements with Sprint before the end of their Terms.

43.    Also, this case is not limited to Sprint's misrepresentations and omissions to Plaintiff, because Sprint routinely and systematically makes the same misrepresentations and omissions to every other customer who cancels her agreement before the end of its Term.

44.    To further its scheme, Sprint surreptitiously inserted an "arbitration clause" into its contract so that in those instances where it has a dispute with a customer, Sprint can demand that the customer submit to binding "arbitration" of the dispute.  The arbitration clause only works one way, as Sprint reserves for itself the right to use collection agencies to collected disputed amounts and to bring claims for non-payment of cellular bills in court proceedings and collect "costs and expenses of collection, including attorneys' fees and expenses, the fees of any collection agency and court costs."  The arbitration clause purports to require the customer to invoke arbitration by the CPR Institute for Dispute Resolution under its Rules and expedited procedures, and to: (a) select an arbitrator who will be paid by the customer; (b) pay the cost of her own experts, who will be needed to attest to the fact that Sprint's conduct constitutes fraud and breach of contract; and (c) pay the cost of her own attorney, or go through the arbitration process without an attorney.  Since the amount of Plaintiff's and each class member's individual claims regarding Sprint's "Early Cancellation Fee" is on average less than $150.00, it would be difficult if not impossible for them to pursue the arbitration because they would have to spend more in arbitration-related costs than the disputed claim amount.  Sprint knew when it added the arbitration clause to it form agreement, as part of its fraudulent scheme, that all customers would be in the same situation as Plaintiff, and, therefore, intended that they would forgo their claims rather than pursue arbitration. Indeed, pursuant to the scheme, the disputed amount is always worth less than the customer's cost of pursuing arbitration.  As designed, the arbitration clause

Exhibit A

7

prevents plaintiff and the class from effectively vindicating their statutory and common law causes of action.

45.    Most Sprint customers do not cancel early.

## CLASS ALLEGATIONS

46.    Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action on behalf of the following class of persons:

> All persons who were charged a Sprint Early Cancellation Fee because they cancelled their cellular or wireless agreement before the end of its Term.

47.    A class action is proper in that:

a.    On information and belief, the class consists of thousands of persons residing throughout Illinois and other States and, thus, is so numerous that joinder of all members is impracticable;

b.    There are questions of fact or law common to the class that predominate over questions affecting only individual class members, including whether Sprint breached contractual obligations, whether Sprint is liable for statutory fraud for its misrepresentations, whether Sprint has been unjustly enriched, whether the class should gain relief from Sprint's unlawful penalty, and whether Plaintiff and the other members of the class were damaged;

c.    Plaintiff will fairly and adequately protect the interests of the class. She does not have any interests adverse to the class. She has retained counsel to represent her in this action who are experienced in class action litigation; and

d.    A class action is an appropriate method for the fair and efficient resolution of this controversy.

## COUNT I – BREACH OF CONTRACT

48.    Plaintiff repeats and re-alleges the preceding paragraphs as if alleged herein.

49.    Plaintiff and the other class members entered into valid and enforceable contracts with Sprint for a fixed time period (the "Term"). The terms and conditions of the contracts are substantively identical.

Exhibit A

50. Sprint was obligated under the contracts to charge Plaintiff and the other class members only for the charges they actually owed.

51. Plaintiff and the other class members cancelled their agreements before the end of their Terms.

52. Sprint charged Plaintiff and the other class members an Early Cancellation Fee for canceling their agreements with Sprint.

53. Sprint breached its contracts with Plaintiff and the other class members by imposing the Early Cancellation Fee upon them, because the Early Cancellation Fee was an unenforceable penalty the class did not owe.

54. Sprint's breaches of contract damaged Plaintiff and the other class members, because they paid money they otherwise would not have had to pay.

WHEREFORE, plaintiff Jessica Hall, individually and as the representative of a class of similarly-situated persons, prays for judgment in her favor and against Sprint as follows:

a.  That the Court find this case may be properly maintained as a class action, that the Court appoint Jessica Hall as the class representative, and that the Court appoint The Lakin Law Firm, P.C., Freed & Weiss LLC and Diab & Bock as class counsel; and

b.  That the Court award damages to Jessica Hall and the other members of the class but not to exceed $75,000 per class member.

## COUNT II – STATUTORY FRAUD

55. Plaintiff repeats and re-alleges the preceding paragraphs as if alleged herein.

56. Plaintiff brings Count II on behalf of the class pursuant to the Illinois Consumer Fraud Act and the substantially similar consumer protection statutes of the other States where Sprint does business.[1]

---

[1] The claims of Illinois class members (such as Plaintiff) are brought under the Illinois Consumer Fraud Act. The claims of non-Illinois class members are brought under the consumer protection statute(s) of their respective Exhibit A

57.     Sprint regularly and systematically imposes an Early Cancellation Fee on every customer, including Plaintiff and every other class member, who cancels their agreement with Sprint before the end of its Term.

58.     Sprint's Early Cancellation Fees are unlawful penalties because:  (a) they are wholly disproportionate to the harm early cancellation causes Sprint; (b) they are not based on a bona fide estimate of the likely damages Sprint incurs from early cancellation; and (c) the damage Sprint may incur as a result of early cancellation is not difficult to ascertain.

59.     Sprint knows its Early Cancellation Fee is an unenforceable penalty and, therefore, that customers do not owe it.

60.     Sprint uniformly represented to Plaintiff and the other class members that they owed the $150.00 Early Cancellation Fee.

61.     Sprint engaged in deceptive acts and practices by misrepresenting that Plaintiff and the other class members owed an Early Cancellation Fee.

states.  *See* Ala. Code § 8-19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Fla. Stat. Ann. § 501.201 *et seq.* (Florida); Ga. Code Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); Kan. Stat. Ann § 50-623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.110 *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.*, Md. Com. Law Code Ann. § 13-301 *et seq.*, Md. Com. Law Code Ann. § 13-408 *et seq.* (Maryland); Mass Gen. L. ch. 93A, § 1  *et seq.* (Massachusetts); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et seq.*, Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.* (Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30-14-101 *et seq.* (Montana); Neb. Rev. Stat. § 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.H. Rev. Stat. Ann. § 358-A:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1 *et seq.* (New Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); N. D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.* (Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.* (Oregon); Penn. Stat. § 201-1 *et seq.* (Pennsylvania); R.I. Gen. Laws § 6-13.1-1 *et seq.* (Rhode Island); S.C. Code Ann. § 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. § 37-24-1 *et seq.* (South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code § 19.86.010 *et seq.* (Washington); W. Va. Code § 46A-6-101 *et seq.* (West Virginia); and Wyo. Stat. § 40-12-101 *et seq.* (Wyoming) Exhibit A

62.     Sprint engaged in deceptive acts and practices by failing to tell Plaintiff and the other class members that they did not really owe the Early Cancellation Fee.

63.     Sprint intended that Plaintiff and the other class members would rely on its misrepresentations and omissions.

64.     Sprint intended that, by telling them they owed an Early Cancellation Fee, Plaintiff and the other class members would believe they were required to pay it.

65.     Sprint intended that, by failing to tell them they did not owe an Early Cancellation Fee, Plaintiff and the other class members would believe they were required to pay it.

66.     Sprint's misrepresentations and omissions occurred in the course of conduct involving trade or commerce.

67.     Sprint's misrepresentations and omissions were material because, if they had known the Early Cancellation Fee was an unenforceable penalty Sprint was not authorized to charge and they did not owe, Plaintiff and the other class members would not have paid it.

68.     Sprint's misrepresentations and omissions injured Plaintiff and the other class members because they paid money they otherwise would not have paid.

69.     Sprint's practice of forcing customers to pay Early Cancellation Fees is unfair.

70.     Unlawful penalties violate public policy in Illinois and all other States, and are void and unenforceable.

71.     Sprint's Early Cancellation Fee offends public policy, it is oppressive and unscrupulous, and it causes substantial injury to consumers.

72.     Sprint's unfair practice damaged consumers by extracting illegal penalties from them.

73.     Any Sprint customer who refused to pay the Early Cancellation Fee was

Exhibit A

11

subsequently harassed for payment by Sprint and its collection agencies, and Sprint reported the invalid debt for the Early Cancellation Fee against their credit ratings.

