James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, BAIN, GILFILLAN,
 CECCHI, STEWART & OLSTEIN
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Paul M. Weiss
George K. Lang
Eric C. Brunick
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000

Attorneys for Plaintiffs and
Interim Class Counsel

Joseph A. Boyle, Esq.
KELLEY DRYE & WARREN
200 Kimball Drive
Parsippany, New Jersey 07054
Attorneys for Defendants
SPRINT NEXTEL CORPORATION and
SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON and TESSIE ROBB, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL <br><br> Defendants. | Civil Action No. 07-5325(JLL) <br><br><br> **NOTICE OF JOINT MOTION** |

Exhibit B

To:   Hon. Jose L. Linares, U.S.D.J.
      United States District Court
      Martin Luther King Federal Building
      50 Walnut Street
      Newark, New Jersey 07102

TO THE HONORABLE COURT:

PLEASE TAKE NOTICE that on Thursday, December 4, 2008, at 11 a.m., or as soon thereafter as counsel may be heard, the undersigned counsel for Plaintiffs and for Defendants Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel (together "Sprint") shall jointly move before Hon. Jose L. Linares, U.S.D.J. at the Martin Luther King Federal Building, 50 Walnut Street, Newark, New Jersey for an Order granting preliminary approval of the settlement between Plaintiffs and Sprint and for leave to file a Second Amended Complaint.

The undersigned intend to rely upon the annexed Stipulation and Settlement Agreement, and exhibits thereto, Declaration of James E. Cecchi and Brief.

The undersigned hereby requests oral argument.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Attorneys for Plaintiffs

By:   /s/ James E. Cecchi
      JAMES E. CECCHI

KELLEY DRYE & WARREN
Attorneys for Defendants
SPRINT NEXTEL CORPORATION and
SPRINT SPECTRUM L.P. d/b/a SPRINT
NEXTEL

By:   /s/ Joseph A. Boyle
      JOSEPH A. BOYLE

Dated:  December 3, 2008

Exhibit B

Joseph A. Boyle
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Dominic Surprenant
A. Brooks Gresham
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Attorneys for Defendants
Sprint Nextel Corporation and
Sprint Spectrum L.P.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS individually and on behalf of all others similarly situated, | Civ. Action No. 2:07-cv-05325-(JLL-ES) |
| Plaintiffs, | |
| -against- | **STIPULATION AND SETTLEMENT AGREEMENT** |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL | |
| Defendants. | |

It is hereby stipulated and agreed by and among the undersigned

Parties, subject to the approval of the Court, that the settlement of this Action and

Exhibit B

the Related Claims (defined below) shall be effectuated pursuant to the terms and conditions set forth in this Settlement Agreement.

## PREAMBLE

WHEREAS, Sprint Nextel Corporation, through its various direct and indirect operating subsidiaries and affiliates (collectively defined in Article I, below as "Sprint Nextel"), provide and/or have provided wireless services to customers in one or more or all of the United States;

WHEREAS, Judy Larson, Joe Milliron, Tessie Robb, and Willie Davis (collectively, "Plaintiffs") are named representatives in the above-captioned action titled *Larson, et al., v. AT&T Mobility, LLC, et al,* Civ. Act. No. 2:07-cv-05325-JLL-ES, (the "Action", as defined in Article I, below), and through counsel have filed a complaint and successive amendments culminating in the Second Amended Complaint (the "Complaint"). Plaintiffs represent a putative class of persons who allege that Sprint Nextel and/or its operating subsidiaries imposed, assessed, and/or collected an early termination fee from customers in violation of pertinent law, beginning on or around July 1, 1999 (hereinafter the "Settlement Class," as defined in Article I, below);

WHEREAS the Parties have exchanged information, have participated in extensive mediation under the guidance of the Honorable Nicholas H. Politan,

2

Exhibit B

and have had a full and fair opportunity to evaluate the strengths and weaknesses of their respective positions;

WHEREAS Sprint Nextel denies the allegations of the Action and the Related Claims, denies all allegations of wrongdoing and of liability, denies any causation of damages to the Settlement Class, and contends, or would contend in response to the claims, that Plaintiffs and the Settlement Class have caused damages to Sprint Nextel;

WHEREAS Sprint Nextel nevertheless has concluded that, in light of the costs and disruption of litigation, this Settlement is appropriate on the terms and conditions set forth herein;

WHEREAS Plaintiffs believe that the claims asserted in their actions are meritorious, deny all allegations of wrongdoing and of liability, and deny any causation of damages to Sprint Nextel;

WHEREAS Plaintiffs nevertheless have concluded that, in light of the costs and delay of litigation of the matters in dispute, particularly in complex class action proceedings, and in the desire to provide relief to the class sooner rather than later, this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class;

NOW THEREFORE, it is hereby stipulated and agreed that, in consideration of the agreements, promises, and covenants set forth in this

Exhibit B

Settlement Agreement, and subject to approval of the Court, the Action and the Related Claims shall be fully and finally settled and the Action dismissed with prejudice under the following terms and conditions:

## ARTICLE I - DEFINITIONS

As used in this Agreement and the related documents attached hereto as exhibits, the terms set forth below shall have the meanings set forth below. The singular includes the plural and vice versa.

"Action" means the civil action entitled *Larson, et al., v. AT&T Mobility, LLC, et al,* Civ. Act. No. 2:07-cv-05325-JLL-ES, and/or *Larson v. Sprint Nextel Corporation, Sprint Spectrum, L.P. d/b/a Sprint Nextel, et al.,* Civ. Act. No. 2:07-cv-05325-JLL-ES (District Court for the District of New Jersey), as it pertains to Sprint Nextel, including but not limited to any amendments to the Complaint filed therein. "Action" also includes any claims that Sprint Nextel has asserted or would assert by way of Defense and/or Counterclaim.

"Aggregate Fees, Costs, and Expenses" means the aggregate attorneys' fees, expert fees, expenses and costs, the costs of notice, the administrative expenses, and the incentive awards.

"Approved Claim" means a claim by a Claimant that the Claims Administrator, in its discretion, subject to Class Counsel review, determines to be timely, accurate, complete, in proper form and signed. Sprint retains the right to

verify all Approved Claims and notify the Claims Administrator of any discrepancies, subject to Class Counsel review, as set forth below.

