All costs of providing the Notice as provided herein, including the costs of identifying members of the Settlement Class and the costs of printing, web hosting and/or publishing the Notice, shall be paid for out of the Common Fund, subject to the terms hereof.  Notwithstanding the foregoing, Sprint Nextel shall bear its own costs incurred in providing Invoice Notice.  In the event that this Settlement Agreement is terminated pursuant to its terms, Sprint Nextel shall bear any costs of providing notice already incurred.

<u>Costs Of Administering Settlement</u>

All costs of administering this Settlement, including all fees of the Settlement Administrator and the costs of generating and mailing any Claim Forms, checks, and/or related correspondence issued as part of this Settlement, shall be paid for out of the Common Fund.  In the event that this Settlement Agreement is terminated pursuant to its terms, Sprint Nextel shall bear any costs of administering this Settlement already incurred.

<u>Attorneys' Fees And Costs</u>

The Class Representatives and/or Class Counsel shall make a Fee and Cost Application to be heard at the Final Approval Hearing seeking an award of attorneys' fees and expenses in an amount not to exceed 33% of the Total Class Benefit.  Sprint Nextel will not oppose or undermine the application or solicit others to do so.  Attorneys' fees and costs consistent with this paragraph that are

46

Exhibit B

approved by the Court shall be paid by the Settlement Administrator out of the Common Fund within one day after the date that the Court has entered the Final Approval Order and Judgment. Payments under this provision shall be made to the law firms constituting Class Counsel. Class Counsel shall be solely responsible for further distributing any payments made under this provision.

Notwithstanding the foregoing, if for any reason the Court fails to grant final approval to this Settlement Agreement; the Final Approval Order is reversed or rendered void as a result of an appeal; or this Settlement Agreement is voided, rescinded, or terminated for any other reason, then Class Counsel shall return to Sprint Nextel all fees, costs and other payments received by Class Counsel under this Agreement. In such event, the following Persons shall be severally liable for such payments to the extent received by them: (a) Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein; (b) Freed & Weiss LLC; and (c) Seeger Weiss LLP; and (d) any attorneys of such firms in their individual capacity who receive a share of payments directly from the Common Fund made pursuant to this Agreement. To effectuate this provision, each individual attorney or firm who receives a share of payments under this provision shall execute a guarantee of repayment in the form attached hereto as Exhibit I, and shall be obligated to indemnify and defend Sprint Nextel in the event of any dispute pertaining to payment of the fees and costs to Class Counsel.

Exhibit B

Incentive Award

Class Representatives or Class Counsel on their behalf, may make an application to be heard at the Final Approval Hearing for incentive awards to be paid out of the Common Fund in an amount not to exceed $3,000.00 per individual. Sprint Nextel will not oppose or undermine the application or solicit others to do so. Not later than fifteen days after the Effective Date, and only in the event that the Effective Date occurs, the Settlement Administrator shall pay out of the Common Fund incentive awards as approved by the Court. These payments shall be compensation and consideration for the efforts of Class Representatives as the class representatives in the Action.

Effect On Settlement

The Parties agree that the rulings of the Court regarding the amount of attorneys' fees or costs and any incentive award, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Final Approval Hearing as provided for in this Settlement Agreement and any determinations in that regard will be embodied in a separate order. Any order or proceedings relating to the amount of attorneys' fees or incentive award, including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement

Exhibit B

Agreement, or affect whether the Final Approval Order and Judgment becomes Final as defined herein, unless such order would, if entered, cause the total monetary liability of Sprint Nextel to exceed the Total Settlement Benefit amount, in which event, Sprint Nextel may terminate this Settlement Agreement in accordance with the provisions set forth above.

### ARTICLE VI - RELEASES UPON EFFECTIVE DATE

2.   <u>Binding and Exclusive Nature of Settlement Agreement.</u>

On the Effective Date, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder. No other action, demand, suit or other claim may be pursued against Sprint Nextel or the Sprint Nextel-Related Released Parties or the Class-Related Released Parties with respect to the Class Released Claims.

3.   <u>Releases.</u>

On the Effective Date, the Class-Related Releasing Parties shall be deemed to have, and by operation of this Agreement shall have, fully, finally and forever released, relinquished and discharged Sprint Nextel and the Sprint Nextel-Related Released Parties from any and all of the Class Released Claims; and Sprint Nextel shall be deemed to have, and by operation of this Agreement shall have, fully, finally and forever released, relinquished and discharged the Class-Related

Released Parties from any and all of the Sprint Nextel Released Claims. This Settlement Agreement may be pleaded by Sprint Nextel as a bar to all, or any relevant portion, of any action or Related Claim pending or filed by a Settlement Class Member concerning, relating to or arising out of the Class Released Claims, including any ETF-Related Claims.

4.      Stay And Dismissal Of The Action And Related Litigation.

The Parties agree to request that the Court, in connection with Preliminary Approval, issue an immediate stay of the Action. The Parties further agree to cooperate in seeking the stay and/or dismissal of the Class Released Claims and/or the ETF-Related Claims in all other actions including, but not limited to, the Related Claims.

5.      Waiver of Unknown Claims.

On the Effective Date, the Sprint Nextel Related Released Parties and the Class-Related Releasing Parties shall be deemed to have, and by operation of this Agreement shall have, with respect to the subject matter of the Class Released Claims, including the ETF-Related Claims, and the Sprint Nextel Released Claims, expressly waived the benefits of any statutory provisions or common law rule that provides, in sum or substance, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its

Exhibit B

settlement with any other party. In particular, but without limitation, the Sprint Nextel-Related Released Parties and the Class-Related Releasing Parties waive the provisions of California Civil Code § 1542 (or any like or similar statute or common law doctrine), and do so understanding the significance of that waiver. Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Neither this paragraph nor any other provision of this Settlement Agreement shall be construed to effectuate a general release of claims. The releases provided for in this Settlement Agreement are limited to the Class Released Claims, including the ETF-Related Claims, as defined in Article I above and the Sprint Nextel Released Claims as defined in Article I above.

6.   Assumption of Risk.

In entering into this Settlement Agreement, each of the Parties assumes the risk of any mistake of fact or law. If either Party should later discover that any fact which the Party relied upon in entering this Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not

Exhibit B

be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

## ARTICLE VII - EFFECT OF FCC RULINGS ON FEDERAL PREEMPTION

In the event that the Federal Communications Commission (the "FCC") issues a ruling or order preempting state regulation of ETFs or any of the Class Released Claims, in whole or in part, Sprint Nextel will not seek to vacate this Settlement Agreement on the basis of such a ruling or order. This Article in no way limits Sprint Nextel's rights to otherwise vacate this Settlement Agreement consistent with its terms.

## ARTICLE VIII - LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

7.    <u>No Admission.</u>

Neither the acceptance by Sprint Nextel of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in theAction, the validity of any claims that could have been asserted by any of the Settlement Class Members in the Action and/or Related Claims, the liability of Sprint Nextel in the Action or the Related Claims, or the validity, legality, or fairness of the Early Termination Fee and/or the Prorated ETF. Sprint Nextel specifically denies any liability or wrongdoing of any kind associated with the

Exhibit B

claims alleged in the Action and the Related Claims.  Neither the acceptance by Class Representatives of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in the Action or the Related Claims.

