# DrinkerBiddle&Reath
L L P

Matthew J. Fedor
973-549-7329
matthew.fedor@dbr.com

*Law Offices*

500 Campus Drive
Florham Park, NJ
07932-1047

973-360-1100 phone
973-360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON DC
WISCONSIN

July 21, 2010

**VIA ECF AND FIRST CLASS MAIL**

Honorable Jose L. Linares
United States District Court
Martin Luther King, Jr. Federal Bldg. and U.S. Courthouse
50 Walnut Street
Newark, NJ  07102

Re:   *Larson, et al. v. AT&T Mobility LLC, et al.,*
        Civil Action No. 07-5325

Dear Judge Linares:

Defendant AT&T Mobility LLC ("ATTM") writes in response to the Court's request that the parties address how the requirement of predominance is met in the ATTM ETF settlement and the impact, if any, of the recent decision by the United States Court of Appeals for the Third Circuit in *Sullivan v. DB Investments, Inc.*, 2010 WL 2736947 (3d Cir. July 13, 2010).  As discussed below, the predominance analysis in *Sullivan* focuses on a threshold determination that predominance cannot exist where certain class members indisputably lack standing to assert any claim at all against the defendant.  As we explain below, although ATTM certainly would dispute the merits of all of plaintiffs' claims, and would assert defenses against all of plaintiffs' claims, every member of the class does have claims which can be and have been asserted regarding early termination fees ("ETFs").  Accordingly, the claims in this action are very different from those at issue in *Sullivan*.  For this reason, *Sullivan* does not preclude certification of the Settlement Classes, does not affect final approval of this settlement, and the Court can and should find that the predominance requirement is satisfied with respect to this settlement.

*Sullivan* involved a class settlement of claims arising from De Beers' alleged monopoly in the diamond market that were brought by two nationwide classes, comprised of direct purchasers and indirect purchasers of De Beers' diamonds.[1]  *Id.* at *1-2.   The Third Circuit's predominance inquiry focused entirely on the indirect

*Edward A. Gramigna, Jr.
Partner responsible for
Florham Park Office*

---

[1]  Direct purchasers were those individuals or entities that acquired rough gem diamonds directly from De Beers or one of its competitors.  *Sullivan*, 2010 WL 2736947 at *2.  Indirect purchasers were those individuals or entities, such as consumers or jewelry retailers, that acquired either rough or cut-and-polished gem diamonds, but did not do so from De Beers or one of its competitors.  *Id.*

DrinkerBiddle&Reath
L L P

Honorable Jose L. Linares
July 21, 2010
Page 2

purchaser class. The indirect purchaser class, which lacked standing to bring a federal antitrust claim under the Clayton Act, asserted claims solely under state antitrust, consumer protection, and unjust enrichment law. *Id.* at *2.

After analyzing the differences among the states' laws, the Third Circuit concluded that the states varied significantly regarding whether indirect purchasers had standing under state law to assert *any* antitrust-based claims under any state-law theory, and that these variations "represent[ed] fundamental policy differences among the several states, and they are in consequence as different as it is possible to be, with some states giving substantive antitrust rights to indirect purchasers, other states giving more limited rights, and others denying such rights altogether. *Id.* at *9. The court further reasoned that because the predominance requirement "presupposes that everyone in the class at least has a cause of action," and because the indirect purchasers did not have a right to recover in all states under antitrust theories, "no question of law or fact regarding their legal rights is uniform throughout the class." *Id.* at *10. The court found the same to be true with respect to the state consumer protection and unjust enrichment claims, because those claims were nothing more than an attempt to assert antitrust claims through other state law vehicles. *Id.* at *12-13. For example, in some of those jurisdictions that denied any substantive antitrust rights to indirect purchasers, this group was also precluded from invoking consumer protection statutes or the common law to obtain relief for antitrust injuries for which they were otherwise unable to seek redress. *Id.* Thus, the Third Circuit held that "a district court abuses its discretion when . . . it certifies a nationwide class of litigants whose claims implicate the laws of multiple jurisdictions, despite the fact that only some of those jurisdictions recognize the claims for which recovery is sought." *Id.* at *14.

The Third Circuit cautioned that its holding did not represent a "repudiation of all nationwide class actions based on state law," and re-affirmed the appropriateness of using class action litigation to resolve state court claims. *Id.* The Court further acknowledged that in many cases, the existence of common legal or factual questions will be evident, and reiterated that the more searching inquiry undertaken in *Sullivan* was only necessary given the fact that the indirect purchaser class was comprised of many individuals who would otherwise have been unable to pursue an individual action for *any* claim. *Id.* at 14 & n.16.

