Bradley M. Lakin #6243318
Robert J. Evola #6242860
**LAKINCHAPMAN LLC**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095
Telephone : (618) 254-1127

Anthony L. Coviello
**LAW OFFICE OF
ANTHONY L. COVIELLO LLC**
307 Montgomery Street
Bloomfield, NJ 07003
Telephone: (973) 748-4600

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB, and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL, and NEXTEL FINANCE COMPANY<br><br>           Defendants | Civil Action No. 07-05325(JLL) |

### OPPOSITION TO APPLICATION TO ENJOIN RELITIGATION OF CERTAIN ATTORNEYS' ENTITLEMENT TO ATTORNEYS' FEES

In the arbitration between the Lakin Law Firm ("LLF") and Freed & Weiss LLC ("FW"), Lakin Law Firm seeks nothing from Sprint, who is not even a party to the arbitration. In the arbitration, LLF seeks no fees from the *Larson v. Sprint* settlement approved by this Court. In the arbitration, LLF does not seek to relitigate whether the *Larson* settlement should have been approved by this Court or whether any attorney fee award made by this Court was correct or

incorrect. The arbitration involves a different agreement—a settlement agreement between LLF and FW that resolved issues between the two firms when their business relationship ended. It has nothing to do with the propriety of the *Larson* settlement *vis a vis* the issues raised and ruled upon by this Court and everything to do with interpretation of the settlement agreement between LLF and FW. The arbitration touches on the *Larson* matter only inasmuch as FW's participation in the filing, negotiating and settling of *Larson* is the act alleged to constitute a breach of the settlement agreement. In addition, the amount of fees awarded in *Larson* may be relevant to the issue of damages claimed under the settlement agreement. The application before this Court is merely the latest attempt by FW to avoid its contractual obligations to LLF.

Throughout the application, FW incorrectly claims that the breach of contract claim at issue in the LLF/FW arbitration is an attempt to re-litigate an issue this Court has decided. As FW phrases it, LLF's action is an attempt "to re-litigate in arbitration this Court's distribution of attorneys fees and the ethics of the settlement." FW Memo in Supt., p. 3, D.E. 562. But the LLF/FW arbitration seeks *damages*--not fees--for *breach of contract*--not ethical concerns. This Court has never been asked to wade into the private dispute as to whether FW's actions filing the *Larson* case were a breach of its settlement agreement with LLF, and this Court has never made such a determination. Though this Court has made a determination about how certain firms should split fees *earned* on the Larson settlement, the Court has never determined the amount of damages caused by FW's breach. The issues presented in the arbitration are separate and distinct from those ruled upon by this Court. This is true despite FW's attempts to suggest otherwise by quoting the Court's rulings out of context. FW strains credulity past breaking when it excerpts the Court's Letter Opinion and Order of August 26, 2009, D.E. 351, to quote "the Court finds that Wiess and the remainder of Class Counsel properly negotiated the settlement on behalf of

the Class" for the proposition that this Court has ruled on breach of contract between FW and LLF.

I.  **THE ARBITRATION BETWEEN FW AND LLF DOES NOT IMPLICATE THE *LARSON* SETTLEMENT, ETHICAL ISSUES, OR ANY ISSUE PREVIOUSLY DETERMINED BY THE COURT.**

FW would have the Court believe that the arbitration attacks the "ethics" of the *Larson* settlement. FW would have the Court believe that the arbitration presents a dispute over the Court's allocation of fees in *Larson*. FW would have the Court believe that the arbitration would "implicate all the law firms who participated in the Settlement." FW Memo in Supt., p. 11, D.E. 562. None of these claims are true, and even a cursory review of the Demand for Arbitration reveals as much.

