UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY HALL, et al., | ) Civil Action No. 07-05325 (JLL) |
| | ) |
| Plaintiffs, | ) **MEMORANDUM OF POINTS AND** |
| vs. | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **MOTION BY CERTAIN ETF** |
| AT&T MOBILITY LLC f/k/a | ) **COUNSEL FOR ORDER** |
| CINGULAR WIRELESS LLC *et al.*, | ) **ENFORCING AGREEMENT WITH** |
| | ) **CLASS COUNSEL RE** |
| Defendants. | ) **ALLOCATION AND** |
| | ) **DISTRIBUTION OF ATTORNEYS'** |
| | ) **FEES AND EXPENSES** |
| | ) |
| | ) Date:  February 7, 2011 |
| | ) Time:  10:00 a.m. |
| | ) Before:  Hon. Jose L. Linares |
| | ) |
| | ) |

63374

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS ................................................................. 2

      A.    The California Litigation ......................................................... 2

      B.    The Settlement Agreement In This Action ............................. 2

      C.    Preliminary Approval And Notice ......................................... 3

      D.    Class Counsel's Agreement With The Seven Law Firms
            Regarding Fees And Expenses ................................................ 4

      E.    Class Counsel's Fee Application ............................................ 7

      F.    The Seven Law Firms' Performance of the Agreement .......... 9

      G.    The Court's Final Approval Order, Judgment and
            Opinion ................................................................................... 9

      H.    Class Counsel's Payment To The Seven Law Firms .............. 10

III.  ARGUMENT ...................................................................................... 12

      A.    Choice of Law ........................................................................ 12

            1.    California Law Applies Because The Agreement
                  Between The Seven Law Firms And Class Counsel
                  Was Entered Into In California, And Was To Be
                  Performed In California ............................................... 12

            2.    New Jersey Law Is Inapplicable, But Even If It
                  Did Apply, the Outcome Would Be the Same ............. 13

      B.    To Interpret the Agreement, the Court Must Ascertain the
            Meaning to be Given to the Expression of the Parties ........... 13

63374

C.   The Agreement Between The Seven Law Firms And
     Class Counsel Should Be Interpreted To Require Class
     Counsel To Pay To The Seven Law Firms $600,000.00
     In Attorneys' Fees And $199,691.01 In Reimbursement
     Of Costs And Expenses ........................................................................ 15

     1.   The Plain Language of the Agreement Proves that
          the Seven Law Firms Are Entitled to an Additional
          Payment ........................................................................................ 15

     2.   Both Class Counsel and the Court Have
          Interpreted Similar Language, as Applied to Class
          Counsel's Fee Application, to Mean that Expenses
          Could Be Recovered On Top of Any Fees ................................. 17

     3.   Because the Language of the Agreement Is Clear
          and Unambiguous, the Court Must Follow It ............................. 18

     4.   Additional, Extrinsic Evidence Supports the Seven
          Law Firms' Interpretation of the Agreement ............................. 19

     5.   The Interpretation of the Contract Advocated by
          Class Counsel Would Produce a Nonsensical and
          Unjust Result ............................................................................... 20

IV.   CLASS COUNSEL WERE OBLIGATED TO PAY OVER TO
      THE SEVEN LAW FIRMS THE SEVEN LAW FIRMS'
      COSTS AND EXPENSES, WHICH THE COURT
      AWARDED IN ITS OCTOBER 13, 2010 ORDER ....................................... 22

V. CONCLUSION ................................................................................................ 23

63374

# TABLE OF AUTHORITIES

## Cases

*Anthony L. Petters Diner, Inc. v. Stellakis*, 202 N.J. Super. 11
(App.Div. 1985)...............................................................................................14

*Crestview Cemetery Association v. Dieden* 54 Cal.2d 744 (1960)....................15, 21

*Diamond Shamrock Chemicals v. Aetna*, 258 N.J. Super. 167 (1992)....................12

*Dontzin v. Myer*, 301 N.J. Super. 501 (App. Div. 1997).........................................14

*Estate of Wemyss*, 49 Cal.App.3d 53 (1975) ...........................................................18

*General Motors Corp. v. Superior Court*, 12 Cal.App.4th 435 (1993)..............14, 19

*Joseph Hilton & Associates, Inc. v. Evans*, 201 N.J. Super. 156
(App.Div. 1985)...............................................................................................21

*Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F.Supp. 275
(D.N.J.1992). ...............................................................................................15, 18

*McBride v. Minstar, Inc.*, 283 N.J. Super. 471 (1994) ...........................................12

*Moss Dev. Co. v. Geary*, 41 Cal.App.3d 1 (1974);....................................................14

*Nester v. O'Donnell*, 301 N.J.Super. 198 (App.Div.1997)...............................15, 18

*Northern Airlines, Inc. v. Schwimmer*, 12 N.J. 293 (1953) ....................................14

*Onderdonk v. Presbyterian Homes of NJ*, 85 N.J. 171 (1981)................................15

*Reynolds Elec. & Engineering Co. v. Workmen's Comp. Appeals Bd.*,
65 Cal.2d 429 (1966). ..........................................................................................12

*Robert Nattress & Associates v. Cidco*, 184 Cal. App. 3d 55 (Cal. App. 1986).....14

*State Farm, etc., Ins. Co. v. Simmons' Estate*, 84 N.J. 28 (1980)............................12

*Strong v. Theis*, 187 Cal.App.3d 913 (1986) ..........................................................20

*Tessmar v. Grosner*, 23 N.J. 193 (1957)..................................................................14

*Villa v. Short*, 947 A. 2d 1217 (N.J. 2008) ..............................................................18

63374

*Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233 (1979).....................................................18

*WYDA Assocs. v. Merner* 42 Cal.App.4[th] 1702 (1996)...........................................15

## Statutes

Cal. Civil Code §1635...........................................................................................13

Cal. Civil Code §1636...........................................................................................14

Cal. Civil Code §1637...........................................................................................13

