Joseph A. Boyle
Geoffrey W. Castello
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

*Attorneys for Defendants*
*Sprint Nextel Corporation*
*Sprint Spectrum L.P. d/b/a Sprint Nextel*
*and Nextel Finance Company*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDY LARSON, BARRY HALL, JOE MILLIRON, TESSIE ROBB and WILLIE DAVIS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  -against-<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC and SPRINT NEXTEL CORPORATION and SPRINT SPECTRUM L.P. d/b/a SPRINT NEXTEL and NEXTEL FINANCE COMPANY,<br><br>      Defendants. | No. 2:07-cv-05325-JLL-ES |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS APPLICATION FOR A STAY OF THE CALIFORNIA APPEAL IN THE CALIFORNIA SUBSCRIBER CLASS CASES, TO ENJOIN RE-LITIGATION OF ISSUES SUBJECT TO THE COURT'S FINAL JUDGMENT AND TO ISSUE AN ORDER TO SHOW CAUSE FOR CONTEMPT PROCEEDINGS**

Defendants Sprint Nextel Corporation, Sprint Spectrum L.P., and Nextel Finance Company (collectively, "Defendants" or "Sprint") submit this Reply Memorandum of Law In Further Support of Its Application For A Stay Of The California Appeal In The California Subscriber Class Cases, To Enjoin Re-Litigation Of Issues Subject To The Court's Final Judgment And To Issue An Order To Show Cause For Contempt Proceedings. In addition to this Reply Memorandum of Law, Defendants also rely upon the Declaration of Joseph A. Boyle, Esq. executed on January 18, 2011 ("Boyle Reply Dec.") submitted herewith.

## PRELIMINARY STATEMENT

Ms. Zill, through her counsel, presents two faces to this Court. One is Ms. Zill the opt-out. The other is Ms. Zill the class representative of the California Subscriber Class. *See* Memorandum of Law In Opposition to Order to Show Cause ("Opp.") at 2. Counsel apparently believes the two-faced nature of Ms. Zill allows her to avoid the reach of the Injunction and to also violate its express terms. Neither is true. Ms. Zill contends that, because she opted out of the Settlement, she is not bound by the injunction contained in paragraph 23 of the Final Judgment (the "Injunction"). Opp. at 2. However, in order to opt-out, she must have received notice of the Settlement. That notice included the docket number and caption of this case. [*See* Doc. No. 340]. There has been, in this case, a request for

a final judgment, including a permanent injunction staying further prosecution of Class Released Claims, since December 3, 2008. [*See* Doc. No. 84-4 ¶ 23].[1] Moreover, Ms. Zill's counsel was aware of: (i) the request for a final judgment containing the Injunction; (ii) the entry of the Injunction; and (iii) its applicability to the California Subscriber Case, since early February of 2010, at the latest. [*See* Doc. Nos. 462; 470; & 481-1, Exs. F & G].[2]

---

[1] Neither Ms. Zill, nor her counsel, have claimed they did not have notice of the Injunction. While neither Ms. Zill nor her counsel make any serious attempt to argue that they cannot be held in contempt because they are not covered by the express language of the Injunction, any such argument would fail. As noted in Sprint's moving memorandum of law, both Ms. Zill and her counsel can be found in contempt for aiding and abetting the absent class members of the California Subscriber Class, who are also members of the Settlement Class, in violating the Injunction. "[P]ersons 'in active concert or participation' with an enjoined party are also bound by the injunction, and may not aid or abet the violation." *Marchak v. Treadwell*, No. 08-1771, 2009 U.S. App. LEXIS 14605, *20 (3rd Cir. 2009) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 674 (3rd Cir. 1999)); *see also Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9 (1945); *Ex Parte Lennon*, 166 U.S. 548 (1897); *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3rd Cir. 1990); *Savarese v. Agriss*, 883 F.2d 1194, 1209 (3rd Cir. 1989).

