UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY HALL, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 07-05325 (JLL) |

---
**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION FOR PAYMENT OF ADDITIONAL ATTORNEY'S FEES**
---

　　　　　　　　　　　　　　　　　　　　　　　　Brian R. Strange
　　　　　　　　　　　　　　　　　　　　　　　　Gretchen Carpenter
　　　　　　　　　　　　　　　　　　　　　　　　STRANGE & CARPENTER
　　　　　　　　　　　　　　　　　　　　　　　　12100 Wilshire Blvd., Suite 1900
　　　　　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90025
　　　　　　　　　　　　　　　　　　　　　　　　(310) 207-5055

　　　　　　　　　　　　　　　　　　　　　　　　James E. Cecchi
　　　　　　　　　　　　　　　　　　　　　　　　Lindsey H. Taylor
　　　　　　　　　　　　　　　　　　　　　　　　CARELLA, BYRNE, CECCHI,
　　　　　　　　　　　　　　　　　　　　　　　　OLSTEIN, BRODY & AGNELLO
　　　　　　　　　　　　　　　　　　　　　　　　5 Becker Farm Rd.
　　　　　　　　　　　　　　　　　　　　　　　　Roseland, New Jersey 07068
　　　　　　　　　　　　　　　　　　　　　　　　(973) 994-1700

　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs and the Class

**TABLE OF CONTENTS**

Table Of Authorities ....................................................................................................................ii

Preliminary Statement..................................................................................................................1

Legal Argument

The Agreement Provides That The Plutzik Group Was To Be Paid A
Single Liquidated Lump Sum Payment Of $600,000 For Attorney's Fees Plus Expenses................2

    a)    Applicable Rules of Contract Interpretation ...........................................................2

    b)    Class Counsel Agreed to Settle The Plutzik Group
           Claim for Fees For a Flat $600,000 ..........................................................3

Conclusion .................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*AXA Assurances v. Chase Manhattan*, 339 N.J.Super. 22 (App.Div. 2001) .................................. 2
*Conway v. 287 Corporate Center Associates*, 187 N.J. 259 (2006). ............................................... 3
*Cooper River Plaza v. Briad Group*, 359 N.J.Super. 518 (App.Div. 2003) ................................... 3
*Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556 (1999) ...................................................... 2
*Driscoll Construction Co. v. State*, 371 N.J.Super. 304 (App.Div. 2004) ...................................... 3
*Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159 (3d Cir. 2001) ....................................... 3
*Erny v. Estate of Merola*, 171 N.J. 86 (2002) ................................................................................. 2
*In re Color Tile, Inc.*, 475 F.3d 508 (3d Cir. 2007) ........................................................................ 3
*Newark Publishers' Association v. Newark Typographical Union*, 22 N.J. 419 (1956) ................ 2
*Rowe v. Hoffman-LaRoche, Inc.*, 189 N.J. 615(2007) .................................................................... 2

## PRELIMINARY STATEMENT

Bramson, Plutzik, Mahler & Birkenhaeuser and six other law firms (the "Plutzik Group") move to enforce a purported agreement by Class Counsel to pay nearly $200,000 in out-of-pocket expenses, in addition to $600,000 which has already been paid to them pursuant to a settlement agreement (hereinafter the "Agreement") with Class Counsel. As is more fully set forth below and in the accompanying Declarations of Class Counsel, the Plutzik Group's position is contrary to the express terms of the Agreement with Class Counsel as well as plain common sense. The Agreement provides that the Plutzik Group was to receive a single, liquidated amount - $600,000 – for its attorney's fees plus reimbursement of out-of-pocket costs and expenses incurred prosecuting a California ETF case against ATT. It does not, in any way, provide for the payment of $600,000 for attorney's fees and an additional (undefined) quantum for expenses which had not even been produced to Class Counsel at the time the Agreement was negotiated and executed. Class Counsel's express purpose in entering into the Agreement with the Plutzik Group was to liquidate – in a single lump sum – Class Counsel's entire potential exposure to the Plutzik Group so as to avoid the fee disputes that plagued the first two ETF cases before this Court. Thus, after providing that the Plutzik Group would receive $600,000 for attorney's plus expenses, the Agreement unequivocally provides that the Plutzik Group will seek nothing further from Class Counsel. That bar is clear and the Plutzik Group's attempted end run around it should be rejected in its entirety.

