James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

Brian R. Strange
Gretchen Carpenter
STRANGE & CARPENTER
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
(310) 207-5055

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARRY HALL, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>AT&T MOBILITY LLC f/k/a CINGULAR WIRELESS LLC, *et al.*,<br><br>              Defendants. | Civil Action No. 07-05325 (JLL)<br><br><br>**DECLARATION OF<br>JAMES E. CECCHI** |

JAMES E. CECCHI, ESQ., of full age, hereby declare as follows:

1.      I am a partner in the firm of Carella, Byrne, Cecchi, Olstein, Agnello & Brody, co-Class Counsel appointed by the Court on behalf of the Class in the Court's Preliminary Approval Order dated November 4, 2009 and Final Approval Order and Judgment and Opinion dated October 13, 2010.  I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I, along with Brian Strange, negotiated the individual settlements between Class Counsel and the individual law firms involved in other ETF litigation against ATTM with respect to payment of attorneys' fees and expenses. In exchange, those law firms supported the nationwide class action settlement and submitted their respective declarations setting forth their attorneys' fees and out of pocket expenses incurred prosecuting the various related ETF cases. The settlements reached with each of these ETF counsel was negotiated and agreed to as a defined single liquidated lump sum. In other words, Class Counsel obligated themselves to make payment to ETF counsel in a fixed amount from the Court's fee award, irrespective of what that fee award was. As such, it was Class Counsel, not the other law firms, that bore the entire risk regarding the percentage fee award, and expense reimbursement award, the Court ultimately approved.

3. At no time did I ever approve an agreement with any law firm that obligated Class Counsel to make payment of an amount of money for fees, with an additional undefined amount for costs. Such an arrangement is contrary to the entire objective Class Counsel sought to achieve in negotiating these settlements, namely, to liquidate the specific sum Class Counsel would be obligated to pay ETF Counsel before final approval.

4. The Agreement reached with Mr. Plutzik is entirely consistent with Class Counsel's objectives.

5. The Agreement provides – quite clearly in my judgment – that Mr. Plutzik's group would be paid a fixed liquidated amount of $600,000 "for attorney's fees, plus reimbursement of out-of-pocket costs and expenses…"

6. Mr. Plutzik's interpretation of this language – that it obligates Class Counsel to pay two sums – attorney's fees in the amount of $600,000 and then a *separate undefined* sum for expenses is inconsistent with the entire agreement and a plain reading of its terms.

7. First, the Agreement provides that the $600,000 payment was for two categories of things: (1)attorney's fees; plus (2) reimbursement of out-of-pocket costs and expenses. At no time did Class Counsel believe that this language was ambiguous or somehow obligated us to make an additional payment for expenses on top of the $600,000 liquidated sum. To the contrary, I intended this language to mean exactly what I believe it says – the $600,000 satisfied two categories of potential recoveries for Mr. Plutzik's group – attorney's fees plus expenses. Indeed, at the time the agreement was negotiated and executed, we had no itemization of Mr. Plutzik's expenses. We also had no idea how the court would rule on any fee and expense request. It would have been totally non-sensical – and contrary to our specific purpose of liquidating the amount due to all ETF counsel – to agree to such an unknown open future obligation. I would not have approved an agreement that obligated Class Counsel to such an unknown and potentially significant liability.

8. As the Court is aware from Mr. Plutzik's submission, I executed both versions of the Letter Agreement before the Court. I did not consider any of Mr. Plutzik's changes to be material in the least. The dispositive language is the same in both – Mr. Plutzik's group was to receive $600,000 in compensation for his attorney's fees plus expenses.

9. This conclusion is made even clearer by the very next sentence in each version of the agreement. Both documents say that after Mr. Plutzik receives the $600,000, Mr. Plutzik "will seek no other or additional payment from Class Counsel for attorneys' fees, costs or expenses incurred by any of the Seven Law Firms in the Actions." This sentence only makes sense when the Agreement is construed as Class Counsel intended it to be – the $600,000 was the single liquidated payment Mr. Plutzik was to receive for attorney's fees plus expenses.

10. Moreover, the intent of the Letter Agreement was to definitively resolve any claims the Seven Firms might have to the attorney fee/expense allocation under the Settlement

Agreement. It would be contrary to reason and the purpose of the agreement for Class Counsel to have agreed, as the Plutzik Group now claims, to pay some unknown amount of expenses which were not even limited by Court approval. We would not have and did not make such an agreement.

    I hereby declare under penalty of perjury that the foregoing is true and correct.

/s/ James E. Cecchi<br>
JAMES E. CECCHI

Dated: January 24, 2011