# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

NEW YORK, NY
WASHINGTON, DC
CHICAGO, IL
STAMFORD, CT

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

200 KIMBALL DRIVE

PARSIPPANY, NEW JERSEY 07054

(973) 503-5900

FACSIMILE
(973) 503-5950
www.kelleydrye.com

DIRECT LINE: (973) 503-5920
EMAIL: jboyle@kelleydrye.com

July 16, 2012

**VIA ECF**

Hon. Jose L. Linares, U.S.D.J.
United States District Court for the
 District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street, Room 2042
Newark, New Jersey 07101

    Re: *Larson, et al. v. AT&T Mobility LLC f/k/a*
       *Cingular Wireless LLC, et. al.*
       <u>Civ. No.: 07-5325 (JLL)</u>

Dear Judge Linares:

    This firm represents the Sprint Defendants ("Sprint") in the above-referenced matter. This letter is in response to the July 12, 2012 letter from Scott A. Bursor. While we have no wish to engage in a letter-writing campaign prior to the August 1, 2012 hearing, to the extent the Court is inclined to consider Mr. Bursor's letter, I respectfully request that the Court consider this response as well, as Mr. Bursor's letter contains some factual inaccuracies.

    Mr. Bursor's letter proceeds from the notion that the Third Circuit found that the current Settlement Class Representatives are inadequate. The Third Circuit did not make any such finding. The Third Circuit instead "suggest[ed] that the Court consider again whether the Class Representatives can adequately represent all class members" because the "objection was not made before the District Court with the clarity it has been pressed on" the Third Circuit. (Opinion, pp. 54, 60-61). The Third Circuit was clear in its holding, stating that "we will not opine on the District Court's conclusion that the Class Representatives can adequately represent all class members" and suggested the Court revisit the issue "because the case must be considered again on the notice issue." (*Id.*, p. 61). The Third Circuit did not even suggest a result of the remand. The Panel instead urged this Court to consider this issue "again in greater detail" as the Panel did not believe the Court was able to consider the issue in the first instance because of the lack of clarity in which the objection had been presented at final approval. (*Id.*) The assumption in Mr. Bursor's letter that it is a foregone conclusion that this Court will find the

**KELLEY DRYE & WARREN LLP**

Hon. Jose L. Linares, U.S.D.J.
July 16, 2012
Page Two

current Settlement Class Representatives inadequate is thus wrong, and it is respectfully submitted that no such finding is necessary. It is further respectfully submitted that, as the Third Circuit did not disturb the fairness finding by this Court, there is no reason to "negotiate a new settlement."

It should also be noted that Mr. Bursor's interjection of his status as class counsel in the "Zill Subscriber Class" and the "Nextel Class" is of no moment to the issues before the Court on remand. The Zill Subscriber Class was comprised of:

> all persons who are parties to a Sprint customer agreement with a flat early termination fee for a personal cell phone account with a California area code and a California billing address.

(*See* Exhibit A).

These class members sought only injunctive relief. (*See* Exhibit B, p. 1) (The "current subscriber class is seeking only injunctive relief, with the result that class members cannot opt-out."). As Sprint no longer charges flat rate ETFs (*Larson v. AT&T Mobility LLC*, ____ F.3d ___ Slip. Op. at p. 13 n. 5), the claims of the Zill Subscriber Class are moot. While these subscribers may have claimed under the Larson settlement, they do not possess any current claim to enjoin collection of the non-existent flat rate ETFs.

As to the Nextel Class, the California Superior Court, Alameda County, confirmed that Larson representatives adequately represented the interests of the Nextel Class. (*See* Exhibit C, 7:2-4) ("This Court will not revisit the substance of the implicit decision in Larson that the plaintiffs in Larson adequately represented the persons on the Nextel iDen Network and thus the members of the California Nextel class.")

The potential adequacy issue identified by the Third Circuit was with respect to Larson class members who were subject to a flat rate ETF at the time the Larson settlement was consummated. For the reasons set forth above and for other reasons, which could be the subject of briefing, if the Court so desires, this issue can be completely resolved without disturbing the Settlement Agreement. The claim period can be extended for those persons who claimed under the Larson Settlement because they were charged a flat rate ETF at any point in time until the last flat rate ETF contract term lapsed.