WHEREFORE, plaintiff Jessica Hall, individually and as the representative of a class of similarly-situated persons, prays for judgment in her favor and against Sprint as follows:

a.   That the Court find this case may be properly maintained as a class action, that the Court appoint Jessica Hall as the class representative, and that the Court appoint The Lakin Law Firm, P.C., Freed & Weiss LLC and Diab & Bock as class counsel;

b.   That the Court award damages to Jessica Hall and the other members of the class; and

c.   That the Court award such other and further relief as the Court may deem just and appropriate.

## COUNT III – ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT

74.   Plaintiff repeats and re-alleges the preceding paragraphs as if alleged herein.

75.   Sprint required Plaintiff and the other class members to pay Early Cancellation Fees.

76.   Sprint's Early Cancellation Fees are unlawful penalties in Illinois and every other State because: (a) they are wholly disproportionate to the harm early cancellation causes Sprint; (b) they are not based on a bona fide estimate of the likely damages Sprint incurs from early cancellation; and (c) the damage Sprint may incur as a result of early cancellation is not difficult to ascertain.

77.   At the time it collected Early Cancellation Fees from Plaintiff and the other class members, Sprint knew its Early Cancellation Fee was a penalty and knew penalties are illegal and unenforceable.

78.   Sprint collected the Early Cancellation Fees by misrepresenting that Plaintiff and the other class members owed them.

Exhibit A

79.    Sprint unjustly retained those Early Cancellation Fees.

80.    Sprint retained the Early Cancellation Fees to the detriment of Plaintiff and the other class members.

81.    Sprint's retention of illegal penalties—namely, the Early Cancellation Fees—violates fundamental principles of justice, equity, and good conscience.

82.    It would be inequitable for Sprint to keep the illegal Early Cancellation Fees rather than returning them.

WHEREFORE, plaintiff Jessica Hall, individually and as the representative of a class of similarly-situated persons, prays for judgment in her favor and against Sprint as follows:

a.    That the Court find this case may be properly maintained as a class action, that the Court appoint Jessica Hall as the class representative, and that the Court appoint The Lakin Law Firm, P.C., Freed & Weiss LLC and Diab & Bock as class counsel; and

b.    That the Court award damages to Jessica Hall and the other members of the class but not to exceed $75,000 per class member.

## COUNT IV – RELIEF FROM UNLAWFUL PENALTIES

83.    Plaintiff repeats and re-alleges the preceding paragraphs as if alleged herein.

84.    Plaintiff and the other class members breached their Term contracts with Sprint by canceling early before the end of the Term.

85.    Sprint charged each of them an Early Cancellation Fee to prevent them from canceling or to penalize their early cancellation.

86.    Sprint's Early Cancellation Fees are unlawful penalties in Illinois and every other State because:  (a) they are wholly disproportionate to the harm early cancellation causes Sprint; (b) they are not based on a bona fide estimate of the likely damages Sprint incurs from early cancellation; and (c) the damage Sprint may incur as a result of early cancellation is not difficult

Exhibit A

13

to ascertain.

87.     Unlawful penalties violate public policy in Illinois and in the other States, and are void and unenforceable.

88.     Plaintiffs and the other class members are entitled to recover the unlawful penalties Sprint collected from them.

WHEREFORE, plaintiff Jessica Hall, individually and as the representative of a class of similarly-situated persons, prays for judgment in her favor and against Sprint as follows:

a.     That the Court find this case may be properly maintained as a class action, that the Court appoint Jessica Hall as the class representative, and that the Court appoint The Lakin Law Firm, P.C., Freed & Weiss LLC and Diab & Bock as class counsel; and

b.     That the Court award damages to Jessica Hall and the other members of the class but not to exceed $75,000 per class member.

Dated:  February 2, 2004.                    Respectfully submitted,

                                             **JESSICA HALL,**
                                             **Class Plaintiff,**

                                             By: _____
                                                  One of her Attorneys

Paul M. Weiss #6217260                       L. Thomas Lakin #1561464
Tod A. Lewis #6256282                        Bradley M. Lakin #6243318
**FREED & WEISS LLC**                        Richard J. Burke #6255504
111 West Washington Street, Suite 1331       Jeffrey A.J. Millar #6271673
Chicago, Illinois 60602                      Thomas G. Maag #6272640
Phone: (312) 220-0000                        **THE LAKIN LAW FIRM, P.C.**
                                             301 Evans Avenue, P.O. Box 27
                                             Wood River, Illinois  62095-1127
                                             Phone: (618) 254-1127

Malik R. Diab #6215969
Phillip A. Bock #6224502
**DIAB & BOCK**
444 N. Wells Street, Suite 301
Chicago, Illinois 60610                      **Attorneys for Plaintiff**
Phone: (312) 467-0004                        **and the Proposed Class**

                                                             Exhibit A

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

JESSICA HALL, individually
and on behalf of others similarly situated,

        Plaintiff,

        v.

SPRINT SPECTRUM L.P. d/b/a SPRINT PCS
GROUP and SPRINTCOM, INC. d/b/a SPRINT
PCS GROUP,

        Defendants.

Case No. 04-L-

## AFFIDAVIT OF RICHARD J. BURKE

This Affidavit is made pursuant to Supreme Court Rule 222(b).  Under penalties of perjury as provided by §1-109 of the Code of Civil Procedure, the undersigned certifies that money damages sought in the above-captioned putative class action herein will exceed $50,000.00.  Plaintiff asserts her individual claim is worth less than $75,000.00.  Plaintiff expressly disclaims any individual recovery in excess of $75,000.00, exclusive of costs and interest.

DATED:  February 2, 2004

Respectfully submitted,

RICHARD J. BURKE

By: _____
One of Plaintiff's Attorneys

Exhibit A

SPRINT PCS - Terms and Conditions

product cannot be shipped within 3 business days of your order, Sprint PCS will credit your credit card and cancel your order, unless you instruct us otherwise. If your credit card is rejected when Sprint PCS charges it, Sprint PCS is not obligated to ship any products or activate any service for your account. Sprint PCS will contact you by email or any other reasonable means to advise you of the situation and will request you to call Sprint PCS at 1-888-253-1315.

**Prices, Taxes and Shipping & Handling.** All prices are stated and payable in US dollars. The prices for products and services quoted on this Internet site do not include taxes.

Sprint charges all applicable taxes on products and Services.

Sprint does not charge shipping and handling on any order that includes a phone that is activated on the sprintpcs.com website. A shipping and handling charge will be applied to all other orders.

**Return Policy.** Sprint PCS products may be returned within 14 days of purchase for a refund of the purchase price (but not charges for wireless service). Note the return policy, including the number of days for return, may be changed without notice and the policy may not apply to certain products.

If you are not satisfied with your purchase of your Sprint PCS product, you may return it to Sprint PCS by calling 1-888-211-4PCS (4727) for a return kit. In order to obtain a full refund of the original purchase price of the Sprint PCS product, you must return the product at your expense in an undamaged condition and complete with all accessories that came with the product in the original box with all materials and package inserts within 14 days of your purchasing the handset. A copy of your receipt (which was enclosed when Sprint PCS shipped the products to you) must accompany the return.

Upon Sprint PCS' receipt of the returned product, Sprint PCS will credit your credit card account number used for the original purchase, and, in the case of a returned Sprint PCS Phone or pager, net of any outstanding balance on the account associated with the returned phone or pager.

Sprint PCS can not exchange products through the Internet site, rather the user should return the product for a refund within the appropriate time period and purchase a new product over the Internet site.

Top of page

## 9. Terms and Conditions of Services

Effective as of June 1, 2003 until replaced

Thanks for choosing Sprint. These terms and conditions are part of your agreement with Sprint for PCS Services.

The terms and conditions included with your PCS Phone may not be the most current version. For the most current version of the terms and conditions, please visit our website at www.sprintpcs.com or call PCS Customer Service Solutions at 1-888-211-4PCS. If you activated PCS Services before the effective date of these terms and conditions, these terms and conditions replace and supersede any previous terms and conditions.

If you have questions about your PCS Services, please visit our website at www.sprintpcs.com or call PCS Customer Service Solutions at 1-888-211-4PCS (4727).

Para solicitar esta literatura en español, por favor contactar a 1-888-211-4PCS (4727).