"Ayyad Class Claims" means only those certain claims actually litigated and determined in the severed action captioned *Ayyad, et al. v. Sprint Spectrum, et al.*, Superior Court of the State of California, Alameda County, Case No. RG03-121510. The Ayyad Class Claims were, by order of the Alameda County Superior Court, severed from all other claims alleged in the coordinated proceedings pending in the *Cellphone Termination Fee Cases* (California Judicial Council Coordinated Proceeding No. 4332), and only the severed claims actually litigated and determined are intended to be excepted from the Releases set forth elsewhere in this Agreement. The Ayyad Class Claims do not include the California Subscriber Class Claims, nor any other claims that could have been alleged by Ayyad Class members but were not actually litigated and determined, nor to the *Robertson v. Nextel of Communications, Inc.* iDEN claims (on which summary adjudication was granted in favor of Nextel, currently pending on motion for reconsideration) which are part of the *Cellphone Termination Fee Cases* (see Article I, Related Claims, subparagraph (1), below).

"California Subscriber Class Claims" means the subscriber class claims that were alleged in the Alameda County Superior Court, State of California, by Sprint Nextel customers who did not allege that they had been

5

charged and/or paid an Early Termination Fee, but whom instead alleged only that they were subject to an Early Termination Fee in the subscriber agreements. The California Subscriber Class Claims were, and by virtue of remand by the Court of Appeal following reversal of the Alameda Superior Court's June, 2006 decision denying class certification are, part of the *California Cellphone Termination Fee Cases.*

"California Cellphone Termination Fee Cases" mean those Early Termination Fee actions and claims filed by Sprint Nextel customers that are consolidated and/or coordinated into Judicial Council Coordinated Proceeding No. 4332 and assigned to the Alameda County Superior Court, Hon. Winifred Smith.

"Cash Benefit(s)" means settlement benefits provided to Claimants in the form of cash payments from the Common Fund, as set forth in Article II herein.

"Claim Form" means the online web form interface and written claim form to be provided by the Settlement Administrator to Settlement Class Members. The online Claim Form interface shall be developed by the Settlement Administrator and is subject to review and approval by the Parties. The written Claim Form shall be substantially in the form of Exhibit H, attached hereto.

"Claim Period" means the period beginning 30 days after entry of the Preliminary Approval Order and ending 60 days after entry of the Final Approval

Exhibit B

Order and Judgment (the Claim Period does not apply to Category IV benefits; the deadline for submitting a Category IV benefit Claim Form is January 1, 2011).

"Claimant" means a Member of the Settlement Class who has submitted an Approved Claim.

"Class Counsel" means James E. Cecchi, Esq. of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; Paul M. Weiss, Esq. of Freed & Weiss LLC; Stephen A. Weiss, Esq. and Jonathan Shub, Esq. of Seeger Weiss LLP.

"Class-Related Released Parties" or "Class-Related Releasing Parties" means all Settlement Class Members and each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, consultants, contractors, insurers, accountants, attorneys, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns, and any other Person with which any of them is affiliated or for which any of them is responsible at law, in equity, or otherwise.

"Class Released Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees, costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, including, without limitation, violations of any state or federal statutes and laws, rules or regulations, including but not limited to 47 U.S.C. § 201, Ala. Code

7

Exhibit B

§ 8.19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev.
Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.*
(Arkansas); Cal. Civ. Code § 1671, Cal. Bus. & Prof. Code § 17200 *et seq.*, Cal.
Bus. & Prof. Code §17500 *et seq.*, *Cal. Civ. Code § 1750 et seq.* (California); Colo.
Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut);
Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et
seq.* (District of Columbia); Fla. Stat. Ann. § 501.201 *et seq.* (Florida); Ga. Code
Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw.
Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); Kan. Stat.
Ann § 50.623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.110 *et seq.* (Kentucky); La.
Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A
*et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.*, Md. Com. Law Code
Ann. § 13-301 *et seq.*, Md. Com Law Code Ann. § 13-408 *et seq.* (Maryland);
Mass Gen. L. ch. 93A, § *et seq.* (Massachusetts); Mich. Stat. Ann. § 445.901 *et
seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et
seq.*, Minn. Stat. §.8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.*
(Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30-
14-101 *et seq.* (Montana); Neb. Rev. Stat.§ 59-1601 *et seq.* (Nebraska); Nev. Rev.
Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.H. Rev. Stat.
Ann. § 358:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev.

8

Exhibit B

Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1 *et seq.* (New

Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.*, (New York); N.C. Gen. Stat. § 75-1

*et seq.* (North Carolina); N. D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio

Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.*

(Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.* (Oregon); Penn. Stat. § 201-1 *et seq.*

(Pennsylvania); R.I. Gen. Laws § 6-13.1:1 *et seq.* (Rhode Island); S.C. Code Ann.

§ 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. § 37-24.1 *et seq.*

(South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. &

Comm. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*

(Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code §

19.86.010 et. seq. (Washington); W.Va. Code § 46A-6-101 *et seq.* (West Virginia);

and Wyo. Stat. § 40;12-101 *et seq.* (Wyoming), or principles of common law,

whether liquidated or unliquidated, known or unknown, in law, equity, arbitration,

or otherwise, whether or not concealed or hidden, that in any way relate to, in

whole or in part, or arise out of, any of the allegations, claims, and/or theories

raised in or that could have been raised in the Action or the Related Claims,

excepting only the Ayyad Class Claims and claims in the Related Claims that are

not based upon or arise out of the ETF-Related Claims. The term "Class Released

Claims" includes the ETF-Related Claims.

Exhibit B

"Class Representatives" means Judy Larson, Joe Milliron, Tessie Robb and Willie Davis.

"Common Fund" means a fund in the amount of fourteen million dollars ($14,000,000.00) to be deposited by Sprint Nextel from time-to-time into the Escrow Account for the benefit of the Settlement Class. The Aggregate Fees, Costs, and Expenses shall also be paid from the Common Fund.

"Counterclaim" means any defense of offset, setoff, or counterclaim or cross-claim filed, which may be filed or which is to be filed by Sprint Nextel in the Action or any Related Action against Plaintiffs and/or the Settlement Class.

"Court" means the United States District Court for the District of New Jersey.

"Early Termination Fee(s)" or "ETF" means any charge described, imposed, charged, or collected pursuant to a provision in a fixed-term subscriber agreement calling for the payment of a flat-rate amount for terminating the agreement prior to the expiration of the agreement's specified term, no matter how titled or characterized by Sprint Nextel, including liquidated damage charges, alternative means of performance charges, or early termination fee charges, regardless of amount, and regardless of whether the charge was imposed pursuant to a nationwide subscriber agreement of Sprint Nextel, or pursuant to a special, promotional, local or limited plan of Sprint Nextel.