> 8.   Limitations on Use.

This Agreement shall not be used, offered, or received into evidence in the Action for any purpose other than to enforce, to construe, or to finalize the terms of the Settlement Agreement and/or to obtain the preliminary and final approval by the Court of the terms of the Settlement Agreement.  Neither this Settlement Agreement nor any of its terms shall be offered or received into evidence in any other action or proceeding, but where properly offered or received into evidence as set forth above, this Settlement Agreement shall be binding and shall preclusive effect on any claims barred by the release provisions and waiver of unknown claim provisions set forth above.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

Filing Of Amended Complaint; Class Certification.

The Class Representatives shall cause to be filed the Second Amended Complaint, to add additional Plaintiffs, and to modify the definition of the class to be certified to state:

Exhibit B

"All persons in the United States who are or were parties to a personal

fixed-term subscriber agreement for a Sprint Nextel (defined as 'Sprint Nextel

Corporation and all of its direct or indirect operating subsidiaries, and all other

subsidiaries, and its affiliates offering Sprint Nextel wireless services under a

brand owned directly or indirectly by Sprint Nextel Corporation, together offering

wireless services in the United States') Wireless Service Account (defined as 'any

wireless service account with Sprint Nextel for the provision of wireless voice

and/or data services, including but not limited to voice service, data, email, picture

mail, streaming video and music, web/internet access, navigation, text messaging

and/or other messaging services of any kind') for personal or mixed

business/personal use, whether on the Sprint CDMA network or Nextel iDEN

network, or both, excluding accounts for which the responsible party for the

Wireless Service Account is a business, corporation or a governmental entity,

entered into between July 1, 1999 and December 31, 2008 and whose claims relate

in any way to an Early Termination Fee (defined as 'any charge described,

imposed, charged, or collected pursuant to a provision in a fixed-term subscriber

agreement calling for the payment of a flat-rate amount for terminating the

agreement prior to the expiration of the agreement's specified term, no matter how

titled or characterized by Sprint Nextel, including liquidated damage charges,

alternative means of performance charges, or early termination fee charges,

NJ01/BOYLJ/139573.2                        54

Exhibit B

regardless of amount, and regardless of whether the charge was imposed pursuant to a nationwide subscriber agreement of Sprint Nextel, or pursuant to a special, promotional, local or limited plan of Sprint Nextel'); or use of an Early Termination Fee in a fixed-term subscriber agreement, and/or use or propriety of a fixed-term subscriber agreement whether the term was for the initial fixed-term subscriber agreement or subsequent extensions or renewals to the fixed-term subscriber agreement for whatever reason and/or who were charged by or paid an Early Termination Fee to Sprint Nextel, excluding only the Ayyad Class Claims (defined as 'only those certain claims actually litigated and determined in the severed action captioned *Ayyad, et al. v. Sprint Spectrum, et al.,* Superior Court of the State of California, Alameda County, Case No. RG03-121510. The Ayyad Class Claims were, by order of the Alameda County Superior Court, severed from all other claims alleged in the coordinated proceedings pending in the <u>Cellphone Termination Fee Cases</u> (California Judicial Council Coordinated Proceeding No. 4332), and only the severed claims actually litigated and determined are intended to be excepted from the Releases set forth elsewhere in this Agreement. The Ayyad Class Claims do not include the California Subscriber Class Claims, nor any other claims that could have been alleged by Ayyad Class members but were not actually litigated and determined, nor to the *Robertson v. Nextel of Communications, Inc.* iDEN claims (on which summary adjudication was granted

NJ01/BOYLA/1395T3.2                              55

in favor of Nextel, currently pending on motion for reconsideration) which are part of the <u>Cellphone Termination Fee Cases</u>) and persons whose right to sue Sprint Nextel as a class member is otherwise barred by a prior settlement agreement and/or prior final adjudication on the merits. The settlement class includes persons who were subject to an ETF, whether or not they paid any portion of the ETF either to Sprint Nextel or to any outside collection agency or at all, and includes persons who are prosecuting excluded claims to the extent such persons have claims other than those expressly excluded."

Sprint Nextel shall stipulate to these amendments, solely for purpose of this Settlement and without prejudice to its rights absent this Settlement, including, without limitation, rights to move to compel arbitration of any claims asserted in this Action and Related Claims and to contest class certification in either this Action or Related Claims. The Second Amended Complaint shall not be amended in any other respect. Should this Settlement not be finalized for any reason, the Parties shall stipulate to an order striking the Second Amended Complaint, and the First Amended Complaint shall be the operative pleading in this Action.

Exhibit B

9.    Confidentiality Agreement.

The Parties agree that, prior to the provision of information to the Settlement Administrator, the Settlement Administrator will execute a confidentiality agreement satisfactory to Sprint Nextel.

10.    No Assignment.

Each Party represents, covenants, and warrants that he or it has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that he or it herein releases.

11.    Binding On Assigns.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, successors, and assigns.

12.    Captions.

Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

13.    Class Member Signatures.

It is agreed that, because the Settlement Class Members are so numerous, it is impractical to have each Settlement Class Member execute this

Exhibit B

Agreement.  The Notice will advise all Settlement Class Members of the binding nature of the Releases and of the remainder of this Agreement, and in the absence of a valid and timely Request for Exclusion, such Notice shall have the same force and effect as if each Settlement Class Member executed this Agreement.

14.   Construction.

The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party, or his or its counsel, participated in the drafting of this Agreement.

15.   Counterparts.

This Agreement and any amendments hereto may be executed in one or more counterparts, and either Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and both of which counterparts taken together shall constitute but one and the same instrument. A facsimile or PDF signature shall be deemed an original for all purposes.

16.   Governing Law.

Construction and interpretation of the Agreement shall be determined in accordance with the laws of the State of New Jersey, without regard to the choice-of-law principles thereof.

Exhibit B

17.    Integration Clause.

This Agreement, including the Exhibits referred to herein, which form an integral part hereof, contains the entire understanding of the Parties with respect to the subject matter contained herein.   There are no promises, representations, warranties, covenants, or undertakings governing the subject matter of this Agreement other than those expressly set forth in this Agreement.  This Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Action.  This Agreement may not be changed, altered or modified, except in a writing signed by the Parties and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

18.    Jurisdiction.

The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any dispute with respect thereto.

19.    Presiding Judicial Officer.

The Parties agree to jointly request that The Honorable Jose L. Linares preside, by designation if necessary, over the settlement approval process,

Exhibit B

including without limitation any application for an award of attorneys' fees, costs, expenses and incentive awards. In the event that Judge Linares is unable to preside, the Parties agree to jointly request that the settlement approval process be presided over by a different judge from the United States District Court, District of New Jersey.

20.   No Collateral Attack.

This Agreement shall not be subject to collateral attack by any Settlement Class Member at any time on or after the Effective Date. Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Settlement Class Member's claim was improperly denied, that the payment to a Settlement Class Member was improperly calculated, and/or that a Settlement Class Member failed to receive timely notice of the Settlement Agreement.

21.   Parties' Authority.

The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof.