The concerns that underpin the Third Circuit's holding in *Sullivan* are not present in the ATTM ETF settlement, as each ATTM class member has the standing and ability to assert claims regarding ATTM's flat-rate ETFs. To be sure, ATTM disputes that plaintiffs' claims have any merit, and further asserts that the claims are subject to both defenses as well as counterclaims for actual damages (in the event that the ETF were to be judged invalid). But, as is self-evident from the many years of ETF litigation against all of the national wireless carriers, plaintiffs have the ability to assert claims regarding

DrinkerBiddle&Reath
L L P

Honorable Jose L. Linares
July 21, 2010
Page 3

ETFs. These cases contain a common factual thread arising from the nature and purpose of the ETF, its use by ATTM, the amount of the ETF and how that amount measures up to the various costs and losses resulting from early termination.

The key inquiry under *Sullivan* is whether all class members have the ability to assert any claim against defendant. First and foremost, the classes in this case have asserted a claim under federal law, as Count I asserts a violation of the Federal Communications Act, 47 U.S.C. § 201(b). Section 201(b) of the Federal Communications Act provides that any unjust or unreasonable charge, practice, classification or regulation imposed by a common carrier are unlawful. Plaintiffs allege that, as unlawful penalties, ETFs are an unjust or unreasonable charge or practice, contrary to 47 U.S.C. § 201(b). This federal claim provides each class member a claim against ATTM and, therefore, provides a predominance of legal and factual issues for purposes of settlement class certification analysis under Fed. R. Civ. P. 23(b)(3). The existence of the federal Section 201(b) claim, standing alone, is sufficient to distinguish this action from *Sullivan*, where the indirect purchaser class asserted no federal claims. Indeed, the classes in this case are thus more akin to the *direct purchaser* class in *Sullivan*, which had asserted a federal antitrust claim under the Clayton Act and as to which there were no predominance concerns.

In light of the Section 201(b) claim, the Court need proceed no further in order to distinguish *Sullivan*, find predominance exists, and grant final approval. An analysis of the additional claims, however, further supports a finding of predominance for purposes of settlement. Plaintiffs also assert claims for: (1) violations of state consumer protection acts (Count III); (2) a declaratory judgment that the flat-rate ETFs were unlawful penalties (Count V); and (3) unjust enrichment (Count VII). The predominance requirement is also met with respect to the certification of these state law claims. Although variations in these state-law claims exist, members of the Settlement Classes have standing to challenge ATTM's flat-rate ETF provision, and are not categorically barred from seeking relief for the injury allegedly sustained as a result of the business practice of charging flat-rate ETFs.

At their core, the state-law claims advanced by the Settlement Classes seek relief from the allegedly invalid ETF. But unlike the indirect purchasers in *Sullivan*, Plaintiffs here are not "categorically foreclosed" from doing so. *Id.* at *13. Rather, state laws on consumer protection and/or liquidated damages provide a vehicle to challenge the validity of ATTM's flat-rate ETF provisions and to attempt to recover damages or to obtain a declaratory judgment.[2] While ATTM would certainly contend that the

---

[2] The Third Circuit emphasized in *Sullivan* that it was not creating an obligation requiring district courts to conduct "rigorous state-by-state analyses" in connection with all nationwide settlement classes. *Sullivan*,

(Continued)

DrinkerBiddle&Reath
L L P

Honorable Jose L. Linares
July 21, 2010
Page 4

disparities among the states' laws would pose trial management issues were this case litigated through trial, such manageability concerns are not relevant in connection with the evaluation of a settlement. *See Sullivan*, 2010 WL 2736947 at \*7 ("When presented

---

(Continued)