FW's repeated claim that the arbitration attacks the "ethics" of the *Larson* settlement is without any support in the Demand for Arbitration. The arbitration pleadings, as shown below, allege a contractual duty to refrain from involvement in a competing Sprint ETF case, a breach of that duty, and damages. The Demand for Arbitration is devoid of any allegation or even comment on ethics in general or the ethics of the FW's conduct in *Larson* in particular. While it seems so obvious as to be self-evident that a claim for breach of contract without more does not implicate ethical concerns, the Third Circuit has removed all doubt by drawing a clear distinction between the two. *See*, *Windsor Securities, Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 664 (3d Cir. 1993)(finding breach of contract does not rise to the level of independently wrongful conduct as contrasted with, among others, violation of ethical codes). The collateral issue of breach of contract between FW and LLF was never litigated in *Larson*, and, because it has no bearing on approval of the settlement the parties put before the Court, it need not and could not have been litigated in *Larson.* Ethical concerns, namely conflict of interest, were raised in

*Larson* by Objector Jessica Hall[1] in her Motion to Disqualify, D.E. 151, but breach of contract between FW and LLF was never addressed by Objector Hall or the Court. *See, e.g., Letter Opinion and Order of August 26, 2009,* D.E. 351 (finding no conflict of interest and denying Objector Hall's Motion to Disqualify) and *Opinion, January 15, 2010,* D.E. 438 (granting final approval of the *Larson* settlement).

It is equally clear that the arbitration involves and affects only LLF and FW. After background describing LLF and FW as two law firms formed under Illinois law, with their principal places of business in Illinois, the Demand for Arbitration describes the agreement at issue in the arbitration:

> 4. Beginning in 2006, the parties had several disputes. In January 2008, the parties entered into an agreement to resolve disputes regarding class action cases on which both firms worked. . . .
>
> * * *
>
> 6. Under the Agreement, FW agreed that LLF shall direct, among other cases, the Allstate Medpay case and Sprint ETF case as lead counsel and that FW would abide by Pretrial Order No. 1 (attached as Exhibit 1 to the Settlement Agreement). *Ex. 1 at ¶ 4.* Under the attached Pretrial Order, FW shall not:
>
>> initiate, foment, file, or otherwise assist with similar or related litigation (any action or arbitration that may arise out of or concern the allegations raised in this matter) against the same defendant(s) without first receiving approval from Lead Counsel.

See Exhibit A, LLF's Demand for Arbitration (including exhibits) attached to this pleading as Exhibit A, pp. 1-2. As this Court is well aware, FW did—along with co-counsel--file, negotiate, and settle the *Larson* case addressing Sprint ETFs, but only FW owed LLF a

---

[1] LLF notes that FW incorrectly conflates arguments raised by LakinChapman as attorneys for its client, Jessica Hall, with claims asserted by LakinChapman in arbitration as attorneys for the Lakin Law Firm. FW's application frequently, and rather obtusely, refers to all of those persons and entities as "Lakin" or "LakinChapman" or "Lakin Chapman" without acknowledging any distinction among them or even the existence of our client, Jessica Hall (ie. "LakinChapman's appeal"). Because the distinctions are not outcome determinative in this particular matter, we do not devote any additional space to correcting them on an issue by issue basis, but we do not want our silence on the matter taken as approval of the practice.

contractual obligation to refrain from acting. The agreement[2] between FW and LLF shows that those two firms are the only parties to the agreement. The Demand for Arbitration shows that the only parties to the arbitration are FW and LLF and that FW is the only law firm against whom relief is sought. FW's suggestion that the arbitration implicates "all the law firms who participated in the Settlement" is simply false.

Despite FW's claims to the contrary, the Demand for Arbitration does not seek any part of the fees earned in the *Larson* case. LLF does *not* claim, for example, that FW promised to pay LLF a portion of fees awarded in *Larson* or that some type of constructive trust should be imposed on the *Larson* fees awarded FW or anyone else. To the contrary, the arbitration seeks damages to compensate LLF for the loss of opportunity to settle *Hall v. Sprint*, Madison County, No. 04 L 113 which was caused by FW failure to abide by its agreement with LLF. The Demand for Arbitration mentions the amount of fees in *Larson* only as evidence of the amount at issue and facts necessary to calculate damages.