Cal. Civil Code §1638...........................................................................................13

Cal. Civil Code §1639.....................................................................................13, 18

Cal. Civil Code §1643...........................................................................................20

Cal. Civil Code §1644...........................................................................................14

Cal. Civil Code §1647...........................................................................................14

63374

## MEMORANDUM OF POINTS AND AUTHORITIES

Bramson, Plutzik, Mahler & Birkhaeuser, LLP; Franklin & Franklin, APC; Law Offices of Anthony A. Ferrigno; Reich Radcliffe LLP; Cuneo Gilbert & LaDuca; Law Offices of Carl Hilliard; and Law Offices of Joshua Davis (the "Seven Law Firms") submit this Memorandum of Points and Authorities in support of their motion for an order enforcing an agreement between the Seven Law Firms and ETF Class Counsel – the law firms of Strange & Carpenter and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein – regarding the amount of fees and expenses to be paid to the Seven Law Firms in connection with the AT&T ETF Settlement in this action.

## I. INTRODUCTION

Class Counsel entered into a written agreement (the "Agreement") with the Seven Law Firms under which, in exchange for the Seven Law Firms' promise to cooperate with Class Counsel's fee application, not to file a competing fee application and not to object, Class Counsel would pay them "the sum of $600,000.00 (Six Hundred Thousand Dollars) for attorneys' fees, plus reimbursement of out-of-pocket costs and expenses incurred by the Seven Law Firms ..." The Seven Law Firms performed their obligations under the agreement.[1] The Settlement was approved and the Court awarded all the fees and expenses requested. However, Class Counsel have failed to comply with the Agreement, or with the Court's Order approving the reimbursement of the $199,691.01 of expenses incurred by the Seven Law Firms.

---

[1] *See* the accompanying Declaration of Alan R. Plutzik in Support of Motion by Certain ETF Counsel for Order Enforcing (1) Agreement with Class Counsel and (2) this Court's October 13, 2010 Opinion and Order re Allocation and Distribution of Attorneys' Fees and Expenses (the "Plutzik Decl."), which sets forth at length the facts and evidence supporting this motion, at ¶ 26.

63374

Instead of paying the Seven Law Firms $600,000 in fees *plus reimbursement of their expenses*, Class Counsel have paid them only $600,000. The Seven Law Firms request the Court to enforce the Agreement and direct Class Counsel to pay the Seven Law Firms the additional $199,691.01 that they owe.

## II.  STATEMENT OF FACTS

### A.    The California Litigation

The Seven Law Firms are among the counsel of record for Plaintiffs in two California class actions challenging the flat early termination fees ("ETFs") charged by cellphone companies AT&T Wireless ("AWS") and Cingular Wireless (hereinafter, the "California AT&T ETF Claims"). Plutzik Decl., ¶¶ 3-5. The Seven Law Firms actively litigated the California AT&T ETF Claims from 2003, when they were filed, until they were stayed in late 2009, amassing a lodestar of $2,222,707.15, and incurring expenses of $199,691.01.[2]

In March, 2009, after spirited litigation over class certification, the California Court certified classes and directed that notice be disseminated at Plaintiffs' counsel's expense. Gilardi & Co. effectuated the Court-ordered notice plan, for which it billed counsel $82,621.30. *Id.*, ¶¶ 6, 26 n.3. The Court set a trial date of January, 2010, in the AWS case, and imposed pretrial deadlines. *Id.*, ¶ 7.

### ✦    B.    The Settlement Agreement In This Action

On or about September 15, 2009, as pretrial preparations proceeded in California, the law firms of Strange & Carpenter and Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, on behalf of Plaintiffs Barry Hall *et al.*, entered into a nationwide Settlement (the "Settlement") with Defendant AT&T Mobility LLC (hereinafter "AT&T") in this action. Docket No. 355-3. By its

---

[2] *Id.*, ¶¶ 5-8, 28 n.4. *See* Declarations of counsel submitted on behalf of the Seven Law Firms, Docket No. 522-2, Exhs. 8, 11-14, 16 and 17.

63374

terms, the Settlement Agreement resolved not only the ETF claims asserted against AT&T in this Court but also the ETF litigation pending against AT&T and its predecessors in other forums, including the California AT&T ETF Claims (as to non-opt-outs). Plutzik Decl., ¶ 9. The Settlement Agreement provided, *inter alia*, that Class Counsel – the Strange and Carella law firms – "may make a Fee and Cost Application to be heard at the Final Approval Hearing seeking an award of reasonable attorneys' fees in an amount not to exceed 33 1/3% of $18,000,000 or $6,000,000 *and reimbursement of expenses*." Settlement Agreement, Docket No. 355-3, Article VI § 3, at pages 25-26 (emphasis added.)

## C.   Preliminary Approval And Notice

By Order dated November 4, 2009 (Docket No. 421), this Court granted preliminary approval to the Settlement, approved forms of Notice that had been submitted as exhibits to the Settlement Agreement and scheduled a Final Approval Hearing, which was ultimately held on June 29, 2010. The Court specified that among the issues to be determined at the Final Approval Hearing was "whether Class Counsel's Application for Attorneys' Fees, Costs, Expenses and Incentive Awards should be approved." Plutzik Decl., ¶¶ 14-15. The Court directed the Seven Law Firms and other affected plaintiffs' counsel to submit their time and expenses to Class Counsel. Docket No. 421, ¶ 8.

The long-form version of the Settlement Notice that was published on the Internet (http://attmetfsettlement.com/Notice.htm) stated, at ¶ 13:

> The Court will hold a Fairness Hearing on June 29, 2010 at 2:00 p.m., in the United States District Court for the District of New Jersey, located at 50 Walnut Street, Newark, New Jersey 07101. The Court will consider if:
>
> • The Settlement fair, reasonable, and adequate;
>
> • The Settlement should be approved;

63374

- Attorneys' fees up to $6,000,000.00*, plus reimbursement of reasonable expenses*, should be awarded;

- Incentive awards up to $2,000 to each of the Class Representatives should be awarded; and

- There are any objections to the Settlement.