[2] Mr. Bursor had local counsel who received ECF notices, beginning with the Lite DePalma firm and continuing with William Pinilis, Esq., well before the Final Judgment was presented to the Court for consideration, via the ECF system, on February 5, 2010. Similarly, Mr. Plutzik's firm had retained Steven Sherman, Esq. at least as early as February 3, 2010. Mr. Sherman is also listed as receiving ECF notices. It is telling that both of these counsel had access to ECF filings as of February 5, 2010, the date that the Final Judgment, which included the Injunction, was submitted to this Court. With this knowledge, they still proceeded with the renewed TRO application on February 11, 2010. Further, Mr. Franklin submitted a supplemental declaration via the ECF on February 10, 2010 [Doc. No. 459]. Mr. Franklin obviously was aware of the existence of the ECF in this case. Moreover, to the extent these counsel could have overlooked the Injunction in the Final Judgment, both counsel for Sprint [Doc. No. 462] and Class Counsel [Doc. No. 468] filed letters, on February 12 and February 16, 2010 respectively, imploring the Court to enter the Final Judgment with the Injunction in light of the renewed TRO application. Both of those letters were filed via the ECF as was the executed Final Judgment on February 16, 2010 [Doc. No. 470]. No counsel objected to the form of the proposed Final Judgment. Also, as counsel to Ms. Zill, they received copies of the Injunction, along with a request to abide by it, from counsel for Sprint. (*See* Boyle Reply Dec. Exs. A & B).

While Ms. Zill claims that opting out removes her from the reach of the Injunction, she admits that she is violating the Injunction by prosecuting the California Appeal on behalf of the absent class members she represents. Opp. at 2 (The California Appeal is seeking to "resurrect the claims of the Subscriber Class …"). It is uncontroverted that these Subscriber Class Members are also Settlement Class Members. Thus, in acting as a representative of a class which includes Settlement Class Members, Ms. Zill is within the purview of the Injunction. Ms. Zill had both actual and constructive knowledge that this Court was about to, and did, enter the Injunction enjoining her absent class members from pursuing Class Related Claims. Clearly, Ms. Zill was not free simply to ignore the Injunction. In her role as a class representative, she should have appeared before this Court and objected to the Injunction, sought to dissolve it or appealed to the Third Circuit. She did not. Instead, she ignored the Injunction and proceeded pell-mell. That is contempt, plain and simple.

Ms. Zill complains that she had no choice but to pursue the California Appeal because her case was dismissed upon a motion by Sprint. She also complains that enforcing the Injunction against her now, or in the immediate aftermath of Sprint's Motion to Dismiss the California Subscriber Case on res judicata grounds, would have left Ms. Zill with no remedy, in the event Settlement was not affirmed by the Third Circuit. Opp. at 2, 9-10.

However, after this Court's approval of the Settlement on January 15, 2010 [Doc. No. 437], Ms. Zill could have, and should have, asked the California trial court to stay the California Subscriber Case, including Sprint's Motion to Dismiss, pending a decision by the Third Circuit. Ms. Zill did not take this eminently reasonable course, because her counsel did not want to stay the California Subscriber Case. Instead, they made a tactical decision to avoid the effect of the Settlement, by, after this Court's approval of the Settlement, seeking a renewed TRO against Sprint's continued collection of flat rate early termination fees. [*See* Doc. No. 481-1, Ex. C] (Plaintiffs' Renewed Application for a Temporary Restraining Order and Order to Show Cause regarding Preliminary Injunction, dated February 11, 2010).[3]

The renewed TRO application was made on behalf of the entire California Subscriber Class. (*Id.*) In response, Sprint took the reasonable step of arguing dismissal of the California Subscriber Case on res judicata grounds citing the Settlement. On February 16, 2010 [Doc. No. 470], this Court entered the Final Judgment, including the Injunction.