# LEGAL ARGUMENT

## THE AGREEMENT PROVIDES THAT THE PLUTZIK GROUP WAS TO BE PAID A SINGLE LIQUIDATED LUMP SUM PAYMENT OF $600,000 FOR ATTORNEY'S FEES PLUS EXPENSES

The Plutzik Group contends that it is entitled to its costs and fees in addition to the fixed sum of $600,000 which Class Counsel agreed to pay them. An examination of all of the facts and circumstances, as well as the purpose to be served by the agreement with the Plutzik Group, demonstrates that there was never an agreement to pay the Plutzik Group their expenses in addition to the lump sum payment of $600,000.

a)   **Applicable Rules of Contract Interpretation**

When interpreting a contract, the goal is to determine the intention of the parties, as revealed by the language used, taken as an entirety, the situation of the parties, and the objects they were thereby striving to attain. *Cruz-Mendez v. ISU/Insurance Services*, 156 N.J. 556, 570 (1999).[1] Contracts are to be read as a whole. Individual clauses and phrases must be considered in connection with the rest of the agreement and all parts of the writing are to be given effect, if possible. *Newark Publishers' Association v. Newark Typographical Union*, 22 N.J. 419, 426 (1956); *AXA Assurances v. Chase Manhattan*, 339 N.J.Super. 22, 26 (App.Div. 2001).

---

[1] Class Counsel believes that since the letter agreement was a resolution of claims asserted in a New Jersey proceeding, New Jersey law should apply. The Plutzik Group contend that California law applies to their motion, but concede that there would be no different result if New Jersey law were applied. (Plutzik Group Brief at 12-13). Federal courts are to apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stenor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). The first step in New Jersey's governmental-interest analysis is whether there is an actual conflict in the laws of the states involved. *Erny v. Estate of Merola*, 171 N.J. 86, 100 (2002). If there is no actual conflict, the forum may apply its own law. *Rowe v. Hoffman-LaRoche, Inc.*, 189 N.J. 615, 621 (2007). The rules of contract interpretation are essentially uniform among the states. *American Airlines v. Wolens*, 513 U.S. 219, 233 n. 8 (1995). Since, as the Plutzik Group concede, there are no outcome-determinative differences between California and New Jersey law, the Court should apply New Jersey law to the instant dispute.

Even if a contract is unambiguous, the court may consider extrinsic evidence to assist in ascertaining the intent of the parties, including the particular contractual term in issue, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties conduct. *Conway v. 287 Corporate Center Associates*, 187 N.J. 259, 269 (2006). The purpose of examining such extrinsic evidence is to uncover the true meaning of the words used by the parties, not to vary the terms of the contract. *Id.* at 270. "Semantics cannot be allowed to twist and distort the words' meaning in the minds of the parties." *Id.*

Where a contract is unambiguous, its interpretation is a question of law for the court. *Driscoll Construction Co. v. State*, 371 N.J.Super. 304, 313 (App.Div. 2004). On the other hand, if the meaning of the contract is unclear or the words are ambiguous, the interpretation of the agreement is left to the trier of fact. *Id.* at 314. A contract is ambiguous if it is reasonably susceptible to more than one meaning. *In re Color Tile, Inc.*, 475 F.3d 508, 515 (3d Cir. 2007); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 164 (3d Cir. 2001). Whether a contract is ambiguous is a question of law for the court. *Cooper River Plaza v. Briad Group*, 359 N.J.Super. 518, 529 (App.Div. 2003).