**KELLEY DRYE & WARREN LLP**

Hon. Jose L. Linares, U.S.D.J.
July 16, 2012
Page Three

    Thank you for Your Honor's attention to this matter.

            Respectfully submitted,

            *s/ Joseph A. Boyle*

            Joseph A. Boyle

JAB:mc
Encls.

cc: All Counsel via ECF

# EXHIBIT A

1  Plaintiffs' motion for certification of the Subscriber Class in the early termination fee case
2  against defendants Sprint Spectrum, L.P., Wirelessco L.P. and Sprint PCS (collectively "Sprint") in
3  this coordinated proceeding came on regularly for hearing on June 1, 2006 in Department 22 of this
4  Court before the Honorable Ronald M. Sabraw. On June 9, 2006, the Court denied plaintiffs'
5  motion for certification of the Subscriber Class. Plaintiffs subsequently appealed the Court's order
6  and, on June 9, 2008, the Court of Appeal reversed the Court's order and held that the Court should
7  have certified the Subscriber Class.

8  NOW THEREFORE, the Court orders as follows:

9  1.   Plaintiffs' motion for certification of the Subscriber Class in the Sprint early
10 termination fee case is GRANTED.

11 2.   The Subscriber Class is defined as "all persons who are parties to a Sprint customer
12 agreement with a flat early termination fee for a personal cell phone account with a California area
13 code and a California billing address."

14 3.   Pursuant to California Rule of Court 3.766(c), the Court will enter a separate order
15 regarding whether notice to class members is necessary, whether class members may exclude
16 themselves from the action, the time and manner of notice, the content of the notice and the parties
17 responsible for the cost of notice.

18 IT IS SO ORDERED.

20 Dated: December 19, 2008                              _____
21                                                        Judge Winifred Smith

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF                              2
SUBSCRIBER CLASS
56717

# EXHIBIT B



SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY
NOV 1 4 2008
CLERK OF THE SUPERIOR COURT
By_____ Deputy

In re: CELLPHONE TERMINATION FEE CASES ) J.C.C.P. 4332
) ORDER REGARDING NOTICE TO
) SPRINT CURRENT SUBSCRIBER ETF
) CLASS.
)
) Date: November 14, 2008
) Time: 9:00 am
) Dept.: 23

The Court held a Case Management Conference on March 13, 2008. Counsel appeared on behalf of Plaintiffs and on behalf of Defendants. After consideration of the statements of the parties and the discussion at the Case Management Conference, IT IS ORDERED:

The Court will enter a separate order stating that the Plaintiffs in the Sprint/Nextel ETF cases may prosecute the claims in that complaint on behalf of a "current subscriber" class as defined in that order.

The Court finds that class notice is appropriate at this time. Minimal notice is required because (1) notice was already provided to "payor" class and (2) the "current subscriber" class is seeking only injunctive relief, with the result that class members cannot opt-out. The Court finds that the content of Plaintiffs' proposed notice is

1

1  adequate and orders Plaintiffs to post their proposed notice on the existing website
2  concerning the Sprint ETF case. Plaintiffs will pay all costs of this notice.
3      The parties may meet and confer and suggest Court approved updates to the
4  website following the Statement of Decision on the claims of the Sprint payor class as the
5  case progresses. Alternatively, the Court will entertain motions for supplemental notice
6  to keep the class informed of events as the case progresses.
7
8
9  Dated: November 14, 2008                    _____
10                                                   Judge Winifred Smith

# EXHIBIT C

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| In re: CELLPHONE TERMINATION FEE CASES | J.C.C.P. 4332<br><br>ORDER (1) DENYING MOTION OF SPRINT TO DISMISS KATHERINE ZILL; (2) GRANTING MOTION OF SPRINT TO DISMISS MEMBERS OF THE SUBSCRIBER AND NEXTEL ETF CASES WHO DID NOT OPT OUT OF THE LARSON SETTLEMENT; (3) DENYING MOTION OF PLAINTIFF ZILL FOR TRO; AND (4) ADDRESSING CMC ISSUES.<br><br>Date: March 5, 2010<br>Time: 9:30 am<br>Dept.: 23 |

The motion of Sprint to dismiss, the motion to Katherine Zill for a temporary restraining order, and a CMC came on for hearing on March 5, 2009, in Department 23 of this Court, the Honorable Winifred Smith presiding. After consideration of the briefing and the argument, IT IS ORDERED:

**MOTION OF SPRINT TO DISMISS THE SPRINT SUBSCRIBER AND NEXTEL ETF CASES.**

The motion of Sprint to dismiss the Sprint Subscriber component of *Ayyad v. Sprint* and all components of *Robinson v. Nextel* based on the res judicata (claim

1  preclusion) effect of *Larson v. Sprint Nextel Corporation*, No. 07-05325 (JLL) (D.N.J.) is

2  GRANTED IN PART.(fn1)

3   General principles. The cases concerning the res judicata effect of a prior class
4  action settlement fall into two categories - those concerning issues that were and those
5  that were not considered and determined in the prior proceeding.