**Agreement.** Your agreement ("Agreement") with Sprint Spectrum L.P. and any of its affiliates doing business as Sprint providing PCS Services ("Services") to you is made up of these Terms and Conditions of Service ("Terms") and the Service Plan that we agree to provide you. Your "Service Plan" is described in our marketing



EXHIBIT

A

Exhibit A

materials, and includes the terms, rates and features we set for that Service Plan. In the Agreement, we use the words "we," "us," "our" or "Sprint" to refer to Sprint Spectrum L.P. and its affiliates doing business as Sprint. You accept the Agreement when you activate PCS Services or make any attempt to use our PCS Services (for example, attempting to place any call while on or roaming off the Sprint Nationwide PCS Network, using data services, etc.). We may change the Agreement at any time by giving you prior notice. Any changes to the Agreement are effective when we publish them. If you use our Services or make any payment to us on or after the effective date of the changes, you accept the changes. If we change a material term of the Agreement and that change has a material adverse effect on you, you may terminate the Agreement without an early termination fee by calling 1-888-211-4727 within 30 days after the invoice date of the first invoice your receive after the changes go into effect. You understand and agree that taxes, Universal Service fees and other charges imposed by the government or based on government calculations may increase or decrease on a monthly basis, and that this paragraph does not apply to any increases in such taxes, Universal Service fees and other charges.

**Provision of Service.** Your purchase of a PCS Phone or other equipment does not mean that we must provide Services to you. We may decide not to provide Services to you for any lawful reason. We may request that you provide us with any information we reasonably require to determine whether you qualify for Services. Services in some areas are managed and provided under contract with Sprint by independent affiliates with access to the Sprint Nationwide PCS Network. Some Services may not be available or may operate differently in certain affiliate markets or other areas.

**Credit Verification.** You must have and maintain satisfactory credit to receive and continue to receive Services. We will verify your credit before agreeing to provide Services to you and we may verify your credit at any time while we provide Services to you. Credit verification may include a review of credit reports that we receive from credit bureaus. If at any time we determine, in our sole discretion, that payment for Services may not be made when due, we may suspend Services and require that you provide payment on account or a guarantee of payment before we resume Services.

**Service Plan.** You may be eligible for a fixed length PCS Service Plan ("Term Service Plan") or for a month-to-month Service Plan ("Non-Term Service Plan"). We determine the Service Plan for which you qualify. Except as permitted by the Agreement, you must maintain service with us on your Term Service Plan for the minimum term associated with that Term Service Plan. We may offer non-identical Service Plans to different individuals or entities. Services and coverage under some Service Plans may be more limited than available under other Service Plans. Your Service Plan sets out the charges for Services and is your Service Plan until that Service Plan is changed, you switch to a different Service Plan, or your Services terminate. Based on your credit rating or other factors, we may require that you make a deposit, prepayment, or a series of deposits or prepayments, or be subject to an account spending limit, before Services are activated or maintained.

**Changing Service Plans.** If you are on a Non-Term Service Plan, you may change to a different Service Plan for which you qualify. Any change is effective at the start of your next full invoicing cycle unless otherwise specified by us at the time that you place your change order. If you change or add a different Service Plan or service feature and the change is effective prior to the start of your next full invoicing cycle, you will be invoiced a prorated amount. We may require a service charge for implementing any change directed by you in addition to the charges associated with the Service Plan or optional service features you select. If you are on a Term Service Plan and you want to change your service plan, you may be required to accept a new Term Service Plan and we may require you to pay the early termination fee set out in your Service Plan or other fee.

**Termination. Non-Term Service Plan.** If you are on a Non-Term Service Plan, you may terminate Services at any time by giving us notice. Subject to the terms of this Agreement, we may terminate Services at any time, with or without notice. If your Service has been suspended due to non-payment, you may be charged a reactivation fee. We may deactivate any Number before you receive notice of termination without liability to you. Termination by either of us may be with or without cause.

**Termination. Term Service Plan.** EXCEPT AS PERMITTED BY THE AGREEMENT, IF YOU TERMINATE YOUR TERM SERVICE PLAN BEFORE THE END OF THE TERM, OR IF WE TERMINATE SERVICES FOR CAUSE BEFORE THE END OF THE TERM, YOU WILL

Exhibit A

SPRINT PCS - Terms and Conditions

BE REQUIRED TO PAY THE EARLY TERMINATION FEE ASSOCIATED WITH YOUR TERM SERVICE PLAN. No early termination fee is charged if you terminate a Term Service Plan in accordance with the return policy associated with your Term Service Plan. After the expiration of the term, the Terms relating to Non-Term Service Plans apply.

**Termination. General.** Regardless of whether you have a Non-Term or a Term Service Plan, we may terminate or suspend Services to you without liability if: (1) you breach any provision of this Agreement (including if you fail to pay any charges for Services); or (2) you fail to pay any charges due us for equipment or otherwise. If Services are terminated before the end of your current invoicing cycle, we will not prorate the monthly recurring charge to the date of termination, and you will not receive a credit or refund for any unused minutes in your Service Plan.

**Use of Services and Equipment; Availability.** You must be at least 18 years old to subscribe to our Services. We may require you to provide proof of your age and identity. If you are under 18 years old, you may be eligible for certain Services that have Account Spending Limits if a person 18 years or older is also named as a subscriber on the Account. Your PCS Phone will not accept the services of any wireless provider other than Sprint (but see Roaming). Services and equipment may not be used for any unlawful, fraudulent or abusive purpose. By requesting Services, you agree that you will not use Services and equipment in any unlawful, fraudulent or abusive manner. You may not resell or lease Services or equipment to anyone.

**Coverage.** Most services are only available within the operating range of the Sprint Nationwide PCS Network(also see Roaming). Coverage is not available everywhere. Coverage and quality of Services may be affected by conditions within or beyond our control, including network problems, signal strength, your equipment, and atmospheric, geographic, or topographic conditions. We do not guarantee service availability or that there will be no interruptions or delays in Services (e.g., dropped calls, blocked calls, etc.).

**Number.** We assign a phone number ("Number") to the phone or other equipment used by you on the Sprint Nationwide PCS Network. We may change the Number without compensation by giving you prior notice. You do not own the Number. You may not modify the Number we program into any phone or other equipment, transfer or duplicate the Number to any phone or other equipment other than that authorized by us, or transfer the Number to any other individual or entity.

**Phone Activation Fee.** You may be required to pay a non-refundable phone activation fee when you activate a new Number, have us switch a Number to a different phone, have your current Number changed, we activate a different phone on your existing account or your Service Plan says so.

**Charges.** For most forms of wireless Service, your usage will be charged from the time you first initiate contact between your phone or other wireless device and the network until the network connection is broken, whether or not you are successful in connecting with the service with which you seek to connect, even if the connection is later broken or dropped. An exception is that you are not charged for voice calls that are not completed. You are charged for completed calls to your Number from the time shortly before the phone starts ringing until the call is terminated. You will be charged peak rates for the entire duration of calls initiated during the peak time periods applicable to your Service. You will be charged off-peak rates for the entire duration of calls initiated during the off-peak time periods applicable to your Service. In addition to these usage charges, you may be charged for recurring monthly service charges, applicable local and long-distance toll charges, other usage charges (including voicemail access, call waiting, call forwarding, etc.), connection fees, roaming charges, directory assistance, call completion charges, account review and management charges, optional features you select at an extra cost, surcharges related to government programs, and taxes. Charges for most Services are incurred in one-minute increments, with partial minutes of use rounded up to the next highest minute. You must pay, by each invoice due date, all charges for Services provided to the Number for each phone or other equipment that our records show you activated, no matter who actually uses or has possession of the phone or other equipment at the time Services are provided.