Exhibit B

"Effective Date" means the first date by which all of the following events shall have occurred: (a) the Court has entered the Preliminary Approval Order substantially in the form of Exhibit A attached hereto; (b) the Court has entered the Final Approval Order and Judgment substantially in the form of Exhibit B attached hereto; and (c) the Final Approval Order and Judgment has become Final.

"Escrow Account" means the escrow account established pursuant to and in accordance with the terms and conditions set forth in the escrow agreement between the Parties, substantially in the form of Exhibit C, with an escrow agent to be selected by the Parties. The terms and conditions of the escrow agreement attached as Exhibit C are material terms and are incorporated into this Settlement Agreement by this reference, and specify the holdback amount that will be reserved for Article II, Category IV benefit Claimants.

"ETF-Related Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees, costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, that in any way challenge the validity or propriety of Early Termination Fees and fixed-term subscriber agreements or extension or renewal of a fixed-term subscriber agreement for Sprint Nextel wireless services and/or relate to or arise

Exhibit B

out of Sprint Nextel's policies, procedures, use or implementation relating to the utilization of and propriety of Early Termination Fees in fixed-term subscriber agreements and utilization of and propriety of fixed-term subscriber agreements of any duration entered into between July 1, 1999 and December 31, 2008, including claims that the incorporation, policy, practices, disclosure, use, nature, structure, charging of, and/or amount of Early Termination Fees in Sprint Nextel's fixed-term subscriber agreements or the use incorporation, policy, practices, renewal practices, disclosures, nature, and structure of Sprint Nextel's fixed-term subscriber agreements (1) are unlawful, unfair, deceptive, materially inaccurate, misleading, fraudulent or unreasonable; (2) directly or indirectly caused subscribers to pay money not owed, including any fee or charge no matter how titled or characterized by Sprint Nextel; (3) directly or indirectly caused subscribers to pay more than they would have paid if Sprint Nextel did not utilize Early Termination Fees and/or the subscribers were not subject to Early Termination Fee provisions or fixed-term subscriber agreements; (4) directly or indirectly caused subscribers to take any action or refrain from any taking any action with respect to their fixed-term subscriber agreement, including extension of their fixed-term subscriber agreement, cancellation of their fixed-term subscriber agreement, continuation of their fixed-term subscriber agreement, or the payment of any fee or charge pursuant to their fixed-term subscriber agreement (no matter

Exhibit B

how titled or characterized by Sprint Nextel), the full or partial amount of which they would not otherwise have paid; (5) arising from or relating to the adequacy of Sprint Nextel's disclosure of Early Termination Fees and fixed-term subscriber agreements to customers either prior to execution of or entering into a fixed-term agreement or subsequently; or (6) arising from or relating to any decision by Sprint Nextel to impose, collect, waive, not waive, or partially waive an Early Termination Fee, regardless of the basis for the customer's claim that the fee should or should not be imposed, collected, waived, not waived, or partially waived under their circumstances including but not limited to circumstances relating to service quality, coverage, error of any kind, porting of telephone number, address changes, telephone number changes, ESN swaps, complaint investigation, initial return period, charges by third-parties, independent dealers or affiliates, pro-rating or non-pro-rating of the Early Termination Fee, material or adverse change in contract terms and conditions, pricing or services from Sprint Nextel, contract extensions, assent, rejection and acceptance, inclusion of other contract terms whether enforceable or unenforceable, or any other circumstance of any kind or nature that the customer now or in the future may claim affects, did affect, or should affect Sprint Nextel's decision to impose, collect, waive, not waive, or partially waive an Early Termination Fee.

NJ01/BOYLJ/139573.2

13

Exhibit B

"Fee and Cost Application" means that written motion or application by which Judy Larson, Joe Milliron, Tessie Robb, Willie Davis and/or Class Counsel requests that the Court award attorneys' fees, costs, expenses and incentive awards.

"Final" means that the Final Approval Order and Judgment has been entered on the docket in the Action and it has been dismissed with prejudice and the release of the Class Released Claims has been effectuated in accordance with this Agreement, and (a) the time to appeal from such orders or motions to reconsider have expired and no appeals have been timely filed, (b) if such appeals or motions to reconsider have been filed, they have finally been resolved and have resulted in an affirmation of the Final Approval Order and Judgment and release of the Class Released Claims without further appeal or (c) the Court, following the resolution of the appeals, enter further orders approving settlement on the terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s); and (d) no other court or tribunal has issued an order materially diminishing any benefit conferred upon the Parties by this Settlement Agreement. Neither the pendency of the Fee and Cost Application, nor any appeal pertaining solely to a decision on the Fee and Cost Application, shall in any way delay or preclude the Final Approval Order and Judgment from becoming Final.

Exhibit B

"Final Approval Hearing" means the hearing scheduled to take place at least ninety days after the date of entry of the Preliminary Approval Order at which the Court shall: (a) determine whether to grant final approval to this Settlement Agreement and to finally certify the Settlement Class; (b) consider any timely objections to this Settlement and all responses thereto; and (c) rule on the Fee and Cost Application.

"Final Approval Order and Judgment" means the order, substantially in the form of Exhibit B attached hereto, in which the Court grants final approval of this Settlement Agreement, finally certifies the Settlement Class, and authorizes the entry of a final judgment and dismissal of the Action with prejudice. The form of the Final Approval Order and Judgment, attached as Exhibit B hereto, is a material term of this Settlement Agreement.

"Non-Cash Benefit(s)" means the settlement benefits provided to Claimants in the form of activation fee waivers, bonus minutes and/or text messages, debt forgiveness, and long distance minutes as set forth in Article II herein.

"Notice" means Publication Notice, Web notice and notice by means of an entry in the "Sprint News and Notices" section of Sprint Nextel subscriber billing statements (sometimes herein, "Invoice Notice").

Exhibit B

"Parties" means Judy Larson, Joe Milliron, Tessie Robb, Willie Davis and Sprint Nextel.

"Person" means any natural person, firm, corporation, unincorporated association, partnership, or other form of legal entity or government body, including its agents and representatives.