22.   Receipt Of Advice Of Counsel.

The Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

Exhibit B

23.   Waiver Of Compliance.

Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

24.   Terms and Conditions Not Superseded.

Nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course to the relationship between Sprint Nextel and its customers, or to the services provided by Sprint Nextel and purchased by its customers.

25.   Settlement Conditioned on Certain Matters.

This entire Settlement Agreement is contingent upon the Parties reaching agreement on the contents of the exhibits and ancillary agreements hereto.

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:

DATED: December ____, 2008                    _____
                                                                           JUDY LARSON

NJ01/BOYLJ/139573.2                          61

Exhibit B

IN  WITNESS  WHEREOF,  THE  PARTIES  HAVE  EXECUTED

THIS SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:

DATED:  December _____, 2008

_____
JUDY LARSON

DATED:  December _____, 2008

_____
JOE MILLIRON

DATED:  December _____, 2008

_____
TESSIE ROBB

DATED:  December 03 , 2008

_____
WILLIE DAVIS

DATED:  December _____, 2008

Sprint Nextel Corporation

By:_____

Exhibit B

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED

THIS SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:

DATED: December ____, 2008        _____
                                            JUDY LARSON


DATED: December ____, 2008        _____
                                            JOE MILLIRON


DATED: December ____, 2008        _____
                                            TESSIE ROBB


DATED: December ____, 2008        _____
                                            WILLIE DAVIS


DATED: December _2_, 2008         Sprint Nextel Corporation

                                  By: _Charles R. Wunsch_
                                       CHARLES R. WUNSCH


Exhibit B

DATED: December ___, 2008                _____
                                          JOE MILLIRON

DATED: December ___, 2008                _____
                                          TESSIE ROBB

DATED: December ___, 2008                _____
                                          WILLIE DAVIS

DATED: December ___, 2008                Sprint Nextel Corporation


                                         By:_____
                                            _____


**APPROVED AS TO FORM AND CONTENT:**

DATED: December ___, 2008                CARELLA, BYRNE, BAIN, GILFILLAN,
                                         CECCHI, STEWART & OLSTEIN


                                         By:_____
                                            James E. Cecchi
                                            5 Becker Farm Road
                                            Roseland, New Jersey 07068

DATED: December ___, 2008                FREED & WEISS, LLC


                                         By: Paul M. Weiss /fw

DATED: December ___, 2008                SEEGER & WEISS, LLC

NJ01/BOYLJ/139573.2                 62

Exhibit B

By: _Stephen A Weiss/dec_

DATED: December ___, 2008     KELLEY DRYE & WARREN LLP

By: _Joe Boyle /dec_

DATED: December ___, 2008     QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP

By: _Dominic C Surprenant /dec_

NJ01/BOYLJ/1395/3.2                    63

Exhibit B

James E. Cecchi                         Stephen A. Weiss
Lindsey H. Taylor                       Jonathan Shub
CARELLA, BYRNE, BAIN, GILFILLAN,        SEEGER WEISS LLP
  CECCHI, STEWART & OLSTEIN             1515 Market Street, Suite 1380
5 Becker Farm Rd.                       Philadelphia, PA 19102
Roseland, New Jersey 07068              (215) 564-2300
(973) 994-1700

Paul M. Weiss
George K. Lang
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Interim Class Counsel

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated, | Civil Action No. 07-05325(JLL) |
| Plaintiffs, | |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL and NEXTEL FINANCE COMPANY | |
| Defendants. | |

Plaintiffs Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis,

individually and on behalf of others similarly situated, complain against defendants AT&T

Mobility LLC f/k/a Cingular Wireless LLC (collectively, "AT&T") and Sprint Nextel

Corporation, Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company

(collectively, "Sprint/Nextel") (collectively, "Defendants"), upon personal knowledge as to

Exhibit C

themselves and own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as follows:[1]

## OVERVIEW OF THE ACTION

1.      Plaintiffs bring this action individually and on behalf of proposed classes of persons who were injured by Defendants' business acts and practices in charging cancellation fees.

2.      The proposed classes consist of persons and entities that were parties to a fixed-term subscriber agreement for a Wireless Service Account and were subject to a cancellation fee (also called an Early Termination Fee or Early Cancellation Fee, collectively, "ETF") when they cancelled their wireless service, as defined more fully herein, as well as certain other fixed-term subscribers as set forth more fully herein.

3.      Through a uniform scheme and common course of conduct, Defendants subscriber agreements included a charge which Plaintiffs and other customers were subject to ranging between $150.00 and $200 for cancellation of their wireless service at any time after a trial period but before the end of the "service plan" term, regardless of the reason(s) for cancellation.

4.      As alleged herein, Defendants' conduct gives rise to Plaintiffs' claims for violation of: (1) the Federal Communications Act; (2) violation of substantially similar Consumer Protection laws of certain states; (3) unjust enrichment, and (4) Declaratory Relief pursuant to 28 U.S.C. § 2201; and (5) injunctive relief.

---

[1]     The allegations in this Second Amended Complaint are amended solely as to the Sprint Defendants.  The allegations relating to defendant AT&T remain unchanged from those set forth in the First Amended Complaint.

Exhibit C

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).  This is a class action involving more than 100 class members.  At least one member of the class is a citizen of a State different from Defendants, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

6.      Venue is proper under 28 U.S.C. § 1391.  Defendants conduct substantial business in this District, Defendants are licensed to conduct business in the State of New Jersey and transact business, committed an illegal act in, maintain agents or representatives in, or are found in this District.  Defendants regularly and continuously conduct business in interstate commerce that is carried out in part in this District.

## PARTIES

7.      Plaintiff Judy Larson is a citizen of Washington residing at 2120 N. 17th Avenue, Pasco, Washington whose subscriber agreement contained a provision for, and was charged an ETF by Sprint/Nextel.

8.      Plaintiff Barry Hall is a citizen of California residing at 2775 Carlaris Road, San Marino, California whose subscriber agreement contained a provision for, and was charged an ETF by Sprint/Nextel.

9.      Plaintiff Joe Milliron is a citizen of California residing at 13207 Murano Avenue, Chino, California whose subscriber agreement contained a provision for, and was charged an ETF by Sprint/Nextel.

10.     Plaintiff Tessie Robb is a citizen of Florida residing at 1775 Harbor Rd., Kissimmee, Florida whose subscriber agreement contained a provision for, and was charged an ETF by Sprint/Nextel.

3

Exhibit C

11.    Plaintiff Willie Davis is a citizen of Alabama whose subscriber agreement contained a provision for, and was charged an ETF by Sprint/Nextel but did not pay the ETF.

12.    Defendant Sprint Nextel Corporation is a Kansas corporation with its principal place of business at 2001 Edmund Halley Drive, Reston, Virginia.

13.    Defendant Sprint Spectrum L.P. is a Delaware limited partnership with its principal place of business at 6160 Sprint Parkway, Overland, Kansas.

14.    Nextel Finance Company is a Delaware Corporation, with a principal place of business in Overland Park, Kansas.

15.    Sprint Nextel Corporation and its direct or indirect operating subsidiaries including Nextel Finance Company and Sprint Spectrum, L.P., are sometimes together referred to as the "Sprint Defendants" or "Sprint Nextel".