2010 WL 2736947 at \*14. Certainly, the right to recover under state law for alleged unfair and/or excessive charges is a far more settled right than the indirect purchaser antitrust claims at issue in *Sullivan. See, e.g.,* **California:** *See* Cal. Bus. & Prof. Code § 17200 (making unlawful any unlawful, unfair or fraudulent business act); Cal. Civil Code § 1671 (providing standard for evaluating validity of liquidated damages clause); *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1383, 1390 (Cal. Ct. App. 1991) (in class action alleging bank's overlimit and late fees were invalid liquidated damages and thus constituted an unfair business practice under § 17200, court upheld judgment offsetting defendant's actual damages); **Connecticut:** *See* Conn. Gen. Stat. § 42-110b ("No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."); *id.* at 42-100g (providing private cause of action); *American Car Rental, Inc. v. Comm'n of Consumer Protection*, 869 A.2d 1198 (Conn. 2005) (holding that a liquidated damages provision that does not adequately anticipate damages, but rather serves as a means to prevent breach of contract, violates the Connecticut Unfair Trade Practices Act); **District of Columbia:** *See* D.C. Code § 28-3904 (making trade practices that mislead, deceive, or damage consumers unlawful, including enforcing unconscionable terms or provisions of sales or leases); *id.* § 28-3905(k)(1) (providing private cause of action for any person seeking relief from an unlawful trade practice); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714 (D.C. App. 2003) (noting that the CCPA protects consumers from "*all* improper trade practices," including unilaterally imposed liquidated damages in consumer contracts); **Hawaii:** *See* Haw. Rev. Stat. § 480-2 (providing private cause of action for "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"); *Haw. Cmty. Fed. Credit Union v. Keka*, 11 P.3d 1, 16 (Haw. 2000) (finding practice is unfair within meaning of Haw. Rev. Stat. § 480-2 "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers") (quoting *Rosa v. Johnston*, 651 P.2d 1228, 1234 (Haw. Ct. App. 1982)); *Kapunakea Partners v. Equilon Enters. LLC*, 679 F. Supp. 2d 1203, 1214 (D. Haw. 2009) (in adjudicating challenge to liquidated damages provision, concluding that "enforcement of a penalty provision could conceivably give rise to an unfair competition claim under HRS § 480-2); **New Jersey:** *See* N.J. Stat. Ann. § 56:8-2 (making consumer fraud and unconscionable commercial practice unlawful); *id.* § 56:8-2.12 (creating a private right of action); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 791 (N.J. 2005) (The first category of unlawful acts, affirmative acts, "include unconscionable commercial practices, fraud, deception, false promise, false pretense, and misrepresentation."); *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 108 (N.J. 1994) (stating that the threshold inquiry for liquidated damages is whether it is unconscionable); *id.* ("Absent concerns about unconscionability, courts frequently need ask no more than whether the [liquidated damages] clause is reasonable); **Virginia:** *See* Va. Code Ann. § 59.1-200(A)(13) (prohibiting "[u]sing in any contract . . . any liquidated damage clause, penalty clause, or waiver of defense . . . that are void or unenforceable under any other applicable laws of the Commonwealth, or under federal statutes or regulations"); *id.* § 59.1-204 (creating private cause of action); *Boots, Inc. v. Singh*, 649 S.E.2d 695, 698 (Va. 2007) (noting rule set forth by Virginia courts that "liquidated damages clause is invalid only when the actual damages contemplated *at the time of the agreement* are shown to be certain and not difficult to determine or the stipulated amount is out of all proportion to the actual damages") (citations omitted) (emphasis in original). ATTM is prepared to provide additional examples should the Court find such helpful.

DrinkerBiddle&Reath
L L P

Honorable Jose L. Linares
July 21, 2010
Page 5

with a motion to certify a class for settlement purposes only, as in this case, the court need not consider the likely difficulties associated with managing the class action through trial."). Accordingly, common questions of law and fact can be said to predominate in the Settlement Classes' state-law claims.

Thus, Plaintiffs' allegations that ATTM's inclusion of its flat-rate ETF provisions in its wireless service agreements is an unfair and/or unconscionable business practice and that ATTM's flat-rate ETF provisions are illegal and/or unenforceable penalty clauses involve common questions of law and fact and can be treated, for purposes of certifying a settlement class, on a class basis. As *Sullivan* notes, claims subject to class treatment must be "readily discernible from the text" of the district court's settlement class certification order. *See Sullivan*, 2010 WL 2736947 at *14-15. To this end, ATTM respectfully refers the Court to the proposed Final Approval Order and Judgment, submitted with the parties' Joint Motion for Preliminary Approval of the Settlement (D.E. # 355-5 at ¶¶ 8-11), which details the claims certified and released in connection with the Settlement.

For all these reasons, as well as those previously provided, ATTM respectfully submits that the Court should grant final approval of the settlement.

Respectfully Submitted,

DRINKER BIDDLE & REATH LLP
Attorneys for Defendant
AT&T MOBILITY LLC

By: _____
Matthew J. Fedor

cc: All Registered ECF Users (Via ECF)