First, the Demand for Arbitration acknowledges that LLF would not have received all of the fees flowing from settlement of the *Hall v. Sprint* matter because the agreement called for such fees to be split three ways:

> 23. LLF, FW, and Bock & Hatch LLC [not party to the arbitration] were counsel in the Sprint ETF case. LLF, FW, and Bock & Hatch LLC had agreed to divide net fees collected in the Sprint ETF class action equally (*i.e.,* one-third of the net fees each).

See Exhibit A, p. 5. Next, the Demand for Arbitration reports the amount of total attorneys fees that Sprint agreed to pay in New Jersey as evidence that Sprint would have been willing to pay at least the same amount in Illinois to resolve *Hall v. Sprint*. Critically, the Demand for Arbitration

---

[2] The agreement between FW and LLF is attached to the Demand for Arbitration and also attached hereto.

merely reports the amount provided for in the settlement and does not stake a claim to any of that money:

> 24. The New Jersey Sprint settlement allows attorneys' fees of $5,775,000 plus expenses.

See Exhibit A, p. 5. Finally, the Demand for Arbitration completes the calculation set up by the prior paragraphs and explains that LLF's damages were caused by FW breach of contract:

> 25. As a result of the aforesaid breaches of the Agreement, LLF has sustained damages of no less than $1,925,000 in fees (($5,775,000 ÷ 3) plus at least $82,056.65 in expenses.

See Exhibit A, p. 5. In sum, the arbitration does not challenge or implicate a single ruling from *Larson*.

## II. THE ANTI-INJUNCTION ACT PROHIBITS THE COURT FROM GRANTING THE REQUESTED RELIEF BECAUSE THE ARBITRATION PROCEEDING DOES NOT INVOLVE ANY ISSUE ACTUALLY DECIDED BY THE COURT AND CREATES NO RISK TO THE JURISDICTION OR JUDGMENT OF THE COURT.

FW argues that the Court should enjoin the arbitration based on authority granted by the All Writs Act, 28 U.S.C. §1651. Under which Courts may issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* This authority is, however, limited by the Anti-Injunction Act, which prohibits a stay of state proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Finding no express authorization by Congress, FW claims the injunction is necessary to protect the *Larson* settlement or to avoid relitigation of the *Larson* fee ruling. But none of those exceptions are at issue because the arbitration, lodged against FW alone, neither attacks the *Larson* settlement nor seeks to relitigate the *Larson* fee apportionment or any other issue litigated in *Larson*. This

Court has never been asked to rule and has never ruled on a breach of contract dispute between FW and LLF or any damages resulting therefrom.

In determining which issues have been "actually decided," the emphasis is on the record and on what a court actually said, not on the court's post hoc judgment as to what the previous judgment was intended to say. *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992), *citing*, *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. at 1690-91 (1988). Further, a doubt as to whether the order precludes subsequent claims must be resolved in favor of allowing the state court to proceed. *Id.* FW has completely failed to point to any portion of the record where this Court ruled on breach of contract issues between FW and LLF. And it has utterly failed to show any part of the arbitration seeking fees from the *Larson* award. FW's request for injunction relies upon the Court being taken in by FW having miscast the arbitration for breach of contract as an attack on its "ethics" and relating that to the Court's rulings on conflict of interest, D.E. 351.