(Emphasis added.)  At ¶ 18, the Notice further stated:

> Class Counsel have agreed not to seek more than *$6,000,000 in fees plus reimbursement of expenses*.  (Emphasis added.)

### D.    Class Counsel's Agreement With The Seven Law Firms Regarding Fees And Expenses

In March, 2010, Class Counsel and attorney Alan Plutzik, acting on behalf of the Seven Law Firms, began discussions looking towards a possible agreement regarding the fees and expenses that would be payable to the Seven Law Firms in connection with the Settlement.  Plutzik Decl., ¶ 18.  Class Counsel initially proposed that the Seven Law Firms accept a flat sum of $400,000 that would encompass both fees and expenses.  Class Counsel represented that another lawyer who had worked on the California litigation, Scott Bursor, had agreed to accept a flat amount that would include both fees and costs.

However, Mr. Plutzik rejected that offer.  He explained that the Seven Law Firms would not accept, and could not even consider, any offer that did not provide for the full reimbursement of their expenses *on top of*, and *in addition to*, their fees. *Id.*, ¶ 19.  Among other things, Mr. Plutzik pointed out that the Seven Law Firms' expenses in the California actions had been very significant – much higher than the expenses that Mr. Bursor had incurred[3] – and that they included the costs of

---

[3] The bulk of the expenses in the California ETF cases were borne by members of the ETF Executive Committee.  Mr. Bursor, who was not a member of that Committee, reported expenses of only $996.94 (Strange Decl., Docket No. 522-2, Exh. 2) – much less than the expenses of $182,926.84 incurred by the Bramson Plutzik and Franklin firms, which were Executive Committee members. *Id.*

4

disseminating a court-ordered litigation notice, for which counsel had been billed $82,621.30 that had not yet been paid. The Seven Law firms' counter-offer therefore provided for a fixed amount for fees – $800,000 – *plus* expenses in addition to those fees. At Mr. Strange's request, Mr. Plutzik provided an estimate of the Seven Law Firm's expenses. Plutzik Decl., ¶ 19.

In light of the firm position taken by Mr. Plutzik on this point, Class Counsel's next offer, and all of the remaining offers and counter-offers in the negotiation, provided for a similar structure – a fixed amount of fees *plus* reimbursement of expenses on top of any fees. *Id.*, ¶¶ 19-20.

On March 22, 2010, Mr. Strange called Mr. Plutzik and, on behalf of himself and Mr. Cecchi, offered the Seven Law Firms "$600,000 plus expenses." Mr. Plutzik responded that that amount would be acceptable. *Id.*, ¶¶ 20-21.    On March 23, 2010, Jill Hood of Strange & Carpenter emailed Mr. Plutzik a draft letter agreement, copying both Mr. Strange and Mr. Cecchi on her email. The draft letter agreement (Plutzik Decl. Exh. B), was framed as a letter on the letterhead of Strange & Carpenter addressed to Mr. Plutzik, signed by both Class Counsel, and with a space for Mr. Plutzik's signature. It  stated, in relevant part, that Class Counsel would pay the Seven Law Firms:

> ...the *total* sum of $600,000.00 (Six Hundred Thousand dollars) for attorneys' fees, plus reimbursement of out-of-pocket costs from the costs portion of the settlement. You will seek no other or additional payment from Class Counsel for such work on behalf of attorneys' fees or costs. In turn, you will not oppose or object to the settlement preliminarily approved on November 4, 2009 and will cooperate with Class Counsel in filing a request for attorneys' fees and costs in the Hall action, by providing summaries, as required by the Court, of your time and costs.
>
> This includes Franklin & Franklin and all other firms working with you on these cases except the Law Offices of Scott A. Bursor, and Jacqueline Mottek....

Plutzik Decl., ¶ 22 (Emphasis added.)

Mr. Plutzik revised the draft in two principal respects. First, he clarified the identities of the Seven Law Firms on whose behalf he was authorized to enter into the agreement. Second, he deleted the word "*total*" before the phrase "sum of $600,000.00…" He asked Mr. Strange to have the agreement retyped on his letterhead if he found it acceptable, and requested both Class Counsel to sign it and return it to him for his signature. Messrs. Strange and Cecchi accepted the agreement as revised. Plutzik Decl., ¶ 23.

Mr. Strange caused the letter agreement to be retyped on his firm's letterhead, dated March 24, 2010, and signed it. Mr. Cecchi signed it next and sent it to Mr. Plutzik, who signed it thereafter in his California office. Plutzik Decl., ¶ 24. *See* email exchanges collectively attached as Exhibit K to the Plutzik Decl.

The final, fully executed Agreement (Plutzik Decl., Exhibit C) states that Class Counsel will pay the Seven Law Firms

> … the sum of $600,000.00 (Six Hundred Thousand Dollars) for attorneys' fees*, plus reimbursement of out-of-pocket costs and expenses incurred by the Seven Law Firms in the actions*.

(Emphasis added.)  Plutzik Decl., ¶ 24.

The formula recited in the Agreement – a fee in a fixed dollar amount "*plus reimbursement of expenses*" – is highly significant. It is the same formula that was used in the Settlement Agreement and twice in the Notice to describe the fees *Class Counsel* were allowed to request. And it is completely different from the language of the agreement Class Counsel made with Mr. Bursor, who agreed to accept a "*total* sum of $400,000.00" – with no language providing for expenses on top of the $400,000 amount. Plutzik Decl., ¶ 9 and Exh. A.