Once the Injunction was entered by this Court, again Ms. Zill's counsel could have, and should have, either informed the California trial court of the Injunction and requested no further action by the trial court, or formally sought

---

[3] This was a "renewal" because it renewed the TRO application enjoined by this Court in the All Writs Act Order. [Doc. No. 139].

a stay of the California Subscriber case, pending a Third Circuit appeal. They did not. Instead they began a cat and mouse game with Sprint's counsel and the California trial court. Ms. Zill's counsel went dark and refused to confirm whether or not the renewed TRO application was being made on behalf of the California Subscriber Class (as opposed to a TRO simply by Ms. Zill as an opt-out). Despite repeated inquiries by counsel for Sprint about the status of the renewed TRO application, in light of the Injunction, Ms. Zill's counsel stood mute, leaving Sprint to wonder what their plan was for the March 5, 2010 hearing. (*See* Boyle Reply Dec., Exs. A, B & C). Ms. Zill's counsel was clearly hoping to keep alive their attempt to obtain a TRO on behalf the California Subscriber Class through the renewed TRO application. Keeping this hope/threat alive required that Ms. Zill not seek a stay of the proceedings in the California trial court, as any such stay would also stay the hoped for class-wide TRO. Ms. Zill lost the cat and mouse game when the California trial court simultaneously denied the TRO application and dismissed the California Subscriber Case on res judicata grounds. [*See* Doc. No. 604, Ex. F].

Thus, Ms. Zill's counsel's tactical decision to continue to press Class Released Claims, after they were settled and released before this Court, and after this Court issued the Injunction, was a total failure. It did, however, cost Sprint

unnecessary fees and costs.[4] Therefore, any quandary that Ms. Zill and her counsel face as a result of their own failure to acknowledge the Injunction and to immediately seek a stay of all pleadings in the California trial court including the renewed TRO application, is of their own making. If there are any aggrieved persons as a result of Ms. Zill's reckless decision, their remedy is to look to Ms. Zill and her counsel for relief. One thing is for certain, Ms. Zill and her counsel's choices of how to proceed did not include the choice of ignoring the Injunction. They cannot avoid the consequences of their conduct.

Ms. Zill and her counsel note that they offered to stay the California Appeal. True enough. However, this was only after: (i) their Renewed TRO tactic failed; (ii) they filed a notice of appeal and an opening brief in the California Appeal; (iii) Sprint sent a letter demanding they comply with the Injunction, which went unheeded; and (iv) this Court reviewed Sprint's papers and signed the Order to Show Cause. Further, this offer was not without conditions. Ms. Zill and her counsel demanded that in exchange for graciously agreeing to stay the California Appeal (in other words, heed this Court's Injunction), Sprint must "withdraw[] its motion before Judge Linares regarding the Zill appeal;" and that "Sprint stipulates, and Judge Linares agrees, to the vacation [sic] of the pending OSC." (*See* Boyle

---

[4] Sprint sought to recoup the fees and costs by way of sanctions before Judge Smith but, as noted in Sprint's Opening Memorandum of Law, Judge Smith directed Sprint to this Court for any such relief. [*See* Doc. No. 604, Ex. F].

Reply Dec., Ex. D).  Sprint, having twice been put to the effort, and expense, of enforcing compliance with the Injunction, declined because Ms. Zill and her counsel were merely agreeing to comply with this Court's Injunction as it relates to the California Appeal.  (*Id.*).  Further, the relief sought in the Order to Show Cause seeks more than just a stay of the California Appeal.  It seeks a stay of all litigation, including the California Subscriber Case relating to Class Released Claims, a finding of contempt and the associated sanctions that will allow Sprint to recoup its attorney fees.