b) **Class Counsel Agreed to Settle The Plutzik Group Claim for Fees For a Flat $600,000**

Class Counsel respectfully submits that when the Court examines the entire Agreement, as well as the surrounding circumstances leading up to its execution, it clearly provides that the Plutzik Group would receive a single, liquidated payment of $600,000 for attorney's fees plus expenses. The Plutzik Group agreed – in equally unequivocal terms – not to seek anything further from Class Counsel. Its current motion is little more than an attempt to use semantics to impart a meaning into the Agreement that was not contemplated by Class Counsel and is not

3

supported by the plain language of the entire Agreement. The language in the letter agreement between the Plutzik Group and Class Counsel states:

> Class counsel in the above-entitled action will pay you for the work performed by the Seven Law Firms (as defined below) in litigating the ETF claims in [listed Actions], the sum of $600,000 (Six Hundred Thousand dollars) for attorneys' fees, plus reimbursement of out-of-pocket costs and expenses incurred by the Seven Law Firms in the Actions. You will seek no other or additional payment from Class Counsel for attorney's fees, costs or expenses incurred by any of the Seven Law Firms in the Actions.

Class Counsel submits that this language is entirely consistent with Class Counsel's intentions, and directly contrary to the Plutzik Group's newly minted semantic interpretation. The Agreement clearly says what the $600,000 payment was for – it was for attorney's fees, plus reimbursement of costs and expenses incurred by the Plutzik Group. It does not say – in any place – that the Plutzik Group would be paid $600,000 as well as an additional undefined quantum of monies for reimbursement of expenses. Rather, the $600,000 was for, as Class Counsel intended, attorney's fees plus expenses. Numerous other compelling factors support this interpretation.

For example, the sentence which immediately follows the sentence setting forth the quantum the Plutzik Group would receive for attorneys' fees plus expenses, makes no sense whatsoever under the Plutzik's Group's interpretation of the Agreement. This sentence states that after receiving the $600,000 payment the Plutzik Group will seek "no other or additional payment from Class Counsel for attorneys' fees, costs and expenses incurred by the Seven Law Firms in the Actions." This was unequivocally Class Counsel's intention – to liquidate the amount due to the Plutzik Group. It is nonsensical to contend, as the Plutzik Group does, that Class Counsel agreed to pay it $600,000 for attorney's fees, plus expenses, and further agreed that the Plutzik Group would seek nothing further for fees or expenses, but nonetheless

4

simultaneously agreed that the Plutzik Group would be paid an unknown sum of money for an unknown quantum of costs and expenses which had not even been provided to Class Counsel! The exact opposite is the case – Class Counsel liquated its potential liability to the Plutzik Group by agreeing to pay a single defined sum of $600,000 for two things: (1) attorneys' fees; plus (2) expenses. There is, respectfully, nothing ambiguous about the Agreement – it says the Plutzik Group is to be paid a single sum of money for attorneys' fees plus expenses and that they would not seek anything further. This motion is a direct breach of that unequivocal agreement and it should, accordingly, be rejected.

The circumstances surrounding the execution of the Agreement also directly support Class Counsel's position. The purpose of the agreement with the Plutzik Group was to reach a settlement to avoid the disputes that burdened the Court in the other ETF cases. A payment of a single liquidated sum of $600,000 to the Plutzik Group achieved that result since there would be no issues left unresolved between the Plutzik Group and Class Counsel. Further, since it was Class Counsel's intent to resolve their payment issues with the Plutzik Group, it would be illogical for Class Counsel to agree to a settlement in which they supposedly agreed to pay an open, unliquidated, and undefined amount of costs and expenses to the Plutzik Group which may or may not be awarded by the Court.[2]

The Plutzik Group's contention that Class Counsel would receive a windfall if the Plutzik Group does not receive their expenses does not consider the entirety of the circumstances and is