6
7  Regarding issues that were considered and determined in the prior proceeding,
8  California case law is somewhat unclear about the nature and scope of a permissible
9  collateral attack on a prior class action settlement. *Janik v. Rudy, Exelrod & Zieff* (2004)
10 119 Cal.App.4th 930, 944 fn 3. There is certainly a split in authority at the federal level.
11 *Epstein v. MCA, Inc.* (9th Cir., 1999) 179 F.3d 641, holds that a second court should
12 engage only in a "limited collateral" inquiry into the procedural aspects of the first
13
14 court's order whereas *Stephenson v. Dow Chemical* (3rd Cir., 2001) 273 F.3d 249, holds
15 that a second court can engage in a broad collateral review of the settlement court's
16 substantive findings. The analysis has also divided the supreme courts of various states.
17 Compare *Simmermon v. Dryvit Systems, Inc.* (N.J. Supr. 2008) 953 A.2d 478, 487 fn 9
18 (adopting *Epstein*); *Lamarque v. Fairbanks Capital Corp.* (R.I. Supr., 2007) 927 A.2d
19
20 753, 760-765 (adopting *Epstein*); *Hospitality Management Associates, Inc. v. Shell Oil*
21 *Co.* (S.C. Supr., 2005) 591 S.E. 2d 611, 653-660 (adopting *Epstein*) with *Wilkes ex rel.*
22 *Mason v. Phoenix Home Life Mut. Ins. Co.* (Pa. Supr., 2006) 902 A.2d 366, 370-383
23 (adopting *Stephenson*); *State v. Homeside Lending, Inc.* (Vt. Supr., 2003) 826 A.2d 997,
24 1016-1017 (adopting *Stephenson*).
25

26  _____
27  1 *Johnson v. GlaxoSmithKline, Inc.* (2005) 166 Cal.App.4th 1497, 1507 fn 5 (noting distinction between California and federal terminology).

*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 696-697, post-dates the identification of the *Epstein /Stephenson* split in *Janik,* 119 Cal.App.4th at 944 fn 3, but does not address the issue directly. *Martorana* does, however, strongly suggest that California follows the *Epstein* approach. *Martorana* quotes *Janik* for the proposition that "[i]f the issue on which a malpractice complaint is based has been considered and determined in the class action proceedings, the rulings of the class action court will be binding on members of the class and preclude reconsideration of those matters in another forum" and then concludes, "Martorana had a full and fair opportunity to object to the settlement notice in the [first case] before it was approved by the trial court." *Id.* at 696 and 696-697. Based on analysis implicit in *Martorana* and the analysis explicit in *Epstein* and the state courts that follow *Epstein*, this Court concludes that California follows, or would follow, the *Epstein* approach that where a first court has considered an issue then a second court should engage only in a "limited collateral" inquiry into the procedural aspects of the first court's order.

Regarding issues that were not considered and determined in the prior proceeding, those issues can be the basis for a collateral attack on the substantive aspects of the decision in the first case. *Janik,* 119 Cal.App.4th at 930, 944 fn 3. In addition, a Court granting final approval of a class action settlement cannot determine how the claim preclusion effect of that judgment will apply to any subsequent case. That can only be tested in a second action when claim preclusion is presented as a defense. Order of 12/26/05 (Effect of *In re Wireless Tel. Servs. Antitrust Litig.* (S.D.N.Y., 2005) 385 F. Supp. 2d 403, on Sprint handset locking claims) and Order of 6/9/06 (effect of *Campbell v. AirTouch Cellular* (2006) 2006 WL 754005, on Verizon handset locking claims).

3

1. <u>Opt-outs from the *Larson* settlement.</u> Persons who opted out of the proposed *Larson* settlement were not included in the final *Larson* settlement, cannot obtain the benefits of the settlement, and are not bound by the settlement.