**PCS Vision (Third Generation) Wireless Charges.** For PCS Vision wireless services, you will be charged on a per kilobyte basis for data used, whether sent or received by your PCS Phone or other wireless device, rather than for airtime used, even for certain third generation voice services. As long as your PCS Phone or other wireless device is connected to the enhanced Third Generation Sprint Nationwide PCS

Exhibit A

SPRINT PCS - Terms and Conditions

Network ("PCS Vision network"), you will be incurring data usage charges. You cannot receive incoming calls while using third generation services. Data usage will be measured in kilobytes and will be rounded up to the next whole kilobyte. Kilobyte usage will be rounded up to the next full cent. Rounding up will occur at the end of each separate session or each clock hour (at the top of each hour), if the session spans more than 1 clock hour. When traveling on our PCS Vision network, a session may be ended and new session initiated, although no interruption to the actual data session will occur. The amount of data used and charged to you will vary widely, depending upon the specific PCS Vision wireless application or other service you use, the amount of data used in the specific application or service, and network congestion. You will be charged for data exchanges initiated by other Internet users as well as those you initiate. Estimates of data usage, for example, the size of downloadable files, will vary from what you actually use. You will be charged for additional data used in transporting and routing on the network. If you use a Premium Service (including services provided by third parties but for which you are billed on your PCS invoice), you will be charged for data used in transport and routing in addition to the charge for the Premium Service. You will be charged for partial and interrupted data downloads or other use, including re-sent data, and for unsuccessful attempts to reach websites and use other applications and services, including those resulting from dropped network connections. Your invoice will not separately identify the number of kilobytes attributable to your use of specific sites, sessions or services used.

**PCS Vision Premium Services.** Your PCS Vision wireless services may allow you to access or download premium content for an additional charge. Certain PCS Vision services (e.g., games, ringers and screen savers) primarily contain premium services content. Access to and downloading of premium content is not included with PCS Vision services. The additional charges for this premium content will be billed to you on your PCS invoice. You will be charged for this content (at rates and charges specified at the time of access or download) that will be in addition to data usage charges you will incur while connected to the enhanced PCS Vision network. We provide no warranties and make no representations or claims with regard to third-party Premium Services. In certain instances, subject to the terms of the content purchased, we may delete premium and non-premium items downloaded to available storage areas (e.g., your vault), including any pictures, games and other content. We may limit the amount of Premium Services you may purchase in a specific timeframe (month, week, day, or other time period). We may suspend your use of Premium Services without prior consent or notice if we have reason to suspect fraudulent or unauthorized use of your Premium Services account, but we make no assurances that we will suspend your account.

**Other Terms Applicable to PCS Vision Wireless Usage.** Use of PCS Vision wireless services requires the purchase of a separate third generation wireless compatible phone or other device and is subject to any software, memory, storage or other limitation in the phone or other equipment. Not all applications and services work, or work the same, on all third generation wireless phones and devices. Check the materials accompanying your phone or device to determine which applications and services it will support. PCS Vision wireless services are not available while off the PCS Vision network.

Sprint is not responsible for any opinions, advice, statements, services applications or other information provided by third parties and accessible through PCS Vision wireless services. Neither Sprint nor its vendors or licensors guarantees the accuracy, completeness or usefulness of information that is obtained through the PCS Vision wireless services. You are responsible for evaluating such content. Use of certain PCS Vision wireless services, including some messaging services, may result in the disclosure to others of your email address and other information about you in connection with your Internet usage. Your accessing of, or use of, third party sites or services accessible PCS Vision wireless services may require the disclosure of information about you, subject to the policies of those sites and services. You consent to receiving advertising, warnings, alerts and other messages, including broadcast messages. Your access to PCS Vision wireless services is controlled by a password.

**Voice Command.** PCS Voice Command is an optional service that allows you to place calls by using speech recognition technology. Calls to 911 or similar emergency numbers cannot be placed through the Voice Command feature. Airtime and applicable long distance charges for a call completed from your Number using the Voice Command feature begin when you press or activate the TALK or similar key(s) and when your call is terminated by hitting the END key or by returning to the Voice Command platform. If you initiate and complete another call without leaving the Voice Command platform, a separate charge for that call will begin from

Exhibit A

SPRINT PCS - Terms and Conditions                                    Page 11 of 20

the time the previous call was terminated. Airtime and applicable long distance
charges will be applied to the entire length of a completed call initiated from Voice
Command. Using Directory Assistance to input names into your Voice Command
address book will incur additional charges.

**Invoicing.** Invoicing cycles are approximately 30 days in length. Invoicing cycles
and dates may change from time to time. Except as otherwise provided in your
Service Plan, monthly recurring charges (MRCs) are invoiced one invoicing cycle in
advance. Charges for Services are usually invoiced as soon as possible after the
charges accrue. We may, however, invoice you for usage and charges occurring
before the invoicing cycle being invoiced, if they were not previously invoiced. If you
are invoiced for usage incurred during a prior invoicing cycle, those minutes will be
applied to your Service Plan minutes for the current invoicing cycle. However, if you
change your PCS Service Plan between the time the usage was incurred and the
beginning of the current invoicing cycle, those minutes from the prior invoicing cycle
will be charged at the rate per minute for usage over included minutes provided in
the Service Plan in effect at the time the usage was incurred.

**Payment.** If you have authorized payment for Services or equipment by credit card
or by debiting a bank account, no additional notice or consent is required before we
invoice the credit card or debit the bank account for all amounts due to us or billed
by us on behalf of a third party. You must promptly notify us of any change in your
invoicing address or of the credit card or bank account used for payment. We
reserve the right to require payment by money order, cashier's check or other
secured form of payment. If we take action to receive payment beyond invoicing you
for charges for Services or equipment, you must pay our costs and expenses of
collection, including attorneys' fees and expenses, the fees of any collection agency
and court costs. If we act as an invoicing agent for a third-party service provider,
payments received are first applied to amounts due and owing to us and any
remaining amounts are applied to sums due and owing to the third-party service
provider. We may immediately charge an additional fee or any check or other
negotiable instrument endorsed by you and returned unpaid by a financial institution
for any reason. You may be charged fees for certain methods of payment.

**Late Payment Charges.** Payment is past due if we do not receive it by the due
date shown on your invoice. Any payment for Services and equipment not made
when due accrues late charges until paid at the rate of 5% per month or at the
highest rate allowed by law. Acceptance of late or partial payments (even if marked
"paid in full") does not waive our right to collect all amounts that you owe us. If your
Service has been suspended due to non-payment, you may be charged a
reactivation fee.

**Disputed Charges.** You must raise any dispute that you have about any charges
invoiced to you within 15 days of the date of the invoice or you have accepted the
invoice. You may notify us of any dispute by notifying PCS Customer Service
Solutions. Calls to our sales or general business offices are not notice of a dispute. If
disputed invoice procedures are described on the invoice, you must follow them.

**Account Spending Limit.** If we agree to provide Services to you on an Account
Spending Limit basis, we will tell you your Account Spending Limit before we start
Services to your Number, or as reasonably practicable after the limit is imposed. If
we require a deposit for you to establish or keep Services on an Account Spending
Limit basis, we will hold the deposit as partial guarantee of payment for Services
(see Deposits). Charges for Services accrue against your Account Spending Limit as
they are incurred. We may charge an initial ASL start up fee. We may charge a
monthly ASL service fee, in addition to your recurring monthly service charge. We
may suspend Services to your Number without prior notice to you when your
account balance reaches your Account Spending Limit. Services are restored when
you have paid any past due balance and pay a specified minimum amount to reduce
your account balance below your Account Spending Limit. We may change this
minimum amount at any time upon notice to you. You may pay any past due
balance and the minimum amount by any method authorized by Sprint. Contact PCS
Customer Service Solutions for information about authorized methods of making
these payments. We may charge you a fee for calls that involve our live customer
care services. If we provide Services to you on an Account Spending Limit basis,
Services and coverage may be limited in certain ways. You must pay all charges for
Services even if they exceed the amount of your Account Spending Limit.

**Clear Pay.** If we agree to provide Services to you as a Clear Pay customer, we may
suspend Services to your Number without prior notice to you immediately when your
bill becomes past due. Even if your bill is not past due, we may suspend services if

Exhibit A

SPRINT PCS – Terms and Conditions

your unpaid usage exceeds $125 or another amount to be determined by your past credit or usage history. If we require a deposit for you to establish or keep Services as a Clear Pay customer, we will hold the deposit as partial guarantee of payment for Services (see Deposits, below). Contact PCS Customer Service Solutions for information about authorized methods of making these payments. We may charge you a fee for calls that involve our live customer care services. If we provide Services to you on as a Clear Pay basis, Services and coverage may be limited in certain ways. You must pay all charges for Services whether or not your Services are suspended or terminated.