"Preliminary Approval Order" means the order, substantially in the form of Exhibit A attached hereto, in which the Court grants its preliminary approval to this Settlement Agreement and preliminarily certifies the Settlement Class, authorizes dissemination of Notice to the Settlement Class, and appoints the Settlement Administrator. The form of the Preliminary Approval Order and Judgment, attached as Exhibit A hereto, is a material term of this Settlement Agreement.

"Prorated ETF" means an Early Termination Fee contract provision that is structured such that the initial amount of the fee for early termination will decrease over the term of the contract in some incremental form, resulting in a termination fee at the end of the contract term which is lower than the initial termination fee, which Sprint Nextel will include in its consumer fixed-term subscriber agreements beginning no later than January 1, 2009, such as, for example, in the form and content set forth in Exhibit D, attached.

Exhibit B

"Prospective Relief" means the settlement benefit provided by Sprint Nextel in the form of stipulated mandatory prospective injunctions, as set forth in Article H herein.

"Publication Notice" means the long-form and short-form notices, as well as the Sprint Nextel "News and Notices" billing statement notice, substantially in the form of Exhibits E, F, and G, respectively, attached hereto.  The long-form Publication Notice will be published on the Internet and the short-form Publication Notice will be published in national newspapers, periodicals and/or other related print media as set forth in the Preliminary Approval Order.

"Related Claims," means the following lawsuits, actions, arbitrations, and/or formal or informal claims for relief:

(1) *In re Cellphone Termination Fee Cases*: JCCP 4332 (Alameda County Superior Court) (excluding the Ayyad Class Claims);

(2) *Smith, et al. v. Sprint Spectrum, L.P., et al.,* pending before Hon. Stephen Haberfeld (ret.), Judicial Arbitration and Mediation Service (JAMS), Case No. 1220034325, in the State of California ;

(3) *Molfetas v. Sprint Spectrum, L.P. and Wirelessco, L.P.,* Civil Action No. 50 2004CA 005317 (15th Judicial Circuit, Palm Beach County, Florida);

Exhibit B

(4) *Hall v. Sprint Spectrum, L.P. d/b/a Sprint PCS Group*, No. 04 L 113 (3rd Judicial Circuit, Madison County, Illinois);

(5) *Greene v. Sprint Nextel Corporation and Nextel of California* (pending amendment to drop both and add Sprint Spectrum, L.P.), CV07-7129-SVW (District Court of the Central District of California);

(6) *Larry Lee; Lisa Whitlock; Randy Whitlock; Shanin Shokoofandeh, on behalf of themselves and others similarly situated v. Sprint Nextel Corporation; Sprint Spectrum LP; Nextel Communications Inc.*, Civil Action No. 3:08-cv-04959 SC (USDC Northern District of California);

(7) *Utility Consumers' Action Network and Eric Taylor, on behalf of themselves, their members and/or all others similarly situated, as applicable v. Sprint Solutions, Inc. and Sprint Spectrum L.P.*, Civil Action No. 07-CV-2231-RJB (USDC Southern District of California);

(8) *Johnnie Dillard, individually and on behalf of all others similarly situated v. Sprint Nextel Corporation*, Civil Action No. 08-CV-2217 (District Court of Wyandotte County, Kansas);

(9) *Daniel Morrisey, et al. v. Nextel Partners, Inc., et al.*, Case No. 3194-06, Supreme Court, State of New York, County of Albany; and

(10) *Michael Bechtold, individually and on behalf of all others similarly situated v. Sprint Spectrum, L.P. a/k/a Sprint PCS; Sprint Solutions, Inc.;*

Exhibit B

*Sprint/United Management Company; Nextel Retail Stores, LLC; Nextel Operations Inc.; Nextel Partners Operating Corp.; Nextel West Corp.*, Case No. 08-23 (District Court for the Southern District of Illinois).

"Request for Exclusion" means a valid request for exclusion from a member of the Settlement Class. To be valid, a request for exclusion must: (a) be submitted by the member of the Settlement Class; (b) be submitted to the Settlement Administrator and postmarked by a date not later than 21 days before the Final Approval Hearing; (c) contain the submitter's name, address and telephone number; and (d) otherwise comply with the instructions set forth in the Notice.

"Second Amended Complaint" means the Second Amended Complaint filed in this Action by Class Counsel.

"Settlement Administrator" means such settlement administrator as Class Counsel and Sprint Nextel select, subject to the approval of the Court.

"Settlement Agreement," "Settlement," or "Agreement" means this Stipulation and Agreement of Settlement, including all attached and/or incorporated exhibits.

"Settlement Class" means all Persons in the United States who are or were parties to a personal fixed-term subscriber agreement for a Sprint Nextel Wireless Service Account for personal or mixed business/personal use, whether on

19

Exhibit B

the Sprint CDMA network or Nextel iDEN network, or both, excluding accounts for which the responsible party for the Wireless Service Account is a business, corporation or a governmental entity, entered into between July 1, 1999 and December 31, 2008 and whose claims relate in any way to an Early Termination Fee or use of an Early Termination Fee in a fixed-term subscriber agreement, and/or use or propriety of a fixed-term subscriber agreement whether the term was for the initial fixed-term subscriber agreement or subsequent extensions or renewals to the fixed-term subscriber agreement for whatever reason and/or who were charged by or paid an Early Termination Fee to Sprint Nextel, excluding only the Ayyad Class Claims and Persons whose right to sue Sprint Nextel as a Settlement Class Member is otherwise barred by a prior settlement agreement and/or prior final adjudication on the merits.  The Settlement Class includes Persons who were subject to an ETF, whether or not they paid any portion of the ETF either to Sprint Nextel or to any outside collection agency or at all, and includes persons who are prosecuting excluded claims to the extent such persons have claims other than those expressly excluded.

"Settlement Class Member" means any Person within the Settlement Class who does not submit a timely and valid Request for Exclusion.

"Sprint Nextel" means Sprint Nextel Corporation and all of its direct or indirect operating subsidiaries, and all other subsidiaries, and its affiliates

offering Sprint Nextel wireless services under a brand owned directly or indirectly by Sprint Nextel Corporation, together offering wireless services in the United States.

"Sprint Nextel-Related Released Parties" means (a) Sprint Nextel; (b) Sprint Nextel's counsel; (c) Sprint Nextel's past, present, and future direct and indirect owners, parents, subsidiaries, and other corporate affiliates; (d) Sprint Nextel's successors and predecessors and their past, present, and future direct and indirect owners, parents, subsidiaries, and other corporate affiliates; and (e) for each of the foregoing Persons, each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns.