16.    Defendant AT&T Mobility LLC f/k/a Cingular Wireless LLC ("AT&T") is a Delaware limited liability company with its principal place of business at 5565 Glenridge Connector, Atlanta, Georgia.  The sole member of AT&T Mobility LLC is AT&T, Inc., a Delaware corporation.

### FACTS
### Early Termination Fees

17.    Defendants require customers to abide by standard wireless customer service agreements ("Agreements").

18.    Defendants distribute the Agreements on preprinted, standardized forms that are not subject to modification or negotiation, or, if the consumer is shopping on the Internet, through read-only screens that cannot be modified by users; Defendants present these Agreements to prospective subscribers on a "take it or leave it" basis.  These Agreements are contracts of adhesion.

4

Exhibit C

19.   Each of Defendants' Agreements includes, as a term and condition of service, a purported liquidated damages clause that requires subscribers to pay early termination penalties if for any reason they seek to terminate service before the expiration of the contract period, which is typically one or two years.

20.   These early termination penalties are also due if Defendants terminates the agreement for, among other things, nonpayment by the customer.

21.   The specified penalty for customers terminating service before the expiration of a specified term is typically between $150.00 and $200.00 per line, depending on the Defendant charging the ETF.

22.   The early termination penalty does not vary during the term of the contract.  The customer is required to pay the full penalty whether he or she cancels fifteen calendar days into the contract or one day before the date it is scheduled to expire.

23.   The customer must pay the early termination penalty even if cancellation is the result of non-existent, poor, or otherwise inadequate service.

24.   The early termination is a penalty, and, in fact, is not a reasonable measure of the anticipated or actual loss, if any, that the termination causes Defendants.

25.   Apparently the true purpose of the early termination fee is to recoup equipment costs.  This admission was recently made by the international association that represents the wireless communication industry, the Cellular Telecommunications and Internet Association (CTIA), of which Defendants are members, in a filing to the FCC:  "The longer assured commitment under these term contracts enables the carriers *to reduce handset prices at the*

5

Exhibit C

inception of the term and to reduce monthly service charges, based on the expectation that initial and ongoing costs can be recouped gradually over time."[2]

26.     Defendants therefore disguise a fee to recover equipment costs as a liquidated damages clause, which is an illegal penalty when damages are readily calculable and the charge bears no reasonable relationship to the anticipated harm in the event of a breach by the other party. The termination fee is not actually designed to compensate Defendants for any damages arising from the termination, but has the effect and purpose of locking in subscribers and discouraging them from switching to competing services (what is known as "churn").

27.     Defendants' early termination penalty discourages competition in the wireless industry because it prevents consumers from freely shopping around for the best wireless service.

28.     The early termination penalty is not a rate charged, nor is it part of Defendants' rate structure, nor is it a rate component charged for any "service." It is part of the "Terms and Conditions" and can only be categorized as an illegal penalty provision.

29.     The termination penalty is an illegal and void penalty provision. It constitutes an unjust, unconscionable, unlawful, unfair and deceptive practice under all applicable statutes and laws.

30.     Furthermore, Plaintiffs are informed and believe that any request for a change in service or other account details can only be granted with a renewal of the initial contract term, thereby extending the contract an additional year (or two years) as of the date of the modification. Plaintiffs are also informed and believe that customers are not always informed of or consent to the extended contract term in such a way that ensures that customers are fully informed of all material terms and provide proper consent to any such contract extension. This

---

[2]   "Petition of the Cellular Telecommunications and Internet Association for an Expedited Discovery Ruling," page 15, March 15, 2005, FCC, WT-05-194 (emphasis added).

Exhibit C

required extension further discourages Plaintiffs and Class members from changing their service to obtain lower prices or otherwise modify their plan because it reinstates early termination penalties.

31.    Plaintiffs are informed and believe that many if not the majority of Defendants' customers are locked into customer service agreements beyond the initial one- or two-year period, at which point Defendants no longer need to purportedly "recover" alleged customer acquisition costs.

32.    Plaintiffs are informed and believe that the early termination penalty provisions have permitted Defendants to collect revenues and generate enormous profits as a result of: (a) the payment of the early termination penalties; and (b) the revenue generated by tethering Plaintiffs to service for at least the original contract period, and, in most cases, for additional years.[3]

### No Enforceable Agreement To Arbitrate

33.    Defendants have inserted clauses into its "terms and conditions" that purport to impose mandatory arbitration and/or waive the right to class action. However, these terms and conditions constitute contracts of adhesion insofar as they are drafted entirely by the Defendants on a take-it-or-leave-it basis in a setting in which disputes between the contracting parties predictably involve small amounts of damages. Plaintiffs had neither the bargaining power nor the ability to change the contractual terms. Defendants rely on purported mandatory arbitration provisions to absolutely shield them from civil liability. In practice, the waivers virtually

---

[3]    At the Yankee Group wireless conference in New York in June of 2006, Verizon's Chief Executive, Denny Strigl, announced that it would pro-rate its termination fees, stating "complaints on this issue [ETFs] [are] the single largest that our customers have. . . .It's a legitimate complaint: If they leave in month one or month 23, [customers] pay the same charge." Strigl further referred to ETFs as a "black eye" on the cellular industry. *Verizon to ease termination fees*, Bruce Myerson, June 28, 2006, http://www.msnbc.msn.com/id/13600607/

Exhibit C

immunize the defendants from responsibility for their own wrongful conduct. Moreover, even though the clauses may "provide" for payment of attorney fees in arbitration if the claimant is successful, in practice these clauses still prevent consumers from obtaining adequate representation. Such waivers are unconscionable under the law of this Circuit and state laws, and should not be enforced.

34.      Similar mandatory arbitration provisions have been held unenforceable. *See, e.g., Muhammad v. County Bank of Rehoboth Beach, Delaware*, 189 N.J. 1 (2006); *Ting v. AT&T Corp.*, 319 F.3d 1126 (9th Cir. 2002), *cert. denied*, 540 U.S. 811 (2003); *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005); *Kinkel v. Cingular*, 223 Ill.2d 1 (Ill. 2006); *compare Zobrist v. Verizon Wireless*, 354 Ill.App.3d 1139 (Ill. App. Ct. 2004) (granting motion to compel arbitration, but modifying arbitration clause to permit class-wide arbitration).

35.      The delay incurred by these motions imposes unnecessary and burdensome costs on customers who assert meritorious claims, and ultimately discourages customers from pursuing their legal rights. *See, e.g., Ting*, 319 F.3d 1126.

36.      On information and belief, Defendants do not use arbitration to resolve their own claims against a customer. Instead, they resolve scores of claims against customers by assigning them to collection agencies who then pursue a variety of means to resolve them, including filing lawsuits, but not arbitration.

## CLASS ACTION ALLEGATIONS

### A.    Definition of the Class

37.      Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) are met with respect to the classes defined below, of which Plaintiffs are member:

8

Exhibit C

**AT&T / Cingular Class:**

**Class A (FCA Class):**

All persons and entities who AT&T / Cingular charged an Early Termination Fee, within one year prior to the Complaint's filing date.