    **1.**    **Cases enjoining litigation seeking additional fees earned in a settled matter are inapposite to LLF's action for damages against FW for breach of a separate agreement.**

The cases cited by FW in support of its application miss the mark because, in every instance, a party was attempting to obtain fees for work performed in the settled class action. FW first relies on an unreported decision from the Eastern District of Pennsylvania for the proposition that the Court retains "continuing jurisdiction to resolve [a] dispute [about fees] in order to protect the integrity of its order approving fair and reasonable fees in the first instance." *In re Linerboard Antitrust Litig.*, 2008 WL 4461914 at *6 (E.D. Pa. 2008). LLF has no quarrel with that proposition in the abstract, but FW is dead wrong when it suggests that the arbitration poses such a threat. *Linerboard* is actually instructive as to the distinction between cases where such an injunction is appropriate and the arbitration at issue because in *Linerboard*, the party

7

enjoined was seeking a larger fee than the court had previously ordered *via a constructive* trust rather than damages for a collateral matter. In *Linerboard*, the court had previously entered an order approving a gross amount of attorneys fees "with allocations to specific firms to be made by liaison counsel." *Id.* at *1. One law firm believed it was entitled to a larger fee than the Court had awarded in an anti-trust class action and filed a separate case seeking to impose a constructive trust on fees awarded by the court and additional fees for work done. *Id.* at *2.

The distinction renders inapposite FW's other cited precedent, *Marino v. Pioneer EdselSales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003). Just like *Linerboard,* there is no collateral breach of contract claim analogous to the settlement agreement between FW and LLF. That case simply involved counsel trying to get a larger share of fees awarded by the court presiding over a class action for services rendered in that class action. 349 F.3d at 749. The critical fact in *Marino* was that the presiding judge would be able to properly award fees based on who had performed what work: "More importantly, though, preventing Judge Motz from deciding whether Marino is entitled to attorney's fees for work she allegedly performed in connection with the Honda Class Action would thwart Judge Motz's ability to manage the Honda Class Action." 349 F.3d at 753. By contrast, the FW/LLF arbitration is not about fees earned in *Larson*. This Court's management of *Larson* is not affected by the arbitration because the arbitration does not request fees from *Larson*. The question is whether FW breached a collateral contract and caused damage to LLF.

In the pending arbitration between FW and LLF because LLF is not seeking fees earned in *Larson*, but damages for breach of the settlement agreement. Even assuming, arguendo, that LLF had raised FW's breach of contract during this Court's consideration of fee issues in *Larson*, the Court could not properly, and LLF believes would not have attempted, to address

8

breach of contract damage issues between FW and LLF. Apart from necessarily requiring litigation of an issue completely collateral to approval of the *Larson* settlement, this Court was faced with the issue of whether the attorneys fees provided for in the settlement were appropriate and how to divide the fee among the many firms seeking fees they claimed to have earned for efforts leading to the *Larson* settlement.

In reaching its determination as to reasonableness of the attorney fee, the Court considered factors set forth in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000)(1. size of the class, 2. presence of objectors, 3. skill of attorneys, 4. complexity of the litigation, 5. risk of nonpayment, 6. time devoted by plaintiffs counsel, and 7. awards in similar cases) and *In re AT&T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006)(1. value of class benefits attributable to efforts of class counsel, 2. percentage of fee that would have been negotiated on contingent fee, and 3. innovative terms of settlement). D.E. 438, pp. 338-39. None of those factors allow consideration of whether one counsel's action were a breach of a collateral settlement agreement, and rightfully so. FW's breach of its agreement with LLF could never justify requiring Sprint to pay additional attorney's fees in order to gain approval. The breach of contract claim was not relevant to the *Larson* approval then, was not litigated then, and does not implicate the *Larson* settlement now.

The same is true as to the Court's allocation of the approved *Larson* attorney fee among class counsel. To do so, this Court applied the common fund frame work set forth by the Third Circuit *In re Centand Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) to determine whether certain counsel, who are not lead counsel, "conferred an independent benefit on the *Larson* class." D.E. 438, p. 63. The legal determination of whether FW breached its contract with LLF by participating in *Larson* did not effect a practical benefit or detriment of any kind on the

*Larson* class. It is merely a side issue between Illinois law firms. Had breach of contract been raised in argument regarding *Larson* fee apportionment, it would not have justified a fee award under *Cendant* nor could FW's breach possibly have justified taking a portion of fees away from the other attorneys in *Larson* to pay damages for FW's breach.