### E.    Class Counsel's Fee Application

In June, 2010, Class Counsel filed their motion for final approval of the Settlement and their application for an award of attorneys' fees, costs and expenses. Docket No. 522. Class Counsel's fee and expense brief disclosed that Class Counsel had entered into agreements with counsel from other cases, including the Seven Law Firms, whom it identified by name. *Id.* at 1. It asked the Court for compensation in the same language that had been used in the class notice – "$6 million, *plus reimbursement of expenses ....*" *Id.*, Docket No. 522, at p. 2. *See id.* at 3 (arguing for "a fee award of ...$6 million, *plus $506,943.75 in reimbursable expenses.*")[4]

Class Counsel's brief made clear that the "$6 million, plus expenses" that the Settlement Agreement and the Notice allowed them to request – language parallel to what Class Counsel's letter agreement with the Seven Law Firms provided – meant fees of $6 million *plus* expenses *on top of* those fees. And that is what Class Counsel requested the Court to award – a fixed fee of $6 million, *plus* reimbursement of the expenses incurred by all counsel in the action. Class Counsel's brief stated:

> Here, Plaintiffs' Counsel incurred substantial expenses in the amount of $506,943.75, including retaining numerous experts and consultants and conducting substantial discovery, including depositions and document productions. Those should also be awarded from the Settlement Fund *in addition to* Class Counsels' requested fee award of $6 million.

Docket No. 522, at 16 (emphasis added). Plutzik Decl., ¶ 25. In taking that position, Class Counsel acknowledged, at least in the context of their own fee

---

[4] $199,691.01 of the $506,943.75 consisted of expenses that had been incurred by the Seven Law Firms and reported by them in their Declarations filed with the Court. Docket No. 522-2, Exhs. 2, 8, 11-14, 16-17.

application, that the "fixed-fee-plus-reimbursement-of-expenses" language meant fees *plus expenses "in addition to" the fees*.

In an email sent in October, 2010, after Class Counsel had submitted their fee application but before the dispute that led to this motion arose, Class Counsel Brian Strange made that same acknowledgement *in the context of the Agreement with the Seven Law Firms.* In his email, Mr. Strange asked the Seven Law Firms to bear 10% of the cost of buying out an objector on the grounds that the fee to which the Seven Law Firms were entitled would be 10% of the total fee requested. Plutzik Decl., ¶ 35 and Exh. I.   10% of $6,000,000 is $600,000.  Mr. Strange's email is therefore an admission that the $600,000 referenced in the Agreement comprises *fees alone*, **not** fees and expenses combined.   It is, therefore, an admission that the Agreement entitles the Seven Law Firms to expenses *on top of* the $600,000 in fees that Class Counsel promised them.

The Seven Law Firms have steadfastly maintained that the Agreement gives them a right to receive $600,000 in fees *plus* their expenses in addition to the fees. Thus, in an email exchange from mid-October, 2010, before this dispute arose, Mr. Strange proposed to "hold back 5% of everyone's money to deal with objectors if you have any and if we want to do a deal with them." Mr. Plutzik responded:

> We don't agree to your proposal to withhold 5% of our money. ***Our agreement with you and Jim Cecchi provides that we are entitled to $600,000 in fees plus our expenses.*** We aren't obligated to help finance the buyout of other objectors.

Plutzik Decl., Exh. J (Emphasis added.).   *See* Plutzik Decl. at ¶ 36.   If Class Counsel had felt Mr. Plutzik's description of the rights and duties of the parties was incorrect, one would have expected them to say so in response to that email. However, significantly, Class Counsel made no response at all to Mr. Plutzik's email.

8

**F.    The Seven Law Firms' Performance of the Agreement**

The Seven Law Firms fully performed their obligations under the Agreement. They did not file a competing fee application. Nor did they object to the Settlement or the fee application submitted by Class Counsel. Instead, they cooperated with Class Counsel by providing Declarations that included their time, lodestar and expenses, and allowed them to be included in Class Counsel's fee submission. Their Declarations were submitted to the Court as Exhibits 8, 11-14, 16 and 17 to the Declaration of Mr. Strange in support of Class Counsel's fee application, Docket No. 522-2. Plutzik Decl., ¶ 26.[5] The $2.2 million in lodestar reported by the Seven Law Firms formed a significant portion of the aggregate lodestar on which Class Counsel based their request for fees. The Seven Law Firms' $199,691.01 of expenses comprised nearly 40% of the expenses for which Class Counsel sought reimbursement. Moreover, Class Counsel's description of the work performed ("numerous experts and consultants," "substantial discovery," "depositions and document productions" …) drew heavily on the proceedings that had occurred in the California AT&T ETF cases.

**G.    The Court's Final Approval Order, Judgment and Opinion**

The Court issued its Final Approval Order and Judgment on October 13, 2010. Docket No. 583. As Class Counsel had requested, the Court awarded the full amount of fees requested, $6,000,000, *plus* all of the expenses for which reimbursement had been requested, *on top of* the $6,000,000 in fees. *Id.* at 7;

---

[5] The Seven Law Firms' Declarations specifically alerted the Court to the fact that counsel had incurred $82,621.30 for the dissemination of Court-ordered Notice in the California litigation – expenses that had not yet been paid but had been billed, were owed and would have to be paid. Counsel requested this Court to pay this amount to them so that they could pay the notice provider. Plutzik Decl., ¶ 26 n.4. Docket No. 522-2, Exh. 16, at pages 7-8, ¶ 20.

Plutzik Decl., ¶ 27.  The Court's accompanying Opinion (Docket No. 584), also issued October 13, 2010, stated, at p. 29:

> Next, Class Counsel also moves for an award of attorneys' fees in the amount of thirty-three and one-third (33 1/3) percent of the Class benefit *plus reimbursement of expenses* in the amount of $506,943.75.  Thirty-three and one-third percent of the $18,000,000.00 is equal to $6,000,000.00.  (Emphasis added.)[6]

The Court granted the $506,943.75 in costs and expenses *on top of* the $6 million in fees, so that the total amount awarded was $6,506,943.75.  In so doing, the Court clearly interpreted Class Counsel's request for $6,000,000 in fees, *"plus reimbursement of expenses,"* to mean that Class Counsel were requesting reimbursement of expenses *on top of*, or *in addition to*, the requested $6 million in attorneys' fees.  Plutzik Decl., ¶ 29.