## ARGUMENT

I. **MS. ZILL AND HER COUNSEL WERE NOT FREE TO COLLATERALLY ATTACK AND/OR IGNORE THE INJUNCTION BUT RATHER SHOULD HAVE SOUGHT RELIEF FROM THIS COURT OR TAKEN AN APPEAL**

Ms. Zill's counsel argues that she has a "clear right" to collaterally attack the Settlement on behalf of the absent class members.  Opp. at 4.  This argument misses the point.  Ms. Zill has no right, clear or otherwise, to ignore the Injunction, or seek to evade its dictates through a collateral attack.  Her choice as an opt-out was to not pursue class Release Claims on behalf of the Subscriber Class but merely proceed as an individual.  Her choice as a representative of the absent Subscriber Class Members (who are admittedly part of the Settlement Class here), after being made aware of the Injunction, was to come to this Court and seek relief from the Injunction.  If that course failed she should have pursued an appeal

to the Third Circuit. Ms. Zill could not simply ignore the law and the Injunction and argue, in a state court forum, that the Injunction is infirm based upon due process concerns, or other alleged legal defects. "It is fundamental to our legal system that 'all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but absent a stay, he must comply promptly with the order pending appeal.'" *U.S. v. Stine*, 646 F.2d 839, 845 (3rd Cir. 1981) (quoting *Maness v. Meyers*, 419 U.S. 449, 458, (1975)); *see also Marchak*, 2009 U.S. App. LEXIS 14605 at *13 (citing *Operation Rescue*, 919 F.2d at 871).

The bar against attacking the underlying Injunction in a contempt proceeding applies equally to post-final judgment disobedience such as that demonstrated here. "There are strong public policy reasons for limiting review, even in post-final judgment proceedings, to matters which do not invalidate the underlying order." *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3rd Cir. 1982).

The course charted by Ms. Zill is contemptuous and there is clear, convincing and unrebutted evidence of that contempt. Just as in *Operation Rescue*, neither Ms. Zill or her counsel contest the validity of the Injunction, their knowledge of it or their continued prosecution of Class Released Claims. As to the last point, in their Opposition they confirm that the California Appeal is necessary

to "resurrect [the absent class members'] claims, [] if the Third Circuit reverses this Court's order approving the settlement in this case." Opp. at 9. Just as in *Operation Rescue*, here the persons against whom contempt is sought have admitted to all of the clear and convincing evidence necessary for a finding of contempt. 919 F.2d at 870-871.[5]

While cases allegedly supporting a right to collaterally attack a judgment approving a settlement are irrelevant to this contempt proceeding for violating the Injunction, even if they were, not a single case cited by Ms. Zill's counsel arises in the setting present here. There is no mention of an injunction having been entered in those cases or an appeal pending on the judgment which was undergoing a collateral attack. In *Hansbury v. Lee*, 311 U.S. 32 (1940), the Circuit Court of Illinois held a trial on the merits and ruled that a judgment in a earlier Illinois state action (*i.e.*, *Burke v. Kleiman*, 277 Ill.App. 519) was *res judicata*. The Supreme Court of Illinois affirmed on October 10, 1939. There is no mention of any injunction arising out of the earlier state court action. Further, there is was no appeal pending on the state level when the Supreme Court

---

[5] To show civil contempt all that must be established is: (1) a valid court order exists; (2) the party against whom contempt is sought had knowledge of that order; and (3) that person disobeyed that order. *See Operation Rescue*, 919 F.3d at 871 (a person subject to the injunction claimed it was constitutionally infirm so he disregarded it – court refused to hear the constitutional challenge as it was an impermissible collateral attack and found contempt).

undertook to review the Illinois state court judgment. *Hansbury*, 311 U.S. at 38-39.

*Gonzales v. Cassidy¸* 474 F.2d 67 (5th Cir. 1973) also did not involve an injunction arising out of the case subject to the collateral attack and there was no appellate review pending with regard to that case. In *Stephenson v. Dow Chemical Co.*, 273 F.3d 249 (2nd Cir. 2001), the final judgment and all appeals as to class certification, settlement approval and the distribution plan itself were complete in or about 1984. Plaintiff filed a suit in August 1998 that was dismissed on *res judicata* grounds. There is no mention of an injunction issued by the class action court in 1984 and obviously all appeals of that court's rulings had been completed at the time of the collateral attack.