---

[2] For example, suppose the Plutzik Group submitted $1,000,000 in costs to Class Counsel and despite our efforts, the Court awarded $300,000 of those costs finding that the balance were unreasonable. Under the Plutzik Group's theory, Class Counsel would be obligated to pay them $1,000,000. This illustrates the point – Class Counsel never reached such a nonsensical agreement. To the contrary, at the time the Agreement was reached, Class Counsel obligated itself to make a single lump sum payment for attorney's fees plus expenses. In exchange the Plutzik Group agreed not to seek anything further. Class Counsel has lived up to the terms of its bargain, the Plutzik Group has not.

simply wrong. The agreement with the Plutzik Group obligated Class Counsel to pay $600,000 to the Plutzik Group irrespective of what fees and/or expenses were to be awarded to Class Counsel, and irrespective of any other payments Class Counsel might have to make to other counsel and/or objectors. The email exchange between Mr. Plutzik and Mr. Strange in October 2010 relating to the Plutzik Group' sharing a payment to an additional ETF counsel underscores this point and the fact that Class Counsel – and Class Counsel alone – bore the risk that the Court would award less than the fees and expenses requested by Class Counsel.

As is reflected in these email exchanges, (Plutzik Dec., Ex. I; Strange Dec., Ex. A), Class Counsel agreed to pay an additional $150,000 to another ETF counsel, Joe Antonelli, as a settlement. Mr. Strange asked that the Plutzik Group absorb 10% of this amount, since that represented their percentage share of the total fee award. Mr. Plutzik refused, stating "***The agreement provides for the payment of a flat sum to the seven law firms included in my group, not a percentage. As I read the agreement, it doesn't contemplate that the members of my group will be obligated to fund any portion of any settlements Class Counsel may reach with other plaintiffs' counsel. In my view, we don't owe any part of this.***" (Emphasis added).

Mr. Plutzik was correct in this e-mail. First, Mr. Plutzik's statement the agreement provided for "a flat sum" is true and supports Class Counsel's position that the agreement to pay $600,000 was a flat liquidated payment for attorney's fees plus reimbursement of costs and expenses incurred by the Plutzik Group in the ETF cases. Further, it demonstrates that Class Counsel, not the Plutzik Group or any other EFT counsel, were bearing the risk that any fees and/or expenses might not be awarded, or that they might have to share their fees with other ETF counsel and/or objectors which, in fact, they had to do. Further, Class Counsel had no guarantee – unlike the Plutzik Group – that they would receive any particular percentage or expense

6

reimbursement award from the Court.  While Class Counsel was hopeful that the Court would agree with Class Counsel's position in this regard, there was no guarantee.  On the contrary, the Plutzik Group's recovery was fixed at $600,000 irrespective of what the Court awarded Class Counsel.  This was part of the bargain and exchanged consideration – we took the risk, they did not.  It is not a windfall to take on risk in exchange for the hopes of a higher recovery.

The Plutzik Group's interpretation of the Agreement not only ignores the Agreement's plain words and prohibition against seeking anything further from Class Counsel, it also ignores common sense.  Why would Class Counsel agree to give the Plutzik Group a guaranteed $600,000 irrespective of what the Court awarded, as well as an additional unliquidated unknown amount of expense also irrespective of what the Court awarded?  Such an agreement makes no sense and Class Counsel did not enter into such an agreement.  To the contrary, Class Counsel's express intention was to liquidate the amount due to the Plutzik Group for attorney's fees plus reimbursement of out-of-pocket costs and expenses and then take on the risk – and potential rewards – of obtaining a full fee and cost recovery from the Court.  It is for that reason that the Agreement provides that the Plutzik Group would cooperate with Class Counsel and submit to it – for inclusion in Class Counsel's fee and cost application, the Plutzik Group's costs and expenses incurred in California.  It was Class Counsel's risk, and Class Counsel's potential reward.