Katherine Zill, the class representative in the California Sprint Subscriber case, opted out of the *Larson* settlement. At the hearing on March 5, 2010, counsel for Plaintiffs provided the Court with Ms. Zill's opt out letter and Sprint offered to provide a declaration that Ms. Zill opted out. The Court considers this as a stipulated fact. Ms. Zill is not subject to the *Larson* settlement and the *Larson* settlement has no res judicata effect on her personally.(fn2)

The absent members of the California Sprint Subscriber case did not collectively opt out of the *Larson* settlement. Although Ms. Zill opted out of the *Larson* settlement as an individual, she could not opt out of the *Larson* settlement on behalf of the entire California Sprint Subscriber class. *Hanlon v. Chrysler Corp.* (9th Cir., 1998) 150 F.3d 1011, 1024, addresses this directly and states:

> The right to participate, or to opt-out, is an individual one and should not be made by the class representative or the class counsel. ... There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members.

See also *In re Prudential Ins. Co. America Sales Practice Litigation* (3rd Cir., 1998) 148 F.3d 283, 295, fn 14; *In re Lease Oil Antitrust Litigation (No. II)* (S.D. Tex., 1999) 186 F.R.D. 403, 439; *Sloan v. Winn Dixie Raleigh, Inc.* (4th, Cir., 2002) 25 Fed. Appx. 197.

The members of the California Sprint Subscriber class are subject to the terms of the *Larson* settlement unless they individually opted out of the settlement.

Ms. Zill's opt-out of the *Larson* settlement does not affect her ability to represent the California class in this motion. This Court designated Ms. Zill as class representative in this California class action and that has not changed. What is at issue in this motion is whether the absent class members in this California case implicitly abandoned Ms. Zill and chose to participate in the *Larson* settlement when, following *Larson*'s allegedly deficient approval, notice, and opt-out procedure, they took no action and thereby elected to remain in the *Larson* settlement. Until the Court determines the validity of *Larson's* approval, notice, and opt-out procedure, the Court presumes that the absent class members in this California case have not abandoned Ms. Zill.

Scope of *Larson* settlement. There is a final judgment in *Larson*. Sprint Oppo. Filed 2/22/10, Exh A. The *Larson* settlement includes and resolves the claims of the non-opting out members of the Sprint Subscriber class and the Nextel Payer class. *Larson* Opinion at 8 fn 7 and 14 fn 11.

Adequacy of Representation - Sprint Subscriber class. Plaintiffs assert that the Plaintiffs in *Larson* did not adequately represent the members of the Sprint Subscriber class. The Opinion in *Larson* expressly addressed this issue. *Larson* Opinion at 7-8. Under the principles of collateral estoppel in *Martorana* and *Epstein* this court will not revisit those issues.

---

2 The Court is frustrated and disappointed that the moving, opposition, and reply papers of the parties did not inform the Court that Ms. Zill had opted out of the *Larson* settlement. The issues were joined at the hearing, but the hearing was focused on issued that had not been briefed.

1  Adequacy of Representation - Nextel Payer class. Plaintiffs assert that the
2  Plaintiffs in *Larson* did not adequately represent the members of the California Nextel
3  class because none of the *Larson* plaintiffs had subscribed to or paid an ETF to Nextel
4  and the original *Larson* complaint did not assert a claim against Nextel. The Opinion in
5  *Larson* did not expressly address these issues. Following *Martorana* and *Epstein*, this
6
7  court examines whether the members of the Nextel Payer class had a full and fair
8  opportunity to raise the issues in the context of the *Larson* settlement.
9  The *Larson* Opinion states that the Galleguillos Objectors were represented by the
10  Bursor Group, that the Galleguillos Objectors objected to the original plan of notice, and
11  that the settlement was specifically revised to provide notice to the members of the class
12  in *Robertson v. Nextel*. *Larson* Opinion at 16, 37 fn 29, 56-57. This suggests that the
13
14  Galleguillos Objectors either were Nextel iDen consumers or were asserting the interests
15  of Nextel iDen consumers. The Galleguillos Objectors raised objections as the adequacy
16  of the *Larson* class representatives, although it appears that the objections were focused
17  on the adequacy to represent Sprint customers rather than to represent Nextel iDen
18  customers. Larson Opinion at 7-8 and 25 fn 23. Finally, counsel for the California
19
20  Nextel class in *Robertson v. Nextel* sought and obtained fees in *Larson* for their
21  contribution in *Robertson* to the *Larson* settlement, again suggesting that the members of
22  the California Nextel class were represented in the Larson settlement. *Larson* Opinion at
23  64-65.
24
25  The Court concludes that the members of the California Nextel class had a full
    and fair opportunity to raise their concerns with adequacy of representation in the *Larson*
26
27  settlement both individually due the supplemental notice provided to the Nextel class and