**Deposits.** If we require a deposit for you to establish or keep Services, we will hold the deposit as partial guarantee of payment for Services. We may change the deposit amount at any time to reflect revised estimated monthly charges based upon your usage. A deposit may not be used to pay any invoice (unless it is used to pay a final invoice) or delay payment. The deposit amount, the length of time we hold the deposit and changes to the deposit amount are determined based on your credit and payment history. The rate of interest, if any, on the deposit is subject to change. We may mix deposits with our other funds. If Services are terminated for any reason, we may, without notice to you, apply your deposit toward payment of outstanding charges and return any excess to you at your last known address within 75 days after termination of Services. If the U.S. Postal Service cannot deliver the money to you and returns it to us, we will hold it for you for one year from the date of return and, during that period, we may charge a servicing fee against the deposit balance. Any money held during this one-year period will not accrue interest for your benefit. You forfeit any portion of the money left after the one-year period.

**Wireless Web and Voice Portal Services.** Wireless Web Services are part of the Services that can be obtained through Sprint. Wireless Web Services are not available in all markets or while roaming off the Sprint Nationwide PCS Network. Use of Wireless Web Services requires an Internet-ready PCS Phone or certain other equipment (or both) and is subject to any memory, storage or other limitation in the phone or other equipment. Wireless Web Services are not available on PCS Vision phones or devices. The Caller ID blocking feature is not available when using Wireless Web Services. Any use of Wireless Web Services deducts from your Service Plan minutes. For data calls (including Wireless Web and Voice Portal calls) that are attempted, but not completed, you are charged for the time during which the network attempts to connect the call. You are charged for time spent connected to the Wireless Web or Voice Portal, including time spent browsing on the Internet or Voice Portal and reviewing or scrolling through Internet information on-line while still connected to the Sprint Nationwide PCS Network. Not all Internet sites can be accessed and if you receive an error message or if you attempt to access a site that cannot be accessed through Wireless Web Services. You are also charged for Wireless Web connections to review your PCS account information. Wireless Web Services are not available with all Service Plans. Sprint is not responsible for any opinions, advice, statements, services or other information provided by third-parties and accessible through Wireless Web Services Voice Portal Services. Neither Sprint nor its vendors or licensors guarantees the accuracy, completeness or usefulness of information that is obtained through the Wireless Web Services or Voice Portal Services. You are responsible for evaluating such content.

**Taxes and Surcharges.** We invoice you for taxes, fees and other charges levied by or remitted directly to federal, state or local authorities, or foreign government on Services including, without limitation, sales, gross receipts, use, and excise taxes. If you claim any tax exemption, you must provide us with a valid tax-exempt document. Any tax exemption applies only from the date we receive a valid tax-exempt document.

We also invoice you for fees that we collect and remit to the government such as Universal Service, and for surcharges that we collect and keep to pay for the costs of complying with government mandates such as number pooling and portability, and Enhanced 911 service. These charges are neither taxes nor government imposed assessments.

**Roaming.** Calls made while off the Sprint Nationwide PCS Network are "roaming" calls. Your PCS Phone is specifically designed and engineered to work only on the Sprint Nationwide PCS Network. It works on another CDMA PCS provider's system only when a roaming agreement is in place between Sprint and the other providers. If your PCS Phone is a dual-mode-phone, it works on both a CDMA PCS provider's system (in addition to the Sprint Nationwide PCS Network) and a wireless analog telecommunications provider's system only when roaming agreements are in place between Sprint and the other providers. If we do not have a roaming agreement in place, you may be able to place roaming calls "manually" by using a valid credit

Exhibit A

card. If there is a gap or other interruption of coverage within a PCS coverage area that prevents connection with the Sprint Nationwide PCS Network and your dual-band phone is set to roam automatically when outside PCS coverage, you may incur roaming fees within a PCS coverage area. Certain features and services may not be available when roaming (including PCS Vision, voicemail, call waiting, call forwarding, etc.).

**Phones and Other Equipment.** Phones and other equipment may be purchased and returned as provided in the purchase documents. We are not the manufacturer of the phones or other equipment. The only warranties on the phones or other equipment are any limited warranties extended by the manufacturers. We have no liability in connection with the phones and other equipment or for the manufacturers' acts or omissions.

**Lost or Stolen Equipment.** If your phone or other equipment is lost or stolen, you must notify us by calling PCS Customer Service Solutions. You are responsible for all charges for Services provided to the Number for the lost or stolen equipment before you notify us of the loss or theft. We will deactivate Services to the Number upon notification to us of any loss or theft. You may be required to provide evidence of the loss or theft (for example, a police report or sworn statement). If the equipment is later found, we may require that you exchange it for another phone or other equipment before we reactivate Services (if we do reactivate Services), as well as require you to pay a reactivation fee. We will deactivate Services to any Number without prior notice to you if we suspect any unlawful or fraudulent use of the Number. You agree to cooperate reasonably with us in investigating suspected unlawful or fraudulent use.

**Messages.** You will incur airtime usage charges when accessing your voicemail from your PCS Phone. You may also incur charges in accessing text messages from your PCS Phone. You may access your voicemail without incurring airtime usage charges by checking your voicemail from a wireline phone. We may impose limits on the number of voicemail or text message that can be retained through your PCS account. Audible or visual indicators of text or voicemail messages, including mailbox icons on your PCS Phone, may not always provide an up to date indication of new messages. In certain instances, you may be required to manually reset or clear your mailbox indicator.

**Caller ID.** If you do not want people you call to receive the Number assigned to your phone, you must call PCS Customer Service Solutions for information about automatic Caller ID blocking. The Number assigned to your phone can be blocked on a per-call basis by dialing *67 + Destination Number + TALK (or similar key), but Caller ID delivery resumes on the next call you make. Caller ID display on incoming calls to your Number depends on receiving the information from the calling party.

**TTY Access.** A TTY (also known as TDD or Text Telephone) is a telecommunications device that allows people who are deaf or hard of hearing, or who have speech or language disabilities, to communicate by telephone. TTY doesn't work with all PCS Phones. If you have a PCS TTY-capable phone, it may not function effectively, or at all, when attempting 911 calls due to the equipment or software of the answering agency. Therefore, a TTY device should not be relied on for 911 calls.

**Pay-Per-Call Service.** We will not complete calls from your Number to 900, 976 and similar numbers for pay-per-call services.

**International Calling.** You may be limited in the international destinations that you can call with Services. You should contact PCS Customer Service Solutions for information about international destinations that you cannot call.

**Limitation of Liability.** Except as otherwise provided in this section, our sole liability to you for any loss or damage arising out of providing or failing to provide Services (including mistakes, omissions, interruptions, delays, errors, or defects) does not exceed (1) in cases related to a specific piece of equipment, the prorated MRC for Services to the piece of equipment during the affected period, or (2) in cases not related to a specific piece of equipment, the prorated MRCs for Services to you during the affected period. Neither we nor our vendors, suppliers or licensors are liable for any damage arising out of or in connection with:

   o  any act or omission of any telecommunications service or other service
      provider other than us;

Exhibit A

- o  any directory listing;
- o  any dropped calls or inability to place or receive calls;
- o  any interruption of Services, including interruptions caused by equipment or facilities failure or shortages, transmission limitations or system capacity limitations;
- o  traffic or other accidents, or any health-related claims allegedly arising from the use of Services, phones, equipment or accessories used in connection with the Services;
- o  the use of Wireless Web Services and PCS Vision applications and services, including the accuracy or reliability of any information obtained from the Internet using Wireless Web Services or from Voice Portal Services, PCS Vision wireless services or Internet services, content or applications not supported by Sprint PCS;
- o  any late or failed message delivery;
- o  any interruption or failure of 911 or E911 emergency services or identification of the Number, address or name associated with any person accessing or attempting to access emergency services from your phone;
- o  the installation or repair of any products or equipment by parties who are not our authorized employees or agents;
- o  events due to factors beyond our control, including acts of God (including, without limitation, weather-related phenomena, fire or earthquake), war, riot, strike, or orders of governmental authority;
- o  any act or omission of any third party or independent contractor that offers products or services in conjunction with or through the Services; or
- o  your negligent or intentional act or omission.

NO CONSEQUENTIAL OR OTHER DAMAGES. UNDER NO CIRCUMSTANCES ARE WE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES OF ANY NATURE WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH PROVIDING OR FAILING TO PROVIDE SERVICES, PHONES OR OTHER EQUIPMENT USED IN CONNECTION WITH THE SERVICES, INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF BUSINESS, OR COST OF REPLACEMENT PRODUCTS AND SERVICES. THIS SECTION SURVIVES TERMINATION OF THIS AGREEMENT.