"Sprint Nextel Released Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, fees, costs, sanctions, proceedings, and/or rights of any nature and description whatsoever, whether liquidated or unliquidated, in law or in equity, that have been asserted by Sprint Nextel in the Action and the Related Claims by way of answer, cross-claim and/or counterclaim. For avoidance of doubt, Sprint Nextel Released Claims does not include claims for unpaid ETFs or other indebtedness of the Class-Related Released Parties and Sprint Nextel shall not be deemed to have released such claims or defenses nor

Exhibit B

shall any Settlement Class Member be barred from asserting, on an individual basis
(non-class), any defenses to such an action, including those defenses that would
otherwise be part of the Class Related Claims.

"Sprint Nextel's Counsel" means Kelley Drye & Warren, LLP and
Quinn Emanuel Urquhart Oliver & Hedges, LLP.

"Total Class Benefit" means $17,500,000 consisting of the total of
payments into the common fund of $14,000,000 plus up to $3,500,000 in Non-
Cash Benefits provided for by this agreement.

"Wireless Service Account" shall mean any wireless service account
with Sprint Nextel for the provision of wireless voice and/or data services,
including but not limited to voice service, data, email, picture mail, streaming
video and music, web/internet access, navigation, text messaging and/or other
messaging services of any kind.

## ARTICLE II - SETTLEMENT CLASS RELIEF

In consideration of a full, complete, and final settlement of the Action,
dismissal of the Action with prejudice, and the Releases in Article VI below, and
subject to the Court's approval, the Parties agree to the following relief:

Common Fund

Sprint Nextel shall deposit a total of fourteen million dollars
($14,000,000) into the Escrow Account for the benefit of the Settlement Class and

Exhibit B

Class Counsel, thereby establishing the Common Fund, in accordance with the funding schedule, terms and conditions set forth in the escrow agreement attached as Exhibit C. Any interest generated from the Common Fund shall remain in the Common Fund to be distributed consistent with the terms of this Agreement and the escrow agreement attached as Exhibit C.

<u>Distribution of the Common Fund</u>

Any distribution to the Settlement Class shall commence only after the Effective Date.

The Aggregate Fees, Costs, and Expenses shall be paid from the Common Fund prior to any distribution to the Settlement Class. The remainder of the Common Fund shall be used to pay Approved Claims for the Cash Benefits, in accordance with the rules set forth herein. In the event Approved Claims to be paid out of the cash portion of the fund exceed the available cash in the fund, all Cash Benefits will be reduced in a pro rata proportion. In the event there remains cash left in the fund after all claim periods have expired, the remaining cash will be returned to Sprint Nextel and Sprint Nextel shall issue prepaid calling Personal Identification Numbers valued in the amount of the remaining cash, to a charitable organization that holds a 501(c)(3) designation or other organization or institution to be agreed on by the parties (or failing agreement ordered by Judge Linares).

<u>Non-Cash Benefits</u>

Exhibit B

Sprint Nextel shall provide up to $3,500,000 (face, retail value) in Non-Cash Benefits to Claimants in accordance with the settlement benefit rules set forth herein. In the event that Approved Claims for Non-Cash Benefits exceed $3,500,000 in face, retail value, Sprint Nextel shall have the right to obtain full reimbursement of the value of such excess Non-Cash Benefits from the Common Fund to the extent there exist net proceeds remaining in the Common Fund after all other distributions have been made, but in no event shall Sprint Nextel be required to provide more than the Total Settlement Benefit to Settlement Class Members.

<u>Prospective Relief</u>

The Court shall enjoin Sprint Nextel from entering into new fixed-term subscriber agreements for personal wireless service accounts in the United States with consumers that contain a flat-rate Early Termination Fee provision without a Pro-Rated ETF reduction. This injunction shall be effective on January 1, 2009 and shall expire two years from that date, and shall be substantially in the form set forth in the proposed Final Approval Order and Judgment attached hereto as Exhibit B.

<u>Conditional <em>Ayyad</em> Benefit</u>

If not later than one year plus 180 days after the Effective Date of the Settlement of the Action, Sprint Nextel reaches a settlement of the <em>Ayyad</em> Class Claims in Alameda County Superior Court (with counsel other than Class

Exhibit B

Counsel), Sprint Nextel agrees to deposit into the Common Fund as an additional settlement benefit, the difference, if any, of four (4) times the Cash Benefit amount Sprint Nextel actually paid in Alameda County Superior Court to settle the Ayyad Class Claims (excluding the cumulative value of other non-cash benefits), less the value of the Common Fund deposit made herein ($14 million).

## Settlement Benefit Rules

All claims for settlement benefits are subject to verification by Sprint Nextel and Class Counsel review and each claimant Settlement Class Member must sign or attest to the veracity of his or her claim by attesting under penalty of perjury. All claimant Settlement Class Members are required to provide or submit certain information to verify that they are appropriately claiming a benefit, as set forth in the "Settlement Benefits Claim Process" section, below. No Settlement Class Member will be entitled to a Cash Benefit if the Settlement Class Member: (i) previously received a credit, adjustment or offset of the ETF charge(s); (ii) released Sprint Nextel from liability arising out of ETF charges in a prior claim or lawsuit settlement benefit obtained by the Settlement Class Member; or (iii) their account has an outstanding balance for usage or charges excluding the balance for the ETF charge(s).

No settlement benefits shall be distributed pursuant to this Settlement Agreement until after the Effective Date. If this Settlement Agreement is not

Exhibit B

approved or for any reason the Effective Date does not occur, no payments or distributions of any kind shall be made.  The data within Sprint Nextel's records shall be the deciding and controlling factor in evaluating the validity of eligibility for settlement benefits.

Settlement Class Members shall be entitled to receive the following-described benefits based upon the category within which any such Settlement Class Member falls.  No Settlement Class Member shall receive, the Common Fund shall not be debited for, and Sprint Nextel shall not be required to provide, more than one of the listed settlement benefits per eligible line of service, even if the Settlement Class Member qualifies for a settlement benefit under more than one category.  Settlement Class Members who have more than one line of service may obtain a benefit for each qualified line.  Benefits may be requested by deceased Settlement Class Members through representatives of their estate if appropriate documentation is provided.