**Class B (Similar State Law Sub-Class):**

All persons and entities in Alabama, Arkansas, Arizona, California, Florida, Georgia, Illinois, Kansas, Michigan, Missouri, New Jersey, New York, Ohio, Oregon, Pennsylvania, Virginia and/or Washington who AT&T / Cingular charged an Early Termination Fee, within applicable statute of limitations.[4]

**Sprint / Nextel Class:**

All persons in the United States who are or were parties to a personal fixed-term subscriber agreement for a Sprint Nextel (defined as "Sprint Nextel Corporation and all of its direct or indirect operating subsidiaries, and all other subsidiaries, and its affiliates offering Sprint Nextel wireless services under a brand owned directly or indirectly by Sprint Nextel Corporation, together offering wireless services in the United States") Wireless Service Account (defined as "any wireless service account with Sprint Nextel for the provision of wireless voice and/or data services, including but not limited to voice service, data, email, picture mail, streaming video and music, web/internet access, navigation, text messaging and/or other messaging services of any kind") for personal or mixed business/personal use, whether on the Sprint CDMA network or Nextel iDEN network, or both, excluding accounts for which the responsible party for the Wireless Service Account is a business, corporation or a governmental entity, entered into between July 1, 1999 and December 31, 2008 and whose claims relate in any way to an Early Termination Fee (defined as "any charge described, imposed, charged, or collected pursuant to a provision in a fixed-term subscriber agreement calling for the payment of a flat-rate amount for terminating the agreement prior to the expiration of the agreement's specified term, no matter how titled or characterized by Sprint Nextel, including liquidated damage charges, alternative means of performance charges, or early termination fee charges, regardless of amount, and regardless of whether the charge was imposed pursuant to a nationwide subscriber agreement of Sprint Nextel, or pursuant to a special, promotional, local or limited plan of Sprint Nextel"), or use of an Early Termination Fee in a fixed-term subscriber agreement, and/or use or propriety of a fixed-term subscriber agreement whether the term was for the initial fixed-term subscriber agreement, or subsequent extensions or renewals to the fixed-term

---

[4]   *See e.g.,* Cal. Bus. & Prof. Code § 17200 *et seq.,* and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); 815 ILCS § 505/1 *et seq.* (Illinois); Mo. Rev. Stat. § 407.010 *et seq.*; N.J.S.A. § 56:8-1 *et seq.*; and Wash. Rev. Code § 19.86.010 *et seq.*

9

Exhibit C

subscriber agreement for whatever reason and/or who were charged by or paid an Early Termination Fee to Sprint Nextel, excluding only the *Ayyad* Class Claims (defined as only those certain claims actually litigated and determined in the severed action captioned *Ayyad, et al. v. Sprint Spectrum, et al.*, Superior Court of the State of California, Alameda County, Case No. RG03-121510. The *Ayyad* Class Claims were, by order of the Alameda County Superior Court, severed from all other claims alleged in the coordinated proceedings pending in the Cellphone Termination Fee Cases (California Judicial Council Coordinated Proceeding No. 4332), and only the severed claims actually litigated and determined are intended to be excepted from the Releases set forth elsewhere in this Agreement. The *Ayyad* Class Claims do not include the California Subscriber Class Claims, nor any other claims that could have been alleged by *Ayyad* Class members but were not actually litigated and determined, nor to the *Robertson v. Nextel of Communications, Inc.* iDEN claims (on which summary adjudication was granted in favor of Nextel, currently pending on motion for reconsideration) which are part of the Cellphone Termination Fee Cases) and persons whose right to sue Sprint Nextel as a class member is otherwise barred by a prior settlement agreement and/or prior final adjudication on the merits. The class includes persons who were subject to an ETF, whether or not they paid any portion of the ETF either to Sprint Nextel or to any outside collection agency or at all.

38.    The classes may be modified pending discovery. Excluded from the Class are members of the judiciary, Defendants, any entity in which they have a controlling interest, and their officers and directors, and the members of their immediate families are excluded.

B.    **Numerosity**

39.    At this time, Plaintiffs does not know the exact size of the ETF Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe that ETF Class members are so numerous that joinder of all members is impracticable. The number of class members can be determined through appropriate discovery.

C.    **Commonality**

40.    There are questions of law or fact common to the ETF Class, including at least the following:

(a)    Whether the ETF is unjust, unreasonable and/or unlawful;

(b)    Whether Defendants' conduct violated the Federal Communications Act;

10

Exhibit C

 (c) Whether Defendants charged Class members ETFs;

 (d) Whether the ETF is unjust, and/or unlawful;

 (e) Whether Defendants' conduct constitutes deceptive, unfair and/or oppressive conduct;

 (f) Whether Defendants are/were unjustly enriched;

 (g) Whether Defendants intended the ETF to subsidize the cost of cellular telephones purchased by Plaintiffs and the Class from Defendants;

 (h) Whether Declaratory Relief is appropriate;

 (i) Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of such damages; and

 (j) Whether injunctive relief is appropriate.

**D. Typicality**

41. Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of all members of the class.

**E. Adequacy**

42. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of Class members and do not have interests adverse to the Class.

**F. The Prerequisites of Rule 23(b)(2) are Satisfied**

43. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

Exhibit C

44.    The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal.   Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

45.    Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

46.    Defendants' systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**G.    The Prerequisites of Rule 23(b)(3) are Satisfied**

47.    This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.  This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class defined above.

<u>COUNT I</u>
**(Violation of § 201 of the Federal Communications Act against AT&T)**

48.    Plaintiffs repeat the allegations contained in Paragraphs 1-47 as if fully set forth herein.

12

Exhibit C

49.   At all times relevant hereto there was in full force and effect the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

50.   This Count is asserted by Plaintiffs individually and on behalf of AT&T/Cingular Class A.

51.   AT&T is a common carrier engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq.*

52.   AT&T's termination penalties, described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

53.   Section 201(b) of the FCA provides that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable.  47 U.S.C. § 201(b).

54.   AT&T's ETF is unjust, unreasonable and/or unlawful under Section 201(b).

55.   As a direct and proximate result of AT&T's violation of 47 U.S.C. §§ 201(b) described above, Plaintiffs and the Class have been damaged.

WHEREFORE, Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Classes defined herein;

B.   Designating Plaintiffs as representatives of the Classes and counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Classes and against AT&T;

D.   Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

13

Exhibit C

    E.    Granting such further relief as the Court deems just.

**COUNT II**
**(Violation of § 201 of the Federal Communications Act against Sprint / Nextel)**

56.    Plaintiffs repeat the allegations contained in Paragraphs 1-55 as if fully set forth herein.

57.    At all times relevant hereto there was in full force and effect the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 201 *et seq.*

58.    This Count is asserted by Plaintiffs individually and on behalf of the Sprint/Nextel Class.

59.    The Sprint Defendants are common carriers engaged in interstate or foreign communication by wire or radio, and subject to the common carrier regulation set forth at 47 U.S.C. § 201, *et seq.*

60.    The Sprint Defendants' inclusion in subscriber agreements, charging and/or collection of termination penalties and contract term practices, described above, are charges and/or practices in connection with communication service, subject to the requirements of 47 U.S.C. § 201(b).

61.    Section 201(b) of the FCA provides that all charges, practices, classifications, and regulations for and in connection with communication service, shall be just and reasonable. 47 U.S.C. § 201(b).