      2.      **This Case Presents An Entirely Different Fact Scenario Than Those Instances Cited Where This Court Has Enjoined Cases Previously**.

FW's allusion to this Court having utilized the All Writs Act to issue injunctions previously in this case at D.E. 139 (Jan. 16, 2009) and in *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, (Dec. 8, 2009) is of no import to the question before the Court now because the facts before the Court in those cases were completely different. This Court's Order in *Larson* at D.E. 139 finds that the Subscriber Class Case that was going forward in California was "covered in full by the Larson settlement" and "would effectively scuttle a portion of the Larson settlement and threaten its ultimate viability." D.E. 139, p. 3. In *Milliron*, with the Court having expressly ordered that "the attorneys who litigated the *Vaughn* matter are entitled to 16% of the $4.5 million fee award," the Court enjoined efforts to gain additional fees for efforts in *Vaughn* as a falling within the relitigation exception. *Milliron,* D.E. 117, pp. 4, 6. The distinction is that there is no *Larson* ruling on breach of contract between FW and LLF, and allowing LLF to be compensated by FW or its breach of contract in no way imperils the viability of the *Larson* settlement.

      3.      **This Court Lacks Jurisdiction To Resolve A Breach Of Contract Action Between Illinois Law Firms**.

Because the breach of contract dispute does not implicate the Courts prior rulings in *Larson* or imperil the settlement with Sprint, there is no basis for this Court, as a United States District Court sitting in New Jersey, to exercise jurisdiction to hear a state law dispute among Illinois law firms. 28 U.S.C. § 1332. Further, the settlement agreement between FW and LLF

includes an enforceable arbitration clause that selects JAMS as the exclusive forum for disputes between FW and LLF:

> **Dispute Resolution.**  The Firms agree that all disputes, claims, actions, litigation, or other proceedings arising out of or related to this Agreement shall be commenced, pursued, tried, litigated, and resolved exclusively by arbitration before JAMS in Chicago ("the Forum").  The Forum is mandatory and not permissive in nature thereby precluding the possibility of litigation between the Firms in any jurisdiction other than the Forum.  The Firms agree that the Forum has jurisdiction over such litigation, is proper, and is convenient for all the Firms and all the witnesses. . . .

Exhibit A, p 11..  If the Court determines that breach of contract claims between law firms who represent parties in class actions must be litigated as part of the class action, the Court will move past determining what fees are properly earned by given counsel in class action or appropriate under the fund doctrine to become arbiter of collateral state claims on a nationwide basis.  In absence of any effect on implementation of the *Larson* settlement, any effect on Sprint, any effect on co-counsel apart from FW itself so as to avoid the limitations of the Anti-Injunction Act, there is no statutory basis for the exercise of such broad, sweeping power.

### III.   CONCLUSION

None of the Court's rulings in *Larson*, not the final approval of the settlement or any ruling leading up to it, determined whether FW's actions in filing, negotiating and settling the *Larson* case were a breach of its agreement with LLF or what measure of damages was appropriate as compensation for the breach.  FW characterization of the arbitration as "relitigating the ethics" or "a fee dispute" is facially incorrect.  Completely apart from any settlement with Sprint or rulings of this Court, FW promised LLF that it would not participate in any ETF litigation against Sprint, then FW did just that in breach of the agreement.  Though it does not affect Sprint, and though it does not affect the *Larson* settlement, FW must answer for

its breach.  The Court should not allow FW to escape responsibility for its bargain by pretending the issue was litigated in *Larson.*


Dated:  August 2, 2010

Respectfully submitted,

By:  s/:  Anthony L. Coviello_____
       One of Her Attorneys

Bradley M. Lakin #6243318
Robert J. Evola #6242860
**LAKINCHAPMAN, LLC**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois  62095
(618) 254-1127

Anthony L. Coviello
**LAW OFFICE OF**
**ANTHONY L. COVIELLO LLC**
307 Montgomery Street
Bloomfield, NJ 07003
(973) 748-4600