## H.    Class Counsel's Payment To The Seven Law Firms

On November 8, 2010, after Class Counsel had received the $6,000,000.00 for attorneys' fees and $506,943.75 of expenses awarded by the Court, Brian Strange sent Mr. Plutzik a check in the amount of $600,000.00.  The check was accompanied by a cover letter stating that the amount enclosed was being provided in "full and final payment of attorneys' fees and costs" for the Seven Law Firms under their Agreement with Class Counsel.  Plutzik Decl. ¶ 30 and Exh. D.  Mr. Plutzik responded with an email, stating:

---

[6] The Court found that Class Counsel had submitted a summary of fees and expenses totaling 18,617.815 hours, equaling $7,657,654.35 in Lodestar and $506,943.75 in expenses.  At p. 40 of the Court's Opinion, the Court sets forth a chart showing the attorney hours, lodestars, and a listing of expenses not only for Class Counsel, but also for ETF Counsel as well.  The total lodestar of the Seven Law Firms listed by the Court totaled $2,222,707.15, and the total costs and expenses claimed by the Seven Law Firms, according to the Court's chart, were $199,691.01.  Opinion, Docket No. 584, at 39.

63374

My office received from you today a check for $600,000.00, together with a cover letter stating that it is in "full and final payment of attorneys' fees and costs" for the ... "Seven Law Firms." Please be advised that $600,000.00 does not constitute "full payment" of the amount owing to the Seven Law Firms. Our agreement provides that in addition to $600,000.00 in fees, the Seven Law Firms will be paid their expenses as well. By my calculation, the amount of expenses the Seven Law Firms reported to, and were awarded by, the Court was $199,691.01. Please send me a check in that amount. I will take care of dividing the money between and among the Seven Law Firms. Alternatively, send me a check for $799,691.01 and I will return your $600,000.00 check. Let me know how you would like to proceed. I will hold on to your $600,000.00 check in the meantime.

Plutzik Decl., Exh. E. In response to that email, Class Counsel asserted for the first time that "...[t]he $600,000 lump sum was to cover fees plus costs." *Id.*, ¶ 32 and Exh. F. On that basis, they denied owing the Seven Law Firms more money.

After additional email exchanges (*see, e.g.,* Plutzik Decl., Exh. G), Class Counsel and Mr. Plutzik, on behalf of the Seven Law Firms, agreed:

(a) that the Bramson Plutzik law firm could negotiate Mr. Strange's $600,000 check on behalf of the Seven Law Firms free of Mr. Strange's original limitation that it was "payment in full," with the understanding that both sides would reserve all rights to their respective positions as to whether or not the letter agreement required Class Counsel to pay the Seven Law Firms their costs and expenses of $199,691.01, over and above their fees of $600,000.00;

(b) that the issue of whether the Agreement required Class Counsel to pay an additional $199,691.01 would be presented to this Court, and

(c) that that would be the only issue to be submitted and argued to the Court. Plutzik Decl., ¶ 34 and Exhibit H.

11

# III. ARGUMENT

A.    **Choice of Law**

1.    **California Law Applies Because The
Agreement Between The Seven Law Firms And
Class Counsel Was Entered Into In California,
And Was To Be Performed In California**

"…[T]he law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties." *State Farm, etc., Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37, 417 A.2d 488 (1980). *Accord McBride v. Minstar, Inc.*, 283 N.J. Super. 471, 662 A.2d 592 (1994). Thus, in *Diamond Shamrock Chemicals v. Aetna*, 258 N.J. Super. 167, 609 A. 2d 440 (1992), New York law was held to apply where the contracts at issue were "negotiated and, for the most part, executed in New York."

Here, the contract was made in California. The signing of the agreement by Attorney Plutzik in California was the last act performed that was necessary to create a binding contract.[7] Mr. Plutzik and Mr. Strange, who negotiated the deal, as well as all but one of the Seven Law Firms, are all California lawyers.

The state where performance is to occur also has an obvious interest in the nature of the performance and in the party who is to perform. Hence, the law of the place of performance may be applied to govern any contractual issue if both parties are to perform in the state. Restatement (Second), Conflicts of Laws Section 188(2)(c), Comment e. Here, California was the place where the contract was to be performed. The Seven Law Firms were to perform, and *did* perform, the Agreement by cooperating with Class Counsel, which they did from their

---

[7] The place of contracting is the place where the last act is done that is necessary to give a contract binding effect, under the forum's rules of offer and acceptance. *Reynolds Elec. & Engineering Co. v. Workmen's Comp. Appeals Bd.*, 65 Cal.2d 429, 433, 55 Cal.Rptr.248, 421 P.2d 96 (1966).

12

California offices.  Class Counsel was to perform the Agreement, and did perform it *in part*, when Mr. Strange sent his $600,000.00 check from his office in Los Angeles to Mr. Plutzik's office in Northern California.

### 2.    New Jersey Law Is Inapplicable, But Even If It Did Apply, the Outcome Would Be the Same

New Jersey law does not apply.  The only argument in favor of applying New Jersey law to the dispute is that Article V, § 11 of the Settlement states: "Construction and interpretation of the Settlement Agreement shall be determined in accordance with the laws of New Jersey, without regard to the choice-of-law provisions thereof."  But the dispute is not about the interpretation of the Settlement Agreement – it is about the interpretation of the Agreement between the  Seven Law Firms and Class Counsel.

In any event, as we demonstrate below, California and New Jersey law are *the same* with respect to the issues relevant to this motion.  In the discussion that follows, we cite the law of both jurisdictions.  Under the law of either state, Class Counsel must pay an additional $199,691.01 to the Seven Law Firms.