In *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998), the certifying court was the Northern District of California and it entered its final order approving the class and settlement in October of 1992. The plaintiff filed a class action complaint in the Middle District of Florida on September 26, 1991. Following the final judgment in the Northern District of California, the District Court in the Middle District of Florida dismissed plaintiff's case based upon claim preclusion resulting from the settlement in the Northern District of California. There is no mention of an injunction issued by the Northern District of California

nor is there any indication of appeal of the Northern District class action approval. Thus, this case also does not support Ms. Zill and her counsel's position here.

Similarly, in *Epstein v. MCA, Inc.*, 179 F.3d 641 (9th Cir. 1999), there was no indication that the underlying Delaware class action was still subject to appeal and/or whether there was an injunction entered in that case. *See also Taylor v. Liberty Nat. Life Ins. Co.*, 462 S.2d 907 (Ala. 1984) (final judgment in class action entered January 6, 1978 and collateral attack commenced in 1983; no mention of an injunction or pending appeal); *see also Wilkes v. Phoenix Home Life Ins. Co.*, 902 A.2d 366 (Pa. 2006) (class action settlement approved in 1997, non-opting out plaintiff filed suit in March of 2000; no mention of an injunction or appeal of the class action settlement); *see also Daar v. Yellow Cab Co.*, 433 P.2d 732 (Ca. 1967) (not a collateral attack decision); *see also Janik v. Rudy, Exelrod & Zieff*, 119 Cal.App.4th 930 (Ca. 2004) (completely distinguishable as it involved class action attorneys defending against a subsequent malpractice action).

Here, there is an Injunction precluding continued prosecution of Class Released Claims. Ms. Zill and her counsel had notice of that Injunction. They cannot simply ignore it. Nor is the Injunction subject to collateral challenge. Further, the Third Circuit has not yet passed on the very issues Ms. Zill and her counsel seek to have a California state appellate court address. Allowing continued re-litigation of issues, decided by this Court, in California state court,

11

particularly while those decisions are on appeal to the Third Circuit, is clearly what the All Writs Act, and settled principles of federalism, are designated to prevent.

## II. AN ORDER ENJOINING CONTINUED LITIGATION BY MS. ZILL AND HER COUNSEL IS NOT ONLY PROPER BUT NECESSARY

Ms. Zill and her counsel contend that this Court cannot stay the California Appeal. They contend that the California Appeal does not fall under the re-litigation exception of the Anti-Injunction Act. This argument is preposterous. The California Appeal is admittedly, and obviously, an attempt to invalidate the Settlement and allow the California Subscriber Case to continue. Ms. Zill and her counsel do not even attempt to argue that the California Subscriber Case is not included within the Class Released Claims nor do they attempt to argue that the absent class members of the California Subscriber Class are not Settlement Class Members covered by the Injunction. Thus, the California Subscriber Case seeks to undo the Settlement that was vigorously litigated before this Court.

The Injunction itself should have restrained Ms. Zill and her counsel from prosecuting the California Subscriber Case after February 16, 2010. This would have included staying both the matters argued before Judge Smith on March 5, 2010, which resulted in her decision dismissing the California Subscriber Class Claims (other than as to Ms. Zill), as well as the California Appeal. However, because the Injunction itself does not expressly identify the proceedings before Judge Smith as well as the California Appeal, Sprint is forced to have this Court

reaffirm the decisions that it made both in the All Writs Act Order and the Final Judgment so it can be supplied to the courts in California. Thus, a subsequent All Writs Act Injunction is necessary and has been necessitated by the contemptuous conduct of Ms. Zill and her counsel.

The borderline frivolous argument regarding what was or not litigated before this Court as part of the approval process, resulting in the Settlement, is irrelevant.[6] The California Appeal is a means to the end of reviving the California Subscriber Case on behalf of members of the Settlement Class here. The revival of these claims would include Class Released Claims. As such, the California Appeal falls directly within the purview of the Injunction. It also represents an attempt to re-litigate the Class Released Claims. The re-litigation exception to the Anti-Injunction Act is clearly satisfied by the virtue of the California Appeal.