Two other points highlighted by the Plutzik Group actually prove Class Counsel's point.  First, the Plutzik Group contends that the language utilized in the long form notice sent to the class somehow supports its interpretation of the Agreement with Class Counsel.  This is simply not true.  The language in the long form notice says that "Class Counsel have agreed  not to seek more than $6,000,000 in fees plus reimbursement of expenses."  That language is very different

than the language utilized in the Agreement.  In the Agreement, Class Counsel agreed to pay $600,000 "for" something specifically defined – attorneys' fees plus reimbursement of out-of-pocket costs and expenses incurred in the ETF cases.  The notice, by contrast, says that Class Counsel have agreed not to seek more than $6 million "in fees" plus their expenses.  The $6 million is clearly set forth as "in fees" plus an additional quantum for expenses.  The language is different, and has a very different meaning.

Similarly important is the Plutzik Group's focus on the change from the language utilized in the first version of the Agreement with Class Counsel to the language utilized in the version executed by the Plutzik Group.  The Plutzik Group states on page 20 of their Brief that in comparing the agreement with Mr. Bursor's, which Plutzik admits is a flat fee, to the agreement at issue:  "Moreover, it is significant that while the word "total" is present in Class Counsel's agreement with Mr. Bursor, ("the total sum of $400,000…") and was included in Mr. Strange's initial draft of the Agreement with the Seven Law Firms ("the total sum of $600,000 for attorneys' fees, plus reimbursement of out-of-pocket costs and expense…"), Mr. Plutzik revised that draft to remove the word "total," and Class Counsel accepted the revision and signed an Agreement that did not use that word." [3]  What the Plutzik Group does not say is that when Mr. Plutzik omitted the word *total*, his email to Class Counsel stated that the changes are not "controversial" and "**are primarily intended to clarify which firms are involved in my group**" and never said anything about the now "significant" omission. (*See* Strange Dec., Ex. B) Class Counsel respectfully submit that the Plutzik Group brief proves too much. Mr. Plutzik knew Class Counsel thought the deal was a fixed amount and tried to delete one word, not point

---

[3]   The Plutzik Group makes that same argument on page 6 of their Brief.

it out and then say the changes were only intended to make clear it was on behalf of Seven Law Firms.

Mr. Plutzik implies that had the word "total" remained in the Agreement, the meaning of the document would change and Class Counsel would be right. Apparently, he now contends that by removing the word "total" he magically changed the entire meaning of the Agreement. This is not a change he highlighted to Class Counsel and one he in fact sought to bury by asserting that his changes were not controversial. This is nothing more than semantic gotcha. First, Class Counsel does not believe that the meaning of the Agreement was changed one iota by virtue of the elimination of the word "total". In fact, Class Counsel (Mr. Cecchi) signed both documents! Simply put, they both provide that Class Counsel would pay the Plutzik Group $600,000 for attorneys' fees plus reimbursement of expenses. Second, by highlighting this point Mr. Plutzik reveals his true character – if the change were significant, he should have highlighted it then and not waited to spring the alleged trap on Class Counsel after the fact. Suffice it say this type of gamesmanship is simply not appropriate nor does it ultimately matter – the Agreement says what it says – the Plutzik Group shall be paid 600,000 for attorneys' fees plus expenses. No amount of wordsmithing or semantic jockeying can change this fact. As such, the Plutzik Group's motion should be denied.

**CONCLUSION**

For the reasons set forth above, the Plutzik Group's motion to be paid their expenses on top of the $600,000 in fees Class Counsel agreed to pay should be denied because Class Counsel never agreed to pay those expenses.

                                               CARELLA, BYRNE, CECCHI,
                                               OLSTEIN, BRODY & AGNELLO
                                               Attorneys for Plaintiffs

                                               By:   /s/ James E. Cecchi
                                                        JAMES E. CECCHI

                                               STRANGE & CARPENTER
                                               Attorneys for Plaintiffs

                                               By:   /s/ Brian R. Strange
                                                        BRIAN R. STRANGE

Dated: January 24, 2011