derivatively through the arguments actually made by the Galleguillos Objectors. Following *Martorana* and *Epstein,* this Court will not revisit the substance of the implicit decision in *Larson* that the Plaintiffs in *Larson* adequately represented the persons on the Nextel iDen network and thus the members of the California Nextel class.

This Court does not address the substantive issues of whether after the merger of Sprint and Nextel the pre-merger claims against Sprint and Nextel had an "identical factual predicate" and whether the Sprint customers in *Larson* provided "adequacy of representation" to the pre-merger iDen Nextel consumers. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* (2nd Cir., 2005) 396 F.3d 96, 106.

Notice in *Larson* - interference with attorney-client relationship. This court certified the Sprint Subscriber class and the Nextel Payer class in June 2006. Orders of 6/9/06 and 4/18/08. As a result, there was an attorney-client relationship between class counsel and the members of the Sprint Subscriber class and the Nextel Payer class after June 2006. *Hernandez v. Vitamin Shoppe Industries, Inc.* (2009) 174 Cal.App.4th 1441, 1459-1461. Under California Rule of Professional Conduct 2-100(A) counsel for Sprint and Nextel were precluded from communicating directly or indirectly with the class members about the subject of the lawsuit. The class notice in *Larson* was, however, approved by and sent at the direction of the federal judge and therefore was not a violation of Rule 2-100(A).

Notice in *Larson* - adequacy. Plaintiffs assert that the class notice in *Larson* was not adequate. The Opinion in *Larson* expressly addressed this issue. *Larson* Opinion at 9-23. Under the principles of collateral estoppel in *Martorana* and *Epstein* this court will not revisit those issues.

7

1   Remedy. This order in no way precludes the members of the Sprint Subscriber
2   class and the Nextel Payer class from raising their concerns with the procedure and
3   substance of the *Larson* settlement by appealing from the judgment in that case. Their
4   remedy, however, is with the United States Court of Appeal for the Third Circuit and is
5   not with this court.
6
7
8   **MOTION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER.**
9   The motion of Plaintiff Zill in her individual capacity for a temporary restraining
10  order is DENIED. The Court considers the probability of success on the merits and the
11  threat of immediate irreparable harm. C.C.P. § 526(a); *Pacific Decision Sciences Corp.*
12  *v. Superior Court* (2004) 121 Cal.App.4th 1100, 1110; *Korean Philadelphia Presbyterian*
13  *Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1084.
14
15  Plaintiff Zill's motion is unclear whether she has paid a flat rate ETF or is a
16  current subscriber and might pay a flat rate ETF in the future. Ms. Zill did not file a
17  declaration in support of her motion. At the hearing, Sprint stated that Ms. Zill is a
18  current subscriber and is subject to a pro-rated ETF.
19
20  Ms. Zill has not demonstrated a probability of success on the merits. Ms. Zill has,
21  through the *Ayyad* Sprint Payor class trial, demonstrated a probability of success in
22  proving that Sprint's flat rate ETF was an unlawful liquidated damages provision under
23  Civil Code § 1671(d). *Ayyad* Statement of Decision filed 12/4/08. Ms. Zill has not,
24  however, demonstrated a probability of success on Sprint's related cross-claim for breach
25  of contract and collection of its actual damages. *Garrett v. Coast & Southern Fed. Sav.*
26  *& Loan Assn.* (1973) 9 Cal.3d 731, 741. There is a reasonable possibility that Ms. Zill
27

8

1 might prevail on her unlawful liquidated damages claim, lose the cross-claim for breach
2 of contract, and end up owing money to Sprint.