**Indemnification.** You indemnify and defend us, our partners, directors, officers, employees and agents from and against any claim, action, damage, liability and expense arising out of or in connection with: (1) your acts or omissions that occur in connection with your use of the Services or equipment used in connection with the Services, and (2) any communications you make or receive using the Services. This indemnification extends to and includes any attorney's fees and costs incurred by us arising from any actions or claims to which this indemnification applies, or from the contesting of the applicability of this provision. This section survives termination of this Agreement.

**MANDATORY ARBITRATION OF DISPUTES.** ANY CLAIM, CONTROVERSY OR DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY AND/OR ANY OF ITS EMPLOYEES, AGENTS, AFFILIATES OR OTHER REPRESENTATIVES, WHETHER SOUNDING IN CONTRACT, STATUTE, OR TORT, INCLUDING FRAUD, MISREPRESENTATION, FRAUDULENT INDUCEMENT, OR ANY OTHER LEGAL OR EQUITABLE THEORY AND REGARDLESS OF THE DATE OF ACCRUAL OF SUCH CLAIM, CONTROVERSY OR DISPUTE SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION. THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THE QUESTION OF WHETHER A CLAIM IS SUBJECT TO ARBITRATION. HOWEVER, NOTHING CONTAINED IN THIS ARBITRATION PROVISION SHALL PRECLUDE THE CUSTOMER FROM RESOLVING ANY CLAIM, CONTROVERSY OR DISPUTE IN SMALL CLAIMS COURT HE OR SHE OTHERWISE WOULD HAVE THE RIGHT TO PURSUE.

A single arbitrator engaged in the practice of law will conduct the arbitration. The arbitrator will be selected according to the rules of CPR or, alternatively, may be selected by agreement of the parties, who shall cooperate in good faith to select the arbitrator. The arbitration will be conducted by and under the then-applicable rules of the CPR Institute for Dispute Resolution. All expedited procedures prescribed by the applicable rules will apply. Any required hearing fees and costs shall be paid by the parties as required by the applicable rules or as required by applicable law, but the arbitrator shall have the power to apportion such costs as the arbitrator deems appropriate. The arbitrator's decision and award will be final and binding (subject to the appeal clause below), and judgment on the award rendered by the arbitrator may be entered in any court with jurisdiction.

An appeal may be taken under the CPR Arbitration Appeal Procedure from any final award of any arbitral panel in any arbitration arising out of or related to this

Exhibit A

agreement that is conducted in accordance with the requirements of such Appeal Procedure. Unless otherwise agreed by the parties and the appeal tribunal, the appeal shall be conducted at the place of the original action. If any party files a judicial or administrative action asserting a claim that is subject to arbitration and another party successfully stays such action or compels arbitration, the party filing that action must pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including attorney's fees.

**Notices.** You may get our current address for written notice by calling PCS Customer Service Solutions. Written notice to you is sent to your last-known address in our invoicing records. Written notice is effective three days after deposit in the U.S. mail, postage prepaid, and properly addressed. Unless required by this Agreement or Applicable Laws, (1) you may notify us by calling PCS Customer Service Solutions, and (2) we may notify you by leaving a message for you on your PCS Phone, answering machine or with your answering service. Notice addresses may be changed by giving notice as provided in this section.

**Choice of Law; Jurisdiction.** This Agreement is governed by and must be construed under federal law and the laws of the State of Kansas, without regard to choice of law principles.

**General.** If either of us does not enforce any right or remedy available under this Agreement, that failure is not a waiver of the right or remedy for any other breach or failure by the other party. Our waiver of any requirement in any one instance is not a general waiver of that requirement and does not amend this Agreement. This Agreement is subject to any applicable federal and state law (collectively, "Applicable Laws"). If any part of this Agreement is held invalid or unenforceable, that part is interpreted consistent with Applicable Laws as nearly as possible to reflect the original intentions of the parties and the rest of this Agreement remains in full force and effect. Section headings are for descriptive purposes only and are not used to interpret this Agreement. You may not assign this Agreement to any other person or entity without our prior written approval. This Agreement (including any referenced documents and attachments) makes up the entire agreement between you and us and replaces all prior written or spoken agreements, representations, promises or understandings between you and us. The provisions of this Agreement that are contemplated to be enforceable after the termination of this Agreement survive termination of this Agreement. If there is a conflict, the Service Plan (including any Term Service Plan) controls over the Terms.

© 2003 Sprint Spectrum L.P. All rights reserved. No reproduction in whole or in part allowed without prior written approval. Sprint and the diamond logo are registered trade marks of Sprint Communications Company, L.P., used under license.

Top of page

**10 . Termination of Access**

Sprint PCS may terminate your access to all or part of this Internet site without notice, for any conduct that Sprint PCS, in its sole discretion, believes to be harmful to individual users, Sprint PCS or any of its affiliates, or any rights of Sprint PCS or any third party, or to violate applicable laws.

Top of page

**11 .Change in Internet Site or in User Agreement**

This Internet site is subject to change without prior notice and your use of this site after a change means that you have agreed to that change.

Sprint PCS may modify this User Agreement at any time by posting the revised agreement on the Internet site. Any revised User Agreement is effective upon the user accessing this Internet site.

Top of page

**12 .Sprint PCS Wireless Web Mail**

The following are the terms and conditions for use of the Sprint PCS Wireless Web Mail service including without limitation email and other services which may be offered from time to time by Sprint PCS for use with your Sprint PCS Wireless Web Mail username (each feature individually and collectively referred to as the "Service"). Please read them carefully. This Service is provided to individuals who

Exhibit A

are at least 18 years old or minors who have parental permission to open and maintain an account. BY CLICKING THE "I ACCEPT" BUTTON AND COMPLETING THE REGISTRATION PROCESS, YOU ARE STATING THAT YOU ARE ELIGIBLE FOR AN ACCOUNT AND THAT YOU AGREE TO BE BOUND BY ALL OF THESE TERMS AND CONDITIONS OF THE SERVICE ("TOS").

The Service is offered to you conditioned on your acceptance without modification of the terms, conditions, and notices contained herein.

**Member account, password, and security.** To open an account, you must complete the registration process by providing us with current, complete and accurate information as prompted by the Registration Form. You then will choose a password and a username. You are entirely responsible for maintaining the confidentiality of your password and username. Furthermore, you are entirely responsible for any and all activities that occur under your account.

You agree to notify Sprint PCS immediately of any unauthorized use of your account or any other breach of security.

**Member privacy.** It is Sprint PCS's policy to respect the privacy of its members. Sprint PCS will not monitor, edit, or disclose any personal information about you or your use of the Service, including its contents, without your prior permission unless Sprint PCS has a good faith belief that such action is necessary to: (1) conform to legal requirements or comply with legal process; (2) protect and defend the rights or property of Sprint PCS; (3) enforce the Terms of Service; or (4) act to protect the interests of its members or others. Sprint PCS does provide certain user information in aggregate form to third parties, including its advertisers, for demographics. In addition, your Internet Protocol address is transmitted with each message sent from your account. For more information, see the Sprint PCS Privacy Statement.

You agree that Sprint PCS may access your account, including its contents, as stated above or to respond to service or technical issues.

**Message storage, outbound messages and other limitations.** The amount of email storage space per member is limited, please visit our FAQ for more information. Some email messages may not be processed due to space constraints or outbound message limitations. You agree that Sprint PCS is not responsible or liable for the deletion or failure to store messages or other information.

**Member conduct.** As a condition of your use of the Service, you warrant to Sprint PCS that you will not use the Service for any purpose that is unlawful or prohibited by these terms, conditions, and notices.

The Service is provided to individuals only and for personal use only. You agree to use the Service only to send and receive personal messages. Any unauthorized commercial use of the Service, or the resale of its services, is expressly prohibited.