The categories and benefits, prior to any pro-rata reduction as set forth above, are as follows:

**Category I. - Claimants Who Paid an ETF**
**(Other Than Category III or IV Class Members):**

A.   Those Claimants who had a two-year term contract and terminated within the first six months of that contract term, and show sufficient proof that they paid an ETF including signing under penalty of perjury, shall be

Exhibit B

entitled to a payment of $25 from the Common Fund; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 free bonus minutes per month for the first year of that two-year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

       B.    Those Claimants who had a one-year term contract and terminated within the first three months of that contract term, and show sufficient proof that they paid an ETF including signing under penalty of perjury, shall be entitled to a payment of $25 from the Common Fund; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 bonus minutes per month for the first year of that two-year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

Exhibit B

C.    Those Claimants who had a two-year term contract and terminated at any time between the seventh to the twenty fourth month of that contract term, and show sufficient proof that they paid an ETF including signing under penalty of perjury, shall be entitled to a payment of $90 from the Common Fund; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel:  (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 bonus minutes per month for the first year of that two-year contract.  All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

D.    Those Claimants who had a one-year term contract and terminated within the fourth to twelfth month of that contract term, and show sufficient proof that they paid an ETF including signing under penalty of perjury, shall be entitled to a payment of $90 from the Common Fund; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 bonus minutes per month for the first year of that two-year contract.  All Approved Claims to activate a new service line will be

Exhibit B

subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

B.      Those Claimants who cannot show sufficient proof that they paid an ETF, but sign under penalty of perjury that they paid an ETF will receive $25 cash payment; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel: (i) waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two year contract to become a Sprint Nextel subscriber and; (ii) 100 free bonus minutes per month for the first year of that two year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

### Category II. - Claimants Who Were Charged an ETF But Did Not Pay the ETF:

A.      Those Claimants who had a two-year term contract and terminated within the first six months of that contract term, and show sufficient proof that they were charged an ETF, including signing under penalty of perjury, shall be entitled to $25 in credit relief, if the debt owed to Sprint Nextel is still owned by Sprint Nextel; or to the extent such Settlement Class Members desire to activate a new service line with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining

Exhibit B

a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 free bonus minutes per month for the first year of that two year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

   B. Those Claimants who had a one-year term contract and terminated within the first three months of that contract term, and show sufficient proof that they were charged an ETF, including signing under penalty of perjury, shall be entitled to $25 in credit relief, if the debt owed to Sprint Nextel is still owed by Sprint Nextel; or to the extent such class members desire to activate a new service line with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 free bonus minutes per month for the first year of that two year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

   C. Those Claimants who had a term contract and terminated after the seventh month of a two year term or terminated after the fourth month of a one year term, and show sufficient proof that they were charged an ETF, including signing under penalty of perjury, shall be entitled to (i) a $90 credit, if the debt

Exhibit B

owed to Sprint Nextel is still owned by Sprint Nextel, or (ii) to the extent such Settlement Class Members desire to active a new line of service with Sprint Nextel: (i) a waiver of the approximately $36 activation fee normally charged by Sprint Nextel free activation in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber; and (ii) 100 free bonus minutes per month for the first year of that two year contract. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

      D.    Those Claimants who had a term contract and would otherwise be eligible to receive a benefit under Categories II (A), (B) or (C) or III (B) but whose debt is no longer owned by Sprint Nextel, or cannot show sufficient proof that they were charged an ETF, but sign under penalty of perjury that they were charged, shall be entitled to either: (i) to the extent such class members desire to activate a new service line with Sprint Nextel, a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber and 100 bonus minutes per month for the first year of that two-year contract; or (ii) a 90 minute Sprint Nextel prepaid Long Distance Calling Card to be purchased out of the Common Fund. All Approved Claims to activate a new service line will be subject

Exhibit B

to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

**Category III.  Claimants Who Claim Their Wireless Term Contract(s) Including Amendments, Changes and/or Extensions to the Contract(s) or the Assessment or Potential Assessment of an ETF, or is Improper, Invalid, Unlawful or Otherwise Unenforceable For Any Reason Whatsoever:**

E.      Those Claimants who were charged and paid an ETF, and show sufficient proof that they paid an ETF, including signing under penalty of perjury, shall be entitled to either: (i) to the extent such Settlement Class Members desire to activate a new line of service with Sprint Nextel, a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber, and 100 bonus minutes per month for the first year of that two-year contract; or (ii) a $90 cash payment. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

F.      Those Claimants who were charged and did not pay an ETF, and show sufficient proof that they were charged an ETF, including signing under penalty of perjury, shall be entitled to either: (i) to the extent such Settlement Class Members desire to activate a new line of service with Sprint Nextel, a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel

Exhibit B

subscriber and 100 bonus minutes per month for the first year of the two-year contract; or (ii) a $90 credit, if the debt owed to Sprint Nextel is still owned by Sprint Nextel. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

G.     Those Claimants who did not terminate their wireless service agreements early and were not charged an ETF, and either show sufficient proof that they attempted to terminate under penalty of perjury or Sprint Nextel's records corroborate this fact, but remained a customer for the sole reason of avoiding an ETF charge shall be entitled either: (i) $35 cash payment; or (ii) if the Settlement Class Member is a current Sprint Nextel subscriber, 30 anytime bonus minutes per month (that will not rollover) for one year.

### Category IV. - Claimants Whose Claim Arises After Notice to The Class But Before January 1, 2011:

H.     Any Claimant who has a wireless line of service under a term contract entered into before January 1, 2009 and is subject to a flat-rate ETF that terminates after the close of the notice period, whose Approved Claim arose after the notice for approval of Settlement is provided to the Settlement Class but before January 1, 2011, and who swears under penalty of perjury that they were harmed as a result of the flat-rate ETF will be entitled to obtain either: (i) a Sprint Nextel prepaid 90 minute Long Distance Calling Card to be purchased out of the Common

Exhibit B

Fund; (ii) to the extent such Settlement Class Member desires to activate a new line of service with Sprint Nextel, a waiver of the approximately $36 activation fee normally charged by Sprint Nextel in connection with obtaining a new two-year contract to become a Sprint Nextel subscriber and 100 free bonus minutes per month for the first year of that two year contract; or (iii) 300 free text messages per month for six months. All Approved Claims to activate a new service line will be subject to Sprint Nextel's standard terms and conditions of service, credit approval policies, and available service plans.