62.    The Sprint Defendants' ETFs are unjust, unreasonable and/or unlawful under Section 201(b).

63.    As a direct and proximate result of the Sprint Defendants' violation of 47 U.S.C. §§ 201(b) described above, Plaintiffs and the Class have been damaged.

14

Exhibit C

WHEREFORE, Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Classes defined herein;

B.    Designating Plaintiffs as representatives of the Classes and counsel as Class Counsel;

C.    Awarding Plaintiffs and the Classes compensatory and punitive damages;

D.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest;

E.    For an Order permanently enjoining Sprint/Nextel from engaging in the unfair practices set forth herein;

F.    For payment of reasonable attorney's fees and costs; and

G.    Granting such further relief as the Court deems just.

**COUNT III**
**(Violation of Consumer Protection Acts against AT&T / Cingular)**

64.    Plaintiffs repeat the allegations contained in Paragraphs 1-63 as if fully set forth herein.

65.    This Count is asserted by Plaintiffs individually and on behalf of AT&T/Cingular Class B, as defined herein.

66.    Plaintiffs bring their statutory fraud claims pursuant to the substantially similar Consumer Fraud Acts of Class B,[5] all of which were enacted and designed to protect consumers against unfair, deceptive and/or fraudulent business practices. *See, e.g.*, N.J.S.A. § 56:8-1 *et seq.*

---

[5]    *See e.g.*, Cal. Bus. & Prof. Code § 17200 *et seq.*; Fla. Stat. Ann. § 501.201 *et seq.*; 815 ILCS § 505/1 *et seq.*; MICH. COMP. LAWS § 445.901, *et seq.*; Mo. Rev. Stat. § 407.010 *et seq.*; N.J.S.A. § 56:8-1 *et seq.*; Wash. Rev. Code § 19.86.010 *et seq.*

15

Exhibit C

These Consumer Protection Acts are modeled after the FTC's consumer protection provisions and are collectively referred to herein as "Consumer Acts."

67.    For example, New Jersey's Consumer Fraud Act (N.J.S.A. § 56:8-2) provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice

68.    At all relevant times, Plaintiffs, Class members and AT&T were "persons" within the meaning of the Consumer Acts, *see e.g.,* N.J.S.A. § 56:8-1.

69.    The imposition of an ETF is an act or practice in the conduct of trade or commerce.

70.    The imposition of an ETF impacts the public interest.

71.    The imposition of an ETF is deceptive because AT&T describes it as a liquidated damages clause and state that its damages are difficult or impracticable to calculate, when, in fact, it is a charge to recover the cost of equipment, and Defendants' damages, if any, are in fact quite simple to calculate and/or recover.

72.    The imposition of an ETF is unfair because it is imposed even when AT&T fails to properly provide class members with the wireless cellular services for which they contracted (as reflected in AT&T's own records); while class members are always at risk of breach, AT&T is never at risk of breach.

73.    The imposition of an ETF is further unfair because it is imposed even when AT&T does not suffer any damages (as reflected in their own records) from a class member's early cancellation.

16

Exhibit C

74.    The ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, defendants turn "delinquent" accounts over to collections and negatively impact consumers credit history); and causes consumers substantial injury.

75.    Plaintiffs and the ETF Class suffered economic injury as a direct and proximate result of AT&T's conduct, including but not limited to the amount of the ETFs improperly charged.

76.    Defendants committed deceptive acts or practices within the meaning of the Consumer Acts by engaging in the acts and practices alleged herein.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Class and or Classes defined herein;

B.    Designating Plaintiffs as Class representative and counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Classes and against AT&T;

D.    Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.    Granting such further relief as the Court deems just.

## COUNT IV
### (Violation of Consumer Protection Acts against Sprint / Nextel)

77.    Plaintiffs repeat the allegations contained in Paragraphs 1-76 as if fully set forth herein.

17

Exhibit C

78.     This Count is asserted by Plaintiffs individually and on behalf of the Sprint/Nextel

Class, as defined herein.

79.     Plaintiffs bring their statutory fraud claims pursuant to the substantially similar

Consumer Fraud Acts of Class B,[6] all of which were enacted and designed to protect consumers

against unfair, deceptive and/or fraudulent business practices. *See, e.g.*, N.J.S.A. § 56:8-1 *et seq.*

These Consumer Protection Acts are modeled after the FTC's consumer protection provisions

and are collectively referred to herein as "Consumer Acts."

80.     For example, New Jersey's Consumer Fraud Act (N.J.S.A. § 56:8-2) provides:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception,
> fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment,
> suppression, or omission of any material fact . . .
> whether or not any person has in fact been misled,
> deceived or damaged thereby, is declared to be an
> unlawful practice.

81.     At all relevant times, Plaintiffs, Class members and the Sprint Defendants were

"persons" within the meaning of the Consumer Acts, *see e.g.*, N.J.S.A. § 56:8-1.

82.     The inclusion in a subscriber agreement, charging or collecting of an ETF is an

act or practice in the conduct of trade or commerce.

83.     The inclusion in a subscriber agreement, charging or collecting of an ETF impacts

the public interest.

84.     The inclusion in a subscriber agreement, charging or collecting of an ETF is

deceptive because the Sprint Defendants describe it as a liquidated damages clause and state that

its damages are difficult or impracticable to calculate, when, in fact, it is a charge to recover the

---

[6]     *See e.g.*, Cal. Bus. & Prof. Code § 17200 *et seq.*; Fla. Stat. Ann. § 501.201 *et seq.*; 815
ILCS § 505/1 *et seq.*; MICH. COMP. LAWS § 445.901, *et seq.*; Mo. Rev. Stat. § 407.010 *et seq.*;
N.J.S.A. § 56:8-1 *et seq.*; Wash. Rev. Code § 19.86.010 *et seq.*

Exhibit C

cost of equipment, and the Sprint Defendants' damages, if any, are in fact quite simple to calculate and/or recover.

85.   The inclusion in a subscriber agreement, charging or collecting of an ETF is unfair because it is imposed even when Defendants fail to properly provide class members with the wireless cellular services for which they contracted (as reflected in Defendants' own records); while class members are always at risk of breach, the Sprint Defendants are never at risk of breach.

86.   The inclusion in a subscriber agreement, charging or collecting of an ETF is further unfair because it is imposed even when the Sprint Defendants do not suffer any damages (as reflected in their own records) from a class member's early cancellation.

87.   The inclusion in a subscriber agreement, charging or collecting of an ETF is an illegal penalty and is unfair because it offends public policy; is so oppressive that the consumer has little alternative but to submit (*e.g.*, defendants turn "delinquent" accounts over to collections and negatively impact consumers credit history); and causes consumers substantial injury.

88.   Plaintiffs and the ETF Class suffered economic injury as a direct and proximate result of the Sprint Defendants' conduct, including but not limited to the amount of the ETFs improperly charged.