### B.    To Interpret the Agreement, the Court Must Ascertain the Meaning to be Given to the Expression of the Parties

Interpretation of a contract consists in ascertaining the meaning to be given to the expression of the parties.  Section 1635, California Civil Code.  Where the language of a contract is clear and not absurd, it will be followed.  Section 1638, California Civil Code.  But if the meaning is uncertain, the general rules of interpretation are to be applied.  Section 1637, California Civil Code.  When a contract is reduced to writing, the parties' intention is ascertained from the writing alone, if possible, subject to other provisions governing interpretation.  Section 1639, California Civil Code.  The determination of the parties' intention is an

13

*objective* inquiry that turns on what a reasonable person would expect the language of the contract to mean. *Robert Nattress & Associates v. Cidco*, 184 Cal. App. 3d 55 (Cal. App. 1986).[8]

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. Section 1636, California Civil Code. The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed. Section 1644, California Civil Code. A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates. Section 1647, California Civil Code. For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge may be placed in a position of those whose language he is to interpret. *Moss Dev. Co. v. Geary*, 41 Cal.App.3d 1, 13, 115 Cal.Rptr. 736 (1974); *General Motors Corp. v. Superior Court*, 12 Cal.App.4th 435, 442, 15 Cal.Rptr.2d 622 (1993).[9]

The trial court's determination of whether an ambiguity exists in a contract is a question of law.  *WYDA Assocs. v. Merner* 42 Cal.App.4th 1702, 1710, 50

---

[8] The rule is the same under New Jersey law. *Tessmar v. Grosner*, 23 N.J. 193, 201 (1957) (acknowledging the "…basic rule of contractual interpretation that a court must discern and implement the common intention of the parties."); *Northern Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 302 (1953) (The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the "expressed general purpose." *Accord Dontzin v. Myer*, 301 N.J. Super. 501, 507 (App. Div. 1997).

[9] New Jersey law is to the same effect. *Anthony L. Petters Diner, Inc. v. Stellakis*, 202 N.J. Super. 11, 27, 493 A.2d 1261 (App.Div. 1985).

14

Cal.Rptr.2d 323 (1996).[10]   The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict.   *WYDA*, 42 Cal.App.4[th] at 1710.

Acts of the parties subsequent to the execution of the contract, and before any controversy has arisen as to its effect, may be looked to in determining the meaning.   The conduct of the parties may be, in effect, a practical construction thereof, for they are probably least likely to be mistaken as to the intent.   This rule of practicable construction is predicated on the common sense concept that actions speak louder than words.   *Crestview Cemetery Association v. Dieden* 54 Cal.2d 744, 754, 8 Cal.Rptr. 427, 356 P.2d 171(1960).[11]

**C.   The Agreement Between The Seven Law Firms And Class Counsel Should Be Interpreted To Require Class Counsel To Pay To The Seven Law Firms $600,000.00 In Attorneys' Fees And $199,691.01 In Reimbursement Of Costs And Expenses**

**1.   <u>The Plain Language of the Agreement Proves that the Seven Law Firms Are Entitled to an Additional Payment</u>**

The Agreement requires Class Counsel to pay the Seven Law Firms $600,000 in fees, *plus* reimbursement of their expenses *on top of* and *in addition to* their fees.   The language of the Agreement unambiguously so provides, when it states that Class Counsel shall pay the Seven Law Firms "the sum of $600,000.00 (Six Hundred Thousand Dollars) for attorneys' fees, ***plus reimbursement of out-of-pocket costs and expenses*** incurred by the Seven Law Firms …."

---

[10] The rule is the same under New Jersey law. *Nester v. O'Donnell*, 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (*quoting Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J.1992).

[11] For the similar New Jersey law, *see Onderdonk v. Presbyterian Homes of NJ*, 85 N.J. 171, 425 A. 2d 1057 - NJ: Supreme Court (1981).

63374

Class Counsel apparently argue that this language means that they are only obligated to pay $600,000 for attorneys' fees and costs combined. But its grammar and syntax do not support that conclusion. First, the clause requiring the payment of $600,000.00 for attorneys' fees is followed by a comma, which signifies that the clause preceding the comma is complete in and of itself. In other words, the first portion of the compensation due to the Seven Law Firms is "$600,000.00 for attorneys' fees," and everything after the comma is additional. Reading the agreement to hold that "reimbursement of out-of-pocket costs and expenses" refers back to the $600,000 would therefore do violence to the language of the Agreement.

Furthermore, the connector between the clause about $600,000 in fees and the clause about costs and expenses is the word "*plus.*" The dictionary meanings of the word "plus" include:

- more by the addition of; increased by: ten plus two is twelve.

- with the addition of; with: He had wealth plus fame.

- involving or noting addition.

- more (by a certain amount).

- something additional.

- a surplus or gain.

- also; and; furthermore: A bicycle is cheaper than a car, plus it doesn't pollute the air.

- in addition; besides.

http://dictionary.reference.com/browse/plus.   The use of the word "plus" in the Agreement thus means that the Seven Law Firms are entitled to receive $600,000 in fees, and, *in addition*, reimbursement of their expenses. There is no ambiguity whatsoever in this language.

16

2. **Both Class Counsel and the Court Have Interpreted Similar Language, as Applied to Class Counsel's Fee Application, to Mean that Expenses Could Be Recovered On Top of Any Fees**

Furthermore, that interpretation is consistent with the meanings assigned to that language, or indistinguishably similar language, by Class Counsel on multiple occasions, and by the Court. *Class Counsel's* request for fees was governed by very similar language – $6 million in fees, *plus reimbursement of expenses*. The Notice, which Class Counsel drafted and the Court approved, so stated in two separate places. The Settlement Agreement used similar language -- $6,000,000 "*and*" reimbursement of expenses. The Settlement Agreement and the Notice limited what Class Counsel could ask for, and what the Court could award. Yet, in their application, Class Counsel requested the Court to award them $6,000,000 in fees *plus* their expenses *on top of and in addition to those fees*. And that is what the Court awarded.