---

[6] Ms. Zill, and her counsel, claim that Galleguillos Objectors' issues regarding individual notice were not litigated before this Court. Opp. at 12. That is poppy cock. This Court's Opinions [Doc. Nos. 321 & 438] reflect the enormous effort the Court and the litigants put forth regarding the individual notice issue. [*See* Doc. No. 438 at pp. 15-21] (In addressing the Galleguillos Objectors' challenge, this Court held: "the Court has already examined the Rice Declaration and found that the time, cost and effort necessary to do so – as certified by Sprint's Vice-President of Customer Billing Services – would be unreasonable in light of all the circumstances. Nothing presented to the Court has given the Court reason to revisit this finding") (footnotes omitted). While Mr. Bursor's efforts to lay in the weeds and spring a last minute declaration on the Court, and belatedly raise evidentiary objections, was rightly defeated, the Court still examined the Rice Declaration and found it fully competent. [Doc. No. 438 at 18].

### III. THE ARGUMENT REGARDING CALIFORNIA RULE OF PROFESSIONAL CONDUCT 2-100, CONCERNING COMMUNICATIONS WITH A REPRESENTED PARTY, HAS THE SHOE ON THE WRONG FOOT

As noted above, all of the issues raised in the California Appeal fall within the re-litigation exception to the Anti-Injunction Act. This includes any contention regarding the effect of California Rule of Professional Conduct 2-100. Opp. at 12-13.

However, when it comes to lawyers being involved with previously represented parties, it is Ms. Zill's counsel which has clearly come close to, if not already has, crossed that line. As noted, it is uncontroverted that the California Subscriber Class is subsumed by the Settlement Class. Ms. Zill became the class representative for the California Subscriber Class, at the earliest, on December 19, 2008 – the date the Order Granting Plaintiffs' Motion for Certification of Subscriber Class was signed. (*See* Boyle Reply Dec., Ex. E). However, this Court conditionally approved the Settlement Class on December 8, 2008. [Doc. No. 92]. At that point, it appointed James E. Cecchi, Esq. of Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Paul M. Weiss, Esq. and George K. Lang, Esq. of Freed & Weiss, LLC, and Stephen A. Weiss, Esq. and Jonathan Shub, Esq. of Seeger Weiss, LLP as Interim Class Counsel for the Settlement Class.

Thus, these attorneys were representing those members of the California Subscriber Class that were subsumed in the Settlement Class, as of

December 8, 2008. They continue to represent them today. Ms. Zill's appointment post-dated both the conditional certification of the Settlement Class and the appointment of Interim Class Counsel, which then became permanent Class Counsel, to represent those Class Members. To the extent Ms. Zill's counsel communicated with members of the Settlement Class, including those Settlement Class Members that were also part of the California Subscriber Class, it is they who should be concerned about the application of the controlling rules of professional conduct. In any event, the issue is both meritless and irrelevant to this proceeding.[7]

---

[7] The final point that Ms. Zill and her counsel contend was not addressed by this Court was the claim that the *Larson* Class Representatives are inadequate because they failed to assert claims on behalf of the Subscriber Class. Opp. at 13. As noted in Sprint's moving memorandum of law, that issue was specifically addressed in this Court's opinion. [*See* Doc. No. 438 at 7-8].

## **CONCLUSION**

For the foregoing reasons, Sprint respectfully requests that its application be granted.

DATED:	January 18, 2011			KELLEY DRYE & WARREN LLP

By:  *s/ Joseph A. Boyle*
    Joseph A. Boyle
    Geoffrey W. Castello
    Lauri A. Mazzuchetti
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

*Attorneys for Defendants
Sprint Nextel Corporation
Sprint Spectrum L.P. d/b/a Sprint
Nextel and Nextel Finance Company*