3 Ms. Zill has not demonstrated a threat of immediate irreparable harm. If Ms. Zill
4 has already paid a flat rate ETF, then she has a claim for money damages. Ms. Zill has
5 not provided any evidence that she has a flat ETF or that she plans to terminate her
6
7 contract in the near future. Even assuming that Ms. Zill planned to terminate her contract
8 in the near future, the Court would not be inclined to issue a TRO to avoid the
9 complications related to the potentially unlawful imposition of a single ETF on a single
10 consumer.

11 The motion of Plaintiff Zill in her capacity as class representative for the
12 California Sprint Subscriber class and/or the Nextel class (*Robertson v. Nextel*) for a
13
14 temporary restraining order is DENIED. The *Larson* settlement includes and resolves the
15 claims of the non-opting out members of the Sprint Subscriber class and the Nextel Payer
16 class. *Larson* Opinion at 8 fn 7 and 14 fn 11.

17 The request of Sprint for sanctions is DENIED. The Court does not consider
18 whether any actions in this court might be a violation of an injunction in the *Larson* case.
19
20 Injunctions issued by the federal court should be enforced by the federal court.

21

22 **CMC ISSUES.**

23 **ETF EXECUTIVE COMMITTEE.**
24 The Court established an ETF Executive Committee to manage the ETF cases in this
25
26 coordinated proceeding. Orders of 1/28/04, 2/10/04, 6/29/05, 10/11/05, 4/2/09, 8/24/09. The
27

Committee is a deliberative entity and not just a structure for determining who gets to vote and how many votes is a majority. The Order of 2/10/04 states at para 2(a):

> Decisions by Executive Committee. (a) The Executive Committee will function in a manner similar to that of a board of directors. The Executive Committee must be informed and must deliberate before making decisions. All decisions of the Executive Committee will be by majority vote.

The Committee must give notice of a meeting to all of its members. A Committee can make a decision without a meeting only if all members consent to that procedure. Cal. Corp. § 307(a)(3) and (b); 8 Del. Code § 141(f).

If members of the Committee think they have been improperly excluded from the Committee's processes then they can seek relief from the Court. If members of the Committee think that new facts warrant a review of the composition of the Committee then they can bring those facts to the Court's attention. The Court directs the members of the Committee to have a meeting of all members to address these issues before any member seeks relief from the Court related to the Committee's internal matters.

**AWS/CINGULAR.**

ETF. There has been a nationwide settlement in *Hall v. AT&T Mobility* in federal court in New Jersey. The motion for final approval is set for 4/14/10. (Cingular CMC Stmt filed 11/9/09, Exh A.) This Court has stayed the AWS/Cingular ETF cases pending resolution of the motion in *Hall* for final approval. Order of 10/19/09 at 5:16-7:15.

HANDSET LOCKING. This Court has preliminarily approved a nationwide settlement. The motion for final approval is set for 7/2/10.

**T-MOBILE.**

ETF. Case completed.

1     HANDSET LOCKING. Case completed.

2     **SPRINT/NEXTEL.**

3     ETF – Sprint Payer class. The claims in *Ayyad* are expressly excluded from the nationwide class settlement in *Larson*. Trial court proceedings have concluded and several appeals are pending. No change from CMC Order of 3/24/09.

    The Court of Appeal has issued a remittitur in *Ayyad v. Sprint*, A121948, which concerns the sealing of documents and states Sprint shall pay Plaintiffs' costs on appeal. The Court ORDERS Sprint to identify any documents that were under seal pending resolution of the appeal and to re-file the documents in public format on or before 3/26/10.

    ETF – Sprint subscriber class. Claims of non-opting out members of the class dismissed per above order. Case completed.

    ETF – Nextel payer class. Claims of non-opting out members of the class dismissed per above order. Case completed.

    ETF – Ms. Zill. Ms. Zill has an individual claim regarding her Sprint ETF. The Court directs the parties to meet and confer regarding the resolution of Ms. Zill's individual case. The Court gives NOTICE of its own motion (1) to clarify that Ms. Zill's individual claim is the only claim remaining in the Sprint Subscriber case and (2) to reclassify what is now Ms. Zill's individual case as appropriate for resolution in small claims court. C.C.P. § 403.040. See generally Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (The Rutter Group 2009) § 3:112 et seq. The Court's motion will be heard at the CMC on 4/2/10. This does not preclude Plaintiff Zill and/or Sprint from filing motions to propose other procedures for resolving Ms. Zill's case and/or any remaining aspects of the Sprint Subscriber case.