You agree to abide by all applicable local, state, national and international laws and regulations and are solely responsible for all acts or omissions that occur under your username or password, including the content of your transmissions through the Service. By way of example, and not as a limitation, you agree not to:

- Use the Service in connection with surveys, contests, pyramid schemes, chain letters, junk email, spamming or any duplicative or unsolicited messages (commercial or otherwise).
- Defame, abuse, harass, stalk, threaten or otherwise violate the legal rights (such as rights of privacy and publicity) of others.
- Publish, distribute or disseminate any inappropriate, profane, defamatory, infringing, obscene, indecent or unlawful material or information.
- Advertise or offer to sell or buy any goods or services for any non-personal purpose.
- Harvest or otherwise collect information about others, including email addresses, without their consent.
- Create a false identity for the purpose of misleading others as to the identity of the sender or the origin of a message.
- Use, download or otherwise copy, or provide (whether or not for a fee) to a person or entity that is not a Service member any directory of the Service members or other user or usage information or any

Exhibit A

SPRINT PCS - Terms and Conditions

- portion thereof other than in the context of your use of the Service as permitted under the Terms of Service.
- Transmit or upload any material that contains viruses, trojan horses, worms, time bombs, cancelbots, or any other harmful or deleterious programs.
- Transmit or upload any material that contains software or other material protected by intellectual property laws, rights of privacy or publicity or any other applicable law unless you own or control the rights thereto or have received all necessary consents.
- Interfere with or disrupt networks connected to the Service or violate the regulations, policies or procedures of such networks.
- Attempt to gain unauthorized access to the Service, other accounts, computer systems or networks connected to the Service, through password mining or any other means.
- Violate any applicable laws or regulations including, without limitation, laws regarding the transmission of technical data or software exported from the United States through the Service.
- Interfere with another member's use and enjoyment of the Service or another individual's or entity's use and enjoyment of similar services.

Sprint PCS has no obligation to monitor the Service or any user's use thereof or retain the content of any user session. However, Sprint PCS reserves the right at all times to monitor, review, retain and/or disclose any information as necessary to satisfy any applicable law, regulation, legal process or governmental request.

Sprint PCS may terminate your access to any part or all of the Service and any related service(s) at any time, with or without cause, with or without notice, effective immediately, for any reason whatsoever.

Sprint PCS may also terminate or suspend your account for inactivity, which is defined as failing to sign-in to the Service for an extended period of time, as determined by Sprint PCS. The amount of time that Sprint PCS currently considers as an "extended" period of time may be viewed in our FAQ. Upon termination of the Service, your right to use the Service immediately ceases.

If you wish to terminate your account, your only recourse is to discontinue the use of the Service.

Sprint PCS shall have no obligation to maintain any content in your account or to forward any unread or unsent messages to you or any third party.

**Links to third party sites.** THE LINKS INCLUDED WITHIN THE SERVICE MAY LET YOU LEAVE THE SERVICE WEB SITES ("LINKED SITES"). THE LINKED SITES ARE NOT UNDER THE CONTROL OF SPRINT PCS AND SPRINT PCS IS NOT RESPONSIBLE FOR THE CONTENTS OF ANY LINKED SITE OR ANY LINK CONTAINED IN A LINKED SITE, OR ANY CHANGES OR UPDATES TO SUCH SITES. SPRINT PCS IS NOT RESPONSIBLE FOR WEBCASTING OR ANY OTHER FORM OF TRANSMISSION RECEIVED FROM ANY LINKED SITE. SPRINT PCS IS PROVIDING THESE LINKS TO YOU ONLY AS A CONVENIENCE, AND THE INCLUSION OF ANY LINK DOES NOT IMPLY ENDORSEMENT BY SPRINT PCS OF THE SITE OR ANY ASSOCIATION WITH THEIR OPERATORS.

**Disclaimers/limitation of liability.** Sprint PCS does not represent or warrant that the Service will be uninterrupted or error-free, that defects will be corrected, or that the Service or the server that makes it available, are free of viruses or other harmful components. Sprint PCS does not warrant or represent that the use or the results of the use of the Service or the materials made available as part of the Service will be correct, accurate, timely, or otherwise reliable.

You specifically agree that Sprint PCS shall not be responsible for unauthorized access to or alteration of your transmissions or data, any material or data sent or received or not sent or received, or any transactions entered into through the Service. You specifically agree that Sprint PCS is not responsible or liable for any threatening, defamatory, obscene, offensive or illegal content or conduct of any other party or any infringement of another's rights, including intellectual property rights. You specifically agree that Sprint PCS is not responsible for any content sent using and/or included in the Service by any third party.

SPRINT PCS AND/OR ITS RESPECTIVE SUPPLIERS MAKE NO

Exhibit A

SPRINT PCS - Terms and Conditions

REPRESENTATIONS ABOUT THE SUITABILITY, RELIABILITY, AVAILABILITY, TIMELINESS, AND ACCURACY OF THE SERVICE FOR ANY PURPOSE. THE SERVICE IS PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND. SPRINT PCS AND/OR ITS RESPECTIVE SUPPLIERS HEREBY DISCLAIM ALL WARRANTIES AND CONDITIONS WITH REGARD TO THE SERVICE, INCLUDING ALL IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT.

IN NO EVENT SHALL SPRINT PCS AND/OR ITS SUPPLIERS BE LIABLE FOR ANY DIRECT, INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL, CONSEQUENTIAL DAMAGES OR ANY DAMAGES WHATSOEVER INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF USE, DATA OR PROFITS, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OR PERFORMANCE OF THE SERVICE OR RELATED WEB SITES, WITH THE DELAY OR INABILITY TO USE THE SERVICE OR RELATED WEB SITES, THE PROVISION OF OR FAILURE TO PROVIDE SERVICES, OR FOR ANY INFORMATION, SOFTWARE, PRODUCTS, SERVICES AND RELATED GRAPHICS OBTAINED THROUGH THE SERVICE, OR OTHERWISE ARISING OUT OF THE USE OF THE SERVICE, WHETHER BASED ON CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE, EVEN IF SPRINT PCS OR ANY OF ITS SUPPLIERS HAS BEEN ADVISED OF THE POSSIBILITY OF DAMAGES. BECAUSE SOME STATES/JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, THE ABOVE LIMITATION MAY NOT APPLY TO YOU. IF YOU ARE DISSATISFIED WITH ANY PORTION OF THE SERVICE, OR WITH ANY OF THESE TERMS OF USE, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE SERVICE AND ITS RELATED WEB SITES.

**Indemnification.** You agree to indemnify and hold Sprint PCS, its parents, subsidiaries, affiliates, officers and employees, harmless from any claim, demand, or damage, including reasonable attorneys' fees, asserted by any third party due to or arising out of your use of or conduct on the Service.

**No spam; damages.** Sprint PCS will immediately terminate any account which it believes, in its sole discretion, is transmitting or is otherwise connected with any spam or other unsolicited bulk email. In addition, because damages are often difficult to quantify, if actual damages cannot be reasonably calculated then you agree to pay Sprint PCS liquidated damages of $5 for each piece of spam or unsolicited bulk email transmitted from or otherwise connected with your account, otherwise you agree to pay Sprint PCS's actual damages, to the extent such actual damages can be reasonably calculated.

**Participation in promotions of advertisers.** Any dealings with Advertisers on the Service or participation in promotions, including the delivery of and the payment for goods and services, and any other terms, conditions, warranties or representations associated with such dealings or promotions, are solely between you and the Advertiser or other third party. Sprint PCS shall not be responsible or liable for any part of any such dealings or promotions.

**Proprietary rights to content.** You acknowledge that content, including but not limited to text, software, music, sound, photographs, video, graphics or other material contained in either sponsor advertisements or electronically distributed, commercially produced information presented to you by the Service, by Sprint PCS, or Sprint PCS's Advertisers or other content providers, is protected by copyrights, trademarks, service marks, patents or other proprietary rights and laws. You may make a copy of this content for your personal, non-commercial use only, provided that you keep all copyright and other proprietary notices intact. You may not modify, copy, reproduce, republish, upload, post, transmit, or distribute in any way content available through the Service and its associated Web sites, including code and software.

**Modifications to terms of service, member policies.** Sprint PCS reserves the right to change the Terms of Service or policies regarding the use of the Service at any time and to notify you by posting an updated version of the Terms of Service on this Web site. You are responsible for regularly reviewing the Terms of Service. Continued use of the Service after any such changes shall constitute your consent to such changes.