<u>Settlement Benefits Claim Process</u>

The Settlement Administrator shall maintain a website for the settlement which enables the filing of Claim Forms online, and shall maintain a toll-free telephone number for potential Settlement Class Members obtain information regarding the Settlement and regarding filing a Claim.

Potential Settlement Class Members shall be given the option of completing the Claim Form online or submitting the Claim Form by mail. The Settlement Administrator shall identify duplicate Claim Forms using reasonable means (such as the use of unique identifying numbers on each Claim Form) and shall object to the acceptance of any such Claim Forms as set forth below.

For Persons claiming a Cash Benefit or Non-Cash settlement benefit, the Settlement Administrator shall require sufficient proof supporting a claim to

meet a preponderance of evidence standard, and shall categorize the claim depending upon the type of claim and quality of proof provided, in accordance with the settlement benefit rules set forth in Article II, Categories 1 through 4, above. The information required to make an Approved Claim is as set forth in the settlement benefit rules, and such information shall include the sworn verification of the claimant, identifying information (name, account number, address, telephone number for the qualifying line of service for which a settlement benefit is being claimed), ETF amount charged or paid by the claimant (if any), and year that the ETF was charged or paid by the claimant (if any), monetary harm suffered by the claimant, if any, and when and how the claimant attempted to terminate service, if applicable. Persons claiming a Cash Benefit or Non-Cash Benefit shall be advised in writing that their claim may be verified, and that their claim is made under penalty of perjury.

Sprint Nextel and Class Counsel shall have the right to inspect and verify the Claim Forms (including forms submitted electronically) received by the Settlement Administrator, and Sprint Nextel may submit pertinent information to the Settlement Administrator for review and consideration by the Settlement Administrator for purposes of making an objection to the Claim Form. If Sprint Nextel or the Settlement Administrator determines that any Claim Form is not timely or is duplicative of another Claim Form filed, or if Sprint Nextel determines

Exhibit B

that a claim is otherwise invalid (such as where a Settlement Class Member is seeking a Cash Benefit but in fact received a full credit or refund for a disputed charge or has otherwise previously participated in a settlement or has been bound by a prior judgment or release), Sprint Nextel and/or the Settlement Administrator, as the case may be, shall object to the acceptance of the Claim Form by providing Class Counsel with a list of Claim Forms to which objection is made, together with the reasons for objecting to the Claim Form, in writing.  If Class Counsel do not dispute an objection to a Claim Form, that Claim Form shall be rejected by the Settlement Administrator.

If a dispute arises between Class Counsel and Sprint Nextel regarding any objection to a Claim Form and/or decision by the Settlement Administrator regarding a lack of qualifying proof on a Claim Form that results in a materially lower settlement benefit categorization than has been requested by a putative Claimant, Sprint Nextel and Class Counsel shall agree upon a dispute resolution process that shall, at a minimum, require that the Parties confer regarding same, and if no agreement is reached, the submission of the dispute to an arbitrator to be appointed by Judge Linares and compensated out of the Common Fund. Regardless of the dispute resolution process agreed-upon, in the absence of contrary evidence from a claimant Settlement Class Member, information from Sprint's data, customer records and billing systems shall be conclusive.

Exhibit B

If a Claim Form is rejected by the Settlement Administrator, and/or if, by reason of a lack of qualifying proof, the Settlement Administrator allows a Claim Form into a category of benefit providing less monetary value to the putative Claimant than the category selected by the putative Claimant, the Settlement Administrator shall promptly provide written notice to the Person making the claim by mailing a letter or emailing such notice to any email address provided by the Person for the receipt of correspondence by the Settlement Administrator.

Except as set forth above, if a Claim Form for Cash Benefits is accepted, there shall be no notice of acceptance required to be sent to the Claimant. Tender of the settlement benefit shall suffice for notice.

If a Claim Form for Non-Cash Benefits is accepted, the Settlement Administrator shall provide the Claimant with a letter or email containing a unique code that will enable the Claimant to obtain their Non-Cash Benefit if and when such settlement benefits are tendered, along with instructions for how and when to obtain the settlement benefit.

The deadline for submitting the Claim Form (other than for Category IV benefit Claimants whose deadline to submit a Claim Form shall be January 1, 2011), shall be 60 days after entry of the Final Approval Order and Judgment. Any Claim Form (other than a Claim Form submitted by a Settlement Class Member

Exhibit B

seeking a Category IV benefit) submitted more than 60 days after entry of the Final Approval Order and Judgment shall be untimely and void.   In the event of a dispute over the timeliness of a Claim Form, the dispute resolution procedures described above shall apply.

## ARTICLE III - NOTICE AND REQUESTS FOR EXCLUSION

<u>Publication Notice</u>

The short-form Publication Notice to the Settlement Class shall be provided in the forms approved by the Court in the Preliminary Approval Order, in those newspapers, periodicals, and/or other related print media as set forth in the Preliminary Approval Order.  The long-form and short-form Publication Notices shall be substantially in the same forms as the exemplars submitted as Exhibits E and F.  The short-form Publication Notice shall be published promptly after entry of the Preliminary Approval Order on dates to be agreed upon by the Parties so as to provide the best practical notice to the Settlement Class.  The Parties and the Settlement Administrator shall use best efforts to cause the short-form Publication Notice to commence within 30 days of entry of the Preliminary Approval Order.  The publication of the short-form Publication Notice shall be administered by the Settlement Administrator.   The cost of publishing the short-form Publication Notice shall be paid for from the Common Fund.

<u>Notice by Internet Posting</u>

The long-form of the Publication Notice shall be posted on the Internet at a website established by the Settlement Administrator no later than the first date on which the short-form Publication Notice is published under this Settlement Agreement, and on Class Counsel's website, which shall have a hyperlink to the Settlement Website. The long-form Publication Notice and Claim Forms, except as they apply to Category IV benefit Claimants, will be removed from the Internet Website established by the Settlement Administrator and on Class Counsel's website within 10 days after the Claim Period has expired. The long-form Publication Notice and Claim Forms, modified to address only Category IV benefit Claimants, shall be removed from the Internet Website by January 10, 2011.

Notice in Sprint Nextel Billing Statements

Sprint Nextel shall cause a notice to appear in one full billing cycle (one month) of Sprint Nextel's subscriber billing statements (in either the "Sprint News and Notices" box or "Important Information Relating to Your Sprint Bill" section) between December, 2008 and January, 2009, advising all then-current Sprint Nextel customers of the fact of the settlement, in a form and content substantially similar to that set forth in Exhibit G, attached hereto.