89.   The Sprint Defendants committed deceptive acts or practices within the meaning of the Consumer Acts by engaging in the acts and practices alleged herein.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Classes defined herein;

19

Exhibit C

B.    Designating Plaintiffs as representatives of the Classes and counsel as Class counsel;

C.    Awarding Plaintiffs and the Classes compensatory and punitive damages;

D.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest;

E.    For an Order permanently enjoining Sprint/Nextel from engaging in the unfair practices set forth herein;

F.    For payment of reasonable attorney's fees and costs; and

G.    Granting such further relief as the Court deems just.

**COUNT V**
**(Declaratory Relief Pursuant To 28 U.S.C. § 2201 against AT&T)**

90.    Plaintiffs repeat the allegations contained in Paragraphs 1-89 as if fully set forth herein.

91.    This Count is asserted by Plaintiffs individually and on behalf of AT&T/Cingular Class B, as defined herein.

92.    There is an actual controversy between AT&T and the Classes concerning the enforceability of the early termination fee provisions contained in the customer service agreements to which they are all parties.

93.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

94.    Plaintiffs are interested parties who seek a declaration of their rights and legal relations vis-à-vis AT&T with regard to early termination fee provisions contained in the customer service agreements to which they are all parties.

Exhibit C

95.    AT&T's ETF is an unenforceable penalty in that it purports to be a liquidated damages clause when, in fact, the ETF is not a reasonable estimate of the harm AT&T might incur in the event that the customer were to breach his or her customer service agreement.

96.    Moreover, the ETF is chargeable to the customer even if the customer service agreement is terminated by AT&T as a result of a breach by AT&T. Thus, regardless of the reason for the termination of the customer service agreement or the fault of the parties, the customer is subject to being charged an ETF.

97.    Plaintiffs and other class members who were charged and who paid an ETF to AT&T have been damaged because they paid a charge which was not legally due and owing.

98.    Plaintiffs and other class members who where charged and who did not pay an ETF to AT&T have also had their credit damaged because AT&T has reported that a debt is owing from such persons when, in fact, no debt is due and owing.

WHEREFORE, Plaintiffs, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2), and certifying the Injunction Class defined herein;

B.    Designating Plaintiffs as representatives of the Classes and counsel as Class counsel;

C.    Entering judgment in favor of Plaintiffs and Classes and against AT&T;

D.    Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.    Granting such further relief as the Court deems just.

Exhibit C

## COUNT VI
### (Declaratory Relief Pursuant To 28 U.S.C. § 2201 against Sprint/Nextel)

99.   Plaintiffs repeat the allegations contained in Paragraphs 1-98 as if fully set forth herein.

100.   This Count is asserted by Plaintiffs individually and on behalf of the Sprint/Nextel Class, as defined herein.

101.   There is an actual controversy between the Sprint Defendants and the Classes concerning the legality of the early termination fee provisions contained in the customer service agreements to which they are all parties.

102.   Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

103.   Plaintiffs are interested parties who seek a declaration of their rights and legal relations vis-à-vis the Sprint Defendants with regard to early termination fee provisions contained in the customer service agreements to which they are or were parties.

104.   The Sprint Defendants' ETF is an unenforceable penalty in that it purports to be a liquidated damages clause when, in fact, the ETF is not a reasonable estimate of the harm the Sprint Defendants might incur in the event that the customer were to breach his or her customer service agreement.

105.   Moreover, the ETF is chargeable to the customer even if the customer service agreement is terminated by the Sprint Defendants as a result of a breach by the Sprint Defendants. Thus, regardless of the reason for the termination of the customer service agreement or the fault of the parties, the customer is subject to being charged an ETF.

Exhibit C

106.    Plaintiffs and other class members who were subject to, charged and/or paid an ETF to the Sprint Defendants have been damaged because they paid a charge which was not legally due and owing.

107.    Plaintiffs and other class members who where charged and who did not pay an ETF to the Sprint Defendants have also had their credit damaged because the Sprint Defendants have reported that a debt is owing from such persons when, in fact, no debt is due and owing.

WHEREFORE, Plaintiffs, individually and on behalf of the ETF Class of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Classes defined herein;

B.    Designating Plaintiffs as representatives of the Classes and counsel as Class Counsel;

C.    Awarding Plaintiffs and the Classes compensatory and punitive damages;

D.    Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest;

E.    For an Order permanently enjoining Sprint/Nextel from engaging in the unfair practices set forth herein;

F.    For payment of reasonable attorney's fees and costs; and

G.    Granting such further relief as the Court deems just.

Exhibit C

## COUNT VII
### (Unjust Enrichment against AT&T / Cingular)

108.    Plaintiffs repeat the allegations contained in Paragraphs 1-107 as if fully set forth herein.

109.    This Count is asserted by Plaintiffs individually and on behalf of AT&T/Cingular Class B, as defined herein.

110.    Defendants received and retained a benefit conferred by Plaintiff and Class Members at their expense through the imposition and collection of ETFs.

111.    As hereinabove alleged, AT&T has benefited unjustly at Plaintiffs and Class Members' expense, which in equity and good conscience, AT&T should not be permitted to retain.

112.    Plaintiffs and Class Members have no adequate remedy at law because of AT&T's conduct.

113.    As a direct and proximate result of AT&T's unjust enrichment, Plaintiffs and the Class members have suffered non-monetary and monetary injury.

114.    Plaintiffs, on behalf of themselves and the Classes, are entitled to restitution from AT&T and an order to ameliorate all ETF credit-related dunning and for the disgorgement of all ETF profits, benefits, and other compensation obtained AT&T for its wrongful conduct.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(2) (and/or (b)(3)), and certifying the Class and or Classes defined herein;

B.    Designating Plaintiffs as Class representative and counsel as Class Counsel;

Exhibit C

C.   Entering judgment in favor of Plaintiffs and the Classes and against AT&T;

D.   Awarding Plaintiffs and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon; and

E.   Granting such further relief as the Court deems just.

### COUNT VIII
#### (Unjust Enrichment against Sprint / Nextel)

115.   Plaintiffs repeat the allegations contained in Paragraphs 1-114 as if fully set forth herein.

116.   This Count is asserted by Plaintiffs individually and on behalf of the Sprint/Nextel Class, as defined herein.

117.   The Sprint Defendants received and retained a benefit conferred by Plaintiff and Class Members at their expense through the imposition and collection of ETFs.

118.   As hereinabove alleged, the Sprint Defendants have benefited unjustly at Plaintiffs and Class Members' expense, which in equity and good conscience, the Sprint Defendants should not be permitted to retain.

119.   Plaintiffs and Class Members have no adequate remedy at law because of the Sprint Defendants' conduct.

120.   As a direct and proximate result of the Sprint Defendants' unjust enrichment, Plaintiffs and the Class members have suffered non-monetary and monetary injury.

121.   Plaintiffs, on behalf of themselves and the Classes, are entitled to restitution from the Sprint Defendants and an order to ameliorate all ETF credit-related dunning and for the disgorgement of all ETF profits, benefits, and other compensation obtained by the Sprint Defendants, for its wrongful conduct.