If the two formulations used in the Notice – "Attorneys' fees up to $6,000,000.00, *plus reimbursement of reasonable expenses*" at ¶ 13 and "$6,000,000 in fees *plus reimbursement of expenses*" at ¶ 18 – mean $6,000,000 in fees plus expenses on top of those fees, as both Class Counsel and the Court acknowledged, then the Agreement's provision that the Seven Law Firms are entitled to "the sum of $600,000.00 (Six Hundred Thousand Dollars) for attorneys' fees, *plus reimbursement of out-of-pocket costs and expenses* ..." means that the Seven Law Firms are entitled to $600,000.00 in fees, plus costs and expenses on top of those fees.

17

63374

### 3. Because the Language of the Agreement Is Clear and Unambiguous, the Court Must Follow It

If the language of the contract, so interpreted, is clear and unambiguous, the intentions of the parties as expressed in it are controlling, and the Court cannot depart from the plain meaning of the contract to insert terms or limitations not found therein. Cal. Civil Code §1639; *Estate of Wemyss*, 49 Cal.App.3d 53, 59 (1975).[12] An ambiguity in a contract exists only if the terms of the contract are susceptible to at least two *reasonable* alternative interpretations.[13]

Here, the interpretation proffered by Class Counsel is not reasonable. It is does not account for the comma after the word "fees," or for the provision in the Agreement that the Seven Law Firms are entitled to receive $600,000 in fees, "*plus*" their expenses. Moreover, the interpretation of the Agreement advocated by Class Counsel is diametrically opposed to the interpretation that both Class Counsel and the Court accorded to virtually identical language affecting *Class Counsel's* right to fees and expenses. The Settlement Agreement and the Notice only allowed Class Counsel to request, and the Court to award, $6,000,000, plus reimbursement of expenses. Both Class Counsel and the Court interpreted that language to mean that Class Counsel could ask for and obtain $6,000,000 in fees, plus expenses over and above those fees. The Agreement describes the Seven Law Firms' entitlement to fees and expenses in exactly the same way -- $600,000 in fees, *plus* reimbursement of expenses. That language must be interpreted in the same way in the Agreement as in the Settlement Agreement and the Notice.

---

[12] *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979) (a purported ambiguity that is based only on a "curious reading" of a contract cannot becloud the clear import of the agreement.); "…We will not search for ambiguities where there are none." *Villa v. Short*, 947 A. 2d 1217 (N.J. 2008).

[13] *Nester*, 301 N.J.Super. at 210 (quoting *Kaufman*, 828 F.Supp. at 283).

4.    **Additional, Extrinsic Evidence Supports the Seven Law Firms' Interpretation of the Agreement**

Because the language of the Agreement is unambiguous, the Court can and should interpret the contract in the Seven Law Firms' favor without having to examine extrinsic evidence.[14]  But if the Court does consider such evidence, it only bolsters the conclusion that Class Counsel owe the Seven Law Firms an additional $199,691.01.  The evidence of the negotiations, described at ¶¶ 18-24 of the Plutzik Declaration, shows that the parties understood that the agreement they were reaching provided the Seven Law Firms with expenses *in addition to* their $600,000 in fees.  Indeed, it is undisputed that Mr. Plutzik told Class Counsel that the Seven Law firms not only would not accept but *would not even consider* a flat amount that was inclusive of both fees and expenses.  Plutzik Decl., ¶ 20.

The letter agreement between Class Counsel and Scott Bursor (Exh. D to the Plutzik Decl) which was entered into prior to the agreement between the Seven Law Firms and Class Counsel, provides further support for the Seven Law Firms' interpretation.  The agreement in which Mr. Bursor agreed to accept a flat amount that encompassed both his fees and his expenses uses language completely different from the language of Class Counsel's Agreement with the Seven Law Firms.  Mr. Bursor's agreement states:

> This letter will confirm our agreement that Class Counsel in the above-entitled action will pay you for your work litigating the ETF

---

[14] Even if the Court concludes that it can examine extrinsic evidence, such evidence may only be offered *to prove an interpretation to which the contract is reasonably susceptible. General Motors v. Superior Court*, 12 Cal.App.4th 435, 441-42 (1993).  In other words, if extrinsic evidence is offered in support of an interpretation that is inconsistent with or unsupported by the contractual language, that evidence is entitled to no weight. *Id.*

63374

claims... ***the total sum of \$400,000.00*** (Four Hundred Thousand Dollars) ...." (Emphasis added.)

There is no mention in the Bursor agreement that Mr. Bursor would receive any reimbursement for costs and expenses. Moreover, it is significant that while the word "total" is present in Class Counsel's agreement with Mr. Bursor, ("the ***total*** sum of \$400,000.00...") and was included in Mr. Strange's initial draft of the Agreement with the Seven Law Firms ("the ***total*** sum of \$600,000 for attorneys' fees, plus reimbursement of out-of-pocket costs and expenses ..."), Mr. Plutzik revised that draft to remove the word "total," and Class Counsel accepted the revision and signed an Agreement that did not use that word.

Furthermore, Mr. Strange's email acknowledgement that the \$600,000 to which the Seven Law Firms were entitled under the Agreement were 10% of the total fee award Class Counsel requested from the Court is an admission that the entire \$600,000 is fees, and no portion of it is costs or expenses. The Seven Law Firms are entitled to those in addition to the \$600,000 in fees.

### 5.   The Interpretation of the Contract Advocated by Class Counsel Would Produce a Nonsensical and Unjust Result

The Court should attempt, so far as is consistent with the intentions of the parties, to render an interpretation which will render it reasonable (Cal. Civil Code §1643), and should attempt to interpret the contract so as to avoid a harsh, unjust or inequitable result. Cal. Civil Code § 1643; *Strong v. Theis*, 187 Cal.App.3d 913, 918, 919, 232 Cal. Rptr. 272 (1986).