**General.** This agreement is governed by the laws of the State of Kansas, and the United States of America. Use of the Service is unauthorized in any jurisdiction that does not give effect to all provisions of these terms and

Exhibit A

SPRINT PCS - Terms and Conditions

conditions, including without limitation this paragraph. You agree that no joint venture, partnership, employment, or agency relationship exists between you and Sprint PCS as a result of this agreement or use of the Service. Sprint PCS's performance of this agreement is subject to existing laws and legal process, and nothing contained in this agreement is in derogation of Sprint PCS's right to comply with governmental, court and law enforcement requests or requirements relating to your use of the Service or information provided to or gathered by Sprint PCS with respect to such use. If any part of this agreement is determined to be invalid or unenforceable pursuant to applicable law including, but not limited to, the warranty disclaimers and liability limitations set forth above, then the invalid or unenforceable provision will be deemed superseded by a valid, enforceable provision that most closely matches the intent of the original provision and the remainder of the agreement shall continue in effect. Unless otherwise specified herein, this agreement constitutes the entire agreement between the user and Sprint PCS with respect to the Service (excluding the use of any software which may be subject to an end-user license agreement) and it supersedes all prior or contemporaneous communications and proposals, whether electronic, oral or written, between the user and Sprint PCS with respect to the Service. A printed version of this agreement and of any notice given in electronic form shall be admissible in judicial or administrative proceedings based upon or relating to this agreement to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form. You and Sprint PCS agree that any cause of action arising out of or related to this Service must commence within one (1) year after the cause of action arose; otherwise, such cause of action is permanently barred. The section titles in the Terms of Service are solely used for the convenience of the parties and have no legal or contractual significance.

**Trademarks.** Sprint PCS, Sprint PCS Wireless Web, Sprint PCS Wireless Web Mail and/or other Sprint PCS products and services referenced herein are either trademarks or registered trademarks of Sprint PCS. The names of actual companies and products mentioned herein may be the trademarks of their respective owners.

**Privacy policy.** Sprint PCS and its vendors (collectively "Sprint PCS") take measures on several fronts to protect your messages from being read by third parties without your explicit permission. In our application, Sprint PCS uses the latest Internet technology to ensure that your data is only accessible to you by using your password and username; our technology is built to prevent access by third parties.

E-mail is private correspondence between the sender and the recipient. Sprint PCS strictly respects the privacy of its users. Therefore, Sprint PCS will not sell, provide, or transfer the User's personally identifiable information to third parties. In addition, Sprint PCS will not monitor, edit, or disclose the contents of a User's private communications unless required to do so by law or in the good faith belief that such action is necessary to: (1) conform to the edicts of the law or comply with legal process served on Sprint PCS; (2) protect and defend the rights or property of Sprint PCS; or (3) act under exigent circumstances to protect the personal safety of its Users or the public. Sprint PCS does provide certain User information in aggregate form to third parties, including its advertisers, for demographic. In addition, your Internet Protocol address is transmitted with each message sent from your account.

User acknowledges and agrees that certain technical processing of messages and their content in order to: (1) send and receive messages; (2) conform to connecting networks' technical requirements; (3) conform to the limitations of the Service; or (4) conform to other similar requirements.

All Sprint PCS Users agree to our Terms of Service when signing up.

Top of page



- Online ordering is SECURE
- Free Shipping with a Phone and Plan Order
- Most orders ship in 2-3 business days

Contact Us | Help Center | Find a Sprint Store | About Sprint | Sign Up for News

Exhibit A

SPRINT PCS - Terms and Conditions

© 1998-2003 Sprint Spectrum L.P.   Security & Privacy | Terms & Conditions

Exhibit A

11/06/2003 15:08 FAX                    CKT                                              ☎001
Plan

≠C 500M UN L 1YR                                                      Subtotal:          $ 45.00

* Night & Weekend Hours Monday - Thursday 9:00 PM to 7:00 AM/Friday 9:00 PM to Monday 7:00 AM All
  Minutes include LongDistance.Consumer customers are eligible.
Free & Clear Options
CALL_FORWARD                                                                            $ 0.00
CALL_WAITING                                                                            $ 0.00
LCA_ENT_2000                                                                            $ 0.00
VN_LD_NO_PGR                                                                            $ 0.00
ACTIVATION FEE $36                                                                      $ 0.00
EQUIPMENT RPLCMNT $4                                                                    $ 4.00
≠C PCS TO PCS $5                                                                        $ 5.00
Total Plan(MRC):                                                                       $ 54.00
Total Amount:                                                                         $ 105.56

Sprint PCS One Year Advantage Agreement
Please read and review the Sprint PCS Advantage Agreement below. Indicate you have read and understood all the
terms by checking the box, then clicking Continue.
PROVISIONS OF PCS ADVANTAGE AGREEMENT
Sprint PCS One Year Advantage Agreement
You are agreeing to the PCS Advantage Agreement ("Agreement"), which is your agreement for PCS Service from
Sprint and incorporates: (1) the terms of your service plan as set forth in the PCS Service Plan Guide and other
promotional materials; (2) the most recent PCS Terms and Conditions of Service ("Ts and Cs"); and (3) the terms set
forth in this document. Carefully read these terms. Term Agreement: If your Agreement includes a 1 or 2 year Term
Commitment, your Term begins today. If you cancel service before the end of your Term you will be responsible for
an Early Termination Fee of $150 ("Fee"). You will also be charged the Fee if we terminate the Agreement because of
your default. We will not charge the Fee for terminations under our Satisfaction Guarantee policy. Payment of the
Fee does not satisfy other outstanding obligations owed to us, including service or equipment related charges.
Activation Fee: A non-refundable $36.00 phone activation fee applies to each new line activated and to certain
service plan changes or upgrades of equipment. Ts and Cs: A copy of the Ts and Cs is available upon request. The Ts
and Cs are also provided in your phone box, and are available at www.sprintpcs.com or through Sprint's Customer
Service Solutions department at 1-800-480-4PCS (4727). We may occasionally modify the Ts and Cs, so make sure
you have reviewed the most current version. As set forth more completely in the Ts and Cs, you agree to a Mandatory
Arbitration provision stating (in part) that: (1) Any claim, controversy or dispute of any kind between you and Sprint
and/or any of its employees, agents, affiliates or other representatives, whether sounding in contract, statute, or
tort, including fraud, misrepresentation, fraudulent inducement, or any other legal or equitable theory and
regardless of the date of accrual of such claim, controversy or dispute shall be resolved by final and binding
arbitration; (2) the Federal Arbitration Act, not state law, governs the question of whether a claim is subject to
arbitration; and (3) nothing contained in the arbitration provision shall preclude you from resolving any claim,
controversy or dispute in small claims court you otherwise would have the right to pursue. Basic Service Plans
Terms: Prices do not include taxes, fees or other charges. Call 1-866-770-6690 for information on cost recovery
charges relating to federally mandated programs. Service requires a phone compatible with our network. All minutes
of incoming and outgoing calls incur charges. Unused plan minutes do not carry forward. Included plan minutes are
not good for local or long-distance calls made when roaming off our network. Additional roaming charges will apply.
Night & Weekend hours are Mon.-Thurs. 9pm-7am and Fri. 9pm-Mon. 7amCalls are rounded up to the next whole
minute. PCS Vision (data) services are only available while on the enhanced Sprint Nationwide PCS Network (see our
coverage map for further details). Data usage will be calculated on a per kilobyte basis rather than for airtime used.
If you are not on a plan that includes PCS Vision, monthly data usage will be charged a casual usage rate of $.01 for
each kilobyte. Data usage will be rounded up to the next whole kilobyte. Rounding will occur at the end of each
session or each clock hour and, at that time, we will deduct accumulated data usage from your plan, or assess
overage or casual usage charges. You are responsible for all data activity from and to your phone/device, regardless
of who initiates the activity or whether the activity results in a dropped network connections. Access to and
downloading of premium content is not included with PCS Vision Services. Certain PCS Vision Services (e.g., Games,
Ringers and Screen Savers) contain mostly premium content. See the PCS Service Plan Guide and other promotional
materials for additional details. By signing below, you represent that (i) the information you have provided during
the activation process is correct; and (ii) you agree to all of the terms of this Agreement, including the terms of your
service plan and the most recent Ts and Cs. THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION
WHICH MAY BE ENFORCED BY THE PARTIES.

Signature:
                 Customer Signature:
Date: 9/18/03

Thank You for Choosing Sprint PCS


https://pcslas.sprintpcs.com/ec/controller/EConnect/programmingSetup

EXHIBIT
B