Declarations of Compliance

Exhibit B

The Settlement Administrator shall prepare a declaration attesting to compliance with the mailing, address updating, and publication requirements set forth above. Such declaration shall be provided to Class Counsel and Sprint Nextel's Counsel and filed with the Court no later than 10 days prior to the Final Approval Hearing.

Best Notice Practicable

The Parties agree, and the Preliminary Approval Order shall state, that compliance with the procedures described in this Article is the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law, rule and/or regulation.

Report On Requests For Exclusion

Not later than ten days before the Final Approval Hearing, the Settlement Administrator shall prepare and deliver to Class Counsel, who shall file it with the Court, and Sprint Nextel's Counsel, a report stating the total number of

Exhibit B

Persons that have submitted timely and valid Requests for Exclusion from the Settlement Class, and the names of such Persons. Such Persons will not be entitled to receive any relief under this Settlement Agreement.

Inquiries From Settlement Class Members

It shall be the responsibility of Class Counsel to establish procedures for receiving and responding to all inquiries from Settlement Class Members with respect to this Settlement. Sprint Nextel and Sprint Nextel's counsel may respond, but are not required to respond, to such inquiries.

## ARTICLE IV - COURT APPROVAL OF SETTLEMENT

Preliminary Approval

As soon as practicable after the execution of this Settlement Agreement, Class Counsel and Sprint Nextel's Counsel shall jointly apply for entry of the Preliminary Approval Order in the form of Exhibit A hereto. The Preliminary Approval Order shall include provisions: (a) preliminarily certifying the Settlement Class for settlement purposes only; (b) preliminarily approving this Settlement and finding this Settlement sufficiently fair, reasonable and adequate to allow Notice to be disseminated to the Settlement Class; (c) approving the form, content, and manner of the Notice; (d) setting a schedule for proceedings with respect to final approval of this Settlement; (e) providing that, pending entry of a Final Approval Order and Judgment, the Parties shall cooperate in seeking orders

Exhibit B

that no Settlement Class Member (either directly, in a representative capacity, or in any other capacity) shall commence or continue any action against Sprint Nextel or other Sprint Nextel-Related Released Parties asserting any of the Class-Released Claims; and (f) staying the Action, other than such proceedings as are related to this Settlement.

Following preliminary approval, Sprint Nextel may, but is not required to, seek and obtain full or partial stays of any Related Claims. Class Counsel shall cooperate with Sprint Nextel's counsel, but shall not be required to join, in any such efforts.

<u>Objections To Settlement</u>

Any Settlement Class Member wishing to object to or to oppose the approval of this Settlement and/or the Fee and Cost Application shall file a written objection (with a statement of reasons) with the Court and serve it on Class Counsel (Attn: James E. Cecchi, Esq., Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, 5 Becker Farm Road, Roseland, N.J. 07068) and Sprint Nextel's Counsel (Attn: Joseph A. Boyle, Esq., Kelley Drye & Warren LLP, 200 Kimball Drive, Parsippany, N.J. 07054) at least forty-five days before the date of the Final Approval Hearing. Any Settlement Class Member that fails to do so shall be foreclosed from making such objection or opposition. Plaintiffs will file with the Court their brief in support of final settlement approval, in support of final

Exhibit B

certification of the Settlement Class, and in response to any objections at least seven days before the date of the Final Approval Hearing. Any Settlement Class Member which fails to file a timely written objection and to appear at the final approval hearing shall have no right to file an appeal relating to the approval of this Settlement.

Final Approval Hearing.

The Parties shall request that the Court, on the date set forth in the Preliminary Approval Order or on such other date that the Court may set, conduct a Final Approval Hearing to: (a) determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Class; (b) consider any timely objections to this Settlement and the Parties' responses to such objections; (c) rule on the Fee and Cost Application, and (d) rule on any applications for incentive awards. At the Final Approval Hearing, the Parties shall ask the Court to give final approval to this Settlement Agreement. If the Court grants final approval to this Settlement Agreement, then the Parties shall ask the Court to enter a Final Approval Order and Judgment, substantially in the form of Exhibit B attached hereto, which approves this Settlement, certifies the Settlement Class, authorizes entry of a final judgment, and dismisses the Action with prejudice.

Disapproval, Cancellation, Termination, Or Nullification Of Settlement

Exhibit B

(a)     Each Party shall have the right to terminate this Settlement Agreement if either (i) the Court denies preliminary approval or final approval of this Settlement Agreement (or grants approval through a form of order that is not substantially similar (except as to any provision relating to Aggregate Fees, Costs and Expenses) to the forms of Exhibits A and B attached hereto), or (ii) the Final Approval Order and Judgment (substantially in the form of Exhibit B attached hereto) does not become Final by reason of reconsideration by the Court or a higher court reversing final approval by the Court, and the Court thereafter declining to enter a further order or orders approving settlement on the terms set forth herein.  If a Party elects to terminate this Agreement under this paragraph, that Party must provide written notice to the other Parties' counsel within thirty days of the occurrence of the condition permitting termination.  Such written notice shall be provided by hand delivery or mail to the Parties' counsel.

(b)     Sprint Nextel also shall have the right to terminate this Settlement Agreement if, prior to the date of the Final Approval Order and Judgment, the total number of Persons that have submitted timely and valid Requests for Exclusion from the Settlement Class constitutes greater than 5% of the Settlement Class. If Sprint Nextel elects to terminate this Agreement under this paragraph, Sprint Nextel must provide written notice to the other Parties' counsel

Exhibit B

on or before the date of the Final Approval Order and Judgment. Such written notice shall be provided by hand delivery or mail to the Parties' counsel.

(c) If this Settlement Agreement is terminated pursuant to its terms, then: (i) this Settlement Agreement shall be rendered null and void; (ii) this Settlement Agreement and all negotiations and proceedings relating hereto shall be of no force or effect, and without prejudice to the rights of the Parties; (iii) all discovery and investigation materials provided to Class Counsel by Sprint Nextel shall be immediately returned to counsel for Sprint Nextel and shall not be used nor referred to in any manner by the Parties in the Action and (iv) all Parties shall be deemed to have reverted to their respective status in the Action or Related Claims as of the date and time immediately preceding the execution of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any costs incurred in connection with this Settlement.

## ARTICLE V – ADMINISTRATIVE EXPENSES, ATTORNEYS' FEES, AND COSTS

Costs Of Notice