Exhibit C

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) and (b)(3), and certifying the Classes defined herein;

B.   Designating Plaintiffs as representatives of the Classes and counsel as Class Counsel;

C.   Awarding Plaintiffs and the Classes compensatory and punitive damages;

D.   Awarding Plaintiffs and the Classes pre-judgment and post-judgment interest;

E.   For an Order permanently enjoining Sprint/Nextel from engaging in the unfair practices set forth herein;

F.   For payment of reasonable attorney's fees and costs; and

E.   Granting such further relief as the Court deems just.

**COUNT IX**
**(Injunctive Relief Against Sprint / Nextel)**

122.   Plaintiffs repeat the allegations contained in Paragraphs 1-121 as if fully set forth herein.

123.   This Count is asserted by Plaintiffs individually and on behalf of the Sprint/Nextel Class as defined herein.

124.   The conduct set forth herein regarding the charging and collection of an ETF is an unjust, unreasonable, and illegal commercial pracitce in violation of, *inter alia*, § 201 of the Federal Communications Act, and the Consumer Protection laws of the States set forth herein.

125.   Plaintiffs and Class Members have no adequate remedy at law because of the Sprint Defendants' conduct.

26

Exhibit C

126.   As a direct and proximate result of the Sprint Defendants' conduct, Plaintiffs and the Class members have suffered non-monetary and monetary injury.

127.   As a direct and proximate result of the Sprint Defendants' conduct, Plaintiffs and the Class members are entitled to equitable relief enjoining the illegal conduct described herein.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

A.   A temporary, preliminary and permanent injunction enjoining the illegal conduct described herein.

B.   For payment of reasonable attorneys' fees and costs; and

C.   For such other and further relief as the Court deems equitable and just.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Interim Class Counsel

By:   /s/ James E. Cecchi
JAMES E. CECCHI

Dated:  December 5, 2008

Paul M. Weiss                          Stephen A. Weiss
George K. Lang                         Jonathan Shub
FREED & WEISS LLC                      SEEGER WEISS LLP
111 West Washington Street, Suite 1331 1515 Market Street, Suite 1380
Chicago, Illinois 60602                Philadelphia, PA 19102
(312) 220-0000                         (215) 564-2300

Exhibit C

### DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all claims so triable.

CARELLA, BYRNE, BAIN, GILFILLAN,
CECCHI, STEWART & OLSTEIN
Interim Class Counsel

By:   /s/ James E. Cecchi
       JAMES E. CECCHI

Dated: December 5, 2008

Paul M. Weiss
George K. Lang
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Stephen A. Weiss
Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Interim Class Counsel

Exhibit C

NOT FOR PUBLICATION                                          CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, et al., individually and on behalf of all others similarly situated, | Civil Action No.: 07-5325 (JLL) |
| Plaintiffs, | |
| v. | ORDER |
| SPRINT NEXTEL CORPORATION, et al., | |
| Defendants. | |

For the reasons set forth in the Court's corresponding Opinion dated January 15, 2010,

IT IS on this 15th day of January, 2010,

ORDERED that the proposed settlement Class is certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); and it is further

ORDERED that final approval is hereby granted to the Settlement Agreement that was preliminarily approved on December 8, 2008, as the settlement is fair and reasonable and satisfies the multi-factor balancing test laid out by Girsh v. Jepson, 521 F.3d 153, 157 (3d Cir. 1975); and it is further

ORDERED that the motion by Class Counsel for an award of attorneys' fees and expenses [Docket Entry No. 383] is granted in part and denied in part. Attorneys' fees in the amount of $5,775,000 are hereby awarded to Class Counsel. Such fee award is subject to reduction by any out-of-pocket litigation expenses which are (or may be) granted by the Court. Class Counsel's request

-1-

Exhibit D

for out-of-pocket litigation expenses in the amount of **$169,518.43** is hereby granted. The request by Class Counsel for additional expenses is **hereby denied without prejudice.** The following firms: (1) Carey & Danis, (2) Lief, Cabraser, (3) Foley Bezek, (4) Aria Ozzello, and (5) Jacqueline Mottek may submit supplemental declarations to the Court by **Wednesday, February 10, 2010** setting forth: (a) the specific types and/or categories of out-of-pocket costs comprising the total expenses requested, and (b) a short summary explaining the basis on which such expenses were reasonably necessary to the prosecution of the Larson matter; and it is further

**ORDERED** that the motion by the Bursor Group[1] for an award of attorneys' fees and expenses associated with their representation of the Galleguillos Objectors [Docket Entry No. 385] **is granted in part and denied in part.** Attorneys' fees in the amount of **$27,696.90** to Bramson, Plutzik, Mahler & Birkaueser, **$98,844.90** to Law Offices of Scott Bursor, and **$63,779.10** to Faruqi & Faruqui are hereby awarded. Out-of-pocket litigation expenses in the amount of **$3,805.57** to Bramson, Plutzik, Mahler & Birkaueser, **$575.68** to Law Offices of Scott Bursor, and **$3,348.40** to Faruqi & Faruqui are also awarded; and it is further

**ORDERED** that the motion by Lite DePalma for an award of attorneys' fees and expenses associated with their representation of the Galleguillos Objectors [Docket Entry No. 381] is **granted in part and denied in part.** Attorneys' fees in the amount of **$63,779.10** and expenses in the amount of **$860.90** are hereby awarded to Lite DePalma; and it is further

---

[1] The "Bursor Group" is comprised of: (1) Law Offices of Scott Bursor, (2) Faruqi & Faruqui, and (3) Bramson, Plutzik, Mahler & Birkhaeuser, LLP.

Exhibit D

ORDERED that the motion by the Plutzik Group[2] for an award of attorneys' fees and expenses associated with their work on the Ayyad, Robertson, Molfetas and Lee matters [Docket Entry No. 386] is **granted in part and denied in part**. Attorneys' fees in the amount of **$565,950** are hereby awarded to the Plutzik Group. Members of the Plutzik Group shall submit supplemental declarations to Class Counsel clearly listing the number of hours and lodestar specifically associated with their work on behalf of the California Subscriber Action on or before **Wednesday, February 10, 2010**. Class Counsel shall then determine the most reasonable method of allocating the $565,950 fee award among the various firms comprising the Plutzik Group and advise the Court accordingly. The request for reimbursement of out-of-pocket litigation expenses by members of the Plutzik Group is **denied without prejudice**. Members of the Plutzik Group may submit supplemental declarations to the Court by **Wednesday, February 10, 2010** setting forth the specific types and/or categories of expenses associated with their work done solely on behalf of the California Subscriber Action; and it is further

ORDERED that Class Counsel is vested with the discretion to distribute the remainder of the fee award to those attorneys who assisted in creation of the present settlement fund; and it is further

ORDERED that Class Counsel and Sprint shall implement the Settlement Agreement in accordance with its terms and with the holdings set forth in this Opinion and Order; and it is further

---

[2] The "Plutzik Group" is comprised of: (1) Bramson, Plutzik, Mahler & Birkhaeuser, LLP, (2) Law Offices of Scott Bursor, (3) Franklin & Franklin, (4) Faruqi & Faruqi, LLP, (5) Gilman and Pastor, LLP, (6) Law Offices of Anthony A. Ferrigno, (7) Reich Radcliffe & Kuttler, LLP, (8) Law Offices of Carl Hilliard, (9) Mager & Goldstein, (10) Law Offices of Joshua P. Davis, and (11) Cuneo Gilbert & LaDuca, LLP.

-3-

Exhibit D

ORDERED that the file in this matter is hereby CLOSED.

José L. Linares
UNITED STATES DISTRICT JUDGE

-4-

Exhibit D