The interpretation advocated by Class Counsel would produce an unreasonable, harsh and unjust result, in view of the large size of the expenses the Seven Law Firms incurred for the benefit of the class, and particularly the \$82,000 Court-ordered Notice expense that they owed but had not yet paid in the California action. It is unfathomable to conclude that the Seven Law Firms would agree to a

20

deal that would require them to pay those expenses, or any portion of them, out of their own pocket without being reimbursed for them, especially in the context of a Settlement that produced an award of fees and costs to Plaintiffs' counsel of more than $6.5 million.  It may have been rational for Mr. Bursor to accept a flat amount that was inclusive of his expenses, because his expenses were negligible, but it would not be rational for the Seven Law Firms to do that – especially because the parties understood at the time they entered into the Agreement that Class Counsel would *include* those expenses in its application to the Court and would ask the Court to award them over and above any fees.  It is particularly absurd to imagine that the Seven Law Firms would countenance a result under which the Court would award the $199,691.01 in expenses that the Seven Law Firms incurred and *Class Counsel would be entitled to keep that money.*  That would be an unjust windfall to Class Counsel.

Finally, Mr. Strange admitted, in his October, 2010 email, that the $600,000 referenced in the Agreement is specifically for attorneys' fees, and does not include any costs and expenses.  At the time Mr. Strange sent his email, the Court had not yet ruled on Class Counsel's fee application and this dispute had not yet arisen.  "Acts of the parties subsequent to the execution of the contract, and before any controversy has arisen as to its effect, may be looked to in determining the meaning."  *Crestview Cemetery Association v. Dieden*, 54 Cal.2d at 754.  *See Joseph Hilton & Associates, Inc. v. Evans*, 201 N.J. Super. 156, 171 (App.Div. 1985) ("Where ambiguity exists, the subsequent conduct of the parties in the performance of the agreement may serve to reveal their original understanding.").

21

**IV.    CLASS COUNSEL WERE OBLIGATED TO PAY OVER TO THE SEVEN LAW FIRMS THE SEVEN LAW FIRMS' COSTS AND EXPENSES, WHICH THE COURT AWARDED IN ITS OCTOBER 13, 2010 ORDER**

The Settlement Agreement provided a procedure for Class Counsel to make a Fee and Cost Application to the Court, to be heard at the Final Approval Hearing, seeking an award of reasonable attorneys' fees, not to exceed $6,000,000.00, and reimbursement of expenses. Settlement Agreement, Docket No. 355-3, Article VI § 3, at pages 25-26.  The same paragraph in the Settlement Agreement provided at pp. 25-26 that Class Counsel "shall be solely responsible for further distributing to ETF Counsel and otherwise, any payments made under this provision."  The phrase "Fee and Cost Application" is defined as "that written motion or application by which Class Representatives and/or Class Counsel request that the Court award reasonable attorneys' fees, costs or incentive awards relating to this Action or the Related Actions..." (Settlement Agreement, Docket No. 355-3, Article II § 24, at p. 11.  Thus, the Settlement Agreement contemplated that the Court would award costs with respect to not only this action, but also with respect to the "Related Actions" as well.

The Court's Order awarding costs and expenses to Class Counsel did not give Class Counsel the discretion to allocate them.  Class Counsel was therefore duty bound to distribute them to the Seven Law Firms, who incurred them.  It would be unconscionable for Class Counsel to retain the entire $506,943.75 in reimbursable expenses for themselves.  Such a windfall was never contemplated by the Settlement Agreement or the Court's Orders, let alone by the Agreement between Class Counsel and the Seven Law Firms.

63374

## V. CONCLUSION

For the foregoing reasons, the Court should enforce the Agreement; rule that the Seven Law Firms are entitled to receive an additional $199,691.01 from Class Counsel; and order Class Counsel to pay that amount to the Seven Law Firms without delay.

Dated:  January 14, 2011                   BRAMSON, PLUTZIK, MAHLER
                                           & BIRKHAEUSER, LLP

                                           By: _____
                                                   Alan R. Plutzik

                                           Alan R. Plutzik (*pro hac vice*)
                                           aplutzik@bramsonplutzik.com
                                           2125 Oak Grove Road, Suite 120
                                           Walnut Creek, California  94598
                                           Telephone: (925) 945-0200
                                           Facsimile:  (925) 945-8792

                                           FRANKLIN & FRANKLIN
                                           J. David Franklin
                                           jdfranklaw@san.rr.com
                                           550 W "C" St #950
                                           San Diego, CA 92101-8569
                                           Telephone:  (619) 239-6300
                                           Fax:  (619) 239-6363

                                           LAW OFFICES OF ANTHONY A.
                                           FERRIGNO
                                           Anthony A. Ferrigno
                                           A-trust-fraudlaw@msn.com
                                           P.O. Box 5799
                                           San Clemente, CA  92674
                                           MAILING: 1116 Ingleside Ave., Athens, TN
                                           37303
                                           Tel: (423) 744-4041

23

63374

REICH RADCLIFFE & KUTTLER, LLP
Marc G. Reich
mgr@reichradcliffe.com
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512

CUNEO GILBERT & LaDUCA, L.L.P.
Pamela Gilbert
pamelag@cuneolaw.com
507 C Street, N.E.
Washington, DC 20002
Telephone: 202/789-3960
202/789-1813 (fax)

JOSHUA DAVIS
davisj@usfca.edu
Associate Dean for Faculty Scholarship
Director, Center for Law and Ethics
USF School of Law
2130 Fulton Street
San Francisco, CA 94117
Telephone: (415) 422-6223

CARL HILLIARD, ESQ.
carl@carlhilliard.com
1246 Stratford Court
Del Mar, CA 92014
Telephone: (858) 509-2938
Facsimile: (858) 509-2937

SHERMAN BUSINESS LAW
Steven M. Sherman, Esq.
steven@shermanbusinesslaw.com
220 Montgomery Street, Suite 1500
San Francisco, CA 94104
Tel: 415/403-1660
Fax: 415/397-1577

Plaintiffs' ETF Counsel

24

63374